## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROSENBAUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON COMMUNICATIONS GROUP, INC., KAREN A. WALKER and EDWARD Y. SNOWDEN,<br><br>Defendants. | CIVIL ACTION NO. **05 11165 WGY**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

RECEIPT # 64746
AMOUNT $ 250.00
SUMMONS ISSUED 3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M.S.
DATE 4/6/05

MAGISTRATE JUDGE S.O.

Plaintiff, Rosenbaum Capital LLC, on behalf of itself and all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's Complaint, alleges upon the investigation made by and through plaintiff's counsel, which included, *inter alia*, a review of relevant public filings made by Boston Communications Group, Inc. ("BCGI" or the "Company") with the Securities and Exchange Commission ("SEC"), as well as, tele-conferences, press releases, news articles, analyst reports, and media reports concerning the Company. This complaint is based upon plaintiff's personal knowledge as to plaintiff's own acts, and upon information and belief as to all other matters, based upon the aforementioned investigation.

### SUMMARY OF ACTION

1.      This is a class action on behalf of all persons, other than defendants, who purchased, converted, exchanged or otherwise acquired BCGI securities during the period from November 15, 2000 through May 20, 2005, inclusive (the "Class Period") to recover damages caused by defendants' violations of the federal securities law.

{00004984.DOC ; 1}

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).   Many of the acts and practices complained of herein occurred in substantial part in this District and BCGI maintains its corporate headquarters in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff, Rosenbaum Capital LLC, purchased securities of BCGI as set forth more fully in the annexed certificate and suffered economic damages.

7.      BCGI is a Massachusetts corporation and maintains its principal executive offices at 55 Middlesex Turnpike, Bedford, Massachusetts 01730.  BCGI provides real-time subscriber management services to the wireless industry including billing and transaction processing services which enable carriers to offer prepaid wireless calling to their subscribers, roaming services which provide wireless carriers the ability to generate revenues from subscribers who are not covered under traditional roaming agreements by arranging payment for roaming calls, and prepaid systems which assemble and market prepaid systems to international carriers and assemble the voice nodes used to support its voice resource network.

2

8.     The defendants listed below served, during the period specified, as senior officers and/or directors of BCGI:

(a)     Defendant Karen A. Walker ("Walker") was BCGI's Vice President, Finance and Administration and Chief Financial Officer during the Class Period.

(b)     Defendant Edward Y. Snowden ("Snowden") was BCGI's President and Chief Executive Officer during the Class Period.

9.     Walker and Snowden are sometimes referred to herein as the "Individual Defendants." Because of the Individual Defendant's positions with the Company, the Individual Defendants had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of BCGI, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial

3

statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ, and governed by the provisions of the federal securities laws, the defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendant's misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with BCGI, each of the defendants had access to the adverse undisclosed information about BCGI business prospects and financial condition and performance as particularized herein and knew (or

4

recklessly disregarded) that these adverse facts rendered the positive representations made by or about BCGI and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of BCGI securities by disseminating materially false and misleading statements and/or concealing material adverse facts.    The scheme: (i) deceived the investing public regarding BCGI's business, operations, management and the intrinsic value of BCGI's common stock; and (ii) caused plaintiff and other members of the Class to purchase BCGI's securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased BCGI common stock during the Class Period and who suffered damages (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. According to the Company's report filed on Form 10-Q with the SEC on May 9, 2005, for the period ended March 30, 2005, BCGI has approximately 17,639,384 shares of common stock outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by BCGI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendant's wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendant's acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, financial condition and management of BCGI; and

6

(c)      whether defendants acted knowingly or recklessly in making materially false and misleading statements during the Class Period;

(d)      whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of defendant's conduct complained of herein; and

(e)      to what extent the members of the Class have sustained damages and the proper measure of damages.

20.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **SUBSTANTIVE ALLEGATIONS**

### **Fraudulent Scheme and Course of Business**

21.      Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him or her about BCGI. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of BCGI common stock was a success, as it (i) deceived the investing public regarding BCGI prospects and business; (ii) artificially inflated the prices of BCGI common stock; (iii) allowed the Individual Defendants to sell more than $1 million of personally-held stock; and (iv) caused plaintiff and other members of the Class to purchase BCGI common stock at inflated prices

7

## FALSE AND MISLEADING STATEMENTS DURING CLASS PERIOD

22.     On May 12, 2000, before the Class Period, the Company filed a quarterly

financial report with the SEC on Form 10-Q for the first quarter 2000, the period ending March

31, 2000. The Form 10-Q, signed by Walker, stated in pertinent part:

> On March 30, 2000, Freedom Wireless, Inc. filed a complaint in
> the United States District Court for the Northern District of
> California against the Company and a number of wireless carriers,
> including customers and former customers of the Company. The
> suit alleges that the defendants infringe a patent held by Freedom
> Wireless, Inc. and seeks injunctive relief and damages in an
> unspecified amount. The Company does not believe it infringes
> this patent and believes that it has meritorious defenses to the
> action.

23.     On August 10, 2000, the Company filed a report on Form 10-Q with the SEC for

the period ended June 30, 2000. This Form 10-Q does not refer to the Freedom Wireless

litigation.

24.     On November 15, 2000, the Company filed a report on Form 10-Q with the SEC

for the period ended September 30, 2000. The Form 10-Q, signed by Walker, stated in pertinent

part:

> On March 30, 2000, Freedom Wireless, Inc. filed a complaint in
> the United States District Court for the Northern District of
> California against the Company and a number of wireless carriers,
> including customers and former customers of the Company. The
> suit alleges that the defendants infringe a patent held by Freedom
> Wireless, Inc. and seeks injunctive relief and damages in an
> unspecified amount. The Company does not believe it infringes
> this patent and believes that it has meritorious defenses to the
> action.

25.     On December 20, 2000, the Company issued a press release. The press release

stated in pertinent part:

> Boston Communications Group Inc. ("BCGI") said a patent suit
> filed against it by a prepaid wireless communications company

8

Freedom Wireless Inc. is "without merit," and said it will "vigorously" defend itself against the claim.

On December 19, Freedom Wireless said in a press release that it had filed suit against Boston Communications and several other carriers, charging they infringed two patents.

In a press release Thursday, Boston Communications said it has disclosed the existence of the litigation in its quarterly Securities and Exchange Commission filing.

26.    On February 6, 2001, the Company issued a press release entitled, "Boston

Communications Q4 net rises." The press release stated in pertinent part:

(A)    The above pro-forma consolidated statements of operations exclude the effects of the following: For the three and twelve months ended December 31, 2000, a one-time charge of $2.6 million for legal expenses that represents the legal fees the Company will incur to defend the patent infringement suit brought by Freedom Wireless...

27.    On April 2, 2001, the Company filed an annual financial report on Form 10-K

with the SEC for the period ended December 31, 2000. The Form 10-K was signed by Snowden

and Walker and stated in pertinent part:

In March, 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. The suit alleges that the defendants infringe a patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The Company does not believe that it infringes this patent and believes that it has meritorious defenses to the action.

28.    On May 9, 2001, the Company filed a quarterly financial report on Form 10-Q

with the SEC for the first quarter 2001, the period ending March 31, 2001. The Form 10-Q,

signed by Walker, stated in pertinent part:

> In March, 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. The suit alleges that the defendants infringe a patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The complaint has been amended to include a continuation patent. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.

29.    On August 13, 2001 the Company filed a quarterly financial report with the SEC

on Form 10-Q for the second quarter of 2001, the period ending June 30, 2001. The Form 10-Q,

signed by Walker, stated in pertinent part:

> In March, 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. The suit alleges that the defendants infringe a patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The complaint has been amended to include a continuation patent. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.

30.    On November 11, 2001, the Company filed a quarterly financial report with the

SEC on Form 10-Q for the third quarter 2001, the period ending September 30, 2001. The Form

10-Q, signed by Walker, stated in pertinent part:

> The Company accrues costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. Special Charges.   In the third quarter of 2001, the Company recorded a one-time charge of $3.6 million to principally accrue for legal expenses estimated by the Company's outside counsel to be incurred in the defense of a patent infringement suit brought by Freedom Wireless. The Company believes that the claims made by Freedom Wireless are without merit and will vigorously defend the

10

action. In addition, the Company also recorded a one-time charge of $894,000, primarily for the permanent impairment of a cost based investment.

In March, 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. The suit alleges that the defendants infringe a patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. The Company has indemnification obligations with respect to the other defendants. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The complaint has been amended to include a claim relating to the infringement of a continuation patent. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.

31.     On April 1, 2002, the Company filed an annual financial report with the SEC on

Form 10-K, the period ending December 31, 2001. The Form 10-K, signed by Snowden and

Walker, stated in pertinent part:

> The Company accrues costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 3 to the Consolidated Financial Statements, the Company has accrued its best estimate of the probable cost of current litigation. The estimate has been developed in consultation with the Company's outside counsel who is handling the case. There can be no assurances that the Company's expenses will not exceed the Company's estimate.
>
> In March 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. The suit alleges that the defendants infringe a patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. The Company has indemnification obligations with respect to the other defendants. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The suit is currently in the discovery phase. The complaint has been amended to include a continuation patent. The Company does not

11

> believe that it infringes these patents and believes that it has
> meritorious defenses to the action.

32.     On May 15, 2002, the Company filed a quarterly financial report with the SEC on

Form 10-Q for the first quarter 2002, the period ending March 31, 2002. The Form 10-Q, signed

by Walker, stated in pertinent part:

> In the fourth quarter of 2000, the Company recorded a special
> charge of $2.6 million to accrue for legal expenses in the defense
> of the Freedom Wireless suit. In the third quarter of 2001, the
> Company recorded a special charge of $3.6 million, primarily to
> accrue for legal expenses estimated by the Company's outside
> counsel to be incurred in the defense of a patent infringement suit
> brought by Freedom Wireless. In the first quarter of 2002, the
> Company recorded a special charge of $3.3 million to principally
> accrue for legal expenses estimated by the Company's outside
> counsel to be incurred in the defense of a patent infringement suit
> brought by Freedom Wireless, Inc. There can be no assurances that
> the Company's expenses to defend the Freedom Wireless suit will
> not exceed the Company's estimate. The Company believes that
> the claims made by Freedom Wireless are without merit and is
> vigorously defending the action. The components of the legal
> charges and payments are as follows (in thousands):

> In March 2000, a suit was filed by Freedom Wireless, Inc. in the
> United States District Court for the Northern District of California
> against the Company and a number of wireless carriers, including
> customers and former customers of the Company. The suit alleges
> that the defendants infringe a patent held by Freedom Wireless,
> Inc. and seeks injunctive relief and damages in an unspecified
> amount. The Company has indemnification obligations with
> respect to the other defendants. Upon motion by the Company, the
> suit was transferred to the United States District Court in
> Massachusetts in October, 2000 and is pending in that court. The
> suit is currently in the discovery phase. The complaint has been
> amended to include a continuation patent. The Company does not
> believe that it infringes these patents and believes that it has
> meritorious defenses to the action.

33.     On August 14, 2002, the Company filed a quarterly financial report with the SEC

on Form 10-Q for the second quarter 2002, the period ending June 30, 2002. The Form 10-Q,

signed by Walker, stated in pertinent part:

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by the Company's outside counsel to be incurred in the defense of a patent infringement suit brought by Freedom Wireless. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. The Company believes that the claims made by Freedom Wireless are without merit and is vigorously defending the action. The components of the legal charges and payments are as follows (in thousands):

In March 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The suit alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. The Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is currently in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.

34. On November 14, 2002, the Company filed a report with the SEC on Form 10-Q

for the third quarter 2002, the period ending September 30, 2002. The Form 10-Q, signed by

Walker, stated in pertinent part:

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount and injunctive relief, which could significantly restrict the Company's ability to conduct its business if an unfavorable judgment is reached. The Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is currently in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.

The Company estimates that quarterly after tax expenses to defend this case will be approximately $550,000 until this matter is resolved. However, there can be no assurances that the Company's

expenses will not exceed the Company's estimate. If Freedom
Wireless were to prevail in the case, the amount of the damages
could be substantial and the Company's business, financial
condition and results of operations would be materially adversely
affected.

35. On March 27, 2003, the Company filed an annual financial report with the SEC

on Form 10-K, the period ending December 31, 2002. The Form 10-K, signed by Snowden and

Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a
> number of wireless carriers. The suit is being tried in the United
> States District Court in Massachusetts and alleges that the
> defendants infringe two patents held by Freedom Wireless, Inc.
> and seeks damages in an unspecified amount as well as injunctive
> relief. A ruling that we infringed the Freedom Wireless patents
> could significantly restrict our ability to conduct business. In
> addition, we have an obligation to indemnify the other defendants
> for damages they may incur with respect to any infringement. The
> suit is still in the discovery phase. We do not believe that we
> infringe these patents and we believe that we have meritorious
> defenses to the action.
>
> We recorded a special charge in the fourth quarter of 2000 of $2.6
> million, in the third quarter of 2001 of $3.6 million and in the first
> quarter of 2002 of $3.3 million, principally to accrue for legal
> expenses estimated by our outside counsel to be incurred in the
> defense of the patent infringement suit brought by Freedom
> Wireless. The lengthy and unpredictable discovery process has
> made it difficult for us to reasonably estimate legal costs in this
> suit. As a result, we are now accounting for Freedom Wireless
> legal costs as incurred rather than accruing the entire amount of
> such costs when they become probable. For the fourth quarter of
> 2002, we recorded $998,000 in legal charges associated with the
> Freedom Wireless suit. We also expect to continue to spend up to
> $1 million per quarter for legal costs until the Freedom Wireless
> matter is resolved. There can be no assurances that our expenses to
> defend the Freedom Wireless suit will not exceed our estimate. If
> Freedom Wireless prevails in this case, the amount of damages
> could be substantial and our business, financial condition and
> results of operations would be materially adversely affected.

14

Legal Costs

We accrue the costs of settlements, damages and, under certain
conditions, costs of defense when such costs are probable and
estimable; otherwise, such costs are expensed as incurred. As
discussed in Note 4 to the Consolidated Financial Statements, in
2002 we began expensing legal costs related to the Freedom
Wireless lawsuit as incurred due to the lengthy and unpredictable
discovery process, which has now made it difficult to reasonably
estimate legal costs in the suit. Other litigation will continue to be
accounted for in accordance with our accounting policy and the
related estimate has been developed in consultation with our
outside counsel who is handling the case. We believe that we have
recorded an appropriate estimate of anticipated legal expenses, but
there can be no assurances that our expenses will not exceed our
estimate.

36.     On April 16, 2003, the Company issued a press release. The press release stated

in pertinent part:

Freedom Wireless Update

During the quarter ended March 31, 2003, the Company incurred
$915,000 in legal costs, or approximately $0.03 per share after
taxes, primarily for the continued defense of the Freedom Wireless
patent infringement suit. These costs are in line with previous
guidance and are expected to continue at this level until the matter
is resolved. There are no developments to report on the case and
exact timing of procedures has not been determined. There has also
been no change to the Company's position on the case and *bcgi*
remains confident that it does not infringe the Freedom Wireless
patents and that the patents are invalid in light of prior art.

Outlook

"Our tremendous growth in first quarter subscriber additions was
the key factor in our earnings growing more than 60% compared to
the fourth quarter of 2002. Although we are now entering the
seasonally slower second and third quarters, we believe that our
carrier's commitment to prepaid and our business model and value
proposition will continue to position *bcgi* for growth and healthy
profits. As a result, we are raising our annual 2003 earnings
guidance," commented Karen A. Walker, Chief Financial Officer.

The Company is raising its 2003 GAAP earnings to $0.78 to $0.80
per share, which includes an estimate of $0.12 per share in legal

15

> costs primarily to defend the Freedom Wireless lawsuit. This
> guidance is more than four times higher than the Company's 2002
> annual GAAP earnings of $0.19 per share. For the second quarter
> of 2003, the Company anticipates GAAP earnings of $0.19 to
> $0.20 per share, which includes $0.03 per share in estimated legal
> costs. "Our business model continues to be validated and our
> overall financial position, with $48.6 million in cash and
> investments and no debt, gives us the strength to capitalize on
> weaknesses across the telecommunications industry. This is
> evidenced by our recent building purchase that will initially house
> our second data center and our ability to continue to attract and
> retain top talent across our organization," commented Ms. Walker.

37.     On May 15, 2003 the Company filed a quarterly financial report with the SEC on

Form 10-Q for the first quarter 2003, the period ending March 31, 2003. The Form 10-Q, signed

by Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a
> number of wireless carriers. The suit is being tried in the United
> States District Court in Massachusetts and alleges that the
> defendants infringe two patents held by Freedom Wireless, Inc.
> and seeks damages in an unspecified amount as well as injunctive
> relief. A ruling that we infringed the Freedom Wireless patents
> could significantly restrict our ability to conduct business. In
> addition, we have an obligation to indemnify the other defendants
> for damages they may incur with respect to any infringement by
> our technology. The suit is still in the discovery phase. We do not
> believe that we infringe these patents and we believe that we have
> meritorious defenses to the action.
>
> We recorded special charges in the fourth quarter of 2000 of $2.6
> million, in the third quarter of 2001 of $3.6 million and in the first
> quarter of 2002 of $3.3 million, principally to accrue for legal
> expenses estimated by our outside counsel to be incurred in the
> defense of the patent infringement suit brought by Freedom
> Wireless. The lengthy and unpredictable discovery process has
> made it difficult for us to reasonably estimate legal costs in this
> suit. As a result, we are now accounting for Freedom Wireless
> legal costs as incurred rather than accruing the entire amount of
> such costs when they become probable. During the fourth quarter
> of 2002 we recorded $998,000 and in the first quarter of 2003 we
> recorded $915,000, primarily in legal charges associated with the
> Freedom Wireless suit. Since the timing of ongoing court
> proceedings is not firmly fixed, we also expect to continue to
> spend up to $1 million per quarter for legal costs until the Freedom

16

> Wireless matter is resolved. There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimates. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.

38.    On August 14, 2003, the Company filed a quarterly financial report with the SEC

on Form 10-Q for the second quarter 2003, the period ending June 30, 2003. The Form 10-Q,

signed by Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that we infringed the Freedom Wireless patents could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is still in the discovery phase. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.
>
> In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which has made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, in the fourth quarter of 2002, the first quarter of 2003 and the second quarter of 2003, we recorded charges of $998,000, $915,000 and $725,000, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless.
>
> Since the timing of ongoing court proceedings is not firmly fixed, we expect to continue to spend up to approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be

17

substantial and our business, financial condition and results of
operations would be materially adversely affected.

39.    On November 14, 2003, the Company filed a quarterly financial report with the

SEC on Form 10-Q for the third quarter 2003, the period ending September 30, 2003. The Form

10-Q, signed by Walker, stated in pertinent part:

Legal Proceedings

In March 2000, Freedom Wireless, Inc. filed a suit against us and a
number of wireless carriers. The suit is being tried in the United
States District Court in Massachusetts and alleges that the
defendants infringe two patents held by Freedom Wireless, Inc.
and seeks damages in an unspecified amount as well as injunctive
relief. A ruling that we infringed the Freedom Wireless patents
could significantly restrict our ability to conduct business. In
addition, we have an obligation to indemnify the other defendants
for damages they may incur with respect to any infringement by
our technology. The suit is still in the discovery phase. We do not
believe that we infringe these patents and believe that the patents
are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first
quarter of 2002, we recorded special charges of $2.6 million, $3.6
million and $3.3 million, respectively, principally to accrue for
legal expenses estimated by our outside counsel to be incurred in
the defense of the patent infringement suit brought by Freedom
Wireless. However, due to the lengthy and unpredictable
proceedings, which has made it difficult to reasonably estimate
legal costs in the Freedom Wireless suit, commencing in the third
quarter of 2002, we began accounting for costs related to this case
as incurred. As a result, for the three and nine-month period ended
September 30, 2003, we recorded charges of $1.4 million and $3.0
million, respectively, primarily for legal expenses incurred for the
suit brought by Freedom Wireless.

We expect to incur, on average, approximately $1 million per
quarter (before taxes) for legal costs until the Freedom Wireless
matter is resolved. However, this cost will likely continue to vary
from quarter to quarter, depending on the timing of proceedings.
Accordingly, we expect that fourth quarter, 2003 legal charges will
range between $1.0 million and $1.4 million. There can be no
assurances that our expenses to defend the Freedom Wireless suit
will not exceed our estimate. If Freedom Wireless prevails in this
case, the amount of damages could be substantial and our business,

18

financial condition and results of operations would be materially adversely affected.

From time to time, as a normal incidence of the nature of our business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, we can give no assurance that we will prevail. However, we do not believe that any of these current matters (other than as disclosed) will have a material adverse effect on our consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on our consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

40.     On March 11, 2004, the Company filed an annual financial report on Form 10-K

with the SEC for the period ended December 31, 2003.  The Form 10-K, signed by Snowden and

Walker, stated in pertinent part:

In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case

> as incurred. As a result, for the year ended December 31, 2003, we recorded charges of $4.0 million for legal expenses.
>
> We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.

41.    On May 10, 2004, the Company filed a quarterly financial report with the SEC on

Form 10-Q for the first quarter 2004, the period ending March 30, 2004. The Form 10-Q, signed

by Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.
>
> In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the three months ended March 31, 2004, we recorded charges of $1.2 million for legal expenses.

We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimates. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.

42.    On August 9, 2004, the Company filed a quarterly financial report with the SEC

on Form 10-Q for the second quarter 2004, the period ending June 30, 2004. The Form 10-Q,

signed by Walker, stated in pertinent part:

In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.

We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimates. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.

*An unfavorable judgment in the Freedom Wireless lawsuit would have a material adverse impact on our business.*

In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other

defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. In addition, we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology.

The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The court is expected to rule on these motions in the normal course of proceedings. We cannot yet assess our potential liability, if any. Any adverse outcome, including the following, would have a material adverse effect on our business, financial condition and results of operations:

- Injunctive relief against us, which could significantly restrict our ability to conduct our business;

- An adverse judgment against us for significant monetary damages;

- A settlement on unfavorable terms;

- Obligations to the other defendants to indemnify them for damages;

- Obligations to customers for breach of a contractual warranty of non-infringement; and/or

- A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay.

Regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit. We have incurred approximately $15.3 million in legal costs as of June 30, 2004 to defend this lawsuit, and we expect to incur approximately $1 million per quarter in legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. Moreover, this lawsuit may divert the efforts and attention of our management team from normal business operations. Finally, we may become subject to additional patent infringement lawsuits in the future.

43.    On November 9, 2004, the Company filed a quarterly financial report with the

SEC on Form 10-Q for the third quarter 2004, the period ending September 30, 2004. The Form

10-Q, signed by Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a
> number of wireless carriers. The suit is being tried in the United
> States District Court in Massachusetts and alleges that the
> defendants infringe two patents held by Freedom Wireless, Inc.
> and seeks damages in an unspecified amount as well as injunctive
> relief. If there were a ruling that we infringed the Freedom
> Wireless patents, it could significantly restrict our ability to
> conduct business. In addition, we have an obligation to indemnify
> the other defendants for damages they may incur with respect to
> any infringement by our technology. The suit is in the pre-trial
> phase and various summary judgment motions have been filed by
> both parties in the case. The Court is expected to rule on these
> motions in the normal course of its proceedings. We do not believe
> that we infringe these patents and believe that the patents are
> invalid in light of prior art and other reasons.
>
> We expect to incur, on average, approximately $1 million per
> quarter for legal costs until the Freedom Wireless matter is
> resolved. However, this cost will likely continue to vary from
> quarter to quarter, depending on the timing of proceedings. There
> can be no assurances that costs to defend the Freedom Wireless
> suit will not exceed our estimates. If Freedom Wireless prevails in
> this case, the amount of damages could be substantial and our
> business, financial condition and results of operations would be
> materially adversely affected.

44.    On March 16, 2005, the Company filed an annual financial report on Form 10-K

with the SEC for the period ended December 31, 2004. The Form 10-K, signed by Snowden and

Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a
> number of our wireless carrier customers. The suit is being tried in
> the United States District Court in Massachusetts and alleges that
> the defendants infringe two patents held by Freedom Wireless, Inc.
> and seeks damages as well as injunctive relief. If there were a
> ruling that we infringed the Freedom Wireless patents, it could
> significantly restrict our ability to conduct business. In addition,
> we have an obligation to indemnify the other defendants for
> damages they may incur with respect to any infringement by our

23

technology. The trial began on February 28, 2005 and is expected to last for approximately eight weeks. In 2005,Verizon Wireless, who was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. We were not part of the settlement discussions and the terms of the settlement are not public. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the years ended December 31, 2003 and 2004, we recorded charges of $4.0 and $3.0 million, respectively, for legal expenses related to the lawsuit.

We expect to incur approximately $1.5 to $1.8 million in legal expenses in the first quarter of 2005 and, on average, $1.0 million per quarter thereafter, until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate.

We are not presently able to estimate the potential losses, if any, related to the Freedom Wireless lawsuit. Freedom Wireless is seeking damages in excess of $250 million from us and the other remaining co-defendants, who *bcgi* has agreed to indemnify. If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from us and the other co-defendants, this amount would exceed our ability to pay.

45.    On May 9, 2005, the Company filed a quarterly financial report with the SEC on

Form 10-Q for the first quarter 2005, the period ending March 30, 2005. The Form 10-Q, signed

by Walker, stated in pertinent part:

> In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that

the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The trial began on February 28, 2005 and is expected to be completed in mid May 2005. In 2005, Verizon Wireless, who was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. We were not part of the settlement discussions and the terms of the settlement are not public. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.

We are not presently able to estimate the potential losses, if any, related to the Freedom Wireless lawsuit. Freedom Wireless is seeking damages in excess of $250 million from us and the other remaining co-defendants, whom *bcgi* has agreed to indemnify. If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from us and the other co-defendants, this amount would exceed our ability to pay.

We account for costs related to this case as incurred due to the lengthy and unpredictable proceedings which make it difficult to reasonably estimate legal costs. The total costs to defend the case through March 31, 2005 were $19.0 million. We expect to incur approximately $2.2 to $2.9 million in legal expenses in the second quarter of 2005. This cost is expected to be substantially less per quarter than historical amounts beginning in the third quarter of 2005, during the anticipated appeals process by either party following the completion of the trial. There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate.

Certain Factors That May Affect Future Results

*An unfavorable judgment in the Freedom Wireless lawsuit would have a material adverse impact on our business.*

In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages. In addition, we are contractually obligated to indemnify

the other defendants for any damages that they incur as a result of any infringement by our technology.

The trial began on February 28, 2005 and is expected to be completed in mid-May 2005. We cannot yet assess our potential liability, if any. Any adverse outcome, including the following, would have a material adverse effect on our business, financial condition and results of operations:

- Injunctive relief against us, which could significantly restrict our ability to conduct our business;

- An adverse judgment against us for significant monetary damages;

- A settlement on unfavorable terms;

- Obligations to the other defendants to indemnify them for damages;

- Obligations to customers for breach of a contractual warranty of non-infringement; and/or

- A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay.

Freedom Wireless is seeking damages in excess of $250 million from us and the other remaining co-defendants, who *bcgi* has agreed to indemnify. If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from us and the other co-defendants, this amount would exceed our ability to pay.

Regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit. We have incurred approximately $19.0 million in legal costs as of March 31, 2005 to defend this lawsuit, and expect to incur approximately $2.2 to $2.9 million in legal expenses in the second quarter of 2005. This cost is expected to substantially less per quarter than historical amounts beginning in the third quarter of 2005, during the anticipated appeals process by either party following the completion of the trial. There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate.

## THE TRUTH IS REVEALED

46.     On May 20, 2005, the Company issued a press release entitled, "Jury Verdict

Against BCGI in Freedom Wireless Patent Lawsuit." The press release stated in pertinent part:

> Boston Communications Group, Inc. (NASDAQ: BCGI), a provider of products and solutions that enable wireless operators to rapidly deploy and manage innovative voice and data services, today announced that the jury has reached a verdict in the patent infringement lawsuit brought by Freedom Wireless, Inc. against the Company. Today, the jury found that the Company and the other co-defendants jointly infringed two U.S. patents held by Freedom Wireless and the jury awarded Freedom Wireless approximately $128 million for past infringement. **The jury also ruled that *bcgi* willfully infringed the patents, which could result in up to three times the amount of damages awarded and attorneys' fees.**
>
> Before a final judgment can be rendered, the U.S. District Court in Massachusetts (the Court) is expected to act on additional post-trial motions and will hear a separate, non-jury trial regarding an unenforceability defense by *bcgi* and the other co-defendants. These additional motions and the trial are expected to begin on June 7, 2005 and to last approximately one to two weeks after they commence. If the Court rules in favor of *bcgi* and its co-defendants in the non-jury trial, the patents held by Freedom Wireless would become unenforceable, a decision that Freedom Wireless, Inc. may choose to appeal.
>
> *bcgi* continues to believe that it does not infringe on the Freedom Wireless patents and that the patents are invalid in light of prior art. Therefore, if the Court rules against *bcgi* and the co-defendants in the non-jury trial, the Company expects to appeal the Court's decision to the Court of Appeals for the Federal Circuit. *bcgi* will likely be required to provide collateral or post a bond in order to appeal the Court's decision. If the Company is not successful in the non-jury trial, Freedom Wireless may seek to enjoin the Company from providing its prepaid wireless and Real-Time Billing service bureau in the United States, pending appeal.
>
> In the first quarter of 2005, the Company's revenues from its U.S. prepaid wireless services were $23.9 million, which represented 90% of its total revenues. If the Company is unable to provide adequate collateral or to post a sufficient bond or is enjoined during the appeals process, or if the Company is unable to get an adverse judgment reversed or to negotiate a commercially

27

acceptable license with Freedom Wireless to allow *bcgi* to continue to provide its products and services, then it will not be possible for the Company to provide the prepaid wireless or Real-Time Billing service bureau as currently offered in the United States. In that event, the Company may not be able to continue its ongoing operations or may need to seek protections under the bankruptcy code.

In addition, the Company learned that Freedom Wireless filed additional lawsuits on May 20, 2005 in the U.S. District Court in Massachusetts against *bcgi* and Alltel Corporation and *bcgi* and Nextel Communications alleging joint infringement on the same two patents. Freedom Wireless may also bring infringement actions against the Company's other customers who were not party to these lawsuits. If Freedom Wireless is successful against these other parties, these customers may stop using *bcgi's* prepaid wireless and Real-Time Billing service and *bcgi* may become obligated to indemnify them for their damages, which could be substantial. Even if the Company is successful in the non-jury trial or on appeal, due to the uncertainty of this process, the Company's existing customers may choose to stop using its prepaid wireless and Real-Time Billing service and the Company may be unable to obtain any new customers. These results would have a material adverse impact on the Company's business.

If today's verdict is upheld upon final judgment by the Court, the Company will record the amount then reasonably estimable as an expense in the Company's financial statements. This amount may be solely the Company's responsibility since the other defendants have claimed that *bcgi* is obligated to indemnify them for any damages they incur with respect to any infringement by the Company's technology.

"We disagree with the jury's decision regarding the infringement of Freedom Wireless patents," said E.Y. Snowden, president and CEO of *bcgi*. "Despite the jury verdict, it should be clear that subsequent motions before the Court could affect how the Court ultimately rules on this case. In addition, should the Court find in favor of Freedom Wireless on these subsequent motions, we expect to enter an appeals process and seek to have the ruling overturned in a higher court. Furthermore, we believe that the evidence does not support the verdict and its willfulness judgment."

47.     On this news, the Company's stock price dropped from $4.81 to $1.75 on volume

of 12,499,900 shares traded.

48.     The public statements set forth above, and each of the financial statements contained in the reports filed with the SEC, were materially false and misleading; and omitted to set forth facts necessary to make such statements not misleading, for each of the following reasons:

(a)     the Company had willingly infringed upon Freedom Wireless' patents;

(b)     the Company's successful business model was premised upon the willful infringements of the patents of Freedom Wireless;

(c)     the Company's financial statements failed to comply with Generally Accepted Accounting Principles by failing to record sufficient reserves (of not less than $100 million) because of the willful infringement upon Freedom Wireless' patents;

(d)     by reason of the failure to take adequate reserves, the Company's financial statements filed with the SEC overstated income, net profits and profits per share;

(e)     these failures of disclosure, directly impacted upon the Company's prospects for future growth and revenue.

## SCIENTER ALLEGATIONS

49.     As alleged herein, defendants acted with scienter in that defendants knew that the Company had willfully infringed upon Freedom Wireless' patents; knew that the Company did not take appropriate financial reserves in anticipation of a negative decision in the Freedom Wireless lawsuit; knew that the Company's public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information

29

reflecting the true facts regarding BCGI and its business practices, their control over and/or receipt of BCGI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning BCGI, were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

50.     The Individual Defendants engaged in such a scheme to inflate the price of BCGI securities in order to: (i) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby; and (ii) maximize the value the defendants received from disposing of their personal holdings of BCGI securities at inflated prices. Individual Defendants collectively sold well over $1 million in personally-controlled Company stock during the Class Period at prices inflated by their fraudulent conduct.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

51.     At all relevant times, the market for BCGI securities was an efficient market for the following reasons, among others:

(a)     BCGI's stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)     As a regulated issuer, BCGI filed periodic public reports with the SEC and the Nasdaq;

30

(c)     BCGI regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     BCGI was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

52.     As a result of the foregoing, the market for BCGI's securities promptly digested current information regarding BCGI from all publicly available sources and reflected such information in BCGI's stock price. Under these circumstances, all purchasers of BCGI securities during the Class Period suffered similar injury through their purchase of BCGI securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

53.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of BCGI who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase BCGI securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

56. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for BCGI securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

32

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of BCGI as specified herein.

58.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of BCGI value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary to make the statements made about BCGI and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of BCGI securities during the Class Period.

59.     Each of the Individual Defendant's primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

33

was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

60.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendant's material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing BCGI operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendant's misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of BCGI securities was artificially inflated during the Class Period. In ignorance of the fact that the market prices of BCGI publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired BCGI securities during the Class Period at artificially high prices and were damaged thereby.

62.     At the time of said misrepresentations and omissions, plaintiff and other members

of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the

other members of the Class and the marketplace known the truth regarding the true financial

position, operating conditions and expenses that BCGI was experiencing, which were not

disclosed by defendants, plaintiff and other members of the Class would not have purchased or

otherwise acquired their BCGI securities, or, if they had acquired such securities during the Class

Period, they would not have done so at the artificially inflated prices which they paid.

63.     By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of defendant's wrongful conduct, plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act
### Against the Individual Defendants

65.     Plaintiff repeats and re-alleges each and every allegation contained above as if

fully set forth herein.

66.     The Individual Defendants acted as controlling persons of BCGI within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various

35

statements which plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.      In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.      As set forth above, BCGI and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendant's wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

36

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  June 6, 2005                    Respectfully submitted,


                                        **GILMAN AND PASTOR, LLP**


                                        By:  _David Pastor_
                                        David Pastor (BBO# 391000)
                                        60 State Street, 37th Floor
                                        Boston, MA  02109
                                        Telephone: (617) 742-9700
                                        Facsimile: (617) 742-9701


                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ, LLP**
                                        Fred T. Isquith
                                        Gustavo Bruckner
                                        270 Madison Avenue
                                        New York, New York 10016
                                        Telephone: (212) 545-4600
                                        Facsimile: (212) 545-4653


                                        **LAW OFFICES OF MARC S. HENZEL**
                                        Marc S. Henzel
                                        273 Montgomery Ave., Suite 202
                                        Bala Cynwyd, PA   19004
                                        Telephone: (610) 660-8000
                                        Facsimile: (610) 660-8080

37

P.01

JUN-01-2005  06:43

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Rosenbaum Capital LLC (" plaintiff ") declares, as to the claims asserted under the Federal Securities Laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and is willing to serve as a lead or named plaintiff in the Action on the basis of the allegations in that complaint or a substantively similar complaint or amended complaint to be filed. Plaintiff retains the Law Offices of Marc S. Henzel and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the Security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Federal Securities Laws.

3.    Plaintiff is willing to serve as a lead or representative party, either individually or as part of a group on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transactions during the Class Period in the stock of Boston Communications Inc. (NASDAQ: BCGI) that are subject of this action:

| DATE | BUY OR SALE | AMOUNT OF SHARES | PRICE PER SHARE |
|------|-------------|------------------|-----------------|
|      | SEE ATTACHED |                  |                 |

5.    In the past three years, plaintiff has sought to serve as a representative party on behalf of a class.

Rosenbaum Capital LLC v. Sharper Image Corp., N.D. CA. 05-01587

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

7.    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st Day of June 2005.

_____
Signature

JUN-01-2005  06:43                                                     P.02

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Rosenbaum Capital LLC (" plaintiff ") declares, as to the claims asserted under the Federal Securities Laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and is willing to serve as a lead or named plaintiff in the Action on the basis of the allegations in that complaint or a substantively similar complaint or amended complaint to be filed. Plaintiff retains the Law Offices of Marc S. Henzel and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the Security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Federal Securities Laws.

3.    Plaintiff is willing to serve as a lead or representative party, either individually or as part of a group on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transactions during the Class Period in the securities of Boston Communications Inc. (NASDAQ: BCGI) that are subject of this action:

| DATE | BUY OR SALE | AMOUNT OF SHARES | PRICE PER SHARE |
|------|-------------|------------------|-----------------|
|      | SEE ATTACHED |                 |                 |

5.    In the past three years, plaintiff has sought to serve as a representative party on behalf of a class.

Rosenbaum Capital LLC v. Sharper Image Corp., N.D. CA. 05-01587

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

7.    I declare under penalty of perjury that the foregoing Is true and correct.  Executed this 1st Day of June 2005.

_____
Signature

TOTAL P.02

BCGI  TRADES FOR 43

| DATE | ACCT | SYMBOL | BOUGHT | SOLD | PRICE | | |
|------|------|--------|--------|------|-------|---|---|
| -------- | ---- | ---------- | ------ | ------ | -------- | | |
| 4/2/2004 | 435 | BCGI | | -200 | $12.4000 | -$2,480.0000 | -200 |
| 4/2/2004 | 435 | BCGI | | -100 | $12.4100 | -$1,241.0000 | -300 |
| 4/2/2004 | 435 | BCGI | | -200 | $12.4000 | -$2,480.0000 | -500 |
| 4/2/2004 | 435 | BCGI | | -600 | $12.4900 | -$7,494.0000 | -1100 |
| 4/2/2004 | 435 | BCGI | | -100 | $12.4900 | -$1,249.0000 | -1200 |
| 4/5/2004 | 435 | BCGI | | -200 | $12.7100 | -$2,542.0000 | -1400 |
| 4/5/2004 | 435 | BCGI | | -200 | $12.9800 | -$2,596.0000 | -1600 |
| 4/5/2004 | 435 | BCGI | | -100 | $13.0500 | -$1,305.0000 | -1700 |
| 4/8/2004 | 435 | BCGI | 100 | | $12.9000 | -$1,290.0000 | -1600 |
| 4/14/2004 | 435 | BCGI | | -100 | $12.4600 | -$1,246.0000 | -1700 |
| 4/14/2004 | 435 | BCGI | | -200 | $12.4600 | -$2,492.0000 | -1900 |
| 4/14/2004 | 435 | BCGI | 200 | | $12.2000 | -$2,440.0000 | -1700 |
| 4/14/2004 | 435 | BCGI | 160 | | $12.2000 | -$1,952.0000 | -1540 |
| 4/14/2004 | 435 | BCGI | 200 | | $12.2000 | -$2,440.0000 | -1340 |
| 4/14/2004 | 435 | BCGI | 100 | | $12.2000 | -$1,220.0000 | -1240 |
| 4/14/2004 | 435 | BCGI | 140 | | $12.2000 | -$1,708.0000 | -1100 |
| 4/15/2004 | 435 | BCGI | 100 | | $12.0900 | -$1,209.0000 | -1000 |
| 4/15/2004 | 435 | BCGI | 500 | | $12.2000 | -$6,100.0000 | -500 |
| 4/15/2004 | 435 | BCGI | 300 | | $12.2000 | -$3,660.0000 | -200 |
| 4/16/2004 | 435 | BCGI | 300 | | $12.0800 | -$3,624.0000 | 100 |
| 4/16/2004 | 435 | BCGI | | -300 | $12.0000 | -$3,600.0000 | -200 |
| 4/16/2004 | 435 | BCGI | | -500 | $11.8000 | -$5,900.0000 | -700 |
| 4/19/2004 | 435 | BCGI | 100 | | $11.5800 | -$1,158.0000 | -600 |
| 4/19/2004 | 435 | BCGI | 100 | | $11.5800 | -$1,158.0000 | -500 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.4500 | -$2,290.0000 | -700 |
| 4/20/2004 | 435 | BCGI | | -1300 | $11.5000 | -$14,950.0000 | -2000 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3500 | -$2,270.0000 | -2200 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3500 | -$1,135.0000 | -2300 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2400 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2500 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2600 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -2800 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2900 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -3100 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -3300 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3700 | -$1,137.0000 | -3400 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3700 | -$1,137.0000 | -3500 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -3700 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3700 | -$1,137.0000 | -3800 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.2900 | -$1,129.0000 | -3900 |
| 4/21/2004 | 435 | BCGI | 300 | | $11.1500 | -$3,345.0000 | -3600 |
| 4/22/2004 | 435 | BCGI | 200 | | $11.5700 | -$2,314.0000 | -3400 |
| 4/22/2004 | 435 | BCGI | 100 | | $11.5600 | -$1,156.0000 | -3300 |
| 4/22/2004 | 435 | BCGI | 100 | | $11.5600 | -$1,156.0000 | -3200 |
| 4/22/2004 | 435 | BCGI | 200 | | $11.9800 | -$2,396.0000 | -3000 |
| 4/22/2004 | 435 | BCGI | 100 | | $11.9800 | -$1,198.0000 | -2900 |
| 4/26/2004 | 435 | BCGI | 200 | | $11.1200 | -$2,224.0000 | -2700 |

| Date | | Quantity | | Price | Amount | Balance |
|---|---|---|---|---|---|---|
| 4/28/2004 | 435 BCGI | 600 | | $11.0400 | -$6,624.0000 | -2100 |
| 4/28/2004 | 435 BCGI | 100 | | $11.3000 | -$1,130.0000 | -2000 |
| 4/28/2004 | 435 BCGI | 100 | | $11.3000 | -$1,130.0000 | -1900 |
| 4/28/2004 | 435 BCGI | | -200 | $11.2000 | -$2,240.0000 | -2100 |
| 4/28/2004 | 435 BCGI | | -100 | $11.1900 | -$1,119.0000 | -2200 |
| 4/28/2004 | 435 BCGI | | -100 | $11.1900 | -$1,119.0000 | -2300 |
| 4/28/2004 | 435 BCGI | | -100 | $11.1900 | -$1,119.0000 | -2400 |
| 4/28/2004 | 435 BCGI | | -100 | $11.1900 | -$1,119.0000 | -2500 |
| 4/28/2004 | 435 BCGI | 100 | | $11.1200 | -$1,112.0000 | -2400 |
| 4/28/2004 | 435 BCGI | 100 | | $11.1500 | -$1,115.0000 | -2300 |
| 4/28/2004 | 435 BCGI | 100 | | $11.1500 | -$1,115.0000 | -2200 |
| 4/28/2004 | 435 BCGI | 100 | | $11.1800 | -$1,118.0000 | -2100 |
| 4/28/2004 | 435 BCGI | 100 | | $11.1800 | -$1,118.0000 | -2000 |
| 4/28/2004 | 435 BCGI | 500 | | $11.2100 | -$5,605.0000 | -1500 |
| 4/29/2004 | 435 BCGI | | -100 | $10.7000 | -$1,070.0000 | -1600 |
| 4/29/2004 | 435 BCGI | | -100 | $10.7000 | -$1,070.0000 | -1700 |
| 5/3/2004 | 435 BCGI | | -200 | $11.2400 | -$2,248.0000 | -1900 |
| 5/3/2004 | 435 BCGI | | -100 | $11.2400 | -$1,124.0000 | -2000 |
| 5/11/2004 | 435 BCGI | 900 | | $11.2600 | -$10,134.0000 | -1100 |
| 5/11/2004 | 435 BCGI | 100 | | $11.2600 | -$1,126.0000 | -1000 |
| 5/11/2004 | 435 BCGI | 100 | | $11.3100 | -$1,131.0000 | -900 |
| 5/11/2004 | 435 BCGI | 300 | | $11.3100 | -$3,393.0000 | -600 |
| 5/13/2004 | 435 BCGI | 100 | | $10.7500 | -$1,075.0000 | -500 |
| 5/13/2004 | 435 BCGI | 100 | | $10.7500 | -$1,075.0000 | -400 |
| 5/13/2004 | 435 BCGI | 200 | | $10.9800 | -$2,196.0000 | -200 |
| 5/13/2004 | 435 BCGI | 100 | | $10.9700 | -$1,097.0000 | -100 |
| 5/13/2004 | 435 BCGI | 300 | | $11.0200 | -$3,306.0000 | 200 |
| 5/13/2004 | 435 BCGI | 100 | | $11.0200 | -$1,102.0000 | 300 |
| 5/13/2004 | 435 BCGI | 100 | | $11.0300 | -$1,103.0000 | 400 |
| 5/13/2004 | 435 BCGI | 100 | | $11.0300 | -$1,103.0000 | 500 |
| 5/13/2004 | 435 BCGI | 100 | | $11.0300 | -$1,103.0000 | 600 |
| 5/13/2004 | 435 BCGI | 200 | | $11.0300 | -$2,206.0000 | 800 |
| 5/14/2004 | 435 BCGI | 100 | | $10.9000 | -$1,090.0000 | 900 |
| 5/14/2004 | 435 BCGI | | -200 | $10.9000 | -$2,180.0000 | 700 |
| 5/14/2004 | 435 BCGI | | -500 | $10.9000 | -$5,450.0000 | 200 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9400 | -$1,094.0000 | 100 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9100 | -$1,091.0000 | 0 |
| 5/14/2004 | 435 BCGI | | -300 | $10.9100 | -$3,273.0000 | -300 |
| 5/14/2004 | 435 BCGI | | -200 | $10.9100 | -$2,182.0000 | -500 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9300 | -$1,093.0000 | -600 |
| 5/14/2004 | 435 BCGI | | -74 | $10.9500 | -$810.3000 | -674 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9500 | -$1,095.0000 | -774 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9500 | -$1,095.0000 | -874 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9500 | -$1,095.0000 | -974 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9500 | -$1,095.0000 | -1074 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9500 | -$1,095.0000 | -1174 |
| 5/14/2004 | 435 BCGI | | -100 | $10.9300 | -$1,093.0000 | -1274 |
| 5/17/2004 | 435 BCGI | 141 | | $10.6500 | -$1,501.6500 | -1133 |
| 5/17/2004 | 435 BCGI | 59 | | $10.6500 | -$628.3500 | -1074 |
| 5/18/2004 | 435 BCGI | | -100 | $10.4200 | -$1,042.0000 | -1174 |
| 5/18/2004 | 435 BCGI | 100 | | $10.3000 | -$1,030.0000 | -1074 |
| 5/18/2004 | 435 BCGI | 100 | | $10.3000 | -$1,030.0000 | -974 |

| Date | Symbol | Buy | Sell | Price | Amount | Balance |
|------|--------|-----|------|-------|--------|---------|
| 5/21/2004 | 435 BCGI | | -100 | $10.3500 | -$1,035.0000 | -1074 |
| 5/21/2004 | 435 BCGI | | -1000 | $10.3500 | -$10,350.0000 | -2074 |
| 5/21/2004 | 435 BCGI | 100 | | $10.7400 | -$1,074.0000 | -1974 |
| 5/21/2004 | 435 BCGI | 400 | | $10.7500 | -$4,300.0000 | -1574 |
| 5/24/2004 | 435 BCGI | | -200 | $10.7400 | -$2,148.0000 | -1774 |
| 6/4/2004 | 435 BCGI | 92 | | $10.6000 | -$975.2000 | -1682 |
| 6/4/2004 | 435 BCGI | 45 | | $10.6000 | -$477.0000 | -1637 |
| 6/4/2004 | 435 BCGI | 63 | | $10.6000 | -$667.8000 | -1574 |
| 6/7/2004 | 435 BCGI | | -400 | $10.4600 | -$4,184.0000 | -1974 |
| 6/9/2004 | 435 BCGI | | -300 | $10.5000 | -$3,150.0000 | -2274 |
| 6/9/2004 | 435 BCGI | | -100 | $10.5000 | -$1,050.0000 | -2374 |
| 6/9/2004 | 435 BCGI | | -1600 | $10.5000 | -$16,800.0000 | -3974 |
| 6/9/2004 | 435 BCGI | | -100 | $10.5000 | -$1,050.0000 | -4074 |
| 6/9/2004 | 435 BCGI | | -200 | $10.5000 | -$2,100.0000 | -4274 |
| 6/9/2004 | 435 BCGI | | -250 | $10.5000 | -$2,625.0000 | -4524 |
| 6/9/2004 | 435 BCGI | | -250 | $10.5000 | -$2,625.0000 | -4774 |
| 6/9/2004 | 435 BCGI | | -200 | $10.5000 | -$2,100.0000 | -4974 |
| 6/9/2004 | 435 BCGI | | -300 | $10.5900 | -$3,177.0000 | -5274 |
| 6/9/2004 | 435 BCGI | | -600 | $10.5800 | -$6,348.0000 | -5874 |
| 6/10/2004 | 435 BCGI | | -500 | $9.2600 | -$4,630.0000 | -6374 |
| 6/10/2004 | 435 BCGI | 100 | | $8.2000 | -$820.0000 | -6274 |
| 6/10/2004 | 435 BCGI | 800 | | $8.2000 | -$6,560.0000 | -5474 |
| 6/10/2004 | 435 BCGI | 100 | | $8.2600 | -$826.0000 | -5374 |
| 6/10/2004 | 435 BCGI | 500 | | $8.5600 | -$4,280.0000 | -4874 |
| 6/10/2004 | 435 BCGI | 500 | | $8.5800 | -$4,290.0000 | -4374 |
| 6/10/2004 | 435 BCGI | 500 | | $8.7400 | -$4,370.0000 | -3874 |
| 6/10/2004 | 435 BCGI | 100 | | $9.1400 | -$914.0000 | -3774 |
| 6/14/2004 | 435 BCGI | | -300 | $9.0200 | -$2,706.0000 | -4074 |
| 6/14/2004 | 435 BCGI | | -200 | $9.0200 | -$1,804.0000 | -4274 |
| 6/14/2004 | 435 BCGI | 6 | | $9.0200 | -$54.1200 | -4268 |
| 6/14/2004 | 435 BCGI | 100 | | $9.0200 | -$902.0000 | -4168 |
| 6/14/2004 | 435 BCGI | 294 | | $9.0200 | -$2,651.8800 | -3874 |
| 6/14/2004 | 435 BCGI | | -28 | $8.9900 | -$251.7200 | -3902 |
| 6/14/2004 | 435 BCGI | | -100 | $8.9900 | -$899.0000 | -4002 |
| 6/14/2004 | 435 BCGI | | -272 | $8.9900 | -$2,445.2800 | -4274 |
| 6/14/2004 | 435 BCGI | 446 | | $9.0900 | -$4,054.1400 | -3828 |
| 6/14/2004 | 435 BCGI | 446 | | $9.0900 | -$4,054.1400 | -3382 |
| 6/14/2004 | 435 BCGI | 708 | | $9.0900 | -$6,435.7200 | -2674 |
| 6/14/2004 | 435 BCGI | | -300 | $8.9500 | -$2,685.0000 | -2974 |
| 6/14/2004 | 435 BCGI | | -200 | $8.9500 | -$1,790.0000 | -3174 |
| 6/14/2004 | 435 BCGI | | -100 | $8.9500 | -$895.0000 | -3274 |
| 6/15/2004 | 435 BCGI | 400 | | $8.6600 | -$3,464.0000 | -2874 |
| 6/16/2004 | 435 BCGI | | -800 | $8.9900 | -$7,192.0000 | -3674 |
| 6/16/2004 | 435 BCGI | | -200 | $8.9900 | -$1,798.0000 | -3874 |
| 6/16/2004 | 435 BCGI | | -6 | $8.9800 | -$53.8800 | -3880 |
| 6/16/2004 | 435 BCGI | | -794 | $8.9800 | -$7,130.1200 | -4674 |
| 6/16/2004 | 435 BCGI | | -400 | $8.9800 | -$3,592.0000 | -5074 |
| 6/18/2004 | 435 BCGI | | -2300 | $9.4700 | -$21,781.0000 | -7374 |
| 6/18/2004 | 435 BCGI | 2000 | | $9.4700 | -$18,940.0000 | -5374 |
| 6/18/2004 | 435 BCGI | 2400 | | $9.4700 | -$22,728.0000 | -2974 |
| 6/21/2004 | 435 BCGI | | -100 | $9.3500 | -$935.0000 | -3074 |
| 6/21/2004 | 435 BCGI | | -100 | $9.3500 | -$935.0000 | -3174 |

| Date | Security | | | Price | Amount | Balance |
|------|----------|------|------|-------|--------|---------|
| 6/21/2004 | 435 BCGI | | -300 | $9.3500 | -$2,805.0000 | -3474 |
| 6/21/2004 | 435 BCGI | | -100 | $9.4600 | -$946.0000 | -3574 |
| 6/21/2004 | 435 BCGI | | -100 | $9.3200 | -$932.0000 | -3674 |
| 6/21/2004 | 435 BCGI | | -100 | $9.3700 | -$937.0000 | -3774 |
| 6/22/2004 | 435 BCGI | | -500 | $9.4600 | -$4,730.0000 | -4274 |
| 6/22/2004 | 435 BCGI | | -600 | $9.4600 | -$5,676.0000 | -4874 |
| 6/23/2004 | 435 BCGI | | -100 | $9.7000 | -$970.0000 | -4974 |
| 6/23/2004 | 435 BCGI | | -100 | $9.7000 | -$970.0000 | -5074 |
| 6/23/2004 | 435 BCGI | | -100 | $9.7000 | -$970.0000 | -5174 |
| 6/23/2004 | 435 BCGI | | -100 | $9.7000 | -$970.0000 | -5274 |
| 6/23/2004 | 435 BCGI | | -100 | $9.7000 | -$970.0000 | -5374 |
| 6/23/2004 | 435 BCGI | | -400 | $9.7500 | -$3,900.0000 | -5774 |
| 6/23/2004 | 435 BCGI | | -100 | $9.7500 | -$975.0000 | -5874 |
| 6/25/2004 | 435 BCGI | | -200 | $9.9700 | -$1,994.0000 | -6074 |
| 6/30/2004 | 435 BCGI | | -109 | $10.3200 | -$1,124.8800 | -6183 |
| 6/30/2004 | 435 BCGI | | -191 | $10.3200 | -$1,971.1200 | -6374 |
| 7/1/2004 | 435 BCGI | 300 | | $9.9200 | -$2,976.0000 | -6074 |
| 7/6/2004 | 435 BCGI | 100 | | $9.4500 | -$945.0000 | -5974 |
| 7/6/2004 | 435 BCGI | | -300 | $9.4900 | -$2,847.0000 | -6274 |
| 7/6/2004 | 435 BCGI | 300 | | $9.6500 | -$2,895.0000 | -5974 |
| 7/6/2004 | 435 BCGI | 200 | | $9.4800 | -$1,896.0000 | -5774 |
| 7/12/2004 | 435 BCGI | | -100 | $9.4700 | -$947.0000 | -5874 |
| 7/12/2004 | 435 BCGI | 100 | | $9.3200 | -$932.0000 | -5774 |
| 7/12/2004 | 435 BCGI | 100 | | $9.3200 | -$932.0000 | -5674 |
| 7/14/2004 | 435 BCGI | 100 | | $9.1700 | -$917.0000 | -5574 |
| 7/14/2004 | 435 BCGI | 200 | | $9.1700 | -$1,834.0000 | -5374 |
| 7/16/2004 | 435 BCGI | 2400 | | $8.9100 | -$21,384.0000 | -2974 |
| 7/16/2004 | 435 BCGI | 39 | | $9.0100 | -$351.3900 | -2935 |
| 7/16/2004 | 435 BCGI | 61 | | $9.0100 | -$549.6100 | -2874 |
| 7/19/2004 | 435 BCGI | 17 | | $8.8600 | -$150.6200 | -2857 |
| 7/19/2004 | 435 BCGI | 83 | | $8.8600 | -$735.3800 | -2774 |
| 7/20/2004 | 435 BCGI | 100 | | $8.6900 | -$869.0000 | -2674 |
| 7/21/2004 | 435 BCGI | | -213 | $8.4300 | -$1,795.5900 | -2887 |
| 7/21/2004 | 435 BCGI | | -74 | $8.4000 | -$621.6000 | -2961 |
| 7/21/2004 | 435 BCGI | | -426 | $8.4000 | -$3,578.4000 | -3387 |
| 7/21/2004 | 435 BCGI | 300 | | $8.3800 | -$2,514.0000 | -3087 |
| 7/21/2004 | 435 BCGI | 100 | | $8.3300 | -$833.0000 | -2987 |
| 7/21/2004 | 435 BCGI | 100 | | $8.3300 | -$833.0000 | -2887 |
| 7/21/2004 | 435 BCGI | 200 | | $8.3300 | -$1,666.0000 | -2687 |
| 7/21/2004 | 435 BCGI | 70 | | $8.3000 | -$581.0000 | -2617 |
| 7/22/2004 | 435 BCGI | 400 | | $8.2100 | -$3,284.0000 | -2217 |
| 7/22/2004 | 435 BCGI | 100 | | $8.2100 | -$821.0000 | -2117 |
| 7/26/2004 | 435 BCGI | | -100 | $8.3500 | -$835.0000 | -2217 |
| 8/3/2004 | 435 BCGI | | -100 | $8.6600 | -$866.0000 | -2317 |
| 8/5/2004 | 435 BCGI | | -100 | $8.5500 | -$855.0000 | -2417 |
| 8/9/2004 | 435 BCGI | | -200 | $8.3000 | -$1,660.0000 | -2617 |
| 8/9/2004 | 435 BCGI | | -100 | $8.3100 | -$831.0000 | -2717 |
| 8/9/2004 | 435 BCGI | | -99 | $8.3000 | -$821.7000 | -2816 |
| 8/9/2004 | 435 BCGI | | -200 | $8.3100 | -$1,662.0000 | -3016 |
| 8/9/2004 | 435 BCGI | | -1 | $8.3000 | -$8.3000 | -3017 |
| 8/9/2004 | 435 BCGI | | -94 | $8.2500 | -$775.5000 | -3111 |
| 8/9/2004 | 435 BCGI | | -6 | $8.2500 | -$49.5000 | -3117 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/13/2004 | 435 BCGI | 83 | | $7.8500 | -$651.5500 | -3034 |
| 8/13/2004 | 435 BCGI | 100 | | $7.8500 | -$785.0000 | -2934 |
| 8/13/2004 | 435 BCGI | 117 | | $7.8600 | -$919.6200 | -2817 |
| 8/20/2004 | 435 BCGI | | -100 | $8.3400 | -$834.0000 | -2917 |
| 9/9/2004 | 435 BCGI | | -300 | $8.0700 | -$2,421.0000 | -3217 |
| 9/13/2004 | 435 BCGI | | -105 | $8.3300 | -$874.6500 | -3322 |
| 9/13/2004 | 435 BCGI | | -100 | $8.3300 | -$833.0000 | -3422 |
| 9/13/2004 | 435 BCGI | | -95 | $8.3300 | -$791.3500 | -3517 |
| 9/15/2004 | 435 BCGI | | -200 | $8.3200 | -$1,664.0000 | -3717 |
| 9/16/2004 | 435 BCGI | | -200 | $8.3600 | -$1,672.0000 | -3917 |
| 9/17/2004 | 435 BCGI | | -100 | $8.3600 | -$836.0000 | -4017 |
| 9/17/2004 | 435 BCGI | 200 | | $8.3000 | -$1,660.0000 | -3817 |
| 9/17/2004 | 435 BCGI | 3000 | | $8.2800 | -$24,840.0000 | -817 |
| 9/17/2004 | 435 BCGI | 1000 | | $8.2800 | -$8,280.0000 | 183 |
| 9/20/2004 | 435 BCGI | | -100 | $8.4800 | -$848.0000 | 83 |
| 9/27/2004 | 435 BCGI | 100 | | $8.1500 | -$815.0000 | 183 |
| 9/27/2004 | 435 BCGI | 100 | | $8.1400 | -$814.0000 | 283 |
| 9/27/2004 | 435 BCGI | 100 | | $8.1400 | -$814.0000 | 383 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0700 | -$907.0000 | 283 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | 183 |
| 10/4/2004 | 435 BCGI | | -15 | $9.0600 | -$135.9000 | 168 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | 68 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | -32 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | -132 |
| 10/4/2004 | 435 BCGI | | -85 | $9.0600 | -$770.1000 | -217 |
| 10/4/2004 | 435 BCGI | | -247 | $9.3100 | -$2,299.5700 | -464 |
| 10/4/2004 | 435 BCGI | | -100 | $9.2900 | -$929.0000 | -564 |
| 10/4/2004 | 435 BCGI | | -53 | $9.2900 | -$492.3700 | -617 |
| 10/4/2004 | 435 BCGI | | -100 | $9.2900 | -$929.0000 | -717 |
| 10/4/2004 | 435 BCGI | | -147 | $9.2900 | -$1,365.6300 | -864 |
| 10/5/2004 | 435 BCGI | | -100 | $9.4300 | -$943.0000 | -964 |
| 10/5/2004 | 435 BCGI | | -46 | $9.4300 | -$433.7800 | -1010 |
| 10/11/2004 | 435 BCGI | 200 | | $8.9700 | -$1,794.0000 | -810 |
| 10/11/2004 | 435 BCGI | 100 | | $8.9700 | -$897.0000 | -710 |
| 10/11/2004 | 435 BCGI | 100 | | $8.9700 | -$897.0000 | -610 |
| 10/11/2004 | 435 BCGI | 100 | | $8.9700 | -$897.0000 | -510 |
| 10/12/2004 | 435 BCGI | 26 | | $8.8000 | -$228.8000 | -484 |
| 10/12/2004 | 435 BCGI | 100 | | $8.8100 | -$881.0000 | -384 |
| 10/12/2004 | 435 BCGI | 74 | | $8.8100 | -$651.9400 | -310 |
| 10/12/2004 | 435 BCGI | | -121 | $8.9200 | -$1,079.3200 | -431 |
| 10/14/2004 | 435 BCGI | 100 | | $8.6200 | -$862.0000 | -331 |
| 10/14/2004 | 435 BCGI | 231 | | $8.6200 | -$1,991.2200 | -100 |
| 10/18/2004 | 435 BCGI | | -100 | $8.9300 | -$893.0000 | -200 |
| 10/18/2004 | 435 BCGI | | -100 | $8.9300 | -$893.0000 | -300 |
| 10/18/2004 | 435 BCGI | | -100 | $8.9300 | -$893.0000 | -400 |
| 10/19/2004 | 435 BCGI | 100 | | $8.8400 | -$884.0000 | -300 |
| 10/19/2004 | 435 BCGI | 39 | | $8.8400 | -$344.7600 | -261 |
| 10/20/2004 | 435 BCGI | | -80 | $9.1900 | -$735.2000 | -341 |
| 10/20/2004 | 435 BCGI | | -20 | $9.1900 | -$183.8000 | -361 |
| 10/20/2004 | 435 BCGI | | -200 | $9.1900 | -$1,838.0000 | -561 |
| 10/28/2004 | 435 BCGI | 100 | | $8.9800 | -$898.0000 | -461 |
| 10/28/2004 | 435 BCGI | 100 | | $8.9800 | -$898.0000 | -361 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/28/2004 | 435 BCGI | 100 | | | $8.9800 | -$898.0000 | -261 |
| 11/1/2004 | 435 BCGI | 64 | | | $8.9800 | -$574.7200 | -197 |
| 11/5/2004 | 435 BCGI | 100 | | | $8.9200 | -$892.0000 | -97 |
| 11/5/2004 | 435 BCGI | 56 | | | $8.9200 | -$499.5200 | -41 |
| 11/15/2004 | 435 BCGI | | | -144 | $9.1900 | -$1,323.3600 | -185 |
| 11/18/2004 | 435 BCGI | | | -200 | $9.4900 | -$1,898.0000 | -385 |
| 11/18/2004 | 435 BCGI | | | -700 | $9.4900 | -$6,643.0000 | -1085 |
| 11/18/2004 | 435 BCGI | | | -400 | $9.4900 | -$3,796.0000 | -1485 |
| 11/18/2004 | 435 BCGI | | | -500 | $9.4900 | -$4,745.0000 | -1985 |
| 11/19/2004 | 435 BCGI | 100 | | | $9.3000 | -$930.0000 | -1885 |
| 11/19/2004 | 435 BCGI | 64 | | | $9.3000 | -$595.2000 | -1821 |
| 11/22/2004 | 435 BCGI | | | -100 | $9.3500 | -$935.0000 | -1921 |
| 11/23/2004 | 435 BCGI | 100 | | | $9.2700 | -$927.0000 | -1821 |
| 11/23/2004 | 435 BCGI | 64 | | | $9.2700 | -$593.2800 | -1757 |
| 11/24/2004 | 435 BCGI | | | -100 | $9.3400 | -$934.0000 | -1857 |
| 11/29/2004 | 435 BCGI | 100 | | | $9.1800 | -$918.0000 | -1757 |
| 11/29/2004 | 435 BCGI | 100 | | | $9.1800 | -$918.0000 | -1657 |
| 11/29/2004 | 435 BCGI | 100 | | | $9.1800 | -$918.0000 | -1557 |
| 11/29/2004 | 435 BCGI | 12 | | | $9.1800 | -$110.1600 | -1545 |
| 11/30/2004 | 435 BCGI | 218 | | | $9.2000 | -$2,005.6000 | -1327 |
| 11/30/2004 | 435 BCGI | 525 | | | $8.9100 | -$4,677.7500 | -802 |
| 12/1/2004 | 435 BCGI | | | -27 | $9.0500 | -$244.3500 | -829 |
| 12/1/2004 | 435 BCGI | | | -100 | $9.0500 | -$905.0000 | -929 |
| 12/1/2004 | 435 BCGI | | | -93 | $9.0500 | -$841.6500 | -1022 |
| 12/2/2004 | 435 BCGI | | | -300 | $9.2600 | -$2,778.0000 | -1322 |
| 12/3/2004 | 435 BCGI | 400 | | | $9.2500 | -$3,700.0000 | -922 |
| 12/3/2004 | 435 BCGI | 100 | | | $9.2500 | -$925.0000 | -822 |
| 12/3/2004 | 435 BCGI | 200 | | | $9.2500 | -$1,850.0000 | -622 |
| 12/3/2004 | 435 BCGI | | | -274 | $9.0800 | -$2,487.9200 | -896 |
| 12/7/2004 | 435 BCGI | | | -74 | $9.5300 | -$705.2200 | -970 |
| 12/7/2004 | 435 BCGI | | | -54 | $9.5400 | -$515.1600 | -1024 |
| 12/8/2004 | 435 BCGI | | | -100 | $9.6300 | -$963.0000 | -1124 |
| 12/8/2004 | 435 BCGI | | | -61 | $9.6200 | -$586.8200 | -1185 |
| 12/9/2004 | 435 BCGI | 100 | | | $9.5400 | -$954.0000 | -1085 |
| 12/9/2004 | 435 BCGI | 100 | | | $9.5400 | -$954.0000 | -985 |
| 12/9/2004 | 435 BCGI | 100 | | | $9.5500 | -$955.0000 | -885 |
| 12/10/2004 | 435 BCGI | 100 | | | $9.8500 | -$985.0000 | -785 |
| 12/10/2004 | 435 BCGI | 87 | | | $9.8500 | -$856.9500 | -698 |
| 12/10/2004 | 435 BCGI | | | -100 | $9.8600 | -$986.0000 | -798 |
| 12/10/2004 | 435 BCGI | | | -400 | $9.8600 | -$3,944.0000 | -1198 |
| 12/10/2004 | 435 BCGI | | | -200 | $9.8600 | -$1,972.0000 | -1398 |
| 12/10/2004 | 435 BCGI | | | -100 | $9.8600 | -$986.0000 | -1498 |
| 12/13/2004 | 435 BCGI | | | -300 | $10.0900 | -$3,027.0000 | -1798 |
| 12/13/2004 | 435 BCGI | | | -300 | $10.0900 | -$3,027.0000 | -2098 |
| 12/13/2004 | 435 BCGI | | | -100 | $10.0900 | -$1,009.0000 | -2198 |
| 12/13/2004 | 435 BCGI | | | -38 | $10.0900 | -$383.4200 | -2236 |
| 12/14/2004 | 435 BCGI | 200 | | | $9.8600 | -$1,972.0000 | -2036 |
| 12/14/2004 | 435 BCGI | 400 | | | $9.8700 | -$3,948.0000 | -1636 |
| 12/14/2004 | 435 BCGI | 100 | | | $9.8700 | -$987.0000 | -1536 |
| 12/14/2004 | 435 BCGI | 200 | | | $9.8700 | -$1,974.0000 | -1336 |
| 12/15/2004 | 435 BCGI | | | -100 | $9.8900 | -$989.0000 | -1436 |
| 12/15/2004 | 435 BCGI | | | -74 | $9.8900 | -$731.8600 | -1510 |

| Date | Symbol | Buy | Sell | Price | Amount | Balance |
|---|---|---|---|---|---|---|
| 12/16/2004 | 435 BCGI | 100 | | $9.6500 | -$965.0000 | -1410 |
| 12/16/2004 | 435 BCGI | 100 | | $9.6500 | -$965.0000 | -1310 |
| 12/16/2004 | 435 BCGI | 800 | | $9.6500 | -$7,720.0000 | -510 |
| 12/16/2004 | 435 BCGI | 82 | | $9.6300 | -$789.6600 | -428 |
| 12/16/2004 | 435 BCGI | 100 | | $9.6300 | -$963.0000 | -328 |
| 12/16/2004 | 435 BCGI | 100 | | $9.6300 | -$963.0000 | -228 |
| 12/16/2004 | 435 BCGI | 200 | | $9.6400 | -$1,928.0000 | -28 |
| 12/16/2004 | 435 BCGI | 18 | | $9.6400 | -$173.5200 | -10 |
| 12/17/2004 | 435 BCGI | | -500 | $9.5000 | -$4,750.0000 | -510 |
| 12/17/2004 | 435 BCGI | | -100 | $9.5000 | -$950.0000 | -610 |
| 12/17/2004 | 435 BCGI | 2200 | | $9.5000 | -$20,900.0000 | 1590 |
| 12/17/2004 | 435 BCGI | 12 | | $9.5600 | -$114.7200 | 1602 |
| 12/17/2004 | 435 BCGI | 100 | | $9.5800 | -$958.0000 | 1702 |
| 12/17/2004 | 435 BCGI | 100 | | $9.5700 | -$957.0000 | 1802 |
| 12/17/2004 | 435 BCGI | 100 | | $9.5800 | -$958.0000 | 1902 |
| 12/17/2004 | 435 BCGI | 212 | | $9.5800 | -$2,030.9600 | 2114 |
| 12/30/2004 | 435 BCGI | 76 | | $9.4000 | -$714.4000 | 2190 |
| 1/3/2005 | 435 BCGI | | -25 | $9.2500 | -$231.2500 | 2165 |
| 1/3/2005 | 435 BCGI | | -100 | $9.2500 | -$925.0000 | 2065 |
| 1/3/2005 | 435 BCGI | | -475 | $9.2500 | -$4,393.7500 | 1590 |
| 1/4/2005 | 435 BCGI | 125 | | $9.0000 | -$1,125.0000 | 1715 |
| 1/5/2005 | 435 BCGI | 58 | | $8.9100 | -$516.7800 | 1773 |
| 1/6/2005 | 435 BCGI | | -100 | $9.1000 | -$910.0000 | 1673 |
| 1/6/2005 | 435 BCGI | | -12 | $9.1000 | -$109.2000 | 1661 |
| 1/7/2005 | 435 BCGI | 76 | | $9.0800 | -$690.0800 | 1737 |
| 1/10/2005 | 435 BCGI | | -248 | $9.3900 | -$2,328.7200 | 1489 |
| 1/12/2005 | 435 BCGI | | -57 | $9.4700 | -$539.7900 | 1432 |
| 1/13/2005 | 435 BCGI | 71 | | $9.4400 | -$670.2400 | 1503 |
| 1/14/2005 | 435 BCGI | 265 | | $9.2500 | -$2,451.2500 | 1768 |
| 1/18/2005 | 435 BCGI | | -111 | $9.3800 | -$1,041.1800 | 1657 |
| 1/19/2005 | 435 BCGI | 75 | | $9.3900 | -$704.2500 | 1732 |
| 1/20/2005 | 435 BCGI | 9 | | $9.0700 | -$81.6300 | 1741 |
| 1/20/2005 | 435 BCGI | 100 | | $9.0700 | -$907.0000 | 1841 |
| 1/20/2005 | 435 BCGI | 56 | | $9.0700 | -$507.9200 | 1897 |
| 1/21/2005 | 435 BCGI | 94 | | $8.8800 | -$834.7200 | 1991 |
| 1/21/2005 | 435 BCGI | | -1000 | $8.9200 | -$8,920.0000 | 991 |
| 1/24/2005 | 435 BCGI | | -35 | $8.9600 | -$313.6000 | 956 |
| 1/25/2005 | 435 BCGI | 76 | | $8.8100 | -$669.5600 | 1032 |
| 1/27/2005 | 435 BCGI | | -100 | $8.2000 | -$820.0000 | 932 |
| 1/27/2005 | 435 BCGI | | -200 | $8.2000 | -$1,640.0000 | 732 |
| 1/27/2005 | 435 BCGI | | -100 | $8.2000 | -$820.0000 | 632 |
| 1/27/2005 | 435 BCGI | | -100 | $8.2000 | -$820.0000 | 532 |
| 1/27/2005 | 435 BCGI | | -100 | $8.1000 | -$810.0000 | 432 |
| 1/27/2005 | 435 BCGI | | -400 | $8.1000 | -$3,240.0000 | 32 |
| 1/27/2005 | 435 BCGI | | -200 | $7.9800 | -$1,596.0000 | -168 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -268 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -368 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -468 |
| 1/28/2005 | 435 BCGI | | -100 | $7.5800 | -$758.0000 | -568 |
| 1/28/2005 | 435 BCGI | | -150 | $7.5700 | -$1,135.5000 | -718 |
| 1/28/2005 | 435 BCGI | | -100 | $7.8900 | -$789.0000 | -818 |
| 1/28/2005 | 435 BCGI | | -197 | $7.8800 | -$1,552.3600 | -1015 |

| Date | Symbol | | Qty | Price | Amount | |
|---|---|---|---|---|---|---|
| 1/28/2005 | 435 BCGI | | -100 | $7.6200 | -$762.0000 | -1115 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6100 | -$761.0000 | -1215 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -1315 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6100 | -$761.0000 | -1415 |
| 1/28/2005 | 435 BCGI | | -100 | $7.5800 | -$758.0000 | -1515 |
| 2/2/2005 | 435 BCGI | 269 | | $7.4600 | -$2,006.7400 | -1246 |
| 2/2/2005 | 435 BCGI | 100 | | $7.4700 | -$747.0000 | -1146 |
| 2/2/2005 | 435 BCGI | 31 | | $7.4700 | -$231.5700 | -1115 |
| 2/4/2005 | 435 BCGI | | -100 | $7.6400 | -$764.0000 | -1215 |
| 2/4/2005 | 435 BCGI | | -28 | $7.6400 | -$213.9200 | -1243 |
| 2/7/2005 | 435 BCGI | 100 | | $7.5500 | -$755.0000 | -1143 |
| 2/7/2005 | 435 BCGI | 30 | | $7.5500 | -$226.5000 | -1113 |
| 2/10/2005 | 435 BCGI | 100 | | $7.1200 | -$712.0000 | -1013 |
| 2/10/2005 | 435 BCGI | 100 | | $7.1200 | -$712.0000 | -913 |
| 2/10/2005 | 435 BCGI | 100 | | $7.1200 | -$712.0000 | -813 |
| 2/10/2005 | 435 BCGI | 231 | | $7.1300 | -$1,647.0300 | -582 |
| 2/11/2005 | 435 BCGI | 100 | | $6.9500 | -$695.0000 | -482 |
| 2/11/2005 | 435 BCGI | 102 | | $6.9500 | -$708.9000 | -380 |
| 2/14/2005 | 435 BCGI | | -500 | $7.4200 | -$3,710.0000 | -880 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9300 | -$793.0000 | -980 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1080 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1180 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1280 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1380 |
| 2/15/2005 | 435 BCGI | | -250 | $7.9200 | -$1,980.0000 | -1630 |
| 2/16/2005 | 435 BCGI | 160 | | $7.7400 | -$1,238.4000 | -1470 |
| 2/17/2005 | 435 BCGI | 100 | | $7.4900 | -$749.0000 | -1370 |
| 2/17/2005 | 435 BCGI | 15 | | $7.4900 | -$112.3500 | -1355 |
| 2/17/2005 | 435 BCGI | 100 | | $7.5100 | -$751.0000 | -1255 |
| 2/17/2005 | 435 BCGI | 200 | | $7.5100 | -$1,502.0000 | -1055 |
| 2/17/2005 | 435 BCGI | 100 | | $7.5100 | -$751.0000 | -955 |
| 2/18/2005 | 435 BCGI | | -100 | $7.5500 | -$755.0000 | -1055 |
| 2/18/2005 | 435 BCGI | | -100 | $7.5500 | -$755.0000 | -1155 |
| 2/18/2005 | 435 BCGI | | -73 | $7.5500 | -$551.1500 | -1228 |
| 2/18/2005 | 435 BCGI | | -100 | $7.5600 | -$756.0000 | -1328 |
| 2/18/2005 | 435 BCGI | | -200 | $7.5600 | -$1,512.0000 | -1528 |
| 2/18/2005 | 435 BCGI | 2500 | | $7.6800 | -$19,200.0000 | 972 |
| 2/24/2005 | 435 BCGI | 39 | | $7.5300 | -$293.6700 | 1011 |
| 3/2/2005 | 435 BCGI | 100 | | $7.2400 | -$724.0000 | 1111 |
| 3/2/2005 | 435 BCGI | 78 | | $7.2400 | -$564.7200 | 1189 |
| 3/7/2005 | 435 BCGI | 3 | | $7.0900 | -$21.2700 | 1192 |
| 3/7/2005 | 435 BCGI | 100 | | $7.1000 | -$710.0000 | 1292 |
| 3/7/2005 | 435 BCGI | 12 | | $7.1000 | -$85.2000 | 1304 |
| 3/8/2005 | 435 BCGI | 96 | | $6.9400 | -$666.2400 | 1400 |
| 3/10/2005 | 435 BCGI | 100 | | $6.5300 | -$653.0000 | 1500 |
| 3/10/2005 | 435 BCGI | 359 | | $6.5300 | -$2,344.2700 | 1859 |
| 3/18/2005 | 435 BCGI | 100 | | $7.4600 | -$746.0000 | 1959 |
| 3/18/2005 | 435 BCGI | 400 | | $7.4600 | -$2,984.0000 | 2359 |
| 3/18/2005 | 435 BCGI | 100 | | $7.4600 | -$746.0000 | 2459 |
| 3/18/2005 | 435 BCGI | 100 | | $7.4600 | -$746.0000 | 2559 |
| 3/18/2005 | 435 BCGI | | -100 | $7.5400 | -$754.0000 | 2459 |
| 3/18/2005 | 435 BCGI | | -200 | $7.5400 | -$1,508.0000 | 2259 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 3/18/2005 | 435 BCGI | | | -100 | $7.5300 | -$753.0000 | 2159 |
| 3/18/2005 | 435 BCGI | | | -100 | $7.5300 | -$753.0000 | 2059 |
| 3/22/2005 | 435 BCGI | | | -100 | $7.5300 | -$753.0000 | 1959 |
| 3/22/2005 | 435 BCGI | | | -106 | $7.5200 | -$797.1200 | 1853 |
| 3/22/2005 | 435 BCGI | | | -59 | $7.5100 | -$443.0900 | 1794 |
| 3/23/2005 | 435 BCGI | | 9 | | $7.3300 | -$65.9700 | 1803 |
| 4/8/2005 | 435 BCGI | | 1300 | | $6.5500 | -$8,515.0000 | 3103 |
| 4/11/2005 | 435 BCGI | | 200 | | $6.3000 | -$1,260.0000 | 3303 |
| 4/18/2005 | 435 BCGI | | 154 | | $6.1900 | -$953.2600 | 3457 |
| 4/21/2005 | 435 BCGI | | | -63 | $6.4000 | -$403.2000 | 3394 |
| 4/27/2005 | 435 BCGI | | 184 | | $5.8300 | -$1,072.7200 | 3578 |
| 5/6/2005 | 435 BCGI | | 33 | | $5.7600 | -$190.0800 | 3611 |
| 5/10/2005 | 435 BCGI | | | -100 | $5.9800 | -$598.0000 | 3511 |
| | | | 47,240 | -43,729 | | -$857,649.8000 | |
| | | | | | | | |
| 4/16/2004 | 435 QGBAPR10C | | 3 | | $1.9000 | -$570.0000 | |
| 4/15/2004 | 435 QGBAPR12C | | | -10 | $0.1000 | -$100.0000 | |
| 4/16/2004 | 435 QGBAPR12C | | | -10 | $0.0000 | $0.0000 | |
| 3/22/2005 | 435 QGBAPR7C | | 4 | | $0.4000 | -$160.0000 | |
| 3/22/2005 | 435 QGBAPR7C | | 2 | | $0.4000 | -$80.0000 | |
| 4/15/2005 | 435 QGBAPR7C | | | -6 | $0.0000 | $0.0000 | |
| 6/23/2004 | 435 QGBAUG10C | | 10 | | $0.6000 | -$600.0000 | |
| 7/9/2004 | 435 QGBAUG10C | | 10 | | $0.4000 | -$400.0000 | |
| 7/22/2004 | 435 QGBAUG10C | | | -30 | $0.1500 | -$450.0000 | |
| 8/20/2004 | 435 QGBAUG10C | | 10 | | $0.0000 | $0.0000 | |
| 7/9/2004 | 435 QGBAUG10P | | 1 | | $0.9500 | -$95.0000 | |
| 8/20/2004 | 435 QGBAUG10P | | | -1 | $1.6600 | -$166.0000 | |
| 5/19/2004 | 435 QGBDEC10C | | | -3 | $2.6500 | -$795.0000 | |
| 6/14/2004 | 435 QGBDEC10C | | 6 | | $1.1000 | -$660.0000 | |
| 6/14/2004 | 435 QGBDEC10C | | 8 | | $1.1000 | -$880.0000 | |
| 6/18/2004 | 435 QGBDEC10C | | 3 | | $1.3000 | -$390.0000 | |
| 6/21/2004 | 435 QGBDEC10C | | 10 | | $1.1500 | -$1,150.0000 | |
| 6/22/2004 | 435 QGBDEC10C | | 10 | | $1.0500 | -$1,050.0000 | |
| 10/4/2004 | 435 QGBDEC10C | | 10 | | $0.4500 | -$450.0000 | |
| 12/17/2004 | 435 QGBDEC10C | | | -44 | $0.0000 | $0.0000 | |
| 6/10/2004 | 435 QGBDEC10P | | 2 | | $2.0000 | -$400.0000 | |
| 8/9/2004 | 435 QGBDEC10P | | | -10 | $2.2500 | -$2,250.0000 | |
| 8/13/2004 | 435 QGBDEC10P | | 5 | | $2.5000 | -$1,250.0000 | |
| 11/30/2004 | 435 QGBDEC10P | | 4 | | $0.9500 | -$380.0000 | |
| 12/17/2004 | 435 QGBDEC10P | | | -1 | $0.5000 | -$50.0000 | |
| 4/21/2004 | 435 QGBDEC12C | | 2 | | $1.9500 | -$390.0000 | |
| 6/21/2004 | 435 QGBDEC12C | | 5 | | $0.5500 | -$275.0000 | |
| 6/23/2004 | 435 QGBDEC12C | | 10 | | $0.4500 | -$450.0000 | |
| 7/23/2004 | 435 QGBDEC12C | | 4 | | $0.2000 | -$80.0000 | |
| 11/30/2004 | 435 QGBDEC12C | | 10 | | $0.0500 | -$50.0000 | |
| 12/17/2004 | 435 QGBDEC12C | | | -31 | $0.0000 | $0.0000 | |
| 5/3/2004 | 435 QGBDEC12P | | 5 | | $2.9000 | -$1,450.0000 | |
| 12/17/2004 | 435 QGBDEC12P | | | -5 | $3.0000 | -$1,500.0000 | |
| 7/21/2004 | 435 QGBDEC7C | | 4 | | $1.6000 | -$640.0000 | |
| 11/18/2004 | 435 QGBDEC7C | | 18 | | $2.0000 | -$3,600.0000 | |
| 12/17/2004 | 435 QGBDEC7C | | | -22 | $2.0000 | -$4,400.0000 | |

| | | | | | |
|---|---|---|---|---|---|
| 1/27/2005 | 435 QGBFEB7C | 15 | | $0.9500 | -$1,425.0000 |
| 1/28/2005 | 435 QGBFEB7C | 10 | | $0.5500 | -$550.0000 |
| 2/18/2005 | 435 QGBFEB7C | | -25 | $0.1800 | -$450.0000 |
| 1/27/2005 | 435 QGBFEB7P | | -10 | $0.3000 | -$300.0000 |
| 1/27/2005 | 435 QGBFEB7P | | -5 | $0.3000 | -$150.0000 |
| 2/18/2005 | 435 QGBFEB7P | 15 | | $0.0000 | $0.0000 |
| 12/3/2004 | 435 QGBJAN10P | 10 | | $1.0500 | -$1,050.0000 |
| 1/21/2005 | 435 QGBJAN10P | | -10 | $1.0800 | -$1,080.0000 |
| 6/9/2004 | 435 QGBJUL10C | 40 | | $0.9500 | -$3,800.0000 |
| 6/9/2004 | 435 QGBJUL10C | 10 | | $0.9500 | -$950.0000 |
| 7/9/2004 | 435 QGBJUL10C | | -10 | $0.0500 | -$50.0000 |
| 7/16/2004 | 435 QGBJUL10C | | -40 | $0.0000 | $0.0000 |
| 6/16/2004 | 435 QGBJUL10P | | -20 | $1.3500 | -$2,700.0000 |
| 7/6/2004 | 435 QGBJUL10P | | -4 | $0.7000 | -$280.0000 |
| 7/16/2004 | 435 QGBJUL10P | 24 | | $1.0900 | -$2,616.0000 |
| 5/14/2004 | 435 QGBJUN10C | 10 | | $1.3500 | -$1,350.0000 |
| 5/14/2004 | 435 QGBJUN10C | 10 | | $1.3500 | -$1,350.0000 |
| 5/14/2004 | 435 QGBJUN10C | 10 | | $1.3500 | -$1,350.0000 |
| 6/1/2004 | 435 QGBJUN10C | | -3 | $1.1000 | -$330.0000 |
| 6/18/2004 | 435 QGBJUN10C | | -27 | $0.0000 | $0.0000 |
| 5/11/2004 | 435 QGBJUN10P | 27 | | $0.4000 | -$1,080.0000 |
| 5/13/2004 | 435 QGBJUN10P | 40 | | $0.4500 | -$1,800.0000 |
| 6/9/2004 | 435 QGBJUN10P | | -20 | $0.1000 | -$200.0000 |
| 6/14/2004 | 435 QGBJUN10P | 10 | | $0.9000 | -$900.0000 |
| 6/14/2004 | 435 QGBJUN10P | 6 | | $0.9000 | -$540.0000 |
| 6/14/2004 | 435 QGBJUN10P | 6 | | $0.9000 | -$540.0000 |
| 6/18/2004 | 435 QGBJUN10P | | -23 | $0.5299 | -$1,218.7700 |
| 6/18/2004 | 435 QGBJUN12C | | -8 | $0.0000 | $0.0000 |
| 4/28/2004 | 435 QGBJUN12P | | -10 | $1.8500 | -$1,850.0000 |
| 5/11/2004 | 435 QGBJUN12P | 6 | | $1.6500 | -$990.0000 |
| 5/21/2004 | 435 QGBJUN12P | | -20 | $2.1000 | -$4,200.0000 |
| 6/18/2004 | 435 QGBJUN12P | 24 | | $3.0300 | -$7,272.0000 |
| 4/20/2004 | 435 QGBJUN7C | 20 | | $4.0000 | -$8,000.0000 |
| 6/18/2004 | 435 QGBJUN7C | | -20 | $1.9700 | -$3,940.0000 |
| 3/10/2005 | 435 QGBJUN7C | | -10 | $0.6000 | -$600.0000 |
| 6/18/2004 | 435 QGBJUN7P | | -5 | $0.0000 | $0.0000 |
| 1/3/2005 | 435 QGBMAR10C | 20 | | $0.4000 | -$800.0000 |
| 3/18/2005 | 435 QGBMAR10C | | -20 | $0.0000 | $0.0000 |
| 1/28/2005 | 435 QGBMAR7C | 10 | | $0.7500 | -$750.0000 |
| 3/18/2005 | 435 QGBMAR7C | | -10 | $0.0000 | $0.0000 |
| 4/16/2004 | 435 QGBMAY10C | 7 | | $2.0000 | -$1,400.0000 |
| 4/20/2004 | 435 QGBMAY10C | 1 | | $1.5500 | -$155.0000 |
| 5/3/2004 | 435 QGBMAY10C | 3 | | $1.4500 | -$435.0000 |
| 5/21/2004 | 435 QGBMAY10C | 1 | | $0.3500 | -$35.0000 |
| 4/20/2004 | 435 QGBMAY10P | | -10 | $0.5000 | -$500.0000 |
| 4/28/2004 | 435 QGBMAY10P | 10 | | $0.2000 | -$200.0000 |
| 4/2/2004 | 435 QGBMAY12C | 10 | | $0.9500 | -$950.0000 |
| 4/2/2004 | 435 QGBMAY12C | 15 | | $0.9500 | -$1,425.0000 |
| 4/16/2004 | 435 QGBMAY12C | 10 | | $0.7500 | -$750.0000 |
| 4/21/2004 | 435 QGBMAY12C | | -10 | $0.3500 | -$350.0000 |
| 4/26/2004 | 435 QGBMAY12C | | -10 | $0.3000 | -$300.0000 |
| 5/3/2004 | 435 QGBMAY12C | 19 | | $0.1000 | -$190.0000 |

| | | | | | |
|---|---|---|---|---|---|
| 5/14/2004 | 435 QGBMAY12C | | -7 | $0.0500 | -$35.0000 |
| 5/21/2004 | 435 QGBMAY12C | | -41 | $0.0000 | $0.0000 |
| 4/16/2004 | 435 QGBMAY12P | 10 | | $1.1500 | -$1,150.0000 |
| 4/20/2004 | 435 QGBMAY12P | | -20 | $1.6000 | -$3,200.0000 |
| 5/21/2004 | 435 QGBMAY12P | | -10 | $2.1500 | -$2,150.0000 |
| 5/21/2004 | 435 QGBMAY12P | 20 | | $1.7500 | -$3,500.0000 |
| 5/12/2005 | 435 QGBMAY5C | 3 | | $1.3500 | -$405.0000 |
| 5/20/2005 | 435 QGBMAY5C | | -3 | $0.0000 | $0.0000 |
| 5/12/2005 | 435 QGBMAY7C | | -10 | $0.4500 | -$450.0000 |
| 5/20/2005 | 435 QGBMAY7C | 10 | | $0.0000 | $0.0000 |
| 6/16/2004 | 435 QGBSEP10C | 15 | | $0.7000 | -$1,050.0000 |
| 6/22/2004 | 435 QGBSEP10C | 10 | | $0.7000 | -$700.0000 |
| 7/21/2004 | 435 QGBSEP10C | | -10 | $0.3000 | -$300.0000 |
| 7/21/2004 | 435 QGBSEP10C | | -20 | $0.3000 | -$600.0000 |
| 7/23/2004 | 435 QGBSEP10C | | -2 | $0.3000 | -$60.0000 |
| 9/17/2004 | 435 QGBSEP10C | 7 | | $0.0000 | $0.0000 |
| 6/7/2004 | 435 QGBSEP10P | | -10 | $1.2000 | -$1,200.0000 |
| 6/14/2004 | 435 QGBSEP10P | | -10 | $1.8000 | -$1,800.0000 |
| 9/17/2004 | 435 QGBSEP10P | 30 | | $1.7200 | -$5,160.0000 |
| 4/28/2004 | 435 QGBSEP12C | | -15 | $1.2500 | -$1,875.0000 |
| 4/28/2004 | 435 QGBSEP12C | | -20 | $1.2000 | -$2,400.0000 |
| 5/13/2004 | 435 QGBSEP12C | 1 | | $0.8500 | -$85.0000 |
| 6/4/2004 | 435 QGBSEP12C | | -10 | $0.8500 | -$850.0000 |
| 6/21/2004 | 435 QGBSEP12C | 3 | | $0.2500 | -$75.0000 |
| 9/17/2004 | 435 QGBSEP12C | 43 | | $0.0000 | $0.0000 |
| 4/22/2004 | 435 QGBSEP15C | | -10 | $0.7000 | -$700.0000 |
| 4/22/2004 | 435 QGBSEP15C | | -10 | $0.8000 | -$800.0000 |
| 4/22/2004 | 435 QGBSEP15C | | -3 | $0.8000 | -$240.0000 |
| 9/17/2004 | 435 QGBSEP15C | 28 | | $0.0000 | $0.0000 |
| 7/21/2004 | 435 QGBSEP7C | 10 | | $1.2500 | -$1,250.0000 |
| 9/17/2004 | 435 QGBSEP7C | | -10 | $0.7799 | -$779.9000 |
| 4/8/2005 | 435 QGBSEP7P | 25 | | $1.8000 | -$4,500.0000 |
| | | | | | -$121,627.6700 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Rosenbaum Capital, LLC v. Boston Communications Group, Inc., et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

- [ ] I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- [X] II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

- [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

# 05 - 11165 WGY

- [ ] IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

- [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]    NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]    NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division [X]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    David Pastor, Esquire
ADDRESS    Gilman and Pastor, LLP, 60 State Street, 37th Floor, Boston, MA    02109
TELEPHONE NO.    (617) 742-9700

(Coversheetlocal.wpd - 10/17/02)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Rosenbaum Capital, LLC, on behalf of itself and all others similarly situated

## DEFENDANTS

Boston Communications Group, Inc., Karen A. Walker and Edward Y. Snowden

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Montgomery, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Pastor, Esquire
Gilman and Pastor, LLP- (617) 742-9700
60 State Street, 37th Floor
Boston, MA  02109

ATTORNEYS (IF KNOWN)

# 05 - 11165 WGY

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                          AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☒ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Action for securities fraud under 15 U.S.C., Sec. 78; (b)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____   DOCKET NUMBER _____

DATE
6/6/05

SIGNATURE OF ATTORNEY OF RECORD
David Post

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____