**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROSENBAUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>                                                      Plaintiff,<br><br>                        v.<br><br>BOSTON COMMUNICATIONS GROUP, INC., KAREN A WALKER and EDWARD Y. SNOWDEN,<br><br>                                                      Defendants. | **CIVIL ACTION NO. 05-11165 (WGY)**<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Lead Plaintiff Rosenbaum Capital LLC ("Rosenbaum"), individually and on behalf of all others similarly situated, by its undersigned attorneys, for its amended complaint against defendants, alleges, except as to its own transactions, upon information and belief, based upon, *inter alia,* the investigation conducted by and through its attorneys, which included, among other things, a review of the relevant public filings made by defendant Boston Communications Group, Inc. ("BCGI" or the "Company") with the Securities and Exchange Commission ("SEC"); a review of publicly-available trial records, transcripts, and documents; and teleconferences, press releases, news articles, analyst reports, and media reports concerning the Company, as follows:

## SUMMARY OF THE ACTION

1.      This is a class action on behalf of all persons, other than defendants, who purchased, converted, exchanged or otherwise acquired BCGI securities during the period from June 6, 2002 to May 20, 2005, inclusive (the "Class Period") to recover damages caused by defendants' violations of the federal securities law in disseminating to the investing public false and misleading statements concerning a patent infringement litigation, *Freedom Wireless, Inc. v.*

*BCGI, et al.,* No 1:00-CV-12234-EFH (D. Mass. May 20, 2005) (the "*Freedom* Litigation"), which had been pending against the Company since March 30, 2000. Defendants falsely represented to the investing public (a) that BCGI was confident that it was not infringing on the patents at issue in the *Freedom* Litigation, (b) that the patents were invalid, and (c) that BCGI had meritorious defenses to the *Freedom* Litigation.

2.     However, despite defendants' representations and reassurances to the investing public, on May 20, 2005 (the last day of the Class Period), the Company announced to the world that the jury in the *Freedom* Litigation had in fact issued a verdict against BCGI, finding that the Company *willfully infringed* on the patents at issue, and awarded plaintiff Freedom Wireless, Inc. ("Freedom") approximately $128 million in damages.

3.     On this news, the Company's stock price dropped from $4.81 to $1.75 on volume of 12,499,900 shares traded. In the 90-day period subsequent to May 20, 2005, the average price of BCGI common stock was $1.99.[1]

4.     Moreover, on September 1, 2005, U.S. District Judge Edward F. Harrington denied BCGI's request to reduce the *Freedom* Litigation jury's May 20th damages award, and upheld the $128 million patent infringement verdict against the Company, which broke down as follows:  (i) $122 million against BCGI and defendant Cingular Wireless, Inc.; (ii) $4.9 million against BCGI and AT & T Wireless PCS; (iii) $925,000 against BCGI and CMT Partners; (iv) $200,000 against BCGI and Western Wireless Corp.; and (v) interests and costs. BCGI was substantially on the hook for each and every one of these individual jury awards.

---

[1]  Under the PSLRA, "the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  Section 21D(e)(1); 15 U.S.C. 78u-4(e)(1).

5.     This news caused the Company's stock price to drop again, from a closing price of $1.72 on September 1st to a $1.11 closing price on September 2nd, on volume of 3,516,000 shares traded.

6.     Each defendant is liable for (a) making false statements, or (b) failing to disclose adverse facts known to him about BCGI. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of BCGI common stock was a success, as it (i) deceived the investing public regarding BCGI prospects and business; (ii) artificially inflated the prices of BCGI common stock; (iii) allowed the Individual Defendants, as Company insiders, to profited personally from the wrongdoing alleged herein by selling and exercising almost 251,742 shares and options of BCGI common stock at artificially inflated prices, as detailed below, for total proceeds of almost $3 million; and (iv) caused plaintiff and other members of the Class to purchase BCGI common stock at inflated prices.

**JURISDICTION AND VENUE**

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. § 240.10b-5.

8.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

9.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Many of the acts and transactions constituting the violations of the law alleged herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in substantial part in this Judicial District.  In addition, BCGI maintains its principal place of business within this Judicial District.

10.    In connection with the acts, transactions and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications and the facilities of the national securities exchanges.

## PARTIES

11.    Plaintiff Rosenbaum Capital LLC was appointed Lead Plaintiff pursuant to this Court's Order dated August 16, 2005.  Lead Plaintiff purchased BCGI securities during the Class Period as set forth in its certification, submitted herewith, and was damaged as a result thereof.

12.    BCGI is a Massachusetts corporation and maintains its principal executive offices at 55 Middlesex Turnpike, Bedford, Massachusetts 01730.  Incorporated in 1988, BCGI provides real-time subscriber management services to the wireless industry, including (i) billing and transaction processing services that enable carriers to offer prepaid wireless calling to their subscribers, (ii) roaming services that provide wireless carriers the ability to generate revenues from subscribers who are not covered under traditional roaming agreements by arranging payment for roaming calls, (iii) prepaid systems that market to international carriers, and (iv) assembling the voice nodes used to support its voice resource network.

13.    Defendant Karen A. Walker was, at all times material to the claims set forth herein, the Vice President, Finance and Administration and Chief Financial Officer of BCGI. Defendant Walker was a direct and substantial participant in the wrongdoing who profited from the sale of BCGI securities at artificially inflated prices.  During the Class Period, defendant Walker sold and exercised a total of 98,417 shares and options of BCGI common stock, recognizing more than $1.25 million in proceeds.

14.    Defendant Edward Y. Snowden was, at all times material to the claims set forth herein, the President and Chief Executive Officer of BCGI.  Defendant Snowden was a direct

and substantial participant in the wrongdoing who profited from the sale of BCGI securities at artificially inflated prices. During the Class Period, defendant Snowden sold and exercised a total of 153,325 shares and options of BCGI common stock, recognizing more than $1.74 million in proceeds.

15.     Walker and Snowden are sometimes referred to herein as the "Individual Defendants." Because of the Individual Defendants' positions with the Company, the Individual Defendants had access to the adverse undisclosed information about the Company's business, operations, financial statements, infringing activities and liability in the *Freedom* Litigation via access to internal corporate documents (including the Company's operating plans, c2c design files (as described below) and other documents related to the *Freedom* Litigation), and conversations and connections with other corporate officers and employees as well as *Freedom* Litigation defense counsel.

16.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings and other public statements as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of BCGI, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations and products, as well as infringing activities as alleged herein. Said defendants were involved in drafting, producing, reviewing, making and/or disseminating the false and misleading statements and information alleged herein, were aware, or

recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

17.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ, and governed by the provisions of the federal securities laws, the defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's exposure in the *Freedom* Litigation and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.   The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their executive and managerial positions with BCGI, each of the defendants had access to the adverse undisclosed information about BCGI business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about BCGI and its business issued or adopted by the Company materially false and misleading.

19.     The Individual Defendants, because of their positions of control and authority as officers of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.

Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.   Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

20.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of BCGI securities by disseminating materially false and misleading statements and/or concealing material adverse facts.   The scheme: (i) deceived the investing public regarding BCGI's business, operations, management and the intrinsic value of BCGI's common stock; and (ii) caused plaintiff and other members of the Class to purchase BCGI's securities at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased BCGI common stock during the Class Period and who suffered damages (the "Class").   Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

22.    The members of the Class are so numerous that joinder of all members is impracticable.   According to the Company's report filed on Form 10-Q with the SEC on May 9, 2005, for the period ended March 30, 2005, BCGI has approximately 17,639,384 shares of common stock outstanding.   While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members

of the Class may be identified from records maintained by BCGI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendant's acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, financial condition and management of BCGI; and

(c)     whether defendants acted knowingly or recklessly in making materially false and misleading statements during the Class Period;

(d)     whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of defendants' conduct complained of herein; and

(e)     to what extent the members of the Class have sustained damages and the proper measure of damages.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**SUBSTANTIVE ALLEGATIONS**

**Factual Background**

27.     The *Freedom* Litigation was commenced on March 30, 2000 in the Northern District of California against BCGI, as well as other wireless service carrier defendants, for willful infringement of patents relating to prepaid cellular communication systems.  The case was transferred to the District of Massachusetts in October 2000.

28.     At issue in the *Freedom* Litigation were Patent Nos. 5,722,067 (the "'067 Patent") and 6,157,823 (the "'823 Patent"), which concerned a system and a method to allow wireless telephone users to pay in advance for their wireless service.  The system was first conceived and developed in 1994 by a cellular telephone marketer, Douglas Fougnies, and an engineer, Dan Harned.  As described below, the patents were later transferred to Freedom Wireless, Inc. ("Freedom").

29.     In the late 1980s, Mr. Fougnies, a seller of hand-held walkie-talkies at Coded Communications in Phoenix, Arizona, began to realize the potential of cellular telephone technology.  Mr. Fougnies became an authorized agent of a company called Metro Mobile, which later became Bell Atlantic Mobile.  Mr. Fougnies ultimately became the owner of the very first storefront for cell phone equipment in Arizona.  Mr. Fougnies also became one of Bell Atlantic Mobile's largest authorized agents and retailers in the region, as well as one of its

largest resellers.  Eventually, after having owned four stores, with approximately 80 employees, Mr. Fougnies expanded his business to prepaid wireless telephone technology.

30.     When Mr. Fougnies began selling cell phones, they were very expensive. In particular, much of the expense was the mere cost of purchasing minutes for calling time. Mr. Fougnies realized that a large percentage of the potential market was lost because prospective customers were being turned down upon submission of credit applications for the purchase of the then very costly cell phones.  Mr. Fougnies recognized that prepaid cell phones were a promising solution to this problem.

31.     However, Mr. Fougnies, though he had many years of experience in sales of wireless and cell phone technology, was not an engineer.  In 1993, through a mutual friend, Mr. Fougnies was introduced to Mr. Harned, an aerospace engineer, who could help him develop his ideas for prepaid cellular telephone services.  Mr. Harned, a graduate of the University of Arkansas, had worked several engineering jobs in both the defense and space industry, but had become interested in computer telepathy – the relationship between computers and telephones.

32.     Thus, in 1993, Messrs. Fougnies and Harned began to design cell phone technology that would incorporate timing phone calls, thus making way for them to be able to pre-sell minutes to customers.  They sought to develop a prepaid cellular system that would keep track of the time that the phone was in use and then terminate the call when the time was up, so that a customer would not use more minutes then he had purchased.  This technology was desirable because, for the first time, it allowed subscribers who were a poor credit risk, or for whom ordinary postpaid services were not practical, to have access to wireless service.  The technology had certain features that uniquely benefited both subscribers and wireless service providers.  For example, the service was easy to use – both outgoing and incoming calls were

dialed in the same simple way as for ordinary post-paid subscribers. Each subscriber purchased an amount of prepaid service, and that amount was then recorded in a database accessible to the system. A call could not be completed unless the subscriber had a sufficient balance to cover at least a minimum duration call. As the call progressed, the amount of prepaid service available decreased. If the available amount of prepaid service decreased to zero, or some other threshold amount, during the call, the call would be "torn down" (forcibly disconnected) even though the participants had not hung up.

33.    Although others had attempted to develop prepaid wireless service before this time, Messrs. Fougnies's and Harned's invention had achieved a number of advantages never before available in one system that made it unique and thus, able to be patented, including: (a) *transparency* – where prepaid subscribers could initiate their prepaid telephone calls, as well as receive them, in the same way as postpaid subscribers, without needing to enter PIN numbers, dial 1-800 numbers, repeat destination numbers, or use authorization codes; (b) *secure* – the technology developed could not be hacked by unauthorized users; (c) *switch-based* – where prepaid subscribers could use any ordinary wireless telephone, but still be identified as prepaid; (d) *inbound and outbound* – where calls could be made both to and from prepaid subscribers even in areas where the recipient of a call needed to pay for the call; and (e) *the mid-call teardown* – where the system could disconnect an ongoing call as soon as the prepaid funds were exhausted.

34.    Therefore, having recognized that they had in fact developed something revolutionary within the cell phone industry, Messrs. Fougnies and Harned applied for a patent on their invention in December 1994, and were granted the first patent in February 1998, the '067 Patent. They then filed a follow-on patent or "continuation patent," which is a patent on the

same basic invention, but with slightly different claims, in January 1998, and were granted the second patent in December 2000, the '823 Patent.

35.    Throughout the mid-to-late-1990s, Messrs. Fougnies and Harned sold their prepaid wireless service through their Arizona-based company, Cellular Express, Inc., also known as Cellexis International, Inc., ultimately assigning their individual rights in the '067 and '823 Patents to a new company they had formed, Freedom.

36.    After Messrs. Fougnies and Harned developed this technology, but before the formal approval of their first patent, they visited many of the largest cell phone companies to discuss their invention.  They explained, under the protection of confidentiality agreements, that they had a unique way of handling prepaid cellular communications and asked these cell companies if they could buy unsold minutes from them to market their prepaid service.  In particular, Mr. Fougnies met with GTE, Bell Atlantic Mobile, Cellular One, and BellSouth. Their plan was to buy these unsold minutes in bulk, at a discounted price, and then resell them. It would be a profitable "win-win" situation for everyone involved.

37.    However, during this same time frame after their patent application was made but before its formal grant by the US Patent Office, many other companies were trying to come up with similar solutions and failing.  For example, BCGI sold and supplied equipment, services, and support to wireless service carriers, such as Cingular Wireless and AT&T Wireless, so that those carriers could offer a prepaid wireless option to their customers.  BCGI had a technology that they offered called DebitPlus, which was a wireless phone card.  The difference between BCGI's technology and that of Messrs. Fougnies and Harned was that with BCGI's DebitPlus, as a prepaid subscriber, it was still necessary to dial a 1-800 number, so that there was no transparency with BCGI's system.  Also, BCGI was still using a public system, which continued

to subject its prepaid customers to hacking, unlike the private system developed by Messrs. Fougnies and Harned.

38.    The *Freedom* Litigation ultimately focused on what came next in the timeline of the two patents – or, in other words, BCGI's willful infringement of Messrs. Fougnies's and Harned's invention.

39.    During 1995, Messrs. Fougnies and Harned, thriving from the positive reaction of the cellular phone companies to their invention, derived a business plan to actually create the service and establish the private connection with these cellular phone companies, so that they could buy the unused minutes and resell them at a profit.  In fact, in January 1995, Messrs. Fougnies and Harned went "live" with their service, in conjunction with Bell Atlantic Mobile and its private connection.

40.    As Freedom began to prosper, it expanded so quickly that it was forced at times to license this revolutionary technology to other companies to keep pace with demand.  By 1995, Freedom had around 85 employees nationwide.

41.    But, by 1996, everything suddenly changed.  Messrs. Fougnies and Harned were no longer getting the private connections from the cellular phone companies that they needed. None of these companies were allowing Freedom to plug into their private switches so that Freedom could then provide the secure and transparent prepaid communication system that they had invented.

42.    Sometime in 1996, it became very clear to Mr. Fougnies why things had changed. Mr. Fougnies read in a newspaper that Verizon Wireless, Inc. was offering a prepaid cellular service in conjunction with BCGI.  This service was virtually identical to Freedom's, but with one major difference: while Freedom was looking to purchase minutes from the cellular phone

companies and then resell them, BCGI was just a service company, handling all calls originating throughout the country from prepaid cellular subscribers using the BCGI wireless prepaid system. Instead, the cellular phone companies were now selling their *own* minutes directly to the customer, using the BCGI system. As a result, Freedom's business model became useless. Messrs. Fougnies and Harned were now being shut out of the very prepaid service industry that they had created.

43.     With increasing financial difficulties and no service to offer its customers, by 1997, it became Freedom's sole purpose to enforce the rights in its patents and determine which companies were infringing on them.

44.     In particular, Freedom went after BCGI and its suspiciously identical prepaid cellular service – what BCGI called the "c2c" System. Most all facets of the c2c System were indistinguishable from Freedom's system, with some inconsequential differences, including but not limited to: (1) Freedom had a "host computer" as part of its system, whereas BCGI called this same technology its "node site;" and (2) regarding the outbound call portion of the system, Freedom's system sent the signal straight from its host computer to the public telephone system, since they were going to resell the minutes, whereas BCGI, who was not reselling any minutes, sent the signal back to the "switch," which then sent it a local exchange carrier or some long-distance carrier. These were basically distinctions without much of a difference. In violation of patent law's doctrine of equivalence, BCGI was using a virtually identical system to Freedom's, with substantially the same function, done in substantially the same way, and with substantially the same results.

45.     That the c2c System was substantially identical to the '067 Patent system was not a complete surprise. In January 1995, an individual named Larry Rybar, who was then an

engineer with Bell Atlantic Mobile, and who concluded that the invention of Messrs. Fougnies and Harned was a "great idea" that "no one else had," also had extensive contacts with BCGI. At times it was observed that Mr. Rybar would suspiciously shuffle back and forth from informational meetings with Messrs. Fougnies and Harned, which were governed by the aforementioned confidentiality agreements, to meetings with individuals at BCGI.

46.     Indeed, BCGI's actions when learning of the '067 Patent betrayed a guilty conscience.  In 1998, after Freedom had officially been awarded the first patent, Freedom sent a letter to defendant Snowden, President of BCGI, which gave notice to BCGI of Freedom's patent approval, indicating that BCGI's system was therefore infringing on Freedom's patent and that BCGI would now need to license this prepaid cellular technology from Freedom.  Upon receiving the notice letter, BCGI hired experts to draft a variation of its c2c system, with additional unnecessary components, merely so that it would appear to be different from Freedom's now patented system.

47.     Also, upon receiving the notice letter from Freedom, BCGI contacted Orbital Sciences, the former employer of Mr. Harned, in the hope that Orbital might be the rightful owner of the Freedom patents, since Mr. Harned had worked on them while an employee at Orbital.  Ultimately, in May 2002, BCGI entered into an agreement with Orbital to pay Orbital $750,000 for a license to any rights Orbital *may* eventually realize it had in the Freedom patents.

48.     BCGI also sought legal advice and written opinions from patent law firms so that BCGI would then be able to mount a defense that it could not have acted willfully because it obtained an opinion letter from a law firm that defended its actions.  The law firm of Darby & Darby LLP erroneously issued opinions concluding that Freedom's patents were unenforceable. It came out during the trial in the *Freedom* Litigation that BCGI knew that these legal opinions

were neither thorough nor based on a review and analysis of Freedom's actual patent, defendants' systems, the prosecution history, the applicable law, or other relevant factors. Instead, these legal opinions were superficial and conclusory, and obtained for the use as a shield against claims of willful infringement.

49.    The *willfulness* of BCGI's infringement was put on center stage during the *Freedom* Litigation, as proof was offered that BCGI knew of Freedom's patents and had no reasonable basis for believing *either* that BCGI's systems and methods did not infringe Freedom's patents *or* that Freedom's patents were invalid or unenforceable.

50.    Following a 51-day trial on the issues of infringement and invalidity, the jury in the *Freedom* Litigation found that BCGI and each of the carrier defendants jointly infringed the two patents, and more importantly, that BCGI, in particular, had *willfully* infringed each of Freedom's two patents.

51.    The jury awarded, and the Court recently upheld on September 1, 2005, a verdict of approximately $128 million against all defendants, whereby BCGI was made responsible for substantially all of the award.  The Judge recognized, in denying BCGI's motion to reduce the award, that a $128 million damages award was appropriate in a case where BCGI obtained over $1.5 billion in revenue by using Freedom's patents.  This damages award exceeded the 400-employee Company's total revenue last year by more than $20 million, and could even rise further with the payment of attorneys' fees and other related charges.

52.    On news of this extraordinary jury award against BCGI for its willful infringement of Freedom's patents, the Company's stock price plummeted from $4.81 to $1.75. In the 90 days following the May 20, 2005 announcement, the value of BCGI securities has failed to rebound – with an average share price of $1.99.

53.     Furthermore, on subsequent news of the Court's affirmation of the $128 million award against BCGI, on September 1, 2005, the Company's stock price took yet another hit, dropping from a closing price of $1.72 on September 1st to a $1.11 closing price on September 2nd, on volume of 3,516,000 shares traded.

**Pre-Class Period Statements**

54.     From the outset of the *Freedom* Litigation through the beginning of the Class Period, in BCGI's public statements and SEC filings, defendants stuck with the mantra that the Company had done nothing wrong and expected to prevail in the patent case.

55.     A typical statement to this effect was the annual financial report with the SEC on Form 10-K for the period ending December 31, 2001, filed on April 1, 2002. The Form 10-K, signed by defendants Snowden and Walker, stated as follows:

> In March 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. The suit alleges that the defendants infringe a patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. The Company has indemnification obligations with respect to the other defendants. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The suit is currently in the discovery phase. The complaint has been amended to include a continuation patent. ***The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.***

(Emphasis added.)

56.     Even as the case became an increasing financial burden to the Company, defendants stuck to their rosy view of BCGI's likely fortunes therein. During an April 17, 2002 conference call with analysts, for example, defendant Walker made the following statements

regarding the *Freedom* Litigation in an attempt to explain the mounting expenses of defending

this action:

> As we noted in both our April 1st and today's press releases discovery in the patent suit brought by Freedom Wireless was recently extended and the scope of discovery was expanded. This has resulted in additional scheduled depositions, discovery disputes, additional motions filed and more hearing time required. As a result we have recorded an additional expense of $3.3 million to continue to vigorously defend our case. ***We feel very confident with our position that we do not infringe on the patent and that we have sufficient prior art and other arguments that invalidate the patent. Our case is strong and we anticipate a favorable summary judgment.*** However, parent litigation is expensive and we need to incur theses costs to defend our case and prevail.
>
> ***You know as I said we feel very confident about our position. Unfortunately, it's costing us a lot to defend it but we feel that we are in a very strong position and that we'll prevail.***

(Emphasis added.)  During the same call, defendant Snowden made the following statements

regarding the *Freedom* Litigation:

> … we don't like to come back and have to say here as we have one more time that we needed to extend based up extension of the discovery etcetera so we have worked very, very hard with counsel to very well understand the possible course and such and the great news is ***we absolutely remain confident in our success on the basis of non-infringement, on the basis of the fact that we believe that the patent is invalid*** and the matter as Karen said, these are expensive kinds of cases and we have anted up to rigorously defend our position.

(Emphasis added.)

**<u>False And Misleading Statements Made During The Class Period</u>**

57.    On August 14, 2002, the Company filed a quarterly financial report with the SEC

on Form 10-Q for the second quarter 2002, the period ending June 30, 2002.  The Form 10-Q,

signed by defendant Walker, announced that in the fourth quarter of 2000, the third quarter of

2001 and the first quarter of 2002, the Company recorded "special charges" of $2.6 million, $3.6

million and $3.3 million, respectively, principally to accrue for legal expenses estimated by the

Company's outside counsel to be incurred in the defense of the *Freedom* Litigation.

58.    In addition, this Form 10-Q, signed by defendant Walker, expressed less certainty

regarding the costs of defending the *Freedom* Litigation:

> There can be no assurances that the Company's expenses to defend
> the Freedom Wireless suit will not exceed the Company's estimate.
> ***The Company believes that the claims made by Freedom Wireless***
> ***are without merit and is vigorously defending the action.***

(Emphasis added.)

59.    Again, the Company disclosed the pendency of the *Freedom* Litigation in this

Form 10-Q, and stood by its position that: "***The Company does not believe that it infringes***

***these patents and believes that it has meritorious defenses to the action.***"  (Emphasis added.)

60.    Only two months later, on October 22, 2002, the Company held its third quarter

2002 conference call for the investigating public.  During the call, defendant Walker made the

following reassurances regarding the *Freedom* Litigation:

> As we mentioned in today's release, because of additional
> unforeseen delays in the discovery timeframe for the Freedom
> Wireless lawsuit and the entry of the district court scheduling
> order, this detailed the timeline for Discovery and summary
> judgment motions, we have changed the manner by which we
> accrued for these legal costs going forward.
>
> This new treatment does not reflect any change in our position on
> the case, and ***we remain confident that we do not infringe on the***
> ***Freedom Wireless patent. And that the patents are invalid in light***
> ***of prior art.***
>
> ***Again, I can't reiterate enough our counsel and we feel very***
> ***strongly about our case. Our position has not changed one bit, in***
> ***that regard.***

(Emphasis added.)

61.    On November 14, 2002, the Company filed a report with the SEC on Form 10-Q

for the third quarter 2002, the period ending September 30, 2002.  Again, the Company disclosed

the pendency of the *Freedom* Litigation, and stood by its position that: "***The Company does not***

***believe that it infringes these patents and believes that it has meritorious defenses to the***

***action.***"  (Emphasis added.)

62.     On February 4, 2003, the Company held its fourth quarter 2002 conference call

for the investing public.  Continuing its commitment to the Company's original position, even

after substantial discovery had taken place, during the call, defendant Walker made the following

statements regarding the *Freedom* Litigation:

> If the legal costs to defend Freedom Wireless suits continue
> throughout 2003 we expect the GAAP EPS should range between
> 52 and 58 cents per share, about triple 2002 GAAP earnings.  Note
> that we expect we will continue to generate quarterly after tax legal
> charges of approximately 3 cents per share until the Freedom
> Wireless matter is resolved.  I should also note that the timing of
> the case remains on track and we still expect that summary
> judgment motions will be submitted during sometime the second
> quarter of this year.  There are no other developments to report and
> there has been no change to our position in the case.  ***We remain***
> ***confident that we do not infringe on the Freedom Wireless***
> ***patents that the patents are invalid in light of prior art.***

(Emphasis added.)

63.     On March 27, 2003, the Company filed an annual financial report with the SEC

on Form 10-K for the period ending December 31, 2002.  The Form 10-K, signed by defendants

Snowden and Walker, repeated, though with more detail than its quarterly reports, essentially the

statements concerning the *Freedom* Litigation, including: **"We do not believe that we infringe**

**these patents and we believe that we have meritorious defenses to the action."** (Emphasis

added.)

64.     On April 16, 2003, as legal costs continued to sky-rocket, the Company issued a

press release restating its same position, in pertinent part:

Freedom Wireless Update

During the quarter ended March 31, 2003, the Company incurred $915,000 in legal costs, or approximately $0.03 per share after taxes, primarily for the continued defense of the Freedom Wireless patent infringement suit.  These costs are in line with previous guidance and are expected to continue at this level until the matter is resolved.  There are no developments to report on the case and exact timing of procedures has not been determined.  ***There has also been no change to the Company's position on the case and bcgi remains confident that it does not infringe the Freedom Wireless patents and that the patents are invalid in light of prior art.***

(Emphasis added).

65.    That same day, on April 16, 2003, the Company held its first quarter 2003 conference call for the investing public.  During the call, defendant Walker made the following statements regarding the *Freedom* Litigation:

> ***I should note that we remain confident that we do not infringe on the Freedom Wireless patents, and that the patents are*** invalid in light of [inaudible].  During this year, the court has been conducting procedures which are standard for patent cases, and the completion of these procedures dictate the timing of our summary judgment motion sometime during this quarter and hear the results of those motions at a later date.  Although, this may still happen, there are no firm dates or schedules as to when motions can be filed and then decided upon.  Thus although we believe that our case continues to progress well and ***that there has been no change to our positioning in the case***, there are no developments to report at this time.

(Emphasis added.)

66.    On May 15, 2003 the Company filed a quarterly financial report with the SEC on Form 10-Q for the first quarter 2003, the period ending March 31, 2003.  Again, the Company disclosed the pendency of the *Freedom* Litigation, and stood by its position that the Company

does "**not believe that we infringe these patents and we believe that we have meritorious defenses to the action.**"  (Emphasis added.)

67.    On July 16, 2003, the Company held its second quarter 2003 conference call for the investing public.  During the call, while sticking to the Company's original position, defendant Walker made the following statements regarding the *Freedom* Litigation, including the Company's need to increase GAAP earnings guidance, as follows:

> As noted in today's release, we are increasing our GAAP earnings guidance to 87 to 88 cents a share, compared with our previous guidance of 78 to 80 cents a share.  This guidance includes after tax quarterly legal charges of approximately 3 cents per share, until the Freedom Wireless matter is resolved.  *We remain confident that we do not infringe the Freedom Wireless patent and that the patents are invalid and unenforceable in light of prior art and other reasons.*  At the appropriate time, we expect to file summary judgment motions but the specific timing as to when motions can be filed and then decided upon is not definitive.  We believe that our case continues to progress well and there's been no change to our position in the case.

(Emphasis added.)

68.    During the same call, defendant Snowden made the following statements regarding the *Freedom* Litigation:

> *I would say that I think it's a fair public statement that as we have been battling this lawsuit, it's been on the fundamental premise that our counsel and even other counsel we've retained has researched issues and found that we don't infringe the patents, and not only do we not infringe them but they are invalid, etcetera.*  Non-infringement is based on the definition of the patent claims.  If we lose this, it could only be because a court upholds a definition for those claims much broader than what our counsel believes to be the case and if that broader definition were supported in the lawsuit, that there isn't a prepaid platform that uses switches to help route calls for prepaid treatment that wouldn't be subject to the patent.

(Emphasis added.)

69.    On August 14, 2003, the Company filed a quarterly financial report with the SEC on Form 10-Q for the second quarter 2003, the period ending June 30, 2003. Again, even as the *Freedom* Litigation continued to progress, BCGI stood by its position that the Company does "***not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.***" (Emphasis added.)

70.    On October 15, 2003, the Company held its third quarter 2003 conference call for the investing public. During the call, defendant Walker made the following statements regarding the *Freedom* Litigation:

> Although our legal expenses for Freedom Wireless were higher due to the timing of certain procedures that took place during the quarter, on average we have incurred about what we expected at $1m per quarter year-to-date.
>
> Going forward, we expect to continue to incur on average about $1m per quarter, however, the expense will likely continue to vary from quarter to quarter depending on the procedures that take place in any given quarter. Accordingly, we expect that Q4 legal changes will range between three and four cents a share.
>
> ***Furthermore, we continue to remain confident that we do not infringe the Freedom Wireless patents, and that the patents are invalid an unenforceable in light of prior [art] and other reasons. We believe that our case continues to progress well, and there's been no change to our position on the case.***

(Emphasis added.)

71.    On November 14, 2003, the Company filed a quarterly financial report with the SEC on Form 10-Q for the third quarter 2003, the period ending September 30, 2003. Again, even as the *Freedom* Litigation continued to progress, BCGI stood by its position that the Company does "***believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.***" (Emphasis added.)

72.    On February 2, 2004, the Company held its fourth quarter 2003 conference call for the investing public.  During the call, even after summary judgment motions had been filed in the *Freedom* Litigation, defendant Walker continued to make the following statements:

> Our legal expenses during the quarter for Freedom Wireless were inline with expectation, having incurred $1 million in legal costs related to the case.  Going forward, we expect to continue to incur on average [about] $1 million per quarter until the matter is resolved.  However, the expense may vary from quarter to quarter, depending upon the procedures that take place in any given quarter.    Accordingly we expect Q1 '04 legal charges will approximate 3 cents per share.
>
> ***Furthermore, we continue to remain confident that we do not infringe the Freedom Wireless patents, and that the patents are invalid and unenforceable in light of prior (indiscernible) and other reasons.  We believe that our case continues to progress well, and there has been no change to our position on the case.*** In addition, various summary judgment motions have been filed by both parties in the case, and the Court is expected to rule on those motions in the normal course of proceedings.

(Emphasis added.)

73.    On March 11, 2004, the Company filed an annual financial report on Form 10-K with the SEC for the period ended December 31, 2003.  The Form 10-K, signed by defendants Snowden and Walker, repeated, though with more detail than its quarterly reports, essentially the statements concerning the *Freedom* Litigation, including: ***"We do not believe that we infringe these patents and we believe that we have meritorious defenses to the action."*** (Emphasis added.)

74.    On May 10, 2004, the Company filed a quarterly financial report with the SEC on Form 10-Q for the first quarter 2004, the period ending March 30, 2004.  Again, even after summary judgment motions had been filed, BCGI stood by its same position that the Company does not ***"believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons."***  (Emphasis added.)

75.    On August 9, 2004, the Company filed a quarterly financial report with the SEC on Form 10-Q for the second quarter 2004, the period ending June 30, 2004.  Again, even after summary judgment motions had been filed, BCGI stood by its same position that the Company does not **"believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons."**  (Emphasis added.)

76.    On October 20, 2004, the Company held its third quarter 2004 conference call for the investing public.  During the call, as an actual trial approached, defendant Walker made the following statements regarding the *Freedom* Litigation:

> As we announced on August 11th, the case is getting closer to the trial phase, but a trial date has yet to be set by the Court.  ***We continue to maintain our confidence that we do not infringe the Freedom Wireless patents and we will continue to vigorously defend their claims.***

(Emphasis added.)

77.    On November 9, 2004, the Company filed a quarterly financial report with the SEC on Form 10-Q for the third quarter 2004, the period ending September 30, 2004.  Again, even as trial approached, BCGI stood by its same position that the Company does not **"believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons."**  (Emphasis added.)

78.    On February 1, 2005, the Company held its fourth quarter 2004 conference call for the investing public.  During the call, with trial commencing in 27 days and acknowledging that other named defendants had settled with plaintiff Freedom, defendant Walker made the following statements regarding the *Freedom* Litigation:

> As we approach the Freedom Wireless trial date of February 28, legal expenses are expected to increase to 5 to 6 cents per share in Q1 to accommodate additional hours and expenses to try the case.  In documents that were made publicly available last week, we learned that Verizon Wireless, a defendant in the case, reached a

> settlement with Freedom and is no longer a defendant in the case. BCGI was not part of the settlement discussions and the terms of the settlement are not public.  It's important to note that, as we were not a party to these negotiations, we have not agreed to Verizon's settlement terms, and we do not believe that we have any indemnification liability towards Verizon's settlement.
>
> ***This also does not change our position in the case.  We remain confident that we do not infringe on the Freedom Wireless patents and that the patents are invalid in light of prior art.***

(Emphasis added.)

79.     While the *Freedom* Litigation trial was proceeding, on March 16, 2005, the Company filed an annual financial report on Form 10-K with the SEC for the period ended December 31, 2004.  The Form 10-K, signed by defendants Snowden and Walker, while acknowledging that another named defendant had settled with plaintiff Freedom, also continued to repeat and restate as follows:

> If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business…. ***We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.***

(Emphasis added.)

80.     On May 9, 2005, more than two months into the *Freedom* Litigation trial, and only 11 days before the damaging jury verdict (ending the Class Period), the Company filed a quarterly financial report with the SEC on Form 10-Q for the first quarter 2005, the period ending March 30, 2005.  The Form 10-Q, signed by defendant Walker, went into more detail than ever before about the *Freedom* Litigation and its potential affect on the Company:

> If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business.  In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology.  The trial began on February 28, 2005 and is expected to be completed in mid May 2005.  In 2005, Verizon Wireless, who was a defendant in the case, reached a

settlement with Freedom Wireless and is therefore no longer a defendant in the case.   We were not part of the settlement discussions and the terms of the settlement are not public.  ***We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.***

(Emphasis added.)

## The Truth Is Revealed

81.     On May 20, 2005, the Company issued a press release entitled, "Jury Verdict Against BCGI in Freedom Wireless Patent Lawsuit," announcing that the jury found that the Company and the other co-defendants jointly infringed two patents held by Freedom and had awarded Freedom approximately $128 million for past infringement –substantially most of which BCGI's willful infringement would ultimately render it responsible for.  In also ruling that BCGI had willfully infringed Freedom's patents, the jury allowed for a possible result of up to three times the amount of damages awarded and attorneys' fees.

82.     In addition, this press release, despite the jury's verdict and its finding of willful infringement by BCGI, surprisingly, but now unconvincingly, continued to reiterate the Company's original position that **"BCGI *continues to believe that it does not infringe on the Freedom Wireless patents and that the patents are invalid in light of prior art.*"** (Emphasis added.) Furthermore, the Company's press release stated, in pertinent part, as follows:

> Before a final judgment can be rendered, the U.S. District Court in Massachusetts (the Court) is expected to act on additional post-trial motions and will hear a separate, non-jury trial regarding an unenforceability defense by *bcgi* and the other co-defendants. These additional motions and the trial are expected to begin on June 7, 2005 and to last approximately one to two weeks after they commence.   If the Court rules in favor of *bcgi* and its co-defendants in the non-jury trial, the patents held by Freedom Wireless would become unenforceable, a decision that Freedom Wireless, Inc. may choose to appeal.
>
> … Therefore, if the Court rules against *bcgi* and the co-defendants in the non-jury trial, the Company expects to appeal the Court's

decision to the Court of Appeals for the Federal Circuit. *bcgi* will likely be required to provide collateral or post a bond in order to appeal the Court's decision. If the Company is not successful in the non-jury trial, Freedom Wireless may seek to enjoin the Company from providing its prepaid wireless and Real-Time Billing service bureau in the United States, pending appeal.

In the first quarter of 2005, the Company's revenues from its U.S. prepaid wireless services were $23.9 million, which represented 90% of its total revenues. If the Company is unable to provide adequate collateral or to post a sufficient bond or is enjoined during the appeals process, or if the Company is unable to get an adverse judgment reversed or to negotiate a commercially acceptable license with Freedom Wireless to allow *bcgi* to continue to provide its products and services, then it will not be possible for the Company to provide the prepaid wireless or Real-Time Billing service bureau as currently offered in the United States. In that event, the Company may not be able to continue its ongoing operations or may need to seek protections under the bankruptcy code.

In addition, the Company learned that Freedom Wireless filed additional lawsuits on May 20, 2005 in the U.S. District Court in Massachusetts against *bcgi* and Alltel Corporation and *bcgi* and Nextel Communications alleging joint infringement on the same two patents. Freedom Wireless may also bring infringement actions against the Company's other customers who were not party to these lawsuits. If Freedom Wireless is successful against these other parties, these customers may stop using *bcgi's* prepaid wireless and Real-Time Billing service and *bcgi* may become obligated to indemnify them for their damages, which could be substantial. Even if the Company is successful in the non-jury trial or on appeal, due to the uncertainty of this process, the Company's existing customers may choose to stop using its prepaid wireless and Real-Time Billing service and the Company may be unable to obtain any new customers. These results would have a material adverse impact on the Company's business.

If today's verdict is upheld upon final judgment by the Court, the Company will record the amount then reasonably estimable as an expense in the Company's financial statements. This amount may be solely the Company's responsibility since the other defendants have claimed that *bcgi* is obligated to indemnify them for any damages they incur with respect to any infringement by the Company's technology.

83.    On this news, the Company's stock price dropped from $4.81 to $1.75 on volume of 12,499,900 shares traded.

84.    Moreover, on September 1, 2005, U.S. District Judge Edward F. Harrington denied BCGI's motion to reduce the jury's May 20th damages award, and upheld the jury's $128 million patent infringement verdict.  This news caused the Company's stock price to take yet another hit, dropping from a closing price of $1.72 on September 1st to a $1.11 closing price on September 2nd, on volume of 3,516,000 shares traded.

85.    To date, the Company's stock price has not recovered from the devastating May 20th announcement, which had a material financial impact on BCGI, as this chart evidences:



86.    The public statements and SEC filings set forth in paragraphs 54 to 80 above were materially false and misleading, and omitted to set forth facts necessary to make such statements not misleading, for each of the following reasons:

(a)    the Company had *willfully* infringed upon Freedom Wireless' patents as evidenced by, *inter alia*:

(i) defendant Snowden's receipt of Freedom's notice letter, back in 1998, informing the Company of Freedom's patent approval, indicating that BCGI's system was therefore infringing on Freedom's patent, and that BCGI would now need to license this prepaid cellular technology from Freedom – and in response, BCGI simply hired experts to draft a variation of its c2c system, with additional unnecessary components, merely so that it would appear to be different from Freedom's now patented system; and

(ii) also, upon receiving Freedom's notice letter, BCGI reached out to Orbital Sciences, the former employer of Mr. Harned, hoping that Orbital might be the rightful owner of the Freedom patents since Mr. Harned had worked on them while an employee at Orbital, and in May 2002, entered into an agreement to pay Orbital $750,000 for a license to any rights Orbital *may* eventually realize it had in the Freedom patents.

(b)    the Company's successful business model was premised upon the *willful* infringements of Freedom's patents;

(c)    the Company's financial statements failed to comply with Generally Accepted Accounting Principles ("GAAP") by failing to record sufficient reserves (of not less than $100 million) because of the *willful* infringement upon Freedom's patents;

(d)    by reason of the failure to take adequate reserves, the Company's financial statements filed with the SEC overstated income, net profits and profits per share;

(e)    these failures of disclosure directly impacted upon the Company's prospects for future growth and revenue.

87.     In particular, defendants' statements repeated throughout the Class Period that Freedom's claims were "without merit" and that BCGI did not believe that it did, and remained "confident" that it did not, infringe Freedom's patents were affirmatively misleading in that BCGI had previously acted as though its own c2c system infringed the Freedom patents by hiring engineers to make trivial changes in the system to mask its own system's infringement and by further attempting to cover the Company's previous improprieties by making a payment to Orbital in the desperate hope that Orbital might be deemed to be the rightful owner of Orbital's former employee's patent.

88.     Likewise, defendants' statements that the Freedom patents were "invalid" and "unenforceable" because of "prior art" were affirmatively misleading in that BCGI altered its own c2c system to hide the fact that its system was substantially equivalent to Freedom's.

## SCIENTER ALLEGATIONS

89.     As alleged herein, defendants acted with scienter in that defendants knew that the Company had willfully infringed upon Freedom's patents; knew that the Company did not take appropriate financial reserves in anticipation of a likely negative decision in the *Freedom* Litigation; knew that the Company's public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.

90.     As set forth elsewhere herein in detail, defendants, by virtue of (a) their actions reflecting knowledge of their own infringing activities (*i.e.,* defendant Snowden's receipt of the notice letter from Freedom back in 1998, indicating BCGI's infringement of Freedom's now-

patented technology; BCGI's agreement to pay Orbital Sciences, the former employer of Mr. Harned, $750,000 for a license to any rights Orbital *may* eventually realize it had in the Freedom patents; and BCGI seeking out superficial and conclusory legal opinions from patent law firms as a shield against claims of willful infringement); (b) their control over and/or receipt of BCGI's allegedly materially misleading misstatements; and/or (c) their associations with the Company which made them privy to confidential proprietary information concerning BCGI, were active and culpable participants in the fraudulent scheme alleged herein.

91.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

92.     In addition to the foregoing, the Individual Defendants had powerful motives and the opportunity to perpetrate the fraudulent scheme and course of business described herein.  As detailed below, the Individual Defendants, as Company insiders, profited personally from the wrongdoing alleged herein by selling and exercising 251,742 shares and options of BCGI common stock at artificially inflated prices, as detailed below, for total proceeds of almost $3 million.

93.     During the Class Period, the Individual Defendants sold substantial amounts of BCGI common stock from their personal holdings while in possession of the aforementioned adverse non-public information concerning the *Freedom* Litigation.  The Individual Defendants, by virtue of their high-level positions, made them privy to information about the threats to the Company relating to the *Freedom* Litigation.  The sales occurred at prices as high as $21.53 per

share (near the Class Period high closing price of $21.16). Many of these insider sales followed

immediately after the exercise of options to purchase BCGI common stock at exercise prices as

low as $4.87 per share and resulted in instantaneous net profits, in one day, of as much as

$400,000. The sales were unusual and suspicious, among other things, because of their size both

in terms of the numbers of shares sold and the dollar amounts of the transactions, as set for

below:

**Defendant Walker**

During the Class Period, defendant Walker sold and exercised a total of 98,417 shares and
options of BCGI common stock, recognizing $1,246,290.45 in proceeds.

| Date | # of Shares Sold | Price per Share | Proceeds | # of Options Exercised | Exercise Price | Cost of Option Exercise |
|------|------|------|------|------|------|------|
| 1/30/2003 | 2000 | $12.95 | $25,900.00 | | | |
| 2/6/2003 | 10247 | $13.05 | $133,723.35 | | | |
| 3/13/2003 | 5000 | $13.95 | $69,750.00 | 5000 | $4.87 | $24,350.00 |
| 3/19/2003 | 200 | $14.95 | $2,990.00 | 200 | $4.87 | $974.00 |
| 3/20/2003 | 10434 | $15.02 | $156,718.68 | 10434 | $7.06 | $61,105.23 |
| 3/21/2003 | 6667 | $15.95 | $106,338.65 | 6667 | $8.63 | $56,044.25 |
| 4/17/2003 | 14418 | $17.59 | $257,838.59 | 14418 | $8.63 | $155,463.00 |
| 4/21/2003 | 5316 | $19.95 | $106,054.20 | 5316 | $13.00 | $69,108.00 |
| 7/9/2003 | 100 | $21.53 | $2,152.50 | | | |
| 10/21/2003 | | | | 2000 | $8.89 | $17,780.00 |
| **Total** | **54,382** | | **$861,465.97** | **44,035** | | **$384,824.48** |

**Defendant Snowden**

During the Class Period, defendant Snowden sold and exercised a total of 153,325 shares and options of BCGI common stock, recognizing $1,743,365.16 in proceeds.

| Date | # of Shares Sold | Price per Share | Proceeds | # of Options Exercised | Exercise Price | Cost of Option Exercise |
|------|------|------|------|------|------|------|
| 2/3/2003 | 4900 | $11.96 | $58,604.00 | 4900 | $7.06 | $34,603.80 |
| 2/6/2003 | 2300 | $13.09 | $30,115.97 | 2300 | $7.06 | $16,242.60 |
| 2/21/2003 | 525 | $7.31 | $3,837.75 | | | |
| 3/3/2003 | 5700 | $12.64 | $72,439.85 | 5700 | $7.06 | $40,253.40 |
| 3/6/2003 | 1500 | $13.00 | $19,500.00 | 1500 | $7.06 | $10,593.00 |
| 4/1/2003 | 7200 | $14.80 | $106,534.08 | 7200 | $7.06 | $50,846.40 |
| 4/2/2003 | 2300 | $15.00 | $34,500.00 | 2300 | $7.06 | $16,242.60 |
| 4/17/2003 | 4600 | $17.00 | $78,200.00 | 4600 | $7.06 | $32,485.20 |
| 4/21/2003 | 4600 | $20.00 | $92,000.00 | 4600 | $7.06 | $32,485.20 |
| 5/1/2003 | 14100 | $17.72 | $249,781.50 | 14100 | $7.06 | $99,574.20 |
| 7/1/2003 | 14100 | $16.82 | $237,111.24 | 14100 | $7.06 | $99,574.20 |
| 7/8/2003 | 4600 | $20.00 | $92,000.00 | 4600 | $7.06 | $32,485.20 |
| 8/1/2003 | 2700 | $11.76 | $31,752.00 | 2700 | $7.06 | $19,067.40 |
| 8/22/2003 | 1200 | $13.00 | $15,600.00 | 1200 | $7.06 | $8,474.40 |
| 9/2/2003 | 3900 | $13.37 | $52,151.97 | 3900 | $7.06 | $27,541.80 |
| 10/13/2003 | 2700 | $11.00 | $29,700.00 | 2700 | $7.06 | $19,067.40 |
| **Total** | **76,925** | | **$1,203,828.36** | **76,400** | | **$539,536.80** |

94.    The Individual Defendants engaged in such a scheme to inflate the price of BCGI securities in order to: (i) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby; and (ii) maximize the value the defendants received from disposing of their personal holdings of BCGI securities at inflated prices. Individual Defendants collectively sold and exercised 251,742 shares and options of personally-controlled BCGI common stock at artificially inflated prices, for total proceeds of almost $3 million, during the Class Period.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## <u>FRAUD-ON-THE-MARKET DOCTRINE</u>

95.     At all relevant times, the market for BCGI securities was an efficient market for the following reasons, among others:

(a)     BCGI's stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)     As a regulated issuer, BCGI filed periodic public reports with the SEC and the Nasdaq;

(c)     BCGI regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     BCGI was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

96.     As a result of the foregoing, the market for BCGI's securities promptly digested current information regarding BCGI from all publicly available sources and reflected such information in BCGI's stock price.  Under these circumstances, all purchasers of BCGI securities during the Class Period suffered similar injury through their purchase of BCGI securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

97.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of BCGI who knew that those statements were false when made.

98.     In particular, any boilerplate language in defendants' public statements and filings that an adverse outcome in the *Freedom* Litigation could possibly have a material effect on the Company's financial condition was inadequate to warn investors of the significant likelihood of an adverse ruling in light of the activities described in paragraphs 41 through 48, and was more than offset by the Company's insistence that (a) it had not engaged in infringing activities, (b) that Freedom's patents were invalid, and (c) that the *Freedom* Litigation was without merit.

## CLAIMS ALLEGED

## COUNT I

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

99.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

100.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase BCGI securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

101.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for BCGI securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.   All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

102.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of BCGI as specified herein.

103.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of BCGI value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary to make the statements made about BCGI and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of BCGI securities during the Class Period.

104.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as senior officers of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

105.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.    Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing BCGI operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

106.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of BCGI securities was artificially inflated during the Class Period.  In ignorance of the fact that the market prices of BCGI publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired BCGI securities during the Class Period at artificially high prices and were damaged thereby.

107.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the true financial

position, operating conditions and expenses that BCGI was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their BCGI securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

108.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

109.    As a direct and proximate result of defendant's wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### Violation Of Section 20(a) Of The Exchange Act
### Against the Individual Defendants

110.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

111.    The Individual Defendants acted as controlling persons of BCGI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiffs to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

112.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

113.    As set forth above, BCGI and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Class Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Lead Plaintiff hereby demands a trial by jury.


Dated:  October 13, 2005                    *Respectfully submitted,*


                                            **GILMAN AND PASTOR, LLP**

                                            By: /s/ David Pastor
                                            David Pastor (BBO#391000)
                                            60 State Street
                                            Boston, Massachusetts  02109
                                            Telephone: (617) 742-9700
                                            Facsimile: (617) 742-9701

                                            *Co-Lead Counsel for Plaintiff and the Class*

                                            **WOLF HALDENSTEIN ADLER
                                              FREEMAN & HERZ, LLP**
                                            Peter C. Harrar
                                            Paulette S. Fox
                                            270 Madison Avenue
                                            New York, New York  10016
                                            Telephone: (212) 545-4600
                                            Facsimile: (212) 545-4653

                                            *Co-Lead Counsel for Plaintiff and the Class*

OF COUNSEL:

Marc S. Henzel
**LAW OFFICES OF MARC S. HENZEL**
273 Montgomery Ave., Suite 202
Bala Cynwyd, Pennsylvania  19004

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Rosenbaum Capital LLC (" plaintiff ") declares, as to the claims asserted under the Federal Securities Laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and is willing to serve as a lead or named plaintiff in the Action on the basis of the allegations in that complaint or a substantively similar complaint or amended complaint to be filed. Plaintiff retains the Law Offices of Marc S. Henzel and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not purchase the Security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Federal Securities Laws.

3.    Plaintiff is willing to serve as a lead or representative party, either individually or as part of a group on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transactions during the Class Period in the securities of Boston Communications Inc. (NASDAQ: BCGI) that are subject of this action:

| DATE | BUY OR SALE | AMOUNT OF SHARES | PRICE PER SHARE |
|------|-------------|------------------|-----------------|
|      | SEE ATTACHED |                 |                 |

5.    In the past three years, plaintiff has sought to serve as a representative party on behalf of a class.

Rosenbaum Capital LLC v. Sharper Image Corp., N.D. CA. 05-01587 (Case Dismissed)

Rosenbaum Capital LLC v. Patterson Companies, Inc. D. Minn. 05-01757

Rosenbaum Capital LLC v. Salamon Levis, et al. S.D. N.Y. 05-5486 (Derivative action)

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

7.    I declare under penalty of perjury that the foregoing Is true and correct. Executed this 10th Day of Sept. 2005.

_____
Signature

BCGI  TRADES FOR 43

| DATE | ACCT | SYMBOL | BOUGHT | SOLD | PRICE | | |
|------|------|--------|--------|------|-------|--|--|
| 4/2/2004 | 435 | BCGI | | -200 | $12.4000 | -$2,480.0000 | -200 |
| 4/2/2004 | 435 | BCGI | | -100 | $12.4100 | -$1,241.0000 | -300 |
| 4/2/2004 | 435 | BCGI | | -200 | $12.4000 | -$2,480.0000 | -500 |
| 4/2/2004 | 435 | BCGI | | -600 | $12.4900 | -$7,494.0000 | -1100 |
| 4/2/2004 | 435 | BCGI | | -100 | $12.4900 | -$1,249.0000 | -1200 |
| 4/5/2004 | 435 | BCGI | | -200 | $12.7100 | -$2,542.0000 | -1400 |
| 4/5/2004 | 435 | BCGI | | -200 | $12.9800 | -$2,596.0000 | -1600 |
| 4/5/2004 | 435 | BCGI | | -100 | $13.0500 | -$1,305.0000 | -1700 |
| 4/8/2004 | 435 | BCGI | 100 | | $12.9000 | -$1,290.0000 | -1600 |
| 4/14/2004 | 435 | BCGI | | -100 | $12.4600 | -$1,246.0000 | -1700 |
| 4/14/2004 | 435 | BCGI | | -200 | $12.4600 | -$2,492.0000 | -1900 |
| 4/14/2004 | 435 | BCGI | 200 | | $12.2000 | -$2,440.0000 | -1700 |
| 4/14/2004 | 435 | BCGI | 160 | | $12.2000 | -$1,952.0000 | -1540 |
| 4/14/2004 | 435 | BCGI | 200 | | $12.2000 | -$2,440.0000 | -1340 |
| 4/14/2004 | 435 | BCGI | 100 | | $12.2000 | -$1,220.0000 | -1240 |
| 4/14/2004 | 435 | BCGI | 140 | | $12.2000 | -$1,708.0000 | -1100 |
| 4/15/2004 | 435 | BCGI | 100 | | $12.0900 | -$1,209.0000 | -1000 |
| 4/15/2004 | 435 | BCGI | 500 | | $12.2000 | -$6,100.0000 | -500 |
| 4/15/2004 | 435 | BCGI | 300 | | $12.2000 | -$3,660.0000 | -200 |
| 4/16/2004 | 435 | BCGI | 300 | | $12.0800 | -$3,624.0000 | 100 |
| 4/16/2004 | 435 | BCGI | | -300 | $12.0000 | -$3,600.0000 | -200 |
| 4/16/2004 | 435 | BCGI | | -500 | $11.8000 | -$5,900.0000 | -700 |
| 4/19/2004 | 435 | BCGI | 100 | | $11.5800 | -$1,158.0000 | -600 |
| 4/19/2004 | 435 | BCGI | 100 | | $11.5800 | -$1,158.0000 | -500 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.4500 | -$2,290.0000 | -700 |
| 4/20/2004 | 435 | BCGI | | -1300 | $11.5000 | -$14,950.0000 | -2000 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3500 | -$2,270.0000 | -2200 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3500 | -$1,135.0000 | -2300 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2400 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2500 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2600 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -2800 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3600 | -$1,136.0000 | -2900 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -3100 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -3300 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3700 | -$1,137.0000 | -3400 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3700 | -$1,137.0000 | -3500 |
| 4/20/2004 | 435 | BCGI | | -200 | $11.3700 | -$2,274.0000 | -3700 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.3700 | -$1,137.0000 | -3800 |
| 4/20/2004 | 435 | BCGI | | -100 | $11.2900 | -$1,129.0000 | -3900 |
| 4/21/2004 | 435 | BCGI | 300 | | $11.1500 | -$3,345.0000 | -3600 |
| 4/22/2004 | 435 | BCGI | 200 | | $11.5700 | -$2,314.0000 | -3400 |
| 4/22/2004 | 435 | BCGI | 100 | | $11.5600 | -$1,156.0000 | -3300 |
| 4/22/2004 | 435 | BCGI | 100 | | $11.5600 | -$1,156.0000 | -3200 |
| 4/22/2004 | 435 | BCGI | 200 | | $11.9800 | -$2,396.0000 | -3000 |
| 4/22/2004 | 435 | BCGI | 100 | | $11.9800 | -$1,198.0000 | -2900 |
| 4/26/2004 | 435 | BCGI | 200 | | $11.1200 | -$2,224.0000 | -2700 |

| Date | Symbol | Qty | Price | Amount | Balance |
|---|---|---|---|---|---|
| 4/28/2004 | 435 BCGI | 600 | $11.0400 | -$6,624.0000 | -2100 |
| 4/28/2004 | 435 BCGI | 100 | $11.3000 | -$1,130.0000 | -2000 |
| 4/28/2004 | 435 BCGI | 100 | $11.3000 | -$1,130.0000 | -1900 |
| 4/28/2004 | 435 BCGI | -200 | $11.2000 | -$2,240.0000 | -2100 |
| 4/28/2004 | 435 BCGI | -100 | $11.1900 | -$1,119.0000 | -2200 |
| 4/28/2004 | 435 BCGI | -100 | $11.1900 | -$1,119.0000 | -2300 |
| 4/28/2004 | 435 BCGI | -100 | $11.1900 | -$1,119.0000 | -2400 |
| 4/28/2004 | 435 BCGI | -100 | $11.1900 | -$1,119.0000 | -2500 |
| 4/28/2004 | 435 BCGI | 100 | $11.1200 | -$1,112.0000 | -2400 |
| 4/28/2004 | 435 BCGI | 100 | $11.1500 | -$1,115.0000 | -2300 |
| 4/28/2004 | 435 BCGI | 100 | $11.1500 | -$1,115.0000 | -2200 |
| 4/28/2004 | 435 BCGI | 100 | $11.1800 | -$1,118.0000 | -2100 |
| 4/28/2004 | 435 BCGI | 100 | $11.1800 | -$1,118.0000 | -2000 |
| 4/28/2004 | 435 BCGI | 500 | $11.2100 | -$5,605.0000 | -1500 |
| 4/29/2004 | 435 BCGI | -100 | $10.7000 | -$1,070.0000 | -1600 |
| 4/29/2004 | 435 BCGI | -100 | $10.7000 | -$1,070.0000 | -1700 |
| 5/3/2004 | 435 BCGI | -200 | $11.2400 | -$2,248.0000 | -1900 |
| 5/3/2004 | 435 BCGI | -100 | $11.2400 | -$1,124.0000 | -2000 |
| 5/11/2004 | 435 BCGI | 900 | $11.2600 | -$10,134.0000 | -1100 |
| 5/11/2004 | 435 BCGI | 100 | $11.2600 | -$1,126.0000 | -1000 |
| 5/11/2004 | 435 BCGI | 100 | $11.3100 | -$1,131.0000 | -900 |
| 5/11/2004 | 435 BCGI | 300 | $11.3100 | -$3,393.0000 | -600 |
| 5/13/2004 | 435 BCGI | 100 | $10.7500 | -$1,075.0000 | -500 |
| 5/13/2004 | 435 BCGI | 100 | $10.7500 | -$1,075.0000 | -400 |
| 5/13/2004 | 435 BCGI | 200 | $10.9800 | -$2,196.0000 | -200 |
| 5/13/2004 | 435 BCGI | 100 | $10.9700 | -$1,097.0000 | -100 |
| 5/13/2004 | 435 BCGI | 300 | $11.0200 | -$3,306.0000 | 200 |
| 5/13/2004 | 435 BCGI | 100 | $11.0200 | -$1,102.0000 | 300 |
| 5/13/2004 | 435 BCGI | 100 | $11.0300 | -$1,103.0000 | 400 |
| 5/13/2004 | 435 BCGI | 100 | $11.0300 | -$1,103.0000 | 500 |
| 5/13/2004 | 435 BCGI | 100 | $11.0300 | -$1,103.0000 | 600 |
| 5/13/2004 | 435 BCGI | 200 | $11.0300 | -$2,206.0000 | 800 |
| 5/14/2004 | 435 BCGI | 100 | $10.9000 | -$1,090.0000 | 900 |
| 5/14/2004 | 435 BCGI | -200 | $10.9000 | -$2,180.0000 | 700 |
| 5/14/2004 | 435 BCGI | -500 | $10.9000 | -$5,450.0000 | 200 |
| 5/14/2004 | 435 BCGI | -100 | $10.9400 | -$1,094.0000 | 100 |
| 5/14/2004 | 435 BCGI | -100 | $10.9100 | -$1,091.0000 | 0 |
| 5/14/2004 | 435 BCGI | -300 | $10.9100 | -$3,273.0000 | -300 |
| 5/14/2004 | 435 BCGI | -200 | $10.9100 | -$2,182.0000 | -500 |
| 5/14/2004 | 435 BCGI | -100 | $10.9300 | -$1,093.0000 | -600 |
| 5/14/2004 | 435 BCGI | -74 | $10.9500 | -$810.3000 | -674 |
| 5/14/2004 | 435 BCGI | -100 | $10.9500 | -$1,095.0000 | -774 |
| 5/14/2004 | 435 BCGI | -100 | $10.9500 | -$1,095.0000 | -874 |
| 5/14/2004 | 435 BCGI | -100 | $10.9500 | -$1,095.0000 | -974 |
| 5/14/2004 | 435 BCGI | -100 | $10.9500 | -$1,095.0000 | -1074 |
| 5/14/2004 | 435 BCGI | -100 | $10.9500 | -$1,095.0000 | -1174 |
| 5/14/2004 | 435 BCGI | -100 | $10.9300 | -$1,093.0000 | -1274 |
| 5/17/2004 | 435 BCGI | 141 | $10.6500 | -$1,501.6500 | -1133 |
| 5/17/2004 | 435 BCGI | 59 | $10.6500 | -$628.3500 | -1074 |
| 5/18/2004 | 435 BCGI | -100 | $10.4200 | -$1,042.0000 | -1174 |
| 5/18/2004 | 435 BCGI | 100 | $10.3000 | -$1,030.0000 | -1074 |
| 5/18/2004 | 435 BCGI | 100 | $10.3000 | -$1,030.0000 | -974 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 5/21/2004 | 435 BCGI | | | -100 | $10.3500 | -$1,035.0000 | -1074 |
| 5/21/2004 | 435 BCGI | | | -1000 | $10.3500 | -$10,350.0000 | -2074 |
| 5/21/2004 | 435 BCGI | 100 | | | $10.7400 | -$1,074.0000 | -1974 |
| 5/21/2004 | 435 BCGI | 400 | | | $10.7500 | -$4,300.0000 | -1574 |
| 5/24/2004 | 435 BCGI | | | -200 | $10.7400 | -$2,148.0000 | -1774 |
| 6/4/2004 | 435 BCGI | 92 | | | $10.6000 | -$975.2000 | -1682 |
| 6/4/2004 | 435 BCGI | 45 | | | $10.6000 | -$477.0000 | -1637 |
| 6/4/2004 | 435 BCGI | 63 | | | $10.6000 | -$667.8000 | -1574 |
| 6/7/2004 | 435 BCGI | | | -400 | $10.4600 | -$4,184.0000 | -1974 |
| 6/9/2004 | 435 BCGI | | | -300 | $10.5000 | -$3,150.0000 | -2274 |
| 6/9/2004 | 435 BCGI | | | -100 | $10.5000 | -$1,050.0000 | -2374 |
| 6/9/2004 | 435 BCGI | | | -1600 | $10.5000 | -$16,800.0000 | -3974 |
| 6/9/2004 | 435 BCGI | | | -100 | $10.5000 | -$1,050.0000 | -4074 |
| 6/9/2004 | 435 BCGI | | | -200 | $10.5000 | -$2,100.0000 | -4274 |
| 6/9/2004 | 435 BCGI | | | -250 | $10.5000 | -$2,625.0000 | -4524 |
| 6/9/2004 | 435 BCGI | | | -250 | $10.5000 | -$2,625.0000 | -4774 |
| 6/9/2004 | 435 BCGI | | | -200 | $10.5000 | -$2,100.0000 | -4974 |
| 6/9/2004 | 435 BCGI | | | -300 | $10.5900 | -$3,177.0000 | -5274 |
| 6/9/2004 | 435 BCGI | | | -600 | $10.5800 | -$6,348.0000 | -5874 |
| 6/10/2004 | 435 BCGI | | | -500 | $9.2600 | -$4,630.0000 | -6374 |
| 6/10/2004 | 435 BCGI | 100 | | | $8.2000 | -$820.0000 | -6274 |
| 6/10/2004 | 435 BCGI | 800 | | | $8.2000 | -$6,560.0000 | -5474 |
| 6/10/2004 | 435 BCGI | 100 | | | $8.2600 | -$826.0000 | -5374 |
| 6/10/2004 | 435 BCGI | 500 | | | $8.5600 | -$4,280.0000 | -4874 |
| 6/10/2004 | 435 BCGI | 500 | | | $8.5800 | -$4,290.0000 | -4374 |
| 6/10/2004 | 435 BCGI | 500 | | | $8.7400 | -$4,370.0000 | -3874 |
| 6/10/2004 | 435 BCGI | 100 | | | $9.1400 | -$914.0000 | -3774 |
| 6/14/2004 | 435 BCGI | | | -300 | $9.0200 | -$2,706.0000 | -4074 |
| 6/14/2004 | 435 BCGI | | | -200 | $9.0200 | -$1,804.0000 | -4274 |
| 6/14/2004 | 435 BCGI | 6 | | | $9.0200 | -$54.1200 | -4268 |
| 6/14/2004 | 435 BCGI | 100 | | | $9.0200 | -$902.0000 | -4168 |
| 6/14/2004 | 435 BCGI | 294 | | | $9.0200 | -$2,651.8800 | -3874 |
| 6/14/2004 | 435 BCGI | | | -28 | $8.9900 | -$251.7200 | -3902 |
| 6/14/2004 | 435 BCGI | | | -100 | $8.9900 | -$899.0000 | -4002 |
| 6/14/2004 | 435 BCGI | | | -272 | $8.9900 | -$2,445.2800 | -4274 |
| 6/14/2004 | 435 BCGI | 446 | | | $9.0900 | -$4,054.1400 | -3828 |
| 6/14/2004 | 435 BCGI | 446 | | | $9.0900 | -$4,054.1400 | -3382 |
| 6/14/2004 | 435 BCGI | 708 | | | $9.0900 | -$6,435.7200 | -2674 |
| 6/14/2004 | 435 BCGI | | | -300 | $8.9500 | -$2,685.0000 | -2974 |
| 6/14/2004 | 435 BCGI | | | -200 | $8.9500 | -$1,790.0000 | -3174 |
| 6/14/2004 | 435 BCGI | | | -100 | $8.9500 | -$895.0000 | -3274 |
| 6/15/2004 | 435 BCGI | 400 | | | $8.6600 | -$3,464.0000 | -2874 |
| 6/16/2004 | 435 BCGI | | | -800 | $8.9900 | -$7,192.0000 | -3674 |
| 6/16/2004 | 435 BCGI | | | -200 | $8.9900 | -$1,798.0000 | -3874 |
| 6/16/2004 | 435 BCGI | | | -6 | $8.9800 | -$53.8800 | -3880 |
| 6/16/2004 | 435 BCGI | | | -794 | $8.9800 | -$7,130.1200 | -4674 |
| 6/16/2004 | 435 BCGI | | | -400 | $8.9800 | -$3,592.0000 | -5074 |
| 6/18/2004 | 435 BCGI | | | -2300 | $9.4700 | -$21,781.0000 | -7374 |
| 6/18/2004 | 435 BCGI | 2000 | | | $9.4700 | -$18,940.0000 | -5374 |
| 6/18/2004 | 435 BCGI | 2400 | | | $9.4700 | -$22,728.0000 | -2974 |
| 6/21/2004 | 435 BCGI | | | -100 | $9.3500 | -$935.0000 | -3074 |
| 6/21/2004 | 435 BCGI | | | -100 | $9.3500 | -$935.0000 | -3174 |

| Date | | | Buy | Sell | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 6/21/2004 | 435 | BCGI | | -300 | $9.3500 | -$2,805.0000 | -3474 |
| 6/21/2004 | 435 | BCGI | | -100 | $9.4600 | -$946.0000 | -3574 |
| 6/21/2004 | 435 | BCGI | | -100 | $9.3200 | -$932.0000 | -3674 |
| 6/21/2004 | 435 | BCGI | | -100 | $9.3700 | -$937.0000 | -3774 |
| 6/22/2004 | 435 | BCGI | | -500 | $9.4600 | -$4,730.0000 | -4274 |
| 6/22/2004 | 435 | BCGI | | -600 | $9.4600 | -$5,676.0000 | -4874 |
| 6/23/2004 | 435 | BCGI | | -100 | $9.7000 | -$970.0000 | -4974 |
| 6/23/2004 | 435 | BCGI | | -100 | $9.7000 | -$970.0000 | -5074 |
| 6/23/2004 | 435 | BCGI | | -100 | $9.7000 | -$970.0000 | -5174 |
| 6/23/2004 | 435 | BCGI | | -100 | $9.7000 | -$970.0000 | -5274 |
| 6/23/2004 | 435 | BCGI | | -100 | $9.7000 | -$970.0000 | -5374 |
| 6/23/2004 | 435 | BCGI | | -400 | $9.7500 | -$3,900.0000 | -5774 |
| 6/23/2004 | 435 | BCGI | | -100 | $9.7500 | -$975.0000 | -5874 |
| 6/25/2004 | 435 | BCGI | | -200 | $9.9700 | -$1,994.0000 | -6074 |
| 6/30/2004 | 435 | BCGI | | -109 | $10.3200 | -$1,124.8800 | -6183 |
| 6/30/2004 | 435 | BCGI | | -191 | $10.3200 | -$1,971.1200 | -6374 |
| 7/1/2004 | 435 | BCGI | 300 | | $9.9200 | -$2,976.0000 | -6074 |
| 7/6/2004 | 435 | BCGI | 100 | | $9.4500 | -$945.0000 | -5974 |
| 7/6/2004 | 435 | BCGI | | -300 | $9.4900 | -$2,847.0000 | -6274 |
| 7/6/2004 | 435 | BCGI | 300 | | $9.6500 | -$2,895.0000 | -5974 |
| 7/6/2004 | 435 | BCGI | 200 | | $9.4800 | -$1,896.0000 | -5774 |
| 7/12/2004 | 435 | BCGI | | -100 | $9.4700 | -$947.0000 | -5874 |
| 7/12/2004 | 435 | BCGI | 100 | | $9.3200 | -$932.0000 | -5774 |
| 7/12/2004 | 435 | BCGI | 100 | | $9.3200 | -$932.0000 | -5674 |
| 7/14/2004 | 435 | BCGI | 100 | | $9.1700 | -$917.0000 | -5574 |
| 7/14/2004 | 435 | BCGI | 200 | | $9.1700 | -$1,834.0000 | -5374 |
| 7/16/2004 | 435 | BCGI | 2400 | | $8.9100 | -$21,384.0000 | -2974 |
| 7/16/2004 | 435 | BCGI | 39 | | $9.0100 | -$351.3900 | -2935 |
| 7/16/2004 | 435 | BCGI | 61 | | $9.0100 | -$549.6100 | -2874 |
| 7/19/2004 | 435 | BCGI | 17 | | $8.8600 | -$150.6200 | -2857 |
| 7/19/2004 | 435 | BCGI | 83 | | $8.8600 | -$735.3800 | -2774 |
| 7/20/2004 | 435 | BCGI | 100 | | $8.6900 | -$869.0000 | -2674 |
| 7/21/2004 | 435 | BCGI | | -213 | $8.4300 | -$1,795.5900 | -2887 |
| 7/21/2004 | 435 | BCGI | | -74 | $8.4000 | -$621.6000 | -2961 |
| 7/21/2004 | 435 | BCGI | | -426 | $8.4000 | -$3,578.4000 | -3387 |
| 7/21/2004 | 435 | BCGI | 300 | | $8.3800 | -$2,514.0000 | -3087 |
| 7/21/2004 | 435 | BCGI | 100 | | $8.3300 | -$833.0000 | -2987 |
| 7/21/2004 | 435 | BCGI | 100 | | $8.3300 | -$833.0000 | -2887 |
| 7/21/2004 | 435 | BCGI | 200 | | $8.3300 | -$1,666.0000 | -2687 |
| 7/21/2004 | 435 | BCGI | 70 | | $8.3000 | -$581.0000 | -2617 |
| 7/22/2004 | 435 | BCGI | 400 | | $8.2100 | -$3,284.0000 | -2217 |
| 7/22/2004 | 435 | BCGI | 100 | | $8.2100 | -$821.0000 | -2117 |
| 7/26/2004 | 435 | BCGI | | -100 | $8.3500 | -$835.0000 | -2217 |
| 8/3/2004 | 435 | BCGI | | -100 | $8.6600 | -$866.0000 | -2317 |
| 8/5/2004 | 435 | BCGI | | -100 | $8.5500 | -$855.0000 | -2417 |
| 8/9/2004 | 435 | BCGI | | -200 | $8.3000 | -$1,660.0000 | -2617 |
| 8/9/2004 | 435 | BCGI | | -100 | $8.3100 | -$831.0000 | -2717 |
| 8/9/2004 | 435 | BCGI | | -99 | $8.3000 | -$821.7000 | -2816 |
| 8/9/2004 | 435 | BCGI | | -200 | $8.3100 | -$1,662.0000 | -3016 |
| 8/9/2004 | 435 | BCGI | | -1 | $8.3000 | -$8.3000 | -3017 |
| 8/9/2004 | 435 | BCGI | | -94 | $8.2500 | -$775.5000 | -3111 |
| 8/9/2004 | 435 | BCGI | | -6 | $8.2500 | -$49.5000 | -3117 |

| Date | | Qty | Qty | Price | Amount | Balance |
|---|---|---|---|---|---|---|
| 8/13/2004 | 435 BCGI | 83 | | $7.8500 | -$651.5500 | -3034 |
| 8/13/2004 | 435 BCGI | 100 | | $7.8500 | -$785.0000 | -2934 |
| 8/13/2004 | 435 BCGI | 117 | | $7.8600 | -$919.6200 | -2817 |
| 8/20/2004 | 435 BCGI | | -100 | $8.3400 | -$834.0000 | -2917 |
| 9/9/2004 | 435 BCGI | | -300 | $8.0700 | -$2,421.0000 | -3217 |
| 9/13/2004 | 435 BCGI | | -105 | $8.3300 | -$874.6500 | -3322 |
| 9/13/2004 | 435 BCGI | | -100 | $8.3300 | -$833.0000 | -3422 |
| 9/13/2004 | 435 BCGI | | -95 | $8.3300 | -$791.3500 | -3517 |
| 9/15/2004 | 435 BCGI | | -200 | $8.3200 | -$1,664.0000 | -3717 |
| 9/16/2004 | 435 BCGI | | -200 | $8.3600 | -$1,672.0000 | -3917 |
| 9/17/2004 | 435 BCGI | | -100 | $8.3600 | -$836.0000 | -4017 |
| 9/17/2004 | 435 BCGI | 200 | | $8.3000 | -$1,660.0000 | -3817 |
| 9/17/2004 | 435 BCGI | 3000 | | $8.2800 | -$24,840.0000 | -817 |
| 9/17/2004 | 435 BCGI | 1000 | | $8.2800 | -$8,280.0000 | 183 |
| 9/20/2004 | 435 BCGI | | -100 | $8.4800 | -$848.0000 | 83 |
| 9/27/2004 | 435 BCGI | 100 | | $8.1500 | -$815.0000 | 183 |
| 9/27/2004 | 435 BCGI | 100 | | $8.1400 | -$814.0000 | 283 |
| 9/27/2004 | 435 BCGI | 100 | | $8.1400 | -$814.0000 | 383 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0700 | -$907.0000 | 283 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | 183 |
| 10/4/2004 | 435 BCGI | | -15 | $9.0600 | -$135.9000 | 168 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | 68 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | -32 |
| 10/4/2004 | 435 BCGI | | -100 | $9.0600 | -$906.0000 | -132 |
| 10/4/2004 | 435 BCGI | | -85 | $9.0600 | -$770.1000 | -217 |
| 10/4/2004 | 435 BCGI | | -247 | $9.3100 | -$2,299.5700 | -464 |
| 10/4/2004 | 435 BCGI | | -100 | $9.2900 | -$929.0000 | -564 |
| 10/4/2004 | 435 BCGI | | -53 | $9.2900 | -$492.3700 | -617 |
| 10/4/2004 | 435 BCGI | | -100 | $9.2900 | -$929.0000 | -717 |
| 10/4/2004 | 435 BCGI | | -147 | $9.2900 | -$1,365.6300 | -864 |
| 10/5/2004 | 435 BCGI | | -100 | $9.4300 | -$943.0000 | -964 |
| 10/5/2004 | 435 BCGI | | -46 | $9.4300 | -$433.7800 | -1010 |
| 10/11/2004 | 435 BCGI | 200 | | $8.9700 | -$1,794.0000 | -810 |
| 10/11/2004 | 435 BCGI | 100 | | $8.9700 | -$897.0000 | -710 |
| 10/11/2004 | 435 BCGI | 100 | | $8.9700 | -$897.0000 | -610 |
| 10/11/2004 | 435 BCGI | 100 | | $8.9700 | -$897.0000 | -510 |
| 10/12/2004 | 435 BCGI | 26 | | $8.8000 | -$228.8000 | -484 |
| 10/12/2004 | 435 BCGI | 100 | | $8.8100 | -$881.0000 | -384 |
| 10/12/2004 | 435 BCGI | 74 | | $8.8100 | -$651.9400 | -310 |
| 10/12/2004 | 435 BCGI | | -121 | $8.9200 | -$1,079.3200 | -431 |
| 10/14/2004 | 435 BCGI | 100 | | $8.6200 | -$862.0000 | -331 |
| 10/14/2004 | 435 BCGI | 231 | | $8.6200 | -$1,991.2200 | -100 |
| 10/18/2004 | 435 BCGI | | -100 | $8.9300 | -$893.0000 | -200 |
| 10/18/2004 | 435 BCGI | | -100 | $8.9300 | -$893.0000 | -300 |
| 10/18/2004 | 435 BCGI | | -100 | $8.9300 | -$893.0000 | -400 |
| 10/19/2004 | 435 BCGI | 100 | | $8.8400 | -$884.0000 | -300 |
| 10/19/2004 | 435 BCGI | 39 | | $8.8400 | -$344.7600 | -261 |
| 10/20/2004 | 435 BCGI | | -80 | $9.1900 | -$735.2000 | -341 |
| 10/20/2004 | 435 BCGI | | -20 | $9.1900 | -$183.8000 | -361 |
| 10/20/2004 | 435 BCGI | | -200 | $9.1900 | -$1,838.0000 | -561 |
| 10/28/2004 | 435 BCGI | 100 | | $8.9800 | -$898.0000 | -461 |
| 10/28/2004 | 435 BCGI | 100 | | $8.9800 | -$898.0000 | -361 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 10/28/2004 | 435 BCGI | 100 | | $8.9800 | -$898.0000 | -261 |
| 11/1/2004 | 435 BCGI | 64 | | $8.9800 | -$574.7200 | -197 |
| 11/5/2004 | 435 BCGI | 100 | | $8.9200 | -$892.0000 | -97 |
| 11/5/2004 | 435 BCGI | 56 | | $8.9200 | -$499.5200 | -41 |
| 11/15/2004 | 435 BCGI | | -144 | $9.1900 | -$1,323.3600 | -185 |
| 11/18/2004 | 435 BCGI | | -200 | $9.4900 | -$1,898.0000 | -385 |
| 11/18/2004 | 435 BCGI | | -700 | $9.4900 | -$6,643.0000 | -1085 |
| 11/18/2004 | 435 BCGI | | -400 | $9.4900 | -$3,796.0000 | -1485 |
| 11/18/2004 | 435 BCGI | | -500 | $9.4900 | -$4,745.0000 | -1985 |
| 11/19/2004 | 435 BCGI | 100 | | $9.3000 | -$930.0000 | -1885 |
| 11/19/2004 | 435 BCGI | 64 | | $9.3000 | -$595.2000 | -1821 |
| 11/22/2004 | 435 BCGI | | -100 | $9.3500 | -$935.0000 | -1921 |
| 11/23/2004 | 435 BCGI | 100 | | $9.2700 | -$927.0000 | -1821 |
| 11/23/2004 | 435 BCGI | 64 | | $9.2700 | -$593.2800 | -1757 |
| 11/24/2004 | 435 BCGI | | -100 | $9.3400 | -$934.0000 | -1857 |
| 11/29/2004 | 435 BCGI | 100 | | $9.1800 | -$918.0000 | -1757 |
| 11/29/2004 | 435 BCGI | 100 | | $9.1800 | -$918.0000 | -1657 |
| 11/29/2004 | 435 BCGI | 100 | | $9.1800 | -$918.0000 | -1557 |
| 11/29/2004 | 435 BCGI | 12 | | $9.1800 | -$110.1600 | -1545 |
| 11/30/2004 | 435 BCGI | 218 | | $9.2000 | -$2,005.6000 | -1327 |
| 11/30/2004 | 435 BCGI | 525 | | $8.9100 | -$4,677.7500 | -802 |
| 12/1/2004 | 435 BCGI | | -27 | $9.0500 | -$244.3500 | -829 |
| 12/1/2004 | 435 BCGI | | -100 | $9.0500 | -$905.0000 | -929 |
| 12/1/2004 | 435 BCGI | | -93 | $9.0500 | -$841.6500 | -1022 |
| 12/2/2004 | 435 BCGI | | -300 | $9.2600 | -$2,778.0000 | -1322 |
| 12/3/2004 | 435 BCGI | 400 | | $9.2500 | -$3,700.0000 | -922 |
| 12/3/2004 | 435 BCGI | 100 | | $9.2500 | -$925.0000 | -822 |
| 12/3/2004 | 435 BCGI | 200 | | $9.2500 | -$1,850.0000 | -622 |
| 12/3/2004 | 435 BCGI | | -274 | $9.0800 | -$2,487.9200 | -896 |
| 12/7/2004 | 435 BCGI | | -74 | $9.5300 | -$705.2200 | -970 |
| 12/7/2004 | 435 BCGI | | -54 | $9.5400 | -$515.1600 | -1024 |
| 12/8/2004 | 435 BCGI | | -100 | $9.6300 | -$963.0000 | -1124 |
| 12/8/2004 | 435 BCGI | | -61 | $9.6200 | -$586.8200 | -1185 |
| 12/9/2004 | 435 BCGI | 100 | | $9.5400 | -$954.0000 | -1085 |
| 12/9/2004 | 435 BCGI | 100 | | $9.5400 | -$954.0000 | -985 |
| 12/9/2004 | 435 BCGI | 100 | | $9.5500 | -$955.0000 | -885 |
| 12/10/2004 | 435 BCGI | 100 | | $9.8500 | -$985.0000 | -785 |
| 12/10/2004 | 435 BCGI | 87 | | $9.8500 | -$856.9500 | -698 |
| 12/10/2004 | 435 BCGI | | -100 | $9.8600 | -$986.0000 | -798 |
| 12/10/2004 | 435 BCGI | | -400 | $9.8600 | -$3,944.0000 | -1198 |
| 12/10/2004 | 435 BCGI | | -200 | $9.8600 | -$1,972.0000 | -1398 |
| 12/10/2004 | 435 BCGI | | -100 | $9.8600 | -$986.0000 | -1498 |
| 12/13/2004 | 435 BCGI | | -300 | $10.0900 | -$3,027.0000 | -1798 |
| 12/13/2004 | 435 BCGI | | -300 | $10.0900 | -$3,027.0000 | -2098 |
| 12/13/2004 | 435 BCGI | | -100 | $10.0900 | -$1,009.0000 | -2198 |
| 12/13/2004 | 435 BCGI | | -38 | $10.0900 | -$383.4200 | -2236 |
| 12/14/2004 | 435 BCGI | 200 | | $9.8600 | -$1,972.0000 | -2036 |
| 12/14/2004 | 435 BCGI | 400 | | $9.8700 | -$3,948.0000 | -1636 |
| 12/14/2004 | 435 BCGI | 100 | | $9.8700 | -$987.0000 | -1536 |
| 12/14/2004 | 435 BCGI | 200 | | $9.8700 | -$1,974.0000 | -1336 |
| 12/15/2004 | 435 BCGI | | -100 | $9.8900 | -$989.0000 | -1436 |
| 12/15/2004 | 435 BCGI | | -74 | $9.8900 | -$731.8600 | -1510 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 12/16/2004 | 435 BCGI | 100 | | $9.6500 | -$965.0000 | -1410 |
| 12/16/2004 | 435 BCGI | 100 | | $9.6500 | -$965.0000 | -1310 |
| 12/16/2004 | 435 BCGI | 800 | | $9.6500 | -$7,720.0000 | -510 |
| 12/16/2004 | 435 BCGI | 82 | | $9.6300 | -$789.6600 | -428 |
| 12/16/2004 | 435 BCGI | 100 | | $9.6300 | -$963.0000 | -328 |
| 12/16/2004 | 435 BCGI | 100 | | $9.6300 | -$963.0000 | -228 |
| 12/16/2004 | 435 BCGI | 200 | | $9.6400 | -$1,928.0000 | -28 |
| 12/16/2004 | 435 BCGI | 18 | | $9.6400 | -$173.5200 | -10 |
| 12/17/2004 | 435 BCGI | | -500 | $9.5000 | -$4,750.0000 | -510 |
| 12/17/2004 | 435 BCGI | | -100 | $9.5000 | -$950.0000 | -610 |
| 12/17/2004 | 435 BCGI | 2200 | | $9.5000 | -$20,900.0000 | 1590 |
| 12/17/2004 | 435 BCGI | 12 | | $9.5600 | -$114.7200 | 1602 |
| 12/17/2004 | 435 BCGI | 100 | | $9.5800 | -$958.0000 | 1702 |
| 12/17/2004 | 435 BCGI | 100 | | $9.5700 | -$957.0000 | 1802 |
| 12/17/2004 | 435 BCGI | 100 | | $9.5800 | -$958.0000 | 1902 |
| 12/17/2004 | 435 BCGI | 212 | | $9.5800 | -$2,030.9600 | 2114 |
| 12/30/2004 | 435 BCGI | 76 | | $9.4000 | -$714.4000 | 2190 |
| 1/3/2005 | 435 BCGI | | -25 | $9.2500 | -$231.2500 | 2165 |
| 1/3/2005 | 435 BCGI | | -100 | $9.2500 | -$925.0000 | 2065 |
| 1/3/2005 | 435 BCGI | | -475 | $9.2500 | -$4,393.7500 | 1590 |
| 1/4/2005 | 435 BCGI | 125 | | $9.0000 | -$1,125.0000 | 1715 |
| 1/5/2005 | 435 BCGI | 58 | | $8.9100 | -$516.7800 | 1773 |
| 1/6/2005 | 435 BCGI | | -100 | $9.1000 | -$910.0000 | 1673 |
| 1/6/2005 | 435 BCGI | | -12 | $9.1000 | -$109.2000 | 1661 |
| 1/7/2005 | 435 BCGI | 76 | | $9.0800 | -$690.0800 | 1737 |
| 1/10/2005 | 435 BCGI | | -248 | $9.3900 | -$2,328.7200 | 1489 |
| 1/12/2005 | 435 BCGI | | -57 | $9.4700 | -$539.7900 | 1432 |
| 1/13/2005 | 435 BCGI | 71 | | $9.4400 | -$670.2400 | 1503 |
| 1/14/2005 | 435 BCGI | 265 | | $9.2500 | -$2,451.2500 | 1768 |
| 1/18/2005 | 435 BCGI | | -111 | $9.3800 | -$1,041.1800 | 1657 |
| 1/19/2005 | 435 BCGI | 75 | | $9.3900 | -$704.2500 | 1732 |
| 1/20/2005 | 435 BCGI | 9 | | $9.0700 | -$81.6300 | 1741 |
| 1/20/2005 | 435 BCGI | 100 | | $9.0700 | -$907.0000 | 1841 |
| 1/20/2005 | 435 BCGI | 56 | | $9.0700 | -$507.9200 | 1897 |
| 1/21/2005 | 435 BCGI | 94 | | $8.8800 | -$834.7200 | 1991 |
| 1/21/2005 | 435 BCGI | | -1000 | $8.9200 | -$8,920.0000 | 991 |
| 1/24/2005 | 435 BCGI | | -35 | $8.9600 | -$313.6000 | 956 |
| 1/25/2005 | 435 BCGI | 76 | | $8.8100 | -$669.5600 | 1032 |
| 1/27/2005 | 435 BCGI | | -100 | $8.2000 | -$820.0000 | 932 |
| 1/27/2005 | 435 BCGI | | -200 | $8.2000 | -$1,640.0000 | 732 |
| 1/27/2005 | 435 BCGI | | -100 | $8.2000 | -$820.0000 | 632 |
| 1/27/2005 | 435 BCGI | | -100 | $8.2000 | -$820.0000 | 532 |
| 1/27/2005 | 435 BCGI | | -100 | $8.1000 | -$810.0000 | 432 |
| 1/27/2005 | 435 BCGI | | -400 | $8.1000 | -$3,240.0000 | 32 |
| 1/27/2005 | 435 BCGI | | -200 | $7.9800 | -$1,596.0000 | -168 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -268 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -368 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -468 |
| 1/28/2005 | 435 BCGI | | -100 | $7.5800 | -$758.0000 | -568 |
| 1/28/2005 | 435 BCGI | | -150 | $7.5700 | -$1,135.5000 | -718 |
| 1/28/2005 | 435 BCGI | | -100 | $7.8900 | -$789.0000 | -818 |
| 1/28/2005 | 435 BCGI | | -197 | $7.8800 | -$1,552.3600 | -1015 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 1/28/2005 | 435 BCGI | | -100 | $7.6200 | -$762.0000 | -1115 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6100 | -$761.0000 | -1215 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6000 | -$760.0000 | -1315 |
| 1/28/2005 | 435 BCGI | | -100 | $7.6100 | -$761.0000 | -1415 |
| 1/28/2005 | 435 BCGI | | -100 | $7.5800 | -$758.0000 | -1515 |
| 2/2/2005 | 435 BCGI | 269 | | $7.4600 | -$2,006.7400 | -1246 |
| 2/2/2005 | 435 BCGI | 100 | | $7.4700 | -$747.0000 | -1146 |
| 2/2/2005 | 435 BCGI | 31 | | $7.4700 | -$231.5700 | -1115 |
| 2/4/2005 | 435 BCGI | | -100 | $7.6400 | -$764.0000 | -1215 |
| 2/4/2005 | 435 BCGI | | -28 | $7.6400 | -$213.9200 | -1243 |
| 2/7/2005 | 435 BCGI | 100 | | $7.5500 | -$755.0000 | -1143 |
| 2/7/2005 | 435 BCGI | 30 | | $7.5500 | -$226.5000 | -1113 |
| 2/10/2005 | 435 BCGI | 100 | | $7.1200 | -$712.0000 | -1013 |
| 2/10/2005 | 435 BCGI | 100 | | $7.1200 | -$712.0000 | -913 |
| 2/10/2005 | 435 BCGI | 100 | | $7.1200 | -$712.0000 | -813 |
| 2/10/2005 | 435 BCGI | 231 | | $7.1300 | -$1,647.0300 | -582 |
| 2/11/2005 | 435 BCGI | 100 | | $6.9500 | -$695.0000 | -482 |
| 2/11/2005 | 435 BCGI | 102 | | $6.9500 | -$708.9000 | -380 |
| 2/14/2005 | 435 BCGI | | -500 | $7.4200 | -$3,710.0000 | -880 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9300 | -$793.0000 | -980 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1080 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1180 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1280 |
| 2/15/2005 | 435 BCGI | | -100 | $7.9100 | -$791.0000 | -1380 |
| 2/15/2005 | 435 BCGI | | -250 | $7.9200 | -$1,980.0000 | -1630 |
| 2/16/2005 | 435 BCGi | 160 | | $7.7400 | -$1,238.4000 | -1470 |
| 2/17/2005 | 435 BCGI | 100 | | $7.4900 | -$749.0000 | -1370 |
| 2/17/2005 | 435 BCGI | 15 | | $7.4900 | -$112.3500 | -1355 |
| 2/17/2005 | 435 BCGI | 100 | | $7.5100 | -$751.0000 | -1255 |
| 2/17/2005 | 435 BCGI | 200 | | $7.5100 | -$1,502.0000 | -1055 |
| 2/17/2005 | 435 BCGI | 100 | | $7.5100 | -$751.0000 | -955 |
| 2/18/2005 | 435 BCGI | | -100 | $7.5500 | -$755.0000 | -1055 |
| 2/18/2005 | 435 BCGI | | -100 | $7.5500 | -$755.0000 | -1155 |
| 2/18/2005 | 435 BCGI | | -73 | $7.5500 | -$551.1500 | -1228 |
| 2/18/2005 | 435 BCGI | | -100 | $7.5600 | -$756.0000 | -1328 |
| 2/18/2005 | 435 BCGI | | -200 | $7.5600 | -$1,512.0000 | -1528 |
| 2/18/2005 | 435 BCGI | 2500 | | $7.6800 | -$19,200.0000 | 972 |
| 2/24/2005 | 435 BCGI | 39 | | $7.5300 | -$293.6700 | 1011 |
| 3/2/2005 | 435 BCGI | 100 | | $7.2400 | -$724.0000 | 1111 |
| 3/2/2005 | 435 BCGI | 78 | | $7.2400 | -$564.7200 | 1189 |
| 3/7/2005 | 435 BCGI | 3 | | $7.0900 | -$21.2700 | 1192 |
| 3/7/2005 | 435 BCGI | 100 | | $7.1000 | -$710.0000 | 1292 |
| 3/7/2005 | 435 BCGI | 12 | | $7.1000 | -$85.2000 | 1304 |
| 3/8/2005 | 435 BCGI | 96 | | $6.9400 | -$666.2400 | 1400 |
| 3/10/2005 | 435 BCGI | 100 | | $6.5300 | -$653.0000 | 1500 |
| 3/10/2005 | 435 BCGI | 359 | | $6.5300 | -$2,344.2700 | 1859 |
| 3/18/2005 | 435 BCGI | 100 | | $7.4600 | -$746.0000 | 1959 |
| 3/18/2005 | 435 BCGI | 400 | | $7.4600 | -$2,984.0000 | 2359 |
| 3/18/2005 | 435 BCGI | 100 | | $7.4600 | -$746.0000 | 2459 |
| 3/18/2005 | 435 BCGI | 100 | | $7.4600 | -$746.0000 | 2559 |
| 3/18/2005 | 435 BCGI | | -100 | $7.5400 | -$754.0000 | 2459 |
| 3/18/2005 | 435 BCGI | | -200 | $7.5400 | -$1,508.0000 | 2259 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 3/18/2005 | 435 BCGI | | -100 | $7.5300 | -$753.0000 | 2159 |
| 3/18/2005 | 435 BCGI | | -100 | $7.5300 | -$753.0000 | 2059 |
| 3/22/2005 | 435 BCGI | | -100 | $7.5300 | -$753.0000 | 1959 |
| 3/22/2005 | 435 BCGI | | -106 | $7.5200 | -$797.1200 | 1853 |
| 3/22/2005 | 435 BCGI | | -59 | $7.5100 | -$443.0900 | 1794 |
| 3/23/2005 | 435 BCGI | 9 | | $7.3300 | -$65.9700 | 1803 |
| 4/8/2005 | 435 BCGI | 1300 | | $6.5500 | -$8,515.0000 | 3103 |
| 4/11/2005 | 435 BCGI | 200 | | $6.3000 | -$1,260.0000 | 3303 |
| 4/18/2005 | 435 BCGI | 154 | | $6.1900 | -$953.2600 | 3457 |
| 4/21/2005 | 435 BCGI | | -63 | $6.4000 | -$403.2000 | 3394 |
| 4/27/2005 | 435 BCGI | 184 | | $5.8300 | -$1,072.7200 | 3578 |
| 5/6/2005 | 435 BCGI | 33 | | $5.7600 | -$190.0800 | 3611 |
| 5/10/2005 | 435 BCGI | | -100 | $5.9800 | -$598.0000 | 3511 |
| | | 47,240 | -43,729 | | -$857,649.8000 | |
| | | | | | | |
| 4/16/2004 | 435 QGBAPR10C | 3 | | $1.9000 | -$570.0000 | |
| 4/15/2004 | 435 QGBAPR12C | | -10 | $0.1000 | -$100.0000 | |
| 4/16/2004 | 435 QGBAPR12C | | -10 | $0.0000 | $0.0000 | |
| 3/22/2005 | 435 QGBAPR7C | 4 | | $0.4000 | -$160.0000 | |
| 3/22/2005 | 435 QGBAPR7C | 2 | | $0.4000 | -$80.0000 | |
| 4/15/2005 | 435 QGBAPR7C | | -6 | $0.0000 | $0.0000 | |
| 6/23/2004 | 435 QGBAUG10C | 10 | | $0.6000 | -$600.0000 | |
| 7/9/2004 | 435 QGBAUG10C | 10 | | $0.4000 | -$400.0000 | |
| 7/22/2004 | 435 QGBAUG10C | | -30 | $0.1500 | -$450.0000 | |
| 8/20/2004 | 435 QGBAUG10C | 10 | | $0.0000 | $0.0000 | |
| 7/9/2004 | 435 QGBAUG10P | 1 | | $0.9500 | -$95.0000 | |
| 8/20/2004 | 435 QGBAUG10P | | -1 | $1.6600 | -$166.0000 | |
| 5/19/2004 | 435 QGBDEC10C | | -3 | $2.6500 | -$795.0000 | |
| 6/14/2004 | 435 QGBDEC10C | 6 | | $1.1000 | -$660.0000 | |
| 6/14/2004 | 435 QGBDEC10C | 8 | | $1.1000 | -$880.0000 | |
| 6/18/2004 | 435 QGBDEC10C | 3 | | $1.3000 | -$390.0000 | |
| 6/21/2004 | 435 QGBDEC10C | 10 | | $1.1500 | -$1,150.0000 | |
| 6/22/2004 | 435 QGBDEC10C | 10 | | $1.0500 | -$1,050.0000 | |
| 10/4/2004 | 435 QGBDEC10C | 10 | | $0.4500 | -$450.0000 | |
| 12/17/2004 | 435 QGBDEC10C | | -44 | $0.0000 | $0.0000 | |
| 6/10/2004 | 435 QGBDEC10P | 2 | | $2.0000 | -$400.0000 | |
| 8/9/2004 | 435 QGBDEC10P | | -10 | $2.2500 | -$2,250.0000 | |
| 8/13/2004 | 435 QGBDEC10P | 5 | | $2.5000 | -$1,250.0000 | |
| 11/30/2004 | 435 QGBDEC10P | 4 | | $0.9500 | -$380.0000 | |
| 12/17/2004 | 435 QGBDEC10P | | -1 | $0.5000 | -$50.0000 | |
| 4/21/2004 | 435 QGBDEC12C | 2 | | $1.9500 | -$390.0000 | |
| 6/21/2004 | 435 QGBDEC12C | 5 | | $0.5500 | -$275.0000 | |
| 6/23/2004 | 435 QGBDEC12C | 10 | | $0.4500 | -$450.0000 | |
| 7/23/2004 | 435 QGBDEC12C | 4 | | $0.2000 | -$80.0000 | |
| 11/30/2004 | 435 QGBDEC12C | 10 | | $0.0500 | -$50.0000 | |
| 12/17/2004 | 435 QGBDEC12C | | -31 | $0.0000 | $0.0000 | |
| 5/3/2004 | 435 QGBDEC12P | 5 | | $2.9000 | -$1,450.0000 | |
| 12/17/2004 | 435 QGBDEC12P | | -5 | $3.0000 | -$1,500.0000 | |
| 7/21/2004 | 435 QGBDEC7C | 4 | | $1.6000 | -$640.0000 | |
| 11/18/2004 | 435 QGBDEC7C | 18 | | $2.0000 | -$3,600.0000 | |
| 12/17/2004 | 435 QGBDEC7C | | -22 | $2.0000 | -$4,400.0000 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1/27/2005 | 435 QGBFEB7C | 15 | | | $0.9500 | -$1,425.0000 |
| 1/28/2005 | 435 QGBFEB7C | 10 | | | $0.5500 | -$550.0000 |
| 2/18/2005 | 435 QGBFEB7C | | -25 | | $0.1800 | -$450.0000 |
| 1/27/2005 | 435 QGBFEB7P | | -10 | | $0.3000 | -$300.0000 |
| 1/27/2005 | 435 QGBFEB7P | | -5 | | $0.3000 | -$150.0000 |
| 2/18/2005 | 435 QGBFEB7P | 15 | | | $0.0000 | $0.0000 |
| 12/3/2004 | 435 QGBJAN10P | 10 | | | $1.0500 | -$1,050.0000 |
| 1/21/2005 | 435 QGBJAN10P | | -10 | | $1.0800 | -$1,080.0000 |
| 6/9/2004 | 435 QGBJUL10C | 40 | | | $0.9500 | -$3,800.0000 |
| 6/9/2004 | 435 QGBJUL10C | 10 | | | $0.9500 | -$950.0000 |
| 7/9/2004 | 435 QGBJUL10C | | -10 | | $0.0500 | -$50.0000 |
| 7/16/2004 | 435 QGBJUL10C | | -40 | | $0.0000 | $0.0000 |
| 6/16/2004 | 435 QGBJUL10P | | -20 | | $1.3500 | -$2,700.0000 |
| 7/6/2004 | 435 QGBJUL10P | | -4 | | $0.7000 | -$280.0000 |
| 7/16/2004 | 435 QGBJUL10P | 24 | | | $1.0900 | -$2,616.0000 |
| 5/14/2004 | 435 QGBJUN10C | 10 | | | $1.3500 | -$1,350.0000 |
| 5/14/2004 | 435 QGBJUN10C | 10 | | | $1.3500 | -$1,350.0000 |
| 5/14/2004 | 435 QGBJUN10C | 10 | | | $1.3500 | -$1,350.0000 |
| 6/1/2004 | 435 QGBJUN10C | | -3 | | $1.1000 | -$330.0000 |
| 6/18/2004 | 435 QGBJUN10C | | -27 | | $0.0000 | $0.0000 |
| 5/11/2004 | 435 QGBJUN10P | 27 | | | $0.4000 | -$1,080.0000 |
| 5/13/2004 | 435 QGBJUN10P | 40 | | | $0.4500 | -$1,800.0000 |
| 6/9/2004 | 435 QGBJUN10P | | -20 | | $0.1000 | -$200.0000 |
| 6/14/2004 | 435 QGBJUN10P | 10 | | | $0.9000 | -$900.0000 |
| 6/14/2004 | 435 QGBJUN10P | 6 | | | $0.9000 | -$540.0000 |
| 6/14/2004 | 435 QGBJUN10P | 6 | | | $0.9000 | -$540.0000 |
| 6/18/2004 | 435 QGBJUN10P | | -23 | | $0.5299 | -$1,218.7700 |
| 6/18/2004 | 435 QGBJUN12C | | -8 | | $0.0000 | $0.0000 |
| 4/28/2004 | 435 QGBJUN12P | | -10 | | $1.8500 | -$1,850.0000 |
| 5/11/2004 | 435 QGBJUN12P | 6 | | | $1.6500 | -$990.0000 |
| 5/21/2004 | 435 QGBJUN12P | | -20 | | $2.1000 | -$4,200.0000 |
| 6/18/2004 | 435 QGBJUN12P | 24 | | | $3.0300 | -$7,272.0000 |
| 4/20/2004 | 435 QGBJUN7C | 20 | | | $4.0000 | -$8,000.0000 |
| 6/18/2004 | 435 QGBJUN7C | | -20 | | $1.9700 | -$3,940.0000 |
| 3/10/2005 | 435 QGBJUN7C | | -10 | | $0.6000 | -$600.0000 |
| 6/18/2004 | 435 QGBJUN7P | | -5 | | $0.0000 | $0.0000 |
| 1/3/2005 | 435 QGBMAR10C | 20 | | | $0.4000 | -$800.0000 |
| 3/18/2005 | 435 QGBMAR10C | | -20 | | $0.0000 | $0.0000 |
| 1/28/2005 | 435 QGBMAR7C | 10 | | | $0.7500 | -$750.0000 |
| 3/18/2005 | 435 QGBMAR7C | | -10 | | $0.0000 | $0.0000 |
| 4/16/2004 | 435 QGBMAY10C | 7 | | | $2.0000 | -$1,400.0000 |
| 4/20/2004 | 435 QGBMAY10C | 1 | | | $1.5500 | -$155.0000 |
| 5/3/2004 | 435 QGBMAY10C | 3 | | | $1.4500 | -$435.0000 |
| 5/21/2004 | 435 QGBMAY10C | 1 | | | $0.3500 | -$35.0000 |
| 4/20/2004 | 435 QGBMAY10P | | -10 | | $0.5000 | -$500.0000 |
| 4/28/2004 | 435 QGBMAY10P | 10 | | | $0.2000 | -$200.0000 |
| 4/2/2004 | 435 QGBMAY12C | 10 | | | $0.9500 | -$950.0000 |
| 4/2/2004 | 435 QGBMAY12C | 15 | | | $0.9500 | -$1,425.0000 |
| 4/16/2004 | 435 QGBMAY12C | 10 | | | $0.7500 | -$750.0000 |
| 4/21/2004 | 435 QGBMAY12C | | -10 | | $0.3500 | -$350.0000 |
| 4/26/2004 | 435 QGBMAY12C | | -10 | | $0.3000 | -$300.0000 |
| 5/3/2004 | 435 QGBMAY12C | 19 | | | $0.1000 | -$190.0000 |

| Date | | Symbol | Qty1 | Qty2 | Price | Amount |
|---|---|---|---|---|---|---|
| 5/14/2004 | 435 | QGBMAY12C | | -7 | $0.0500 | -$35.0000 |
| 5/21/2004 | 435 | QGBMAY12C | | -41 | $0.0000 | $0.0000 |
| 4/16/2004 | 435 | QGBMAY12P | 10 | | $1.1500 | -$1,150.0000 |
| 4/20/2004 | 435 | QGBMAY12P | | -20 | $1.6000 | -$3,200.0000 |
| 5/21/2004 | 435 | QGBMAY12P | | -10 | $2.1500 | -$2,150.0000 |
| 5/21/2004 | 435 | QGBMAY12P | 20 | | $1.7500 | -$3,500.0000 |
| 5/12/2005 | 435 | QGBMAY5C | 3 | | $1.3500 | -$405.0000 |
| 5/20/2005 | 435 | QGBMAY5C | | -3 | $0.0000 | $0.0000 |
| 5/12/2005 | 435 | QGBMAY7C | | -10 | $0.4500 | -$450.0000 |
| 5/20/2005 | 435 | QGBMAY7C | 10 | | $0.0000 | $0.0000 |
| 6/16/2004 | 435 | QGBSEP10C | 15 | | $0.7000 | -$1,050.0000 |
| 6/22/2004 | 435 | QGBSEP10C | 10 | | $0.7000 | -$700.0000 |
| 7/21/2004 | 435 | QGBSEP10C | | -10 | $0.3000 | -$300.0000 |
| 7/21/2004 | 435 | QGBSEP10C | | -20 | $0.3000 | -$600.0000 |
| 7/23/2004 | 435 | QGBSEP10C | | -2 | $0.3000 | -$60.0000 |
| 9/17/2004 | 435 | QGBSEP10C | 7 | | $0.0000 | $0.0000 |
| 6/7/2004 | 435 | QGBSEP10P | | -10 | $1.2000 | -$1,200.0000 |
| 6/14/2004 | 435 | QGBSEP10P | | -10 | $1.8000 | -$1,800.0000 |
| 9/17/2004 | 435 | QGBSEP10P | 30 | | $1.7200 | -$5,160.0000 |
| 4/28/2004 | 435 | QGBSEP12C | | -15 | $1.2500 | -$1,875.0000 |
| 4/28/2004 | 435 | QGBSEP12C | | -20 | $1.2000 | -$2,400.0000 |
| 5/13/2004 | 435 | QGBSEP12C | 1 | | $0.8500 | -$85.0000 |
| 6/4/2004 | 435 | QGBSEP12C | | -10 | $0.8500 | -$850.0000 |
| 6/21/2004 | 435 | QGBSEP12C | 3 | | $0.2500 | -$75.0000 |
| 9/17/2004 | 435 | QGBSEP12C | 43 | | $0.0000 | $0.0000 |
| 4/22/2004 | 435 | QGBSEP15C | | -10 | $0.7000 | -$700.0000 |
| 4/22/2004 | 435 | QGBSEP15C | | -10 | $0.8000 | -$800.0000 |
| 4/22/2004 | 435 | QGBSEP15C | | -3 | $0.8000 | -$240.0000 |
| 9/17/2004 | 435 | QGBSEP15C | 28 | | $0.0000 | $0.0000 |
| 7/21/2004 | 435 | QGBSEP7C | 10 | | $1.2500 | -$1,250.0000 |
| 9/17/2004 | 435 | QGBSEP7C | | -10 | $0.7799 | -$779.9000 |
| 4/8/2005 | 435 | QGBSEP7P | 25 | | $1.8000 | -$4,500.0000 |
| | | | | | | -$121,627.6700 |