# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROSENBAUM CAPITAL LLC, On Behalf of Itself and All Others Similarly Situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. CIV. A. 05-11165-WGY |
| BOSTON COMMUNICATIONS GROUP, INC., KAREN A. WALKER and EDWARD H. SNOWDEN, ) ) ) ) ) | |
| Defendants. ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Jeffrey B. Rudman (BBO #433380)
Andrea J. Robinson (BBO #556337)
Samuel J. Lieberman (*Admitted Pro Hac Vice*)
Clark W. Petschek (BBO #658881)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  December 2, 2005

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................................1

ALLEGATIONS IN THE COMPLAINT ................................................................................3

    The Freedom Litigation ........................................................................................................3

    The Present Litigation..........................................................................................................5

GOVERNING LEGAL STANDARDS....................................................................................7

ARGUMENT..............................................................................................................................9

I.      THE ALLEGEDLY FRAUDULENT STATEMENTS ARE NON-ACTIONABLE
       AS A MATTER OF LAW.............................................................................................9

      A.    The Allegedly Fraudulent Statements are General Statements of Subjective
            Belief that are Immaterial as a Matter of Law. ........................................................9

      B.    The Allegedly Fraudulent Statements are Forward-Looking Statements
            Rendered Non-Actionable By Defendants' Meaningful Cautionary
            Language About the Freedom Litigation. ...............................................................12

II.    THE COMPLAINT DOES NOT PLEAD WITH PARTICULARITY FACTS
       SHOWING THAT THE CHALLENGED STATEMENTS WERE FALSE
       WHEN MADE...............................................................................................................12

III.   THE COMPLAINT FAILS TO PLEAD FACTS TO SUPPORT A "STRONG"
       INFERENCE OF SCIENTER ......................................................................................14

      A.    The Freedom Litigation Verdict Does Not Support A Strong Inference of
            Scienter. ..................................................................................................................15

      B.    The Individual Defendants' Trading During the Class Period Undermines An
            Inference of Scienter. .............................................................................................16

CONCLUSION.........................................................................................................................20

# TABLE OF AUTHORITIES

Federal Cases

*Acito v. Imcera Corp.*,
    47 F.3d 47 (2d Cir. 1995).................................................................................. 18

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
    423 F.3d 1296 (Fed. Cir. 2005)......................................................................... 13

*Carney v. Cambridge Tech. Partners, Inc.*,
    135 F.Supp.2d 235 (D. Mass. 2001) ............................................................ 14, 17

*Cooperman v. Individual Inc.*,
    171 F.3d 43 (1st Cir. 1999)................................................................................. 3

*Crowell v. Ionics, Inc.*
    343 F.Supp.2d 1 (D. Mass. 2004) ....................................................................... 4

*Dura Pharm., Inc. v. Broudo*, --- U.S. ---,
    125 S. Ct. 1627 (2005)........................................................................................ 7

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)............................................................................................ 8

*Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v.*
    *Megasystems, LLC*, 350 F.3d 1327 (Fed. Cir. 2003) .................................... 2, 15

*Fitzer v. Security Dynamics Tech., Inc.*,
    119 F.Supp.2d 12 (D. Mass. 2000) .................................................. 8, 10, 12, 17

*Geffon v. Micrion Corp.*,
    249 F.3d 29 (1st Cir. 2001)................................................................................. 8

*Glassman v. Computervision*,
    90 F.3d 617 (1st Cir. 1996)..................................................................... 3, 10, 11

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999)................................................................ 8, 9, 10, 12

*Gross v. Summa Four, Inc*,
    93 F.3d 987 (1st Cir. 1996).......................................................................... 8, 16

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*,
    408 F.3d 1374 (Fed. Cir. 2005).......................................................................... 16

*In re Allaire Corp. Sec. Litig.*,
    224 F.Supp.2d 319 (D. Mass. 2002) .................................................................. 11

*In re Boston Tech., Inc. Sec. Litig.*,
   224 F.Supp.2d 319 (D. Mass. 1998) ........................................................... 14

*In re Bristol-Myers Squibb Sec Litig.*,
   312 F Supp 2d 549 (S.D.N.Y. 2004) ....................................................... 9, 18

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002) .................................................................. 8, 14

*In re Cybershop.com Sec. Litig.*,
   189 F.Supp.2d 314 (D.N.J. 2002) ............................................................ 10

*In re First Union Corp. Sec. Litig.*,
   128 F.Supp.2d 871 (W.D.N.C. 2001) ................................................... 18-19

*In re Int'l Bus. Mach. Corp. Sec. Litig.*,
   163 F.2d 102 (2d Cir. 1998) ...................................................................... 5

*In re Nike, Inc. Sec. Litig.*,
   181 F.Supp.2d 1160 (D. Or. 2002) ........................................................... 17

*In re Party City Sec. Litig.*,
   147 F.Supp.2d 282 (D.N.J. 2001) ............................................................ 17

*In re Peritus Software Svcs., Inc. Sec. Litig.*,
   52 F.Supp.2d 211 (D. Mass. 1999) ........................................................... 20

*In re SeaChange Int'l, Inc. Sec. Litig.*,
   2004 WL 240317 (D. Mass. Feb. 6, 2004) ........................................ 2, 15, 16

*In re Silicon Graphics, Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .................................................................. 18

*In re Staffmark, Inc. Sec. Litig.*,
   123 F.Supp.2d 1160 (E.D. Ark. 2000) ...................................................... 10

*In re Stone & Webster, Inc. Sec. Litig.*,
   253 F.Supp.2d 102 (D. Mass. 2003) ........................................................... 4

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) .................................................................. 19

*Jakobe v. Rawlings Sporting Goods Co.*,
   943 F.Supp. 1143 (E.D. Mo. 1996) .......................................................... 10

*Kafenbaum v. GTECH Holdings Corp.*,
   217 F.Supp. 2d 238 (D.R.I. 2002) ............................................................ 10

*Knorr-Bremse System Fuer Nutzfahrzenge GmbH v. Dana Corp.,*
    383 F.3d 1337 (Fed. Cir. 2004) .................................................................... 15

*Lirette v. Shiva Corp.,*
    27 F.Supp.2d 268 (D. Mass. 1998) ...................................................... 9, 16, 17

*Longman v. Food Lion, Inc.,*
    197 F.3d 675 (4th Cir. 1999) ...................................................................... 10

*Nursing Home Pension Fund v. Oracle Corp.,*
    242 F.Supp.2d 671 (N.D. Cal. 2002) .......................................................... 17

*Orton v. Parametric Tech. Corp.,*
    344 F.Supp.2d 290 (D. Mass. 2004) ....................................................*passim*

*Ressler v. Liz Claiborne, Inc.,*
    75 F.Supp.2d 43 (E.D.N.Y. 1999) .............................................................. 19

*Rosen v. Textron, Inc.,*
    321 F.Supp.2d 308 (D.R.I. 2004) .............................................................. 10

*SEC v. Healthsouth Corp.,*
    261 F.Supp.2d 1298 (N.D. Ala. 2003) ........................................................ 20

*Suna v. Bailey Corp.,*
    107 F.3d 64, (1st Cir. 1997) ...................................................................... 10

*Serabian v. Amoskeag Bank Shares, Inc.,*
    24 F.3d 357 (1st Cir. 1994) .................................................................. 11, 14

*Shaw v. Digital Equip. Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ..............................................................*passim*

*Tamko Roofing Prods., Inc. v. Ideal Roofing Co.,*
    282 F.3d 23 (1st Cir. 2002) ...................................................................... 4, 16

*Underwater Devices, Inc. v. Morrison-Knudsen Co.,*
    717 F.2d 1380 (Fed. Cir. 1983) .................................................................. 15

*Vulcan Eng'g. Co. v. Fata Aluminum, Inc.,*
    278 F.3d 1366 (Fed. Cir. 2002) .................................................................. 15

Federal Statutes

15 U.S.C. § 78u-4 ............................................................................................ 8

15 U.S.C. § 78u-4(b)(2) .................................................................................... 8

35 U.S.C. § 285 .......................................................................................... 4, 16

Federal Rules

Fed. R. Evid. 411 ....................................................................................................................... 13

Federal Regulations

17 C.F.R. § 240.10b-5.1............................................................................................................. 19

## PRELIMINARY STATEMENT

This case is an attempt by plaintiff to capitalize on an adverse patent infringement verdict against BCGI by turning it into a claim of securities fraud by hindsight. Specifically, plaintiff alleges that from June 6, 2002 until May 20, 2005 (the "Class Period"), defendant Boston Communications Group, Inc. ("BCGI") intentionally and materially misled investors for the three years preceding the verdict in *Freedom Wireless, Inc. v. BCGI, et al.*, No 1:00-cv-12234-EFH (D. Mass.) (the "Freedom litigation"), by stating it "believes" or is "confident" that it does not "infringe[] the[] patents and believes that it has meritorious defenses to the action." (¶¶59-67, 69-80.)[1] For three reasons, this Court should reject plaintiff's attempt to retrofit a patent infringement verdict into a securities fraud claim.

*First*, plaintiff distorts defendants' disclosures about the Freedom litigation by omitting from its Amended Class Action Complaint ("Complaint") any reference to defendants' extensive warnings about the potential for an adverse result. Throughout the Class Period, defendants cautioned that they "can give no assurance that we will prevail" in patent litigation, and that the Freedom litigation could have a material adverse effect on BCGI's business. Further, the defendants incorporated those warnings in cautionary language directed at the forward-looking statements at issue. Read in their proper context, defendants' challenged statements about the litigation merely express a point of view consistent with their position in court rather than any guarantee that BCGI would prevail at trial. Therefore they are immaterial as a matter of law.[2]

As courts in the First Circuit and elsewhere have repeatedly recognized, general and subjective statements of belief and confidence of the sort plaintiff challenges do not give rise to

---

[1] The Amended Complaint is cited herein as "¶__."

[2] For the Court's convenience, attached as Exhibit 1 to the Declaration of Clark W. Petschek, Esq. ("Petschek Decl.") is a chart of each challenged statement quoted in the Complaint along with the context of cautionary language in which it was made. The limited language plaintiff selectively quotes is highlighted in blue. The cautionary language omitted from the Complaint is highlighted in red. The chart is submitted herewith as a separately-bound volume entitled "**Defendants' Allegedly Fraudulent Class Period Statements**."

open market securities fraud claims. Such statements are not the types of statements on which investors and markets rely. Moreover, defendants' cautionary language renders those statements non-actionable under the PSLRA Safe Harbor and the "bespeaks caution" doctrine.

*Second*, plaintiff cannot rely on the willful infringement verdict in the Freedom litigation — which BCGI has appealed to the Federal Circuit — to discharge its burden of pleading facts supporting a strong inference of scienter. It is well-established that "[w]illfulness does not equate to fraud." *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Megasystems, LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003); *accord In re SeaChange Int'l, Inc. Sec. Litig.*, No. Civ. A. 02-12116-DPW, 2004 WL 240317, at *8-*9 (D. Mass. Feb. 6, 2004) ("willfulness in the context of patent infringement is not equivalent to actual knowledge."). Plaintiff's attempt to bootstrap the Freedom litigation verdict into a securities claim is a classic attempt to plead fraud by hindsight. Notably, plaintiff does not plead specific contemporaneous facts, such as the existence and possession of identified internal reports or memoranda, that are inconsistent with the allegedly fraudulent statements. As Judge Woodlock held in *SeaChange*, "given the well understood vagaries of litigation," 2004 WL 240317, at *8, a subsequent finding of willful infringement does not make intentionally misleading a statement that a defendant contests a patent infringement claim and believes it is entitled to prevail.

*Third*, plaintiff's allegations of scienter based on the Individual Defendants' insider trading do not discharge its burden of demonstrating that defendants' trading was unusual in scope or timing. Plaintiff's trading allegations are based on a highly self-serving approach that: (i) selectively covers only nine of the thirty-six months in the Class Period; (ii) substantially overstates the Individual Defendants' selling activity during those nine months by *adding* the *cost* of exercising options to — rather than subtracting that from — the proceeds from selling

shares, and by double-counting the number of shares sold simultaneously with the exercise of options; (iii) fails to acknowledge that each Individual Defendant actually increased his or her BCGI holdings during the Class Period; (iv) omits reference to the valid, preexisting 10b5-1 plans pursuant to which all of the sales identified in the Complaint were made; and (v) omits reference to the fact that the Individual Defendants made their last sale of shares nineteen months before the end of the Class Period, but continued to purchase BCGI stock until roughly two weeks before the Freedom litigation verdict. Such trading activity cannot sustain — and, indeed, negates — any inference of scienter.

## ALLEGATIONS IN THE COMPLAINT[3]

BCGI is a provider of real-time billing and transaction products and services to wireless phone operators on both a managed services and/or licensed system basis. BCGI's products and services include pre-paid wireless call processing and billing services. (*See, e.g.*, ¶12.) During the Class Period, defendant Karen A. Walker was (and still is) BCGI's Vice President and Chief Financial Officer. Defendant Edward H. Snowden is BCGI's President and CEO (with Ms. Walker, the "Individual Defendants"). (¶¶13-14.)

### The Freedom Litigation

On March 30, 2000, Freedom Wireless, Inc. ("Freedom Wireless") filed a complaint against BCGI and other wireless service carriers, alleging infringement of its patent relating to a system of prepaying for wireless service. (¶¶27-28.) In its Form 10-Q for the period ending March 31, 2000, BCGI promptly disclosed the Freedom Wireless suit. (Petschek Decl. Ex. 2.)[4]

---

[3] Although on a motion to dismiss a court must assume the truth of well-pleaded facts, *Cooperman v. Individual Inc.*, 171 F.3d 43, 47-8 (1st Cir. 1999), the Court need not accept as true conclusions or inferences not logically drawn from the well-pleaded facts. *See Glassman v. Computervision*, 90 F.3d 617, 628 (1st Cir. 1996) ("[we] need not credit a complaint's 'bald assertions' or legal conclusions.")

[4] SEC filings, as well as other documents relied upon in the Complaint that are attached to the Petschek declaration, may properly be considered by the Court on this motion to dismiss. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) ("In deciding a motion to dismiss a securities action, a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the

- 3 -

BCGI litigated the Freedom action for over five years, engaging in extensive discovery, motion practice, trial preparation and a 51-day trial (¶¶50-51), while spending over $20 million on its legal defense. (*See* Petschek Decl. Ex. 3 at 22, BCGI 10-Q, filed May 10, 2005.) Nevertheless, on May 20, 2005, a jury in the District of Massachusetts returned a verdict that BCGI had willfully infringed two patents held by Freedom Wireless. (¶50.)   On September 1, 2005, Judge Harrington denied BCGI's defenses of patent invalidity and entered judgment in Freedom Wireless's favor. (Petschek Decl. Ex. 4, Sept. 1, 2005 Order.)  Judge Harrington on October 13, 2005 denied Freedom Wireless's motion for attorneys' fees and enhanced damages, concluding that the case was not exceptional under 35 U.S.C. § 285.[5]  (*Id*. Ex. 5.)  BCGI has appealed the Freedom litigation verdict to the Federal Circuit. (*Id*. Ex. 6, Notice of Appeal.)

Throughout the Class Period, BCGI warned investors that "we can give no assurance that we will prevail" in patent cases like the Freedom litigation. (*E.g., id.* Ex. 7, Aug. 14, 2002 10-Q at 8; Ex. 10, Nov. 14, 2002 10-Q at 9.)  Further, throughout the Class Period, BCGI repeated its warnings that "[i]f the Company is found to infringe on the Freedom Wireless patent . . . the Company's business, financial condition, and results of operations would be materially adversely affected." (*Id*. Ex. 7 at 15; *accord* Ex. 10 at 9.)  Moreover, BCGI referenced its warnings about an adverse verdict in cautionary language describing events that could cause actual results to differ from its forward-looking statements.[6]

---

complaint"); *Crowell v. Ionics, Inc.* 343 F. Supp. 2d 1, 15 n.7 (D. Mass. 2004) (Young, C.J.) ("[T]his Court may take judicial notice of the Form 4, without converting [defendants'] motion to dismiss into a motion for summary judgment."); *In re Stone & Webster, Inc. Sec. Litig.*, 253 F. Supp. 2d 102, 123 n.7 (D. Mass. 2003) (considering SEC filings on a motion to dismiss).

[5]  Cases are "exceptional," warranting attorneys' fees under 35 U.S.C. § 285, "where the acts of infringement [a]re 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.,* 282 F.3d 23, 31 (1st Cir. 2002) (citation omitted).

[6]  Plaintiff incorrectly asserts that a May 9, 2005 statement provided more "detail than ever before" about the potential effect of the Freedom litigation on BCGI by stating "If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business.  In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology." (¶80.)  Defendants made the same or a substantially similar warning no fewer than 10 times in prior statements during the Class Period. (*E.g.*, Petschek Decl. Ex. 21, Mar. 9, 2004 10-K, at 12.)

- 4 -

In addition, defendants continually updated investors on the status of the Freedom litigation. Defendants notified investors, for example, of the progress of discovery and of Judge Harrington's denial of the summary judgment motions brought by both the plaintiff and BCGI. (*See, e.g.*, Ex. 25, Nov. 9, 2004 10-Q at 9.) In addition, as the Freedom litigation proceeded, defendants repeatedly gave specific warnings about the potential outcomes that could adversely affect BCGI's business, including:

- "Injunctive relief against us, which could significantly restrict our ability to conduct our business";

- "An adverse judgment against us for significant monetary damages";

- "A settlement on unfavorable terms"; and

- "Obligations to the other defendants to indemnify them for damages." (*E.g., id.* Ex. 12, at Mar. 27, 2003 10-K at 26-27.)

## The Present Litigation

Plaintiff's central allegation is that two statements, repeated by defendants throughout the Class Period,[7] were false and misleading:

- "The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action." (¶¶59, 61, 63, 66, 69, 71, 73-75, 77, 79-80); and

- "We remain confident that we do not infringe on the Freedom Wireless patent and that the patents are invalid in light of prior art." (¶¶60, 62, 64, 65, 67, 69, 70, 72, 76.)[8]

The Complaint omits the extensive warnings about the Freedom litigation that accompanied each such statement. There is no acknowledgement of BCGI's repeated disclosures that the outcome of the litigation was uncertain and that the reserves for it might prove deficient. Nor is there any

---

[7] The Complaint also cites statements made before the Class Period (¶¶ 54-56), which are not actionable. *See Shaw*, 82 F.3d at 1217 ("We limit our analysis of [ ] plaintiff's claims...to the statements allegedly made by defendants within the Class Period."); *In re Int'l Bus. Mach. Corp. Sec. Litig.*, 163 F.2d 102, 107 (2d Cir. 1998) (same).

[8] In addition, plaintiff challenges two similar statements: (a) BCGI "believes that the claims made by Freedom Wireless are without merit and is vigorously defending the action" (¶58), and (b) that BCGI's counsel believes that BCGI does not infringe the patents and believes the patents are invalid (¶¶60, 68). Plaintiff also alleges that BCGI failed to set aside sufficient reserves for the litigation despite allegedly knowing the infringement claim would prevail. However, BCGI repeatedly disclosed that its reserves might prove inadequate. (*See, e.g.*, ¶86.)

reference to BCGI's disclosure of what the impact of an adverse ruling might be. By plucking BCGI's statements out of context, plaintiff apparently seeks to portray them as unflaggingly positive guarantees.

To support its allegations of falsity and scienter, plaintiff relies upon the Freedom Wireless verdict, innuendo relating to innocuous events (¶¶45-48, 86-90), and boilerplate allegations regarding the Individual Defendants' positions as officers of BCGI and their control over the allegedly fraudulent statements. (¶90, 94.) Conspicuously absent from plaintiff's allegations about the Freedom litigation are any specific allegations reflecting defendants' contemporaneous knowledge that they were infringing the Freedom Wireless patents.

The Complaint also seeks to buttress its allegations of scienter by painting a distorted picture of the Individual Defendants' trading activity. (¶93.) Out of the thirty-six months in the Class Period, plaintiff addresses trading activity during only a nine-month period ending nineteen months before the Class Period ends. Further, plaintiff overstates the proceeds the Individual Defendants netted from sales during that nine-month period by improperly *adding* the money the Individual Defendants *spent* exercising stock options to — rather than subtracting that from — the proceeds associated with ensuing sales of those shares. Additionally, plaintiff double-counts the number of shares sold simultaneously with the exercise of options. Accordingly, plaintiff wrongfully asserts Ms. Walker disposed of "98,417 shares" for "$1,246,290.45 in proceeds," when its own chart actually reflects sales of 54,382 shares for proceeds of $476,641.49. Similarly, plaintiff implies that during that period Mr. Snowden sold "153,325 shares" for "$1,743,356.16 in proceeds," when its own chart actually reflects sales of 76,925 shares for proceeds of $664,291.56. (*Id.*) Plaintiff also omits that all of the referenced sales were made pursuant to valid, preexisting 10b5-1 plans. (Petschek Decl. Exs. 28, 29, 34.)

When all of the Individual Defendants' trading during the Class Period is taken into account, it is plain that each Individual Defendant actually increased his or her holdings of BCGI stock. Specifically, Ms. Walker increased her total BCGI holdings from approximately 80,000 to 135,772, and Mr. Snowden increased his total BCGI holdings from 440,000 to 470,116.[9] More importantly, plaintiffs omit the fact that the Individual Defendants continued to purchase BCGI shares up until 18 days before the Freedom Wireless verdict was rendered. Such conduct is entirely inconsistent with the alleged fraud.

## GOVERNING LEGAL STANDARDS

To state a claim for securities fraud under § 10(b) of the Exchange Act, a plaintiff must allege, among other things: (1) "a material misrepresentation or omission," and (2) "scienter." *Dura Pharm., Inc. v. Broudo*, --- U.S. ---, 125 S. Ct. 1627, 1631 (2005). The First Circuit has concluded that "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker" are "immaterial as a matter of law" because "no reasonable investor could find them important to the total mix of information available." *Shaw*, 82 F.3d at 1217. Review of such statements for immateriality must be "especially robust" where, as here, a case involves the fraud-on-the-market theory of liability. *Id.* at 1218. A "claim that a fraud was perpetrated on the *market*" cannot be supported by such general statements of optimism or belief because the "market is not so easily duped"; it relies "on facts in determining the value of a security, not mere expressions of optimism from company spokesmen." *Id.* Further, forward-looking statements about future outcomes are not actionable under the PSLRA Safe Harbor and the bespeaks caution doctrine if they are accompanied by meaningful cautionary

---

[9] *Compare* Petschek Decl. Ex. 32, BCGI 2005 Proxy at 2-3 (providing Snowden and Walker shares held as of Feb. 28, 2005 and options exercisable as of April 29, 2005), *and id.* Ex. 28, Snowden May 2, 2005 Form 4 (disclosing purchase of 2,500 shares), *with id.*, BCGI 2002 Proxy at 2-3 (same for 2002); The difference in holdings may also be derived from the attached chronological set of Form 4's for each Individual Defendant (Exs. 28, 29.)

language. 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B); *Fitzer v. Security Dynamics Tech., Inc.,* 119 F. Supp. 2d 12, 31 (D. Mass. 2000) (Young, C.J.).

Fed. R. Civ. P. 9(b) further requires that a plaintiff plead fraud with particularity. As this Court has observed, the First Circuit is "especially strict in demanding adherence to Rule 9(b)," *Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290, 298-99 (D. Mass. 2004) (Young, C.J.) (quoting *Gross v. Summa Four*, Inc., 93 F.3d 987, 991 (1st Cir. 1996)), even where allegations purportedly relate to matters "particularly within the knowledge of the opposing party." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999). A plaintiff may not "simply seize upon disclosures made later and allege that they" demonstrate the falsity of statements "made earlier"; such allegations "represent little more than the type of 'fraud by hindsight' pleading [the First Circuit has] long rejected." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 37 (1st Cir. 2002).

Under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, plaintiff also must "state with particularity facts giving rise to a strong inference" that the defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2). Scienter is "'a mental state embracing [an] intent to deceive, manipulate, or defraud,'" *Orton*, 344 F. Supp. 2d at 299 (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n.12 (1976)), that constitutes either knowledge that statements in issue were materially false or misleading, or recklessness in that regard. *See id.* (quoting *Geffon v. Micrion Corp.,* 249 F.3d 29, 35 (1st Cir. 2001)).

Allegations of insider trading can only support an inference of scienter if the plaintiff meets its burden of setting forth facts showing that such trading is unusual or suspicious in scope or timing. *Greebel*, 194 F.3d at 198; *Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 283 (D. Mass.

1998).  An increase in holdings during the Class Period is "wholly inconsistent with fraudulent intent."  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004).

## ARGUMENT

### I.    THE ALLEGEDLY FRAUDULENT STATEMENTS ARE NON-ACTIONABLE AS A MATTER OF LAW

The thrust of the Complaint is that defendants allegedly made two fraudulent statements: "[t]he Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action" (¶¶59, 61, 63, 66, 69, 71, 73, 79-80), and BCGI "remain[s] confident that we do not infringe on the Freedom Wireless patent and that the patents are invalid in light of prior art" (¶¶60, 62, 64, 65, 67, 69, 70, 72, 76; *accord* ¶¶ 74-75, 77).  Those statements are immaterial as a matter of law, however, especially when read in the context of defendants' repeated warnings about the potential outcome and impact of the Freedom litigation. The challenged statements merely are general statements of defendants' subjective belief that they do not infringe the Freedom Wireless patent.  And, as forward-looking statements, they were rendered non-actionable under the PSLRA Safe Harbor and the bespeaks caution doctrine by the defendants' cautionary language about the Freedom litigation.

### A.    The Allegedly Fraudulent Statements are General Statements of Subjective Belief that are Immaterial as a Matter of Law.

As the First Circuit explained in *Shaw*, "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker" are "immaterial as a matter of law" because "no reasonable investor could find them important to the total mix of information available."  82 F.3d at 1217.  Indeed, *Shaw* involved general statements of belief and confidence very similar to the statements involved here — plaintiffs alleged securities fraud based, *inter alia*, on statements that one defendant was "confident that [the company] was pursuing the right strategy," and that the company was "pretty optimistic" that it would "be able

to stabilize [its] revenue in the first half of 1994." *Id.* at 1219.  The First Circuit held that those statements were "too patently immaterial to support a fraud-on-the-market claim" because they "so obviously fail to pose 'any substantial likelihood' of being 'viewed by the reasonable investor' — let alone the market — 'as having significantly altered the total mix of information available.'"  *Id.* at 1219.

Similarly, in *Orton,* the plaintiffs challenged the statement by a defendant that "I am confident that our strategy and products position us for leadership in the product development space, despite flat year-over-year revenues," and the statement by defendants that they are "pleased with ... the confirmation [they] receiv[ed] from the market and [their] customers."  344 F. Supp. 2d at 301-02.  This Court held that the first statement was "a classic example of non-actionable corporate puffery" because it was a vague promotion of the company as "well-rounded," and "[w]hat company doesn't claim that its strong workforce, infrastructure, and product development position it well for future growth?"  *Id.* at 301.  As to the second statement, this Court held that it was non-actionable because it was a "subjective opinion."  *Id.*[10]

---

[10]  Other courts, both in the First Circuit and beyond, repeatedly have held that general statements and subjective opinions expressing "confidence" or a company's "belief" are not actionable.  *See, e.g., Greebel,* 194 F.3d at 196-97 ("We are pleased with our performance for the second quarter" was "not actionable as "upbeat statement[] of optimism and puffing"); *Longman v. Food Lion, Inc.,* 197 F.3d 675, 684-85 (4th Cir. 1999) (statement that "expressed a belief" that corporation was one of the best-managed high growth operators in the food retailing industry was "immaterial puffery"); *Suna v. Bailey Corp.,* 107 F.3d at 70, (1st Cir. 1997) (statement "Company believes that these components . . . will provide the Company with opportunities comparable to those that have been provided by [other] models" non-actionable because they "lack materiality"); *Glassman,* 90 F.3d at 636 (statement "Computervision believes that CADDS 4X and CADDS 5 are likely to be used in tandem by major accounts in the foreseeable future" did not "rise to the level of optimism or certainty that would make them materially misleading"); *Rosen v. Textron, Inc.,* 321 F. Supp. 2d 308 (D.R.I. 2004) (statement that corporation "remains very confident regarding the long term prospects of [product] and expects to get clearance by the end of 2001" is non-actionable because it "is precisely the type of expression of corporate optimism that courts have found to be immaterial"); *Kafenbaum v. GTECH Holdings Corp.,* 217 F. Supp. 2d 238, 250 (D.R.I. 2002) (corporation "remains confident that [its] business is sound," was non-actionable puffery); *In re Cybershop.com Sec. Litig.,* 189 F. Supp. 2d 314, 229 & 232 (D.N.J. 2002) ("[w]e are well prepared for the holiday season and believe it will clearly differentiate us as the leader in our segment of online retail" not material); *Fitzer v. Security Dynamics Techs., Inc.,* 119 F. Supp. 2d 12, 23 (D. Mass. 2000) ("Company believes that it is well positioned to take advantage of the range of opportunities in the market for enterprise network security products" was "nonactionable puffing."); *In re Staffmark, Inc. Sec. Litig.,* 123 F. Supp. 2d 1160, 1173 (E.D. Ark. 2000) (company's statement of "belief" that its stock was "undervalued" is non-actionable "puffing" as a matter of law); *Jakobe v. Rawlings Sporting Goods Co.,* 943 F. Supp. 1143, 1157 (E.D. Mo. 1996) ("I'm confident that this business is sound and poised for growth" non-actionable puffery).

Although statements of "belief" or "confidence" may in some contexts be deemed actionable, *see In re Allaire Corp. Sec. Litig.,* 224 F.Supp.2d 319 (D. Mass. 2002) (statement that "[w]e believe the broad customer base

Viewed in context, the general statements of opinion challenged here are not of the type to invite reliance by investors and the market. *First*, the challenged statements do not reflect any guarantee that BCGI would prevail at trial. Rather, the defendants merely stated in public a point of view which was consistent with their position in the courtroom.

*Second*, plaintiff omits from the Complaint that the allegedly fraudulent statements were made in the context of warning investors that BCGI "can give no assurance that we will prevail" in patent cases like the Freedom litigation. (*E.g.*, Petschek Decl. Ex. 7 at 8.) Similarly, plaintiff omits that defendants warned investors that "[i]f patent infringement judgments are entered against the Company" in the Freedom litigation, its "business, financial condition and results or operations could be materially adversely affected." (*E.g.*, *id.* Ex. 7 at 15; *accord id.* Ex. 10 at 9; Ex. 12 at 11.) Further, although plaintiff does acknowledge that defendants warned investors of the costs of defending the Freedom litigation, and "[t]here can be no assurances that expenses associated with the Freedom Wireless suit will not exceed the Company's estimate," it omits that defendants repeated that warning throughout the Class Period. (¶58.) When read "in the context of [defendants'] numerous warnings," it is apparent that the challenged statements are immaterial as a matter of law. *Glassman*, 90 F.3d at 635.[11]

---

and developer support of our web application servers enhance our ability to introduce complementary products," our "leadership position," and provide us with a "competitive advantage" over rivals actionable), those situations are limited to statements that directly imply specific representations about a defendant's market and financial position. Such statements are precisely "the types of statements on which investors and markets rely." *Id.*

[11] That BCGI allegedly did not record sufficient reserves to account for what emerged as the ultimate Freedom Wireless jury verdict is similarly insufficient to support a claim. *See Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 362 (1st Cir. 1994) ("[M]ere failure to provide adequate reserves . . . does not implicate the concerns of the federal securities laws."). The shortfall in any reserve merely suggests that defendants did not view the litigation outcome as "probable" and reasonably estimable. Statement of Fin. Accounting Standards No. 5, Accounting for Contingencies ¶8 at 5-6 (loss contingency accrues when loss is "probable" and "can be reasonably estimated"). In any event, investors were cautioned that the reserves might prove deficient.

**B.    The Allegedly Fraudulent Statements are Forward-Looking Statements Rendered Non-Actionable By Defendants' Meaningful Cautionary Language About the Freedom Litigation.**

In the alternative, defendants' specific warnings about the Freedom litigation render their forward-looking statements about the case non-actionable under the PSLRA Safe Harbor and the bespeaks caution doctrine. *See* 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B); *Fitzer,* 119 F. Supp. 2d at 31 (statements "including forecasts, estimates, opinions or projections," accompanied by "effective cautionary language" are non-actionable under "bespeaks caution" doctrine.). Each challenged disclosure identifies the forward-looking statements contained therein. (*E.g.*, Petschek Decl. Ex. 7 at 1.) Moreover, there can be no doubt that the defendants' cautionary language was sufficiently meaningful as it encompassed defendants' warning of the precise risk that ultimately occurred here. *See Greebel*, 194 F.3d at 201.[12]

**II.    THE COMPLAINT DOES NOT PLEAD WITH PARTICULARITY FACTS SHOWING THAT THE CHALLENGED STATEMENTS WERE FALSE WHEN MADE**

The Complaint alleges that defendants' statements of belief that BCGI did not infringe the Freedom Wireless patents were false and misleading based on the Freedom litigation verdict and certain vaguely pleaded events preceding the litigation. (¶¶86(a), (b), 88; *see also* ¶¶45-48.) Those allegations are plainly insufficient to plead falsity with the particularity Rule 9(b) requires.

---

[12] Like the challenged statements in public filings and press releases (*see, e.g.*, Petschek Decl. Exs. 7, 10, 12.), the challenged statements in the conference calls were accompanied by meaningful cautionary language. For example, the moderator of the October 22, 2002 conference call told investors that:

> I would also like to caution everyone that today's call discusses Boston Communications Group's business outlook and may contain forward-looking statements. Particular forward-looking statements and all of the statements that may be made on this earnings call that are not historical facts are subject to a number of risks and uncertainties and actual results may differ materially. Please refer to the Safe Harbor statement in today's press release and all filings with the SEC for more information on facts that could cause actual results to differ.

(*Id.* Ex. 8.) The referenced press release warned that "[a]mong the important factors that would cause actual results to differ materially from those described are ... *an unfavorable judgment in the Freedom Wireless suit* which could result in substantial damages and could significantly restrict *bcgi's* ability to conduct business." (*Id.* Ex. 9) (emphasis added.) The referenced SEC filings directed investors to BCGI's specific warnings about the potential outcome of the litigation, its potential material affect on BCGI's business, and the potential costs of the litigation. (*E.g.*, *id.* Ex. 7 at 1.) Similar cautionary language accompanied the other conference calls quoted in the Complaint.

Plaintiff's allegations relating to pre-Freedom Wireless litigation events lack any specifics demonstrating that defendants' statements were false when made. Plaintiff's allegation that a Bell Atlantic engineer "would suspiciously shuffle back and forth" (¶45) from meetings with Freedom Wireless and BCGI omits any detail about who at BCGI was involved, what was discussed, when such meetings took place, or how those meetings have any bearing on what BCGI believed about the Freedom Wireless patents.

Similarly, plaintiff's allegation that BCGI "hired experts to draft a variation" of its system (¶46) shows nothing more than that BCGI continued to refine its technology; plaintiff offers no details suggesting that such variations were motivated by knowledge of patent infringement.[13] Moreover, BCGI's alleged agreement to pay Orbital Sciences $750,000 for a license to Orbital's rights to technology used by Freedom Wireless (¶47) is an investment in technology owned by Orbital, and at most would represent an attempt by BCGI to insure itself against a verdict that BCGI infringed the rights to such technology. Evidence of such insurance reflects only prudence, is not admissible to prove that a defendant acted wrongfully, *cf.* Fed. R. Evid. 411, and plaintiff does not explain how BCGI's alleged actions otherwise show that defendants believed they had infringed the Freedom Wireless patents.[14]

---

[13] Plaintiff does not establish knowing infringement with its allegations that BCGI's and Freedom's systems had similar features and that BCGI drafted variations to appear different. (¶¶ 44, 46.) An infringement determination does not turn on the similarity of product features. Rather, it is based on a "comparison of the properly construed [patent] claims." *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301 (Fed. Cir. 2005).

[14] Plaintiff alleges that BCGI knowingly relied upon "erroneously issued opinions" by counsel as evidence of scienter. (¶ 48.) However, the only opinion specified in the Amended Complaint is an opinion by the "law firm of Darby & Darby LLP" which concluded "that Freedom's patents were unenforceable." (*Id.*) The Complaint's assertion that "[I]t came out during the trial in the Freedom Litigation that BCGI knew that [the Darby & Darby] legal opinions were neither thorough nor based on a review and analysis of Freedom's actual patent …or other relevant factors" is belied by the record of the Freedom litigation. There is no indication in that record that BCGI ever received the Darby & Darby opinions. Indeed, only defendants Airtouch Communications, Bell Atlantic Mobile and Cellco Partnership were ordered to produce advice they received contradicting or casting doubt on Darby & Darby's unenforceability opinion. (Petschek Decl. Ex. 33.) Moreover, plaintiff makes no allegations to challenge the validity of (1) Mr. Snowden's statement that "our counsel and even other counsel we've retained has researched issues and found that we don't infringe the patents" (¶68), or (2) the legal opinions provided to defendants and upon which they allegedly relied.

- 13 -

Notably, the Complaint does not specify contemporaneous facts like "internal reports, memoranda or the like," reflecting defendants' belief that they were infringing the Freedom Wireless patents, or "the content of . . . documents and defendants' possession of them" which demonstrate knowing infringement when the statements about the litigation were made. *Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 251 (D. Mass. 2001) (quoting *In re Boston Tech. Sec. Litig.*, 8 F. Supp. 2d 43, 57 (D. Mass. 1998)). In fact, a close reading of plaintiff's allegations of falsity reveals that they boil down to nothing more than seizing on the Freedom litigation verdict to argue that defendants must have believed they were infringing the Freedom Wireless patents. Such pleading is an "impermissible effort to establish fraud through hindsight." *Serabian*, 24 F.3d at 367 (allegations that "defendants must have known of the severity of their problems earlier because conditions became so bad later on" are insufficient to plead fraud); *In re Cabletron Sys., Inc.*, 311 F.3d 11, 37 (1st Cir. 2002) ("simply seiz[ing] upon disclosures made later and allege that they" demonstrate the falsity of statements "made earlier" has been "long rejected.").

## III.   THE COMPLAINT FAILS TO PLEAD FACTS TO SUPPORT A "STRONG" INFERENCE OF SCIENTER

The Complaint alleges that defendants acted with scienter based on the jury verdict and judgment in the Freedom litigation (¶¶89-90); innuendo relating to innocuous events (¶¶45-48); the Individual Defendants' positions within BCGI and their control over the allegedly fraudulent statements (¶90); the Individual Defendants' motive to protect their positions at BCGI (¶94); and the improperly calculated sale and exercise of 251,742 BCGI shares and options for a total of $3 million in proceeds during the Class Period by the Individual Defendants (¶¶92-94). As demonstrated below, these allegations do not set forth facts establishing a "strong inference" of scienter as required under the PSLRA.

A.    **The Freedom Litigation Verdict Does Not Support A Strong Inference of Scienter.**

In addition to reflecting its pleading of fraud by hindsight, plaintiff's reliance on the outcome of the Freedom litigation is insufficient to support a strong inference of scienter because it is well-established that "[w]illfulness does not equate to fraud." *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Megasystems, LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003); *accord Seachange*, 2004 WL 240317, at *8 ("willfulness in the context of patent infringement is not equivalent to actual knowledge."). The standard for willful infringement is whether "the infringer acted without a reasonable belief that its actions would avoid infringement." *Vulcan Eng'g. Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002). That standard focuses "on whether the infringer exercised due care to avoid infringement." *Id.*; *accord Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1385 (Fed. Cir. 1983) (alleged infringer has "duty to exercise due care to determine whether or not he is infringing"), *quoted in Knorr-Bremse System Fuer Nutzfahrzenge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir. 2004). The willful infringement standard is considerably lower than the scienter standard, which this Court has held is "intent to deceive, manipulate, or defraud," that may be shown either through "knowledge" of falsity or "recklessness." *See Orton*, 344 F. Supp. 2d at 299.

Judge Woodlock recognized the difference between these two standards in *In re SeaChange International, Inc. Securities Litigation*, No. Civ. A. 02-12116-DPW, 2004 WL 240317, at *8-*9 (D. Mass. Feb. 6, 2004). In *SeaChange*, the plaintiffs relied upon a verdict of willful infringement to allege that defendants' prior denials of patent infringement claims were fraudulent. *Id.* at *7. Judge Woodlock concluded that "willfulness in the context of patent infringement is not equivalent to actual knowledge," as required for scienter. 2004 WL 240317,

- 15 -

at *8.  However, he concluded that an inference of scienter was permissible based on the patent

court's judgment that that the case was "exceptional," warranting attorneys' fees under 35 U.S.C.

§ 285, because such a finding is reserved for cases involving "the conduct of litigation asserting

bad faith claims and defenses."  *Id.* at *8-*9.  Ultimately, Judge Woodlock dismissed the

complaint, holding that "given the well understood vagaries of litigation," and the context of

defendants' statements, the challenged statements were not false and misleading.  *Id.* at *9.

Unlike in *SeaChange*, Judge Harrington denied Freedom Wireless's motion for a finding

that the action was "exceptional" under 35 U.S.C. § 285.  The First Circuit and other courts have

long recognized that a 35 U.S.C. § 285 "exceptional" determination is warranted "where the acts

of infringement were 'malicious,' '*fraudulent*,' 'deliberate,' or 'willful.'"  *Tamko Roofing*

*Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 31 (1st Cir. 2002) (quoting S. Rep. 93-1400, at 5

(1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133) (emphasis added); *accord Imonex Servs.,*

*Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005).  Indeed,

"willfulness short of bad faith or fraud will suffice" to hold a case exceptional.  Accordingly, the

order denying Freedom Wireless's motion for a finding that its case is "exceptional," warranting

attorneys' fees and enhanced damages, demonstrates that the verdict does not support an

inference of scienter.[15]

**B.**    **The Individual Defendants' Trading During the Class Period Undermines**
**An Inference of Scienter.**

Perhaps the most disturbing deficiencies of the Complaint relate to plaintiff's insider

trading allegations.  Plaintiff "bears the burden of showing that sales by insiders were in fact

---

[15]  Plaintiff's boilerplate allegations of scienter based on the Individual Defendants' positions at BCGI, their alleged control over the allegedly fraudulent statements, and their motive to protect their positions at BCGI are insufficient to support an inference of fraud.  *See Gross v. Summa Four, Inc.*, 93 F.3d 987, 993-94 (1st Cir. 1996); *accord Lirette v. Shiva*, 27 F. Supp. 2d 268, 283 (D. Mass. 1998) (allegations that defendants had "information concerning the Company and its operations, finances, financial condition, products and business prospects" based on position in company were "insufficient to withstand a motion to dismiss.").

unusual or suspicious in amount or timing." *Lirette*, 27 F. Supp. 2d at 283; *accord Carney*, 135

F. Supp. 2d at 256 (insider trading allegations fail where plaintiff did not plead facts comparing

class period sales to prior sales); *Fitzer*, 119 F. Supp. 2d at 25 (same). As demonstrated below,

not only does plaintiff fail to meet that burden, it seriously distorts the Individual Defendants'

actual Class Period trading.

 *First*, plaintiff incorrectly claims the charts in the Complaint capture the Individual

Defendants' "total" sales and option exercises "[d]uring the Class Period." (¶93.) In fact, its

charts only cover a nine-month period from late-January until mid-October 2003, and end

nineteen months before the end of the Class Period after the Individual Defendants' last sale of

BCGI stock. Plaintiff omits all of the Individual Defendants' trading activity from June 6, 2002

until January 29, 2003, and from October 22, 2003 until May 20, 2005 — *i.e.*, twenty-seven of

the thirty-six months of the Class Period. *See In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160,

1169 (D. Or. 2002) (two-month gap between sales and adverse disclosure negates scienter);

*Nursing Home Pension Fund v. Oracle Corp.*, 242 F. Supp. 2d 671, 685 (N.D. Cal. 2002)

(same); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) ("A broad temporal

distance between stock sales and disclosure of bad news defeats any inference of scienter.").

 *Second*, plaintiff's charts (at ¶93) substantially overstate the amount of "proceeds" the

Individual Defendants "recogniz[ed]" from the sales identified in the Complaint. Specifically,

plaintiff apparently calculated those total proceeds by *adding the costs* of exercising options to

the proceeds from selling shares. (*Id.*) In fact, the cost of option exercises should be subtracted

from — not added to — the sale proceeds to calculate the net dollars associated with the

referenced sales transactions.

*Third*, plaintiff inflates the quantity of shares defendants sold. Specifically, plaintiff double-counts shares sold pursuant to an option exercise by adding together the number of "Shares sold" to the very same number of shares purchased pursuant to the preceding exercise of options. Accordingly, the Complaint refers to "98,417 shares" sold by Ms. Walker for "$1,246,290.45 in proceeds" (¶93), when in fact the transactions identified in the same paragraph relate to the sale of 54,382 shares for proceeds of $476,641.49. Similarly, the Complaint refers to "153,325 shares" sold by Mr. Snowden for "$1,743,356.16 in proceeds," when in fact the transactions identified relate to the sale of 76,925 shares for proceeds of $664,291.56.[16]

*Fourth*, when all of the trading during the Class Period is taken into account, it is plain that each Individual Defendant actually increased his or her holdings of BCGI stock and options during the Class Period. Ms. Walker increased her total BCGI holdings from approximately 80,000 to 135,772; and Mr. Snowden increased his total BCGI holdings from approximately 440,000 to 470,116.[17] (*See* Petschek Decl. Exs. 29, 30.) This increase in holdings is "wholly inconsistent with fraudulent intent." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004); *accord In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 899

---

[16] Plaintiff also mischaracterizes or omits certain trades from the nine-month period they purport to cover. For example, plaintiff mischaracterizes Ms. Walker's October 21, 2003 *purchase* of 2,000 shares pursuant to an option exercise as a *sale* and adds the cost of that purchase as "proceeds" from trading (¶93) when in fact Ms. Walker made no such sale. Plaintiff also lists a March 20, 2003 trade by Ms. Walker as a sale of 10,434 shares at $15.02 per share, when the corresponding Form 4 for that date shows that Ms. Walker actually sold only 8,134 shares at $14.967 per share. (Petschek Decl. Ex. 29, Form 4, filed Mar. 24, 2003.) In addition, plaintiff omits a February 4, 2003 grant of 10,000 options to Ms. Walker. Because two-thirds of that amount vested by February 4, 2005, that omission has the effect of understating Ms. Walker's holdings by 6,667. (*See id.*, Form 4 filed Feb. 7, 2003.)

[17] The number for each Individual Defendant's holdings is based on stock and exercisable options, which the Ninth Circuit has held must at the very least be considered in evaluating a defendants' holdings. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986-87 (9th Cir. 1999) ("Actual stock shares plus exercisable stock options represent the owner's trading potential more accurately than the stock shares alone."). The Second Circuit has considered stocks plus all options (including non-exercisable options), in evaluating a defendant's holdings. *See Acito v. Imcera Corp.*, 47 F.3d 47, 54 (2d Cir. 1995). Under the Second Circuit's standard, Ms. Walker increased her BCGI holdings from 134,463 to 159,105 (*compare* Petschek Decl. Ex. 29, Form 4's filed Feb. 28, 2005, and Mar. 29, 2005, *with id.* Form 4 filed Jan. 8, 2002, *and* Oct. 17, 2002); and Mr. Snowden increased his from 462,958 to 527,449 (*compare id.* Ex. 28, Form 4's filed May 2, 2005, *and* Mar. 30, 2005, *with id.* Form 4's filed Jan. 9, 2002, *and* Oct. 3, 2002).

(W.D.N.C. 2001) (same); *Ressler v. Liz Claiborne, Inc.,* 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1999)
(same).

 *Fifth,* plaintiff omits the crucial fact that as the verdict in the Freedom litigation drew
closer, months after their last sale of stock, the Individual Defendants continued to purchase
increasing amounts of BCGI stock. Ms. Walker purchased 585 shares on February 27, 2004; 600
shares on June 16, 2004; 814 shares on August 31, 2004; and 1,514 shares on February 28, 2005,
only two-and-a-half months before the Freedom litigation verdict. Mr. Snowden purchased 481
shares on February 27, 2004; 1,135 shares on August 31, 2004; 1,556 shares on February 28,
2005; and 2,500 shares on May 2, 2005, only eighteen days before the Freedom litigation
verdict. That trading pattern is obviously inconsistent with an inference of scienter. Rather, it
compels the conclusion that throughout the Freedom litigation, the defendants believed BCGI
would prevail and BCGI's stock value would increase.

 *Sixth,* and finally, plaintiff omits the fact that all of the stock sales by Ms. Walker and Mr.
Snowden identified in the Complaint were executed pursuant to a preexisting written plan
authorized under 17 C.F.R. § 240.10b-5.1. (*See, e.g.,* Petschek Decl. Ex. 28, Form 4 filed Apr.
22, 2003 (identifying sale made "[p]ursuant to a 10b5-1 plan."); *id.* Ex. 29, Form 4 filed July 3,
2003 (same); *id.* Ex. 34.) Sales made pursuant to such a plan negate an inference of scienter.
*See* 17 C.F.R. § 240.10b5-1 ("[A] person's purchase or sale is not 'on the basis of' material non-
public information if" the person making the sale demonstrates that he had "adopted a written
plan for trading securities."); *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1427 (9th Cir.
1994) (concluding that "defendants' actual trading would conclusively rebut an inference of
scienter" because they "sold their shares pursuant to a predetermined plan in accordance with

SEC Rule 144"); *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1322 (N.D. Ala. 2003)

(10b5-1 plan).

    In sum, plaintiff has not pled facts sufficient to support a strong inference of scienter.

Accordingly, plaintiff's claims should be dismissed.[18]

## **CONCLUSION**

    For the foregoing reasons, the Court should grant defendants' motion to dismiss the

Complaint in its entirety.

<div style="margin-left:40%">

Respectfully Submitted,

   /s/ Clark W. Petschek

Jeffrey B. Rudman (BBO #433380)
Andrea J. Robinson (BBO #556337)
Samuel J. Lieberman *Admitted Pro Hac Vice*
Clark W. Petschek (BBO #658881)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Counsel for defendants*

</div>

Dated: December 2, 2005

---

[18] Plaintiff's § 20(a) "controlling person" claim should be dismissed because they have failed to adequately plead an underlying § 10(b) claim. *See In re Peritus*, 52 F. Supp. 2d 211, 230 (D. Mass. 1999).