# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

ROSENBAUM CAPITAL LLC, On Behalf
of Itself and All Others Similarly Situated,

               Plaintiff,

            v.

BOSTON COMMUNICATIONS GROUP, INC.,
KAREN A. WALKER and EDWARD H.
SNOWDEN,

              Defendants.
_____

No. CIV. A. 05-11165-WGY

## DECLARATION OF CLARK W. PETSCHEK IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

I, Clark W. Petschek, hereby declare:

1.     I am an attorney associated with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, counsel of record to defendants Boston Communications Group, Inc. ("BCGI"), Karen A. Walker and Edward H. Snowden (the "Individual Defendants"). I am a member in good standing of the Bar of the Commonwealth of Massachusetts, and I submit this Declaration in connection with Defendants' Memorandum in Support of Their Motion to Dismiss the Amended Class Action Complaint, filed herewith.

2.     Submitted herewith as a separate volume as Exhibit 1 is a true and correct chart of each challenged statement quoted in the Amended Complaint along with the context of cautionary language in which it was made. The limited language plaintiff quotes is highlighted in blue. The cautionary language omitted from the Amended Complaint is highlighted in red.

3.     Attached hereto as Exhibit 2 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending March 31, 2000, filed on May 12, 2000.

4.     Attached hereto as Exhibit 3 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending March 31, 2005, filed on May 10, 2005.

5.     Attached hereto as Exhibit 4 is a true and correct copy of the September 1, 2005 Order of Judgment against BCGI in *Freedom Wireless, Inc. v. Boston Communications Group, Inc. et al.,* No. 00-12234 (D. Mass.).

6.     Attached hereto as Exhibit 5 is a true and correct copy of the October 13, 2005 Order denying Freedom Wireless' Motion of Attorneys Fees and Enhanced Damages in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234 (D. Mass.).

7.     Attached hereto as Exhibit 6 is a true and correct copy of BCGI's Notice of Appeal to the Federal Circuit, filed on October 20, 2005 in *Freedom Wireless, Inc. v. Boston Communications Group, Inc. et al.,* No. 00-12234 (D. Mass.).

8.     Attached hereto as Exhibit 7 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending June 30, 2002, filed on August 14, 2002.

9.     Attached hereto as Exhibit 8 are true and correct copies of excerpts from BCGI's 3rd Quarter 2002 Earnings Conference Call, conducted on October 22, 2002.

10.     Attached hereto as Exhibit 9 is a true and correct copy of BCGI's October 22, 2002 press release.

11.     Attached hereto as Exhibit 10 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending September 30, 2002, filed on November 14, 2002.

12.     Attached hereto as Exhibit 11 are true and correct copies of excerpts from BCGI's 4th Quarter and Full Year 2002 Earnings Conference Call, conducted on February 5, 2003.

13.     Attached hereto as Exhibit 12 are true and correct copies of excerpts from BCGI's Form 10-K for the annual period ending December 31, 2002, filed on March 27, 2003.

14.     Attached hereto as Exhibit 13 is a true and correct copy of BCGI's April 16, 2003 press release.

15.     Attached hereto as Exhibit 14 are true and correct copies of excerpts from BCGI's 1st Quarter 2003 Earnings Conference Call, conducted on April 16, 2003.

16.     Attached hereto as Exhibit 15 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending March 31, 2003, filed on May 15, 2003.

17.     Attached hereto as Exhibit 16 are true and correct copies of excerpts from BCGI's 2nd Quarter 2003 Earnings Conference Call, conducted on July 16, 2003.

18.     Attached hereto as Exhibit 17 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending June 30, 2003, filed on August 14, 2003.

19.     Attached hereto as Exhibit 18 are true and correct copies of excerpts from BCGI's 3rd Quarter 2003 Earnings Conference Call, conducted on October 15, 2003.

20.     Attached hereto as Exhibit 19 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending September 30, 2003, filed on November 14, 2003.

21.     Attached hereto as Exhibit 20 are true and correct copies of excerpts from BCGI's 4th Quarter and Annual Earnings Call, conducted on February 3, 2004.

22.     Attached hereto as Exhibit 21 are true and correct copies of excerpts from BCGI's Form 10-K for the annual period ending December 31, 2003, filed on March 9, 2004.

23.     Attached hereto as Exhibit 22 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending March 31, 2004, filed on May 10, 2004.

24.    Attached hereto as Exhibit 23 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending June 30, 2004, filed on August 9, 2004.

25.    Attached hereto as Exhibit 24 are true and correct copies of excerpts from BCGI's 3rd Quarter Earnings Conference Call, conducted on October 20, 2004.

26.    Attached hereto as Exhibit 25 are true and correct copies of excerpts from BCGI's Form 10-Q for the quarterly period ending September 30, 2004, filed on November 9, 2004.

27.    Attached hereto as Exhibit 26 are true and correct copies of excerpts from BCGI's 4th Quarter Earnings Conference Call, conducted on February 1, 2005.

28.    Attached hereto as Exhibit 27 are true and correct copies of excerpts from BCGI's Form 10-K for the annual period ending December 31, 2004, filed on March 16, 2005.

29.    Attached hereto as Exhibit 28 are true and correct copies of the Forms 4 filed with the Securities and Exchange Commission on behalf of Edward H. Snowden that identify the BCGI shares purchased, sold or vested during the Class Period.

30.    Attached hereto as Exhibit 29 are true and correct copies of the Forms 4 filed with the Securities and Exchange Commission on behalf of Karen A. Walker that identify the BCGI shares purchased, sold or vested during the Class Period.

31.    Attached hereto as Exhibit 30 are true and correct copies of excerpts from BCGI's Form 14A Proxy Statement, filed on April 19, 2002.

32.    Attached hereto as Exhibit 31 are true and correct copies of excerpts from BCGI's Form 14A Proxy Statement, filed on April 20, 2004.

33.    Attached hereto as Exhibit 32 are true and correct copies of excerpts from BCGI's Form 14A Proxy Statement, filed on April 25, 2005.

34.    Attached hereto as Exhibit 33 is a true and correct copy of the April 8, 2003 Order granting Freedom Wireless' Motion to Compel Airtouch Communications, Bell Atlantic Mobile and Cellco Partnership to Produce Advice Contradicting or Casting Doubt on Darby & Darby's Unenforceability Opinion in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234 (D. Mass.).

35.    Attached hereto as Exhibit 34 are true and correct copies of the pre-existing Stock Trading Plans under 17 C.F.R. § 240.10b5-1, pursuant to which they made sales during the Class Period.

I declare under penalty of perjury under the laws of Massachusetts that the foregoing is true and correct.

Executed this 2nd day of December 2005, at Boston, Massachusetts.


_____/s/ Clark W. Petschek_____
                Clark W. Petschek

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

**NO. CIV. A. 11165-WGY**

**Exhibit 1 to Declaration of Clark W. Petschek In Support**

**of Defendants' Motion to Dismiss the Amended Class Action Complaint**

## Defendants' Allegedly Fraudulent Class Period Statements*

* The statements contained herein are excerpts from defendants' statements during the Class Period that are identified in the Amended Complaint. The statements plaintiff quotes are highlighted in blue. Defendants' cautionary language omitted from the Amended Complaint is highlighted in red.

8/14/02  10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 10-Q for the quarterly period ending June 30, 2002 | 8/14/02 | 2 | This Quarterly Report contains forward-looking statements that involve risks and uncertainties…The Company's actual results may differ significantly from the results discussed in the forward-looking statements. | ¶59 |
| | | 3 | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" of this Quarterly Report on Form 10-Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward-looking statements made herein.

**NOTES TO CONSOLIDATED FINANCIAL STATEMENT**

**Special Charges**

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by the Company's outside counsel to be incurred in the defense of a patent infringement suit brought by Freedom Wireless. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. The Company believes that the claims made by Freedom Wireless are without merit and is vigorously defending the action.

…

**Contingencies – Legal**

In March, 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. Upon motion by the Company, the suit was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The suit alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. The Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is currently in the discovery phase. The Company does not believe it infringes these patents and believes it has meritorious defenses to the action. | ¶57

¶58 |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc., et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | From time to time, as a normal incidence of the nature of our business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, we can give no assurance that we will prevail. | |
| | | | ... | |
| | | 14 | **MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS** | |
| | | | **Legal Costs** | |
| | | | The Company accrues costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 2 to the Consolidated Financial Statements, the Company has accrued its best estimate of the probable costs of current litigation. The estimate has been developed in consultation with the Company's outside counsel who are handling the cases. There can be no assurances that the Company's expenses will not exceed the Company's estimate. | |
| | | | ... | |
| | | 15 | **Certain Factors That May Affect Future Results** | |
| | | | The Company's success and ability to compete is dependent in part upon its proprietary technology and its ability to protect such technology. The Company continues to defend its proprietary technology against patent infringement litigation, including the Freedom Wireless lawsuit. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. If the Company is found to infringe on the Freedom Wireless patent or if other patent infringement judgments are entered against the Company or unauthorized copying and misuse of the Company's technology were to occur to any substantial degree, the Company's business, financial condition and results of operations would be materially adversely affected. | |
| | | 18 | **Legal Proceedings** | |
| | | | In March 2000, a suit was filed by Freedom Wireless, Inc. in the United States District Court for the Northern District of California against the Company and a number of wireless carriers, including customers and former customers of the Company. Upon motion by the Company, the suit | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc., et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | was transferred to the United States District Court in Massachusetts in October, 2000 and is pending in that court. The suit alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks injunctive relief and damages in an unspecified amount. The Company has indemnification obligations with respect to the other defendants. The suit is currently in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action. | ¶59 |

10/22/02 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 3rd Qtr 2002 Conference Call | 10/22/02 | 2 | I would also like to caution everyone that today's call discusses Boston Communication Group's business outlook, and may contain forward-looking statements. Particular forward-looking statements and all of the statements that may be made on this earnings call that are not historical facts are subject to a number of risks and uncertainties, and actual results may differ materially. Please refer to the Safe Harbor statement in today's press release and all filings with the SEC for more information on facts that could cause actual results to differ. | ¶60 |
| | | | ... | |
| | | 2 | As we mentioned in today's release, because of additional unforeseen delays in the discovery timeframe for the Freedom Wireless lawsuit and the entry of the district court scheduling order, this detailed the timeline for Discovery and summary judgment motions, we have changed the manner by which we accrued for these legal costs going forward. | |
| | | | This new treatment does not reflect any change in our position on the case, and we remain confident that we do not infringe on the Freedom Wireless patent. And that the patents are invalid in light of prior art. | |
| | | | Again, I can't reiterate enough our counsel and we feel very strongly about our case. Our position has not changed one bit, in that regard. | |

11/14/02 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 10-Q for period the quarterly period ending September 30, 2002 | 11/14/02 | 2 | This Quarterly Report contains forward-looking statements that involve risks and uncertainties, including without limitation, statements regarding the prepaid subscriber base ... after tax charges for legal costs associated with the Freedom Wireless suit .... The Company's actual results may differ significantly from the results discussed in the forward-looking statements. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the caption "Notes To Consolidated Financial Statements", "Management's Discussion and Analysis of Financial Condition and Results of Operation", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" in this Quarterly Report on Form 10-Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward-looking statements made herein. | |
| | | ... | | |
| | | 8-9 | **Contingencies – Legal** | ¶61 |
| | | | NOTES TO CONSOLIDATED FINANCIAL STATEMENTS | |
| | | | In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit alleges the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief, which could significantly restrict the Company's ability to conduct its business if the Company is found to have infringed the Freedom Wireless patents. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is currently in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action. | |
| | | | In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $5.3 million, respectively, principally to accrue for legal expenses estimated by the Company's outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable discovery process, which has made it difficult to reasonably estimate legal costs in the suit, the Company has decided to account for Freedom Wireless legal costs as incurred in the future rather than accrue the entire amount of such costs when they become probable. This accounting treatment had no impact on the third quarter of 2002. However, beginning in the fourth quarter of 2002, the Company expects to generate quarterly after tax charges of approximately | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc., et al.*

NO. CIV.A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 16 | $550,000 per quarter for legal costs associated with the Freedom Wireless suit until it is resolved.  There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate.  If Freedom Wireless were to prevail in the case, the amount of the damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected. | |
| | | | From time to time, as a normal incidence of the nature of our business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes.  As to such claims and litigation, we can give no assurance that we will prevail.... | |
| | | | **Legal Costs** | |
| | | | The Company accrues costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred.  As discussed in Note 6 to the Consolidated Financial Statements, the Company accrued its best estimate of the probable cost of certain current litigation, but is now expensing legal costs related to the Freedom Wireless lawsuit as incurred.  Other litigation is still being accounted for under this policy and the related estimate has been developed in consultation with the Company's outside counsel who is handling the case.  There can be no assurances that the Company's expenses will not exceed the Company's estimate. | |
| | | | ... | |
| | | 17 | **Certain Factors That May Affect Future Results** | |
| | | | The Company's success and ability to compete is dependent in part upon its proprietary technology and its ability to protect such technology.  The Company continues to defend its proprietary technology against patent infringement litigation, including the Freedom Wireless lawsuit.  There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimates.  In addition, if the Company is found to infringe on the Freedom Wireless patents, the amount of damages and indemnification obligations to the Company's carrier customers would likely be substantial.  In addition, an adverse judgment could result in an injunction against the Company or require the Company to alter its prepaid processing methodology.  Any of these results would likely have a material adverse effect on the Company's business, financial condition and results of operations.  Indeed, if any patent infringement judgments are entered against the Company or unauthorized copying or misuse of the Company's technology were to occur to any substantial degree, the Company's business, financial condition and results of operations could be materially adversely affected. | |
| | | | ... | |

- 6 -

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | **20** | **PART II. OTHER INFORMATION**<br><br>**Legal Proceedings**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount and injunctive relief, which could significantly restrict the Company's ability to conduct its business if an unfavorable judgment is reached. The Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is currently in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.<br><br>The Company estimates that quarterly after tax expenses to defend this case will be approximately $550,000 until this matter is resolved. However, there can be no assurances that the Company's expenses will not exceed the Company's estimate. If Freedom Wireless were to prevail in the case, the amount of the damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected. | **¶61** |

2/5/03 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 4th Qtr 2002 Conference Call | 2/5/03 | 2 | I'd also like to caution everyone that today's call discusses Boston Communication Group's business outlook and may contain forward-looking statements. Particularly forward-looking statements and all other statements that may be made on this earnings call that are not historical fact are subject to a number of risks and uncertainties, and actual results may differ materially. Please refer to the Safe Harbor statement in today's press release and all filings with the SEC for more information on facts that could cause actual results to differ. | |
| | | 2 | ...<br><br>If the legal costs to defend Freedom Wireless suits continue throughout 2003 we expect the GAAP EPS should range between 52 and 58 cents per share, about triple 2002 GAAP earnings. Note that we expect we will continue to generate quarterly after tax legal charges of approximately 3 cents per share until the Freedom Wireless matter is resolved. I should also note that the timing of the case remains on track and we still expect that summary judgment motions will be submitted during sometime the second quarter of this year. There are no other developments to report and there has been no change to our position in the case. We remain confident that we do not infringe on the Freedom Wireless patents that the patents are invalid in light of prior art. | ¶62 |

3/27/03 10-K

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-K for the fiscal year ending December 31, 2002 | 3/27/03 | 2<br><br>11-12 | This Annual Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding our continued investment in our payment services business, the expected increase in subscriber base... legal expenses for the Freedom Wireless lawsuit, increases in depreciation and amortization expense, decrease in interest income and our income tax rate and increases in capital investments. These statements are based on the beliefs and assumptions of management.<br><br>Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.<br><br>A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results," "Quantitative and Qualitative Disclosures About Market Risk" and those set forth in Items 1 and 3 of Part I of this Annual Report on Form 10-K. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made here.<br><br>**Legal Proceedings**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that we infringed the Freedom Wireless patents could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is still in the discovery phase. We do not believe that we infringe these patents and we believe that we have meritorious defenses to the action.<br><br>We recorded a special charge in the fourth quarter of 2000 of $2.6 million, in the third quarter of 2001 and in the first quarter of 2002 of $3.3 million, principally to accrue for legal expenses estimated by our outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. The lengthy and unpredictable discovery process has made it difficult for us to reasonably estimate legal costs in this suit. As a result, we are now accounting for Freedom Wireless legal costs as incurred rather than accruing the entire amount of such costs when they become probable. For the fourth quarter of 2002, we recorded $998,000 in legal charges associated with the Freedom Wireless suit. We also expect to continue to spend up to $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially and adversely affected. | ¶63 |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc., et al.*

NO. CIV.A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 23 | ...<br><br>From time to time, as a normal incidence of the nature of our business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. *As to such claims and litigation, we can give no assurance that we will prevail....*<br><br>...<br><br>**Legal Costs**<br><br>We accrue the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probably and estimable; otherwise such costs are expensed as incurred. As discussed in Note 4 to the Consolidated Financial Statements, in 2002 we began expensing legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which has now made it difficult to reasonably estimate legal costs in the suit. Other litigation will continue to be accounted for in accordance with our accounting policy and the related estimate has been developed in consultation with our outside counsel who is handling the case. *We believe that we have recorded an appropriate estimate of anticipated legal expenses, but there can be no assurances that our expenses will not exceed our estimate.* | |
| | | 26-27 | ...<br><br>**Certain Factors That May Affect Future Results**<br><br>*An unfavorable judgment in the Freedom Wireless lawsuit or any other lawsuit would have a material impact on our business.*<br><br>In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March, 2001 Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. In addition, *we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of this dispute.*<br><br>*The suit is currently in the discovery phase, and we cannot yet assess our potential liability. Our failure to prevail in this matter would have any or all of the following significant adverse effects on our business, financial condition and results of operations:*<br><br>• *injunctive relief against us, which could significantly restrict our ability to conduct our business;* | |

- 10 -

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | ... | |
| | | | • an adverse judgment against us for significant monetary damages; | |
| | | | • a settlement on unfavorable terms; | |
| | | | • obligations to other defendants to indemnify them for damages; | |
| | | | • obligations to customers for breach of a contractual warranty of noninfringement; or | |
| | | | • a requirement to reengineer our prepaid processing methodology to avoid patent infringement, which would likely result in additional expense and delay. | |
| | | 37 | **Notes to Consolidated Financial Statements** **Years Ended December 31, 2002, 2001 and 2000** ... **Legal Costs** The Company accrues the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 4 to the Consolidated Financial Statements, the Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which has made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy and the related estimate has been developed in consultation with the Company's outside counsel who is handling the case. There can be no assurances that the Company's expenses will not exceed its estimate. | |
| | | 51-52 | **COMMITMENTS AND CONTINGENCIES** In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that we infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action. | ¶63 |
| | | | The Company expects to continue to spend up to $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed its estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected. | |

4/16/03 Press Release

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Press Release | 4/16/03 | 2 | During the quarter ended March 31, 2003, the Company incurred $915,000 in legal costs, or approximately $0.03 per share after taxes, primarily for the continued defense of the Freedom Wireless patent infringement suit. These costs are in line with previous guidance and are expected to continue at this level until the matter is resolved. There are no developments to report on the case and exact timing of procedures has not been determined. There has also been no change to the Company's position on the case and bcgi remains confident that it does not infringe the Freedom Wireless patents and that the patents are invalid in light of prior art. | ¶64 |
| | | | ... | |
| | | 3 | This press release contains, in addition to historical information, forward-looking statements that involve risks and uncertainties including statements regarding earnings per share estimates and estimates of future legal expenses. Such statements are based on management's current expectations and are subject to a number of uncertainties and risks that could cause actual results to differ materially from those described in the forward-looking statements. Among the important factors that would cause actual results to differ materially from those indicated by such forward-looking statements are the loss of a customer or certain of their markets... an unfavorable judgment in the Freedom Wireless suit which could result in substantial damages and could significantly restrict *bcgi's* ability to conduct business, as well as the other factors that may affect future operating results detailed in *bcgi's* annual report on Form 10-K for the year ended December 31, 2002 filed with the Securities and Exchange Commission. | |

4/16/03 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| First Qtr 2003 Conference Call | 4/16/03 | 2 | I'd also like to caution everyone that various remarks that the company may make about the company's future expectations, plans, and prospects constitute forward-looking statements for purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by these forward-looking statements, as a result of various important factors, including those discussed in the Form 10-K for the year-ended December 31, 2002, which is on file with the SEC. In addition any forward-looking statements represent our views only as of today, April 16th, 2003, and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to do so, even if our estimates change, and therefore you should not rely on these forward-looking statements are representing our views as of any subsequent date to check. | |
| | | 2 | ... I should note that we remain confident that we do not infringe on the Freedom Wireless patents, and that the patents are invalid in light of [inaudible]. During this year, the court has been conducting procedures which are standard for patent cases, and the completion of these procedures dictate the timing of our summary judgment motion sometime during this quarter and hear the results of those motions at a later date. Although, this may still happen, there are no firm dates or schedules as to when motions can be filed and then decided upon. Thus although we believe that our case continues to progress well and that there has been no change to our positioning in the case, there are no developments to report at this time. | ¶65 |

5/15/03 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-Q for the quarterly period ending March 31, 2003 | 5/15/03 | 2 | This Quarterly Report contains forward-looking statements that involve risks and uncertainties, including without limitation, statements regarding the prepaid subscriber base… and… after tax charges for legal costs associated with the Freedom Wireless suit… The Company's actual results may differ significantly from the results discussed in the forward-looking statements. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | 6-7 | There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the caption "Notes to Consolidated Financial Statements," "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" in this Quarterly Report on Form 10-Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward-looking statements made herein. | |
| | | | ::: | |
| | | | **NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS** (Unaudited) | |
| | | | **Legal Costs** | |
| | | | The Company accrues the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. The Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which has made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy and the related estimate has been developed in consultation with the Company's outside counsel who is handling the case. There can be no assurances that the Company's expenses will not exceed its estimate. | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 8-9 | Contingencies<br>…<br>Legal<br>…<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that the Company infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art in addition to other meritorious defenses to the action.<br><br>Since the timing of ongoing court proceedings is not firmly fixed, the Company expects to continue to spend up to approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed its estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.<br><br>…<br><br>From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail.<br><br>… | ¶66 |

Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 10 | **MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS**<br><br>**Overview**<br><br>We are currently a defendant in a federal lawsuit commenced by Freedom Wireless alleging we and several wireless carriers infringe two Freedom Wireless patents. *A ruling that we infringe these patents could significantly restrict our ability to conduct business and would obligate us to indemnify other defendants in this lawsuit.* During the quarter ended March 31, 2003, we incurred $915,000 in legal costs, or approximately $0.03 per share after taxes, primarily for the continued defense of the Freedom Wireless patent infringement suit. These costs are in line with previous guidance and are expected to continue at this level until the matter is resolved. The timing of ongoing court proceedings is not firmly fixed. While *we cannot predict the outcome of this case or estimate when the matter might be resolved,* we remain confident that we do not infringe the Freedom Wireless patents and that the patents are invalid in light of prior art. |  |
| | | | ... | |
| | | 16 | **Legal Costs**<br><br>We accrue the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 2 to the Condensed Consolidated Financial Statements, we are expensing legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which has made it difficult to reasonably estimate legal costs in the suit. Other litigation will continue to be accounted for in accordance with our accounting policy and the related estimate has been developed in consultation with our outside counsel who is handling the case. *We believe that we have recorded an appropriate estimate of anticipated legal expenses, but there can be no assurances that our expenses will not exceed our estimate.* | |
| | | | ... | |
| | | 17-19 | **Certain Factors That May Affect Future Results**<br><br>*An unfavorable judgment in the Freedom Wireless lawsuit or any other lawsuit would have a material impact on our business.*<br><br>In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March, 2001 Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. *In addition, we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology* | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | The suit is currently in the discovery phase, and we cannot yet assess our potential liability. Our failure to prevail in this matter would have any or all of the following significant adverse effects on our business, financial condition and results of operations: | |
| | | | • injunctive relief against us, which could significantly restrict our ability to conduct our business; | |
| | | | • an adverse judgment against us for significant monetary damages; | |
| | | | • a settlement on unfavorable terms; | |
| | | | • obligations to the other defendants to indemnify them for damages; | |
| | | | • obligations to customers for breach of a contractual warranty of non infringement; or | |
| | | | • a requirement to reengineer our prepaid processing methodology to avoid patent infringement, which would likely result in additional expense and delay. | |
| | | | ⋮ | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 22-23 | **PART II. OTHER INFORMATION**<br><br>**Legal Proceedings**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. *A ruling that we infringed the Freedom Wireless patents could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology.* The suit is still in the discovery phase. *We do not believe that we infringe these patents and we believe that we have meritorious defenses to the action.*<br><br>We recorded special charges in the fourth quarter of 2000 of $2.6 million, in the third quarter of 2001 of $3.6 million and in the first quarter of 2002 of $3.3 million, principally to accrue for legal expenses estimated by our outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. The lengthy and unpredictable discovery process has made it difficult for us to reasonably estimate legal costs in this suit. As a result, we are now accounting for Freedom Wireless legal costs as incurred rather than accruing the entire amount of such costs when they become probable. During the fourth quarter of 2002 we recorded $998,000 and in the first quarter of 2003 we recorded $915,000, primarily in legal charges associated with the Freedom Wireless suit. Since the timing of ongoing court proceedings is not firmly fixed, we also expect to continue to spend up to $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimates. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected. | ¶66 |

7/16/03 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 2nd Qtr 2003 Conference Call | 7/16/03 | 2 | I would also like to caution everyone that various remarks that the company  might make about the company's future expectations, plans and prospects constitute forward-looking statements for the purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by those forward-looking statements as a result of various important factors, including those discussed in the Form 10-Q for the three months ended March 31, 2003 and Form 10-K for the year ended December 31, 2002, which are on file with the SEC. | |
| | | | In addition any forward-looking statements represent our view only as of today and should not be relied upon as representing our views as of any subsequency [sic]. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to these even if our estimates change and, therefore, you should not rely on those forward-looking statements as representing our views as of any date subsequent to today. | |
| | | | ... | |
| | | 7 | As noted in today's release, we are increasing our GAAP earnings guidance to 87 to 88 cents a share, compared with our previous guidance of 78 to 80 cents a share. This guidance includes after tax quarterly legal charges of approximately 3 cents per share, until the Freedom Wireless matter is resolved. We remain confident that we do not infringe the Freedom Wireless patent and that the patents are invalid and unenforceable in light of prior art and other reasons. At the appropriate time, we expect to file summary judgement motions but the specific timing as to when motions can be filed and then decided upon is not definitive. We believe that our case continues to progress well and there's been no change to our position in the case. | ¶67 |
| | | 18 | I would say that I think it's a fair public statement that as we have been battling this lawsuit, it's been on the fundamental premise that our counsel and even other counsel we've retained has researched issues and found that we don't infringe the patents, and not only do we not infringe them but they are invalid, etcetera. Non-infringement is based on the definition of the patent claims. If we lose this, it could only be because a court upholds a definition for those claims much broader than what our counsel believes to be the case and if that broader definition were supported in the lawsuit, that there isn't a prepaid platform that uses switches to help route calls for prepaid treatment that wouldn't be subject to the patent. | ¶68 |

- 20 -

8/14/03 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-Q for the quarterly period ending June 30, 2003 | 8/14/03 | 2 | This Quarterly Report contains forward-looking statements that involve risks and uncertainties, including without limitation, statements regarding the prepaid subscriber base ... and ... after tax charges for legal costs associated with the Freedom Wireless suit ... The Company's actual results may differ significantly from the results discussed in the forward-looking statements. | ¶69 |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the forgoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | ... | |
| | | | There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the caption "Notes to Consolidated Financial Statements," "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" in this Quarterly Report on Form 10-Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward-looking statements made herein. | |
| | | 8-9 | **NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS** | |
| | | | **Contingencies** | |
| | | | ... | |
| | | | **Legal** | |
| | | | In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that the Company infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons. | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by its outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which has made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, the Company began accounting for costs related to this case as incurred. As a result, in the fourth quarter of 2002, the first quarter of 2003 and the second quarter of 2003, the Company recorded charges of $998,000, $915,000 and $725,000, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless.<br><br>Since the timing of ongoing court proceedings is not firmly fixed, the Company expects to continue to spend up to approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved.<br><br>There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed its estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.<br><br>From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail… | |

- 22 -

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc., et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 12 | **MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS** | |
| | | | **Overview** | |
| | | | We are currently a defendant in a federal lawsuit commenced by Freedom Wireless alleging we and several wireless carriers infringe two Freedom Wireless patents. *A ruling that we infringe these patents could significantly restrict our ability to conduct business and would obligate us to indemnify other defendants in this lawsuit.* During the six months ended June 30, 2005, we incurred $1.6 million in legal costs, or approximately $0.05 per share after taxes, primarily for the continued defense of the Freedom Wireless patent infringement suit. These costs are expected to continue at about $1 million per quarter until the matter is resolved. The timing of ongoing court proceedings is not firmly fixed. While we *cannot predict the outcome of this case or estimate when the matter might be resolved,* we remain confident that we do not infringe the Freedom Wireless patents and that the patents are invalid in light of prior art and other reasons. | ¶69 |
| | | 20-21 | … | |
| | | | **Certain Factors That May Affect Future Results** | |
| | | | *An unfavorable judgment in the Freedom Wireless lawsuit or any other lawsuit would have a material impact on our business.* | |
| | | | In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001 Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. In addition, we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology. | |
| | | | The suit is currently in the discovery phase, and we cannot yet assess our potential liability. *Our failure to prevail in this matter would have any or all of the following significant adverse effects on our business, financial condition and results of operations:* | |
| | | | • injunctive relief against us, which could significantly restrict our ability to conduct our business; | |
| | | | • an adverse judgment against us for significant monetary damages; | |
| | | | • a settlement on unfavorable terms; | |
| | | | • obligations to the other defendants to indemnify them for damages; | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 25 | *... obligations to customers for breach of a contractual warranty of non-infringement, or* *a requirement to reengineer our prepaid processing methodology to avoid patent infringement, which would likely result in additional expense and delay.* In addition, regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit. We have spent approximately $11 million to date to defend this lawsuit, and we expect to incur up to an additional $1 million per quarter in legal fees until this matter is resolved. Moreover, this lawsuit may divert the efforts and attention of our management team from normal business operations. Finally, we may become subject to additional patent infringement lawsuits in the future. ... **Legal Proceedings** In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. *A ruling that we infringed the Freedom Wireless patents could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology.* The suit is still in the discovery phase. *We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.* **PART II. OTHER INFORMATION:** In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which has made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, in the fourth quarter of 2002, the first quarter of 2003 and the second quarter of 2003, we recorded charges of $998,000, $915,000 and $725,000, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless. Since the timing of ongoing court proceedings is not firmly fixed, we expect to continue to spend up to approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. *There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.* | ¶69 |

10/15/03 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 3rd Qtr. 2003 Conference Call | 10/15/03 | 2 | I'd also like to caution everyone that various remarks that the Company may make about the Company's future expectations, plans, and prospects constitute forward-looking statements for purposes of the Safe Harbor Provision under the Private Securities Litigation Reform Act of '95. Actual results may differ materially from those indicated by those forward-looking statements as a result of various important facts, including those discussed in the Form 10-Q for the three months ended June 30th, 2003, and Form 10-K for the year ended December 31st, 2002, which are on file with the SEC. | |
| | | | In addition, any forward-looking statements represent our views only as of today and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to do so, even if our estimates change and therefore you should rely – you should not rely on these forward-looking statements as representing our views as of any date subsequent to today. | |
| | | | ... | |
| | | 7 | Although our legal expenses for Freedom Wireless were higher due to the timing of certain procedures that took place during the quarter, on average we have incurred about what we expected at $1m per quarter year-to-date. | ¶70 |
| | | | Going forward, we expect to continue to incur on average about $1m per quarter, however, the expense will likely continue to vary from quarter to quarter depending on the procedures that take place in any given quarter. Accordingly, we expect that Q4 legal changes will range between three and four cents a share. | |
| | | | Furthermore, we continue to remain confident that we do not infringe the Freedom Wireless patents, and that the patents are invalid an unenforceable in light of prior [art] and other reasons. We believe that our case continues to progress well, and there's been no change to our position on the case. | |

11/14/03 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-Q for the quarterly period ending September 30, 2003 | 11/14/03 | 2 | This Quarterly Report contains forward-looking statements that involve risks and uncertainties, including without limitation, statements regarding the prepaid subscriber base . . . and . . . after tax charges for legal costs associated with the Freedom Wireless suit . . . The Company's actual results may differ significantly from the results discussed in the forward-looking statements. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Notes to Consolidated Financial Statements," "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" in this Quarterly Report on Form 10-Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward-looking statements made herein. | |
| | | | ... | |
| | | 8-9 | **NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS**<br><br>**Contingencies**<br><br>**Legal**<br><br>In March 2000, Freedom Wireless, Inc. (Freedom Wireless) filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless and seeks damages in an unspecified amount as well as injunctive relief. A ruling that the Company infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.<br><br>In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by its outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to | ¶71 |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 12 | reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, the Company began accounting for costs related to this case as incurred. As a result, for the three and nine-month period ended September 30, 2003, the Company recorded charges of $1.4 million and $3.0 million, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless. | |
| | | | The Company expects to incur additional legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. **If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.** | |
| | | | From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. **As to such claims and litigation, the Company can give no assurance that it will prevail.** | |
| | | | ... | |
| | | | **MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS** | ¶ 71 |
| | | | **Overview** | |
| | | | We are currently a defendant in a federal lawsuit commenced by Freedom Wireless alleging we and several wireless carriers infringe two Freedom Wireless patents. **A ruling that we infringe these patents could significantly restrict our ability to conduct business and would obligate us to indemnify other defendants in this lawsuit.** During the nine months ended September 30, 2003, we incurred $3.0 million in legal costs, or approximately $0.10 per share after taxes, primarily for the continued defense of the Freedom Wireless patent infringement suit. We expect to incur, on average, approximately $1 million per quarter (before taxes) for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. Accordingly, we expect that the fourth quarter, 2003 legal charges will approximate $1.0 million to $1.4 million. While **we cannot predict the outcome of this case or estimate when the matter might be resolved,** we remain confident that **we do not infringe the Freedom Wireless patents and that the patents are invalid in light of prior art and other reasons.** | |
| | | | ... | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 20 | **Certain Factors That May Affect Future Results**<br><br>*An unfavorable judgment in the Freedom Wireless lawsuit or any other lawsuit would have a material impact on our business*<br><br>In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. In addition, *we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology.*<br><br>The suit is currently in the discovery phase, and we cannot yet assess our potential liability if we were to lose the case. Our failure to prevail in this matter would have any or all of the following significant adverse effects on our business, financial condition and results of operations:<br><br>• Injunctive relief against us, which could significantly restrict our ability to conduct our business;<br>• An adverse judgment against us for significant monetary damages;<br>• A settlement on unfavorable terms;<br>• Obligations to the other defendants to indemnify them for damages;<br>• Obligations to customers for breach of a contractual warranty of non-infringement; or<br>• A requirement to reengineer our prepaid processing methodology to avoid patent infringement, which would likely result in additional expense and delay.<br><br>In addition, regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit. We have incurred approximately $12.7 million in costs to date to defend this lawsuit. We expect to incur, on average, approximately $1 million per quarter (before taxes) for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. Accordingly, we expect that the fourth quarter, 2003 legal charges will range between $1.0 million and $1.4 million. Moreover, this lawsuit may divert the efforts and attention of our management team from normal business operations. Finally, we may become subject to additional patent infringement lawsuits in the future. | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 25 | ...<br><br>**Legal Proceedings**<br><br>**PART II. OTHER INFORMATION**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that we infringed the Freedom Wireless patents could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is still in the discovery phase. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.<br><br>In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which has made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the three and nine-month period ended September 30, 2003, we recorded charges of $1.4 million and $3.0 million, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless.<br><br>We expect to incur, on average, approximately $1 million per quarter (before taxes) for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. Accordingly, we expect that fourth quarter, 2003 legal charges will range between $1.0 million and $1.4 million. There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected. | ¶71 |

2/3/04 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 4th Qtr 2003 Conference Call | 2/3/04 | 2 | I'd also like to caution everyone that various remarks is the company may make about the company's future expectations, plans, and prospects, constitute forward-looking statements for the purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by the forward-looking statements and the result of various important factors including those discussed in the Form 10Q for the three months ended September 30, 2003, and Form 10K for the year ended December 31, 2002, which are all on file with the SEC. In addition any forward-looking statements represent our views only as of today and should not be relied upon as [UNINTELLIGIBLE] views as of any subsequent day. While we may elect to update forward-looking statements at some point in the future we specifically disclaim any obligation to do so even if estimates change and therefore you should not rely on these forward-looking statements as representing our views as of any date subsequent to today. | ¶72 |
| | | 8 | ...<br><br>Our legal expenses during the quarter for Freedom Wireless were inline with expectation, having incurred $1 million in legal costs related to the case. Going forward, we expect to continue to incur on average [about] $1 million per quarter until the matter is resolved. However, the expense may vary from quarter to quarter, depending upon the procedures that take place in any given quarter. Accordingly we expect Q1 '04 legal charges will approximate .3 cents per share. Furthermore, we continue to remain confident that we do not infringe the Freedom Wireless patents, and that the patents are invalid and unenforceable in light of prior (indiscernible) and other reasons. We believe that our case continues to progress well, and there has been no change to our position on the case. In addition, various summary judgment motions have been filed by both parties in the case, and the Court is expected to rule on those motions in the normal course of proceedings. | |

3/9/04 10-K

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-K for the fiscal year ended December 31, 2003 | March 9, 2004 | 2 | This Annual Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding: | ¶73 |
| | | | … | |
| | | | • Legal expenses related to the Freedom Wireless, Inc. ("Freedom Wireless") lawsuit; | |
| | | | … | |
| | | | These statements are based on the current beliefs and assumptions of management. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results," "Quantitative and Qualitative Disclosures About Market Risk" and those set forth in Items 1 and 3 of Part I of this Annual Report on Form 10-K. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein. | |
| | | 12-13 | **LEGAL PROCEEDINGS** | |
| | | | In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons. | |
| | | | In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the year ended December 31, 2003, we recorded charges of $4.0 million for legal expenses. <br><br> We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected. <br><br> From time to time, as a normal incidence of the nature of our business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, we can give no assurance that we will prevail... | |

- 32 -

5/10/04 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-Q For the Period Ending March 31, 2004 | 5/10/04 | 2 | This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding the diversification of our product and customer base . . . and legal expenses for the Freedom Wireless, Inc. (Freedom Wireless) lawsuit and the belief that the Company does not infringe on the Freedom Wireless patents, and the ability to finance our operations for the next 12 months with cash on hand and cash to be generated from profitable operations. These statements are based on the current beliefs and assumptions of management. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk." The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein. | |
| | | | ... | |
| | | 8 | **NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS** | |
| | | | **Legal Costs** | |
| | | | The Company accrues the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 3 to the condensed consolidated financial statements, the Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy, and generally, the Company develops an estimate of probable costs in consultation with the Company's outside legal counsel who is handling the case. There can be no assurances that the Company's expenses will not exceed its estimate. | |
| | | | ... | |
| | | | **Contingencies** | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 1116S-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 10 | **Legal**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. *If there was a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business.* In addition, *the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology.* The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of proceedings. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.<br><br>The Company expects to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. *There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.*<br><br>From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. *As to such claims and litigation, the company can give no assurance that it will prevail....*<br><br>…<br><br>**MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATION**<br><br>…<br><br>**Certain Factors That May Affect Future Results**<br><br>…<br><br>*An unfavorable judgment in the Freedom Wireless lawsuit or any other lawsuit would have a material impact on our business.*<br><br>In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks | ¶74 |
| | | 22-23 | | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 27 | injunctive relief and damages in an unspecified amount. In addition, we are contractually obligated to indemnify the other defendants for any damages that they may as a result of any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. We cannot yet assess our potential liability, if any. Our failure to prevail in this matter would have any or all of the following material adverse effects on our business, financial conditions and results of operations: • Injunctive relief against us, which could significantly restrict our ability to conduct our business; • An adverse judgment against us for significant monetary damages; • A settlement on unfavorable terms; • Obligations to the other defendants to indemnify them for damages; • Obligations to customers for breach of a contractual warranty of non-infringement; and/or • A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay. Regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit. We have incurred approximately $14.7 million in legal costs as of March 31, 2004 to defend this lawsuit, and we expect to incur approximately $1 million per quarter in legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. Moreover, this lawsuit may divert the efforts and attention of our management team from normal business operations. Finally, we may become subject to additional patent infringement lawsuits in the future. PART II. OTHER INFORMATION Item 1. Legal Proceedings In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the | |

-35-

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.<br><br>In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the three months ended March 31, 2002, we recorded charges for $1.2 million for legal expenses.<br><br>We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimates. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial conditions and results of operations would be materially adversely affected. | ¶74 |

- 36 -

8/9/04 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 1165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-Q For the quarterly Period Ending June 30, 2004 | 8/9/04 | 2 | This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding the expectations regarding our new product offerings… costs to defend Freedom Wireless lawsuit, additional capital investments, payment of additional contingent cash consideration to Infotech Solutions Corporation, and the ability to finance our operations for the next 12 months. These statements are based on the current beliefs and assumptions of management. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk." The statements discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein. | |
| | | | … | |
| | | 7 | **NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS** | |
| | | | **Legal Costs** | |
| | | | The Company accrues the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and reasonably estimable; otherwise, such costs are expensed as incurred. As discussed in Note 3 to the condensed consolidated financial statements, the Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy, and generally, the Company develops an estimate of probable costs in consultation with the Company's outside legal counsel who is handling the case. There can be no assurances that the company expenses will not exceed its estimates | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 9 | **Contingencies** **Legal** In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. *If there was a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology.* The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of proceedings. *The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.* From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. *As to such claims and litigation, the company can give no assurance that it will prevail...* ··· | |
| | | 20 | ··· **Certain Factors That May Affect Future Results** *An unfavorable judgment in the Freedom Wireless lawsuit would have a material adverse impact on our business.* In March 2000, Freedom Wireless filed a suit against us and a number of wireless carriers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. In addition, *we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology.* The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. They court is expected to rule | ¶75 |

MANAGEMENT'S DISCUSSION AND ANALYSIS
OF FINANCIAL CONDITION AND RESULTS OF OPERATION

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 24-25 | on these motions in the normal course of proceedings.  We cannot yet assess our potential liability, if any.  Any adverse outcome, including the following, would have a material adverse effect on our business, financial condition and results of operations:<br><br>• Injunctive relief against us, which could significantly restrict our ability to conduct our business;<br>• An adverse judgment against us for significant monetary damages;<br>• A settlement on unfavorable terms;<br>• Obligations to the other defendants to indemnify them for damages;<br>• Obligations to customers for breach of a contractual warranty of non-infringement, and/or<br>• A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay.<br><br>Regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit.  We have incurred approximately $15.3 million in legal costs as of June 30, 2004 to defend this lawsuit, and we expect to incur approximately $1 million per quarter in legal costs until the Freedom Wireless matter is resolved.  However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings.  Moreover, this lawsuit may divert the efforts and attention of our management team from normal business operations.  Finally, we may become subject to additional patent infringement lawsuits in the future.<br><br>…<br><br>**PART II.  OTHER INFORMATION**<br><br>**Item 1.  Legal Proceedings**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers.  The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief.  If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business.  In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology.  The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case.  The Court is expected to rule on these motions in the normal course of its proceedings.  We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons. | ¶75 |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved.  However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings.  There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimates.  If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected. | |

10/20/04 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 1165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 3<sup>rd</sup> Qtr 2004 Conference Call | 10/20/04 | 1 | I would also like to caution everyone that various remarks that the Company may make about the Company's future expectations, plans, and prospects constitute forward-looking statements for purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1994. Actual results may differ materially form those indicated by these forward-looking statements, as a result of various important factors, including those discussed in the Form 10-K for the year ended December 31<sup>st</sup>, 2003, which is on file with the SEC. In addition, any forward-looking statements represents our views only as of today and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future we specifically disclaim any obligation to do so even if our estimates change, and therefore, you should not rely on these forward-looking statements as representing our views as of any date subsequent to today. | ¶76 |
| | | 3 | ...<br><br>As we announced on August 11th, the case is getting closer to the trial phase, but a trial date has yet to be set by the Court. We continue to maintain our confidence that we do not infringe the Freedom Wireless patents and we will continue to vigorously defend their claims. | |

11/9/04 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-Q for the quarterly period ending September 30, 2004 | 11/9/04 | 2 | This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding the expectations regarding our new product offerings.... costs to defend Freedom Wireless lawsuit, additional capital investments, payment of additional contingent cash consideration to Infotech Solutions Corporation, and the ability to finance our operations for the next 12 months. These statements are based on the current beliefs and assumptions of management. | |
| | | | Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. | |
| | | | A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk." The statements discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein. | |
| | | | ... | |
| | | | NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (Unaudited) | |
| | | 7 | **Legal Costs** | |
| | | | The Company accrues the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and reasonably estimable; otherwise, such costs are expensed as incurred. As discussed in Note 3 to the condensed consolidated financial statements, the Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy, and generally, the Company develops an estimate of probable costs in consultation with the Company's outside legal counsel who is handling the case. There can be no assurances that the Company's expenses will not exceed its estimates. | |
| | | | ... | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.,*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 9 | **Contingencies**<br>**Legal**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of the Company's wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless and seeks damages in an unspecified amount as well as injunctive relief. If there was a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. On August 10, 2004, the plaintiff and the defendant each had four summary judgment motions denied by the court, bringing the case closer to the trial phase. The suit is in the pre-trial phase and trial is scheduled to begin on January 31, 2005. The Company does not believe that it infringes these patents and believes the patents are invalid in light of prior art and other reasons.<br><br>From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than as disclosed) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.<br><br>... | ¶77 |
| | | 20-21 | **MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATION**<br><br>...<br><br>**Certain Factors That May Affect Future Results**<br><br>*An unfavorable judgment in the Freedom Wireless lawsuit would have a material adverse impact on our business.*<br><br>In March 2000, Freedom Wireless, Ins. Filed a suit against us and a number of our wireless carrier customers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages in an unspecified amount. In addition, we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology.<br><br>The suit is in the pre-trial phase and the trial is scheduled to begin on January 31, 2005. We cannot yet assess our potential liability, if any. Any | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 25 | adverse outcome, including the following, would have a material adverse effect on our business, financial condition and results of operation<br><br>• Injunctive relief against us, which could significantly restrict our ability to conduct our business;<br>• An adverse judgment against us for significant monetary damages;<br>• A settlement on unfavorable terms;<br>• Obligations to the other defendants to indemnify them for damages;<br>• Obligations to customers for breach of a contractual warranty of non-infringement; and/or<br><br>A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay.<br><br>**PART II. OTHER INFORMATION**<br><br>**Legal Proceedings**<br><br>Regardless of the outcome, we will continue to incur significant expenses to defend the lawsuit. We have incurred approximately $15.7 million in legal costs as of September 30, 2004 to defend this lawsuit, and we expect to incur approximately $1 million per quarter in legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. Moreover, this lawsuit may divert the efforts and attention of our management team from normal business operations. Finally, we may become subject to additional patent infringement lawsuits in the future.<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.<br><br>We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimates. If Freedom Wireless prevails in this case, the amount of damages could be substantial and | ¶77 |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

Defendants' Allegedly Fraudulent Class Period Statements

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | our business, financial condition and results of operations would be materially adversely affected | |

- 45 -

2/1/05 Conf. Call

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| 4th Qtr 2004 Conference Call | 2/1/05 | 2 | I would also like to caution everyone that various remarks that the Company may make about the Company's future expectations, plans and prospects constitute forward-looking statements for purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by these forward-looking statements as a result of various important factors, including those discussed in the Form 10-Q for the quarter ended September 30, 2004, which is on file with the SEC. In addition, any forward-looking statements represents our views only as of today, and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to do so, even if our estimates change. And therefore, you should not rely on these forward-looking statements as representing our views as of any date subsequent to today. | |
| | | 6 | ...<br><br>As we approach the Freedom Wireless trial date of February 28, legal expenses are expected to increase to 5 to 6 cents per share in Q1 to accommodate additional hours and expenses to try the case. In documents that were made publicly available last week, we learned that Verizon Wireless, a defendant in the case, reached a settlement with Freedom and is no longer a defendant in the case. BCGI was not part of the settlement discussions and the terms of the settlement are not public. It's important to note that, as we were not a party to these negotiations, we have not agreed to Verizon's settlement terms, and we do not believe that we have any indemnification liability towards Verizon's settlement.<br><br>This also does not change our position in the case. We remain confident that we do not infringe on the Freedom Wireless patents and that the patents are invalid in light of prior art. | ¶78 |

3/9/05 10-K

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| Form 10-K for the fiscal year ending December 31, 2004 | 3/9/05 | 2 | The Annual Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation statements regarding:<br><br>...<br><br>• Legal expenses related to the Freedom Wireless, Inc. ("Freedom Wireless") lawsuit;<br><br>...<br><br>These statements are based on the current beliefs and assumptions of management.<br><br>Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the forgoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.<br><br>A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results," "Quantitative and Qualitative Disclosures About Market Risk" and those set forth in Items 1 and 3 of Part I of this Annual Report on Form 10-K. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made here. | |
| | | 14 | **LEGAL PROCEEDINGS**<br><br>...<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The trial began on February 28, 2005 and is expected to last for approximately eight weeks. In 2005, Verizon Wireless who was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. We were not part of the settlement discussions and the terms of the settlement are not public. We do not believe that we infringe these patents and believe that the patents | ¶79<br><br><br><br><br>¶79 |

- 47 -

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 21 | are invalid in light of prior art and other reasons. | |
| | | | In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the years ended December 31, 2003 and 2004, we recorded charges of $4.0 and $3.0 million, respectively for legal expenses related to the lawsuit. | |
| | | | We expect to incur approximately $1.5 to $1.8 million in legal expenses in the first quarter of 2005 and, on average, $1.0 million per quarter thereafter, until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. **There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate.** | |
| | | | We are not presently able to estimate the potential losses, if any, related to the Freedom Wireless lawsuit. Freedom Wireless is seeking damages in excess of $250 million from us and the other remaining co-defendants, who *brgl* has agreed to indemnify. **If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from us and the other co-defendants, this amount would exceed our ability to pay.** | |
| | | | From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. **As to such claims and litigation, the company can give no assurance that it will prevail.** | |
| | | | ... | |
| | | | **CONSOLIDATED RESULTS OF OPERATIONS** | |
| | | | ... | |
| | | | **General and administrative expenses - legal charges** | |
| | | | General and administrative legal expenses primarily represent legal expenses to defend the patent infringement suit initiated by Freedom Wireless. We expect to incur approximately $1.5 to $1.8 million in legal expenses in the first quarter of 2005 as a result of the commencement of the trial and, on average, $1.0 million per quarter thereafter, until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. **There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition** | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 28-30 | *and results of operation would be materially adversely affected*<br><br>…<br><br>**Certain Factors That May Affect Future Results**<br><br>*An unfavorable judgment in the Freedom Wireless lawsuit would have a material adverse impact on our business.*<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers claiming that we and the other defendants infringe a patent of Freedom Wireless. In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages. In addition, we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology.<br><br>The trial began on February 28, 2005. We cannot yet assess our potential liability, if any. Any adverse outcome, including the following, would have a material adverse effect on our business, financial condition and results of operations:<br><br>• Injunctive relief against us, which could significantly restrict our ability to conduct our business;<br>• An adverse judgment against us for significant monetary damages;<br>• A settlement on unfavorable terms;<br>• Obligations to the other defendants to indemnify them for damages;<br>• Obligations to customers for breach of a contractual warranty of non-infringement, and/or<br>• A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay.<br><br>Regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit. We have incurred approximately $16.7 million in legal costs as of December 31, 2004 to defend this lawsuit, and expect to incur approximately $1.5 to $1.8 million in legal expenses in the first quarter of 2005 and, on average, $1.0 million per quarter thereafter, until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate. | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | Freedom Wireless is seeking damages in excess of $250 million from us and the other remaining co-defendants, who *by g* has agreed to indemnify. If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from us and the other co-defendants, this amount would exceed our ability to pay. Finally, we may become subject to additional patent infringement lawsuits in the future. | |
| | | | **Notes to Consolidated Financial Statements Years Ended December 31, 2004, 2003 and 2002** | |
| | | | ... | |
| | | 48 | **Legal Costs** | |
| | | | The Company accrues the costs of settlements, damages, and under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 4 to the Consolidated Financial Statements, the Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which had made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy, and generally, the Company develops an estimate of probable costs in consultation with the Company's outside legal counsel who is handling the case. There can be no assurances that the Company's expenses will not exceed its estimate. | |
| | | | ... | |

5/10/05 10-Q

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| **Form 10-Q For The Quarterly Period Ending March 31, 2005** | 5/10/05 | 2 | The Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding: <br><br> … <br><br> • Legal expenses related to the Freedom Wireless, Inc. ("Freedom Wireless") lawsuit; <br><br> … <br><br> These statements are based on the current beliefs and assumptions of management. <br><br> Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words. <br><br> A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations," "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk." The statements discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made here. <br><br> … | |
| | | 8 | **Legal Costs** <br><br> The Company accrues the costs of settlements, damages and, under certain conditions, costs of defense when such costs are probable and estimable; otherwise, such costs are expensed as incurred. As discussed in Note 4 to the Consolidated Financial Statements, the Company began to expense legal costs related to the Freedom Wireless lawsuit as incurred due to the lengthy and unpredictable discovery process, which made it difficult to continue to reasonably estimate legal costs for the suit. Other litigation will continue to be accounted for in accordance with the Company's accounting policy, and generally, the Company develops an estimate of probable costs in consultation with the Company's outside legal counsel who is handling the case. There can be no assurance that the Company's expenses will not exceed its estimate. | |
| | | 12 | **Contingencies/Legal** <br><br> In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of its wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

NO. CIV. A. 11165-WGY

## Defendants' Allegedly Fraudulent Class Period Statements

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | damages as well as injunctive relief. If there is a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The trial began on February 28, 2005 and is expected to be completed in mid-May 2005. In 2005, Verizon Wireless, which was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. The Company was not part of the settlement discussions and the terms of the settlement are not public. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons. | ¶80 |
| | | | The Company is not presently able to estimate the potential losses, if any, related to the Freedom Wireless lawsuit. Freedom Wireless is seeking damages in excess of $250 million from the Company and the other remaining co-defendants, whom *bcgi* has agreed to indemnify. If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from *bcgi* and the other co-defendants, this amount would exceed the Company's ability to pay. | |
| | | | From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation the Company can give no assurance that it will prevail…. | |
| | | | . | |
| | | | … | |
| | | 17 | **General and administrative legal expenses–legal charges** | |
| | | | General and administrative legal expenses primarily represent legal expenses to defend the patent infringement suit initiated by Freedom Wireless. The increase in expense in the first quarter of 2005 compared to the same quarter of 2004 was due to higher costs associated with the commencement of the trial on February 28, 2005. With additional expected trial days in the second quarter of 2005, we expect to incur legal expenses of approximately $2.2 to $2.9 million. This cost is expected to be substantially less per quarter than historical amounts beginning in the third quarter of 2005, during the anticipated appeals process by either party following the completion of the trial. There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate. *If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.* | |
| | | | … | |
| | | 22 | **Certain Factors that May Affect Future Results** | |
| | | | *An unfavorable judgment in the Freedom Wireless lawsuit would have a material adverse impact on our business.* | |
| | | | In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers claiming that we and the other | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*

**NO. CIV. A. 11165-WGY**

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | 28 | defendants infringe a patent of Freedom Wireless.  In March 2001, Freedom Wireless amended the complaint to include a continuation patent. Freedom Wireless seeks injunctive relief and damages.  In addition, *we are contractually obligated to indemnify the other defendants for any damages that they incur as a result of any infringement by our technology.*<br><br>The trial began on February 28, 2005 and is expected to be completed in mid-May 2005.  We cannot yet assess our potential liability, if any. *Any adverse outcome, including the following, would have a material adverse effect on our business, financial condition and results of operations.*<br><br>• Injunctive relief against us, which could significantly restrict our ability to conduct our business;<br>• An adverse judgment against us for significant monetary damages;<br>• A settlement on unfavorable terms;<br>• Obligations to the other defendants to indemnify them for damages;<br>• Obligations to customers for breach of a contractual warranty of non-infringement; and/or<br>• A requirement to reengineer our prepaid processing solution to avoid patent infringement, which would likely result in additional expense and delay.<br><br>*Freedom Wireless is seeking damages in excess of $250 million from us and the other remaining co-defendants.  bcg has agreed to indemnify.  If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from us and the other co-defendants, this amount would exceed our ability to pay.*<br><br>Regardless of the outcome, we will continue to incur significant expenses to defend this lawsuit.  We have incurred approximately $19.0 million in legal costs as of March 31, 2005 to defend this lawsuit, and expect to incur approximately $2.2 to $2.9 million in legal expenses in the second quarter of 2005.  This cost is expected to substantially less per quarter than historical amounts beginning in the third quarter of 2005, during the anticipated appeals process by either party following the completion of the trial.  There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate.<br><br>…<br><br>**Legal Proceedings**<br><br>In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of its wireless carrier customers.  The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages as well as injunctive relief.  *If there is a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the* | |

*Rosenbaum Capital, LLC v. Boston Communications Group, Inc. et al.*
NO. CIV. A. 11165-WGY

**Defendants' Allegedly Fraudulent Class Period Statements**

| Document | Date Filed/ Disclosed | Page | Disclosure(s) | Cited in Amended Complaint (Blue Text) |
|---|---|---|---|---|
| | | | Company's ability to conduct business.  In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology.  The trial began on February 28, 2005 and is expected to be completed in mid-May 2005.  In 2005, Verizon Wireless, which was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case.  The Company was not part of the settlement discussions and the terms of the settlement are not public.  The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons. | |
| | | | We are not presently able to estimate the potential losses, if any, related to the Freedom Wireless lawsuit.  Freedom Wireless is seeking damages in excess of $250 million from the Company and the other remaining co-defendants, *whom bcgi has agreed to indemnify*.  If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking *from bcgi and the other co-defendants*, this amount would exceed the Company's ability to pay. | ¶80 |
| | | | We account for costs related to this case as incurred due to the lengthy and unpredictable proceedings which make it difficult to reasonably estimate legal costs.  The total legal costs to defend the case through March 31, 2005 were $19.0 million.  We expect to incur approximately $2.2 to $2.9 million in legal expenses in the second quarter of 2005.  This cost is expected to be substantially less per quarter than historical amounts beginning in the third quarter of 2005, during the anticipated appeals process by either party following the completion of the trial.  *There can be no assurance that costs to defend the Freedom Wireless suit will not exceed our estimate.* | |

# Exhibit 2

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 S4RAF7nkzGNJtQ08lKAOdUQ6QVti1/mUyFvLqM9qVPTQBegzA6ErtEN2m77EB1bi
 OaL9RDIzxnFXfXQzcA3OEw==

&lt;SEC-DOCUMENT&gt;0001012887-00-000037.txt : 20000515
&lt;SEC-HEADER&gt;0001012887-00-000037.hdr.sgml : 20000515
ACCESSION NUMBER:		0001012887-00-000037
CONFORMED SUBMISSION TYPE:	10-Q
PUBLIC DOCUMENT COUNT:		3
CONFORMED PERIOD OF REPORT:	20000331
FILED AS OF DATE:		20000512

FILER:

	COMPANY DATA:
		COMPANY CONFORMED NAME:		BOSTON COMMUNICATIONS GROUP
		CENTRAL INDEX KEY:		0001012887
		STANDARD INDUSTRIAL CLASSIFICATION:	RADIO TELEPHONE COMMUNICATIO
		IRS NUMBER:			043026859
		STATE OF INCORPORATION:		MA
		FISCAL YEAR END:		1231

	FILING VALUES:
		FORM TYPE:		10-Q
		SEC ACT:
		SEC FILE NUMBER:	000-28432
		FILM NUMBER:		627343

	BUSINESS ADDRESS:
		STREET 1:		100 SYLVAN RD
		STREET 2:		STE 100
		CITY:			WOBURN
		STATE:			MA
		ZIP:			01801-1830
		BUSINESS PHONE:		6174763570

	MAIL ADDRESS:
		STREET 1:		100 SYLVAN RD
		STREET 2:		STE 100
		CITY:			WOBURN
		STATE:			MA
		ZIP:			01801-1830
&lt;/SEC-HEADER&gt;
&lt;DOCUMENT&gt;
&lt;TYPE&gt;10-Q
&lt;SEQUENCE&gt;1
&lt;TEXT&gt;


                SECURITIES AND EXCHANGE COMMISSION
                      Washington, D.C. 10549
                           FORM 10-Q


    (x) Quarterly report pursuant to Section 13 or 15(d) of the

Securities Exchange Act of 1934

For the quarterly period ended March 31, 2000 or

( ) Transition report pursuant to Section 13 or 15(d) of the
    Securities Exchange Act of 1934

Commission file number: 0-28432

Boston Communications Group, Inc.
(Exact name of registrant as specified in its charter)

Massachusetts                          04-3026859
(State or other jurisdiction of        (I.R.S. Employer
 incorporation or organization)         Identification No.)

100 Sylvan Road, Woburn, Massachusetts 01801
        (Address of principal executive offices)

Registrant's telephone number, including area code: (617)692-7000

_____

(Former name, former address, former fiscal year, if changed since
 last report)

Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act
of 1934 during the preceding 12 months (or for such shorter period that the
registrant was required to file such reports), and (2) has been subject to
such filing requirements for the past 90 days.

Yes (X)  No ( )

Indicate the number of shares outstanding of each of the issuer's classes of
common stock as of the latest practicable date.

As of April 20, 2000 the Company had outstanding 16,688,159 shares of common
stock, $.01 par value per share.

<PAGE>


                                INDEX

                                                    PAGE NUMBER

PART I.   FINANCIAL INFORMATION:

Item 1.   Financial Statements

          Consolidated Balance Sheets............................3

          Consolidated Statements of Operations..................4

          Consolidated Statements of Cash Flows..................5

          Notes to Consolidated Financial Statements.............6

Item 2.    Management's Discussion and Analysis of Financial
           Condition and Results of Operations......................8

           Certain Factors That May Affect Future Results.........13

Item 3.    Quantitative and Qualitative Disclosures About Market
           Risk....................................................17


PART II. OTHER INFORMATION:

Item 4.  Legal Proceedings.......................................18

Item 6.  Exhibits and Reports on Form 8-K........................18

<PAGE>


BOSTON COMMUNICATIONS GROUP, INC.
AND SUBSIDIARIES
CONSOLIDATED BALANCE SHEETS
(In thousands, except share and per share amounts)

| ASSETS | March 31, 2000 | December 31, 1999 |
|---|---|---|
| Current assets: | | |
| Cash and cash equivalents | $25,360 | $21,145 |
| Short-term investments | 6,998 | 9,091 |
| Accounts receivable, net of allowance for billing adjustments and doubtful accounts of $2,736 in 2000 and $2,025 in 1999 | 19,551 | 18,546 |
| Inventory | 1,930 | 2,007 |
| Deferred income taxes | 356 | 1,169 |
| Prepaid expenses and other assets | 1,904 | 1,758 |
| Total current assets | 56,099 | 53,716 |
| Property and equipment, net | 43,134 | 44,995 |
| Goodwill, net | 2,703 | 2,854 |
| Other assets | 563 | 516 |
| Total assets | $102,499 | $102,081 |
| LIABILITIES AND SHAREHOLDERS' EQUITY | | |
| Current liabilities: | | |
| Accounts payable | $1,193 | $  941 |
| Accrued expenses | 14,225 | 15,012 |
| Income taxes payable | 565 | 505 |
| Current maturities of capital lease obligations | 2,158 | 2,378 |
| Total current liabilities | 18,141 | 18,836 |
| Capital lease obligations, net of current maturities | 3,420 | 3,876 |

PART II.  OTHER INFORMATION:

Item 4.    Legal Proceedings

On March 30, 2000, Freedom Wireless, Inc. filed a complaint in the United
States District Court for the Northern District of California against the
Company and a number of wireless carriers, including customers and former
customers of the Company.  The suit alleges that the defendants infringe a
patent held by Freedom Wireless, Inc. and seeks injunctive relief and damages
in an unspecified amount.  The Company does not believe it infringes this
patent and believes that it has meritorious defenses to the action.


Item 6.  Exhibits and Reports on Form 8-K


        a) Exhibits

           The exhibits listed in the Exhibit Index are part of
           or included in this report.

        b) Reports on Form 8-K                              -

           NONE


SIGNATURES

        Pursuant to the requirements of the Securities Exchange Act of
        1934, the registrant has duly caused this report to be signed
        on its behalf by the undersigned, thereunto duly authorized.

        Boston Communications Group, Inc.
        (Registrant)


        Date: May 11, 2000    By:  /s/ Karen A. Walker
                                   Karen A. Walker
                                   Vice President, Financial
                                   Administration and Chief
                                   Financial Officer (Principal
                                   Financial and Accounting
                                   Officer and Duly Authorized
                                   Officer)

<PAGE>


                        INDEX TO EXHIBITS

Exhibit No.          Description


10.58*               Distribution agreement between Centigram Communications
                     Corporation and Boston Communications Group, Inc. dated
                     January 17, 2000.


27                   Financial Data Schedule

# Exhibit 3

10-Q 1 d10q.htm FOR THE QUARTERLY PERIOD ENDED MARCH 31, 2005

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

# FORM 10-Q

☒    **Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**For the quarterly period ended March 31, 2005**

or

☐    **Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**Commission file number: 0-28432**

# Boston Communications Group, Inc.
#### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Massachusetts** | **04-3026859** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**55 Middlesex Turnpike, Bedford, Massachusetts 01730**
**(Address of principal executive offices)**

**Registrant's telephone number, including area code: (781) 904-5000**

(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)   YES ☒   NO ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date. As of May 3, 2005, the Company had outstanding 17,639,384 shares of common stock, $.01 par value per share.

**Table of Contents**

INDEX

PART I.  FINANCIAL INFORMATION:

Item 1.  Financial Statements (Unaudited)

    Condensed Consolidated Balance Sheets    4
    Condensed Consolidated Statements of Income    5
    Condensed Consolidated Statements of Cash Flows    6
    Notes to Condensed Consolidated Financial Statements    7

Item 2.  Management's Discussion and Analysis of Financial Condition and Results of Operations Certain Factors That May Affect Future Results    15

Item 3.  Quantitative and Qualitative Disclosures About Market Risk    27

Item 4.  Controls and Procedures    28

PART II.  OTHER INFORMATION:

Item 1.  Legal Proceedings    28

Item 2.  Unregistered Sales of Equity Securities and Use of Proceeds    29

Item 6.  Exhibits    29

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding:

- Earnings per share;
- Revenues;
- Continued customer concentration and diversification of our revenue base;
- Legal expenses related to the Freedom Wireless, Inc. ("Freedom Wireless") lawsuit;
- Entrance of new competitors in the wireless services market;
- Engineering, research and development expenditures;
- Sales and marketing expenses;
- General and administrative expenses;
- Capital expenditures;
- Defined Benefit Plan contributions;
- Financing of investments and contingent consideration payments with cash and short-term investments; and
- Expectations regarding new product offerings.

These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

Table of Contents

. number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The statements discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

3

Table of Contents

**BOSTON COMMUNICATIONS GROUP, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS**
**(In thousands, except share and per share amounts)**

| | March 31, 2005 | December 31, 2004 |
|---|---|---|
| | (unaudited) | |
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 2,362 | $ 9,467 |
| Short-term investments | 69,981 | 68,285 |
| Accounts receivable, net of allowance of $442 in 2005 and $474 in 2004 | 21,405 | 17,358 |
| Deferred income taxes | 454 | 319 |
| Prepaid expenses and other assets | 3,451 | 2,907 |
| Total current assets | 97,653 | 98,336 |
| Property and equipment: | | |
| Building, land and leasehold improvements | 14,668 | 14,576 |
| Telecommunications systems & software | 95,277 | 93,895 |
| Furniture and fixtures | 876 | 789 |
| Systems in development | 6,898 | 3,842 |
| | 117,719 | 113,102 |
| Less allowance for depreciation and amortization | 62,948 | 57,543 |
| | 54,771 | 55,559 |
| Intangible assets, net | 2,300 | 2,450 |
| Goodwill | 4,753 | 4,753 |
| Other assets | 7,461 | 6,913 |
| Total assets | $166,938 | $ 168,011 |
| | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable | $ 747 | $ 312 |
| Accrued expenses | 8,800 | 13,386 |
| Deferred revenue | 3,713 | 3,753 |
| Income taxes payable | 2,508 | 1,591 |
| Total current liabilities | 15,768 | 19,042 |
| Non-current liabilities: | | |
| Accrued pension liability | 3,721 | 3,476 |
| Deferred income taxes | 7,046 | 7,046 |
| Total non-current liabilities | 10,767 | 10,522 |
| Commitments and contingencies | | |
| Shareholders' equity: | | |
| Preferred stock, $.01 par value, 2,000,000 shares authorized, none issued and outstanding | — | — |
| Common stock, voting, par value $.01 per share, 35,000,000 shares authorized; 17,639,384 and 17,581,625 shares issued at March 31, 2005 and December 31, 2004, respectively | 176 | 176 |
| Additional paid-in capital | 104,442 | 104,070 |
| Retained earnings | 36,063 | 34,430 |
| Accumulated other comprehensive loss | (278) | (229) |
| Total shareholders' equity | 140,403 | 138,447 |
| Total liabilities and shareholders' equity | $166,938 | $ 168,011 |

See accompanying notes.

4

Table of Contents

As permitted by Statement No.123, the Company currently accounts for share-based payments to employees using Opinion 25's intrinsic value method and, as such, generally recognizes no compensation cost for employee stock options. Accordingly, the adoption of Statement No. 123(R)'s fair value method will have a significant impact on the Company's results of operations, although it will have no impact on our overall financial position. The impact of adoption of Statement No. 123(R) cannot be predicted at this time because it will depend on levels of share-based payments granted in the future. However, had the Company adopted Statement No. 123(R) in prior periods, the impact of that standard would have approximated the impact of Statement No. 123 as described in the disclosure of pro forma net income and earnings per share in Note 2 to the Company's consolidated financial statements. Statement No. 123(R) also requires the benefits of tax deductions in excess of recognized compensation cost to be reported as a financing cash flow, rather than as an operating cash flow as required under current literature. This requirement will reduce net operating cash flows and increase net financing cash flows in periods after adoption.

3.  **Other Assets**

In 2004 and 2005, the Company exchanged cash totaling $1,500,000 and received secured convertible promissory notes (the "Notes") for the same amount from an early stage entity with whom the Company has a commercial relationship.

The Notes accrue interest at a rate of 15% per annum until April, 2005 and subsequently accrue interest at a rate of 12% per annum. Because of the early-stage nature of the entity, interest income from the notes is being accounted for as interest payments are received. The Notes, together with accrued interest, are due on July 23, 2007 and are secured by the entity's assets, properties and rights.

The Notes are convertible at any time into the borrower's common stock or preferred stock, as defined in the agreement.

4.  **Contingencies**

Legal

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of its wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages as well as injunctive relief. If there is a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The trial began on February 28, 2005 and is expected to be completed in mid-May 2005. In 2005, Verizon Wireless, which was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. The Company was not part of the settlement discussions and the terms of the settlement are not public. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.

The Company is not presently able to estimate the potential losses, if any, related to the Freedom Wireless lawsuit. Freedom Wireless is seeking damages in excess of $250 million from the Company and the other remaining co-defendants, whom *bcgi* has agreed to indemnify. If Freedom Wireless prevails in this case and is awarded the amount of damages which they are seeking from *bcgi* and the other co-defendants, this amount would exceed the Company's ability to pay.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe

EX-31.1 7 dex311.htm SECTION 302 CEO CERTIFICATION

Exhibit 31.1

<div align="center">CERTIFICATIONS</div>

, E. Y. Snowden, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2.  Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3.  Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for the periods presented in this quarterly report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b)  Designed such internal control over financial reporting or caused such disclosure controls and procedures to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles.

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an quarterly report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: May 9, 2005

/s/ E. Y. Snowden

E. Y. Snowden
President and Chief Executive Officer

EX-31.2 8 dex312.htm SECTION 302 CFO CERTIFICATION

Exhibit 31.2

I, Karen A. Walker, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b) Designed such internal control over financial reporting or caused such disclosure controls and procedures to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles.

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

   d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an quarterly report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: May 9, 2005                                    /s/ Karen A. Walker
_____

                                                    Karen A. Walker
                                                    Vice President, Finance and Administration
                                                    and Chief Financial Officer

EX-32 9 dex32.htm SECTION 906 CEO AND CFO CERTIFICATION

**Exhibit 32**

CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended March 31, 2005 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date May 9, 2005                           /s/ E. Y. Snowden
                                           _____

                                           E.Y. Snowden
                                           President & Chief Executive Officer

Date: May 9, 2005                          /s/ Karen A. Walker
                                           _____

                                           Karen A. Walker
                                           Vice President, Finance and Administration
                                           and Chief Financial Officer  -

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 4

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FREEDOM WIRELESS, INC.,
　　　　　　　　　　　Plaintiff

　　　　　　v.

BOSTON COMMUNICATIONS GROUP,
INC., CINGULAR WIRELESS LLC, AT & T
WIRELESS PCS, CMT PARTNERS and
WESTERN WIRELESS CORPORATION
　　　　　　　　　　Defendants.

CIVIL ACTION NO.:
00-12234-EFH

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## J U D G M E N T

September 1, 2005

HARRINGTON, S.D.J.

In accordance with the verdict of the jury returned on May 20, 2005 on the issues of infringement, invalidity and damages and in accordance with the Findings of Fact and Conclusions of Law of the Court issued on September 1, 2005, judgment is entered for the Plaintiff Freedom Wireless, Inc. against the Defendant Boston Communications Group, Inc. and Cingular Wireless LLC in the amount of $122,000,000.00, against the Defendants Boston Communications Group, Inc. and AT & T Wireless PCS in the amount of $4,900,000.00, against the Defendants Boston Communications Group, Inc. and CMT Partners in the amount of $925,000.00, and against the Defendants Boston Communications Group, Inc. and Western Wireless Corporation in the amount of $200,000.00, plus interest and costs.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

# Exhibit 5

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FREEDOM WIRELESS, INC.,
                Plaintiff

        v.                            CIVIL ACTION NO.:
                                      00-12234-EFH

BOSTON COMMUNICATIONS GROUP,
INC., ET AL.,
                Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER REGARDING MOTION FOR
## ATTORNEYS FEES AND ENHANCED DAMAGES

October 13, 2005

HARRINGTON, S.D.J.

      The Court denies Plaintiff Freedom Wireless, Inc.'s Motion for Attorneys Fees.

      The Court also denies Plaintiff Freedom Wireless, Inc.'s Motion for Enhanced Damages.
The Court declines to exercise its discretion to award enhanced damages against Defendant
Boston Communications Group, Inc.  Although the Court considers that the evidence fully
supports the jury's finding that the Defendant Boston Communications Group, Inc., willfully
infringed plaintiff's patents, it is the Court's judgment that the jury verdict constitutes a fair,
reasonable and just compensation for such willful infringement of said patents by the Defendant
Boston Communications Group, Inc.

      SO ORDERED.

                          /s/ Edward F. Harrington
                          EDWARD F. HARRINGTON
                          United States Senior District Judge

# Exhibit 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., | |
| Plaintiff, | CIVIL ACTION No. 00-CV-12234-EFH |
| v. | |
| BOSTON COMMUNICATIONS GROUP, INC., et al., | |
| Defendants. | |

### DEFENDANT BOSTON COMMUNICATIONS' NOTICE OF APPEAL
### TO THE UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

Notice is hereby given that defendant Boston Communications Inc. hereby appeals to the

United States Court of Appeals for the Federal Circuit from the following:

the Court's order, entered February 25, 2002, granting Freedom's motion for a protective

order to preserve the privileged status of documents sought by the subpoena on Litigation Risk

Management, Inc, granting Litigation Risk Management, Inc.'s motion to quash, and denying

Boston Communications' motion for *in camera* inspection of Litigation Risk Management's

Documents;

the Court's order, entered February 25, 2002, denying Boston Communications' motion

to compel production and for *in camera* review of patent prosecution documents;

the Court's Order, entered July 29, 2002, and its Memorandum, dated August 19, 2002,

denying Boston Communications' motion for summary judgment based on lack of standing and

the Court's rulings at trial, including the rulings on March 4, 2005 and on April 26, 2005,

indicating that the Court had determined that plaintiff had standing;

the Court's Order, dated April 23, 2003, and its Memorandum and Order, dated April 23,

2003, construing certain terms in U.S. Patent No. 5,722,067 and U.S. Patent No. 6,157,823, and

B3111396.1

its Order, entered August 14, 2003, denying defendants' motion for reconsideration of the April 23, 2003 Order and the April 23, 2003 Memorandum and Order;

the Court's Order, dated August 5, 2004, denying (a) Boston Communications' motion for partial summary judgment of non-infringement, (b) Boston Communications' motion for partial summary judgment of invalidity, (c) Airtouch Communications, Inc.'s motion for summary judgment of non-infringement; and (d) Cellco Partnership, Bell Atlantic Mobile, Inc. and Airtouch Communications, Inc.'s motion for summary judgment of patent unenforceability due to inequitable conduct;

the Court's Order, dated October 1, 2004, denying in part defendants' motion to compel discovery relating to Freedom's decision to withhold prior art from PTO;

the Court's Order, entered December 9, 2004, denying Boston Communications' motion to compel Freedom to produce documents with respect to pending patent applications;

the Court's Order, dated April 27, 2005, granting Freedom's motion for clarification;

the Court's Order, dated May 10, 2005, construing the terms "ANI" and "cause" and granting Freedom's motion for judgment as a matter of law regarding the on-sale bar of 35 U.S.C. § 102(b), Freedom's motion for judgment as a matter of law that Freedom's patents are not anticipated or rendered obvious by Cominex's letters, and Freedom's motion for judgment as a matter of law that Freedom's patents are not invalid (1) for indefiniteness, (2) for failure to set forth best mode, (3) for failure to enable, (4) because they were allegedly derived, or (5) for inadequate written description of outbound claims;

the Court's rulings, on May 12, 2005 and May 13, 2005, overruling defendants' objections to the jury instructions and denying defendants' request to give their proposed jury instructions;

the Judgment, entered September 1, 2005;

the Court's Findings of Fact and Conclusions of Law, dated September 1, 2005, finding that the patents-in-suit were not obtained by inequitable conduct;

the Court's Order, dated September 1, 2005, denying defendants' motion for remittitur and, in the alternative, motion for a new trial with respect to damages, and the Court's Order, dated September 27, 2005, denying defendants' motion for reconsideration of the September 1, 2005 Order;

the Court's Order for Permanent Injunctive Relief Pursuant to 35 U.S.C. § 283, dated October 12, 2005;

the Court's Order for Award of Costs, dated October 12, 2005;

the Court's Order for Award of Prejudgment Interest, dated October 12, 2005;

the Court's Order, dated October 13, 2005, granting Freedom's motion for an accounting;

the Court's Order, dated October 18, 2005, denying Boston Communications' and Western Wireless's renewed motion for judgment as a matter of law or for new trial;

the Court's Order, dated October 19, 2005, denying defendants' renewed motion for judgment as a matter of law or for new trial;

and any other orders underlying the Judgment against defendants.

Boston Communications encloses a check in the amount of $255, to cover the $250 fee specified in the revised Miscellaneous Fee Schedule, and the $5.00 fee required by 28 U.S.C. § 1917.

October 20, 2005

Respectfully submitted,

DEFENDANT BOSTON COMMUNICATIONS
INC.,
By its attorneys,

Michael B. Keating (BBO # 263360)
Philip C. Swain (BBO # 544632)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110
(617) 832-1000

### Certificate of Service

I certify that I have caused the attached document to be served by hand on Paul Ware of Goodwin Procter LLP, counsel for plaintiff, by facsimile and by Federal Express on A. William Urquhart of Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel for plaintiff, and by email on counsel for all other parties, on October 20, 2005.

Jeremy A. Younkin

# Exhibit 7

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 10549
FORM 10-Q

(x) Quarterly report pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

For the quarterly period ended June 30, 2002
or

(  ) Transition report pursuant to Section 13 or 15(d) of the Securities
Exchange Act of 1934

Commission file number: 0-28432

Boston Communications Group, Inc
(Exact name of registrant as specified in its charter)

Massachusetts                                        04-3026859
(State or other jurisdiction of        (I.R.S. Employer Identification No.)
incorporation or organization)

100 Sylvan Road, Woburn, Massachusetts 01801
(Address of principal executive offices
Registrant's telephone number, including area code: (781)904-5000

--------------------------------------------------------------
(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required
to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during
the preceding 12 months (or for such shorter period that the registrant was
required to file such reports), and (2) has been subject to such filing
requirements for the past 90 days.

Yes (X)  No (  )

Indicate the number of shares outstanding of each of the issuer's classes of
common stock as of the latest practicable date.

As of August 1, 2002, the Company had outstanding 17,340,292 shares of common
stock, $.01 par value per share.

INDEX

PART I.   FINANCIAL INFORMATION:

   Item 1.   Financial Statements (Unaudited)

          Consolidated Balance Sheets

          Consolidated Statements of Operations

          Consolidated Statements of Cash Flows

          Notes to Consolidated Financial Statements

   Item 2. Management's Discussion and Analysis of Financial Condition and
Results of Operations

     Certain Factors That May Affect Future Results

   Item 3. Quantitative and Qualitative Disclosures About Market Risk


PART II.      OTHER INFORMATION:

   Item 1. Legal Proceedings

   Item 4. Submission of Matters to a Vote of Security Holders

  Item 6. Exhibits and Reports on Form 8-K


This Quarterly Report contains forward-looking statements that involve risks and uncertainties, including without limitation, statements regarding the expected increase in subscriber base, average minutes of use (MOU) and Prepaid Wireless Services revenues, increase in MOUs resulting in increased volume discounts for carriers, leveraging fixed costs to yield higher Prepaid Wireless Services gross margins in 2002, reduction of unregistered roaming revenues, engineering, research and development, sales and marketing, general and administrative and depreciation and amortization expenses, the increase of days sales outstanding (DSO) and the source of funds for capital investments. The Company's actual results may differ significantly from the results discussed in the forward-looking statements.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" of this Quarterly Report on Form 10-Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward-looking statements made herein.

```
-------------------------------------------------------------------------------- ----
-------------------------------------------------------------------------------- ----
        Net cash provided by (used in) financing activities
-------------------------------------------------------------------------------- ----
-------------------------------------------------------------------------------- ----

Increase (decrease) in cash and cash equivalents
Cash and cash equivalents at beginning of period
-------------------------------------------------------------------------------- ----
-------------------------------------------------------------------------------- ----
Cash and cash equivalents at end of period
-------------------------------------------------------------------------------- ----
```

See accompanying notes.
</TABLE>

<PAGE>

                    NOTES TO CONSOLIDATED FINANCIAL STATEMENTS


1.    Basis of Presentation

        The accompanying unaudited financial statements have been prepared in
        accordance with generally accepted accounting principles for interim
        financial information and with the instructions to Form 10-Q and Article
        10 of Regulation S-X. Accordingly, they do not include all of the
        information and footnotes required by generally accepted accounting
        principles for complete financial statements. In the opinion of
        management, all adjustments (consisting of normal recurring accruals)
        considered necessary for a fair presentation have been included.
        Operating results for the three and six-month periods ended June 30, 2002
        are not necessarily indicative of the results that may be expected for
        the year ending December 31, 2002.

        The balance sheet at December 31, 2001 has been derived from the audited
        financial statements at that date, but does not include all of the
        information and footnotes required by generally accepted accounting
        principles for complete financial statements.

        For further information, refer to the consolidated financial statements
        and footnotes thereto included in the Company's annual report on Form
        10-K for the year ended December 31, 2001.

2.        Special Charges

        In the fourth quarter of 2000, the third quarter of 2001 and the first
        quarter of 2002, the Company recorded special charges of $2.6 million,
        $3.6 million and $3.3 million, respectively, principally to accrue for
        legal expenses estimated by the Company's outside counsel to be incurred
        in the defense of a patent infringement suit brought by Freedom Wireless.
        There can be no assurances that the Company's expenses to defend the
        Freedom Wireless suit will not exceed the Company's estimate. The Company
        believes that the claims made by Freedom Wireless are without merit and
        is vigorously defending the action. The components of the legal charges
        and payments are as follows (in thousands):

<TABLE>

                                    Initial                    Additional
                                    charges    Payments  12/31/00   charges   Payment

counsel to represent it. At this stage it is not possible to determine whether there is a valid claim for indemnification, or the likely outcome of such claim.

On July 26, 2002, a carrier customer sent a letter to the Company notifying the Company of the pendency of a lawsuit by one Philip S. Jackson against the carrier customer and seven other companies in the United States District Court for the Northern District of Illinois, alleging patent infringement by the defendants, in using, selling or offering to sell automated interactive telephone systems, voice messaging services or answering devices. The letter asserts that the Company must indemnify the carrier customer to the extent any of the claims in the complaint may relate to the services provided by the Company to the carrier customer pursuant to the Prepaid Wireless Calling Service Agreement and any other agreements between the carrier customer and the Company. The suit seeks damages in an unspecified amount. The Company is reviewing the matter. At this stage it is not possible to determine whether there is a valid claim for indemnification, or the likely outcome of such claim.

Item 4.  Submission of Matters to a Vote of Security Holders

The Company held the 2002 Annual Meeting of Shareholders (the "Annual Meeting") on May 23, 2002. At the Annual Meeting, the following actions were taken:

1.   The shareholders elected Paul J. Tobin, Brian E. Boyle and E.Y. Snowden as Class III Directors of the Company to serve three-year terms. The table below outlines the voting results:

|  | Number of Shares/Votes For | Withheld |
|---|---|---|
| Paul J. Tobin | 14,231,148 | 1,528,703 |
| Brian E. Boyle | 14,212,429 | 1,529,422 |
| E.Y. Snowden | 14,212,678 | 1,529,173 |

In addition, Frederick J. von Mering, Paul R. Gudonis, Jerrold D. Adams, Gerald Segel and Rajendra Singh are continuing directors of the Company.

2.   The shareholders ratified the appointment of Ernst & Young LLP as the Company's independent auditors by a vote of 14,391,524 shares of Common Stock for, 1,348,044 shares of Common Stock against and 2,283 shares of Common Stock abstained.

Item 6.  Exhibits and Reports on Form 8-K

a) Exhibits

NONE

b) Reports on Form 8-K

NONE

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Boston Communications Group, Inc.
(Registrant)

Date: August 14, 2002            By:    /s/ Karen A. Walker
                                 Karen A. Walker
                                 Vice President, Financial
                                 Administration and Chief
                                 Financial Officer

> (Principal Financial and Accounting
>  Officer and Duly Authorized
>  Officer)

STATEMENT PURSUANT TO 18 U.S.C.ss.1350

Pursuant to 18 U.S.C. ss.1350, each of the undersigned certifies that
this Quarterly Report on Form 10-Q for the period ended June 30, 2002
fully complies with the requirements of Section 13(a) or 15(d) of the
Securities Exchange Act of 1934 and that the information contained in
this report fairly presents, in all material respects, the financial
condition and results of operations of Boston Communications Group,Inc.


Date: August 14, 2002                 /s/ E. Y. Snowden
                                      E.Y. Snowden
                                      Chief Executive Officer


Date:        August 14, 2002          /s/ Karen A. Walker
                                      Karen A. Walker, Vice President,
                                      Financial Administration and Chief
                                      Financial Officer

# Exhibit 8

**BCGI**
**Third Quarter 2002 Earnings Conference Call**
**Leader, E. Y. Snowden**
**ID #5417505**
**10/22/02**

**Date of Transcription:   October 24, 2002**

**BCGI**
**ID #5417505**                                                              **Page 2**

| | |
|---|---|
| Operator: | Good afternoon. My name is Christie and I will be your conference facilitator. At this time I would like to welcome everyone to the Boston Communications Group 2002 Third Quarter Earnings Conference Call. All lines have been placed on mute to prevent any background noise. |
| | After the speakers' remarks, there will be a question and answer period. If you would like to ask a question during this time, simply press star, then the number one on your telephone keypad. If you would like to withdraw your question, press star, then the number two on your telephone keypad. I would now like to turn the call over to Mr. Peter Seltzberg [PHONETIC]. Sir, you may begin your conference. |
| Mr. Seltzberg: | Thanks. Good afternoon everyone. And again, thanks for joining us today for BCGI's Third Quarter 2002 Conference Call. By now you should have had a chance to view today's press release, but if anyone still needs a copy, please call Rob Hyman at 212-445-8000 and request a fax or e-mail. Alternatively, view and download it at Boston Communication's corporate website, www.bcgi.net, at the end of the call. |
| | On the line with us today are E.Y. Snowden, President and CEO, and Karen Walker, Chief Financial Officer of Boston Communications Group. |
| | Please note that management is happy to speak privately with investors and analysts regarding overall strategy, industry trends, historical issues, however, more specific questions regarding updates on financial guidance or other material information will only be discussed in widely disseminated press releases or via open conference calls such as the one being held today. |
| | I would also like to caution everyone that today's call discusses Boston Communication Group's business outlook, and may contain forward-looking statements. Particular forward-looking statements and all of the statements that may be made on this earnings call that are not historical facts are subject to a number of risks and uncertainties, and actual results may differ materially. Please refer to the Safe Harbor statement in today's press release and all filings with the SEC for more information on facts that could cause actual results to differ. |

BCGI
ID #5417505

Page 8

revenue contributions for payment services since although we have
already had success, we expect that it will take time for revenue to
ramp. However, since payment services leverages much of our
existing infrastructure, this is a relatively small investment for what
we expect will be a sizable future revenue and income opportunity.

Not reflected in our pro forma guidance for Q4 and 2003 is our
new accounting treatment for the Freedom Wireless legal costs.
As we mentioned in today's release, because of additional
unforeseen delays in the discovery timeframe for the Freedom
Wireless offshoot, and the entry of the district court scheduling
order which detailed the timeline for discovery and summary
judgment motions, we have changed the manner which we accrue
for these legal costs going forward. This new treatment does not
reflect any change in our position on the case, and we remain
confident that we do not infringe on the Freedom Wireless patents,
and that the patents are invalid in light of prior art. Because the
continued delays in the discovery timeframe have resulted in legal
costs that have proven to be very difficult to reasonably estimate,
we will account for Freedom Wireless legal costs as they are
incurred, rather than accruing the entire amount when they are
probable and reasonably estimable. This change had no impact on
the third quarter, however, beginning in the fourth quarter of 2002,
we expect to generate quarterly after-tax charges of approximately
three cents per share for these legal costs until the matter is
resolved. These costs will be separately identified in our financial
statement. We have also arrived at revised terms with our outside
counsel which should provide us greater assurance that the costs to
defend our case do not differ materially from our estimates going
forward.

E.Y. has talked to you today about the many exciting new
opportunities for our business going forward and our overall
strength in the marketplace. Signing on Nextel, the fifth largest
carrier in the U.S., the renewal of our contract with Cincinnati Bell
Wireless, and our continued success with our prepaid connection
products are all testimony to our strength, and will be positively
reflected in our future financial performance.

We have also stated that our competitive position has never been
stronger and our pipeline is sound, supporting our confidence in

BCGI
ID #5417505

Page 11

additional details on what you expect to happen over the next few
months, and maybe a little bit more on the discovery situation.

Ms. Walker:      As I mentioned in my notes and in the press release as well, based
                 on the new timeline, our discovery is still not complete. And we
                 had originally expected that we would get the summary judgment
                 by the end of this year, and it looks like it's going to be more about
                 the end of Q2 – in that timeframe. So that's the primary reason for
                 the increased costs. And again, I can't reiterate enough that our
                 counsel and we feel very strong about our case, and our position
                 has not changed one bit in that regard.

Steve:           Okay. And second, are there any details you can give us on short
                 text messaging and its popularity with Free-Up and other prepaid
                 plan subscribers?

Mr. Snowden:     Well, I can't without our good carrier customers having delivered
                 public information on this regard. But I think we've highlighted
                 before that indeed the teen-oriented services are certainly doing
                 more than the General Services of America, but until they break
                 out that data, we can't talk about it specifically.

Steve:           Okay. Thanks very much.

Operator:        Your next question comes from the line of Greg Gorbichenko of
                 Luce Capital Markets.

Mr. Gorbichenko:  Hi, guys. How are you doing? I got a bunch of questions, but I'm
                 sure I won't get them all in, so I'll just jump off with the biggest
                 ones first. I was kind of excited about PCS and what's going on
                 there with the ASL. It seems like there could be a big opportunity
                 for you guys because I know for a fact that they're going to be de-
                 emphasizing the ASL program due to lack of success. So you've
                 got a third of their subscribers, which could be about five million
                 that are going to need a home somewhere if they want service.
                 Have you guys thought about that at all? Is that baked into any
                 guidance? Have you had any discussions there? And then I've got
                 a follow-up. Thanks.

Mr. Snowden:     Well, sure we thought about it two ways, Greg. I think first is the
                 indirect effect that by being a less aggressive competitor, our good
                 carrier customers are doing more and getting more successful

# Exhibit 9



## bcgi ABOUT US

Press: Releases

Investor Alert

**BOSTON COMMUNICATIONS GROUP REPORTS THIRD QUARTER EARNINGS INCR**

- **Earnings of $0.09 per share, up 51% from the third quarter of 2001 on a pr**

- **Signed multi-year contract with Nextel, *bcgi's* third Prepaid Wireless custom national carriers**

- **Renewed its contract with Cincinnati Bell Wireless to provide Prepaid Wirele Commerce Payment Services**

- **Signed a definitive agreement to acquire the assets of Infotech Solutions Co a suite of solutions for handling all aspects of postpaid, prepaid and hybrid management**

- **Added 230,000 net new prepaid subscribers, bringing the total to 2.41 milli 2002**

- **Increasing fourth quarter 2002 guidance to $0.11 to $0.13 per share, on a p excluding legal costs in connection with the Freedom Wireless suit of $0.02**

Woburn, MA - October 22, 2002 - Boston Communications Group, Inc. (Nasdaq: BCGI) today annou for the third quarter ended September 30, 2002 was $1.5 million, or $0.09 per share, compared to a ne the third quarter of 2001 and an increase of 51% over pro forma net income of $1.0 million in the third results were ahead of the $0.08 per share net income in the previous quarter and at the high end of th share guidance *bcgi* issued for the third quarter. Total revenues for the third quarter of 2002 were $17 over total revenues for the second quarter of 2001 and consistent with the second quarter of 2002. *bcgi'* strong with $54 million in cash. Working capital is $57 million as of September 30, 2002, a $3 million i quarter of 2002.

# Prepaid Wireless Services

*bcgi* generated record Prepaid Wireless revenues of $14.5 million, a 30% increase over the third quart increase over the previous quarter. Average billed minutes of use (MoUs) per subscriber of 95 minute consistent with the second quarter, principally because of a higher proportion of subscribers being add the quarter as well as the seasonality of wireless in the typically slower third quarter. The leverage a of the Prepaid Wireless business model helped increase gross margins to 72%, an increase over 69% 2001 and consistent with the second quarter of 2002. *bcgi* added 230,000 net prepaid subscribers du with Company guidance.

Customer Acquisitions Confirm *bcgi's* Leadership Position

*bcgi* recently signed Prepaid Wireless contracts with Nextel Communications, Inc. (NASDAQ: NXTL) a

Prepaid Connection$^{SM}$ customers and renewed its contract with Cincinnati Bell Wireless. Nextel, in as founders of the BOOST MobileT brand, announced the September launch of its pay-as-you-go, featur California and Nevada. BOOST Mobile is a lifestyle-based telecommunications brand that will exclusi market in the United States using the all-digital Nextel(R) National Network. *bcgi* Prepaid Wireless su enhanced features of BOOST Mobile's offering, including BOOST 2WAYÒ digital walkie-talkie service web access, 2-way text messaging, directory assisted call completion, caller ID and voicemail services SELFcare capabilities allow BOOST Mobile subscribers online access to their account information and anytime.

The three new Prepaid Connection customers include East Kentucky Network, LLC d/b/a Appalachia Prestonsburg, Ky.; Cellular 29 Plus and Lyrix Wireless, both based in Southwest Iowa.

Cincinnati Bell Wireless, a wholly owned subsidiary of Broadwing, Inc. (NYSE: BRW), extended its co Wireless and *bcgi* Mobile Commerce Payment Services (MCPS). These offerings power Cincinnati B initiative, targeting youth subscribers.

"*bcgi* is delivering on the results we have promised to our shareholders. We continue to believe that has never been stronger and the announcement of a new customer like Nextel, as well as the reaffirm relationship with Cincinnati Bell Wireless, support our assertion that our proven real-time transaction p unsurpassed in the marketplace. The renewal of Cincinnati Bell's MCPS further demonstrates the suc Services offerings," commented E.Y. Snowden, President & Chief Executive Officer.

### Acquisition of Infotech Solutions Corporation

*bcgi* recently announced that it signed a definitive agreement to acquire the assets of Infotech Solutior privately held provider of billing software solutions for the wireless marketplace. Infotech will enable *b* solutions to wireless carriers for handling all aspects of postpaid, prepaid and hybrid subscriber manag comprehensive point-of-sale capabilities, inventory management, real-time transaction processing for Commerce, proactive voice messaging, Web-based customer care, and payment processing. Wheth legacy software or implemented end-to-end, this suite of solutions will empower carriers to attract, reta value subscribers while lowering the total cost of customer care, payment processing and churn.

### Freedom Wireless Update

Due to additional unforeseen delays in the discovery timeframe for the Freedom Wireless lawsuit and Court's Scheduling Order that details the timeline for discovery and summary judgment motions which September 26, 2002, *bcgi* has changed the manner which it accrues for legal costs related to the Free going forward. *bcgi* remains confident that it does not infringe the Freedom Wireless patents and that light of prior art. Because the continued delays in the discovery timeframe have resulted in delays rela very difficult to reasonably estimate, *bcgi* will account for Freedom Wireless legal costs as incurred rat entire amount when probable and estimable. This change had no impact on the third quarter however quarter of 2002, *bcgi* expects to generate quarterly after tax charges of $0.02-$0.03 per share per qua associated with the Freedom Wireless suit. "This change does not reflect any change in our position continue to vigorously defend against Freedom Wireless' unwarranted claims and to prosecute our ow Freedom Wireless and its patents. In addition, we have arrived at revised terms with our outside cour *bcgi* greater assurance that the costs to defend this case do not differ materially from our estimates g E. Y. Snowden.

### Outlook

As a result of continued success year-to-date and the incremental growth that *bcgi* expects from new l *bcgi* is raising its pro forma earnings estimates for the full year 2002 to between $0.31 and $0.33 per s fourth quarter earnings estimates of $0.11 to $0.13 per share and excludes legal costs associated with lawsuit. In addition, *bcgi* expects annual 2003 earnings of between $0.60-$0.70 per share, before Fre costs. Commented E. Y. Snowden, "Our strong quarterly results demonstrate several material succes our strategy and we remain committed to delivering increased shareholder value. The addition of Nex carriers as *bcgi* customers, as well as the reaffirmation of Cincinnati Bell Wireless' commitment to *bc* competitive strength. Our prospects for new customer acquisition have never been better, and we ren ability to bring on additional significant business. Furthermore, our recent acquisition of Infotech Solut stated mission to provide integrated subscriber management, billing and payment solutions and positi services into a broader, compelling suite of products to wireless carriers."

*bcgi* will be holding a conference call and Webcast at 5:00 PM today to discuss its second quarter res and CEO, E.Y. Snowden, and Chief Financial Officer, Karen A. Walker, will host the call. Parties inter call should dial 1-800-423-5972 at least 10 minutes prior to the start of the call. The conference call a accessed via the web at www.bcgi.net. For those unable to participate at the designated time, a repla days following the call via telephone at 1-800-642-1687 (conf id 5417505) and the web at www.bcgi.n

# ABOUT THE COMPANY

Boston Communications Group, Inc. (NASDAQ: BCGI), an S&P Small Cap company and Russell 2000 Index company, is a leader in transaction proces real-time wireless subscriber management, payment services, billing and cus Through these solutions, bcgi delivers prepaid wireless, ATM recharge, mob other payment services. Founded in 1988, bcgi provides solutions to carrier combination of industry-leading proprietary software applications, a highly so processing platform, and its Intelligent Voice Services Network (IVSN). Throi real-time infrastructure, bcgi provides one or more of its services to approxim carriers and resellers, including five of the top six national carriers. bcgi's sof processing platform and IVSN make up bcgi's Prepaid Wireless service offer leader in one of the highest growth segments of the wireless communication handles approximately 2.9 billion minutes of service a year. Please visit the t http://www.bcgi.net. .

## CAUTIONARY STATEMENT REGARDING FORWARD-LOOKING STATEMENTS

_This press release contains, in addition to historical information, forward-looking statem and uncertainties, including statements regarding *bcgi's* earnings estimates, estimated le Freedom Wireless lawsuit, the integration of Infotech Solutions and prospects for new cu: statements are based on management's current expectations and are subject to a numbe risks that could cause actual results to differ materially from those described in the forwa Among the important factors that would cause actual results to differ materially from tho forward-looking statements are an unfavorable judgment in the Freedom Wireless suit wl substantial damages and could significantly restrict *bcgi's* ability to conduct business, exp Freedom Wireless suit in excess of *bcgi's* estimates, outages in *bcgi's* Prepaid Wireless Se could result in significant financial penalties, the inability of *bcgi* to successfully support it Services Network (IVSN) and transaction processing platform, the adverse impact that fir difficulties of *bcgi's* customers may have on *bcgi's* future revenues and financial and oper number of new subscribers added to *bcgi's* prepaid service and the speed at which they a generated by subscribers, declines in demand for *bcgi's* Prepaid Wireless Services, *bcgi's* in the wireless telecommunications business, dependence on a limited number of custom change in the telecommunications industry and other markets in which *bcgi* does busines *bcgi* and its customers, the inability of *bcgi* to close the Infotech Solutions acquisition, dit Infotech Solutions, uncertainties associated with *bcgi's* ability to develop new products, s technologies, general global economic conditions and the risk factors detailed in *bcgi's* Fo ended June 30, 2002 and Form 10-K for the year ended December 31, 2001 filed with th Exchange Commission.

*bcgi* provides pro forma net income and pro forma net income per share data as addition operating results. These measures are not in accordance with, or an alternative for, gene accounting principles and may be different from pro forma measures used by other comp

| Company Contact: | FRB\Weber Shandwick NY: |
|---|---|
| Dan Brosnan | Alison Ziegler, General Inqu 8432 |
| Investor Relations - *bcgi* | |
| **(781) 904-5410** | Peter Seltzberg, Investor Inquiries (: |

email: dbrosnan@bcgi.net

BOSTON COMMUNICATIONS GROUP, INC. AND SUBSIDIA

# CONSOLIDATED STATEMENTS OF OPERATIONS

**(In thousands, except per share amounts)**

|  | Three Months Ended | | |
|---|---|---|---|
|  | 9/30/02 | 9/30/01 | 9/30 |
|  |  | (Unaudited) | |
| Revenues: | | | |
| Prepaid wireless services | $14,522 | $11,169 | $4 |
| Roaming services | 1,743 | 3,109 | |
| Prepaid systems | 3,148 | 1,690 | |
| Eliminations | (2,087) | (81) | (3 |
|  | 17,326 | 15,887 | 4 |
| Expenses: | | | |
| Cost of prepaid wireless services revenues | 4,134 | 3,458 | 1 |
| Cost of roaming services revenues | 1,674 | 2,556 | |
| Cost of prepaid wireless services - special charge | - | 3,629 | |
| Cost of prepaid systems revenues | 444 | 761 | |
| Engineering, research and development | 2,286 | 1,794 | |
| Sales and marketing | 976 | 905 | |
| General and administrative | 1,433 | 1,350 | 4, |
|  | 10,947 | 14,453 | 35 |
| Income before depreciation, amortization, interest and taxes | 6,379 | 1,434 | 1 |
| Depreciation and amortization | 4,255 | 3,936 | 1 |
| Operating income (loss) | 2,124 | (2,502) | |
| Interest income | 402 | 546 | 1, |
| Other expense - special charge | - | (894) | |
| Income (loss) before income taxes | 2,526 | (2,850) | |
| Provision (benefit) for income taxes | 1,010 | (1,140) | |
| Net income (loss) | $1,516 | ($1,710) | $1 |
|  | | | |
| Basic Income (Loss) Per Share: | | | |
| Net income (loss) per common share | $0.09 | ($0.10) | |
| Shares used in computing basic net income (loss) per common share | | | |
|  | 17,080 | 17,112 | 1 |
| Diluted Income (Loss) Per Share: | | | |
| Net income (loss) per common share | $0.09 | ($0.10) | |
| Shares used in computing diluted net income (loss) per common share | - | - | |

# BOSTON COMMUNICATIONS GROUP, INC. AND SU

## PRO FORMA (1) CONSOLIDATED STATEMENTS OF OPERATIONS

**(In thousands, except per share amounts)**

| | Pro Forma Three Months Ended | | Nin |
|---|---|---|---|
| | 9/30/02 | 9/30/01 | 9/30. |
| | | (Unaudited) | |
| Revenues: | | | |
| Prepaid wireless services | $14,522 | $11,169 | $4( |
| Roaming services | 1,743 | 3,109 | : |
| Prepaid systems | 3,148 | 1,690 | : |
| Eliminations | (2,087) | (81) | (3, |
| | 17,326 | 15,887 | 4! |
| Expenses: | | | |
| Cost of prepaid wireless services revenues | 4,134 | 3,458 | 1: |
| Cost of roaming services revenues | 1,674 | 2,556 | ∙ |
| Cost of prepaid systems revenues | 444 | 761 | : |
| Engineering, research and development | 2,286 | 1,794 | ( |
| Sales and marketing | 976 | 905 | : |
| General and administrative | 1,433 | 1,350 | 4,: |
| | 10,947 | 10,824 | 3: |
| Income before depreciation, amortization, | | | |
| interest and taxes | 6,379 | 5,063 | 1: |
| Depreciation and amortization | 4,255 | 3,936 | 1: |
| Operating income | 2,124 | 1,127 | ∙ |
| Interest income | 402 | 546 | 1,: |
| Income before income taxes | 2,526 | 1,673 | ! |
| Provision for income taxes | 1,010 | 669 | : |
| Net income | 1,516 | 1,004 | : |
| | | | |
| Diluted Income Per Share: | ¨ | ¨ | |
| Net income per common share | $0.09 | $0.06 | ! |
| Shares used in computing net income per | | | |
| | ¨ | ¨ | |
| common share | 17,518 | 17,957 | 1: |

Notes to Pro Forma Consolidated Statements of Operations:

(1) The above pro forma consolidated statements of operations exclude the effects of th

For the nine months ended September 30, 2002, a special pre-tax charge of $3.3 million that represents the estimated fees *bcgi* will incur to defend the patent infringement suit t Wireless.

For the three and nine months ended September 30, 2001, special charges of $3.6 millio most of which represents the estimated fees *bcgi* will incur to defend the patent infringer Freedom Wireless, and $894,000 primarily for the write-off of a cost-based, minority own

# BOSTON COMMUNICATIONS GROUP, INC. AND SU

# GAAP TO PRO FORMA CONSOLIDATED STATEMEN1 OPERATIONS RECONCILIATION

**(In thousands, except per share amounts)**

| | Nine Months Ended 2002 |  |
|---|---|---|
| | | (Unaudit Profor adjustme |
| | GAAP | |
| Revenues: | | |
| Prepaid wireless services | $40,982 | |
| Roaming services | 5,017 | |
| Prepaid systems | 7,438 | |
| Eliminations | (3,697) | — |
| | 49,740 | |
| Expenses: | | |
| Cost of prepaid wireless services revenues | 12,095 | |
| Cost of roaming services revenues | 4,715 | |
| Cost of prepaid wireless services  - special charge | 3,297 | |
| Cost of prepaid systems revenues | 1,735 | |
| Engineering, research and development | 6,363 | |
| Sales and marketing | 3,082 | |
| General and administrative | 4,374 | — |
| | 35,661 | : |
| Income before depreciation, amortization, interest and taxes | 14,079 | : |
| Depreciation and amortization | 12,876 | — |
| Operating income | 1,203 | : |
| Interest income | 1,214 | — |
| Income before income taxes | 2,417 | : |
| Provision for income taxes | 966 | — |
| Net income | $1,451 | $1 |

| | |
|---|---|
| Diluted Income Per Share: | — |
| Net income per common share | $0.08 |
| Shares used in computing net income per common share | 17,499 |

(1) Results for the nine months ended September 30, 2002 exclude a special pre-tax cha
legal expenses, which represents the estimated fees *bcgi* will incur to defend the patent i
brought by Freedom Wireless.

# BOSTON COMMUNICATIONS GROUP, INC. AND SU

# GAAP TO PRO FORMA CONSOLIDATED STATEMEN1 OPERATIONS RECONCILIATION

**(In thousands, except per share amounts)**

| | Three Months Ended 2001 |
|---|---|
| | (Unaudit Profo adjustme |
| | GAAP |
| Revenues: | |
| Prepaid wireless services | $11,169 |
| Roaming services | 3,109 |
| Prepaid systems | 1,690 |
| Eliminations | (81) |
| | 15,887 |
| Expenses: | |
| Cost of prepaid wireless services revenues | 3,458 |
| Cost of roaming services revenues | 2,556 |
| Cost of prepaid wireless services  - special | |
| charge | 3,629 |
| Cost of prepaid systems revenues | 761 |
| Engineering, research and development | 1,794 |
| Sales and marketing | 905 |
| General and administrative | 1,350 |
| | 14,453 |
| Income before depreciation, amortization, interest and taxes | |
| | 1,434 |
| Depreciation and amortization | 3,936 |
| Operating income (loss) | (2,502) |
| Interest income | 546 |
| Other expense - special charge | (894) |

| | | |
|---|---|---|
| Income (loss) before income taxes | (2,850) | |
| Provision (benefit) for income taxes | (1,140) | |
| Net income (loss) | ($1,710) | $2 |
| | | |
| Diluted Income Per Share: | | |
| Net income per common share | ($0.10) | |
| Shares used in computing net income per common share | 17,112 | |

(1) Results for the three months ended September 30, 2001 exclude a special charge of expenses, most of which represents the estimated fees *bcgi* will incur to defend the paten brought by Freedom Wireless, and $894,000 primarily for the write-off of a cost-based, r investment.

# BOSTON COMMUNICATIONS GROUP, INC. AND SU

# GAAP TO PRO FORMA CONSOLIDATED STATEMEN1 OPERATIONS RECONCILIATION

**(In thousands, except per share amounts)**

| | Nine Months Ended 2001 |
|---|---|
| | (Unaudit Profoi adjustme |
| | GAAP |
| Revenues: | |
| Prepaid wireless services | $37,636 |
| Roaming services | 9,661 |
| Prepaid systems | 5,919 |
| Eliminations | (1,223) |
| | 51,993 |
| Expenses: | |
| Cost of prepaid wireless services revenues | 11,231 |
| Cost of roaming services revenues | 8,213 |
| Cost of prepaid wireless services  - special | |
| charge | 3,629 |
| Cost of prepaid systems revenues | 2,196 |
| Engineering, research and development | 6,000 |
| Sales and marketing | 3,445 |
| General and administrative | 4,687 |
| | 39,401 |
| Income before depreciation, amortization, interest and taxes | |

| | | |
|---|---|---|
| | 12,592 | |
| Depreciation and amortization | 11,756 | |
| Operating income | 836 | |
| Interest income | 1,892 | |
| Other expense - special charge | (894) | |
| Income before income taxes | 1,834 | |
| Provision for income taxes | 732 | |
| Net income | $1,102 | $2 |
| | | |
| Diluted Income Per Share: | | |
| Net income per common share | $0.06 | |
| Shares used in computing net income per common share | 17,476 | |

(1) Results for the nine months ended September 30, 2001 exclude a special charge of $
expenses, most of which represents the estimated fees *bcgi* will incur to defend the paten
brought by Freedom Wireless, and $894,000 primarily for the write-off of a cost-based, n
investment.

## SEGMENT INFORMATION

### ($ in thousands)

| Quarter ended | Prepaid Wireless | Roaming Services | Prepaid Systems | Elim. |
|---|---|---|---|---|
| September 30, | Services | | | |
| **2002** | | | | |
| Revenues | $14,522 | $1,743 | $3,148 | $(2,0 |
| Gross margin | 10,388 | 69 | 1,431 | $(8 |
| Gross margin percentage | 72% | 4% | 45% | |
| | | | | |
| **2001** | | | | |
| Revenues | $11,169 | $3,109 | $1,690 | $( |
| Pro forma gross margin | 7,711 | 553 | 880 | ( |
| Pro forma gross margin percentage | | | | |
| | 69% | 18% | 52% | |

CONSOLIDATED BALANCE SHEET DATA

### (in thousands)

# ASSETS

### September 30,

<u>**2002**</u>

(Unau

Current assets:
Cash and short-term investments                          $54,119
Accounts receivable, net of allowance for
lling adjustments and

    doubtful accounts of $882 in 2002
nd $1,169 in 2001                                          12,903
  Inventory                                                   845
Prepaid expenses and other assets            1,286
Deferred income taxes                        1,385
    Total current assets                                   70,538

Property and equipment, net                                41,836

Goodwill and other assets                    1,839
    Total assets                                         $114,213

**LIABILITIES AND SHAREHOLDERS'
QUITY**
Current liabilities:
  Accounts payable and accrued                           $13,756
xpenses
  Current maturities of capital lease                          -
bligations
    Total current liabilities                             13,756

Deferred income taxes                                      3,040

Shareholders' equity:
Common stock and additional paid-in
apital                                                    98,236
  Accumulated deficit                                       (819)
  Total shareholders' equity                              97,417
    Total liabilities and shareholders'                 $114,213
  equity



# Exhibit 10

**Table of Contents**

# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 10549

# FORM 10–Q

☒ Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

For the quarterly period ended September 30, 2002

or

☐ Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Commission file number: 0–28432

# Boston Communications Group, Inc.
(Exact name of registrant as specified in its charter)

| Massachusetts | 04–3026859 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

100 Sylvan Road, Woburn, Massachusetts 01801
(Address of principal executive offices)

Registrant's telephone number, including area code: (781)904–5000

___

(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes  ☒     No ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date.

As of October 21, 2002, the Company had outstanding 17,383,351 shares of common stock, $.01 par value per share.

INDEX

|  |  | Page |
|---|---|---|
| **PART I.** | **FINANCIAL INFORMATION:** | |
| Item 1. | Financial Statements (Unaudited) | |
|  | Consolidated Balance Sheets | 3 |
|  | Consolidated Statements of Operations | 4 |
|  | Consolidated Statements of Cash Flows | 5 |
|  | Notes to Consolidated Financial Statements | 6 |
| Item 2. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 11 |
|  | Certain Factors That May Affect Future Results | 17 |
| Item 3. | Quantitative and Qualitative Disclosures About Market Risk | 19 |
| Item 4. | Controls and Procedures | 20 |
| **PART II.** | **OTHER INFORMATION:** | |
| Item 1. | Legal Proceedings | 20 |
| Item 6. | Exhibits and Reports on Form 8–K | 21 |

This Quarterly Report contains forward–looking statements that involve risks and uncertainties, including without limitation, statements regarding the prepaid subscriber base, average billed minutes of use (MOU) and Prepaid Wireless Services revenues, after tax charges for legal costs associated with the Freedom Wireless suit, increase in MOUs resulting in increased volume discounts for carriers, leveraging fixed costs to yield higher Prepaid Wireless Services gross margins in 2002 and beyond, roaming revenues, engineering, research and development, sales and marketing, and depreciation and amortization expenses, general and administrative expenses and the source of funds for capital investments. The Company's actual results may differ significantly from the results discussed in the forward–looking statements.

Any statements contained herein that are not statements of historical fact may be deemed to be forward–looking statements. Without limiting the foregoing, the words "believes," "anticipates," "plans," "expects," "intends," and similar expressions are intended to identify forward–looking statements, although not all forward–looking statements contain these words.

There are a number of important factors that could cause actual events or the Company's actual results to differ materially from those indicated by such forward–looking statements. These factors include, without limitation, those set forth under the captions "Notes To Consolidated Financial Statements", "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk" in this Quarterly Report on Form 10–Q. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. The Company does not assume any obligation to update any forward–looking statements made herein.

Table of Contents

The Company adopted the new rules on accounting for goodwill in the first quarter of 2002. The Company has performed the first of the required impairment tests of goodwill and determined that its goodwill was not impaired upon the adoption of FAS 142. The Company will perform the annual impairment test in the fourth quarter. The goodwill is attributable to the Prepaid Wireless Services segment. The effect of no longer amortizing goodwill under FAS 142 is as follows:

| (in 000's, except per share amounts) | Three months ended September 30, | | Nine months ended September 30, | |
| --- | --- | --- | --- | --- |
| | 2002 | 2001 | 2002 | 2001 |
| Reported net income (loss) | $1,516 | ($ 1,710) | $1,451 | $1,102 |
| Goodwill amortization | — | 151 | — | 453 |
| Adjusted net income (loss) | 1,445 | (1,559) | 1,451 | 1,555 |
| **Basic earnings per share** | | | | |
| Reported net income | 0.09 | (0.10) | 0.08 | 0.06 |
| Goodwill amortization | — | 0.01 | — | 0.03 |
| Adjusted net income | 0.09 | (0.09) | 0.08 | 0.09 |
| **Diluted earnings per share** | | | | |
| Reported net income | 0.09 | (0.10) | 0.08 | 0.06 |
| Goodwill amortization | — | 0.01 | — | 0.03 |
| Adjusted net income | $ 0.09 | ($ 0.09) | $ 0.08 | $ 0.09 |

In June 2001, the FASB issued SFAS No. 143, "Accounting for Asset Retirement Obligations" (FAS 143), which addresses accounting and reporting for legal obligations associated with the retirement of tangible long-lived assets that result from acquisition, construction, development and (or) the normal operation of a long-lived asset, except for lease obligations. The Company is required to adopt FAS 143 in the first quarter of fiscal 2003. The impact of such adoption is not expected to be material to the Company's consolidated financial statements.

In July 2002, the FASB issued SFAS No. 146, "Accounting for Costs Associated with Exit or Disposal Activities" (FAS 146), which supercedes EITF 94-3, "Liability Recognition for Certain Employee Termination Benefits and Other Costs to Exit an Activity (including Certain Costs Incurred in a Restructuring)" and addresses financial accounting and reporting for costs associated with exit or disposal activities. Under this pronouncement, a liability for a cost associated with an exit or disposal activity must be recognized when the liability is incurred. Severance pay, in many cases, would be recognized over time rather than up front. If the benefit arrangement requires employees to render future service beyond a "minimum retention period," a liability should be recognized as employees render service over the future service period even if the benefit formula used to calculate an employee's termination benefit is based on length of service. The Company is required to adopt FAS 146 on December 31, 2002. The impact of such adoption is not expected to be material to the Company's consolidated financial statements.

**6.   Contingencies—Legal**

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief, which could significantly restrict the Company's ability to conduct its business if the Company is found to have infringed the Freedom Wireless patents. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is currently in the discovery phase. The Company does not believe that it infringes these patents and believes that it has meritorious defenses to the action.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by the Company's outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable discovery process, which has made it difficult to reasonably estimate legal costs in the suit, the Company has decided to account for Freedom Wireless legal costs as incurred in the future rather than accrue the entire amount of such costs when they become probable. This accounting treatment had no impact on the third quarter of 2002. However, beginning in the fourth quarter of 2002, the Company expects to generate quarterly after tax charges of approximately $550,000 per quarter for legal costs associated with the Freedom Wireless suit until it is resolved. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. If Freedom Wireless were to prevail in the case, the amount of the damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.

8


Table of Contents

of the claims in the complaint may relate to the services provided by the Company to the carrier customer pursuant to the Prepaid Wireless Calling Service Agreement and any other agreements between the carrier customer and the Company. The Company has engaged outside counsel to represent it. At this stage it is not possible to determine whether there is a valid claim for indemnification, or the likely outcome of such claim.

On July 26, 2002, a carrier customer sent a letter to the Company notifying the Company of the pendency of a lawsuit brought by Philip S. Jackson against the carrier customer and seven other companies in the United States District Court for the Northern District of Illinois. The suit alleges patent infringement by the defendants in using, selling or offering to sell automated interactive telephone systems, voice messaging services or answering devices. The letter asserts that the Company must indemnify the carrier customer to the extent any of the claims in the complaint relate to the services provided by the Company to the carrier customer pursuant to the Prepaid Wireless Calling Service Agreement and any other agreements between the carrier customer and the Company. The suit seeks damages in an unspecified amount. The Company has retained outside counsel. At this stage it is not possible to determine whether there is a valid claim for indemnification, or the likely outcome of such claim.

### Item  6. Exhibits and Reports on Form 8–K

    a)   Exhibits

        NONE

    b)   Reports on Form 8–K

        NONE

### SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Boston Communications Group, Inc.
(Registrant)

Date: November 14, 2002

By: /s/ Karen A. Walker

Karen A. Walker
Vice President, Financial Administration and Chief Financial Officer
(Principal Financial and Accounting Officer and Duly Authorized Officer)

### STATEMENT PURSUANT TO 18 U.S.C. §1350

Pursuant to 18 U.S.C. §1350, each of the undersigned certifies that this Quarterly Report on Form 10–Q for the period ended September 30, 2002 fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that the information contained in this report fairly presents, in all material respects, the financial condition and results of operations of Boston Communications Group, Inc.

Date: November 14, 2002

/s/ Edward H Snowden

Edward H. Snowden President and Chief Executive Officer

Date: November 14, 2002

/s/ Karen A. Walker

Karen A. Walker Vice President, Financial Administration and Chief Financial Officer

21

Table of Contents

<div align="center">CERTIFICATIONS</div>

I, Edward H. Snowden, certify that:

1. I have reviewed this quarterly report on Form 10–Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–14 and 15d–14) for the registrant and we have:

   a) designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b) evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this quarterly report (the "Evaluation Date"); and

   c) presented in this quarterly report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

   a) all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and

   b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls; and

6. The registrant's other certifying officers and I have indicated in this quarterly report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

Date: November 14, 2002

/s/ Edward H. Snowden
_____

Edward H. Snowden
President and Chief Executive Officer

Table of Contents

I, Karen A. Walker, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2.  Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3.  Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4.  The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the registrant and we have:

    a)  designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b)  evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this quarterly report (the "Evaluation Date"); and

    c)  presented in this quarterly report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;

5.  The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

    a)  all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and

    b)  any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls; and

6.  The registrant's other certifying officers and I have indicated in this quarterly report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

Date: November 14, 2002                                    /s/ Karen A. Walker

                                                           Karen A. Walker
                                                           Vice President, Financial Administration and Chief Financial Officer

# Exhibit 11

BOSTON COMMUNICATIONS GROUP INC.
4TH QUARTER AND FULL YEAR 2002
Leader, E. Y. Snowden
ID# 7504722
02/05/03

Date of Transcription:   February 8, 2003

BCGI
ID# 7504722

Page 2

| | |
|---|---|
| Operator: | Good afternoon, and welcome to Boston Communications 4th Quarter and Full Year 2002 conference call. All lines have been placed on mute to prevent any background noise. After the speakers' remarks, there will be a question and answer period. Instructions for registering your question will be given at that time. Now I will turn the call over to Peter Selzburg with FRB. Mr. Selzburg, please begin. |
| Peter Selzburg: | Thanks. Good afternoon, everyone, and thank you again for joining us today. By now you should have had a chance to view today's press release, but if anyone still needs a copy please call to (212) 445-8453 and request a fax or email. Alternatively, you may want to download it at the Boston Communications corporate website: www.bcgi.net. On the line with us today are E. Y. Snowden, President and CEO, and Karen Walker, Chief Financial Officer of Boston Communications Group. |
| | Please note that management is happy to speak privately with investors and analysts regarding overall strategy, industry trends, and historical issues; however, more specific questions regarding updates and financial guidance or other material information will only be discussed in widely disseminated press releases or via open conference calls such as the one being held today. I'd also like to caution everyone that today's call discusses Boston Communication Group's business outlook and may contain forward-looking statements. Particularly forward-looking statements and all other statements that may be made on this earnings call that are not historical fact are subject to a number of risks and uncertainties, and actual results may differ materially. Please refer to the Safe Harbor statement in today's press release and all filings with the SEC for more information on facts that could cause actual results to differ. |
| | Without further delay now, I'd like to turn the call over to E.Y. Snowden. Please go ahead, E.Y. |
| E.Y. Snowden: | Well, thank you, Peter, and welcome to the Boston Communications Group's 4th quarter and calendar year 2002 conference call. We are happy to be talking with you today about our outstanding financial results, our success in executing on and exceeding our strategic goals for 2002, and about our position going into 2003 with unprecedented momentum. |

**BCGI**
**ID# 7504722**

Now I'd like to spend some time talking in more detail about our outlook for 2003. As noted in the release, we are increasing the lower end of our guidance resulting in earnings guidance of $0.64-$0.70 per share before legal charges. This compares to our previous guidance of $0.60-$0.70 and is about double '02 earnings. If the legal costs to defend the Freedom Wireless suit continues throughout 2003, we expect that GAAP EPS should range between $0.52-$0.58 per share, about triple 2002 GAAP earnings. Note that we expect we will continue to generate quarterly after-tax legal charges of approximately $0.03 per share until the Freedom Wireless matter is resolved. I should also note that the timing of the case remains on track, and we still expect that summary judgment motions will be submitted sometime during the second quarter of this year. There are no other developments to report and there has been no change to our position in this case. We remain confident that we do not infringe on the Freedom Wireless patents and that the patents are invalid in light of prior art.

As we stated in today's press release, most of our new business in 2002 was launched in the latter part of the year and, therefore, we believe our billing and transaction processing services business is very well positioned to deliver on these financial objectives.

For the first quarter of 2003, we expect earnings to range between $0.13 and $0.15 per share before legal charges. This guidance reflects continued growth in BTPS, offset by the return of the systems business revenues to more typical levels of about $1.5 million per quarter. Our guidance does reflect the previously-announced investment in our payment services business, which we expect to be $0.01-$0.02 per quarter after tax for the near term. We have not factored in any significant revenue contribution for payment services in '03 since, although we have already enjoyed much success with new distribution arrangements and customer acceptance of our newest payment service products, we believe that it will take time for these revenues to ramp. However, since payment services leverages much of our existing infrastructure, this is a relatively small investment for what we expect will be a future revenue and income opportunity.

We reiterate the expected growth rate we provided in October for a

# Exhibit 12

10-K 1 d10k.htm FORM 10-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

---

# FORM 10-K

---

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2002**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission File Number 333-4128**

---

# BOSTON COMMUNICATIONS GROUP, INC.
#### (Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| **MASSACHUSETTS** | **04-3026859** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **100 Sylvan Road, Suite 100, Woburn, Massachusetts** | **01801** |
| (Address of Principal Executive Office) | (Zip Code) |

**Registrant's telephone number, including area code: (781) 904-5000**

---

**Securities registered pursuant to Section 12(b) of the Act:**

**None**

**Securities registered pursuant to Section 12(g) of the Act:**

**Common Stock, par value $.01 per share**

---

Indicate by check mark whether registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)   YES ☒   NO ☐

The approximate aggregate value of the voting stock held by non-affiliates of the registrant, computed by reference to

the closing sales price of such stock quoted on the Nasdaq National Market on June 28, 2002 was $123,861,973. The number of shares outstanding of the Registrant's common stock, $.01 par value per share, as of March 20, 2003 was 17,644,706.

## DOCUMENTS INCORPORATED BY REFERENCE

Portions of registrant's definitive proxy statement for its 2003 Annual Meeting of Stockholders are incorporated by reference into Part III (Items 10, 11, 12 and 13) of this Annual Report on Form 10-K.

This Annual Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding our continued investment in our payment services business, the expected increase in subscriber base, average minutes of use and billing and transaction processing services revenues, the increase in minutes of use resulting in increased volume discounts for carriers, billing and transaction processing services gross margins, decreases in roaming services revenues, prepaid systems revenues and gross margins estimates, increases in engineering, research and development expenditures, increases in sales and marketing expenses, decreases in general and administrative expenses, legal expenses for the Freedom Wireless lawsuit, increases in depreciation and amortization expense, decreases in interest income and our income tax rate and increases in capital investments. These statements are based on the beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results", "Quantitative and Qualitative Disclosures About Market Risk" and those set forth in Items 1 and 3 of Part I of this Annual Report on Form 10-K. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

**Item 1.    BUSINESS**

### GENERAL

Boston Communications Group, Inc. ("*bcgi*" or the "Company") has provided services to wireless carriers since our incorporation in Massachusetts in 1988. Since 1991, we have offered our real-time subscriber management solutions through a combination of proprietary software applications, a carrier-class hosted environment and high quality service and support. One or more of our services are provided to more than 70 wireless carriers and resellers, including five out of the six largest national wireless carriers by number of subscribers—Verizon Wireless, Cingular Wireless, AT&T Wireless, Nextel Communications and Sprint PCS.

### HISTORY OF OUR SERVICE OFFERINGS

In 1991, we launched our *bcgi* ROAMER*plus*™ service to wireless carriers. This solution provides wireless carriers with the ability to better serve their subscribers by offering unregistered roamers the ability to complete calls. This service has generated over $85 million in revenues for carriers since 1991.

We introduced our *bcgi* Prepaid Wireless Services offering in mid-1994. Since then, this offering has become the cornerstone of our real-time subscriber management capabilities. Domestically, we offer prepaid wireless on an outsourced service bureau basis to wireless carriers, similar to an application service provider business model. Our solution provides several critical features to carriers and enables them to rapidly and cost-effectively deploy prepaid wireless services to their customers. Our nationwide prepaid roaming capability, a feature that many carriers and competitors do not offer, allows our carrier customers to offer prepaid services that mirror their postpaid coverage area. We currently provide prepaid wireless services, branded as Prepaid Wireless for large operators and Prepaid Connection for regional carriers, to several U.S. carriers, including Verizon Wireless, Cingular Wireless, Nextel Communications, Alltel Corporation, Cincinnati Bell Wireless, Dobson Cellular Systems, Inc., and more than 20 wireless carriers and resellers. Our existing contracts to provide prepaid wireless services generally have terms of two to three years.

2

prepaid systems business such as software development, product management and sales support. We also have 31 other leased facilities throughout the United States that house a portion of our voice nodes and certain equipment for our network.

The following list comprises our significant leased facilities:

| Location | Square Footage | Expiration Date |
| --- | --- | --- |
| Woburn, Massachusetts | 62,787 | October 2003–February 2006 |
| Westbrook, Maine | 6,400 | September 2003 |

## Item 3.    LEGAL PROCEEDINGS

In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that we infringed the Freedom Wireless patents could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement. The suit is still in the discovery phase. We do not believe that we infringe these patents and we believe that we have meritorious defenses to the action.

We recorded a special charge in the fourth quarter of 2000 of $2.6 million, in the third quarter of 2001 of $3.6 million and in the first quarter of 2002 of $3.3 million, principally to accrue for legal expenses estimated by our outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. The lengthy and unpredictable discovery process has made it difficult for us to reasonably estimate legal costs in this suit. As a result, we are now accounting for Freedom Wireless legal costs as incurred rather than accruing the entire amount of such costs when they become probable. For the fourth quarter of 2002, we recorded $998,000 in legal charges associated with the Freedom Wireless suit. We also expect to continue to spend up to $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be no assurances that our expenses to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.

In December 1999, Crystal, Inc., a former supplier of one of our subsidiaries, filed a suit against us in the United States District Court for the Northern District of Iowa. We signed a purchase contract with Crystal for an unspecified number of components in 1997, pursuant to which Crystal became our sole supplier for a certain system component in 1997 and early 1998. We subsequently changed suppliers. Currently, the suit alleges that we breached the confidentiality clause of the contract and made fraudulent misrepresentations to Crystal. The court granted our motion for summary judgment dismissing Crystal's breach of contract claim, but did not dismiss the fraudulent misrepresentation claim. Crystal has alleged actual damages of approximately $12,000 and seeks punitive damages in an amount to be determined. The trial is scheduled for May 2003.

On January 4, 2002, a carrier customer notified us that they believed we should indemnify them with respect to certain claims pending in a patent infringement case brought by Ronald A. Katz Technology Licensing, L.P. ("Katz") against the carrier customer in the United States District Court for the Eastern District of Pennsylvania. In the suit, the plaintiff claimed infringement of fourteen patents by the defendants, and sought damages in an unspecified amount. Katz and the carrier customer settled the suit in February 2003. No demand on us has been made by the carrier customer. At this stage it is not possible to determine whether there is a valid claim for indemnification, or the likely outcome of such claim.

On July 26, 2002, a carrier customer sent a letter to us notifying us of a pending lawsuit brought by Philip S. Jackson against the carrier customer and seven other companies in the United States District Court for

11

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized on the 27th day of March 2003.

BOSTON COMMUNICATIONS GROUP, INC.

By:        /s/  E. Y. SNOWDEN

E. Y. Snowden
President and Chief Executive Officer

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
| --- | --- | --- |
| /s/  E. Y. SNOWDEN<br>E. Y. Snowden | President, Chief Executive<br>Officer and Director | March 27, 2003 |
| /s/  KAREN A. WALKER<br>Karen A. Walker | Vice President, Finance and<br>Administration<br>(Principal Financial and<br>Accounting Officer) | March 27, 2003 |
| /s/  PAUL J. TOBIN<br>Paul J. Tobin | Chairman of the<br>Board of Directors | March 27, 2003 |
| /s/  BRIAN E. BOYLE<br>Brian E. Boyle | Vice Chairman of the<br>Board of Directors | March 27, 2003 |
| /s/  FREDERICK E. VON MERING<br>Frederick E. von Mering | Director | March 27, 2003 |
| /s/  JERROLD D. ADAMS<br>Jerrold D. Adams | Director | March 27, 2003 |
| /s/  PAUL R. GUDONIS<br>Paul R. Gudonis | Director | March 27, 2003 |
| /s/  GERALD SEGEL<br>Gerald Segel | Director | March 27, 2003 |
| /s/  GERALD MCGOWAN<br>Gerald McGowan | Director | March 27, 2003 |
| Daniel Somers | Director | March 27, 2003 |

56

## CERTIFICATIONS

I, E. Y. Snowden, certify that:

1. I have reviewed this annual report on Form 10-K of Boston Communications Group, Inc.;

2. Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the registrant and we have:

    a) designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

    b) evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this annual report (the "Evaluation Date"); and

    c) presented in this annual report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

    a) all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and

    b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls; and

6. The registrant's other certifying officers and I have indicated in this annual report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

Date: March 27, 2003                                          /s/  E. Y. SNOWDEN

                                                    E. Y. Snowden
                                        President and Chief Executive Officer

57

I, Karen A. Walker, certify that:

1. I have reviewed this annual report on Form 10-K of Boston Communications Group, Inc.;

2. Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3. Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the registrant and we have:

   a) designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b) evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this annual report (the "Evaluation Date"); and

   c) presented in this annual report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

   a) all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and

   b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls; and

6. The registrant's other certifying officers and I have indicated in this annual report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

Date: March 27, 2003

/s/ KAREN A. WALKER

Karen A. Walker
Vice President, Finance and Administration
and Chief Financial Officer

58

# Exhibit 13



# BOSTON COMMUNICATIONS GROUP REPORTS RECORD EARNINGS AND EXCEEDS EXPECTATIONS FOR THE FIRST QUARTER OF 2003

- **Generated record GAAP Earnings of $0.18 per share for the first quarter (which includes $0.03 per share in legal costs, primarily associated with the Freedom Wireless lawsuit), exceeding Company's guidance**
- **Increased 2003 annual GAAP guidance to $0.78 to $0.80 per share up from $0.52 to $0.58 per share, both of which include $0.12 per share in estimated legal costs**
- **Record first quarter revenues reached $23.1 million, up 53% from the same period a year ago**
- **Added 455,000 net new prepaid subscribers in the first quarter, bringing subscriber count to 3.35 million, up 69% from the first quarter of 2002**
- **Increased average monthly MoUs to 106, a 22% increase over the first quarter of 2002**

**Woburn, MA – April 16, 2003 -** Boston Communications Group, Inc. (Nasdaq: BCGI) today announced that its consolidated GAAP net income for the first quarter ended March 31, 2003 totaled $3.3 million, or $0.18 per share, which includes $915,000 in legal charges, or $0.03 per share after taxes, primarily to defend the Freedom Wireless suit. These record earnings were up 64% sequentially over the 2002 fourth quarter GAAP earnings of $0.11 per share. In the first quarter of 2002, the Company reported a net loss of $1.5 million, or $0.09 per share, which included $3.3 million in pre-tax legal charges, or $0.11 per share. Total revenues for the first quarter increased 53% to $23.1 million from $15.0 million in the first quarter of 2002 and increased 9% from $21.1 million in the fourth quarter of 2002.

## Billing and Transaction Processing Services
Billing and Transaction Processing Services, which include the Company's Prepaid Wireless Services, Voyager Billing and Customer Care, and Payment Services, generated record revenues of $21.1 million in the first quarter of 2003, a 74% increase over the first quarter of 2002 and an 18% increase over the 2002 fourth quarter. The increase in revenues, which have a corresponding low incremental cost, contributed to higher gross margins on Billing and Transaction Processing Services Revenues of 76%, compared to 68% in the first quarter of 2002 and 73% in the fourth quarter of 2002. The higher than expected revenues and corresponding gross margins were principally due to very strong net prepaid subscriber additions of 455,000 for the quarter. Total prepaid subscribers on the platform are now 3.35 million, a 69% increase over March 31, 2002.

"Our outstanding performance for the quarter reflects the solid positioning of our Billing and Transaction Processing Services business. The strength of our prepaid subscriber additions for the quarter continues to validate our carrier customers' success in selling to the under-penetrated youth and budget conscious segments with attractive prepaid customer propositions that are based on solid carrier economics. This year in particular, gross additions across most all of our carrier customer programs continued with nice momentum well beyond the typical end of

holiday promotions. More and more, our carriers are offering a rich consumer experience with postpaid-like features using our real-time rating, billing, and customer care solutions that are generating new growth while reducing operational costs and churn," commented E. Y. Snowden, President and CEO.

## Freedom Wireless Update

During the quarter ended March 31, 2003, the Company incurred $915,000 in legal costs, or approximately $0.03 per share after taxes, primarily for the continued defense of the Freedom Wireless patent infringement suit. These costs are in line with previous guidance and are expected to continue at this level until the matter is resolved. There are no developments to report on the case and exact timing of procedures has not been determined. There has also been no change to the Company's position on the case and *bcgi* remains confident that it does not infringe the Freedom Wireless patents and that the patents are invalid in light of prior art.

## Outlook

"Our tremendous growth in first quarter subscriber additions was the key factor in our earnings growing more than 60% compared to the fourth quarter of 2002. Although we are now entering the seasonally slower second and third quarters, we believe that our carrier's commitment to prepaid and our business model and value proposition will continue to position *bcgi* for growth and healthy profits. As a result, we are raising our annual 2003 earnings guidance," commented Karen A. Walker, Chief Financial Officer.

The Company is raising its 2003 GAAP earnings to $0.78 to $0.80 per share, which includes an estimate of $0.12 per share in legal costs primarily to defend the Freedom Wireless lawsuit. This guidance is more than four times higher than the Company's 2002 annual GAAP earnings of $0.19 per share. For the second quarter of 2003, the Company anticipates GAAP earnings of $0.19 to $0.20 per share, which includes $0.03 per share in estimated legal costs. "Our business model continues to be validated and our overall financial position, with $48.6 million in cash and investments and no debt, gives us the strength to capitalize on weaknesses across the telecommunications industry. This is evidenced by our recent building purchase that will initially house our second data center and our ability to continue to attract and retain top talent across our organization," commented Ms. Walker.

Mr. Snowden concluded, "We are obviously very pleased with our performance for the quarter and as a leader in real-time billing and transaction processing services, we feel that we are well positioned to continue to execute on our business plan. By serving both the largest national carriers and the smaller regional U.S. carriers who have just begun to gain momentum with their prepaid offerings, we look forward to continuing to competently provide them the best platform to demonstrate competitive success in a challenging industry."

The Company will be holding a conference call and Webcast at 5:00PM on Wednesday, April 16, 2003 to discuss results for the period ended March 31, 2003 and management's outlook. The Company's President and CEO, E.Y. Snowden, and Chief Financial Officer, Karen A. Walker, will host the call. Parties interested in listening to the call should dial 1-800-423-5972 at least 10 minutes prior to the start of the call. For those unable to participate at the designated time, a replay will be available for 30 days following the call via telephone at 1-800-642-1687 (conf id 9584673) and for one year on the web at www.bcgi.net.

## ABOUT THE COMPANY

Boston Communications Group, Inc. (NASDAQ: BCGI), an S&P Small Cap 600 Index company and Russell 2000 Index company, is a leader in transaction processing solutions for real-time wireless subscriber management, payment services, billing and customer care. Through these solutions, *bcgi* delivers prepaid and postpaid billing, ATM recharge, mobile commerce and other payment services. Founded in 1988, *bcgi* provides solutions to carriers through a combination of industry-leading proprietary software applications, a highly scalable transaction processing platform, and its end-to-end implementation model. Through this nationwide real-time infrastructure, *bcgi* provides one or more of its services to approximately 70 wireless carriers and resellers, including five of the top six national carriers. *bcgi* handles more than four billion minutes of service a year. Please visit the *bcgi* Web site at http://www.bcgi.net.

## CAUTIONARY STATEMENT REGARDING FORWARD-LOOKING STATEMENTS

This press release contains, in addition to historical information, forward-looking statements that involve risks and uncertainties including statements regarding earnings per share estimates and estimates of future legal expenses. Such statements are based on management's current expectations and are subject to a number of uncertainties and risks that could cause actual results to differ materially from those described in the forward-looking statements. Among the important factors that would cause actual results to differ materially from those indicated by such forward looking statements are the loss of a customer or certain of their markets, specifically, Verizon Wireless and Cingular Wireless who represented 51% and 27%, respectively, of the Company's consolidated revenues for the three months ended March 31, 2003, or greater than expected pricing reductions from major carrier customers, an unfavorable judgment in the Freedom Wireless suit which could result in substantial damages and could significantly restrict *bcgi's* ability to conduct business, as well as the others factors that may affect future operating results detailed in *bcgi's* annual report on Form 10-K for the year ended December 31, 2002 filed with the Securities and Exchange Commission.

| Company Contact: | FRB\Weber Shandwick NY: |
|---|---|
| Dan Brosnan<br>Investor Relations - *bcgi*<br>(781) 904-5410<br>email: dbrosnan@bcgi.net | Alison Ziegler, General Inquiries (212) 445-8432<br>Peter Seltzberg, Investor Inquiries (212) 445-8457 |

## BOSTON COMMUNICATIONS GROUP, INC.
### CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS
**(In thousands, except per share amounts)**

|  | Three Months Ended | |
|---|---|---|
|  | 3/31/03 | 3/31/02 |
|  | (Unaudited) | |
| **Revenues:** | | |
| Billing and transaction processing services | $21,074 | $12,139 |
| Roaming services | 937 | 1,583 |
| System sales | 1,056 | 1,320 |
|  | 23,067 | 15,042 |
| **Expenses:** | | |
| Cost of billing and transaction processing revenues | 4,990 | 3,869 |
| Cost of roaming services revenues | 914 | 1,452 |
| Cost of system revenues | 567 | 703 |
| Total cost of revenues | 6,471 | 6,024 |
| Gross margin | 16,596 | 9,018 |
| Engineering, research and development | 2,869 | 1,973 |
| Sales and marketing | 1,567 | 1,129 |
| General and administrative | 1,885 | 1,418 |
| General and administrative – legal expense (1) | 915 | 3,297 |
| Depreciation and amortization | 4,392 | 4,128 |
| Total operating expenses | 11,628 | 11,945 |
| Operating income (loss) | 4,968 | (2,927) |
| Interest income | 336 | 411 |
| Income (loss) before income taxes | 5,304 | (2,516) |
| Provision (benefit) for income taxes | 2,016 | (1,006) |
| Net income (loss) | $3,288 | $(1,510) |
| **Basic Net Income (Loss) Per Share:** | | |
| Net income (loss) | $0.19 | ($ 0.09) |
| Weighted average common shares outstanding | 17,479 | 17,157 |
| **Diluted Net Income (Loss) Per Share:** | | |
| Net income (loss) | $0.18 | ($ 0.09) |
| Weighted average common shares outstanding | 18,340 | 17,157 |

Notes to Condensed Consolidated Statements of Operations:

(1) General and administrative – legal expenses consists of $915,000 and $3.3 million for the three months ended March 31, 2003 and 2002, respectively, primarily for legal fees to defend the patent infringement suit brought by Freedom Wireless.

## SEGMENT INFORMATION
### ($ in thousands and unaudited)

| Quarter ended March 31, | Billing and Transaction Processing Services | Roaming Services | Systems | Total |
|---|---|---|---|---|
| **2003** | | | | |
| Revenues | $21,074 | $937 | $1,056 | $23,067 |
| Gross margin | 16,084 | 23 | 489 | 16,596 |
| Gross margin percentage | 76% | 2% | 46% | 72% |
| | | | | |
| **2002** | | | | |
| Revenues | $12,139 | $1,583 | $1,320 | $15,042 |
| Gross margin | 8,270 | 131 | 617 | 9,018 |
| Gross margin percentage | 68% | 8% | 47% | 60% |

## CONDENSED CONSOLIDATED BALANCE SHEET DATA
### (in thousands and unaudited)

| ASSETS | March 31 2003 | December 31, 2002 |
|---|---|---|
| Current assets: | | |
| Cash and short-term investments | $48,593 | $55,075 |
| Accounts receivable, net of allowance for billing adjustments and doubtful accounts of $1,065 in 2003 and $966 in 2002 | 18,132 | 15,739 |
| Prepaid expenses and other assets | 3,306 | 2,328 |
| Deferred income taxes | 1,603 | 1,603 |
| Total current assets | 71,634 | 74,745 |
| | | |
| Property and equipment, net | 55,099 | 44,896 |
| | | |
| Goodwill and other assets | 5,085 | 5,114 |
| Total assets | $131,818 | $124,755 |
| | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable and accrued expenses | $20,819 | $19,564 |
| Total current liabilities | 20,819 | 19,564 |
| | | |
| Deferred income taxes | 3,452 | 3,452 |
| | | |
| Shareholders' equity: | | |
| Common stock and additional paid-in capital | 103,173 | 100,653 |
| Retained earnings | 4,374 | 1,086 |
| Total shareholders' equity | 107,547 | 101,739 |
| Total liabilities and shareholders' equity | $131,818 | $124,755 |

# # #

# Exhibit 14

**BCGI**
**First Quarter Earnings Release Conference Call**
**Leader, Ely Snowden**
**ID #9584673**
**04/16/03**

**Date of Transcription:   April 19, 2003**

**BCGI**
**ID #9584673**
                                                                **Page 2**

Operator:

Good afternoon. My name is Amanda and I will be your conference facilitator. At this time I would like to welcome everyone to BCGI First Quarter Earnings Release Conference Call. All lines have been placed on mute to prevent any background noise.

After the speakers' remarks, there will be a question and answer period. If you would like to ask a question during this time, simply press star, then the number one on your telephone keypad. If you would like to withdraw your question, press star, then the number two. Thank you. Ms. Nicholas, you may begin your conference.

Ms. Nicholas:

Good afternoon. By now you should have had a chance to view today's press release. If anyone still needs a copy, please call us at 212-445-8453 and request a fax or e-mail. Alternatively, you can view and download the release at the Boston Communications Group corporate website at www.bcgi.net. On the line with us today are Ely Snowden, President and CEO, and Karen Walker, Chief Financial Officer of Boston Communications Group.

Please note that management is happy to speak privately with investors and analysts regarding overall strategy, industry trends and historical issues. However, more specific questions regarding updates on financial guidance or other material information will only be discussed on widely disseminated press releases or via open conference calls such as the one being held today.

I would also like to caution everyone that various remarks that the company may make about the company's future expectations, plans and prospects constitute forward-looking statements for purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by these forward-looking statements as a result of various important factors including those discussed in Form 10-K for the year ended December 31, 2002, which is on file with the SEC. In addition, any forward-looking statements represent our views only as of today, April 16, 2003, and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to do so even if our estimates change, and therefore you should not rely on these forward-looking statements as

**BCGI**
**ID #9584673**                                                                          **Page 3**

|                    |                                                                          |
|--------------------|--------------------------------------------------------------------------|
|                    | representing our views as of any subsequent dates.  Now without further delay, I would like to turn the call over to Ely Snowden. Please go ahead, Ely. |
| Mr. Snowden:       | Thank you, Allison.  And again, welcome to  Boston Communications Group First Quarter 2003 Conference Call. We're happy to be talking with you today about yet another record-breaking quarter with outstanding financial results, success in strategic goals, and unprecedented momentum.  A quarter ago amongst all the good financial news we had to talk about on our last conference call, the one element that I chose to single out was the top line.  If you recall, our fourth quarter 2002 year over year revenue growth of almost 50% for the enterprise as a whole, and more than 60% in our billing and transaction processing services business, stood out in the slower growing wireless industry as testimony to the strong position that our customers' products targeting teams(?), budget conscious and credit challenge had captured in their overall product portfolios.  This quarter I am even happier to note that the top line is accelerating with year over year revenue growth of 53% for the enterprise, and 74% in our billing and transaction processing services business.  And why not? We're helping the best carriers in America by giving them the tools to unlock the potential of the highest growth opportunities left in wireless, and to profitably serve them with lower operating costs. It is this complete package of BCGI's capabilities that is helping our carrier customers to achieve the best of quantity and quality. And each of quantity and quality are evident in two of the important record-breaking metrics for our prepaid business this quarter.  Quarter end subscribers of 3.35 million, a 69% increase over a year ago, March 31, 2002, and average usage per subscriber of 106 minutes per month, up another 22% from the first quarter of 2002. |
|                    | A particularly pleasant surprise this quarter was the sustained growth we experienced as growth additions across most all of our carrier customer programs continued with nice momentum well beyond the typical end of holiday promotion.  This could be attributed to the concept we've discussed before.  That the prepaid product category has become a much more central part of our carriers' product portfolios.  A very good example of this is a brand new promotion going on right now where Cingular Wireless and McDonald's are promoting KIC, Keep in Contact, Cingular's |

**BCGI**
**ID #9584673**

**Page 7**

depreciated during the quarter. Capital expenditures totaled 14.6 million dollars for the quarter, which includes about 9.0 million dollars for the purchase of our building.

Our balance sheet continues to remain strong with cash and short-term investments of about 49 million dollars as of March 31st, and our DSO was within target at 73 days compared to 69 days at December 31st.

I'd now like to spend some time talking in more detail about our outlook for the remainder of 2003. As noted in the release, we are increasing our GAAP earnings guidance to 78 to 80 cents per share, which includes after-tax quarterly legal charges of approximately three cents per share until the Freedom Wireless matter is resolved. This compares to our previous GAAP guidance of 52 to 58 cents, and is more than 4X '02 GAAP earnings. I should note that we remain confident that we do not infringe on the Freedom Wireless patents, and that the patents are invalid in light of prior art. During this year, the court has been conducting procedures which are standard for patent cases, and the completion of these procedures dictate the timing of our summary judgment motions and other procedures regarding the case. As we have stated in the past, we expected to file summary judgment motions sometime during this quarter and hear the results of those motions at a later date. Although this may still happen, there are no firm dates or schedules as to when motions can be filed and then decided upon. Thus, although we believe that our case continues to progress well, and that there's been no change to our position in the case, there are no developments to report at this time.

For the second quarter of '03 we expect GAAP earnings to range between 19 to 20 cents per share, including legal charges of three cents per share. This guidance reflects continued growth in BTPS, although at lower levels as we enter the seasonally slow second and third quarters. Our guidance continues to reflect our investment in payment services, which we expect to be one to two cents per share, per quarter for the near term. In addition, it reflects additional operating costs to own and move our data center into the new building. As we highlighted in our March 14th press release announcing the purchase of our Bedford building, the long-term economics of this facility are extremely attractive, and its premier, high-end telecommunications, electrical and mechanical equipment

# Exhibit 15

10-Q 1 d10q.htm FORM 10-Q

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

## FORM 10-Q

☒    **Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**For the quarterly period ended March 31, 2003**

or

☐    **Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**Commission file number: 0-28432**

# Boston Communications Group, Inc.

(Exact name of registrant as specified in its charter)

| Massachusetts | 04-3026859 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**100 Sylvan Road, Woburn, Massachusetts 01801**

(Address of principal executive offices)

**Registrant's telephone number, including area code: (781) 904-5000**

(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

Yes ☒    No ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)

Yes ☒    No ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date.

As of May 7, 2003 the Company had outstanding 18,059,848 shares of common stock, $.01 par value per share.

Table of Contents

<div align="center">

**INDEX**

</div>

**PART I.   FINANCIAL INFORMATION:**

Item 1.   Financial Statements (Unaudited)

        Condensed Consolidated Balance Sheets
        Condensed Consolidated Statements of Operations
        Condensed Consolidated Statements of Cash Flows
        Notes to Condensed Consolidated Financial Statements

Item 2.   Management's Discussion and Analysis of Financial Condition and Results of Operations

        Certain Factors That May Affect Future Results

Item 3.   Quantitative and Qualitative Disclosures About Market Risk

Item 4.   Controls and Procedures

**PART II.   OTHER INFORMATION:**

Item 1.   Legal Proceedings

Item 6.   Exhibits and Reports on Form 8-K

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding annual earnings per share, our continued investment in our payment services business, the expected increase in subscriber base, average billed minutes of use and billing and transaction processing services revenues, pricing discounts for carriers, billing and transaction processing services gross margins, decreases in roaming services revenues, increases in engineering, research and development expenditures, sales and marketing expenses, decreases in general and administrative expenses, legal expenses for the Freedom Wireless lawsuit, increases in depreciation and amortization expense, decreases in interest income and increases in capital investments. These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

<div align="center">2</div>

Table of Contents

Had compensation expense for the Company's stock plans been recorded consistent with SFAS No. 123, the pro forma net income (loss) and net income (loss) per share would have been as follows for the three months ended March 31:

|  | 2003 | 2002 |
|---|---|---|
|  | (in thousands, except per-share information) | |
| Net income (loss) as reported | $ 3,288 | $ (1,510) |
| Add: Stock-based employee compensation expense included in reported net income (loss) | — | — |
| Deduct: Total stock based employee compensation expense determined under fair value based method for all awards, net of tax benefit | 644 | 628 |
| Pro forma net income (loss) | $ 2,644 | ($ 2,138) |
| Basic net income (loss) per share: |  |  |
| As reported | $ 0.19 | $ (0.09) |
| Pro forma | $ 0.15 | $ (0.12) |
| Diluted net income (loss) per share: |  |  |
| As reported | $ 0.18 | $ (0.09) |
| Pro forma | $ 0.14 | $ (0.12) |

## 3. Contingencies

*Legal*

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that the Company infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art in addition to other meritorious defenses to the action.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by its outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable discovery process, which has made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, the Company began accounting for costs related to this case as incurred. As a result, in the fourth quarter of 2002 and the first quarter of 2003, the Company recorded a charge of $998,000 and $915,000, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless.

Since the timing of ongoing court proceedings is not firmly fixed, the Company expects to continue to spend up to approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed its estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.

In December 1999, Crystal, Inc., a former supplier of one of the Company's subsidiaries filed a suit against the Company in United States District Court for the Northern District of Iowa. The suit alleged breach of contract, misappropriation of trade secrets, tortious interference with contracts, and fraudulent misrepresentation and sought an injunction and damages in excess of $1 million. The claims for misappropriation of trade secrets and tortious interference with contracts and the claim for injunction were

8

---

Table of Contents

voluntarily dismissed. The court granted summary judgment in favor of the Company on the breach of contract claim. Trial on the remaining claim of fraudulent misrepresentation was scheduled for late May of 2003. On May 1, 2003, the Company entered into a settlement agreement in which the Company agreed to pay $162,500 to Crystal in exchange for dismissal of the lawsuit. The Company's accrued expenses at March 31, 2003 include amounts to pay this settlement.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than as disclosed) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

*Indemnifications*

In November 2002, the FASB issued Interpretation No. 45 *Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others* (FIN 45), which requires certain guarantees to be recorded at fair value as opposed to the current practice of recording a liability only when a loss is probable and reasonably estimable. FIN 45 also requires a guarantor to make significant new guaranty disclosures, even when the likelihood of making any payments under the guarantee is remote. The Interpretation's initial recognition and initial measurement provisions are applicable on a prospective basis to guarantees issued or modified after December 31, 2002.

The Company has agreed to indemnification provisions in certain of its agreements with customers and its leases of real estate in the ordinary course of its business.

With respect to customer agreements, these provisions generally obligate the Company to indemnify the customer against losses, expenses, liabilities and damages that may be awarded against the customer in the event the Company's systems or services infringe upon a patent or other intellectual property right of a third party. The agreements generally limit the scope of and remedies for such indemnification obligations in certain respects, including but not limited to geographical limitations, the right to replace or modify an infringing product or service, and the right to terminate the agreement and refund a portion of the original purchase price if a remedy is not commercially practical. The Company believes its internal development processes and other policies and practices limit its exposure related to the indemnification provisions of these agreements. In addition, the Company requires its employees to sign confidentiality and rights in work product agreements, which assign the rights to its employees' development work to the Company.

With respect to real estate leases, these indemnification provisions typically apply to claims asserted against the landlord by a third party relating to personal injury and property damage occurring at the leased premises or to certain breaches of the Company's contractual obligations. The term of these indemnification provisions generally survive the termination of the lease, although the exposure is greatest during the lease term and for a short period of time thereafter. The maximum potential amount of future payments that the Company could be required to make under these indemnification provisions is unlimited. The Company has purchased insurance that reduces the amount of such exposure for landlord indemnifications. The Company has never paid any amounts to defend lawsuits or settle claims related to these landlord indemnification provisions. Accordingly, the Company believes the estimated fair value of these indemnification arrangements is minimal.

## 4. Earnings (Loss) Per Share

The following table sets forth the computation of basic and diluted net income (loss) per share for the three months ended (in thousands, except per share amounts):

9

EX-99.1 3 dex991.htm CHIEF EXECUTIVE OFFICER CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350

**Exhibit 99.1**

**CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,**
**AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended March 31, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, hereby certifies, pursuant to 18 U.S.C. Section 1350, that:

(1)  the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

Date: May 15, 2003                                 /s/  E.Y. SNOWDEN

                                                   E.Y. Snowden
                                                   President and Chief Executive Officer

EX-99.2 4 dex992.htm CHIEF FINANCIAL OFFICER CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350

Exhibit 99.2

**CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended March 31, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certifies, pursuant to 18 U.S.C. Section 1350, that:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

Date: May 15, 2003

/s/  KAREN A. WALKER
_____

Karen A. Walker
Vice President, Finance and Administration and Chief Financial Officer

# Exhibit 16

**BCGI**
**BCGI 2nd Quarter Earnings Call**
**Leader, E.Y. Snowden**
**ID#1556222**
**07/16/03**

**Date of Transcription:   June 7, 2005**

BCGI
ID#1556222

| | |
|---|---|
| Operator: | Good afternoon.  My name is Katina and I will be your conference facilitator today.  At this time I would like to welcome everyone to the Boston Communications Group Second Quarter 2003 earnings conference call. All lines have been placed on mute to prevent any background noise.  After the speaker's remarks there will be a question and answer period.  If you would like to ask a question during this time, simply press star then the number one on your telephone keypad.  If you would like to withdraw your question, press star and then the number two on your telephone keypad.  Thank you. |
| | Mr. Saltzburg you may begin your conference. |
| Peter Saltzburg: | Thanks.  By now you should have all had the chance to view today's press release, but if anyone still needs a copy please call us at 212.445.8453 and request a fax or E-mail alternatively view and download it at Boston Communications Group's corporate web site www.bcgi.net. |
| | On the line with us today are E.Y. Snowden, President and CEO; Karen Walker, Chief Financial Officer of Boston Communications Group. |
| | Please note that management is happy to speak privately with investors and analysts regarding overall strategy, industry trends and historical issues, however more specific questions regarding updates and financial guidance or other material information will only be discussed in widely disseminated press releases or by open conference call such as the one being held today. |
| | I would also like to caution everyone that various remarks that the company might make about the company's future expectations, plans and prospects constitute forward-looking statements for the purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995.  Actual results may differ materially from those indicated by those forward-looking statements as the result of various important factors, including those discussed in the Form 10-Q for the three months ended March 31, 2003 and Form 10-K for the year ended December 31, 2002, which are on file with the SEC. |


**BCGI**
**ID#1556222**

**Page 3**

In addition any forward-looking statements represent our view only as of today and should not be relied upon as representing our views as of any subsequency [sic]. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to these even if our estimates change and, therefore, you should not rely on these forward-looking statements as representing our views as of any date subsequent to today.

Now without further delay I would like to turn the call over to E.Y. Snowden. Please go ahead E.Y.

E.Y. Snowden:

Thank you Peter and again welcome to Boston Communication Group's Second Quarter 2003 conference call.

We will be talking with you today about another record breaking quarter at BCGI as well as an update on our Verizon Wireless contract negotiations. For the second quarter of 2003 our record results include record GAAP earnings per share of $0.22; up 183% from the second quarter of last year. Corporate revenues of $26.4 million; up 53% from second quarter 2002; billing and transaction processing services revenues of $24.1 million up 68% from a year ago. Average uses per subscriber of 113 minutes per month, up 19% from second quarter '02; and a customer base of 3.58 million subscribers, up 64% from June 30, 2002. As a result of this strong performance the company's financial condition has never been stronger.

As we have stated in public disclosures our contract with Verizon wireless is scheduled to be renegotiated in 2003. During the course of our contract renegotiation we were asked to attend a meeting late Friday afternoon at Verizon Wireless offices and during the meeting we were given a formal request intended to become an addendum to our contract to provide support services to assist Verizon Wireless in testing its own internal prepaid platform in 2004.

While they did not intend to make a public announcement of this, they stated that we were free to, as long as they approved any language we would use. Today we received that approval for the language in this press release.

BCGI
ID#1556222

Page 7

business. I should note that our execution on our move to our second data center in our new building has been first rate and on time. We continue to be very excited and pleased about the infrastructure and resources that our new facilities bring us, as well as the long term positive economics.

Capital expenditures totaled $8.9 million for the quarter bringing our year-to-date total to $23.5 million. Our balance sheet continues to remain strong with cash and short term investments of about $56 million as of June 30th and no debt.

Cash increased due to our strong profits as well as a substantial decrease in DSO from 73 days to 64 days at June 30th, much better than our expected target and caused by the timing of some large receipts at the end of the quarter.

Our working capital also increased by about $6 million due principally to accounts payable related to capital purchases that were received near the end of the quarter and not yet paid for.

I would now like to spend some time talking in more detail about our outlook for the remainder of 2003. As noted in today's release we are increasing our GAAP earnings guidance to $0.87-$0.88/share compared with our previous guidance of $0.78-$0.80/share. This guidance includes after tax quarterly legal charges of approximately $0.03/share until the Freedom Wireless matter is resolved.

We remain confident that we do not infringe the Freedom Wireless patents and that the patents are invalid and unenforceable in light of prior art and other reasons. At the appropriate time we expect to file summary judgment motions, but the specific timing as to when motions can be filed and then decided upon is not definitive. We believe that our case continues to progress well and there has been no change to our position in the case.

For the third quarter of '03 we expect GAAP earnings to range between $0.23 and $0.24/share including the legal charges of $0.03/share. This guidance reflects growth and BTPS, which is tempered by our traditional seasonally slow third quarter. Our guidance also continues to reflect our investment in our payment services business. Our revised guidance reflects expected year-

**BCGI**
**ID#1556222**

**Page 18**

| | |
|---|---|
| Carlo Kinnell: | I had some questions on the lawsuit. Is Verizon currently named in this Freedom Wireless lawsuit? |
| Karen Walker: | They and a number of our carrier customers are yes. |
| Carlo Kinnell: | Could you summarize some of the other carriers that are named? |
| Karen Walker: | Oh I believe Verizon, Cingular, AT&T Wireless. I think Rogers AT&T was removed from the case. Those are the big ones Carlo. |
| E.Y. Snowden: | I recall the case dated three years ago and I think they in essence looked at our customer list and named everyone they saw. |
| Carlo Kinnell: | In your estimation with their internalization, the prepaid system, increase or decrease the merit of their defense? |
| E.Y. Snowden: | It is not really appropriate for us to comment on the case broadly. Only this I will say, which is I think a fair public statement that as we have been battling this lawsuit it has been on the fundamental premise that our counsel and even other counsel we have retained to research this issue has found that in fact we don't in fringe these patents. And not only do we not infringe them, but they are invalid in light of priority, etc. The non-infringement is based upon the definition of the patent's claim. If we lose this suit it could only be because a court upholds a definition for those claims that is broader than what our counsel believes to be the case. And if that broader definition in fact were supported in the lawsuit, there isn't a prepaid platform that uses switches to help route calls for prepaid treatment that wouldn't be subject to a patent. |
| Carlo Kinnell: | Thus far in the discovery are you finding that the claims by Freedom are discriminatory, in other words, AT&T potential amount would be ten times that of BCGI, do you have any knowledge to that effect? |
| Karen Walker: | I am not aware of anything of that nature. |
| Carlo Kinnell: | Okay and a separate question: do you have any estimation of the capital expenditure that Verizon has spent to develop this fledging system and what they might have to spend to replicate what BCGI has spent? |

# Exhibit 17

10-Q 1 d10q.htm FORM 10-Q

· **Table of Contents**

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

---

# FORM 10-Q

☒    **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the quarterly period ended June 30, 2003

or

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934**

### Commission file number: 0-28432

---

# Boston Communications Group, Inc.
#### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Massachusetts** | **04-3026859** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

### 100 Sylvan Road, Woburn, Massachusetts 01801
#### (Address of principal executive offices)

### Registrant's telephone number, including area code: (781) 904-5000
#### (Former name, former address, former fiscal year, if changed since last report)

---

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☒    No ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2) YES ☒    NO ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date.

As of August 6, 2003 the Company had outstanding 18,191,335 shares of common stock, $.01 par value per share.

Table of Contents

INDEX

PART I.  FINANCIAL INFORMATION:

Item 1.  Financial Statements (Unaudited)

Condensed Consolidated Balance Sheets                                              3
Condensed Consolidated Statements of Operations                                   4
Condensed Consolidated Statements of Cash Flows                                   5
Notes to Condensed Consolidated Financial Statements                              6

Item 2.  Management's Discussion and Analysis of Financial Condition and Results of Operations

Certain Factors That May Affect Future Results                                    20

Item 3.  Quantitative and Qualitative Disclosures About Market Risk               24

Item 4.  Controls and Procedures                                                  24

PART II.  OTHER INFORMATION:

Item 1.  Legal Proceedings                                                        25

Item 4.  Submission of Matters to a Vote of Security Holders                      26

Item 6.  Exhibits and Reports on Form 8-K                                         26

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding annual earnings per share, our continued investment in our payment services business, the expected increase in subscriber base, average monthly billed minutes of use per subscriber (includes minutes of use processed by our platform from which we earn revenues), growth of our billing and transaction processing services revenues, pricing discounts for carriers, billing and transaction processing services gross margins, decreases in roaming services revenues, engineering, research and development expenditures, sales and marketing expenses, general and administrative expenses, legal expenses for the Freedom Wireless lawsuit, increases in depreciation and amortization expense, decreases in interest income and additional capital investments. These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

2

Table of Contents

Issued to Employees" (APB 25) and related Interpretations in accounting for its stock-based compensation plans, rather than the alternative fair value method under Statement of Financial Accounting Standards No. 123, "Accounting for Stock-Based Compensation (FAS 123)." Under APB 25, since the exercise price of options granted under these plans equals the fair market price of the underlying stock on the date of grant, the Company recognizes no compensation expense for stock option grants.

Had compensation expense for the Company's stock plans been recorded consistent with FAS 123, the pro forma net income (loss) and net income (loss) per share would have been as follows for the three and six months ended June 30:

|  | Three months ended June 30, | | Six months ended June 30, | |
| --- | --- | --- | --- | --- |
|  | 2003 | 2002 | 2003 | 2002 |
| Net income (loss) as reported | $4,087 | $1,445 | $7,375 | $ (65) |
| Add: Stock-based employee compensation expense included in reported net income (loss) | — | — | — | — |
| Deduct: Total stock based employee compensation expense determined under fair value based method for all awards, net of tax benefit | 655 | 620 | 1,299 | 1,248 |
| Pro forma net income (loss) per share: | $3,432 | $ 825 | $6,074 | $(1,313) |
| Basic net income (loss) per share: |  |  |  |  |
| As reported | $ 0.23 | $ 0.08 | $ 0.42 | $ 0.00 |
| Pro forma | $ 0.19 | $ 0.05 | $ 0.34 | $ (0.08) |
| Diluted net income (loss) per share: |  |  |  |  |
| As reported | $ 0.22 | $ 0.08 | $ 0.40 | $ 0.00 |
| Pro forma | $ 0.18 | $ 0.05 | $ 0.33 | $ (0.08) |

3.   **Contingencies**

Legal

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. A ruling that the Company infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by its outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which has made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, the Company began accounting for costs related to this case as incurred. As a result, in the fourth quarter of 2002, the first quarter of 2003 and the second quarter of 2003, the Company recorded charges of $998,000, $915,000 and $725,000, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless.

Since the timing of ongoing court proceedings is not firmly fixed, the Company expects to continue to spend up to approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved.

8

Table of Contents

There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed its estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than those matters that have been specifically disclosed by the Company in its SEC filings) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

Indemnifications

In November 2002, the FASB issued Interpretation No. 45 *Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others* (FIN 45), which requires certain guarantees to be recorded at fair value as opposed to the previous practice of recording a liability only when a loss is probable and reasonably estimable. FIN 45 also requires a guarantor to make significant new guaranty disclosures, even when the likelihood of making any payments under the guarantee is remote. The Interpretation's initial recognition and initial measurement provisions are applicable on a prospective basis to guarantees issued or modified after December 31, 2002.

The Company has agreed to indemnification provisions in certain of its agreements with customers and its leases of real estate in the ordinary course of its business.

With respect to customer agreements, these provisions generally obligate the Company to indemnify the customer against losses, expenses, liabilities and damages that may be awarded against the customer in the event the Company's systems or services infringe upon a patent or other intellectual property right of a third party. The agreements generally limit the scope of and remedies for such indemnification obligations in certain respects, including but not limited to geographical limitations and the right to replace or modify an infringing product or service. The Company believes its internal development processes and other policies and practices limit its exposure related to the indemnification provisions of these agreements. Accordingly, the Company believes the estimated fair value of these indemnification arrangements is minimal.

With respect to real estate leases, these indemnification provisions typically apply to claims asserted against the landlord by a third party relating to personal injury and property damage occurring at the leased premises or to certain breaches of the Company's contractual obligations. The term of these indemnification provisions generally survive the termination of the lease, although the exposure is greatest during the lease term and for a short period of time thereafter. The maximum potential amount of future payments that the Company could be required to make under these indemnification provisions is unlimited. The Company has purchased insurance that reduces the amount of such exposure for landlord indemnifications. The Company has never paid any amounts to defend lawsuits or settle claims related to these landlord indemnification provisions. Accordingly, the Company believes the estimated fair value of these indemnification arrangements is minimal.

**4.    Earnings Per Share**

The following table sets forth the computation of basic and diluted net income per share for:

9

EX-31.1 4 dex311.htm CERTIFICATION OF CHIEF EXECUTIVE OFFICER
**Exhibit 31.1**

<u>CERTIFICATIONS</u>

E. Y. Snowden, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2.  Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3.  Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b)  [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    c)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent function):

    a)  all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: August 14, 2003

/s/ E. Y. Snowden
_____
E. Y. Snowden
President and Chief Executive Officer

EX-31.2 5 dex312.htm CERTIFICATION OF CHIEF FINANCIAL OFFICER

**Exhibit 31.2**

I, Karen A. Walker, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report; registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b) [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

   c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent function):

   a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: August 14, 2003                                    /s/ Karen A. Walker
                                                         _____

                                                         Karen A. Walker
                                                         Vice President, Finance and Administration and
                                                         Chief Financial Officer

EX-32 6 dex32.htm CERTIFICATION OF CHIEF EXECUTIVE OFFICER AND CHIEF FINANCIAL OFFICER

**Exhibit 32**

CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended June 30, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

    (1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

    (2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: August 14, 2003                          /s/ E.Y. Snowden
                                               _____
                                               E.Y. Snowden
                                               President and Chief Executive Officer

Date: August 14, 2003                          /s/ Karen A. Walker
                                               _____
                                               Karen A. Walker
                                               Vice President, Finance and Administration and
                                               Chief Financial Officer

    A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 18

**BCGI**
**BCGI Third Quarter Earnings Call**
**Leader, Dan Brosnan**
**ID# 3127195**
**10/15/03**

**Date of Transcription:   October 17, 2003**

BCGI
ID# 3127195                                                                                      **Page 2**

Operator:                    Good afternoon. My name is Leshaunda, and I will be your
                             conference facilitator today. At this time I would like to welcome
                             everyone to the BCGI Third Quarter Earnings Conference Call. All
                             lines have been placed on mute to prevent any background noise.
                             After the speakers' remarks, there will be a question and answer
                             period. If you would like to ask a question during this time, simply
                             press star (*), then the number one on your telephone keypad. If
                             you would like to withdraw your question, press the pound (#) key.

                             Thank you, Mr. Seltzberg. You may begin your conference.

Mr. Seltzberg:               Good afternoon. By now you should have all had a chance to view
                             today's press release, but if anyone still needs a copy, please call us
                             at (212) 445-8453 and request a fax or email. Alternatively, view
                             and download it at the Boston Communications corporate web site,
                             www.BCGI.net. On the line today are E.Y. Snowden, president
                             and CEO; Karen Walker, chief financial officer of Boston
                             Communication Group.

                             Please note that management is happy to speak privately with
                             investors and analysts regarding overall strategy, industry trends,
                             and historical issues; however, more specific questions regarding
                             updates on financial guides or other material information will only
                             be discussed on widely disseminated press releases or by open
                             conference calls, such as the one being held today. I'd also like to
                             caution everyone that various remarks that the Company may make
                             about the Company's future expectations, plans, and prospects
                             constitute forward-looking statements for purposes of the Safe
                             Harbor Provision under the Private Securities Litigation Reform
                             Act of '95. Actual results may differ materially from those
                             indicated by those forward-looking statements as a result of various
                             important facts, including those discussed in the Form 10-Q for the
                             three months ended June 30th, 2003, and Form 10-K for the year
                             ended December 31st, 2002, which are on file with the SEC.

                             In addition, any forward-looking statements represent our views
                             only as of today and should not be relied upon as representing our
                             views as of any subsequent date. While we may elect to update
                             forward-looking statements at some point in the future, we
                             specifically disclaim any obligation to do so, even if our estimates
                             change and therefore you should rely – you should not rely on
                             those forward-looking statements as representing our views as of

**BCGI**
**ID# 3127195**

**Page 3**

any date subsequent to today.

And now without further delay, I'd like to now turn the call over to E.Y. Snowden. Please go ahead, E.Y.

Mr. Snowden:

Thank you, Peter. Again, welcome to Boston Communication Group's third quarter 2003 conference call. We're pleased to be talking with you today about coming out of the seasonally slowest part of the year with our third consecutive quarter of record breaking earnings and another quarter of record breaking revenue. Our GAAP earnings per share of $0.23 were up 183% over the prior year's third quarter. Corporate revenues of 27.5 million were up 59% over the third quarter of 2002, and this translated directly into 5.2 million of free cash flow, bolstering BCGI's already strong balance sheet to record financial strength of 61.5 million in cash and investments.

The historically weak seasonality of the third quarter of the year was evident in our net subscriber growth. While we had anticipated somewhat lower gross adds and higher churn due to the seasonality and had given modest net subscriber addition guidance for the quarter, this quarter's average monthly churn rate of 9.6% was higher than expected. Up from 8.0% last quarter, the increased churn had the results of offsetting the expected net additions, causing our subscriber count to remain flat at 3.58 million. This churn rate was still below last year's third quarter of 9.7% per month, but we believe our expectations for further improvement this summer were affected by the prolonged holiday gross adds that took place throughout the first quarter of this year and their related lagged churn.

To understand the impact this had with a subscriber base of nearly 3.6 million, if the churn rate this quarter had increased from 8% to, say, 9% instead of 9.6%, we would have had over 60,000 net adds, well within our guidance.

Just as in the last two years, the summer season's effect on usage caused our average billed minutes of use per subscriber to remain flat with the second quarter, this year at 113 per month. That usage is up 19% over the same period a year ago, continuing to

$10 million, principally from cash generated from operations. Now I'd like to spend some time talking in more detail about our outlook for the fourth quarter. At this time we will not be providing annual guidance for 2004; however, we will be providing quarterly guidance until we gain more clarity on our Verizon relationship and announce new business opportunities.

As noted in today's release, we are reiterating our 2003 GAAP earnings guidance of 87 to $0.88 a share. This guidance includes after-tax legal charges of approximately 13 to $0.14 per share. For the fourth quarter of 2003 we expect GAAP earnings to range between 24 and $0.25 a share, including legal charges of approximately three to $0.04 a share. We expect that our growth in earnings will continue to be generated from our BTPS products and will be offset by a more typical quarter of revenues and profits in our systems business.

Although our legal expenses for Freedom Wireless were higher due to the timing of certain procedures that took place during the quarter, on average we have incurred about what we expected at a million dollars per quarter year to date.

Going forward, we expect to continue to incur on average about a million dollars per quarter; however, the expense will likely continue to vary from quarter to quarter depending upon the procedures that take place in any given quarter. Accordingly, we expect that Q4 legal charges will range between three and $0.04 a share.

Furthermore, we continue to remain confident that we do not infringe the Freedom Wireless patents and that the patents are invalid and unenforceable in light of prior art and other reasons. We believe that our case continues to progress well, and there has been no change to our position on the case.

Our guidance continues to reflect year-over-year growth in BTPS revenues of approximately 60%. Due to the lower than expected subscriber additions in Q3 and our belief that several of our carrier customers may allocate more of their marketing dollars on wireless number portability promotions, we feel it is prudent to adjust our

# Exhibit 19

10-Q 1 d10q.htm FORM 10-Q

<u>Table of Contents</u>

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

---

# FORM 10-Q

☒    **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

    **For the quarterly period ended September 30, 2003**

<center>OR</center>

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

<center>**Commission file number: 0-28432**</center>

---

# Boston Communications Group, Inc.
<center>(Exact name of registrant as specified in its charter)</center>

| **Massachusetts** | **04-3026859** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

<center>**100 Sylvan Road, Woburn, Massachusetts 01801**</center>
<center>(Address of principal executive offices)</center>

<center>**Registrant's telephone number, including area code: (781) 904-5000**</center>

<center>(Former name, former address, former fiscal year, if changed since last report)</center>

---

    Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☒    No ☐

    Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)  Yes ☒    No ☐

    Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date.

    As of November 3, 2003 the Company had outstanding 18,520,890 shares of common stock, $.01 par value per share.

INDEX

PART I.    FINANCIAL INFORMATION:

    Item 1.    Financial Statements (Unaudited)

           Condensed Consolidated Balance Sheets    3
           Condensed Consolidated Statements of Operations    4
           Condensed Consolidated Statements of Cash Flows    5
           Notes to Condensed Consolidated Financial Statements    6

    Item 2.    Management's Discussion and Analysis of Financial Condition and Results of Operations    12

           Certain Factors That May Affect Future Results    20

    Item 3.    Quantitative and Qualitative Disclosures About Market Risk    24

    Item 4.    Controls and Procedures    24

PART II.    OTHER INFORMATION:

    Item 1.    Legal Proceedings    25

    Item 6.    Exhibits and Reports on Form 8-K    25

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, growth of our billing and transaction processing services revenues, billing and transaction processing services gross margin, roaming services revenues, prepaid systems gross margin, engineering, research and development expenditures, sales and marketing expenses, general and administrative expenses, additional capital investments, legal expenses for the Freedom Wireless, Inc. (Freedom Wireless) lawsuit and the belief that the Company does not infringe on the Freedom Wireless patents. These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

2

Table of Contents

## Stock Based Compensation

The Company has elected to follow Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees" (APB 25) and related Interpretations in accounting for its stock-based compensation plans, rather than the alternative fair value method under Statement of Financial Accounting Standards No. 123, "Accounting for Stock-Based Compensation (FAS 123)." Under APB 25, since the exercise price of options granted under these plans equals the fair market price of the underlying stock on the date of grant, the Company recognizes no compensation expense for stock option grants.

Had compensation expense for the Company's stock plans been recorded consistent with FAS 123, the pro forma net income and net income per share would have been as follows:

|  | Three months ended September 30, | | Nine months ended September 30, | |
| --- | --- | --- | --- | --- |
|  | 2003 | 2002 | 2003 | 2002 |
| Net income as reported | $ 4,294 | $ 1,516 | $11,669 | $ 1,451 |
| Add: Stock-based employee compensation expense included in reported net income |  | — |  | — |
| Deduct:  Total stock based employee compensation expense determined under fair value based method for all awards, net of tax benefit | (655) | (626) | (1,954) | (1,878) |
| Pro forma net income (loss) per share: | $ 3,639 | $  890 | $ 9,715 | $  (427) |
| Basic net income (loss) per share: |  |  |  |  |
| As reported | $  0.24 | $  0.09 | $  0.65 | $  0.08 |
| Pro forma | $  0.20 | $  0.05 | $  0.54 | $ (0.03) |
| Diluted net income (loss) per share: |  |  |  |  |
| As reported | $  0.23 | $  0.09 | $  0.62 | $  0.08 |
| Pro forma | $  0.19 | $  0.05 | $  0.52 | $ (0.02) |

## 3.  Contingencies

### Legal

In March 2000, Freedom Wireless, Inc. (Freedom Wireless) filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless and seeks damages in an unspecified amount as well as injunctive relief. A ruling that the Company infringed the Freedom Wireless patents could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is still in the discovery phase. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, the Company recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by its outside counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, the Company began accounting for costs related to this case as incurred. As a result, for the three and nine-month period ended September 30, 2003, the Company recorded charges of $1.4 million and $3.0 million, respectively, primarily for legal expenses incurred for the suit brought by Freedom Wireless.

8

Table of Contents

The Company expects to incur additional legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than the Freedom Wireless matter discussed above) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

Indemnifications

In November 2002, the Financial Accounting Standards Board (FASB) issued Interpretation No. 45, "Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others" (FIN 45), which requires certain guarantees to be recorded at fair value as opposed to the previous practice of recording a liability only when a loss is probable and reasonably estimable. FIN 45 also requires a guarantor to make significant new guaranty disclosures, even when the likelihood of making any payments under the guarantee is remote.

The Company has agreed to indemnification provisions in certain of its agreements with customers and its leases of real estate in the ordinary course of its business.

With respect to customer agreements, these provisions generally obligate the Company to indemnify the customer against losses, expenses, liabilities and damages that may be awarded against the customer in the event the Company's systems or services infringe upon a patent or other intellectual property right of a third party. The agreements generally limit the scope of and remedies for such indemnification obligations in certain respects, including but not limited to geographical limitations and the right to replace or modify an infringing product or service. The Company believes its internal development processes and other policies and practices limit its exposure related to the indemnification provisions of these agreements. To date, the Company has not had to reimburse any of its customers for any losses related to these indemnifications and no material claims are outstanding as of September 30, 2003.

With respect to real estate leases, these indemnification provisions typically apply to claims asserted against the landlord by a third party relating to personal injury and property damage occurring at the leased premises or to certain breaches of the Company's contractual obligations. The term of these indemnification provisions generally survive the termination of the lease, although the exposure is greatest during the lease term and for a short period of time thereafter. The maximum potential amount of future payments that the Company could be required to make under these indemnification provisions is unlimited. The Company has purchased insurance that reduces the amount of such exposure for landlord indemnifications. The Company has never paid any amounts to defend lawsuits or settle claims related to these landlord indemnification provisions. Accordingly, the Company believes the estimated fair value of these indemnification arrangements is minimal.

9

EX-31.1 3 dex311.htm CERTIFICATION OF CHIEF EXECUTIVE OFFICER PURSUANT TO RULE 13A-14(A)

Exhibit 31.1

CERTIFICATIONS

I, E. Y. Snowden, certify that:

1.   I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2.   Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3.   Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4.   The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b)   [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

   c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

   c)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)   all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b)   any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: November 14, 2003

/s/   E. Y. Snowden
_____
E. Y. Snowden
President and Chief Executive Officer

EX-31.2 4 dex312.htm CERTIFICATION OF CHIEF FINANCIAL OFFICER PURSUANT TO RULE 13A-14 (A)

Exhibit 31.2

, Karen A. Walker, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report; registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b) [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

    c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: November 14, 2003                                      /s/   Karen A. Walker
                                                            _____
                                                            Karen A. Walker
                                                            Vice President, Finance and
                                                            Administration and Chief Financial Officer

EX-32 5 dex32.htm CERTIFICATION OF CEO AND CFO PURSUANT TO RULE 13A-14(B)

**Exhibit 32**

CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended September 30, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: November 14, 2003

/s/   E.Y. Snowden
_____
E.Y. Snowden
President and Chief Executive Officer

Date: November 14, 2003

/s/   Karen A. Walker
_____
Karen A. Walker
Vice President, Finance and
Administration and Chief Financial Officer

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 20

**BCGI**
**Leader, E.Y. Snowden**
**BCGI 4th Quarter and Annual Earnings Call**
**ID #4951184**
**2/3/04**

**Date of Transcription:   February 4, 2004**



**BCGI**
**ID #4951184**                                                    **Page 2**

Operator:                Good afternoon my name is Miles, and I will be your conference
                         facilitator today. At this time I would like to welcome everyone to
                         the BCGI 4th Quarter and Annual Earnings Conference call. All
                         lines have been placed on mute to prevent any background noise.
                         After the speaker's remarks there will be a question and answer
                         period. If you would like to ask a question during this time simply
                         press star then the number one on your telephone keypad. If you
                         would like to withdraw your question press star then the number
                         two on your telephone keypad. I would now like to turn the call
                         over to Mr. Peter Seltzberg, with the financial relations board for
                         opening remarks. Mr. Seltzberg, you may begin.

Peter:                   Thanks. Good afternoon, by now you should have had the chance
                         to review today's press release but if anyone still needs a copy
                         please call us at 212-445-8453, and request fax or email
                         alternatively view and download the release the Boston
                         Communications Corporate website, **www.bcgi.net**. On the
                         line with us today are E.Y. Snowden, President and CEO, and
                         Karen Walker, Chief Financial Officer of Boston Communications
                         Group. Please note that management is happy to speak privately
                         with investors or analyst regarding overall strategy, industry trends,
                         and historical issues. However more specific questions regarding
                         updates and financial guidance or other material information will
                         only be discussed in widely disseminated press releases or via open
                         conference calls such as the one being held today. I'd also like to
                         caution everyone that various remarks the company may make
                         about the company's future expectations, plans, and prospects,
                         constitute forward-looking statements for the purposes of the Safe
                         Harbor Provisions under the Private Securities Litigation Reform
                         Act of 1995. Actual results may differ materially from those
                         indicated by the forward-looking statements and the result of
                         various important factors including those discussed in the Form
                         10Q for the three months ended September 30, 2003, and Form
                         10K for the year ended December 31, 2002, which are all on file
                         with the SEC. In addition any forward-looking statements represent
                         our views only as of today and should not be relied upon as
                         [UNINTELLIGIBLE] views as of any subsequent day. While we
                         may elect to update forward-looking statements at some point in
                         the future we specifically disclaim any obligation to do so even if
                         estimates change and therefore you should not rely on these
                         forward-looking statements as representing our views as of any
                         date subsequent to today. Now, without further delay I'd like to

**BCGI**
**ID #4951184**                                                    **Page 3**

turn the call over to E.Y. Snowden Please go ahead, E.Y.

E.Y.:

Thank you Peter. And again welcome to Boston Communication groups Fourth Quarter and Year End 2003 Conference call. We're pleased to be talking with you today about our fourth consecutive quarter of record-breaking earnings and a record-breaking year for BCGI. Our GAAP earnings per share of $.24 this quarter were up 135% over the prior years fourth quarter. Our 2003 GAAP earnings per share of $.87 were up 381% over the prior year, and in the days when we would describe proforma earnings excluding legal costs, we would have said we earned $1.00 per share this year. 2003 corporate revenues of $103 million were up 46% over 2002, and this translated directly into another of $5 million of free cash flow for the quarter, bolstering BCGI's already strong balance sheets to record financial strength of $66.5 million in cash and investments.

Our net subscriber additions on the pre-paid platform for the quarter were $217,000 slightly ahead of the guidance we provided in October 2003. As we described in our last quarterly conference call we anticipated lower then normal holiday period ads due to many carriers focusing their marketing strategies on attracting and retaining post paid subscribers in the wake of wireless number portability as well as next generation data applications. Our Q4 subscriber growth was aided somewhat by the reduction in our average monthly churn rate to 8.8%, down from 9.6% per month last quarter, and an improvement from the 9.2% per month rate in the fourth quarter a year ago. So for the full year 2003 we added just over 900,000 subscribers, increasing our base 31% from year-end 2002.

Over the course of the past year as we have talked about our strategic initiative to diversify our customer base we have often mentioned Nextel communications in the extraordinary success they have had with the boost mobile lifestyle based brand, targeted toward the youth market in California and Nevada. A few months ago Nextel publicly described the limited geographic expansion of those pre-paid wireless offering in 2004 and today we are happy to announce the signing of a multi-year contract for BCGI to support this expansion. We don't have any other specific customer news to share at this time, and we've not included any other major pre-paid customer wins in our guidance, but the state of the art capabilities of our prepaid platform further enhanced by our recent

**BCGI**
**ID #4951184**                                                              **Page 8**

Our legal expenses during the quarter for Freedom Wireless were inline with expectations, having incurred a $1 million in legal costs related to the case. Going forward we expect to continue to incur on average about $1 million per quarter until the matter is resolved. However the expense may vary from quarter to quarter depending upon the procedures that take place in any give quarter. Accordingly we expect that Q1 '04 legal charges will approximate $.03 a share. Further more we continue to remain confident that we do not infringe the Freedom Wireless patent, and the patents are invalid and unenforceable in light of prior art and other reasons. We believe that our case continues to progress well and there has been no change to our position on the case. In addition, various summary judgment motions have been filed by both parties in the case and the court is expected to rule on those motions in the normal course of proceedings.

Now I'd like to spend some time talking in more detail about our outlook for the first quarter of 2004. As we noted on our last conference call we will not be providing annual guidance for '04, however we will be providing quarterly guidance until we gain more clarity on our Verizon relationship. We expect the first quarter GAAP earnings to range between $.19 and $.21 per share, including legal charges of approximately $.03 per share. This sequential reduction is principally due to additional costs required to support Nextel's expansion as well as increase investments in R&D and marketing to support our launch of new solutions and features in 2004. We also expect that our consolidated revenues will be consistent with the fourth quarter of 2003. We anticipate that our net subscriber additions in the first quarter will range between $50,000 and $100,000 as carriers continue their emphasis on wireless local [UNINTELLIGIBLE] portability and data services. Our average builds MOU's and price per minute are expected to remain consistent with Q4 levels. Additionally we expect a slight decrease in churn. As we ramp up our infrastructure for our new products and the additional markets that Nextel plans to launch we expect that gross margins for BTBS will decrease to about 74% to 75% for the first quarter. We anticipate that ERND, sales and marketing, and G&A expenses will be up over Q4, both in dollar and percentage terms reflecting the investments we have discussed.

Capital expenditures for 2004 are expected to be around $17 to $18

# Exhibit 21

10-K 1 d10k.htm FOR THE FISCAL YEAR ENDED DECEMBER 31, 2003

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2003**

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission File Number 333-4128**

# BOSTON COMMUNICATIONS GROUP, INC.
(Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| **MASSACHUSETTS** | **04-3026859** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **100 Sylvan Road, Suite 100, Woburn, Massachusetts** | **01801** |
| (Address of Principal Executive Office) | (Zip Code) |

**Registrant's telephone number, including area code: (781) 904-5000**

**Securities registered pursuant to Section 12(b) of the Act:**
**None**

**Securities registered pursuant to Section 12(g) of the Act:**
**Common Stock, par value $.01 per share**

Indicate by check mark whether registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)   YES ☒   NO ☐

The approximate aggregate value of the voting stock held by non-affiliates of the registrant, computed by reference to the

the closing sales price of such stock quoted on the Nasdaq National Market on June 28, 2002 was $123,861,973. The number of shares outstanding of the Registrant's common stock, $.01 par value per share, as of March 20, 2003 was 17,644,706.

## DOCUMENTS INCORPORATED BY REFERENCE

Portions of registrant's definitive proxy statement for its 2003 Annual Meeting of Stockholders are incorporated by reference into Part III (Items 10, 11, 12 and 13) of this Annual Report on Form 10-K.

This Annual Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding:

- Continued diversification of our revenue base;
- Entrance of new competitors in the wireless carrier services market;
- Legal expenses related to the Freedom Wireless, Inc. ("Freedom Wireless") lawsuit;
- Payment of dividends;
- Earnings per share;
- Billing and transaction processing services gross margins;
- Discontinuation of ROAMER*plus*™ and related consequences;
- Engineering, research and development expenditures;
- Sales and marketing expenses;
- Depreciation and amortization expense;
- Income tax rate;
- Capital expenditures;
- Contributions for the defined benefit plan's assets;
- Financing of investments and contingent considerations payments with cash, short-term investments and cash generated by operations; and
- Continued customer concentration.

These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results", "Quantitative and Qualitative Disclosures About Market Risk" and those set forth in Items 1 and 3 of Part I of this Annual Report on Form 10-K. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

**Item 1. BUSINESS**

### GENERAL

Boston Communications Group, Inc. ("*bcgi*") was incorporated in Massachusetts in 1988 and, since 1991, has provided real-time subscriber management and billing solutions to the wireless industry through a combination of proprietary software applications, a carrier-class hosted environment, a voice resource network and a service and support organization. We also provide roaming solutions to the customers of wireless carriers and assemble and sell prepaid systems, primarily internationally.

### HISTORY OF OUR SOLUTIONS

In 1991, we launched our *bcgi* ROAMER*plus*™ service. Through this solution, we provided wireless carriers with the ability to better serve their subscribers by offering unregistered roamers the ability to complete calls. This service has

-2-

## Item 2. PROPERTIES

We lease space at our principal location in Woburn, Massachusetts and our Westbrook, Maine location. We own the facilities at our Bedford, Massachusetts and Tulsa, Oklahoma locations. Our Woburn location currently houses our billing and transaction processing services data and network operations center, as well as our executive headquarters, engineering and software development, sales and marketing, and administrative personnel. Our Bedford, Massachusetts facility currently serves as our redundant data center site and we expect to relocate our operational and administrative functions to this facility in 2004. We believe this new building and our Woburn facility together will accommodate our anticipated growth and data center space needs for the next several years.

The Westbrook facility houses our support functions for our *bcgi* Voyager Billing and Customer Care solution, including software development and technical support. The Tulsa facility is used for the assembly of systems and houses other support functions for *bcgi* Prepaid Systems, such as software development, product management and sales support. We also have 31 other smaller leased facilities throughout the United States that house a portion of our voice nodes and certain equipment for our network.

The following list comprises our significant leased facilities:

| Location | Square Footage | Expiration Date |
|---|---|---|
| Woburn, Massachusetts | 64,173 | October 2004 - February 2006 |
| Westbrook, Maine | 10,679 | May, 2006 |

## Item 3. LEGAL PROCEEDINGS

In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of its proceedings. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the year ended December 31, 2003, we recorded charges of $4.0 million for legal expenses.

We expect to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that costs to defend the Freedom Wireless suit will not exceed our estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and our business, financial condition and results of operations would be materially adversely affected.

- 12 -

On November 10, 2003, a putative class action complaint was filed in the U.S. District Court for the District of Massachusetts, against us, our Chief Executive Officer and our Chief Financial Officer on behalf of persons who purchased our common stock between June 12, 2003 and July 16, 2003. The complaint alleges that the defendants violated Sections 10 (b) and 20(a) of the Exchange Act as well as Rule 10b-5 promulgated thereunder by allegedly failing to disclose material adverse information about our business, operations and future prospects, specifically with respect to our contract negotiations with Verizon Wireless. After this initial complaint was filed, three similar actions were filed against us and the same executives in the United States District Court for the District of Massachusetts. These three later-filed complaints purport to be brought on behalf of persons who purchased our common stock between April 16, 2003 and July 16, 2003. On January 29, 2004, the Court held a status conference, at which the Court granted a motion to consolidate the cases.

We intend to vigorously contest these lawsuits and we believe the lawsuits are without merit and that we and the other named defendants have highly meritorious defenses to the allegations made in these lawsuits. We are not presently able to estimate the potential losses, if any, related to these lawsuits.

From time to time, as a normal incidence of the nature of our business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, we can give no assurance that we will prevail. However, we do not believe that these matters (other than as disclosed) will have a material adverse effect on our consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on our consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

## Item 4. SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS

No matters were submitted to a vote of our security holders, through solicitation of proxies or otherwise, during the last quarter of the year ended December 31, 2003.

## EXECUTIVE OFFICERS OF THE REGISTRANT

Our executive officers and their ages and positions are as follows:

| Name | Age | Position |
|---|---|---|
| Paul J. Tobin | 60 | Chairman |
| E.Y. Snowden | 49 | President and Chief Executive Officer, Director |
| Karen A. Walker | 38 | Treasurer, Vice President, Finance and Administration and Chief Financial Officer |
| William D. Wessman | 54 | Executive Vice President and Chief Technology Officer |
| Frederick E. Von Mering | 51 | Vice President, Corporate Development, Director |

Mr. Tobin has over 25 years experience in the telecommunications and wireless industry. Mr. Tobin is one of our founders and has served as our Chairman since 1988. Mr. Tobin also held the position of President from February 1990 until February 1996, and from April 1997 to February 1998. Prior to his tenure with us, Mr. Tobin served as President of Cellular One Boston/Worcester and Portsmouth, NH, and Regional Marketing Manager for Satellite Business Systems (a joint venture of IBM, Comsat and Aetna). Mr. Tobin began his career as a Securities Analyst at Chase Manhattan Bank after receiving his undergraduate degree in Economics from Stonehill College and his M.B.A. in Marketing/Finance from Northeastern University.

Mr. Snowden joined us as President and Chief Executive Officer in February 1998. Prior to that, he served as President and Chief Operating Officer of American Personal Communications, L.P. d/b/a Sprint Spectrum ("APC/Sprint Spectrum"), where he was responsible for the successful launch of the nation's first Personal Communications Services ("PCS") network. Before joining APC/Sprint Spectrum in 1994, Mr. Snowden served as an

- 13 -

EX-31.1 8 dex311.htm SECTION 302 CEO CERTIFICATION

**Exhibit 31.1**

## CERTIFICATIONS

I, E. Y. Snowden, certify that:

1.  I have reviewed this annual report on Form 10-K of Boston Communications Group, Inc.;

2.  Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3.  Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for the periods presented in this annual report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

    b)  [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 9, 2004

/s/ E. Y. Snowden
————————————————————————
E. Y. Snowden
President and Chief Executive Officer

EX-31.2 9 dex312.htm SECTION 302 CFO CERTIFICATION

**Exhibit 31.2**

I, Karen A. Walker, certify that:

1.  I have reviewed this annual report on Form 10-K of Boston Communications Group, Inc.;

2.  Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3.  Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for the periods presented in this annual report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

    b)  [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 9, 2004                                  /s/ Karen A. Walker
_____

                                                     Karen A. Walker
                                                     Vice President, Finance and
                                                     Administration and Chief Financial Officer

EX-32 10 dex32.htm SECTION 906 CEO & CFO CERTIFICATIONS

**Exhibit 32**

CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the annual report on Form 10-K of Boston Communications Group, Inc. (the "Company") for the period ended December 31, 2003 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: March 9, 2004                     /s/ E. Y. Snowden

                                        E.Y. Snowden
                                        President and Chief Executive Officer

Date: March 9, 2004                     /s/ Karen A. Walker

                                        Karen A. Walker
                                        Vice President, Finance and Administration
                                        and Chief Financial Officer

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 22

10-Q 1 d10q.htm FOR THE PERIOD ENDED MARCH 31, 2004

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

# FORM 10-Q

☒    **Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**For the quarterly period ended March 31, 2004**

or

☐    **Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**Commission file number: 0-28432**

# Boston Communications Group, Inc.
### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Massachusetts** | **04-3026859** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**100 Sylvan Road, Woburn, Massachusetts 01801**
(Address of principal executive offices)

**Registrant's telephone number, including area code: (781) 904-5000**

(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)   YES ☒   NO ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date. As of May 3, 2004, the Company had outstanding 18,317,946 shares of common stock, $.01 par value per share.

**Table of Contents**

<div align="center">INDEX</div>

PART I. FINANCIAL INFORMATION:

Item 1.    Financial Statements (Unaudited)

    Condensed Consolidated Balance Sheets

    Condensed Consolidated Statements of Operations

    Condensed Consolidated Statements of Cash Flows

    Notes to Condensed Consolidated Financial Statements

Item 2.    Management's Discussion and Analysis of Financial Condition and Results of Operations

    Certain Factors That May Affect Future Results

Item 3.    Quantitative and Qualitative Disclosures About Market Risk

Item 4.    Controls and Procedures

PART II. OTHER INFORMATION:

Item 1.    Legal Proceedings

Item 6.    Exhibits and Reports on Form 8-K

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding the diversification of our product and customer base, earnings per share for the three month period ended June 30, 2004, growth of our billing and transaction processing services revenues, billing and transaction processing services gross margin, prepaid systems revenues, prepaid systems gross margin, additional capital investments, legal expenses for the Freedom Wireless, Inc. (Freedom Wireless) lawsuit and the belief that the Company does not infringe on the Freedom Wireless patents, and the ability to finance our operations for the next 12 months with cash on hand and cash to be generated from profitable operations. These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

Table of Contents

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2004 | 2003 |
| Net Income | $4,073 | $3,288 |
| Unrealized loss on available-for-sale securities | (20) | — |
| Comprehensive Income | $4,053 | $3,288 |

## 3. Contingencies

Legal

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there was a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of proceedings. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.

The Company expects to incur, on average, approximately $1 million per quarter for legal costs until the Freedom Wireless matter is resolved. However, this cost will likely continue to vary from quarter to quarter, depending on the timing of proceedings. There can be no assurances that the Company's expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. If Freedom Wireless prevails in this case, the amount of damages could be substantial and the Company's business, financial condition and results of operations would be materially adversely affected.

On November 10, 2003, a putative class action complaint was filed in U.S. District Court for the District of Massachusetts against the Company, its Chief Executive Officer and Chief Financial Officer on behalf of persons who purchased the Company's common stock between June 12, 2003 and July 16, 2003. The complaint alleges that the defendants violated Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder by allegedly failing to disclose material adverse information about the Company's business, operations and future prospects, specifically with respect to the Company's contract negotiations with Verizon Wireless. The Company intends to vigorously contest this lawsuit and believes that the lawsuit is without merit and that the Company and the other named defendants have highly meritorious defenses to the allegations made in this lawsuit. The Company is not presently able to estimate the potential losses, if any, related to this lawsuit.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than as disclosed) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

**Table of Contents**

Item 6. Exhibits and Reports on Form 8-K

a)    Exhibits

    31.1    Certification of Chief Executive Officer pursuant to Rule 13a-14(a)

    31.2    Certification of Chief Financial Officer pursuant to Rule 13a-14(a)

    32    Certification of Chief Executive Officer and Chief Financial Officer pursuant to Rule 13a-14(b)

b)    Reports on Form 8-K

On February 3, 2004, we filed a current report on Form 8-K to report, under Items 9 and 12, our financial results for the fourth quarter and year ended December 31, 2003.

On February 3, 2004, we filed a current report on Form 8-K to report, under Item 9, the signing of a multi-year contract to provide prepaid wireless services to Nextel Communications, Inc. to support a market expansion of its Boost Mobile branded pay-as-you-go offering.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Date: May 10, 2004

Boston Communications Group, Inc.
(Registrant)

By:      /s/   Karen A. Walker

Karen A. Walker
Vice President, Finance and
Administration and Chief Financial Officer
(Principal Financial and Accounting
Officer and Duly Authorized Officer)

EX-31.1 2 dex311.htm SECTION 302 CEO CERTIFICATION

Exhibit 31.1

1. CERTIFICATIONS

I, E. Y. Snowden, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b) [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

   c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: May 10, 2004

/s/   E.Y. Snowden

E. Y. Snowden
President and Chief Executive Officer

EX-31.2 3 dex312.htm SECTION 302 CFO CERTIFICATION

<div align="right">**Exhibit 31.2**</div>

I, Karen A. Walker, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report; registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

   b) [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

   c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: May 10, 2004                              /s/   Karen A. Walker

                                                Karen A. Walker
                                                Vice President, Finance and Administration and
                                                Chief Financial Officer

EX-32 4 dex32.htm SECTION 906 CEO AND CFO CERTIFICATION

**Exhibit 32**

7. CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended March 31, 2004 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

(1)  the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: May 10, 2004

/s/  E.Y. Snowden

E. Y. Snowden
President and Chief Executive Officer

Date: May 10, 2004

/s/  Karen A. Walker

Karen A. Walker
Vice President, Finance and Administration
and Chief Financial Officer

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 23

10-Q 1 d10q.htm FOR THE QUARTERLY PERIOD ENDED JUNE 30, 2004

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

# FORM 10-Q

☒     **Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**For the quarterly period ended June 30, 2004**

or

☐     **Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**Commission file number: 0-28432**

# Boston Communications Group, Inc.
### (Exact name of registrant as specified in its charter)

| **Massachusetts** | **04-3026859** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**100 Sylvan Road, Woburn, Massachusetts 01801**
**(Address of principal executive offices)**

**Registrant's telephone number, including area code: (781) 904-5000**

(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)   YES ☒   NO ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date. As of Aug 6, 2004, the Company had outstanding 17,498,271 shares of common stock, $.01 par value per share.

Table of Contents

<div align="center">INDEX</div>

PART I. FINANCIAL INFORMATION:

Item 1.   Financial Statements (Unaudited)

         Condensed Consolidated Balance Sheets   3
         Condensed Consolidated Statements of Operations   4
         Condensed Consolidated Statements of Cash Flows   5
         Notes to Condensed Consolidated Financial Statements   6

Item 2.   Management's Discussion and Analysis of Financial Condition and Results of Operations  Certain Factors That May Affect Future Results   13

Item 3.   Quantitative and Qualitative Disclosures About Market Risk   24

Item 4.   Controls and Procedures   24

PART II. OTHER INFORMATION:

Item 1.   Legal Proceedings   24

Item 2.   Changes in Securities, Use of Proceeds and Issuer Purchases of Equity Securities   25

Item 4.   Submission of Matters to a Vote of Security Holders   26

Item 6.   Exhibits and Reports on Form 8-K   26

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding the expectations regarding our new product offerings, expansion into new markets, Verizon Wireless' timetable to transfer subscribers from our platform to their internal prepaid platform, diversification of our product and customer base, total revenues, earnings per share, billing and transaction processing services revenues and gross margin, engineering, research and development expenses, sales and marketing expenses, costs to defend Freedom Wireless lawsuit, additional capital investments, payment of additional contingent cash consideration to Infotech Solutions Corporation, and the ability to finance our operations for the next 12 months. These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The statements discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

<div align="center">2</div>

Table of Contents

**3.    Contingencies**

Legal

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of wireless carriers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there was a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. The suit is in the pre-trial phase and various summary judgment motions have been filed by both parties in the case. The Court is expected to rule on these motions in the normal course of proceedings. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.

On November 10, 2003, a putative class action complaint was filed in U.S. District Court for the District of Massachusetts against the Company, its Chief Executive Officer and Chief Financial Officer on behalf of persons who purchased the Company's common stock between June 12, 2003 and July 16, 2003. The complaint alleged that the defendants violated Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder by allegedly failing to disclose material adverse information about the Company's business, operations and future prospects, specifically with respect to the Company's contract negotiations with Verizon Wireless. On June 9, 2004, the class action complaint was voluntarily dismissed by the plaintiffs without prejudice to the plaintiffs' ability to re-file a complaint. Neither the Company nor its insurers made any payment in connection with the dismissal of these lawsuits and have no obligation to make payments in the future.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than as disclosed) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

Indemnifications

In November 2002, the Financial Accounting Standards Board (FASB) issued Interpretation No. 45, "Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others" (FIN 45), which requires certain guarantees to be recorded at fair value as opposed to the previous practice of recording a liability only when a loss is probable and reasonably estimable. FIN 45 also requires a guarantor to make significant new guaranty disclosures, even when the likelihood of making any payments under the guarantee is remote.

The Company has agreed to indemnification provisions in certain of its agreements with customers and its leases of real estate in the ordinary course of its business.

With respect to customer agreements, these provisions generally obligate the Company to indemnify the customer against losses, expenses, liabilities and damages that may be awarded against the customer in the event the Company's systems or services infringe upon a patent or other intellectual property right of a third party. The agreements generally limit the scope of and remedies for such indemnification obligations in certain respects, including but not limited to geographical limitations and the right to replace or modify an infringing product or service. The Company believes its internal development processes and other policies and practices limit its exposure related to the indemnification provisions of these agreements.

9

EX-31.1 4 dex311.htm SECTION 302 CEO CERTIFICATION

Exhibit 31.1

## CERTIFICATIONS

E. Y. Snowden, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b) [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

    c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: August 9, 2004                    /s/ E.Y. Snowden

                                        E. Y. Snowden
                                        President and Chief Executive Officer

EX-31.2 5 dex312.htm SECTION 302 CFO CERTIFICATION

Exhibit 31.2

I, Karen A. Walker, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2.  Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3.  Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report; registrant as of, and for, the periods presented in this quarterly report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b)  [Paragraph omitted in accordance with SEC transition instructions contained in SEC Release 34-47986]

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: August 9, 2004                              /s/ Karen A. Walker

                                                  Karen A. Walker
                                                  Vice President, Finance and
                                                  Administration and Chief
                                                  Financial Officer

EX-32 6 dex32.htm SECTION 906 CEO AND CFO CERTIFICATION

**Exhibit 32**

CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended June 30, 2004 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

(1)   the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)   the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: August 9, 2004                              /s/ E.Y. Snowden
                                                  _____

                                                  E.Y. Snowden
                                                  President and Chief Executive Officer

Date: August 9, 2004                              /s/ Karen A. Walker
                                                  _____

                                                  Karen A. Walker
                                                  Vice President, Finance and Administration
                                                  and Chief Financial Officer

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 24



## Thomson StreetEvents™

**BCGI - Q3 2004 Boston Communications Group Earnings Conference Call**

Event Date/Time: Oct. 20. 2004 / 5:00PM ET



THOMSON    streetevents@thomson.com | 617.603.7900 | www.streetevents.com



© 2004 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

# FINAL TRANSCRIPT

| BCGI - Q3 2004 Boston Communications Group Earnings Conference Call |
|---|

## CORPORATE PARTICIPANTS

**Susan Garland**
*Boston Communications Group - Financial Relations Board*

**E.Y. Snowden**
*Boston Communications Group - Pres, CEO*

**Karen Walker**
*Boston Communications Group -*
*CFO, VP-Financial Admin., Treasurer*

## CONFERENCE CALL PARTICIPANTS

**Howard Smith**
*First Analysis Securities Corporation - Analyst*

**Jason Willey**
*Schwab Soundview Capital Markets - Analyst*

**Steve Levenson**
*Advest, Inc. - Analyst*

**Jeff Porter**
*[Unidentified Company Name] - Analyst*

**Israel Iser (ph)**
*[Unidentified Company Name] - Analyst*

**Reilly McCormick (ph)**
*[Unidentified Company Name] - Analyst*

**David Rainey (ph)**
*[Unidentified Company Name] - Analyst*

**Unidentified**

## PRESENTATION

**Operator**

Good afternoon. My name is Lisa and I will be your conference facilitator today. At this time I would like to welcome everyone to the BCGI 2004 third quarter earnings conference call. All lines have been been placed on mute to prevent any background noise. After the speakers there will be a question-and -answer period. If you would like to ask a question during this time simply press star, then the No. 1 on your telephone keypad. If you would like to withdraw your question press star, then the No. 2 on your telephone keypad. Thank you. Ms. Garland you may begin the conference.

---

**Susan Garland** - *Boston Communications Group - Financial Relations Board*

Thank you. Good afternoon. By now you should have all had a chance to view today's Press Release. If anyone still needs

a copy please call us at 212-445-8453 and request a fax or e-mail. Alternatively you can view and download the release at the Boston Communications Corporate website www.bcgi.net. On the line with us today are E.Y. Snowden, President and CEO, and Karen Walker, Chief Financial Officer of Boston Communications Group. Please note that Management is happy to speak privately with investors and analysts regarding overall strategy, industry trends, and historical issues. However more specific questions regarding updates on financial guidance or other material information will only be discussed on widely estimated Press Releases or via open conference calls, such as the one being held today.

I would also like to caution everyone that various remarks that the Company may make about the Company's future expectations, plans, and prospects constitute forward-looking statements for purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by these forward-looking statements, as a result of various important factors, including those discussed in the Form 10-K for the year ended December 31st, 2003, which is on file with the SEC. In addition, any forward-looking statements represents our views only as of today and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future we specifically disclaim any obligation to do so even if our estimates change, and therefore, you should not rely on these forward-looking statements as representing our views as of any date subsequent to today. Now, without further delay I'd like to turn the call over to E.Y. Snowden. Please go ahead E.Y.

---

**E.Y. Snowden** - *Boston Communications Group - Pres, CEO*

Thank you, Susan, and welcome Boston Communications Group's third quarter 2004 conference call. We'll be using our time with you this afternoon to share updates on key areas of our business and provide additional insight to some of the strategic initiatives under way at BCGI. To begin, I'd like to cover some highlights of our third quarter performance. Net income for the 9-months ended September 30, 2004, totaled $13.2 million, representing a 13% increase over the same-period last year. Net income for the third quarter decreased 17% from the second quarter of 2004 due principally to a decline in gross additions on BCGI's platform from our 2 largest carrier customers, Verizon Wireless and Cingular. Though net income was down from the previous quarter we had free cash flow of $8.4 million for the quarter.

---



THOMSON    streetevents@thomson.com    617.603.7900    www.streetevents.com

© 2004 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

# FINAL TRANSCRIPT

BCGI - Q3 2004 Boston Communications Group Earnings Conference Call

evolved the product to include management tools for SMS and created a baseline platform for wireless data management in Version II. And our current development cycle is targeted at creating the functionality needed to manage access to an exploding variety of wireless content. As networks and handsets evolve to provide highband web, full-color and even full-motion accessed to the Internet. The demand for tools that allows subscribers the ability to manage access to Internet content is growing. The need for carriers to offer creative tools for controlling content delivery is an increasing worldwide trend spurred by consumers, carriers, and in some cases regulators. Combined with the truly flexible sales and delivery models the innovative technology that powers Mobile Guardian is well-positioned to meet that need and ultimately open the door to new markets around the world. Throughout the next quarter and beyond we will continue to invest in our technology and people and pursue opportunities that allow us to open new markets and diversify our revenue streams. We are confident that the good work we are doing with existing carrier customers, continuous development of new products and features, an increased flexibility in how we serve our customers will deliver long-term growth and increase shareholder value. Now, I'd like to hand the call over to Karen Walker, our Chief Financial Officer to discuss our financial performance and guidance.

**Karen Walker** - *Boston Communications Group - CFO, VP-Financial Admin., Treasurer*

Thank you, E.Y. In the third quarter we further demonstrated our diversification progress while continuing to deliver healthy profits and building an even stronger balance sheet. Though our total revenues were $630,000 lower sequentially, revenues from customers other than Verizon and Cingular increased 19% over the second quarter of 2004. Specifically, Nextel generated 14% of our revenue for the third quarter up from 11% in Q2. BTPS revenues decreased about $1.4 million or 5% sequentially, primarily a result of fewer Verizon and Cingular gross additions. This reduction in gross adds contributed to our average build MOU per month, declining 4% sequentially to 108, and our average billed rate per minute remaining relatively consistent with Q2. Additionally, churn for the quarter was approximately 9.4% per month increasing from 8% in the second quarter of 2004. These trends, as well as our investment in new products and technology advancements that are not expected to generate revenue until 2005, resulted in BTPS gross margins of 76%, about 2 points lower than the second quarter of '04.

Our prepaid systems revenues were $1.4 million up from -- up $759,000 over Q2. The increase was principally due to the recognition of a shipment that had been differed in the previous quarter and was appropriately recognized in Q3. As a result of the increased revenue our margins rose on a sequential basis from 31% in Q2 to 54% in Q3. As E.Y. mentioned during the third quarter we made a decision to begin the phase shutdown of our Tulsa location, which has housed much of the operations to support our systems business. If you recall this has been a very small piece of our overall operations and financial results. We expect that our systems business will be fully integrated into our Massachusetts' location within the first half of 2005. The expenses we have incurred to begin closing that facility are reflected within the system operating results. Additionally, as a result of this consolidation we do not expect to be reporting prepaid systems as a separate segment in 2005.

Depreciation expense increased sequentially principally due to the right-offs of certain assets, including assets associated with the Tulsa location. We, therefore, expect that the depreciation will trend down slightly in Q4. Legal costs associated with the Freedom Wireless lawsuit were lower than expected. In Q3 we experienced a period of relatively low activity related to the lawsuits. However, we anticipate that expenses going forward will average approximately 2 to 3 cents per share, per quarter, but they may vary from quarter-to-quarter depending upon the level of activity and the timing of the proceedings. As we announced on August 11th, the case is getting closer to the trial phase, but a trial date has yet to be set by the Court. We continue to maintain our confidence that we do not infringe the Freedom Wireless patents and we will continue to vigorously defend their claims. Our cash and investments balance increased $5.8 million for the quarter yielding a record balance of $70.9 million. The largest contributing factor was our DSO decreasing to 59 days as of September 30th from 80 days as of June 30th. This decrease resulted from strong collections during the quarter. Keep in mind that our cash increase for the quarter takes into account $3.2 million that we used to repurchase 334,000 shares under our previously announced share repurchase program. To date we have repurchased 838,000 shares for $8.2 million. Additionally, Capital Expenditures for the quarter totaled $3.9 million.

Now, I'd like to spend some time talking about our outlook. As we've stated we currently do not have specific guidance from Cingular regarding the timing and rate of prepaid subscriber additions or migrations to their GSM service. Additionally, we do not have a specific migration plan from



© 2004 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

# Exhibit 25

10-Q 1 d10q.htm FOR THE QUARTERLY PERIOD ENDED SEPTEMBER 30, 2004

<u>Table of Contents</u>

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 10549

# FORM 10-Q

☒     **Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**For the quarterly period ended September 30, 2004**

or

☐     **Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**Commission file number: 0-28432**

# Boston Communications Group, Inc.
### (Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Massachusetts**<br>(State or other jurisdiction of<br>incorporation or organization) | **04-3026859**<br>(I.R.S. Employer<br>Identification No.) |

**100 Sylvan Road, Woburn, Massachusetts 01801**
(Address of principal executive offices)

**Registrant's telephone number, including area code: (781) 904-5000**

(Former name, former address, former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   YES ☒   NO ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)   YES ☒   NO ☐

Indicate the number of shares outstanding of each of the issuer's classes of common stock as of the latest practicable date. As of November 1, 2004, the Company had outstanding 17,560,192 shares of common stock, $.01 par value per share.

Table of Contents

<div align="center">INDEX</div>

PART I.   FINANCIAL INFORMATION:

   Item 1.   Financial Statements (Unaudited)

      Condensed Consolidated Balance Sheets   3

      Condensed Consolidated Statements of Operations   4

      Condensed Consolidated Statements of Cash Flows   5

      Notes to Condensed Consolidated Financial Statements   6

   Item 2.   Management's Discussion and Analysis of Financial Condition and Results of Operations Certain Factors That May Affect Future Results   13

   Item 3.   Quantitative and Qualitative Disclosures About Market Risk   24

   Item 4.   Controls and Procedures   24

PART II.   OTHER INFORMATION:   25

   Item 1.   Legal Proceedings   25

   Item 2.   Changes in Securities, Use of Proceeds and Issuer Purchases of Equity Securities   25

   Item 6.   Exhibits   26

This Quarterly Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding the expectations regarding our new product offerings, expansion into new markets, Verizon Wireless' timetable to transfer subscribers from our platform to their internal prepaid platform, diversification of our product and customer base, total revenues, *bcgi* Mobile Guardian revenues, earnings per share, billing and transaction processing services revenues, sales and marketing expenses, depreciation and amortization, costs to defend the Freedom Wireless lawsuit and the belief that the Company does not infringe on the Freedom Wireless patents, additional capital investments, payment of additional contingent cash consideration to Infotech Solutions Corporation, and the ability to finance our operations for the next 12 months. These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or our actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results" and "Quantitative and Qualitative Disclosures About Market Risk". The statements discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

<div align="center">2</div>

Table of Contents

### Comprehensive Income

Comprehensive income is comprised of net income and unrealized gains and losses on available-for-sale securities.

| | Three months ended September 30, | | Nine months ended September 30, | |
|---|---|---|---|---|
| | 2004 | 2003 | 2004 | 2003 |
| Net income as reported | $ 4,168 | $ 4,294 | $13,243 | $11,669 |
| Unrealized gain (loss) on available for sale securities | 125 | — | (101) | — |
| Comprehensive income | $ 4,293 | $ 4,294 | $13,142 | $11,669 |

## 3.  Contingencies

### Legal

In March 2000, Freedom Wireless, Inc. filed a suit against the Company and a number of the Company's wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages in an unspecified amount as well as injunctive relief. If there was a ruling that the Company infringed the Freedom Wireless patents, it could significantly restrict the Company's ability to conduct business. In addition, the Company has an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by the Company's technology. On August 10, 2004, the plaintiff and the defendant each had four summary judgment motions denied by the court, bringing the case closer to the trial phase. The suit is in the pre-trial phase and the trial is scheduled to begin on January 31, 2005. The Company does not believe that it infringes these patents and believes that the patents are invalid in light of prior art and other reasons.

From time to time, as a normal incidence of the nature of the Company's business, various claims, charges and litigation are asserted or commenced against the Company arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, the Company can give no assurance that it will prevail. However, the Company does not believe that any of these current matters (other than as disclosed) will have a material adverse effect on its consolidated financial position, although an adverse outcome of any of these matters could have a material adverse effect on its consolidated results of operations or cash flows in future quarters or in the quarter or annual period in which one or more of these matters are resolved.

### Indemnifications

In November 2002, the Financial Accounting Standards Board (FASB) issued Interpretation No. 45, "Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others" (FIN 45), which requires certain guarantees to be recorded at fair value as opposed to the previous practice of recording a liability only when a loss is probable and reasonably estimable. FIN 45 also requires a guarantor to make significant new guaranty disclosures, even when the likelihood of making any payments under the guarantee is remote.

The Company has agreed to indemnification provisions in certain of its agreements with customers and its leases of real estate in the ordinary course of its business.

With respect to customer agreements, these provisions generally obligate the Company to indemnify the customer against losses, expenses, liabilities and damages that may be awarded against the customer in the event the Company's systems or services infringe upon a patent or other intellectual property right of a third

9

EX-31.1 2 dex311.htm SECTION 302 CEO CERTIFICATION

Exhibit 31.1

<u>CERTIFICATIONS</u>

, E. Y. Snowden, certify that:

1.  I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2.  Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3.  Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b)  [Not Applicable]

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: November 9, 2004                      /s/ E.Y. Snowden

                                            E. Y. Snowden
                                            President and Chief Executive Officer

EX-31.2 3 dex312.htm SECTION 302 CFO CERTIFICATION

Exhibit 31.2

I, Karen A. Walker, certify that:

1. I have reviewed this quarterly report on Form 10-Q of Boston Communications Group, Inc.;

2. Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

3. Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report; registrant as of, and for, the periods presented in this quarterly report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b) [Not Applicable]

    c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: November 9, 2004                              /s/ Karen A. Walker
_____

                                                   Karen A. Walker
                                                   Vice President, Finance and Administration and Chief Financial Officer

EX-32 4 dex32.htm SECTION 906 CEO AND CFO CERTIFICATION

**Exhibit 32**

CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the quarterly report on Form 10-Q of Boston Communications Group, Inc. (the "Company") for the period ended September 30, 2004 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

    (1)    the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

    (2)    the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date November 9, 2004            /s/ E.Y. Snowden

                                            E.Y. Snowden
                                            President and Chief Executive Officer

Date: November 9, 2004           /s/ Karen A. Walker

                                            Karen A. Walker
                                            Vice President, Finance and Administration and Chief Financial Officer

    A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 26



# Thomson StreetEvents℠

## Conference Call Transcript

### BCGI - Q4 2004 Boston Communications Group Earnings Conference Call

Event Date/Time: Feb. 01. 2005 / 5:00PM ET
Event Duration: N/A



© 2005 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

BCGI - Q4 2004 Boston Communications Group Earnings Conference Call

## CORPORATE PARTICIPANTS

**Susan Garland**
*Boston Communications Group - IR*

**E.Y. Snowden**
*Boston Communications Group - President, CEO*

**Karen Walker**
*Boston Communications Group - CFO, VP - Financial Admin, Treasurer*

## CONFERENCE CALL PARTICIPANTS

**Peter Jacobson**
*Kaufman Brothers - Analyst*

**Steve Levenson**
*Advest - Analyst*

**Tavis McCourt**
*Morgan Keegan - Analyst*

**Scott Sutherland**
*Wedbush Morgan Securities - Analyst*

**Greg Gorbatenko**
*Marquis Investment Research - Analyst*

**Vince Pipia**
*HD Brous - Analyst*

## PRESENTATION

**Operator**

Good afternoon. My name is Vonda, and I will be your conference facilitator. At this time, I'd like to welcome everyone to the bcgi fourth-quarter and 2004 year-end conference call. All lines have been placed on mute to prevent any background noise. After the speakers' remarks, there will be a question-and-answer period. (OPERATOR INSTRUCTIONS) Thank you.

Ms. Garland with Financial Relations Board, you may begin your conference.

**Susan Garland** - *Boston Communications Group - IR*

Thank you, Vonda. Good afternoon. By now, you should have had a chance to review today's press release. If anyone still needs a copy, please call us at 212-827-3777 and request a fax or e-mail. Alternatively, you can view and download the release at the Boston Communications corporate website, www.bcgi.net.

On the line with us today are E. Y. Snowden, President and CEO, and Karen Walker, CFO of Boston Communications Group. Please note that management is happy to speak privately with investors and analysts regarding overall strategy, industry trends, in historical issues. However, more specific questions regarding updates on financial guidance or other material information will only be discussed on widely disseminated press releases or via open conference calls such as the one being held today.

I would also like to caution everyone that various remarks that the Company may make about the Company's future expectations, plans, and prospects constitute forward-looking statements for purposes of the Safe Harbor provisions under the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from those indicated by these forward-looking statements as a result of various important factors, including those discussed in the Form 10-Q for the quarter ended September 30, 2004, which is on file with the SEC. In addition, any forward-looking statements represents our views only as of today, and should not be relied upon as representing our views as of any subsequent date. While we may elect to update forward-looking statements at some point in the future, we specifically disclaim any obligation to do so, even if our estimates change. And therefore, you should not rely on these forward-looking statements as representing our views as of any date subsequent to today.

Now I would like to turn the call over to E. Y. Snowden. E. Y., please go ahead.

© 2005 2002 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

although we do not have the specific migration schedule from Verizon, we still expect they will complete conversions off of our platform by Q3 '05.

Nevertheless, given our baseline of revenues and related trends, we are estimating that consolidated revenues will range around 23 to $25 million for the first quarter of '05. Our gross margins are expected to decreased to about 71 to 73 percent in the first quarter, due to the lower revenues, along with additional costs for resources to support our license sale business and international expansion.

Our sales and marketing expenses are anticipated to increase by more than $1 million in the first quarter of '05. The increase reflects our investment in our rebranding effort; our participation in two major tradeshows in Q1, 3GSM World Conference and CTIA; as well as our focus on expanding our product offerings on a global scale. ER&D and G&A expenses for Q1 are expected to remained fairly consistent with Q4.

As we approached the Freedom Wireless trial date of February 28, legal expenses are expected to increase to 5 to 6 cents per share in Q1 to accommodate additional hours and expenses to try the case. In documents that were made publicly available last week, we learned that Verizon Wireless, a defendant in the case, reached a settlement with Freedom and is no longer a defendant in the case. bcgi was not part of the settlement discussions, and the terms of the settlement are not public. It's important to note that, as we were not a party to these negotiations, we have not agreed to Verizon's settlement terms, and we do not believe that we have any indemnification liability towards Verizon's settlement.

This also does not change our position in the case. We remain that we do not infringe on the Freedom Wireless patents, and that the patents are invalid in light of prior art (ph).

Our capital expenditures are estimated to range between 4 to 5 million for the first quarter. And we expect to spend about 15 to $17 million in '05. As a result, depreciation expense is expected to increased 2 to $300,000 in Q1. The capital requirements are primarily to support new product offerings and ongoing technology enhancements to further advance our real-time transaction processing platform to support our Mobile Guardian, payments, licensing, and MVNO strategies.

We expect first-quarter GAAP earnings to range between 5 and 9 cents per share, including legal charges of approximately 5 to 6 cents per share. Principally due to the timing of certain year-end accruals being paid in the first quarter, we expect that cash will decrease about 2 to $4 million in Q1.

Before turning the call over to questions, we would like to reiterate that the progress we are making to position bcgi as a global leader in real-time billing and payments as well as to make Mobile Guardian a category-leading solution is the result of our dedicated pursuit of our clearly defined diversification strategy. In 2005, we

expect to maintain the accelerated pace of our developme and marketing efforts to achieve our objectives. We will continue to manage cost through prudent investment in growth areas of our business, and work to further strengthen our balance sheet.

The economic strength of our core business enables us to be in a strong cash generation position, even while we work to build and grow our new initiatives. We're confident that the steps we have taken to broaden our market reach and the changes we have made to overcome specific business challenges have created significant new revenue opportunities for bcgi. We look forward to reporting our progress throughout 2005 and for many years to come.

Thank you for your time. And I would now like to ask the operator to open the call to questions.

© 2005 2002 Thomson Financial. Republished with permission. No part of this publication may be reproduced or transmitted in any form or by any means without the prior written consent of Thomson Financial.

# Exhibit 27

10-K 1 d10k.htm FORM 10-K

<u>Table of Contents</u>

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2004**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission File Number 000-28432**

# BOSTON COMMUNICATIONS GROUP, INC.
### (Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| **MASSACHUSETTS**<br>(State or Other Jurisdiction<br>of Incorporation or Organization) | **04-3026859**<br>(I.R.S. Employer<br>Identification No.) |
| **55 Middlesex Turnpike,**<br>**Bedford, Massachusetts**<br>(Address of Principal Executive Office) | **01730**<br>(Zip Code) |

**Registrant's telephone number, including area code: (781) 904-5000**

Securities registered pursuant to Section 12(b) of the Act:

**None**

Securities registered pursuant to Section 12(g) of the Act:

**Common Stock, par value $.01 per share**

Indicate by check mark whether registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    YES ☒    NO ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2)    YES ☒    NO ☐

The approximate aggregate value of the common stock held by non-affiliates of the registrant, computed by reference to the closing sales price of such stock quoted on the NASDAQ National Market on June 30, 2004, was $177,946,324. The

number of shares outstanding of the Registrant's common stock, $.01 par value per share, as of March 11, 2005 was 17,639,150.

## DOCUMENTS INCORPORATED BY REFERENCE

Portions of the registrant's definitive proxy statement for its 2005 Annual Meeting of Stockholders are incorporated by reference into Part III (Items 10, 11, 12, 13 and 14) of this Annual Report on Form 10-K.

)

Table of Contents

This Annual Report contains forward-looking statements, within the meaning of the Private Securities Litigation Reform Act of 1995, that involve risks and uncertainties, including without limitation, statements regarding:

- Earnings per share;
- Revenues;
- Gross margin;
- Continued customer concentration and diversification of our revenue base;
- Legal expenses related to the Freedom Wireless, Inc. ("Freedom Wireless") lawsuit;
- Global expansion with new and existing products;
- Entrance of new competitors in the wireless services market;
- Engineering, research and development expenditures;
- Sales and marketing expenses;
- General and administrative expenses;
- Depreciation and amortization expense;
- Capital expenditures;
- Defined Benefit Plan contributions;
- Financing of investments and contingent consideration payments with cash and short-term investments;
- Expectations regarding new product offerings; and
- Payment of dividends.

These statements are based on the current beliefs and assumptions of management.

Any statements contained herein that are not statements of historical fact may be deemed to be forward-looking statements. Without limiting the foregoing, the words "believe," "anticipate," "plan," "expect," "intend," and similar expressions are intended to identify forward-looking statements, although not all forward-looking statements contain these words.

A number of important factors could cause actual events or actual results to differ materially from those indicated by such forward-looking statements. These factors include, without limitation, those set forth under the captions "Management's Discussion and Analysis of Financial Condition and Results of Operations", "Certain Factors That May Affect Future Results", "Quantitative and Qualitative Disclosures About Market Risk" and those set forth in Items 1 and 3 of Part I of this Annual Report on Form 10-K. The factors discussed herein do not reflect the potential future impact of any mergers, acquisitions or dispositions. We do not assume any obligation to update any forward-looking statements made herein.

**Item 1. BUSINESS**

## OVERVIEW

Boston Communications Group, Inc. ("*bcgi*") was incorporated in Massachusetts in 1988 and provides innovative products and services to enable advanced voice and data services for wireless operators, including carriers such as Alltel Corporation, Cable and Wireless, Cincinnati Bell Wireless, Cingular Wireless, Dobson Cellular Systems, Inc., Nextel Communications, Telefonica and Verizon Wireless. We are a leading provider of Real-Time billing as well as other products and services to wireless operators and we offer our solutions on both a managed services and/or licensed system basis. These innovative solutions help our wireless operator customers compete effectively by attracting and retaining additional subscriber customers, thereby increasing their ability to drive additional revenue while lowering their operating costs.

2

Table of Contents

## AVAILABLE INFORMATION

We maintain an internet website at www.bcgi.net. The contents of our website are not part of this annual report on Form 10-K, and our internet address is included in this document as an inactive textual reference only. We make available, free of charge through our website, our annual report on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and each amendment to these reports as soon as reasonably practical after we file such material with, or furnish it to, the Securities and Exchange Commission ("SEC"). Each such report is available via a direct link through our website to our filings on the Securities and Exchange Commission EDGAR system or directly from the SEC's website, www.sec.gov.

## Item 2.    PROPERTIES

We own the facility at our principal location in Bedford, Massachusetts. Our Bedford location currently houses our data and network operations center, as well as our corporate headquarters, engineering and software development, sales and marketing, and administrative personnel. We lease space at our locations in Woburn, Massachusetts, Westbrook, Maine and Hyderabad, India. Our Woburn, Massachusetts facility currently serves as our redundant data center site.

The Westbrook facility houses our support functions for our Voyager Billing solution, including software development and technical support. Our Hyderabad facility hosts certain software development functions. We also have 31 other smaller leased facilities throughout the United States that house certain equipment for our network. We believe that our existing sites will accommodate our short-term anticipated growth and data center space needs and that suitable additional space is available if needed. Additionally, in February 2005 the lease for a portion of our Woburn facility was extended until February 2009 for our redundant data center.

The following list comprises our significant leased facilities:

| Location | Square Footage | Expiration Date |
|---|---|---|
| Woburn, Massachusetts | 13,669 | February 2009 |
| Westbrook, Maine | 10,679 | May 2006 |
| Hyderabad, India | 6,232 | June 2007 |

## Item 3.    LEGAL PROCEEDINGS

In March 2000, Freedom Wireless, Inc. filed a suit against us and a number of our wireless carrier customers. The suit is being tried in the United States District Court in Massachusetts and alleges that the defendants infringe two patents held by Freedom Wireless, Inc. and seeks damages as well as injunctive relief. If there were a ruling that we infringed the Freedom Wireless patents, it could significantly restrict our ability to conduct business. In addition, we have an obligation to indemnify the other defendants for damages they may incur with respect to any infringement by our technology. The trial began on February 28, 2005 and is expected to last for approximately eight weeks. In 2005, Verizon Wireless, who was a defendant in the case, reached a settlement with Freedom Wireless and is therefore no longer a defendant in the case. We were not part of the settlement discussions and the terms of the settlement are not public. We do not believe that we infringe these patents and believe that the patents are invalid in light of prior art and other reasons.

In the fourth quarter of 2000, the third quarter of 2001 and the first quarter of 2002, we recorded special charges of $2.6 million, $3.6 million and $3.3 million, respectively, principally to accrue for legal expenses estimated by our outside legal counsel to be incurred in the defense of the patent infringement suit brought by Freedom Wireless. However, due to the lengthy and unpredictable proceedings, which had made it difficult to reasonably estimate legal costs in the Freedom Wireless suit, commencing in the third quarter of 2002, we began accounting for costs related to this case as incurred. As a result, for the years ended December 31, 2003 and 2004, we recorded charges of $4.0 and $3.0 million, respectively, for legal expenses related to the lawsuit.

14

EX-31.1 9 dex311.htm CERTIFICATION OF CEO

Exhibit 31.1

## CERTIFICATIONS

, E. Y. Snowden, certify that:

1.  I have reviewed this annual report on Form 10-K of Boston Communications Group, Inc.;

2.  Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3.  Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for the periods presented in this annual report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

    b)  Designed such internal control over financial reporting or caused such disclosure controls and procedures to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles.

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 9, 2005

/s/   E. Y. Snowden

E. Y. Snowden
President and Chief Executive Officer

EX-31.2 10 dex312.htm CERTIFICATION OF CFO

<div align="right">**Exhibit 31.2**</div>

I, Karen A. Walker, certify that:

1. I have reviewed this annual report on Form 10-K of Boston Communications Group, Inc.;

2. Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report;

3. Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for the periods presented in this annual report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

   b) Designed such internal control over financial reporting or caused such disclosure controls and procedures to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles.

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

   d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonable to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 9, 2005

/s/ Karen A. Walker

Karen A. Walker
Vice President, Finance and
Administration and Chief Financial Officer

EX-32 11 dex32.htm CERTIFICATION OF CEO AND CFO

Exhibit 32

## CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350,
## AS ADOPTED PURSUANT TO
## SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

In connection with the annual report on Form 10-K of Boston Communications Group, Inc. (the "Company") for the period ended December 31, 2004 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), the undersigned, E.Y. Snowden, President and Chief Executive Officer, and Karen A. Walker, Vice President, Finance and Administration and Chief Financial Officer, hereby certify, pursuant to 18 U.S.C. Section 1350, that:

(1)  the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: March 9, 2005

/s/  E. Y. Snowden

E.Y. Snowden
President and Chief Executive Officer

Date: March 9, 2005

/s/  Karen A. Walker

Karen A. Walker
Vice President, Finance and
Administration and Chief Financial Officer

A signed original of this written statement required by Section 906 has been provided to Boston Communications Group, Inc., and will be retained by Boston Communications Group, Inc. and furnished to the Securities and Exchange Commission or its staff upon request.

# Exhibit 28 – Part 1

Ownership Su~ ~ission

Page 1 of 2

**FORM 4**

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2008
Estimated average burden hours per response... 0.5

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| SNOWDEN E Y | BOSTON COMMUNICATIONS GROUP INC [bcgi] | ___ Director ___ 10% Owner |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | _X_ Officer (give title below) ___ Other (specify below) |
| 55 Middlesex Turnpike | 05/02/2005 | President & CEO |
| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| Bedford, MA 01730 | | _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |
| (City) (State) (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 05/02/2005 | | P | | 2,500 | A | $5.654 | 14,049 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned | 10. Ownership Form of Derivative Security: Direct (D) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

ip Su'    ission

| | Security | | Disposed of (D) (Instr. 3, 4, and 5) | | | | | 4) | | | Following Reported Transaction(s) (Instr. 4) | or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y 55 Middlesex Turnpike Bedford, MA 01730 | | | President & CEO | |

## Signatures

E. Y Snowden                    05/02/2005

Signature of Reporting Person        Date

## Explanation of Responses:

\* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

5/2/2005

**Meredith McGuire**

| | |
|---|---|
| **From:** | Edgar.Postmaster@sec.gov |
| **Sent:** | Monday, May 02, 2005 4:51 PM |
| **To:** | abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-05-024776) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4                NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  02-May-2005 16:51    ACCEPTED DATE:      02-May-2005 16:51
FILING DATE:    02-May-2005 16:51
TEST FILING:    NO               CONFIRMING COPY:    NO
```

ACCESSION NUMBER: 0001181431-05-024776

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 05-Apr-2006 14:08.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

```
   1. CIK:        0001200471
      OWNER:      SNOWDEN  E Y
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432
```

ISSUER:

```
   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
```

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

Ownership or mission

## FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

### UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2008 |
| Estimated average burden hours per response... | 0.5 |

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| SNOWDEN E Y | BOSTON COMMUNICATIONS GROUP INC [bcgi] | (Check all applicable) |
| (Last)    (First)    (Middle) | | ___ Director    ___ 10% Owner |
| 55 Middlesex Turnpike | 3. Date of Earliest Transaction (Month/Day/Year) | _X_ Officer (give title below)    ___ Other (specify below) |
| (Street) | 03/28/2005 | President & CEO |
| Bedford, MA 01730 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)    (State)    (Zip) | | _X_ Form filed by One Reporting Person |
| | | ___ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Owner (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Ownership Su'  'ission

| | | | | | | (D) (Instr. 3, 4, and 5) | | | | | | | Reported Transaction(s) (Instr. 4) | (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |
| Stock Options (Right to Buy) | $7.29 | 03/28/2005 | A | | 40,500 | | 03/28/2006 (1) | 03/28/2015 | Common Stock | 40,500 | $ 0 | 374,400 (2) | D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y 55 Middlesex Turnpike Bedford, MA 01730 | | | President & CEO | |

## Signatures

Edward Snowden

3/30/05

Edward Snowden by: Alan Bouffard under Power of Attorney dated 8/31/2002        03/30/2005

**Signature of Reporting Person        Date

## Explanation of Responses:

\*   If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

(2) In addition, 123,000 are held indirectly by (a)41,000 by the Bradford Irrevocable Trust (b)41,000 by the Sophia Trust, (c)41,000 by the Mallory Trust, f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

3/30/2005

Ownership S¡·' ¬ission

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Meredith McGuire**

| | |
|---|---|
| **From:** | Edgar.Postmaster@sec.gov |
| **Sent:** | Wednesday, March 30, 2005 4:28 PM |
| **To:** | abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-05-019143) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  30-Mar-2005 16:28    ACCEPTED DATE:      30-Mar-2005 16:28
FILING DATE:    30-Mar-2005 16:28
TEST FILING:    NO              CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-05-019143

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:          0001200471
       OWNER:        SNOWDEN  E Y
       FORM TYPE:    4
       FILE NUMBER(S):
            1. 000-28432

ISSUER:

    2. CIK:          0001012887
       COMPANY:      BOSTON COMMUNICATIONS GROUP INC
```

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

Own    hip Submission

Pag    of 3

| FORM 4 | | | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | | OMB APPROVAL | |
|---|---|---|---|---|---|---|

Washington, D.C. 20549

OMB APPROVAL

OMB Number:    3235-0287
Expires:    January 31, 2008
Estimated average burden hours per response...    0.5

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|

SNOWDEN E Y

| (Last) | (First) | (Middle) |
|---|---|---|

55 Middlesex Turnpike

(Street)

Bedford, MA 01730

| (City) | (State) | (Zip) |
|---|---|---|

3. Date of Earliest Transaction (Month/Day/Year)
02/28/2005

4. If Amendment, Date of Original Filed (Month/Day/Year)

___ Director    ___ 10% Owner
_X_ Officer (give title below)    ___ Other (specify below)
President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/28/2005 | | P(1) | | 1,556 | A | $6.409 | 11,549 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**

https://www.sendd.com/~rrdnetfiler/netfile/rrd70779.htm

3/1/2005

Own  hip Submission

Pag   of 3

(*e.g.*, puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction (s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y
55 Middlesex Turnpike
Bedford, MA 01730 | | | President & CEO | |

## Signatures

*Edward Snowden*

Edward Snowden                03/01/2005

**Signature of Reporting Person        Date

## Explanation of Responses:

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Shares purchased under bcgi's Employee Stock Purchase Plan.

Own  hip Submission

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

## Meredith McGuire

**From:**       Edgar.Postmaster@sec.gov
**Sent:**       Tuesday, March 01, 2005 11:23 AM
**To:**         abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net
**Subject:**    ACCEPTED FORM TYPE 4 (0001181431-05-013207)

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4          NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 01-Mar-2005 11:23   ACCEPTED DATE:    01-Mar-2005 11:23
FILING DATE:   01-Mar-2005 11:23
TEST FILING:   NO         CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-05-013207

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN  E Y
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

----------------------------- NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect
address in the EDGAR Accounting Contact Name and Address information may result in your
fee Account Activity Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m.
Eastern Time on business days. Filer Support staff members are available to respond to
requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov.
You can download our current version of the EDGARLink/Windows software and templates, the
Filer Manual, receive on-line help, and access Frequently Asked Questions.

**FORM 5**

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1

Form 3 Holdings Reported
Form 4 Transactions Reported

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## ANNUAL STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB
OMB Number: 3235-0362
Expires: January 31, 2008
Estimated average burden hours per response... 1.0

| 1. Name and Address of Reporting Person: | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| SNOWDEN E Y | BOSTON COMMUNICATIONS GROUP INC [bcgi] | __ Director __ 10% Owner |
| (Last) (First) (Middle) | 3. Statement for Issuer's Fiscal Year Ended (Month/Day/Year) 12/31/2004 | _X_ Officer (give title below) __ Other (specify below) President & CEO |
| 100 Sylvan Road, Suite 100 (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Reporting (check applicable line) |
| Woburn, MA 01801 (City) (State) (Zip) | | _X_ Form Filed by One Reporting Person __ Form Filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at end of Issuer's Fiscal Year (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/13/2004 | | G | | 525 | D | $0 | 10,413 | D | |
| Common Stock | 12/13/2004 | | G | | 315 | D | $0 | 10,098 | D | |
| Common Stock | 12/13/2004 | | G | | 105 | D | $0 | 9,993 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 2270 (9-02)

# Reporting Owners

| (Instr. 7) Derivative Security | | | | | | (Month/Day/Year) (Instr. 8) | Acq. (A) or Disposed of (D) (Instr. 3, 4, and 5) | | Date Exercisable Expiration Date | | Title or Number of Shares Amount | | (Instr. 5) | Beneficially Owned at End of Issuer's Fiscal Year (Instr. 4) | (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

|  | Relationships | | | |
|---|---|---|---|---|
| Reporting Owner Name / Address | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

# Signatures

E. Y. Snowden

*E. Y. Hwd February 3, 2005*

_____    02/03/2005

"Signature of Reporting Person          Date

# Explanation of Responses:

\*    If the form is filed by more than one reporting person, see Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

## Remarks:

The following share were gifted; 525 shares to Stanford University, 315 shares to Tower School and 105 shares to Middlesex Schools.

Note: File three copies of this Form, one of which must be manually signed. If space provided is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

## Leslie Apony

**From:**     Edgar.Postmaster@sec.gov
**Sent:**      Thursday, February 03, 2005 12:49 PM
**To:**        secnotices@sendd.com; lapony@bcgi.net
**Subject:**   ACCEPTED FORM TYPE 5 (0001181431-05-006779)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     5               NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 03-Feb-2005 12:48    ACCEPTED DATE:      03-Feb-2005 12:49
FILING DATE:   03-Feb-2005 12:48
TEST FILING:   NO              CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-05-006779

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:       0001200471
      OWNER:     SNOWDEN  E Y
      FORM TYPE: 5
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC

------------------------------- NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| | | |
|---|---|---|
| OMB APPROVAL | | |
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person (Print or Type Responses) | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| SNOWDEN E Y | BOSTON COMMUNICATIONS GROUP INC [bcgi] | (Check all applicable) |

SNOWDEN E Y
(Last) (First) (Middle)

100 Sylvan Road, Suite 100
(Street)

Woburn, MA 01801
(City) (State) (Zip)

| 3. Date of Earliest Transaction (Month/Day/Year) |
|---|
| 08/31/2004 |

| 4. If Amendment, Date of Original Filed (Month/Day/Year) |
|---|

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

___ Director ___ 10% Owner
_X_ Officer (give title below) ___ Other (specify below)

President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/31/2004 | | P(1) | | 1,135 | A | $6.6725 | 10,938 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

**Signatures**

Edward Snowden

Signature of Reporting Person

09/08/2004

Date

## Explanation of Responses:

\*   If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)   Shares purchased under begi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | (s) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

(Instr. 3, and 5)

Transaction (Instr.

## Leslie Apony

From:          Edgar.Postmaster@sec.gov
Sent:          Wednesday, September 08, 2004 1:07 PM
To:            secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-04-043200)

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  08-Sep-2004 13:07    ACCEPTED DATE:    08-Sep-2004 13:07
FILING DATE:    08-Sep-2004 13:07
TEST FILING:    NO              CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-04-043200

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN  E Y
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| SNOWDEN E Y<br>(Last)    (First)    (Middle)<br>100 Sylvan Road, Suite 100<br>(Street)<br>Woburn, MA 01801<br>(City)    (State)    (Zip) | BOSTON COMMUNICATIONS GROUP INC [bcgi]<br><br>3. Date of Earliest Transaction (Month/Day/Year)<br>06/02/2004<br><br>4. If Amendment, Date of Original Filed (Month/Day/Year) | ___ Director    ___ 10% Owner<br>_X_ Officer (give title below)    ___ Other (specify below)<br><br>President & CEO<br><br>6. Individual or Joint/Group Filing (Check Applicable Line)<br>_X_ Form filed by One Reporting Person<br>___ Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

| | | (Instr. 4) | | | |
|---|---|---|---|---|---|
| | | Date Exercisable | Expiration Date | Title | Amount or Number of Shares |

| Code | V | (A) | (D) | | | | |
|---|---|---|---|---|---|---|---|
| A | | 33,000 | | 06/02/2005 (1) | 06/02/2014 | Common Stock | 33,000 | $ 0 | 333,900 (2) | D |

and 5)

| Common Stock (Right to Buy | $10.68 | 06/02/2004 | | | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

## Signatures

/s/ Edward Snowden _____ 6-4-09

Edward Snowden                    06/04/2004

*Signature of Reporting Person              Date

## Explanation of Responses:

*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

**   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)  Exercisable in three equal installments commencing on the anniversary of the date of grant.

(2)  In addition, 123,000 are held indirectly by (a)41,000 by the Bradford Irrevocable Trust (b)41,000 by the Sophia Trust, (c)41,000 by the Mallory Trust, f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

## Leslie Apony

| | |
|---|---|
| From: | EDGAR@sec.gov |
| Sent: | Friday, June 04, 2004 6:46 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-04-029532) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  04-Jun-2004 10:46    ACCEPTED DATE:       04-Jun-2004 10:46
FILING DATE:    04-Jun-2004 10:46
TEST FILING:    NO             CONFIRMING COPY:     NO
```

ACCESSION NUMBER: 0001181431-04-029532

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

```
   1. CIK:        0001200471
      OWNER:      SNOWDEN  E Y
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432
```

ISSUER:

```
   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
```

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

FORM 5

Check this box if no longer
subject to Section 16. Form 4
or Form 5 obligations may
continue. *See* Instruction 1.*

Form 5 Holdings Reported.
Form 4 Transactions
Reported.

UNITED STATES SECURITIES AND    CHANGE COMMISSION
Washington, D.C. 20549

ANNUAL STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public
Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APP   'AL

OMB Number:   3235-0362
Expires:   January 31, 2005
Estimated average burden
hours per response....   1.0

1. Name and Address of Reporting Person :

SNWIJEN E Y
(Last)   (First)   (Middle)

100 Sylvan Road, Suite 100
(Street)

Woburn, MA 01801
(City)   (State)   (Zip)

2. Issuer Name **and** Ticker or Trading Symbol

BOSTON COMMUNICATIONS GROUP INC
[begi]

3. Statement for Issuer's Fiscal Year Ended
(Month/Day/Year)
12/31/2003

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

___  Director   _X_  10% Owner

_X_  Officer (give title below)   ___  Other (specify below)

President & CEO

6. Individual or Joint/Group Reporting
(check applicable line)

_X_ Form Filed by One Reporting Person
___ Form Filed by More than One Reporting Person

Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at end of Issuer's Fiscal Year (Instr. 3 and 4) | 6. Ownership of Indirect Beneficial Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | Code | | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/16/2003 | | G | | 625 | D | $0 | | D | |
| Common Stock | 12/16/2003 | | G | | 325 | D | $0 | | D | |

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |

**Reminder:** Report on a separate line for each class of securities
beneficially owned directly or indirectly.

**Persons who respond to the collection of information c
not required to respond unless the form displays a curr
number.**

13,920(1)    D    D

13,595(2)    D    D

2270 (9-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EY<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

**Signatures**

/s/ EY Snowden    5-8-04

EY Snowden

Signature of Reporting Person

03/08/2004

Date

## Explanation of Responses:

\*   If the form is filed by more than one reporting person, see Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)   Total includes 481 ESPP shares purchased 2/27/2004.

(2)   Total includes 481 ESPP shares purchased 2/27/2004.

Note: File three copies of this Form, one of which must be manually signed. If space provided is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

## Leslie Apony

| | |
|---|---|
| **From:** | EDGAR@sec.gov |
| **Sent:** | Monday, March 08, 2004 5:26 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 5 (0001181431-04-014210) |

```
THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:     BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    5              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 08-Mar-2004 10:25   ACCEPTED DATE:    08-Mar-2004 10:26
FILING DATE:  08-Mar-2004 10:25
TEST FILING:  NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-04-014210

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:      0001200471
      OWNER:    SNOWDEN  E Y
      FORM TYPE: 5
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:      0001012887
      COMPANY:  BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.
```

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response... 0.5

| 1. Name and Address of Reporting Person : | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| SNOWDEN E Y | BOSTON COMMUNICATIONS GROUP INC [bcgi] | (Check all applicable) |

(Print or Type Responses)

| (Last) | (First) | (Middle) |
|---|---|---|

00 Sylvan Road, Suite 100

(Street)

Woburn, MA 01801

| (City) | (State) | (Zip) |
|---|---|---|

| 3. Date of Earliest Transaction (Month/Day/Year) |
|---|
| 02/27/2004 |

| 4. If Amendment, Date Original Filed (Month/Day/Year) |
|---|

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

| __X__ Director | __X__ 10% Owner |
|---|---|
| President & CEO (give title below) | Other (specify below) |

6. Individual or Joint/Group Filing (Check Applicable Line)
__X__ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/27/2004 | | P(1) | V | 481 | A | $9.146 | 14,545 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN E Y<br>800 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

| | Transaction (s) (Instr. 4) | Code | V | (A) | (D) | | Amount or Number of Shares | Title or | Date Exercisable | Expiration Date |
|---|---|---|---|---|---|---|---|---|---|---|

(Instr. 3 and 5)

## Signatures

Edward Snowden _Edward M Snowden_      03/05/2004   3-5-04

** Signature of Reporting Person          Date

## Explanation of Responses:

*   If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

**  Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number

**Leslie Apony**

| | |
|---|---|
| **From:** | EDGAR@sec.gov |
| **Sent:** | Friday, March 05, 2004 12:42 PM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-04-014138) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:       4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 05-Mar-2004 17:40    ACCEPTED DATE:       05-Mar-2004 17:42
FILING DATE:   05-Mar-2004 17:40
TEST FILING:    NO             CONFIRMING COPY:     NO
```

ACCESSION NUMBER: 0001181431-04-014138

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

```
  1. CIK:        0001200471
     OWNER:      SNOWDEN  E Y
     FORM TYPE:   4
     FILE NUMBER(S):
        1. 000-28432
```

ISSUER:

```
  2. CIK:        0001012887
     COMPANY:    BOSTON COMMUNICATIONS GROUP INC
```

------------------------------ NOTICE ----------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

|  |  |  |
|---|---|---|
| OMB APP 'VAL | | |
| OMB Number: | 3235-0287 | |
| Expires: | January 31, 2005 | |
| Estimated average burden hours per response... | | 0.5 |

## UNITED STATES SECURITIES AND 'CHANGE COMMISSION
### Washington, D.C. _0549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| SNOWDEN EDWARD H | BOSTON COMMUNICATIONS GROUP INC [bcgi] | (Check all applicable) |

(Last) (First) (Middle)

00 Sylvan Road, Suite 100

(Street)

Woburn, MA 01801

(City) (State) (✓/p)

| 3. Date of Earliest Transaction (Month/Day/Year) |
|---|
| 01/23/2004 |

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

— Director

— X_ Officer (give title below) — 10% Owner

— Other (specify below)

President & CEO

6. Individual or Joint/Group Filing (Check Applicable l ne)

X_ Form filed by One Reporting Person

— Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
#### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11 Nature of In Relat Benef Own (Ins |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

# Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EDWARD H<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

(Table — Common Stock / Right to Buy)

| | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock (Right to Buy) | $12.16 | 01/23/2004 | | A | | 33,000 | 01/23/2005 (1) | 01/23/2014 | Common Stock | 33,000 | $ 0 | 300,900 (2) | D |

## Signatures

*Edward Snowden* (signature)    01/27/2004

---
** Signature of Reporting Person **    Date

**Explanation of Responses:**

*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

**   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)  Exercisable in three equal installments commencing on the anniversary of the date of grant.

(2)  In addition, 123,000 are held indirectly by (a)41,000 by the Bradford Irrevocable Trust (b)41,000 by the Sophia Trust, (c)41,000 by the Mallory Trust, f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR@sec.gov |
| Sent: | Tuesday, January 27, 2004 6:34 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-04-004573) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4                NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  27-Jan-2004 11:34    ACCEPTED DATE:        27-Jan-2004 11:34
FILING DATE:    27-Jan-2004 11:34
TEST FILING:    NO               CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-04-004573

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN EDWARD H
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
```

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

Ownership Submission

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

Print or Type Responses)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APP. AL

| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

1. Name and Address of Reporting Person *

SNOWDEN EDWARD H
(Last)    (First)    (Middle)

00 Sylvan Road, Suite 100
(Street)

Woburn 01801
(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
10/13/2003

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

_____ Director    _____ 10% Owner
__X__ Officer (give title below)    _____ Other (specify below)
President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
__X__ Form filed by One Reporting Person
_____ Form filed by More than One Reporting Person

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/13/2003 | | S(1) | | 900 | D | $11 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 10/13/2003 | | S(2) | | 900 | D | $11 | 0 | I | By Sophie Trust |
| Common Stock | 10/13/2003 | | S(3) | | 900 | D | $11 | 0 | I | By Mallory Trust |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information**

SEC 1474 (9-02)

Ownership Discussion

.tained in this form are not required to respond unless the
form displays a currently valid OMB control number.

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Indirect Beneficial Own (Instr. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.062 | 10/13/2003 | | X | | | 900 | 02/10/1999 (4) | 02/10/2008 | Common Stock | 900 | $7.062 | 41,000 | I | By Bra Irre Tru |
| Common Stock (Right to Buy) | $7.062 | 10/13/2003 | | X | | | 900 | 02/10/1999 (5) | 02/10/2008 | Common Stock | 900 | $7.062 | 41,000 | I | By ! Tru |
| Common Stock (Right to Buy) | $7.062 | 10/13/2003 | | X | | | 900 | 02/10/1999 (6) | 02/10/2008 | Common Stock | 900 | $7.062 | 41,000 | I | By Mal Tru |

## Reporting Owners

| Reporting Owner Name / | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% | Officer | Other |
| SNOWDEN EDWARD H | | | | |

Ownership Submission

https://www.sendd.com/~webdrop/netfile/rrd20393.htm

100 Sylvan R
Suite 100
Woburn 01801

## Signatures

Edward H Snowden, By: Alan Bogdard under Power of Attorney dated 8/21/2002

_____
"Signature of Reporting Person

President & CEO

10/15/2003
_____
Date

## Explanation of Responses:

*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

**    Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)    Pursuant to a 10b5-1 Plan.

(2)    Pursuant to a 10b5-1 Plan.

(3)    Pursuant to a 10b5-1 Plan.

(4)    Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(5)    Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6)    Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

## Remarks:
In addition, 267,900 options to buy are held by Edward Snowden directly. Bradford Trust, Sophia Trust and Mallory Trust f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:           EDGAR@sec.gov
Sent:           Wednesday, October 15, 2003 10:52 AM
To:             secnotices@sendd.com; TKelly@bcgi.net; lapony@bcgi.net
Subject:        ACCEPTED FORM TYPE 4 (0001181431-03-026618)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 15-Oct-2003 14:50    ACCEPTED DATE:    15-Oct-2003 14:52
FILING DATE:   15-Oct-2003 14:50
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-026618

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN EDWARD H
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

Ownership Submission

https://www.sendd.com/~webdrop/netfile/rrd17575.htm

FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response... 0.5

(Print or Type Responses)

Name and Address of Reporting Person *
SNOWDEN EDWARD H
(Last) (First) (Middle)

100 Sylvan Road, Suite 100
(Street)

Woburn 01801
(City) (State) (Zip)

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
09/02/2003

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

___ Director       ___ 10% Owner
_X_ Officer (give title below)   ___ Other (specify below)
President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 09/02/2003 | | $\$^{(1)}$ | | 1,300 | D | $13.3723 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 09/02/2003 | | $\$^{(2)}$ | | 1,300 | D | $13.3769 | 0 | I | By Sophie Trust |
| Common Stock | 09/02/2003 | | $\$^{(3)}$ | | 1,300 | D | $13.3515 | 0 | I | By Mallory Trust |

Ownership Subm¹ssion

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-102)

Page 2 of 3

Case 1:05-cv-31155-WGY   Document 24-8   Filed 12/02/2005   Page 36 of 77

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 1,300 | 02/10/1999 [4] | 02/10/2008 | Common Stock | 1,300 | $7.062 | 41,900 | I | By Bradlor Irrevocable Trust |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 1,300 | 02/10/1999 [5] | 02/10/2008 | Common Stock | 1,300 | $7.062 | 41,900 | I | By Sayp Trust |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 1,300 | 02/10/1999 [6] | 02/10/2008 | Common Stock | 1,300 | $7.062 | 41,900 | I | By Mallory Trust |

## Reporting Owners

Ownership Submission

**Reporting Owner Name / Address**

SNOWDEN EDWARD H
100 Sylvan Road
Suite 100
Woburn 01801

| Relationships | | | | |
|---|---|---|---|---|
| Director | 10% Owner | Officer | | Other |
| | | President & CEO | | |

## Signatures

Edward H Snowden, By Alan Bouffard under Power of Attorney dated 8/31/2002

"Signature of Reporting Person

_Edward H Snowden_
By: _Alan Bouffard_

09/03/2003
_____
Date

9/3/03

## Explanation of Responses:

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Pursuant to a 10b5-1 Plan.

(2) Pursuant to a 10b5-1 Plan.

(3) Pursuant to a 10b5-1 Plan.

(4) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(5) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

### Remarks:

In addition, 267,900 options to buy are held by Edward Snowden directly. Bradford Trust, Sophia Trust and Mallory Trust f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Wednesday, September 03, 2003 8:58 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-021511) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 03-Sep-2003 12:56    ACCEPTED DATE:      03-Sep-2003 12:58
FILING DATE:   03-Sep-2003 12:56
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-021511

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN EDWARD H
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
```

---------------------------- NOTICE ----------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL |
|---|
| OMB Number: 3235-0287 |
| Expires: January 31, 2005 |
| Estimated average burden hours per response... 0.5 |

**1. Name and Address of Reporting Person** *
SOWDEN EDWARD H

| (Last) | (First) | (Middle) |
|---|---|---|

100 Sylvan Road, Suite 100
(Street)

Woburn, MA 01801
(City) (State) (Zip)

(Print or Type Responses)

**2. Issuer Name and Ticker or Trading Symbol**
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

**3. Date of Earliest Transaction (Month/Day/Year)**
08/29/2003

**4. If Amendment, Date Original Filed** (Month/Day/Year)

**5. Relationship of Reporting Person(s) to Issuer**
(Check all applicable)

___ Director ___ 10% Owner
_X_ Officer (give title below) ___ Other (specify below)
President & CEO

**6. Individual or Joint/Group Filing** (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/29/2003 | | A(1) | | 1,100 | A | $10.71 | 14,064 | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. | 3. Transaction Date | 3A. Deemed | 4. | 5. Number | 6. Date Exercisable | 7. Title and | 8. Price of | 9. Number | 10. | 11. Nature |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-02)

8/29/2003

https://www.sendd.com/~webdrop/netfile/rrd17351.htm

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EDWARD H<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

| Derivative<br>Security<br>(Instr. 3) | Conversion<br>or Exercise<br>Price of<br>Derivative<br>Security | Date<br>(Month/Day/Year) | Execution Date, if<br>any<br>(Month/Day/Year) | Transaction<br>Code<br>(Instr. 8) | | Number of<br>Derivative<br>Securities<br>Acquired<br>(A) or<br>Disposed<br>of (D)<br>(Instr. 3, 4,<br>and 5) | | Date Exercisable and Expiration Date<br>(Month/Day/Year) | | Amount of<br>Underlying<br>Securities<br>(Instr. 3 and 4) | | Derivative<br>Security<br>(Instr. 5) | Ownership<br>Form of<br>Derivative<br>Security:<br>Direct (D)<br>or Indirect<br>(I)<br>(Instr. 4) | Nature<br>of Indirect<br>Beneficial<br>Ownership<br>(Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date<br>Exercisable | Expiration<br>Date | Title | Amount<br>or<br>Number<br>of Shares | | | |

## Signatures

Edward Snowden, By Alan Bouffard under Power of Attorney dated 8/31/2002

**Signature of Reporting Person**       8/29/03

08/29/2003

Date

## Explanation of Responses:

\*     If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*    Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff
       (a).

(1)   Shares purchased under bgi's Employee Stock Purchase Plan.

8/29/2003

https://www.sendd.com/~webdrop/netfile/rrd17351.htm

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Friday, August 29, 2003 10:07 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-021061) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  29-Aug-2003 14:06   ACCEPTED DATE:    29-Aug-2003 14:07
FILING DATE:    29-Aug-2003 14:06
TEST FILING:    NO             CONFIRMING COPY:   NO

ACCESSION NUMBER: 0001181431-03-021061

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:         0001200471
       OWNER:       SNOWDEN EDWARD H
       FORM TYPE:   4
       FILE NUMBER(S):
           1. 000-28432

ISSUER:

    2. CIK:         0001012887
       COMPANY:     BOSTON COMMUNICATIONS GROUP INC
```

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number:  3235-0287
Expires:  January 31, 2005
Estimated average burden hours per response... (0.5

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| SNOWDEN EDWARD H | BOSTON COMMUNICATIONS GROUP INC [bcgi] | __X__ Director |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | __X__ Officer (give title below) |
| 100 Sylvan Road, Suite 100 | 08/26/2003 | ____ 10% Owner |
| (Street) | 4. If Amendment, Date Original Filed (Month/Day/Year) | ____ Other (specify below) |
| Woburn, MA 01801 | | President & CEO |
| (City) (State) (Zip) | | |

6. Individual or Joint/Group Filing (Check Applicable Line)
__X__ Form filed by One Reporting Person
____ Form filed by More than One Reporting Person

(Print or Type Responses)

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities | 8. Price of Derivative Security | 9. Number of Derivative Securities | 10. Ownership Form of Derivative | 11. Nature of Indirect Benefic... |
|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EDWARD H<br>10 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | President & CEO | |

| (Instr. 3)<br>Price of Derivative Security | | (Month/Day/Year) (Instr. 8) | Code | V | Securities Acquired (A) or Disposed of (D)<br>(Instr. 3, 4, and 5)<br>(A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | (Instr. 5) | Securities Beneficially Owned Following Reported Transaction (s)<br>(Instr. 4) | Derivative Ownership (Instr. 4)<br>Direct (D) or Indirect (I)<br>(Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock (right to Buy) | $13.03 | 08/26/2003 | A | | 64,000 | | 08/26/2004<br>(1) | 08/26/2013 | Common Stock | 64,000 | $13.03 | 267,900<br>(2) | D |

## Signatures

Edward Snowden

By: [signature] Edward Snowden, By Alan Bouffard under Power of Attorney dated 8/31/2002

**Signature of Reporting Person

08/27/2003

Date

## Explanation of Responses:

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Ownership Submission

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

(2) In addition, 129,600 are held indirectly by (a)43,200 by the Bradford Irrevocable Trust (b)43,200 by the Sophia Trust, (c) 43,200 by the Mallory Trust, f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Page 3 of

8:27/2003

**Leslie Apony**

From:           EDGAR.POSTMASTER@sec.gov
Sent:           Wednesday, August 27, 2003 12:41 PM
To:             secnotices@sendd.com; lapony@bcgi.net
Subject:        ACCEPTED FORM TYPE 4 (0001181431-03-020715)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4                NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 27-Aug-2003 16:41   ACCEPTED DATE:        27-Aug-2003 16:41
FILING DATE:   27-Aug-2003 16:41
TEST FILING:   NO               CONFIRMING COPY:      NO

ACCESSION NUMBER: 0001181431-03-020715

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN EDWARD H
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC


------------------------------ NOTICE ------------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

**1. Name and Address of Reporting Person** *
SNOWDEN EDWARD H

| (Last) | (First) | (Middle) |
|---|---|---|

100 Sylvan Road, Suite 100
(Street)

Woburn 01801
| (City) | (State) | (Zip) |

**2. Issuer Name and Ticker or Trading Symbol**
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

**3. Date of Earliest Transaction (Month/Day/Year)**
08/22/2003

**4. If Amendment, Date Original Filed (Month/Day/Year)**

**5. Relationship of Reporting Person(s) to Issuer**
(Check all applicable)

____ Director          ____ 10% Owner

__X__ Officer (give title below)    ____ Other (specify below)

President & CEO

**6. Individual or Joint/Group Filing (Check Applicable Line)**
__X__ Form filed by One Reporting Person.
____ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/22/2003 | | S⁽¹⁾ | | 400 | D | $13 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 08/22/2003 | | S⁽²⁾ | | 400 | D | $13 | 0 | I | By Sophie Trust |
| Common Stock | 08/22/2003 | | S⁽³⁾ | | 400 | D | $13 | 0 | I | By Mallory Trust |

Ownership Submission

SEC 1474 (9-02)

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) Code | V | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) (A) | (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) Date Exercisable | Expiration Date | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) Title | Amount or Number of Shares | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 400 | 02/10/1999 (4) | 02/10/2008 | Common Stock | 400 | $7.062 | 43,200 | I | By Bradford Irrevocable Trust |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 400 | 02/10/1999 (5) | 02/10/2008 | Common Stock | 400 | $7.062 | 43,200 | I | By Complex Trust |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 400 | 02/10/1999 (6) | 02/10/2008 | Common Stock | 400 | $7.062 | 43,200 | I | By Malouf Trust |

# Reporting Owners

8/26/2003

Ownership Submission

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EDWARD H<br>100 Sylvan Road<br>Suite 100<br>Woburn 01801 | | | President & CEO | |

## Signatures Edward H. Snowden

by Allan Bouffard

Edward H Snowden, By Allan Bouffard under Power of Attorney dated 8/31/2002 — 08/25/2003

‴Signature of Reporting Person — Date

## Explanation of Responses:

\*        If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*      Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)     Pursuant to a 10b5-1 Plan.

(2)     Pursuant to a 10b5-1 Plan.

(3)     Pursuant to a 10b5-1 Plan.

(4)     Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(5)     Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6)     Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

## Remarks:

In addition, 203,900 options to buy are held by Edward Snowden directly.  Bradford Trust, Sophia Trust and Mallory Trust f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

| | |
|---|---|
| **From:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Tuesday, August 26, 2003 11:18 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-020456) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 26-Aug-2003 15:17   ACCEPTED DATE:    26-Aug-2003 15:18
FILING DATE:   26-Aug-2003 15:17
TEST FILING:   NO             CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-03-020456

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001200471
      OWNER:      SNOWDEN EDWARD H
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
```

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

**FORM 4**

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * SNOWDEN EDWARD H | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

| (Last) | (First) | (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) 08/01/2003 |
|---|---|---|---|
| 100 Sylvan Road, Suite 100 | | | |

| (Street) | | 4. If Amendment, Date Original Filed (Month/Day/Year) |
|---|---|---|

| Woburn | 01801 | |
|---|---|---|
| (City) | (State) | (Zip) |

Relationship of Reporting Person(s):
___ Director  ___ 10% Owner
_X_ Officer (give title below) ___ Other (specify below)
President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/01/2003 | | S[(1)] | | 900 | D | $11.76 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 08/01/2003 | | S[(2)] | | 900 | D | $11.76 | 0 | I | By Sophie Trust |
| Common Stock | 08/01/2003 | | S[(3)] | | 900 | D | $11.76 | 0 | I | By Mallory Trust |

Ownership Subr~ `ion

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 900 | 02/10/1999 (4) | 02/10/2008 | Common Stock | 900 | $7.062 | 43,600 | I | By Braun Irrevocable Trust |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 900 | 02/10/1999 (5) | 02/10/2008 | Common Stock | 900 | $7.062 | 43,600 | I | By Sha_ Trust |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 900 | 02/10/1999 (6) | 02/10/2008 | Common Stock | 900 | $7.062 | 43,600 | I | By Malitz Trust |

## Reporting Owners

Ownership Submission

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EDWARD H<br>100 Sylvan Road<br>Suite 100<br>Wobum 01801 | | | President & CEO | |

# Signatures Edward H. Snowden

By: Alan Bouffard

_Edward H Snowden By Alan Bouffard under Power of Attorney dated 8/31/2002_     08/05/2003

\*\*Signature of Reporting Person     Date

# Explanation of Responses:

\*       If the form is filed by more than one reporting person, _see_ Instruction 4(b)(v).

\*\*      Intentional misstatements or omissions of facts constitute Federal Criminal Violations. _See_ 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)     Pursuant to a 10b5-1 Plan.

(2)     Pursuant to a 10b5-1 Plan.

(3)     Pursuant to a 10b5-1 Plan.

(4)     Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(5)     Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6)     Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

# Remarks:

In addition, 203,900 options to buy are held by Edward Snowden directly.  Bradford Trust, Sophia Trust and Mallory Trust F/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, _see_ Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

From:            EDGAR.POSTMASTER@sec.gov
Sent:            Tuesday, August 05, 2003 7:06 AM
To:              secnotices@sendd.com; lapony@bcgi.net
Subject:         ACCEPTED FORM TYPE 4 (0001181431-03-017184)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4            NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 05-Aug-2003 11:06    ACCEPTED DATE:    05-Aug-2003 11:06
FILING DATE:  05-Aug-2003 11:06
TEST FILING:  NO           CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-017184

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

  1. CIK:        0001200471
     OWNER:      SNOWDEN EDWARD H
     FORM TYPE:  4
     FILE NUMBER(S):
        1. 000-28432

ISSUER:

  2. CIK:        0001012887
     COMPANY:    BOSTON COMMUNICATIONS GROUP INC

----------------------------- NOTICE -----------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

Ownership Submission

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response... 0.5

(Print or Type Responses)

1. Name and Address of Reporting Person *
SNOWDEN EDWARD H

(Last) (First) (Middle)

(Street)

(City) (State) (Zip)

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
07/08/2003

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

___ Director                      ___ 10% Owner
_X_ Officer (give title below)    ___ Other (specify below)
          President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 07/08/2003 | | S[(1)] | | 2,200 | D | $20 | 12,964 | D | |
| Common Stock | 07/08/2003 | | S[(2)] | | 800 | D | $20 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 07/08/2003 | | S[(3)] | | 800 | D | $20 | 0 | I | By Sophie Trust |
| Common Stock | 07/08/2003 | | S[(4)] | | 800 | D | $20 | 0 | I | By Mallory Trust |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

SEC   .4 (9-02)

Pe   ns who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Ind... |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 2,200 | 02/10/1999 (5) | 02/10/2008 | Common Stock | 2,200 | $7.062 | 203,900 | D(9) | |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 800 | 02/10/1999 (6) | 02/10/2008 | Common Stock | 800 | $7.062 | 44,500 | I | |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 800 | 02/10/1999 (7) | 02/10/2008 | Common Stock | 800 | $7.062 | 44,500 | I | |
| Common Stock (Right to Buy) | $7.062 | 07/08/2003 | | X | | | 800 | 02/10/1999 (8) | 02/10/2008 | Common Stock | 800 | $7.062 | 44,500 | I | |

# Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
| --- | --- | --- | --- | --- |
| | Director | 10% Owner | Officer | Other |
| SNOWDEN EDWARD H | | | President & CEO | |

## Signatures

Edward H Snowden          07/08/2003

Signature of Reporting Person          Date

**Signature of Reporting Person

## Explanation of Responses:

\*     If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*    Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)  Pursuant to a 10b5-1 Plan.

(2)  Pursuant to a 10b5-1 Plan.

(3)  Pursuant to a 10b5-1 Plan.

(4)  Pursuant to a 10b5-1 Plan.

(5)  Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6)  Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(7)  Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(8)  Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(9)  In addition, 133,500 are held indirectly by (a)44,500 by the Bradford Irrevocable Trust, (b)44,500 by the Sophia Trust, (c)44,500 by the Mallory Trust, f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Thursday, July 10, 2003 10:13 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-013618) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:         BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:       4             NUMBER OF DOCUMENTS: 1
RECEIVED DATE:   10-Jul-2003 14:12   ACCEPTED DATE:      10-Jul-2003 14:13
FILING DATE:     10-Jul-2003 14:12
TEST FILING:     NO            CONFIRMING COPY:     NO
```

ACCESSION NUMBER: 0001181431-03-013618

```
FILE NUMBER(S):
  ·1. 000-28432
```

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

```
  1. CIK:         0001200471
     OWNER:       SNOWDEN EDWARD H
     FORM TYPE:   4
     FILE NUMBER(S):
        1. 000-28432
```

ISSUER:

```
  2. CIK:         0001012887
     COMPANY:     BOSTON COMMUNICATIONS GROUP INC
```

------------------------------ NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

1

Ownership Submission

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

# FORM 4

☐ Check this box if no longer subject to Section 16, Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

1. Name and Address of Reporting Person *
SNOWDEN EDWARD H

| | | |
|---|---|---|
| (Last) | (First) | (Middle) |
| | (Street) | |
| (City) | (State) | (Zip) |

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC [bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
2003-07-01

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)
☐ Director   ☐ 10% Owner
☒ Officer (give title below)   ☐ Other (specify below)
President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
☒ Form filed by One Reporting Person
☐ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code | | 4. Securities Acquired (A) or Disposed of (D) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) | 6. Ownership Form: Direct (D) or Indirect (I) | 7. Nature of Indirect Beneficial Ownership |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 2003-07-01 | | S[1] | | 4400 | D | $16.8164 | 12964 | D | |
| Common Stock | 2003-07-01 | | S[2] | | 1700 | D | $16.8164 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 2003-07-01 | | S[3] | | 1700 | D | $16.8164 | 0 | I | By Sophie Trust |
| Common Stock | 2003-07-01 | | S[4] | | 1700 | D | $16.8164 | 0 | I | By Malloy Trust |

Case 1:05-cv-11165-WGY    Document 24-8    Filed 12/02/2005    Page 66 of 77

| Title | Transaction Date | | Code | | Amount | (D) | Price | Shares Owned | Ownership | Nature |
|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock | 2003-07-01 | | S[10] | | 2200 | D | $17.00 | 12964 | D | By Bradford Irrevocable Trust |
| Common Stock | 2003-07-01 | | S[11] | | 800 | D | $17.00 | 0 | D | By Sophie Trust |
| Common Stock | 2003-07-01 | | S[12] | | 800 | D | $17.00 | 0 | D | By Mallory Trust |
| Common Stock | 2003-07-01 | | S[13] | | 800 | D | $17.00 | 0 | D | By Sophie... |

**Table II - Derivative Securities Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivate Security | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) | | 6. Date Exercisable and Expiration Date | | 7. Title and Amount of Securities Underlying Derivative Security | | 8. Price of Derivative Security | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) | 11. Nature of Indirect Beneficial Ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | 7.062 | 2003-07-01 | | X | | | 6600 | 1999-02-10[5] | 2008-02-10 | Common Stock | 6600 | $7.062 | 206100 | D[9] | |
| Common Stock (Right to Buy) | 7.062 | 2003-07-01 | | X | | | 2500 | 1999-02-10[6] | 2008-02-10 | Common Stock | 2500 | $7.062 | 45300 | I | By Bradford Irrevocable Trust |
| Common Stock | | | | | | | | 1999-02- | 2008- | Common | | | | | By Sophi... |

Ownership Submission

| | | | | | | | | Stock | | | | | Trust |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (Right to Buy) | 7.062 | 2003-07-01 | X | | 2500 | 10 (7) | 02-10 | | 2500 | $7.062 | 45300 | I | |
| Common Stock (Right to Buy) | 7.062 | 2003-07-01 | X | | 2500 | 1999-02-10 (8) | 2008-02-10 | Common Stock | 2500 | $7.062 | 45300 | I | By Mallory Trust |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | | |
|---|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other | |
| SNOWDEN EDWARD H | | | President & CEO | | |

7-03-03

## Signatures

Edward H Snowden     2003-07-03

**Signature of Reporting Person    Date

## Explanation of Responses:

(*) If the form is filed by more than one reporting person, see Instruction 5(b)(v).

(**) Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Pursuant to a 10b5-1 Plan.

(2) Pursuant to a 10b5-1 Plan.

(3) Pursuant to a 10b5-1 Plan.

(4) Pursuant to a 10b5-1 Plan.

(5) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(7) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

Ownership Submission

(8) Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(9) In addition, 135,900 are held indirectly by (a)45,300 by the Bradford Irrevocable Trust, (b)45,300 by the Sophia Trust, (c)45,300 by the Mallory Trust, f/o/b the children of the reporting person.

(10) Pursuant to a 10b5-1 Plan.

(11) Pursuant to a 10b5-1 Plan.

(12) Pursuant to a 10b5-1 Plan.

(13) Pursuant to a 10b5-1 Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *See* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Thursday, July 03, 2003 10:21 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-013118) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  03-Jul-2003 14:20  ACCEPTED DATE:     03-Jul-2003 14:21
FILING DATE:    03-Jul-2003 14:20
TEST FILING:    NO             CONFIRMING COPY:     NO
```

ACCESSION NUMBER: 0001181431-03-013118

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:       0001200471
       OWNER:     SNOWDEN EDWARD H .
       FORM TYPE: 4
       FILE NUMBER(S):
           1. 000-28432

ISSUER:

    2. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC

THE SUBMISSION CONTAINED THE FOLLOWING WARNINGS:

WRN: TAG_VALUE_MISSING_OR_INVALID
MSG: Value for <nonDerivativeSecurity.natureOfOwnership> (6 of 8) is missing or invalid BY BRADFORD IRREVOCABLE TRUST. Since this security is directly owned, this field is not applicable.
LOC: LINE NUMBER: 0

WRN: TAG_VALUE_MISSING_OR_INVALID
MSG: Value for <nonDerivativeSecurity.natureOfOwnership> (7 of 8) is missing or invalid BY SOPHIE TRUST. Since this security is directly owned, this field is not applicable.
LOC: LINE NUMBER: 0

WRN: TAG_VALUE_MISSING_OR_INVALID
MSG: Value for <nonDerivativeSecurity.natureOfOwnership> (8 of 8) is missing or invalid BY MALLORY TRUST. Since this security is directly owned, this field is not applicable.
LOC: LINE NUMBER: 0

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity

Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

Ownership Submission

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

1. Name and Address of Reporting Person
SNOWDEN EDWARD H

| (Last) | (First) | (Middle) |
|---|---|---|

| (Street) |
|---|

| (City) | (State) | (Zip) |
|---|---|---|

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC [bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
2003-06-02

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)
___ Director
___ 10% Owner
_X_ Officer (give title below) ___ Other (specify below)
President & CEO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code | | 4. Securities Acquired (A) or Disposed of (D) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) | 6. Ownership Form: Direct (D) or Indirect (I) | 7. Nature of Indirect Beneficial Ownership |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 2003-06-02 | | S(1) | | 6600 | D | $16.7482 | 12964 | D | |
| Common Stock | 2003-06-02 | | S(2) | | 2500 | D | $16.7256 | 0 | I | By Bradford Irrevocable Trust |
| Common Stock | 2003-06-02 | | S(3) | | 2500 | D | $16.7212 | 0 | I | By Sophie Trust |
| Common Stock | 2003-06-02 | | S(4) | | 2500 | D | $16.7316 | 0 | I | By Mallory Trust |

**Table II – Derivative Securities Beneficially Owned (*e.g.*, puts, calls, warrants, options, convertible securities)**
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) | | 6. Date Exercisable and Expiration Date | | 7. Title and Amount of Securities Underlying Derivative Security | | 8. Price of Derivative Security | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (I) | 11. Nature of Indirect Beneficial Ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | 7.062 | 2003-06-02 | | X | | | 6600 | 1999-02-10(5) | 2008-02-10 | Common Stock | 6600 | $7.062 | 212700 | D(9) | |
| Common Stock (Right to Buy) | 7.062 | 2003-06-02 | | X | | | 2500 | 1999-02-10(6) | 2008-02-10 | Common Stock | 2500 | $7.062 | 47800 | I | By Bradford Irrevocable Trust |
| Common Stock (Right to Buy) | 7.062 | 2003-06-02 | | X | | | 2500 | 1999-02-10(7) | 2008-02-10 | Common Stock | 2500 | $7.062 | 47800 | I | By Sophie Trust |
| Common Stock (Right to Buy) | 7.062 | 2003-06-02 | | X | | | 2500 | 1999-02-10(8) | 2008-02-10 | Common Stock | 2500 | $7.062 | 47800 | I | By Mallory Trust |

# Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |

Ownership Submission

Page 3 of 3

| SNOWDEN EDWARD H | | President & CEO |
| --- | --- | --- |
| | | |
| | | |

## Signatures

*Edward N Snowden*    6-3-03

## Explanation of Responses:

(*)   If the form is filed by more than one reporting person, *see* Instruction 5(b)(v).

(**)  Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)   Pursuant to a 10b5-1 Plan.

(2)   Pursuant to a 10b5-1 Plan.

(3)   Pursuant to a 10b5-1 Plan.

(4)   Pursuant to a 10b5-1 Plan.

(5)   Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(6)   Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(7)   Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(8)   Exercisable in five equal installments commencing on the anniversary of the date of grant. First vest date is 2/10/1999.

(9)   In addition, 143,400 are held indirectly by (a)47,800 by the Bradford Irrevocable Trust, (b)47,800 by the Sophia Trust, (c)47,800 by the Mallory Trust, f/o/b the children of the reporting person.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *See* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**From:**          EDGAR.POSTMASTER@sec.gov
**Sent:**          Tuesday, June 03, 2003 2:21 PM
**To:**            secnotices@sendd.com; lapony@bcgi.net
**Subject:**       ACCEPTED FORM TYPE 4 (0001181431-03-009789)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4                  NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  03-Jun-2003 18:21  ACCEPTED DATE:       03-Jun-2003 18:21
FILING DATE:    04-Jun-2003 08:00
TEST FILING:    NO                 CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-03-009789

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:         0001200471
      OWNER:       SNOWDEN EDWARD H
      FORM TYPE:   4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:         0001012887
      COMPANY:     BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

| FORM 4 | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | OMB APPROVAL |
|---|---|---|

Washington, D.C. 20549

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response. . . . 0.5

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 4. Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|
| Snowden, Edward | Boston Communications Group | 05/01/2003 | Director   10% Owner |
| (Last)    (First)    (Middle) | bcgi | | X Officer (give title below)   Other (specify below) |
| 100 Sylvan Road Suite 100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 5. If Amendment, Date of Original (Month/Day/Year) | Description    President & CEO |
| Woburn, MA 01801 | | | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)    (State)    (Zip) | | | X  Form filed by One Reporting Person     Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 05/01/2003 | | S* | | 6,600 | D | $17.715 | 12,964 | D | |
| Common Stock | 05/01/2003 | | S* | | 2,500 | D | $17.715 | 12,964 | D | I (a) |
| Common Stock | 05/01/2003 | | S* | | 2,500 | D | $17.715 | 12,964 | D | I (b) |
| Common Stock | 05/01/2003 | | S* | | 2,500 | D | $17.715 | 12,964 | D | I (c) |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Conver- | 3. | 3A. | 4. | 5. Number of | 6. Date Exercisable(DE) | 7. Title and Amount of | 8. Price | 9. Number of | 10 | 11 Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) | Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.0620 | 05/01/2003 | | X | | | 6,600 | (1) | 2/10/08 | Common Stock | 6,600 | $7.062 | 219,300** | D | |
| Common Stock (Right to Buy) | $7.0620 | 05/01/2003 | | X | | | 2,500 | (1) | 2/10/08 | Common Stock | 2,500 | $7.062 | 50,300 | I | (a) |
| Common Stock (Right to Buy) | $7.0620 | 05/01/2003 | | X | | | 2,500 | (1) | 2/10/08 | Common Stock | 2,500 | $7.062 | 50,300 | I | (b) |
| Common Stock (Right to Buy) | $7.0620 | 05/01/2003 | | X | | | 2,500 | (1) | 2/10/08 | Common Stock | 2,500 | $7.062 | 50,300 | I | (c) |

**Explanation of Responses:**

* Pursuant to a 10b5-1 plan.
** In addition, 150,900 are held indirectly by (a)50,300 by the Bradford Irrevocable Trust,(b)50,300 by The Sophia Trust, (c)50,300 by The Mallory Trust, f/o/b the children of the reporting person.
(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

By: /s/ Edward H. Gurevich

Date: 5/2/03

By: /s/ _____

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15

SEC 1474 (9-02)

U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

## Additional Information Reported For This Form

| Name and Address of Reporting Person *<br>Snowden, Edward | | | Issuer Name<br>and Ticker or Trading Symbol | Statement for<br>(Month/Day/Year) |
|---|---|---|---|---|
| (Last) | (First) | (Middle) | Boston Communications Group<br>bcgi | 05/01/2003 |
| 100 Sylvan Road<br>Suite 100 | | | | |
| (Street) | | | | |
| Woburn, MA 01801 | | | | |
| (City) | (State) | (Zip) | | |

Signed by Alan Bouffard under Power of Attorney dated August 31, 2002.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Friday, May 02, 2003 7:46 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-006727) |

```
THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 02-May-2003 11:44  ACCEPTED DATE:     02-May-2003 11:45
FILING DATE:   02-May-2003 11:44
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-006727

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001200471
      FILER:      SNOWDEN EDWARD H

----------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.
```

SEC Form 4

## FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

**OMB APPROVAL**

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response.....0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

Snowden, Edward

(Last)   (First)   (Middle)

100 Sylvan Road
Suite 100

(Street)

Woburn, MA 01801

(City)   (State)   (Zip)

**2. Issuer Name and Ticker or Trading Symbol**

Boston Communications Group
bcgi

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for (Month/Day/Year)**

04/21/2003

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer (Check all applicable)**

Director __ 10% Owner
X Officer (give title below) __ Other (specify below)

Description   **President & CEO**

**7.** Individual or Joint/Group Filing (Check Applicable Line)

X Form filed by One Reporting Person
__ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 04/21/2003 | | S* | | 2,200 | D | $20.00 | 12,964 | D | |
| Common Stock | 04/21/2003 | | S* | | 800 | D | $20.00 | 12,964 | D | I (a) |
| Common Stock | 04/21/2003 | | S* | | 800 | D | $20.00 | 12,964 | D | I (b) |
| Common Stock | 04/21/2003 | | S* | | 800 | D | $20.00 | 12,964 | D | I (c) |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Conver- | 3. | 3A. | 4. | 5. Number of | 6. Date Exercisable(DE) | 7. Title and Amount of | 8. Price | 9. Number of | 10. | 11. Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr.8) | | Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Underlying Securities (Instr. 3 and 4) | | of Derivative Security (Instr.5) | Derivative Securities Beneficially Owned Following Reported Transaction (s) (Instr. 4) | Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr.4) | Indirect Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.0620 | 04/21/2003 | | X | | | 2,200 | (1) | 2/10/08 | Common Stock | 2,200 | $7,062 | 225,900** | D | |
| Common Stock (Right to Buy) | $7.0620 | 04/21/2003 | | X | | | 800 | (1) | 2/10/08 | Common Stock | 800 | $7,062 | 52,800 | I | (a) |
| Common Stock (Right to Buy) | $7.0620 | 04/21/2003 | | X | | | 800 | (1) | 2/10/08 | Common Stock | 800 | $7,062 | 52,800 | I | (b) |
| Common Stock (Right to Buy) | $7.0620 | 04/21/2003 | | X | | | 800 | (1) | 2/10/08 | Common Stock | 800 | $7,062 | 52,800 | I | (c) |

**Explanation of Responses:**

* Pursuant to a 10b5-1 plan.
** In addition, 158,400 are held indirectly by (a)52,800 by the Bradford Irrevocable Trust,(b)52,800 by The Sophia Trust, (c)52,800 by The Mallory Trust, f/o/b the children of the reporting person.
(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

By: Edward H. Sinoskie

/s/ By: Ola Nee-(illegible)

** Signature of Reporting Person

Date: 4/22/03

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15

SEC 1474 (9-02)

U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

## Additional Information Reported For This Form

| Name and Address of Reporting Person* | | | Issuer Name and Ticker or Trading Symbol | Statement for (Month/Day/Year) |
|---|---|---|---|---|
| Snowden, Edward | | | Boston Communications Group bcgi | 04/21/2003 |
| (Last) | (First) | (Middle) | | |
| 100 Sylvan Road Suite 100 | | | | |
| (Street) | | | | |
| Woburn, MA 01801 | | | | |
| (City) | (State) | (Zip) | | |

Signed by Alan J. Boufard under Power of Attorney dated August 31,2002.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Tuesday, April 22, 2003 2:12 PM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-006034) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  22-Apr-2003 18:12    ACCEPTED DATE:      22-Apr-2003 18:12
FILING DATE:    23-Apr-2003 08:00
TEST FILING:    NO                   CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-006034

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001200471
      FILER:      SNOWDEN EDWARD H

--------------------------- NOTICE ---------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.
```

SEC Form 4

| FORM 4 | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | OMB APPROVAL |
|---|---|---|

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response. . . . . 0.5

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 4 Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|
| Snowden, Edward | Boston Communications Group | 04/17/2003 | |

1. Name and Address of Reporting Person
Snowden, Edward
(Last)    (First)    (Middle)
100 Sylvan Road
Suite 100
(Street)
Woburn, MA 01801
(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol
Boston Communications Group
bcgi

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4 Statement for (Month/Day/Year)
04/17/2003

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

Director _    10% Owner _
X Officer (give title below)    _ Other (specify below)

Description    President & CEO

7. Individual or Joint/Group Filing (Check Applicable Line)
X _ Form filed by One Reporting Person
_ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 04/17/2003 | | S* | | 2,200 | D | $17.00 | 12,964 | D | |
| Common Stock | 04/17/2003 | | S* | | 800 | D | $17.00 | 12,964 | D | I (a) |
| Common Stock | 04/17/2003 | | S* | | 800 | D | $17.00 | 12,964 | D | I (b) |
| Common Stock | 04/17/2003 | | S* | | 800 | D | $17.00 | 12,964 | D | I (c) |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2 Conver- | 3. | 3A. | 4. | 5. Number of | 6 Date Exercisable(DE) | 7. Title and Amount of | 8. Price | 9. Number of | 10. | 11. Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|

# Exhibit 28 – Part 2

| Title of Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Title and Amount of Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) | Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.0620 | 04/17/2003 | | X | | | 2,200 | (1) | 2/10/08 | Common Stock | 2,200 | $7.062 | 228,100** | D | |
| Common Stock (Right to Buy) | $7.0620 | 04/17/2003 | | X | | | 800 | (1) | 2/10/08 | Common Stock | 800 | $7.062 | 53,600 | I | (a) |
| Common Stock (Right to Buy) | $7.0620 | 04/17/2003 | | X | | | 800 | (1) | 2/10/08 | Common Stock | 800 | $7.062 | 53,600 | I | (b) |
| Common Stock (Right to Buy) | $7.0620 | 04/17/2003 | | X | | | 800 | (1) | 2/10/08 | Common Stock | 800 | $7.062 | 53,600 | I | (c) |

**Explanation of Responses:**

* Pursuant to a 10b5-1 plan.
** In addition, 160,800 are held indirectly by (a)53,600 by the Bradford Irrevocable Trust,(b)53,600 by The Sophia Trust, (c)53,600 by The Mallory Trust, f/o/b the children of the reporting person.
(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

Date: 4-21-03

By: /s/ Edward W Record

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15

SEC 1474 (9-02)

https://www.sendd.com/~webdrop/netfile/rrd7515.htm

U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

4/18/2003

**Leslie Apony**

From:          EDGAR.POSTMASTER@sec.gov
Sent:          Monday, April 21, 2003 8:52 AM
To:            secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-03-005934)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 21-Apr-2003 12:52   ACCEPTED DATE:      21-Apr-2003 12:52
FILING DATE:   21-Apr-2003 12:52
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-005934

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:       0001200471
      FILER:     SNOWDEN EDWARD H

---------------------------- NOTICE ----------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

Page 1 of 3

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response.....0.5

**1. Name and Address of Reporting Person**
Snowden, Edward

| (Last) | (First) | (Middle) |

100 Sylvan Road
Suite 100

(Street)

Woburn, MA 01801

| (City) | (State) | (Zip) |

**2. Issuer Name and Ticker or Trading Symbol**
Boston Communications Group
bcgi

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for (Month/Day/Year)**
04/02/2003

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer**
(Check all applicable)

Director __ 10% Owner
X Officer (give title below) __ Other (specify below)

Description **President & CEO**

**7. Individual or Joint/Group Filing (Check Applicable Line)**

X Form filed by One Reporting Person
- Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 04/02/2003 | | S* | | 1,100 | D | $15.00 | 12,964 | D | |
| Common Stock | 04/02/2003 | | S* | | 400 | D | $15.00 | 12,964 | D | I (a) |
| Common Stock | 04/02/2003 | | S* | | 400 | D | $15.00 | 12,964 | D | I (b) |
| Common Stock | 04/02/2003 | | S* | | 400 | D | $15.00 | 12,964 | D | I (c) |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Conver- | 3. | 3A. | 4. | 5. Number of | 6. Date Exercisable(DE) | 7. Title and Amount of | 8. Price | 9. Number of | 10. | 11. Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|

https://www.svndd.com/~webdrop/netfile/rrd7036.htm

4/2/2003

Page 2 of 3

| Title of Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Title and Amount of Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) | Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.0620 | 04/02/2003 | | X | | | 1,100 | (1) | 2/10/08 | Common Stock | 1,100 | $7.062 | 230,300** | D | |
| Common Stock (Right to Buy) | $7.0620 | 04/02/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 54,400 | I | (a) |
| Common Stock (Right to Buy) | $7.0620 | 04/02/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 54,400 | I | (b) |
| Common Stock (Right to Buy) | $7.0620 | 04/02/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 54,400 | I | (c) |

**Explanation of Responses:**

\* Pursuant to a 10b5-1 plan.
\*\* In addition, 163,200 are held indirectly by (a)54,400 by the Bradford Irrevocable Trust,(b)54,400 by The Sophia Trust, (c)54,400 by The Mallory Trust, f/o/b the children of the reporting person.
(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

By: /s/ Edward W. Record

\*\* Signature of Reporting Person

Date: April 2, 2003

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15

SEC 1474 (9-02)

4/2/2003

U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

Leslie Apony

From:           EDGAR.POSTMASTER@sec.gov
Sent:           Wednesday, April 02, 2003 9:21 AM
To:             secnotices@sendd.com; lapony@bcgi.net
Subject:        ACCEPTED FORM TYPE 4 (0001181431-03-005202)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4                     NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  02-Apr-2003 14:20     ACCEPTED DATE:        02-Apr-2003 14:21
FILING DATE:    02-Apr-2003 14:20
TEST FILING:    NO                    CONFIRMING COPY:      NO

ACCESSION NUMBER: 0001181431-03-005202

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:         0001012887
       COMPANY:     BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE:   4
       FILE NUMBER(S):
           1. 000-28432

FILED BY:

    2. CIK:         0001200471
       FILER:       SNOWDEN EDWARD H


------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

Page 1 of 3

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response..... 0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Snowden, Edward | Boston Communications Group | |
| (Last)  (First)  (Middle) | bcgi | ___ Director  ___ 10% Owner |
| 100 Sylvan Road Suite 100 | | X Officer (give title below)  ___ Other (specify below) |
| (Street) | 4. Statement for (Month/Day/Year) | Description ___ President & CEO |
| Woburn, MA 01801 | 04/01/2003 | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)  (State)  (Zip) | 5. If Amendment, Date of Original (Month/Day/Year) | X  Form filed by One Reporting Person |
| 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | | ___  Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 04/01/2003 | | S* | | 3,300 | D | $14.7964 | 12,964 | D | |
| Common Stock | 04/01/2003 | | S* | | 1,300 | D | $14.7964 | 12,964 | D | |
| Common Stock | 04/01/2003 | | S* | | 1,300 | D | $14.7964 | 12,964 | D | |
| Common Stock | 04/01/2003 | | S* | | 1,300 | D | $14.7964 | 12,964 | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Conver- | 3. | 3A | 4. | 5. Number of | 6. Date Exercisable(DE) | 7. Title and Amount of | 8. Price | 9. Number of | 10. | 11. Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|

https://www.sendd.com/~webdrop/netfile/rrd7003.htm

4/2/2003

| Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Title and Amount of Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $7.0620 | 04/01/2003 | | X | | | 3,300 | (1) | 2/10/08 | Common Stock | 3,300 | $7.062 | 231,400** | D | |
| Common Stock (Right to Buy) | $7.0620 | 04/01/2003 | | X | | | 1,300 | (1) | 2/10/08 | Common Stock | 1,300 | $7.062 | 54,800 | I | (a) |
| Common Stock (Right to Buy) | $7.0620 | 04/01/2003 | | X | | | 1,300 | (1) | 2/10/08 | Common Stock | 1,300 | $7.062 | 54,800 | I | (b) |
| Common Stock (Right to Buy) | $7.0620 | 04/01/2003 | | X | | | 1,300 | (1) | 2/10/08 | Common Stock | 1,300 | $7.062 | 54,800 | I | (c) |

**Explanation of Responses:**

* Pursuant to a 10b5-1 plan.
** In addition, 164,400 are held indirectly by (a)54,800 by the Bradford Irrevocable Trust, (b)54,800 by the Sophia Trust, (c)54,800 by The Mallory Trust, f/b/o the children of the reporting person.
(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

By: /s/ Edward J. Bradford

Date: April 2, 2003

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15

SEC 1474 (9-02)

U.S.C. 78f(fa).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Wednesday, April 02, 2003 9:33 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-005207) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

| | | | |
|---|---|---|---|
| COMPANY: | BOSTON COMMUNICATIONS GROUP INC | | |
| FORM TYPE: | 4 | NUMBER OF DOCUMENTS: 1 | |
| RECEIVED DATE: | 02-Apr-2003 14:32 | ACCEPTED DATE: | 02-Apr-2003 14:33 |
| FILING DATE: | 02-Apr-2003 14:32 | | |
| TEST FILING: | NO | CONFIRMING COPY: | NO |

ACCESSION NUMBER: 0001181431-03-005207

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:        0001012887
       COMPANY:    BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE:  4
       FILE NUMBER(S):
           1. 000-28432

FILED BY:

    2. CIK:        0001200471
       FILER:      SNOWDEN EDWARD H

---------------------------- NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response....... 0.5

| 1. Name and Address of Reporting Person* | | | | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|---|---|
| Snowden, Edward | | | | Boston Communications Group bcgi | X Director ____ 10% Owner |
| (Last) (First) (Middle) | | | | | X Officer (give title below) ____ Other (specify below) |
| 100 Sylvan Road Suite 100 | | | | | President & CEO |

| Woburn, MA 01801 | | | | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4. Statement for (Month/Day/Year) 03/20/2003 |
|---|---|---|---|---|---|
| (City) (State) (Zip) | | | | | 5. If Amendment, Date of Original (Month/Day/Year) |
| | | | | | 6. Individual or Joint/Group Filing (Check Applicable Line) X Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/20/2003 | | S* | | 1,100 | D | $15.0073 | 12,964 | D | |
| Common Stock | 03/20/2003 | | S* | | 400 | D | $15.02 | 12,964 | D | |
| Common Stock | 03/20/2003 | | S* | | 400 | D | $15.02 | 12,964 | D | |
| Common Stock | 03/20/2003 | | S* | | 400 | D | $15.02 | 12,964 | D | |

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Conver- | 3. | 3A. | 4. | 5. Number of | 6. Date Exercisable(DE) | | 7. Title and Amount of | 8. Price | 9. Number of | 10. | 11. Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Page 2 of 3

SEC 1474 (9-02)

| Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | Date Exercisable and Expiration Date (ED) (Month/Day/Year) | | Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Stock Option | $7.0620 | 03/20/2003 | | X | | | 1,100 | (1) | 2/10/08 | Common Stock | 1,100 | $7.062 | 234,700** | D | |
| Stock Option | $7.0620 | 03/20/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 56,100 | I | (a) |
| Stock Option | $7.0620 | 03/20/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 56,100 | I | (b) |
| Stock Option | $7.0620 | 03/20/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 56,100 | I | (c) |

**Explanation of Responses:**

\* Pursuant to a 10b5-1 plan.

\*\* In addition, 168,300 are held indirectly by (a)56,100 by the Bradford Irrevocable Trust,(b)56,100 by The Sophia Trust, (c)56,100 by The Mallory Trust,

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

**Additional Information Reported For This Form**

| Name and Address of Reporting Person* | Issuer Name and Ticker or Trading Symbol | Statement for (Month/Day/Year) |
|---|---|---|
| Snowden, Edward | | |

By: /s/ Edward H. Snowden

\*\* Signature of Reporting Person

Date: 3/21/03

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

Boston Communications Group
bcgi

03/20/2003

(Last)

(First)

(Middle)

100 Sylvan Road
Suite 100

(Street)

Woburn, MA 01801

(City)

(State)

(Zip)

Signed by Alan J. Bouffard under Power of Attorney dated August 31, 2002

**Leslie Apony**

| | |
|---|---|
| **From:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Friday, March 21, 2003 9:32 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-004602) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 21-Mar-2003 14:32    ACCEPTED DATE:      21-Mar-2003 14:32
FILING DATE:   21-Mar-2003 14:32
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-004602

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:       0001200471
      FILER:     SNOWDEN EDWARD H

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

SEC Form 4

**FORM 4**

| | | | OMB APPROVAL |
|---|---|---|---|
| | | | OMB Number: 3235-0287 |
| | | | Expires: January 31, 2005 |
| | | | Estimated average burden hours per response... 0.5 |

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Snowden, Edward | Boston Communications Group begi | X Director __ 10% Owner |
| (Last)    (First)    (Middle) | | X Officer (give title below) __ Other (specify below) |
| 100 Sylvan Road Suite 100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | Description          **President & CEO** |
| Woburn, MA 01801 | 4. Statement for (Month/Day/Year)  **03/06/2003** | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)    (State)    (Zip) | 5. If Amendment, Date of Original (Month/Day/Year) | X Form filed by One Reporting Person __ Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/06/2003 | | S* | | 900 | D | $13.00 | 12,964 | D | I (a) |
| Common Stock | 03/06/2003 | | S* | | 200 | D | $13.00 | 12,964 | D | I (a) |
| Common Stock | 03/06/2003 | | S* | | 200 | D | $13.00 | 12,964 | D | I (b) |
| Common Stock | 03/06/2003 | | S* | | 200 | D | $13.00 | 12,964 | D | I (c) |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)**

| 1 Title of | 2. Conver- | 3. | 3A. | 4. | 5 Number of | 6. Date Exercisable(DE) | 7. Title and Amount of | 8. Price | 9. Number of | 10 | 11 Nature of |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Transaction Date (Month/Day/Year) | Deemed Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Owner-ship Form of Derivative Securities: Direct (I) or Indirect (I) (Instr. 4) | Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Stock Option | $7.0620 | 03/06/2003 | | X | | | 900 | (1) | 2/10/008 | Common Stock | 900 | $7.062 | 235,800* | D | |
| Stock Option | $7.0620 | 03/06/2003 | | X | | | 200 | (1) | 2/10/008 | Common Stock | 200 | $7.062 | 56,500 | I | (a) |
| Stock Option | $7.0620 | 03/06/2003 | | X | | | 200 | (1) | 2/10/008 | Common Stock | 200 | $7.062 | 56,500 | I | (b) |
| Stock Option | $7.0620 | 03/06/2003 | | X | | | 200 | (1) | 2/10/008 | Common Stock | 200 | $7.062 | 56,500 | I | (c) |

**Explanation of Responses:**

\* Pursuant to a 10b5-1 plan.

\*\* In addition, 169,500 are held indirectly by (a)56,500 by the Bradford Irrevocable Trust,(b)56,500 by The Sophia Trust, (c)56,500 by The Mallory Trust, f/o/b the children of the reporting person.

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

By: /s/ [signature]    Date: 3-7-03

\*\* Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| **rom:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Friday, March 07, 2003 6:56 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-003936) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 07-Mar-2003 11:55    ACCEPTED DATE:      07-Mar-2003 11:56
FILING DATE:   07-Mar-2003 11:55
TEST FILING:   NO              CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-03-003936

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001200471
      FILER:      SNOWDEN EDWARD H

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

**FORM 4**

[ ] Check this box if no longer subject to Section 16, Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response..... 0.5

1. Name and Address of Reporting Person *

Snowden, Edward

(Last)    (First)    (Middle)

100 Sylvan Road
Suite 100

Woburn, MA  01801

(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol

Boston Communications Group
bcgi

5. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for (Month/Day/Year)

03/03/2003

3. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

__ Director    __ 10% Owner
X Officer (give title below)    __ Other (specify below)

Description

**President & CEO**

7. Individual or Joint/Group Filing (Check Applicable Line)
X  Form filed by One Reporting Person
__ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/03/2003 | | S* | | 2,200 | D | $12.6465 | 12,964 | D | |
| Common Stock | 03/03/2003 | | S* | | 900 | D | $12.6465 | 12,964 | D | I (a) |
| Common Stock | 03/03/2003 | | S* | | 900 | D | $12.6465 | 12,964 | D | I (b) |
| Common Stock | 03/03/2003 | | S* | | 900 | D | $12.6465 | 12,964 | D | I (c) |
| Common Stock | 03/03/2003 | | S* | | 200 | D | $13.09 | 12,964 | D | |
| Common Stock | 03/03/2003 | | S* | | 200 | D | $13.09 | 12,964 | D | I (a) |
| Common Stock | 03/03/2003 | | S* | | 200 | D | $13.09 | 12,964 | D | I (b) |
| Common Stock | 03/03/2003 | | S* | | 200 | D | $13.09 | 12,964 | D | I (c) |

Page 2 o..

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |
| Stock Option | $7.0620 | 03/03/2003 | | X | | | 2,400 | (1) | 2/10/08 | Common Stock | 2,400 | $7.062 | 236,700** | D | |
| Stock Option | $7.0620 | 03/03/2003 | | X | | | 1,100 | (1) | 2/10/08 | Common Stock | 1,100 | $7.062 | 56,700 | I | (a) |
| Stock Option | $7.0620 | 03/03/2003 | | X | | | 1,100 | (1) | 2/10/08 | Common Stock | 1,100 | $7.062 | 56,700 | I | (b) |
| Stock Option | $7.0620 | 03/03/2003 | | X | | | 1,100 | (1) | 2/10/08 | Common Stock | 1,100 | $7.062 | 56,700 | I | (c) |

**Explanation of Responses:**

* Pursuant to a 10b5-1 plan.

** In addition, 170,100 are held indirectly by (a)56,700 by the Bradford Irrevocable Trust, (b)56,700 by The Sophia Trust, (c)56,700 by The Mallory Trust, f/o/b the children of the reporting person.

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

By: /s/ _Edward W. Savior_    Date: 3/4/03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

## Additional Information Reported For This Form

| Issuer Name and Ticker or Trading Symbol | Statement for (Month/Day/Year) |
|---|---|
| Boston Communications Group bcgi | 03/03/2003 |

Name and Address of Reporting Person*
Snowden, Edward

| (Last) | (First) | (Middle) |
|---|---|---|

100 Sylvan Road
Suite 100

| (Street) |
|---|

Woburn,   MA   01801

| (City) | (State) | (Zip) |
|---|---|---|

Signed by Alan J. Bouffard under Power of Attorney dated August 31,2002

**Leslie Apony**

| | |
|---|---|
| **rom:** | EDGAR.POSTMASTER@sec.gov |
| **Jent:** | Tuesday, March 04, 2003 9:29 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-003729) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4            NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  04-Mar-2003 14:29    ACCEPTED DATE:     04-Mar-2003 14:29
FILING DATE:    04-Mar-2003 14:29
TEST FILING:    NO           CONFIRMING COPY:   NO
```

ACCESSION NUMBER: 0001181431-03-003729

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

  1. CIK:       0001012887
     COMPANY:   BOSTON COMMUNICATIONS GROUP INC
     FORM TYPE: 4
     FILE NUMBER(S):
        1. 000-28432

FILED BY:

  2. CIK:       0001200471
     FILER:     SNOWDEN EDWARD H

------------------------------ NOTICE ----------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

## FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

### UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response.... 0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Snowden, Edward (Last) (First) (Middle) | Boston Communications Group bcgi | 4. Statement for (Month/Day/Year) 02/28/2003 |
| 100 Sylvan Road Suite 100 (Street) | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | |
| Woburn, MA 01801 (City) (State) (Zip) | 5. If Amendment, Date of Original Filing (Month/Day/Year) | |

Relationship: ___ Director    ___ 10% Owner
X Officer (give title below)    ___ Other (specify below)

Description: **President & CEO**

X Form filed by One Reporting Person
- Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 02/28/2003 | | A | | 2,291 | A | $7,557 | 12,964 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|



| | Security | | Year) | | (Month/ Day/ Year) | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | Reported Transaction (s) (Instr 4) | Securities: Direct (D) or Indirect (I) (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |

or Disposed Of (D) (Instr. 3, 4 and 5)

**Explanation of Responses:**

Shares purchased under bcgi's Employee Stock Purchase Plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

By: /s/ By: Edward H Snowden

under power of Attorney dated 5/31/02

** Signature of Reporting Person

Date: 3/3/03

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| **rom:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Monday, March 03, 2003 8:14 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-003583) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4                 NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 03-Mar-2003 13:14   ACCEPTED DATE:      03-Mar-2003 13:14
FILING DATE:   03-Mar-2003 13:14
TEST FILING:   NO                CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-003583

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE: 4
       FILE NUMBER(S):
           1. 000-28432

FILED BY:

    2. CIK:       0001200471
       FILER:     SNOWDEN EDWARD H
```

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

**FORM 4**

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response....0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Snowden, Edward (Last) (First) (Middle) | Boston Communications Group bcgi | __ Director __ 10% Owner <br> X Officer (give title below) __ Other (specify below) |
| 100 Sylvan Road Suite 100 (Street) | 4. Statement for (Month/Day/Year) 02/21/2003 | Description <br> President & CEO |
| Woburn, MA  01801 (City) (State) (Zip) | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 7. Individual or Joint/Group Filing (Check Applicable Line) <br> X Form filed by One Reporting Person <br> __ Form filed by More than One Reporting Person |
| | 5. If Amendment, Date of Original (Month/Day/Year) | |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 02/28/2002 | | A | | 854 | A | $7.319 | 9,193 | D | |
| Common Stock | 08/30/2002 | | A | | 2005 | A | $7.31 | 11,198 | D | |
| Common Stock | 12/12/2002 | | G | | 375 | D | | 10,823 | D | |
| Common Stock | 12/12/2002 | | G | | 150 | D | | 10,673 | D | |

file://C:\Documents%20and%20Settings\lapony\Local%20Settings\Temporary%20Internet%20Files\OLK8\rd54121.htm

Page 7 of 3

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/ Day/ Year) | 3A. Deemed Execution Date, if any (Month/ Day/ Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |

Explanation of Responses:

** Signature of Reporting Person

By: /s/ _____    Date: 2-21-03

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

Page 3 of 3

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Friday, February 21, 2003 4:42 AM |
| To: | secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-003126) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4            NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  21-Feb-2003 09:41   ACCEPTED DATE:      21-Feb-2003 09:42
FILING DATE:    21-Feb-2003 09:41
TEST FILING:    NO           CONFIRMING COPY:    NO
```

ACCESSION NUMBER: 0001181431-03-003126

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:       0001200471
      FILER:     SNOWDEN EDWARD H

---------------------------- NOTICE ----------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

SEC Form 4

# FORM 4

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response . . . . . 0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Snowden, Edward (Last) (First) (Middle) | Boston Communications Group bcgi | X Director _ 10% Owner <br> X Officer (give title below) _ Other (specify below) |
| 100 Sylvan Road Suite 100 (Street) | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | Description <br> President & CEO |
| Woburn, MA 01801 (City) (State) (Zip) | 4. Statement for (Month/Day/Year) 02/06/2003 | 7. Individual or Joint/Group Filing (Check Applicable Line) <br> X Form filed by One Reporting Person <br> _ Form filed by More than One Reporting Person |
| | 5. If Amendment, Date of Original (Month/Day/Year) | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 02/02/2003 | | S* | | 1,100 | D | $13.0939 | 8,339 | D | I (a) |
| Common Stock | 02/05/2003 | | S* | | 400 | D | $13.0939 | 8,339 | D | I (a) |
| Common Stock | 02/06/2003 | | S* | | 400 | D | $13.0939 | 8,339 | D | I (b) |
| Common Stock | 02/06/2003 | | S* | | 400 | D | $13.0939 | 8,339 | D | I (c) |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative | 2. Conversion or | 3. Transaction | 3A. Deemed | 4. Transaction | 5. Number of Derivative | 6. Date Exercisable(DE) and | 7. Title and Amount of Underlying Securities | 8. Price of | 9. Number of Derivative | 10. Owner- | 11. Nature of Indirect |

Page 1 o

Page 2 of 2

| Security (Instr. 3) | Exercise Price of Derivative Security | Date (Month/Day/Year) | Execution Date, if any (Month/Day/Year) | Code (Instr. 8) | | Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Expiration Date(ED) (Month/Day/Year) | | Title | Amount or Number of Shares | Derivative Security (Instr. 5) | Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Beneficial Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | | | | |
| Stock Option | $7.0620 | 02/06/2003 | | X | | | 1,100 | (1) | 2/10/08 | Common Stock | 1,100 | $7.062 | 239,100** | D |
| Stock Option | $7.0620 | 02/06/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 57,800 | I | (a) |
| Stock Option | $7.0620 | 02/06/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 57,800 | I | (b) |
| Stock Option | $7.0620 | 02/06/2003 | | X | | | 400 | (1) | 2/10/08 | Common Stock | 400 | $7.062 | 57,800 | I | (c) |

**Explanation of Responses:**

* Pursant to a 10b5-1 plan.

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

** In addition, 173,400 are held indirectly by (a)57,800 by the Bradford Irrevocable Trust,(b)57,800 by The Sophia Trust, (c)57,800 by The Mallory Trust, (f)/b the children of the reporting person.

By:  /s/ Edward M. Krawch

** Signature of Reporting Person

Date:  February 7, 2003

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| **rom:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Friday, February 07, 2003 7:16 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-001849) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 07-Feb-2003 12:16   ACCEPTED DATE:      07-Feb-2003 12:16
FILING DATE:   07-Feb-2003 12:16
TEST FILING:   NO              CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-001849

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

  1. CIK:       0001012887
     COMPANY:   BOSTON COMMUNICATIONS GROUP INC
     FORM TYPE: 4
     FILE NUMBER(S):
       1. 000-28432

FILED BY:

  2. CIK:       0001200471
     FILER:     SNOWDEN EDWARD H
```

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response. . . . .0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 4. Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|
| Snowden, Edward | Boston Communications Group bcgi | 02/04/2003 | __ Director __ 10% Owner  X Officer (give title below) __ Other (specify below) |
| (Last)    (First)    (Middle) | | | Description    President & CEO |
| 100 Sylvan Road Suite 100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 5. If Amendment, Date of Original (Month/Day/Year) | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn, MA 01801 | | | X Form filed by One Reporting Person |
| (City)    (State)    (Zip) | | | __ Form filed by More than One Reporting Person |

7. Nature of Indirect Beneficial Ownership (Instr. 4)

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |

### Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction (s) (Instr.4) | 10. Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr.4) | 11. Nature of Indirect Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |

| Common Stock | $11.68 | 02/04/2003 | A | 20,000 | (1) | 2/4/2013 | Common Stock | 20,000 | $11.68 | 240,200 | D | * |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Explanation of Responses:**

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant. Subject to accelerated vesting in whole or in part based on performance goals being met.

* In addition, 174,600 are held indirectly (58,200 by the Bradford Irrevocable Trust, 58,200 by the Sophia Trust, 58,200 by the Mallory Trust, f/o/b the children of the reporting person.

By:
/s/ E. U. Deard

** Signature of Reporting Person

Date: February 5, 2003

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| `rom:` | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Wednesday, February 05, 2003 6:59 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-001615) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  05-Feb-2003 11:59    ACCEPTED DATE:      05-Feb-2003 11:59
FILING DATE:    05-Feb-2003 11:59
TEST FILING:    NO              CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-001615

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

  1. CIK:        0001012887
     COMPANY:    BOSTON COMMUNICATIONS GROUP INC
     FORM TYPE:  4
     FILE NUMBER(S):
        1. 000-28432

FILED BY:

  2. CIK:        0001200471
     FILER:      SNOWDEN EDWARD H
```

---------------------------- NOTICE --------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response. . . . 0.5

| 1. Name and Address of Reporting Person* |
|---|
| Snowden, Edward |

| (Last) | (First) | (Middle) |

100 Sylvan Road
Suite 100

(Street)

Woburn, MA 01801

| (City) | (State) | (Zip) |

| 2. Issuer Name and Ticker or Trading Symbol |
|---|
| Boston Communications Group bcgi |

| 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) |

| 4. Statement for (Month/Day/Year) |
|---|
| 02/03/2003 |

| 5. If Amendment, Date of Original (Month/Day/Year) |

| 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|
| _ Director   _ 10% Owner |
| X Officer (give title below)   _ Other (specify below) |
| Description   **President & CEO** |

| 7. Individual or Joint/Group Filing (Check Applicable Line) |
|---|
| X Form filed by One Reporting Person |
| _ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 02/03/2003 | | S* | | 2,200 | D | $11.9628 | 8,339 | D | |
| Common Stock | 02/03/2003 | | S* | | 900 | D | $11.9628 | 8,339 | D | |
| Common Stock | 02/03/2003 | | S* | | 900 | D | $11.9628 | 8,339 | D | |
| Common Stock | 02/03/2003 | | S* | | 900 | D | $11.9628 | 8,339 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative | 2. Conversion or | 3. Transaction | 3A. Deemed | 4. Transaction | 5. Number of Derivative | 6. Date Exercisable(DE) and | 7. Title and Amount of Underlying Securities | 8. Price of | 9. Number of Derivative | 10. Owner- | 11. Nature of Indirect |

| Security (Instr. 3) | Exercise Price of Derivative Security | Date (Month/Day/Year) | Execution Date, if any (Month/Day/Year) | Code (Instr.8) | | Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | Expiration Date (ED) (Month/Day/Year) | | Title | Amount or Number of Shares (Instr. 3 and 4) | Derivative Security (Instr.5) | Securities Beneficially Owned Following Reported Transaction(s) (Instr.4) | ship Form of Derivative Securities: Direct (D) or Indirect (I) (Instr.4) | Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | | | | | |
| Stock Option | $7.0620 | 02/03/2003 | | X | | | 2,200 | (1) | 2/10/08 | Common Stock | 2,200 | $7.062 | 220,200** | D | |
| Stock Option | $7.0620 | 02/03/2003 | | X | | | 900 | (1) | 2/10/08 | Common Stock | 900 | $7.062 | 58,200 | I | (a) |
| Stock Option | $7.0620 | 02/03/2003 | | X | | | 900 | (1) | 2/10/08 | Common Stock | 900 | $7.062 | 58,200 | I | (b) |
| Stock Option | $7.0620 | 02/03/2003 | | X | | | 900 | (1) | 2/10/08 | Common Stock | 900 | $7.062 | 58,200 | I | (c) |

**Explanation of Responses:**

* Pursuant to a 10b5-1 plan.

** In addition, 174,600 are held indirectly by (a)58,200 by the Bradford Irrevocable Trust,(b)58,200 by The Sophia Trust, (c)58,200 by The Mallory Trust, f/o/b the children of the reporting person.

By: /s/ _Edward M Bradl_   Date: 2-4-03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| **rom:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Tuesday, February 04, 2003 7:28 AM |
| **To:** | secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-001510) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 04-Feb-2003 12:27    ACCEPTED DATE:    04-Feb-2003 12:28
FILING DATE:   04-Feb-2003 12:27
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-001510

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001200471
      FILER:      SNOWDEN EDWARD H

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

FORM 4

o   Check this box if no longer
    subject to Section 16. Form 4
    or Form 5 obligations may
    continue. *See* Instruction 1(b).

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number........... 3235-0287
Expires............... January 31, 2005
Estimated average burden
hours per response......... 0.5

(Print or Type Responses)

1. Name and Address of Reporting Person*

Snowden        Edward        H.
(Last)         (First)       (Middle)

C/O Boston Communications Group Inc.
100 Sylvan Road, Suite 100
(Street)

Woburn         MA            01801
(City)         (State)       (Zip)

2. Issuer Name and Ticker or Trading Symbol

BCGI
Boston Communications Group, Inc.

3. I.R.S. Identification
Number of Reporting
Person, if an entity
(voluntary)

4. Statement for
Month/Day/Year

1/15/03

5. If Amendment,
Date of Original
(Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

X  Director                    10% Owner
X  Officer (give               Other (specify
   title below)                   below)

President & Chief Executive Officer

7. Individual or Joint/Group Filing
(Check applicable line)

X  Form filed by One Reporting Person
   Form filed by More than One Reporting Person

**Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 1/15/03 | - | S* | - | 2,200 | D | 12.5016 | 8,339 | D | - |
| Common Stock | 1/15/03 | - | S* | - | 900 | D | 12.5016 | 8,339 | D | I (a) |
| Common Stock | 1/15/03 | - | S* | - | 900 | D | 12.5016 | 8,339 | D | I (b) |
| Common Stock | 1/15/03 | - | S* | - | 900 | D | 12.5016 | 8,339 | D | I (c) |

* Pursuant to 10B5-1 plans.

(a) Bradford Irrevocable Trust, (b) Sophia Trust, (c) Mallory Trust, f/o/b the children of the reporting person.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

(Over)
SEC 1474 (3-02)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(*e.g.*, puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 7.062 | 1/15/03 | - | X | - | 0 | 2,200 | (1) | 2/10/08 | Common Stock | 2,200 | 7.062 | 222,400* | D | |
| Stock Option (right to buy) | 7.062 | 1/15/03 | - | X | - | 0 | 900 | (1) | 2/10/08 | Common Stock | 900 | 7.062 | 59,100 | I (a) | |
| Stock Option (right to buy) | 7.062 | 1/15/03 | - | X | - | 0 | 900 | (1) | 2/10/08 | Common Stock | 900 | 7.062 | 59,100 | I (b) | |
| Stock Option (right to buy) | 7.062 | 1/15/03 | - | X | - | 0 | 900 | (1) | 2/10/08 | Common Stock | 900 | 7.062 | 59,100 | I (c) | |

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

* In addition, 177,300 are held indirectly ((a) 59,100 by the Bradford Irrevocable Trust, (b) 59,100 by the Sophia Trust, (c) 59,100 by the Mallory Trust, *f/o/b* the children of the reporting person.)

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

_____   1-16-0?
**Signature of Reporting Person       Date

Note:  File three copies of this Form, one of which must be manually signed.
If space is insufficient, *see* Instruction 6 for procedure.

Page 2
SEC 1474 (3-93)



BY OVERNIGHT DELIVERY

January 16, 2003

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

     Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

     Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

     If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

                    Very truly yours,

                    Leslie N Apony

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

OMB APPROVAL

OMB Number: . . . . . . . . . . . 3235-0287
Expires: . . . . . . . . . . . . . January 31, 2005
Estimated average burden
hours per response: . . . . . . . . . 0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

**Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).**

| 1. Name and Address of Reporting Person* | | | | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|---|---|
| Snowden | Edward | H. | | BCGI Boston Communications Group, Inc. | X Director      10% Owner |
| (Last) | (First) | (Middle) | | | X Officer (give title below)   Other (specify below) |
| C/O Boston Communications Group Inc. 100 Sylvan Road, Suite 100 | | | | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | President & Chief Executive Officer |
| (Street) | | | | 4. Statement for Month/Day/Year 12/16/02 | |
| Woburn | MA | 01801 | | 5. If Amendment, Date of Original (Month/Day/Year) | 7. Individual or Joint/Group Filing (Check applicable line) X Form filed by One Reporting Person    Form filed by More than One Reporting Person |
| (City) | (State) | (Zip) | | | |

## Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/16/02 | | S | | 1,419 | D | 13.70 | 11,539 | D | |
| Common Stock | 12/16/02 | | S | | 1,400 | D | 13.7043 | 10,139 | D | |
| Common Stock | 12/16/02 | | S | | 1,000 | D | 13.651 | 9,139 | D | |
| Common Stock | 12/16/02 | | S | | 800 | D | 13.6687 | 8,339 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (1-77)

(Over)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | | | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | Beneficially Owned at End of Month (Instr. 4) | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophia Trust, 60,000 by the Mallory Trust, f/b/o the children of the reporting person.

**Signature of Reporting Person**

Date: 12-17-02

Note:  File three copies of this Form, one of which must be manually signed.
       If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Page 2
SEC 1474 (1-91)



BY OVERNIGHT DELIVERY

December 17, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Leslie N Apony

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

**FORM 4**

o  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See Instruction 1(b).*

OMB APPROVAL

OMB Number............ 3235-0287
Expires.................... January 31, 200_
Estimated average burden
hours per response.......... _

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

Snowden (Last)   Edward (First)   H. (Middle)

C/O Boston Communications Group Inc. 100 Sylvan Road, Suite 100 (Street)

Woburn (City)   MA (State)   01801 (Zip)

**2. Issuer Name and Ticker or Trading Symbol**
BCGI
Boston Communications Group, Inc.

**3. I.R.S. Identification Number of Reporting Person, if an entity** (voluntary)

**4. Statement for Month/Day/Year**
12/16/02

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer (Check all applicable)**
X  Director        10% Owner
X  Officer (give title below)   Other (specify below)
President & Chief Executive Officer

**7.** Individual or Joint/Group Filing (Check applicable line)
X  Form filed by One Reporting Person
   Form filed by More than One Reporting Person

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) Code | V | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) Amount | (A) or (D) | Price | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock | 12/16/02 | | S | | 3,000 | D | 13.5973 | 24,958 | D | |
| Common Stock | 12/16/02 | | S | | 3,000 | D | 13.54 | 21,958 | D | |
| Common Stock | 12/16/02 | | S | | 1,871 | D | 13.4996 | 20,087 | D | |
| Common Stock | 12/16/02 | | S | | 1,129 | D | 13.65 | 18,958 | D | |
| Common Stock | 12/16/02 | | S | | 2,700 | D | 13.6578 | 16,258 | D | |
| Common Stock | 12/16/02 | | S | | 2,000 | D | 13.6675 | 14,258 | D | |
| Common Stock | 12/16/02 | | S | | 1,300 | D | 13.70 | 12,958 | D | |

Reminder:  Report on a separate line for each class of securities beneficially owned directly or indirectly.
*  If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (1-99)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

* In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophia Trust, 60,000 by the Mallory Trust, f/o/b the children of the reporting person.
reporting person.

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note:* File three copies of this Form, one of which must be manually signed.
If space is insufficient, *see* Instruction 6 for procedure.

_____    12-17-02
**Signature of Reporting Person    Date

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number

Page 7
SEC 1474 (1-99)



BY OVERNIGHT DELIVERY

December 17, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

    Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Leslie N Apony

Enclosure

cc:  E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

o   Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number..............3235-0287
Expires.................January 31, 200_
Estimated average burden
hours per response...........0.5

(Print or Type Responses)

**1. Name and Address of Reporting Person***

Snowden, Edward H.
(Last) (First) (Middle)

C/O Boston Communications Group Inc.
100 Sylvan Road, Suite 100
(Street)

Woburn     MA     01801
(City)     (State)     (Zip)

**2. Issuer Name and Ticker or Trading Symbol**
BCGI
Boston Communications Group, Inc.

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for Month/Day/Year**
12/02/02

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer (Check all applicable)**

X Director ____ 10% Owner

X Officer (give title below) ____ Other (specify below)

President & Chief Executive Officer

**7. Individual or Joint/Group Filing (Check applicable line)**

X Form filed by One Reporting Person

____ Form filed by More than One Reporting Person

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/02/02 | | S* | - | 3,300 | D | 13.7564 | 27,958 | D | - |

* Pursuant to a 10B5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

SEC 1474 (9-02)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 6.4375 | 12/2/02 | - | X | - | 0 | 3,300 | 2/28/01 | 4/18/10 | Common Stock | 3,300 | 6.4375 | 224,600* | D | |

\* In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophia Trust, 60,000 by the Mallory Trust, f/o/b the children of the reporting person.

porting person.

\*\*Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note:*  File three copies of this Form, one of which must be manually signed.
If space is insufficient, *see* Instruction 6 for procedure.

_____
\*\*Signature of Reporting Person

12-03-0_
Date

SEC 1474 (3-99)



BY OVERNIGHT DELIVERY

December 16, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

    Enclosed is a Form 4 for E.Y. Snowden dated 12/2/02, that was sent to us from Middleby Cooking Systems Group.  This document was mistakenly attached to some document sent to them.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

                Very truly yours,

                Leslie N Apony

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel· 781-904-5000
fax: 781-904-560'.
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

o  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number..............3235-0287
Expires...................January 31, 2005
Estimated average burden
hours per response........0.5

| 1. Name and Address of Reporting Person* | | | 2. Issuer Name and Ticker or Trading Symbol BCGI  Boston Communications Group, Inc. | | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|---|---|
| Snowden (Last) | Edward (First) | H. (Middle) | | | X  Director  ___ 10% Owner  X  Officer (give title below)  ___ Other (specify below)  President & Chief Executive Officer |
| C/O Boston Communications Group Inc. 100 Sylvan Road, Suite 100 (Street) | | | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4. Statement for Month/Day/Year  11/11/02 | |
| Woburn (City) | MA (State) | 01801 (Zip) | | 5. If Amendment, Date of Original (Month/Day/Year) | 7. Individual or Joint/Group Filing (Check applicable line)  X  Form filed by One Reporting Person  ___ Form filed by More than One Reporting Person |

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A.Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 11/11/02 | - | S* | - | 30,800 | D | 13.4022 | 27,958 | D | - |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

\* Pursuant to a 10B5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-00)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 7.062 | 11/11/02 | - | X | - | 0 | 30,800 | (1) | 2/10/08 | Common Stock | 30,800 | 7.062 | 227,900* | D | |

(1) Exercisable in five equal installments commencing on the anniversary of the date of grate.

* In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophia Trust, 60,000 by the Mallory Trust, f/o/b the children of the reporting person, f/o/b the children of file reporting person.

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:   File three copies of this Form, one of which must be manually signed.
If space is insufficient, see Instruction 6 for procedure.

_____          _____
**Signature of Reporting Person          Date



BY OVERNIGHT DELIVERY

November 12 , 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

    Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

                            Very truly yours,

                            Leslie N Apony

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
*www.bcgi.net*
*Boston Communications Group, Inc.*

OMB APPROVAL

OMB Number: .............3235-0287
Expires: .............January 31, 2005
Estimated average burden
hours per response........ .........

| FORM 4 |
| --- |

o    Check this box if no longer
     subject to Section 16. Form 4
     or Form 5 obligations any
     continue. *See* Instruction 1(b).

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
| --- | --- | --- |
| Snowden          Edward          H.<br>(Last)      (First)      (Middle)<br><br>C/O Boston Communications Group Inc.<br>100 Sylvan Road, Suite 100<br>(Street)<br><br>Woburn      MA      01801<br>(City)      (State)      (Zip) | BCGI<br>Boston Communications Group, Inc.<br><br>3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)<br><br>4. Statement for Month/Day/Year<br>11/1/02<br><br>5. If Amendment, Date of Original (Month/Day/Year) | X  Director      ___ 10% Owner<br>X  Officer (give      ___ Other (specify<br>    title below)              below)<br><br>President & Chief Executive Officer<br><br>7. Individual or Joint/Group Filing (Check applicable line)<br>X ___ Form filed by One Reporting Person<br>___ Form filed by More than One Reporting Person |

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 11/1/02 | - | S* | - | 2,200 | D | 12.82 | 27,958 | D | -- |
| Common Stock | 11/1/02 | - | S* | - | 1,100 | D | 13.06 | 27,958 | D | -- |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

* Pursuant to a 10B5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

(Over)
SEC 1474 (3-91)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities: Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 6.00 | 11/1/02 | - | X | - | 0 | 2,200 | 2/28/01 | 4/18/10 | Common Stock | 2,200 | 0 | 259,800* | D | - |
| Stock Option (right to buy) | 6.00 | 11/1/02 | - | X | - | 0 | 1,100 | 2/28/01 | 4/18/10 | Common Stock | 1,100 | 0 | 258,700* | D | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

* In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophia Trust, 60,000 by the Mallory Trust, f/b/o the children of the reporting person. reporting person.

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:    File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Edward H. Swindle

By: [signature]
with Power of Attorney dated 8/31/02

**Signature of Reporting Person

11/1/02
Date

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

Page: *
SEC 1474 (3-9*)



BY OVERNIGHT DELIVERY

November 4 , 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a
Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director
and officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000.
Thank you for your assistance with this matter.

Very truly yours,

Leslie N Apony

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 0180:
tel: 781-904-5000
fax: 781-904-560:
www.bcgi.net
Boston Communications Group, Inc.

**FORM 4**

o  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See Instruction 1(b).*

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

OMB APPROVAL

OMB Number..............3235-0287
Expires...............January 31, 2005
Estimated average burden
hours per response.............

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Snowden   Edward   H. | BCGI   Boston Communications Group, Inc. | X  Director         10% Owner |
| (Last)    (First)    (Middle) | | X  Officer (give         Other (specify |
| C/O Boston Communications Group Inc. 100 Sylvan Road, Suite 100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | title below)         below) |
| (Street) | 4. Statement for Month/Day/Year   08/28/02 | President & Chief Executive Officer |
| Woburn    MA    01801 | 5. If Amendment, Date of Original (Month/Day/Year) | 7. Individual or Joint/Group Filing (Check applicable line) |
| (City)    (State)    (Zip) | | ☒  Form filed by One Reporting Person |
| | | Form filed by More than One Reporting Person |

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/28/02 | | S* | - | 1,100 | D | 13.00 | 27,958 | D | - |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

\* Pursuant to a 10B5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-99)

FORM 4 (continued)

## Table II – Derivative Securities Acquireu, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities: Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 6.00 | 10/28/02 | - | X | - | 0 | 1,100 | 2/28/01 | 4/18/10 | Common Stock | 1,100 | 0 | 262,000 | D | - |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Edward H. Snowden

by [signature] **Signature of Reporting Person
pursuant to a power of attorney dated
8/31/02 (copy attached)

10/29/02
Date

\*\*Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note.* File three copies of this Form, one of which must be manually signed.
If space is insufficient, *see* Instruction 6 for procedure.

Page 2
SEC 1474 (3-99)

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.



BY OVERNIGHT DELIVERY

October 29, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a
Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director
and officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000.
Thank you for your assistance with this matter.

Very truly yours,

Thomas H. Kelly

Enclosure

cc:    E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

◌ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number:............. 3235-0287
Expires:..............January 31, 2005
Estimated average burden
hours per response.................0.5

| | |
|---|---|
| **1. Name and Address of Reporting Person\*** | |
| Snowden          Edward          H. | |
| (Last)          (First)          (Middle) | |
| C/O Boston Communications Group Inc. 100 Sylvan Road, Suite 100 | |
| (Street) | |
| Woburn          MA          01801 | |
| (City)          (State)          (Zip) | |

**2. Issuer Name and Ticker or Trading Symbol**
BCGI
Boston Communications Group, Inc.

**3. I.R.S. Identification Number of Reporting Person, If an entity** (voluntary)

**4. Statement for Month/Day/Year**
08/02

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer** (Check all applicable)

X  Director          10% Owner
X  Officer (give title below)          Other (specify below)

President & Chief Executive Officer

**7. Individual or Joint/Group Filing** (Check applicable line)

X  Form filed by One Reporting Person
   Form filed by More than One Reporting Person

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 1/3/02 | | S* | | 2,200 | D | 11.11 | 27,958 | D | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

\* Pursuant to a 10B5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
\* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (1-99)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 6.00 | 1/3/02 | | D | | | 2,200 | 4/28/01 | 4/18/10 | Common Stock | 2,200 | 11.11 | 250,600* | D | |
| Stock Option (right to buy) | 7.58 | 1/25/02 | | A | | 10,000 | | (1) | 1/25/12 | Common Stock | 10,000 | 7.58 | 260,600* | D | |
| Stock Option (right to buy) | 7.09 | 7/12/02 | | A | | 2,500 | | (2) | 7/12/12 | Common Stock | 2,500 | 7.09 | 263,100* | D | |

Explanation of Responses:

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.  Subject to accelerated vesting in whole or in part based on performance goals being met.

(2) Exercisable in three equal installments commencing on the anniversary of the date of grant.

* In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophia Trust, 60,000 by the Mallory Trust, f/b/o the children of the reporting person.

*/**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

**Signature of Reporting Person            10/18/02
                                            Date

Note:   File three copies of this Form, one of which must be manually signed.
If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

Page 2
SEC 1474 (3-99)



BY OVERNIGHT DELIVERY

October 17, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Leslie N. Apony

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

OMB APPROVAL
OMB No.    3235-0287
Expires:  September 30, 1998
Estimate average burden
hours per response.....  0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|

1. Name and Address of Reporting Person*

Snowden   Edward   H
(Last)    (First)    (Middle)

Boston Communications Group
(Street)
100 Sylvan Road   Suite 100

Woburn   MA   01801
(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol

Boston Communications Group Inc (BCGI)

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for Month/Year
   10/02

5. If Amendment, Date of Original (Month/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

X Director
X Officer (give title below)   ___ 10% Owner   ___ Other (specify below)
   President & CEO

7. Individual or Joint/Group Filing (Check Applicable Line)
   X Form filed by One Reporting Person
   ___ Form filed by More than One Reporting Person

## Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/3/02 | S* | | 2,600 | D | 11.00 | 27,958 | D | |

* Pursuant to a 10b 5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

SEC 1474 (7-96)

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned
( e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (Right to buy) | 6.00 | 10/3/02 | X | - | 0 | 3,000 | 2/10/92 | 4/1/08 | Common Stock | 2,000 | 0 | 252,350 | D | I |
| | | | | | | | | | | | | | | |

Explanation of Responses:

*Elwood W. Reed*    10-4-02
**Signature of Reporting Person        Date

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.



BY OVERNIGHT DELIVERY

October 4, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a
Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director
and officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5264.
Thank you for your assistance with this matter.

Very truly yours,

Thomas H. Kelly, Jr.

Enclosure

cc:   E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

(Print or Type Responses)

OMB APPROVAL

OMB Number: 3235-4 287
Expires: September 30, 1998
Estimate l average burden
hours pe response . . . . . . . 0.5

SEC 1474 (7-96)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washingtu  D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol (BCGI) | 6. Relationship of Reporting Person(s) to Issuer (Check all applic-ble) |
|---|---|---|

1. Name and Address of Reporting Person*

Snowden    Edward    H.
(Last)    (First)    (Middle)

Boston Communications Group
100 Sylvan Road Suite 100
(Street)

Woburn    MA    01801
(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol (BCGI)
Boston Communications Group Inc

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for Month/Year
10/02

5. If Amendment, Date of Original (Month/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applic-ble)
X Director    ___ 10% Owner
X Officer (give    ___ Other (speci y title below)    below )
   President & CEO

7. Individual or Joint/Group Filing (Check Applicable Line)
X Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/2/02 | S | - | 200 | D | 11.00 | 27,958 | D | |

* Pursuant to a 10b5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disp... d of, or Beneficially Owned
( e.g. puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 6.60 | 10/2/02 | X | | O | 200 | 2/1/02 | 2/1/06 | Common Stock | 200 | O | 254,800 | D | ← |

Edward M. [signature]
**Signature of Reporting Person

10-3-02
Date

Explanation of Responses:

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.



BY OVERNIGHT DELIVERY

October 3, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5264. Thank you for your assistance with this matter.

Very truly yours,

Thomas H. Kelly

Enclosure

cc:    E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel. 781-904-5000
fax: 781-904-5601
www.bcg net
Boston Communications Group, Inc

OMB APPROVAL
OMB Number:    3235-0287
Expires:  September 30, 1998
Estimated average burden
hours per response........ 0.5

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).
(Print or Type Responses)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | | | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|---|
| Snowden (Last) | Edward (First) | H. (Middle) | Boston Communications Group, Inc. (BCGI) | X Director          10% Owner |
| Boston Communications Group 100 Sylvan Road, Suite 100 (Street) | | | 4. Statement for Month/Year  12/01 | X Officer (give title below)  Other (specify below)  President & CEO |
| Woburn (City) | MA (State) | 01801 (Zip) | 5. If Amendment, Date of Original (Month/Year) | 7. Individual or Joint/Group Filing (Check Applicable Line)  X Form filed by One Reporting Person  Form filed by More than One Reporting Person |

### Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/28/01 | G | | 250 | D | | 27,958 | D | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

(Over)
SEC 1474 (7-94)

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned
( e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

Explanation of Responses:

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

_____    1-9-02
**Signature of Reporting Person    Date



BY OVERNIGHT DELIVERY

January 9, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

  Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

  Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for E.Y. Snowden, a director and officer of Boston Communications Group, Inc.

  If there are any questions regarding this filing, please call me at (781) 904-5000.  Thank you for your assistance with this matter.

        Very truly yours,

        Alan J. Bouffard

Enclosure

cc: E.Y. Snowden

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
*www.bcgi.net*
*Boston Communications Group, Inc.*

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

OMB APPROVAL
OMB Number: 3235-0287
Expires: September 30, 1998
Estimated average burden
hours per response..... 0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| Snowden    Edward | Boston Communications Group, Inc./BCGI | (Check all applicable) |
| (Last)    (First)    (Middle) | | X  Director         ___ 10% Owner |
| Boston Communications Group, Inc. | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4. Statement for Month/Year   10/01 | X  Officer (give title below)   ___ Other (specify below) |
| 100 Sylvan Road, Suite 100 | | CEO |
| (Street) | | |
| Woburn    MA    01801 | 5. If Amendment, Date of Original (Month/Year) | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)   (State)   (Zip) | | X  Form filed by One Reporting Person |
| | | ___ Form filed by More than One Reporting Person |

### Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/ Day/ Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 9/27/01 | G | | 500 | D | | 28,208 | D | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

(Over)

SEC 1474 (7-91)

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned
( e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | $6.4375 | 4/6/01 | A | | 10,000 | | (1) | 4/6/11 | Common Stock | 10,000 | $6.4375 | 250,000 | D | |
| Stock Option (right to buy) | $7.75 | 10/10/01 | A | | 5,000 | | (2) | 10/10/11 | Common Stock | 5,000 | $7.75 | *255,000 | D | |

Explanation of Responses:  (1)  Exercisable on or after 2/28/02 if performance goals are met.  Otherwise exercisable in three equal installments commencing on the anniversary of the date of grant.
(2)  Exercisable in three equal installments commencing on the anniversary of the date of grant.
*  In addition, 180,000 are held indirectly (60,000) by the Bradford Irrevocable Trust, 60,000 by the Sophie Trust, 60,000 by the Mallory Trust, f/b/o the children of the reporting person.

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.** *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

~~**Signature of Reporting Person~~    11-~~09-~~~~~~    **Date

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential person  who are to respond to the collection of information contained in this form ar~
required to re~    ] unless the form displays a currently valid OMB Number.

OMB APPROVAL

OMB Number: 3235-0287
Expires: September 30, 1998
Estimated average burden
hours per response......0.5

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See Instruction 1(b).*

(Print or Type Responses)

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

**1. Name and Address of Reporting Person***

Snowden   Edward
(Last)   (First)   (Middle)

Boston Communications Group, Inc.
100 Sylvan Road, Suite 100
(Street)

Woburn   MA   01801
(City)   (State)   (Zip)

**2. Issuer Name and Ticker or Trading Symbol**

Boston Communications Group, Inc./BCGI

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for Month/Year**
10/01

**5. If Amendment, Date of Original (Month/Year)**

**6. Relationship of Reporting Person(s) to Issuer(s)**
(Check all applicable)

X Director   __ 10% Owner
X Officer (give   __ Other (specify title below)   below)
CEO

**7. Individual or Joint/Group Filing (Check Applicable Line)**
△ Form filed by One Reporting Person
__ Form filed by More than One Reporting Person

### Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 9/27/01 | G | | 500 | D | | 28,208 | D | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

(Over)

SEC 1474 (7-96)

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | $6.4375 | 4/6/01 | A | | 10,000 | | (1) | 4/6/11 | Common Stock | 10,000 | $6.4375 | 250,000 | D | |
| Stock Option (right to buy) | $7.75 | 10/10/01 | A | | 5,000 | | (2) | 10/10/11 | Common Stock | 5,000 | $7.75 | 255,000 | D | |

Explanation of Responses: (1) Exercisable on or after 2/28/02 if performance goals are met. Otherwise exercisable in three equal installments commencing on the anniversary of the date of grant.
(2) Exercisable in three equal installments commencing on the anniversary of the date of grant.
* In addition, 180,000 are held indirectly (60,000 by the Bradford Irrevocable Trust, 60,000 by the Sophie Trust, 60,000 by the Mallory Trust, f/b/o the children of the reporting person.

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

**Signature of Reporting Person    11-09-01 Date**

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

**BOSTON
COMMUNICATIC
GROUP**

BY OVERNIGHT DELIVERY

May 5, 1999

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Edward H. Snowden, a Director and Officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (617) 476-4603. Thank you for your assistance with this matter.

Very truly yours,

Alan J. Bouffard

Enclosure

cc: Edward H. Snowden

# FORM 4

☐ Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue.
See Instruction l(b).

(Print or Type Responses)

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

**OMB APPROVAL**
OMB Number:    3235-0287
Expires:  September 30, 199
Estimated average burden
hours per response......  0.

**1. Name and Address of Reporting Person***

Snowden    Edward    H.
(Last)    (First)    (Middle)

c/o Boston Communications Group, Inc.
100 Sylvan Road
(Street)

Woburn    MA    01801
(City)    (State)    (Zip)

**2. Issuer Name and Ticker or Trading Symbol**

Boston Communications Group, Inc., (BCGI)

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for Month/Year**

4/99

**5. If Amendment, Date of Original (Month/Year)**

**6. Relationship of Reporting Person(s) to Issuer**
(Check all applicable)

____ Director    ____ 10% Owner
__X__ Officer (give    ____ Other (specify
       title below)          below)
President & Chief Executive Officer

**7.** ____ Individual or Joint/Group Filing (Check Applicable Line)
__X__ Form filed by One Reporting Person
____ Form filed by More than One Reporting Person

## Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned ...
* If the form is filed by more than one ...

DEC-02-2005  13:37

FORM 4 (continued)

## Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned
( e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 2) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | | |
| Stock Option (Right to Buy) | $8.625 | 2/3/99 | A | | 10,000 | | 2/3/07 | 2/3/09 | Common Stock | 10,000 | | 230,000** | D | |

**Explanation of Responses:**

\* Exercisable on or about 2/28/00 if performance goals for 1999 are met.

\*\* In addition, 180,000 are indirectly held (60,000 by the Bradford Irrevocable Trust, 60,000 by the children of the reporting person. (as previously reported), 60,000 by The Mallory Trust, f/b/o the children of the reporting person, 60,000 by the Sophia Trust,

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
   See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

*Signature of Reporting Person*     5-4-99
                                     *Date*

TOTAL P.04

# Exhibit 29 - Part 1

Ownership Su'  mission

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

OMB Number:    3235-0287
Expires:    January 31, 2008
Estimated average burden hours per response...    0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer |
|---|---|---|---|
| WALKER KAREN A | | BOSTON COMMUNICATIONS GROUP INC [bcgi] | (Check all applicable) |
| (Last)    (First)    (Middle) | | 3. Date of Earliest Transaction (Month/Day/Year) | ___ Director    ___ 10% Owner |
| 55 Middlesex Turnpike | | 03/28/2005 | _X_ Officer (give title below)    ___ Other (specify below) |
| (Street) | | 4. If Amendment, Date of Original Filed (Month/Day/Year) | VP Fin Admin & CFO |
| Bedford, MA 01730 | | | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)    (State)    (Zip) | | | _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative Security: Direct (D) or Indirect | 11. Nature of Indirect Bene Owner (Instr. |

Ownership Su' 'ission

| Stock Options (Right to Buy) | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | Reported Transaction(s) (Instr. 4) | (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (D) (Instr. 3, 4, and 5) | | | | | | | | |
| $7.29 | 03/28/2005 | | A | | 22,500 | | 03/28/2006 (1) | 03/28/2015 | Common Stock | 22,500 | $ 0 | 152,665 | D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 55 Middlesex Turnpike Bedford, MA 01730 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker                              03/29/2005

**Signature of Reporting Person                Date

## Explanation of Responses:

\*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Meredith McGuire**

| | |
|---|---|
| **From:** | Edgar.Postmaster@sec.gov |
| **Sent:** | Wednesday, March 30, 2005 4:27 PM |
| **To:** | abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-05-019142) |

```
THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 30-Mar-2005 16:27   ACCEPTED DATE:       30-Mar-2005 16:27
FILING DATE:  30-Mar-2005 16:27
TEST FILING:  NO             CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-05-019142

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

  1. CIK:        0001198583
     OWNER:      WALKER KAREN A
     FORM TYPE:  4
     FILE NUMBER(S):
         1. 000-28432

ISSUER:

  2. CIK:        0001012887
     COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect
address in the EDGAR Accounting Contact Name and Address information may result in your
fee Account Activity Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m.
Eastern Time on business days. Filer Support staff members are available to respond to
requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov.
You can download our current version of the EDGARLink/Windows software and templates, the
Filer Manual, receive on-line help, and access Frequently Asked Questions.
```

Own _hip Submission

P: 1 of 3

## FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

· OMB APPROVAL
OMB Number: 3235-0287
Expires: January 31, 2008
Estimated average burden hours per response... 0.5

### UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

(Last) (First) (Middle)
55 Middlesex Turnpike
(Street)
Bedford, MA 01730
(City) (State) (Zip)

3. Date of Earliest Transaction (Month/Day/Year) 02/28/2005

4. If Amendment, Date of Original Filed (Month/Day/Year)

___ Director ___ 10% Owner
_X_ Officer (give title below) ___ Other (specify below)
VP Fin Admin & CFO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/28/2005 | | P[1] | | 1,514 | A | $6.409 | 6,440 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-02)

3/1/2005

https://www.sec.gov/...

Own  hip Submission

Pr  2 of 3

Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security; Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>55 Middlesex Turnpike<br>Bedford, MA 01730 | | | VP Fin Admin & CFO | |

## Signatures

Karen A. Walker    03/01/2005

**Signature of Reporting Person    Date

## Explanation of Responses:

\* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

https://www.sendd.com/~rrdnetfiler/netfile/rrd70775.htm

3/1/2005

Owr  -hip Submission

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Meredith McGuire**

| | |
|---|---|
| **From:** | Edgar.Postmaster@sec.gov |
| **Sent:** | Tuesday, March 01, 2005 11:23 AM |
| **To:** | abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-05-013205) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 01-Mar-2005 11:23    ACCEPTED DATE:    01-Mar-2005 11:23
FILING DATE:   01-Mar-2005 11:23
TEST FILING:   NO             CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-05-013205

FILE NUMBER(S):
   1. 000-28432
```

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

```
REPORTING OWNER(S):

   1. CIK:      0001198583
      OWNER:    WALKER KAREN A
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:      0001012887
      COMPANY:  BOSTON COMMUNICATIONS GROUP INC
```

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APF /AI | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

## UNITED STATES SECURITIES AND ''CHANGE COMMISSION
### Washington, D.C. ∂0549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person = | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | ☐ Director     ☐ 10% Owner |
| (Last)   (First)   (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | X  Officer (give title below)   ☐ Other (specify below) |
| 100 Sylvan Road, Suite100 | 08/31/2004 | VP Fin Admin & CFO |
| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn, MA 01801 | | X  Form filed by One Reporting Person |
| (City)   (State)   (Zip) | | ☐ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/31/2004 | | p⁽¹⁾ | | 814 | A | $6.6725 | 4,926 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (03.2.

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(*e.g.*, puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | |

| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | Transaction(s) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | (Instr. 3 and 5) | | | | | | | | | | (Instr. 4) |

## Signatures

Karen Walker                    09/08/2004
_____      _____
Signature of Reporting Person         Date

Karen Walker   9/8/04.

## Explanation of Responses:

\*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)  Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

From:          Edgar.Postmaster@sec.gov
Sent:          Wednesday, September 08, 2004 12:44 PM
To:            kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-04-043197)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 08-Sep-2004 12:44  ACCEPTED DATE:       08-Sep-2004 12:44
FILING DATE:  08-Sep-2004 12:44
TEST FILING:  NO              CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-04-043197

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:       0001198583
       OWNER:     WALKER KAREN A
       FORM TYPE: 4
       FILE NUMBER(S):
           1. 000-28432

ISSUER:

    2. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC

----------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APF  VAL
3235 0287

OMB Number:
Expires:        January 31, 2005
Estimated average burden hours per response...  5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. .0549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | ___ Director          ___ 10% Owner |
| (Last)  (First)  (Middle) | | _X_ Officer (give title below)  ___ Other (specify below) |
| 100 Sylvan Road, Suite 100 | 3. Date of Earliest Transaction (Month/Day/Year) | VP Fin Admin & CFO |
| (Street) | 06/16/2004 | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn, MA 01801 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | _X_ Form filed by One Reporting Person |
| (City)  (State)  (Zip) | | ___ Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 06/16/2004 | | P | | 600 | A | $9 | 4,112 | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker    06/17/2004

" Signature of Reporting Person    Date

# Explanation of Responses:

\*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*    Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

```
From:            EDGAR@sec.gov
Sent:            Thursday, June 17, 2004 7:37 AM
To:              kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:         ACCEPTED FORM TYPE 4 (0001181431-04-031205)
```

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  17-Jun-2004 11:37   ACCEPTED DATE:       17-Jun-2004 11:37
FILING DATE:    17-Jun-2004 11:37
TEST FILING:    NO              CONFIRMING COPY:     NO
```

ACCESSION NUMBER: 0001181431-04-031205

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:       0001198583
      OWNER:     WALKER KAREN A
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

| | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

1. Name and Address of Reporting Person *
WAI KER KAREN A

| (Last) | (First) | (Middle) |
|---|---|---|
| 100 Sylvan Road, Suite 100 | | |

(Street)

Woburn, MA 01801

| (City) | (State) | (Zip) |
|---|---|---|

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC [bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
06/02/2004

4. If Amendment, Date of Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

___ Director          ___ 10% Owner
_X_ Officer (give title below)   ___ Other (specify below)
VP Fin Admin & CFO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1.Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) | 10. Ownership Form of Derivative Security; Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (11-01)

| | | | | and 5) | | | | | | Amount or Number of Shares | | (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | | | |
| Stock Option (Right to Buy) | $10.68 | 06/02/2004 | A | | 16,000 | | 06/02/2005 (1) | 06/02/2014 | Common Stock | 16,000 | $ 0 | 130,165 D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 100 Sylvan Road Suite 100 Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker                          06/04/2004

"Signature of Reporting Person        Date"

## Explanation of Responses:

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR@sec.gov |
| Sent: | Friday, June 04, 2004 6:47 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-04-029533) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  04-Jun-2004 10:47   ACCEPTED DATE:      04-Jun-2004 10:47
FILING DATE:    04-Jun-2004 10:47
TEST FILING:    NO                   CONFIRMING COPY:    NO
```

ACCESSION NUMBER: 0001181431-04-029533

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:       0001198583
       OWNER:     WALKER KAREN A
       FORM TYPE: 4
       FILE NUMBER(S):
           1. 000-28432

ISSUER:

    2. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

UNITED STATES SECURITIES AND ‌ CHANGE COMMISSION
Washington, D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APP ‌ /AL
OMB Number:  3235 0287
Expires:  January 31, 2005
Estimated average burden hours per response.

(Print or Type Responses)

1. Name and Address of Reporting Person ‌
WALKER KAREN A
(Last)  (First)  (Middle)
100 Sylvan Road, Suite 100
(Street)
Woburn, MA 01801
(City)  (State)  (Zip)

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
02/27/2004

4. If Amendment, Date Original Filed (Month/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)
___ Director  ___ 10% Owner
_X_ Officer (give title below)  ___ Other (specify below)
VP Fin Admin & CFO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (9-02)

Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/27/2004 | | p[1] | | 585 | A | $9.146 | 3,512 | D | |

Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative Security: Direct (D) or Indirect | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker _____  3/5/04

02/27/2004

Date 3/5/04

Signature of Reportive Person

## Explanation of Responses:

\* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:           EDGAR@sec.gov
Sent:           Friday, March 05, 2004 12:51 PM
To:             kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:        ACCEPTED FORM TYPE 4 (0001181431-04-014140)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  05-Mar-2004 17:50  ACCEPTED DATE:       05-Mar-2004 17:51
FILING DATE:    05-Mar-2004 17:50
TEST FILING:    NO              CONFIRMING COPY:        NO

ACCESSION NUMBER: 0001181431-04-014140

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001198583
      OWNER:      WALKER KAREN A
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APF | VAL |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response. | 0.5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| (Last) (First) (Middle) 100 Sylvan Road, Suite100 | 3. Date of Earliest Transaction (Month/Day/Year) 01/23/2004 | ___ Director ___ 10% Owner _X_ Officer (give title below) ___ Other (specify below) VP Fin Admin & CFO |
| (Street) Woburn, MA 01801 | 4. If Amendment, Date Original Filed (Month/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |
| (City) (State) (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction (s) | 10. Ownership Form of Derivative Security Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | and 5) | | | | | | | | (Instr. 4) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | |
| Common Stock | $12.16 | 01/23/2004 | A | | 16,000 | | 01/23/2005 (1) | 01/23/2014 | Common Stock | 16,000 | $ 0 | 114,165 | D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 100 Sylvan Road Suite 100 Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker ———— Carr   1/26/04

Karen Walker                    01/26/2004

Signature of Reporting Person        Date

## Explanation of Responses:

\* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:             EDGAR@sec.gov
Sent:             Monday, January 26, 2004 1:51 PM
To:               kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:          ACCEPTED FORM TYPE 4 (0001181431-04-004446)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 26-Jan-2004 18:51   ACCEPTED DATE:     26-Jan-2004 18:51
FILING DATE:  26-Jan-2004 18:51
TEST FILING:  NO             CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-04-004446

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:        0001198583
       OWNER:      WALKER KAREN A
       FORM TYPE:  4
       FILE NUMBER(S):
          1. 000-28432

ISSUER:

    2. CIK:        0001012887
       COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APPROVAL |
|---|
| OMB Number: 3235-0287 |
| Expires:  January 31, 2005 |
| Estimated average burden hours per response. |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

Print or Type Responses)

1. Name and Address of Reporting Person *
WALKER KAREN A

(Last)   (First)   (Middle)
100 Sylvan Road, Suite100

(Street)
Woburn, MA 01801

(City)   (State)   (Zip)

2. Issuer Name and Ticker or Trading Symbol
BOSTON COMMUNICATIONS GROUP INC
[bcgi]

3. Date of Earliest Transaction (Month/Day/Year)
10/21/2003

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

| | Director | | 10% Owner |
|---|---|---|---|
| X | Officer (give title below) | | Other (specify below) |

VP Fin Admin & CFO

6. Individual or Joint/Group Filing (Check Applicable Line)
X Form filed by One Reporting Person
☐ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/21/2003 | | M | | 2,000 | A | $8.89 | 2,927 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(*e.g.*, puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Transaction | 3A. Deemed | 4. | 5. Number | 6. Date Exercisable and | | 7. Title and Amount | | 8. Price of | 9. Number | | 11. Natu |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Title of Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Date (Month/Day/Year) | Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | Date Exercisable and Expiration Date (Month/Day/Year) | | Title and Amount of Underlying Securities (Instr. 3 and 4) | | Price of Derivative Security (Instr. 5) | Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) NQ Stock Option | $8.89 | 10/21/2003 | | X | | | 2,000 | 09/04/2003 (1) | 09/04/2012 | Common Stock | 2,000 | $8.89 | 98,165 | D | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker

By: Karen Newell

Karen Walker, By Alan Bouffard under Power of Attorney Dated 8/29/2002

\* Signature of Reporting Person

10/22/03

Date

Ownership Submission

# Explanation of Responses:

\*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note. File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:            EDGAR@sec.gov
Sent:            Wednesday, October 22, 2003 1:57 PM
To:              kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:         ACCEPTED FORM TYPE 4 (0001181431-03-027299)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4                    NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 22-Oct-2003 17:55   ACCEPTED DATE:      22-Oct-2003 17:57
FILING DATE:  22-Oct-2003 17:55
TEST FILING:  NO                   CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-03-027299

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:        0001198583
       OWNER:      WALKER KAREN A
       FORM TYPE:  4
       FILE NUMBER(S):
          1. 000-28432

ISSUER:

    2. CIK:        0001012887
       COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response... | 0.5 |

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person [1] | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | _____ Director _____ 10% Owner |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) 08/26/2003 | _X_ Officer (give title below) _____ Other (specify below) VP Fin Admin & CFO |
| 100 Sylvan Road, Suite 100 | | |
| (Street) | 4. If Amendment, Date Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) _X_ Form filed by One Reporting Person _____ Form filed by More than One Reporting Person |
| Woburn, MA 01801 | | |
| (City) (State) (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Year) | 3A. Deemed Execution Date, if any (Month/Year) | 4. Transaction Code | 5. Number of Derivative | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities | 8. Price of Derivative Security | 9. Number of Derivative | 10. Ownership Form of | 11. Nature of Indirect Beneficial |
|---|---|---|---|---|---|---|---|---|---|---|---|

# Exhibit 29

Ownership Su' ission

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

| OMB Number: | 3235-0287 |
| Expires: | January 31, 2008 |
| Estimated average burden hours per response... | 0.5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) 03/28/2005 | ___ Director ___ 10% Owner X__ Officer (give title below) ___ Other (specify below) VP Fin Admin & CFO |
| 55 Middlesex Turnpike (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) X__ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |
| Bedford, MA 01730 (City) (State) (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) or (D) | Amount | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative Security: Direct (D) or Indirect |

(Ownership Su' ...ission)

| Stock Options (Right to Buy) | | (D) (Instr. 3, 4, and 5) | | | | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | Reported Transaction(s) (Instr. 4) | | (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | (A) | (D) | | | | | | | |
| $7.29 | 03/28/2005 | A | | 22,500 | | 03/28/2006 (1) | 03/28/2015 | Common Stock | 22,500 | $ 0 | 152,665 | D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 55 Middlesex Turnpike Bedford, MA 01730 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker     03/29/2005

"Signature of Reporting Person    Date

## Explanation of Responses:

\*   If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Meredith McGuire**

| | |
|---|---|
| **From:** | Edgar.Postmaster@sec.gov |
| **Sent:** | Wednesday, March 30, 2005 4:27 PM |
| **To:** | abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-05-019142) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 30-Mar-2005 16:27   ACCEPTED DATE:      30-Mar-2005 16:27
FILING DATE:   30-Mar-2005 16:27
TEST FILING:   NO              CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-05-019142

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

  1. CIK:         0001198583
     OWNER:       WALKER KAREN A
     FORM TYPE:   4
     FILE NUMBER(S):
        1. 000-28432

ISSUER:

  2. CIK:         0001012887
     COMPANY:     BOSTON COMMUNICATIONS GROUP INC
```

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

Own -hip Submission

P: 1 of 3

**FORM 4**

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

· OMB APPROVAL
OMB Number:   3235-0287
Expires:   January 31, 2008
Estimated average burden hours per response...   0.5

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | (Check all applicable) |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | ___ Director ___ 10% Owner |
| 55 Middlesex Turnpike | 02/28/2005 | _X_ Officer (give title below) ___ Other (specify below) |
| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | VP Fin Admin & CFO |
| Bedford, MA 01730 | | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| (City) (State) (Zip) | | _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |

Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/28/2005 | | P[(1)] | | 1,514 | A | $6,409 | 6,440 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

https://www.sec.gov/... r470775 htm

3/1/2005

Own~ hip Submission

P~ ~2 of 3

Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 55 Middlesex Turnpike Bedford, MA 01730 | | | VP Fin Admin & CFO | |

## Signatures

Kaw~ aw— 3/1/05

| Karen A. Walker | 03/01/2005 |
|---|---|
| **Signature of Reporting Person | Date |

## Explanation of Responses:

\*   If the form is filed by more than one reporting person, see Instruction 4(b)(v).

Own ~hip Submission

Pr ~ 3 of 3

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Meredith McGuire**

| | |
|---|---|
| From: | Edgar.Postmaster@sec.gov |
| Sent: | Tuesday, March 01, 2005 11:23 AM |
| To: | abouffard@bcgi.net; secnotices@sendd.com; mmcguire@bcgi.net; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-05-013205) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4            NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 01-Mar-2005 11:23   ACCEPTED DATE:      01-Mar-2005 11:23
FILING DATE:   01-Mar-2005 11:23
TEST FILING:   NO            CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-05-013205

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:       0001198583
      OWNER:     WALKER KAREN A
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct.  An incorrect
address in the EDGAR Accounting Contact Name and Address information may result in your
fee Account Activity Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 6:00 a.m. to 10:00 p.m.
Eastern Time on business days. Filer Support staff members are available to respond to
requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov.
You can download our current version of the EDGARLink/Windows software and templates, the
Filer Manual, receive on-line help, and access Frequently Asked Questions.
```

**FORM 4**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| | OMB APF    /Al. |
|---|---|
| | OMB Number:    3235-0287 |
| | Expires:    January 31, 2005 |
| | Estimated average burden hours per response . . . . 0.5 |

## UNITED STATES SECURITIES AND ˮCHANGE COMMISSION
### Washington, D.C. ۷0549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person ² WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| (Last)    (First)    (Middle) 100 Sylvan Road, Suite100 | 3. Date of Earliest Transaction (Month/Day/Year) 08/31/2004 | ___ Director    ___ 10% Owner  _X_ Officer (give title below)  ___ Other (specify below)  VP Fin Admin & CFO |
| (Street) Woburn, MA 01801 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) _X_ Form filed by One Reporting Person  ___ Form filed by More than One Reporting Person |
| (City)    (State)    (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/31/2004 | | P[1] | | 814 | A | $6.6725 | 4,926 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | | Transaction(s) (Instr. 4) | (Instr |
|---|---|---|---|

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 100 Sylvan Road Suite100 Woburn, MA 01801 | | | VP Fin Admin & CFO | |

| | | Date Exercisable | Expiration Date | Title | Amount or Number of Shares |
|---|---|---|---|---|---|
| Code | V | (A) | (D) | | |

(Instr. 3 and 5)

## Signatures

Karen Walker                          09/08/2004

─────────────────────                 ─────────
::Signature of Reporting Person          Date

Karen Walker   9/8/04.

## Explanation of Responses:

\*      If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*    Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)   Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

**=rom:**       Edgar.Postmaster@sec.gov
**Sent:**       Wednesday, September 08, 2004 12:44 PM
**To:**         kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
**Subject:**    ACCEPTED FORM TYPE 4 (0001181431-04-043197)

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4                     NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 08-Sep-2004 12:44   ACCEPTED DATE:        08-Sep-2004 12:44
FILING DATE:  08-Sep-2004 12:44
TEST FILING:  NO                   CONFIRMING COPY:      NO

ACCESSION NUMBER: 0001181431-04-043197

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001198583
      OWNER:      WALKER KAREN A
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APF | VAL |
|---|---|
| | 3235 0287 |
| OMB Number: | January 31, 2005 |
| Expires: | |
| Estimated average burden hours per response: | 5 |

## UNITED STATES SECURITIES AND XCHANGE COMMISSION
### Washington, D.C. .0549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | |
| (Last) (First) (Middle) | | ___ Director ___ 10% Owner |
| 100 Sylvan Road, Suite 100 | 3. Date of Earliest Transaction (Month/Day/Year) | _X_ Officer (give title below) ___ Other (specify below) |
| (Street) | 06/16/2004 | VP Admin & CFO |
| Woburn, MA 01801 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| (City) (State) (Zip) | | _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 06/16/2004 | | P | | 600 | A | $9 | 4,112 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1 Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (7-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | | |
|---|---|---|---|---|---|
| | Director | 10% Owner | Officer | | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | | |

## Signatures

Kimberly —————  6/17/04

Karen Walker                    06/17/2004

Signature of Reporting Person        Date

# Explanation of Responses:

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

| | |
|---|---|
| `rom: | EDGAR@sec.gov |
| Sent: | Thursday, June 17, 2004 7:37 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-04-031205) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4                NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 17-Jun-2004 11:37    ACCEPTED DATE:      17-Jun-2004 11:37
FILING DATE:  17-Jun-2004 11:37
TEST FILING:  NO               CONFIRMING COPY:       NO

ACCESSION NUMBER: 0001181431-04-031205

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001198583
      OWNER:      WALKER KAREN A
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

----------------------------- NOTICE -----------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APP /AL |
|---|
| OMB Number: 3235-0287 |
| Expires: January 31, 2005 |
| Estimated average burden hours per response... |

## UNITED STATES SECURITIES AND 'CHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person ² WAI KER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

| (Last) (First) (Middle) 100 Sylvan Road, Suite 100 | 3. Date of Earliest Transaction (Month/Day/Year) 06/02/2004 | ___ Director   ___ 10% Owner X__ Officer (give title below)   ___ Other (specify below) VP Fin Admin & CFO |
|---|---|---|

| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) X__ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |
|---|---|---|

(City) Woburn, MA 01801 (State) (Zip)

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (7/03)

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1 Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction (s) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|

| Stock Option (Right to Buy) | $10.68 | 06/02/2004 | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | and 5) | A | | 16,000 | | 06/02/2005 (1) | 06/02/2014 | Common Stock | 16,000 | $ 0 | 130,165 D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 100 Sylvan Road Suite 100 Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

_Karen Walker_  06/04/04
Karen Walker

**Signature of Reporting Person

06/04/2004
Date

## Explanation of Responses:

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

| | |
|---|---|
| From: | EDGAR@sec.gov |
| Sent: | Friday, June 04, 2004 6:47 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-04-029533) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4                 NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  04-Jun-2004 10:47  ACCEPTED DATE:     04-Jun-2004 10:47
FILING DATE:    04-Jun-2004 10:47
TEST FILING:    NO                CONFIRMING COPY:   NO
```

ACCESSION NUMBER: 0001181431-04-029533

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 22-Apr-2005 21:41.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001198583
      OWNER:      WALKER KAREN A
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

## FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL |
|---|
| OMB Number: 3235-0287 |
| Expires: January 31, 2005 |
| Estimated average burden hours per response..... 0.5 |

(Print or Type Responses)

| 1. Name and Address of Reporting Person * WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| (Last) (First) (Middle) 100 Sylvan Road, Suite 100 | 3. Date of Earliest Transaction (Month/Day/Year) 02/27/2004 | ___ Director ___ 10% Owner ___X__ Officer (give title below) ___ Other (specify below) VP Fin Admin & CFO |
| (Street) Woburn, MA 01801 | 4. If Amendment, Date Original Filed (Month/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |
| (City) (State) (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/27/2004 | | P[1] | | 585 | A | $9.146 | 3,512 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative Security: Direct (D) or Indirect | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite 100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | |

**Signatures** Karen Walker 3/5/04

Karen Walker                    02/27/2004

Signature of Reporting Person        Date 3/5/04

## Explanation of Responses:

\*   If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1)   Shares purchased under bcgi's Employee Stock Purchase Plan.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:          EDGAR@sec.gov
Sent:          Friday, March 05, 2004 12:51 PM
To:            kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-04-014140)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 05-Mar-2004 17:50   ACCEPTED DATE:      05-Mar-2004 17:51
FILING DATE:   05-Mar-2004 17:50
TEST FILING:   NO             CONFIRMING COPY:       NO

ACCESSION NUMBER: 0001181431-04-014140

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

  1. CIK:        0001198583
     OWNER:      WALKER KAREN A
     FORM TYPE:  4
     FILE NUMBER(S):
        1. 000-28432

ISSUER:

  2. CIK:        0001012887
     COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

# FORM 4

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APF | VAL |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response. | .5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | ____ Director  ____ 10% Owner |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | __X__ Officer (give title below) ____ Other (specify below) |
| 100 Sylvan Road, Suite 100 | 01/23/2004 | VP Fin Admin & CFO |
| (Street) | 4. If Amendment, Date Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) __X__ Form filed by One Reporting Person ____ Form filed by More than One Reporting Person |
| Woburn, MA 01801 | | |
| (City) (State) (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction (s) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

| | | | | and 5) | | | | | | | | (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | |
| Common Stock | $12.16 | 01/23/2004 | | A | | 16,000 | | 01/23/2005 (1) | 01/23/2014 | Common Stock | 16,000 | $ 0 | 114,165 | 1) |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 100 Sylvan Road Suite 100 Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

/s/ Karen A. Walker    1/26/04

Karen Walker

Signature of Reporting Person    01/26/2004

Date

## Explanation of Responses:

*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

**   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:               EDGAR@sec.gov
Sent:               Monday, January 26, 2004 1:51 PM
To:                 kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:            ACCEPTED FORM TYPE 4 (0001181431-04-004446)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4               NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 26-Jan-2004 18:51   ACCEPTED DATE:      26-Jan-2004 18:51
FILING DATE:   26-Jan-2004 18:51
TEST FILING:   NO              CONFIRMING COPY:   NO

ACCESSION NUMBER: 0001181431-04-004446

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 11-Nov-2004 09:15.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:        0001198583
      OWNER:      WALKER KAREN A
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

| | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2005 |
| Estimated average burden hours per response. | 0.5 |

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

Print or Type Responses)

| 1. Name and Address of Reporting Person * WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| (Last)  (First)  (Middle) 100 Sylvan Road, Suite 100 | 3. Date of Earliest Transaction (Month/Day/Year) 10/21/2003 | ___ Director ___ 10% Owner _X_ Officer (give title below)  ___ Other (specify below) VP Fin Admin & CFO |
| (Street) Woburn, MA 01801 | 4. If Amendment, Date Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |
| (City)  (State)  (Zip) | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/21/2003 | | M | | 2,000 | A | $8.89 | 2,927 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(*e.g.*, puts, calls, warrants, options, convertible securities)

| 1. Title of | 2. Transaction | 3A. Deemed | 4. | 5. Number | 6. Date Exercisable and | 7. Title and Amount | 8. Price of | 9. Number | 10. | 11. Nature |
|---|---|---|---|---|---|---|---|---|---|---|

Ownership Submission

| Derivative Security (Instr. 3) | Conversion or Exercise Price of Derivative Security | Date (Month/Day/Year) | Execution Date, if any (Month/Day/Year) | Transaction Code (Instr. 8) | | Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | Expiration Date (Month/Day/Year) | | of Underlying Securities (Instr. 3 and 4) | | Derivative Security (Instr. 5) | Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) NQ Stock Option | $8.89 | 10/21/2003 | | X | | | 2,000 | 09/04/2003 (1) | 09/04/2012 | Common Stock | 2,000 | $8.89 | 98,165 | D | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A 100 Sylvan Road Suite 100 Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures Karen Walker

By: [signature] 10/22/03

Karen Walker, By Alan Bouffard under Power of Attorney Dated 8/29/2002

Signature of Reporting Person

10/22/2003

Date

Ownership Submission

# Explanation of Responses:

\*     If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR@sec.gov |
| Sent: | Wednesday, October 22, 2003 1:57 PM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-027299) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4                 NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 22-Oct-2003 17:55    ACCEPTED DATE:     22-Oct-2003 17:57
FILING DATE:   22-Oct-2003 17:55
TEST FILING:   NO                CONFIRMING COPY:   NO

ACCESSION NUMBER: 0001181431-03-027299

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

    1. CIK:       0001198583
       OWNER:     WALKER KAREN A
       FORM TYPE: 4
       FILE NUMBER(S):
          1. 000-28432

ISSUER:

    2. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

Ownership Submission

**FORM 4**

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

OMB Number:      3235-0287
Expires:      January 31, 2005
Estimated average burden hours per response...  0.5

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * WALKER KAREN A | 2. Issuer Name and Ticker or Trading Symbol BOSTON COMMUNICATIONS GROUP INC [bcgi] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

(Last) WALKER  (First) KAREN  (Middle) A
110 Sylvan Road, Suite100
(Street)
Woburn, MA 01801
(City)  (State)  (Zip)

3. Date of Earliest Transaction (Month/Day/Year) 08/26/2003

4. If Amendment, Date Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

_____ Director      _____ 10% Owner
_X_ Officer (give title below)  _____ Other (specify below)
VP Fin Admin & CFO

6. Individual or Joint/Group Filing (Check Applicable Line)
_X_ Form filed by One Reporting Person
_____ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(*e.g.*, puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities | 8. Price of Derivative Security | 9. Number of Derivative | 10. Ownership Form of | 11. Nature of Indirect Ownership of Beneficial |
|---|---|---|---|---|---|---|---|---|---|---|---|

Ownership Submission

| (Instr. 3) | Price of Derivative Security | (Month/Day/Year) (Instr. 8) | | Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | | Date Exercisable | Expiration Date | (Instr. 3 and 4) | | | (Instr. 5) | Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | Derivative Security: Direct (D) or Indirect (I) (Instr. 4) |
| | | | Code | V | (A) | (D) | | | Title | Amount or Number of Shares | | | | |
| Common Stock (Right to Buy) | $13.03 | 08/26/2003 | A | | 21,000 | | 08/26/2004 (1) | 08/26/2013 | Common Stock | 21,000 | $13.03 | 100,165 | D |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A<br>100 Sylvan Road<br>Suite100<br>Woburn, MA 01801 | | | VP Fin Admin & CFO | |

## Signatures

Karen Walker

By: Alan Bouffard

Karen Walker, By Alan Bouffard under Power of Attorney Dated 8/29/2002          08/27/2003

\*\*Signature of Reporting Person                                                                        Date

## Explanation of Responses:

\*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Ownership Submission

* *  Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff (a).

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

From:          EDGAR.POSTMASTER@sec.gov
Sent:          Wednesday, August 27, 2003 12:41 PM
To:            kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-03-020713)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4          NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 27-Aug-2003 16:40   ACCEPTED DATE:      27-Aug-2003 16:41
FILING DATE:   27-Aug-2003 16:40
TEST FILING:   NO         CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-020713

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 13-Jul-2004 12:20.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

   1. CIK:      0001198583
      OWNER:    WALKER KAREN A
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

ISSUER:

   2. CIK:      0001012887
      COMPANY:  BOSTON COMMUNICATIONS GROUP INC


---------------------------- NOTICE ----------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
6:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

Page 1 of 2

Ownership Submission

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response... 0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person * | 2. Issuer Name and Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| WALKER KAREN A | BOSTON COMMUNICATIONS GROUP INC [bcgi] | ___ Director ___ 10% Owner |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) 07/09/2003 | _X_ Officer (give title below) ___ Other (specify below) VP Fin Admin & CFO |
| (Street) | | |
| (City) (State) (Zip) | 4. If Amendment, Date Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) _X_ Form filed by One Reporting Person ___ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 07/09/2003 | | G(1) | | 100 | D | $21.525 | 927 | D | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (9-02)

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially | 10. Ownership Form of Derivative Security: | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

Ownership Submission

| Security | (A) or Disposed of (D) (Instr. 3, 4, and 5) | | | | | | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | 4) | Owned Following Reported Transaction(s) (Instr. 4) | Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Code | V | (A) | (D) | | | | | | | | | |

## Reporting Owners

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| WALKER KAREN A | | | VP Fin Admin & CFO | |

## Signatures

Karen A. Walker                    07/09/2003

*Signature of Reporting Person*    ~Karen A. Walker~   Date  7/11/03

# Explanation of Responses:

\*    If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\*\*   Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff

(1) Charitable Gift

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.

Leslie Apony

| | |
|---|---|
| ˚om: | EDGAR.POSTMASTER@sec.gov |
| ˜ent: | Friday, July 11, 2003 10:59 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-013813) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 11-Jul-2003 14:59  ACCEPTED DATE:    11-Jul-2003 14:59
FILING DATE:  11-Jul-2003 14:59
TEST FILING:  NO             CONFIRMING COPY:   NO

ACCESSION NUMBER: 0001181431-03-013813

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

REPORTING OWNER(S):

  1. CIK:        0001198583
     OWNER:      WALKER KAREN A
     FORM TYPE:  4
     FILE NUMBER(S):
        1. 000-28432

ISSUER:

  2. CIK:        0001012887
     COMPANY:    BOSTON COMMUNICATIONS GROUP INC

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.
```

SEC Form 4

**FORM 4**

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response . . . . . 0.5

| 1 Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Walker,Karen | **Boston Communications Group** bcgi | Director __ 10% Owner |
| (Last) (First) (Middle) | | X Officer (give title below) __ Other (specify below) |
| 100 Sylvan Road Suite 100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | Description **VP Fin Admin & CFO** |
| Woburn, MA 01801 | 4. Statement for (Month/Day/Year) 04/21/2003 | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| (City) (State) (Zip) | 5. If Amendment, Date of Original (Month/Day/Year) | X Form filed by One Reporting Person __ Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 04/21/2003 | | S* | | 5,316 | D | $19.95 | 1,027 | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr.5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative | 11. Nature of Indirect Beneficial Ownership (Instr 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

https://www.scud.d./~webdrop/netfile/rrd7575.htm

4/22/2003

| Security | Year | (Month/Day/Year) | Code | V | (Instr. 3, 4 and 5) | | DE | ED | Title | Amount or Number of Shares | | Reported Transaction(s) (Instr.4) | Securities: Direct (D) or Indirect (I) (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | A | D | | | | | | | |
| Common Stock (Right to Buy) | $13.00 | 04/21/2003 | X | | | 5,316 | (1) | 8/25/2010 | Common Stock | 5,316 | $13.00 | 79,165 | D |

**Explanation of Responses:**

*Pursuant to a 10b5-1 Plan.
(1) Exercisable in three equal installments commencing on the anniversary date.

By: /s/ _____      Date: 4/22/03

\** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

From:          EDGAR.POSTMASTER@sec.gov
Sent:          Tuesday, April 22, 2003 2:07 PM
To:            kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-03-006031)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 22-Apr-2003 18:07   ACCEPTED DATE:     22-Apr-2003 18:07
FILING DATE:   23-Apr-2003 08:00
TEST FILING:   NO             CONFIRMING COPY:   NO

ACCESSION NUMBER: 0001181431-03-006031

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:       0001198583
      FILER:     WALKER KAREN A

------------------------------- NOTICE -------------------------------
URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.  .

# Exhibit 29 - Part 2

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response . . . . . 0.5

1. Name and Address of Reporting Person*

Walker,Karen

(Last)    (First)    (Middle)

100 Sylvan Road
Suite100

(Street)

Woburn, MA 01801

(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol

Boston Communications Group
bcgi

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for (Month/Day/Year)

04/17/2003

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

___ Director    _ 10% Owner
X Officer (give title below)    _ Other (specify below)

Description    VP Fin Admin & CFO

7. Individual or Joint/Group Filing (Check Applicable Line)

X  Form filed by One Reporting Person
___  Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2.Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Owner-ship Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 04/17/2003 | | S* | | 6,400 | D | $17.5897 | 1,027 | D | |
| Common Stock | 04/17/2003 | | S* | | 8,018 | D | $18.1173 | 1,027 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. | 2. Conver-sion or Exercise Price of | 3. Transaction Date | 3A. Deemed Execution Date, if | 4. Transaction Code (Instr. 8) | 5 Number of Derivative Securities Acquired (A) | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security | 9. Number of Derivative Securities Beneficially Owned | 10. Owner-ship Form of | 11. Nature of Indirect Beneficial Ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 3) | Deri- vative Security | (Month/ Day/ Year) | any (Month/ Day/ Year) | Code | V | A | or Disposed Of (D) (Instr. 3, 4 and 5) D | DE | ED | Title | Amount or Number of Shares | (Instr.5) | Owned Following Reported Transaction (s) (Instr.4) | Deriv- ative Securities Direct (D) or Indirect (I) (Instr.4) | (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock (Right to Buy) | $8.625 | 04/17/2003 | | X | | | 2,600 | (1) | 2/3/2009 | Common Stock | 2,600 | $8.625 | 96,299 | D | |
| Common Stock (Right to Buy) | $7.58 | 04/17/2003 | | X | | | 3,800 | 2/28/2003 | 1/25/2012 | Common Stock | 3,800 | $7.58 | 92,499 | D | |
| Common Stock (Right to Buy) | $13.00 | 04/17/2003 | | X | | | 8,018 | (2) | 8/25/2010 | Common Stock | 8,018 | $13.00 | 84,481 | D | |

**Explanation of Responses:**

*Pursuant to a 10b5-1 Plan.
(1) Exercisable in five equal installments commencing on the anniversary date.
(2) Exercisable in three equal installments commencing on the anniversary date.

By: /s/ Ken... R W...    Date: 4/18/03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Monday, April 21, 2003 8:49 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-005932) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

```
COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  21-Apr-2003 12:49   ACCEPTED DATE:      21-Apr-2003 12:49
FILING DATE:    21-Apr-2003 12:49
TEST FILING:    NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-005932

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001198583
      FILER:      WALKER KAREN A
```

------------------------------ NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

SEC Form 4

**FORM 4**

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL |
| --- |
| OMB Number: 3235-0287 |
| Expires: January 31, 2005 |
| Estimated average burden hours per response... 0.5 |

**1. Name and Address of Reporting Person***

Walker, Karen

(Last)   (First)   (Middle)

100 Sylvan Road
Suite100

(Street)

Woburn,   MA   01801

(City)   (State)   (Zip)

**2. Issuer Name and Ticker or Trading Symbol**

Boston Communications Group bcgi

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for (Month/Day/Year)**

03/21/2003

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer (Check all applicable)**

Director ___ 10% Owner
X Officer (give title below) ___ Other (specify below)

Description   VP Fin Admin & CFO

7. Individual or Joint/Group Filing (Check Applicable Line)

X  Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/21/2003 | | S* | | 6,667 | D | $15.95 | 1,027 | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1 Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day) | 3A. Deemed Execution Date, if any | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 8) | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr.5) | 9 Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative | 11 Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Security | Year | (Month/Day/Year) | Code | V | A | (Instr. 3, 4 and 5) | | DE | ED | Title | Amount or Number of Shares | | Reported Transaction(s) (Instr.4) | Securities Direct (D) or Indirect (I) (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | A | D | | | | | | | | |
| Common Stock (Right to Buy) | $8.625 | 03/21/2003 | X | | | 5,000 | (1) | 2/3/2009 | Common Stock | 5,000 | $8.625 | 100,566 | D |
| Common Stock (Right to Buy) | $7.75 | 03/21/2003 | X | | | 1,667 | (2) | 10/10/2011 | Common Stock | 1,667 | $7.75 | 98,899 | D |

**Explanation of Responses:**

*Pursuant to a 10b5-1 Plan.
(1) Exercisable in five equal installments commencing on the anniversary date.
(2) Exercisable in three equal installments commencing on the anniversary date.

By: /s/ [signature]    Date: 3/24/03.

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

**Leslie Apony**

| | |
|---|---|
| ˙om: | EDGAR.POSTMASTER@sec.gov |
| ˙ent: | Monday, March 24, 2003 11:58 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-004695) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.

COMPANY:        BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:      4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE:  24-Mar-2003 16:58    ACCEPTED DATE:      24-Mar-2003 16:58
FILING DATE:    24-Mar-2003 16:58
TEST FILING:    NO             CONFIRMING COPY:       NO

ACCESSION NUMBER: 0001181431-03-004695

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE: 4
       FILE NUMBER(S):
          1. 000-28432

FILED BY:

    2. CIK:       0001198583
       FILER:     WALKER KAREN A

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response .... 0.5

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 4. Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|
| Walker,Karen | **Boston Communications Group** | 03/20/2003 | Director _ 10% Owner |
| (Last)  (First)  (Middle) | **bcgi** | | X Officer (give title below) __ Other (specify below) |
| 100 Sylvan Road Suite100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 5. If Amendment, Date of Original (Month/Day/Year) | Description **VP-Fin Admin & CFO** |
| (Street) | | | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn,  MA  01801 | | | X Form filed by One Reporting Person |
| (City)  (State)  (Zip) | | | ___ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/20/2003 | | S* | | 8,134 | D | $14.967 | 1,027 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative | 3. Transaction Date (Month/Day) | 3A. Deemed Execution Date, if any | 4. Transaction Code (Instr.8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative | 11. Nature of Indirect Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Common Stock (Right to Buy) / Security | Year / (Month/Day/Year) | Code | V | A | D (Instr. 3, 4 and 5) | DE | ED | Title | Amount or Number of Shares | | Reported Transaction(s) (Instr. 4) | Securities: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Common Stock (Right to Buy) | $4.875 | 03/20/2003 | X | | | 4,800 | (1) | 4/29/2007 | Common Stock | 4,800 | $4.875 | 108,900 | D |
| Common Stock (Right to Buy) | $6.4375 | 03/20/2003 | X | | | 3,334 | (2) | 4/6/2011 | Common Stock | 3,334 | $6.4375 | 105,566 | D |

**Explanation of Responses:**

*Pursuant to a 10b5-1 Plan.
(1) Exercisable in five equal installments commencing on the anniversary date.
(2) Exercisable in three equal installments commencing on the anniversary date.

By: /s/ _____    Date: 3/21/63

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

http://www.sec.gov/cgi-webdron/netfile/rrd6540.htm

3/21/2003

Leslie Apony

| | |
|---|---|
| rom: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Friday, March 21, 2003 8:13 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-004594) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4                    NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 21-Mar-2003 13:13   ACCEPTED DATE:       21-Mar-2003 13:13
FILING DATE:  21-Mar-2003 13:13
TEST FILING:  NO                   CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-03-004594

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:        0001012887
       COMPANY:    BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE:  4
       FILE NUMBER(S):
           1. 000-28432

FILED BY:

    2. CIK:        0001198583
       FILER:      WALKER KAREN A

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

| FORM 4 | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | | OMB APPROVAL |
|---|---|---|---|

Washington, D.C. 20549

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response.... 0.5

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

1. Name and Address of Reporting Person*
Walker,Karen

(Last)    (First)    (Middle)

100 Sylvan Road
Suite100

(Street)

Woburn,  MA  01801

(City)    (State)    (Zip)

2. Issuer Name and Ticker or Trading Symbol
Boston Communications Group
bcgi

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for (Month/Day/Year)
03/19/2003

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

___ Director    ___ 10% Owner
X Officer (give title below)    ___ Other (specify below)

Description    VP Fin Admin & CFO

7. Individual or Joint/Group Filing (Check Applicable Line)

X Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/19/2003 | | S* | | 200 | D | $14.95 | 1,027 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day) | 3A. Deemed Execution Date, if any | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | Security | (Month/Day/Year) | | | | (Instr. 3, 4 and 5) | | | | | | Reported Transaction(s) (Instr. 4) | Securities: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | |
| Common Stock (Right To Buy) | $4.875 | 03/19/2003 | X | | | 200 | (1) | 4/29/2007 | Common Stock | 200 | $4.875 | 113,700 | D |

**Explanation of Responses:**

*Pursuant to a 10b5-1 Plan.
(1) Exercisable in five equal installments commencing on the anniversary date.

By: /s/ _Richard Wiser_____

** Signature of Reporting Person

Date: 3/20/03

SEC 1474 (9-02)

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

Leslie Apony

| | |
|---|---|
| `rom: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Thursday, March 20, 2003 10:05 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-004544) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION.


COMPANY:     BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 20-Mar-2003 15:05   ACCEPTED DATE:    20-Mar-2003 15:05
FILING DATE:  20-Mar-2003 15:05
TEST FILING:  NO             CONFIRMING COPY:   NO

ACCESSION NUMBER: 0001181431-03-004544

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:       0001012887
      COMPANY:   BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE: 4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:       0001198583
      FILER:     WALKER KAREN A

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are correct. An incorrect address in the EDGAR Accounting Contact Name and Address information may result in your fee Account Activity Statement being returned to the SEC as undeliverable. Please correct outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from 8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support staff members are available to respond to requests for assistance from 7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at https://www.edgarfiling.sec.gov. You can download our current version of the EDGARLink/Windows software and templates, the Filer Manual, receive on-line help, and access Frequently Asked Questions.

SEC Form 4

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response. . . . . .0.5

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|

**1. Name and Address of Reporting Person**
Walker,Karen

(Last)    (First)    (Middle)
100 Sylvan Road
Suite100

(Street)
Woburn,  MA  01801

(City)    (State)    (Zip)

**2. Issuer Name and Ticker or Trading Symbol**
Boston Communications Group
bcgi

**3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)**

**4. Statement for (Month/Day/Year)**
03/13/2003

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer** (Check all applicable)

___ Director   ___ 10% Owner
_X_ Officer (give title below)   ___ Other (specify below)

Description   **VP Fin Admin & CFO**

___ Individual or Joint/Group Filing (Check Applicable Line)

_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 03/13/2003 | | S* | | 5,000 | D | $13.9501 | 1,027 | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/ | 3A. Deemed Execution Date, if any | 4. Transaction Code (Instr.8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) | 6. Date Exercisable(DE) and Expiration Date(ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr 5) | 9. Number of Derivative Securities Beneficially Owned Following | 10. Ownership Form of Derivative | 11. Nature of Indirect Beneficial Ownership (Instr 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Security | Year) | (Month/ Day/ Year) | (Instr. 3, 4 and 5) | | | | | | Title | ED | Amount or Number of Shares | | Reported Transaction(s) (Instr. 4) | Securities: Direct (D) or Indirect (I) (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | A | D | DE | | | | | | | (Instr. 4) |
| Common Stock (Right To Buy) | $4.875 | 03/13/2003 | X | | | 5,000 | (1) | 4/29/1997 | Common Stock | 5,000 | $4.875 | 113,900 | D |

Explanation of Responses:

*Pursuant to a 10b5-1 Plan.
(1) Exercisable in five equal installments commencing on the anniversary date.

By: /s/ [signature]    Date: 3/14/03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

Leslie Apony

From:          EDGAR.POSTMASTER@sec.gov
Sent:          Friday, March 14, 2003 11:31 AM
To:            kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:       ACCEPTED FORM TYPE 4 (0001181431-03-004308)


THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4             NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 14-Mar-2003 16:31    ACCEPTED DATE:       14-Mar-2003 16:31
FILING DATE:   14-Mar-2003 16:31
TEST FILING:   NO            CONFIRMING COPY:     NO

ACCESSION NUMBER: 0001181431-03-004308

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:       0001012887
       COMPANY:   BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE: 4
       FILE NUMBER(S):
           1. 000-28432

FILED BY:

    2. CIK:       0001198583
       FILER:     WALKER KAREN A

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

| FORM 4 | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | OMB APPROVAL |
|---|---|---|
| [ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b). | Washington, D.C. 20549 | OMB Number: 3235-0287 Expires: January 31, 2005 Estimated average burden hours per response ... 0.5 |

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 4. Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|
| Walker,Karen | **Boston Communications Group bcgi** | 02/21/2003 | ___ Director  ___ 10% Owner |
| (Last)  (First)  (Middle) | | | X Officer (give title below)  ___ Other (specify below) |
| 100 Sylvan Road Suite100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 5. If Amendment, Date of Original (Month/Day/Year) | Description  **VP Fin Admin & CFO** |
| (Street) | | | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn,  MA  01801 | | | X Form filed by One Reporting Person |
| (City)  (State)  (Zip) | | | ___ Form filed by More than One Reporting Person |

**Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2.Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 02/06/2003 | | S* | | 10,247 | D | $13.0462 | 1,027 | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr.8) | | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable (DE) and Expiration Date (ED) (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr.5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr.4) | 10. Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr.4) | 11. Nature of Indirect Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |

Page 3 of 3

**Explanation of Responses:**

*Pursuant to a 10b5-1 Plan
To correct on previously reported number of Non-Derivative Securities beneficially owned following reported transaction.

By: _____   Date: _____
/s/

** Signature of Reporting Person

Kim CW    2/21/63

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

Leslie Apony

```
From:        EDGAR.POSTMASTER@sec.gov
Sent:        Friday, February 21, 2003 4:41 AM
To:          kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net
Subject:     ACCEPTED FORM TYPE 4/A (0001181431-03-003125)
```

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.

```
COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4/A                NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 21-Feb-2003 09:41  ACCEPTED DATE:     21-Feb-2003 09:41
FILING DATE:  21-Feb-2003 09:41
TEST FILING:  NO                 CONFIRMING COPY:   NO
```

ACCESSION NUMBER: 0001181431-03-003125

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4/A
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001198583 .
      FILER:      WALKER KAREN A

----------------------------- NOTICE ---------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

!

SEC Form 4

## FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden
hours per response. . . . 0.5

| 1 Name and Address of Reporting Person* | | 2. Issuer Name and Ticker or Trading Symbol | 4. Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|---|
| Walker,Karen | | Boston Communications Group bcgi | 02/06/2003 | __ Director __ 10% Owner |
| (Last) (First) (Middle) | | | | X Officer (give title below) __ Other (specify below) |
| 100 Sylvan Road Suite100 | | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 5. If Amendment, Date of Original (Month/Day/Year) | Description VP Fin Admin & CFO |
| (Street) | | | | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn, MA 01801 | | | | X Form filed by One Reporting Person |
| (City) (State) (Zip) | | | | __ Form filed by More than One Reporting Person |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1 Title of Security (Instr. 3) | 2.Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction (s) (Instr. 3 and 4) | 6. Owner-ship Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 02/06/2003 | | S* | | 10,247 | D | $13.0462 | 6,201 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of | 6. Date Exercisable (DE) and Expiration Date (ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction | 10. Owner-ship Form of Deriv-ative Securities' Direct (D) | 11. Nature of Indirect Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Explanation of Responses:**

**"Pursuant to a 10b5-1 Plan

By: /s/ _(signature)_

Date: 2/7/03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

| Year) | (D) (Instr. 3, 4 and 5) | | | | | | (s) (Instr.4) | or Indirect (I) (Instr.4) |
|---|---|---|---|---|---|---|---|---|
| | Code | V | A | D | DE | ED | Title | Amount or Number of Shares |

Leslie Apony

| | |
|---|---|
| **rom:** | EDGAR.POSTMASTER@sec.gov |
| **Sent:** | Friday, February 07, 2003 7:15 AM |
| **To:** | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| **Subject:** | ACCEPTED FORM TYPE 4 (0001181431-03-001848) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:       BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:     4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 07-Feb-2003 12:15    ACCEPTED DATE:      07-Feb-2003 12:15
FILING DATE:   07-Feb-2003 12:15
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-001848

FILE NUMBER(S):
   1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

   1. CIK:        0001012887
      COMPANY:    BOSTON COMMUNICATIONS GROUP INC
      FORM TYPE:  4
      FILE NUMBER(S):
         1. 000-28432

FILED BY:

   2. CIK:        0001198583
      FILER:      WALKER KAREN A

------------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

1

SEC Form 4

**FORM 4**

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: January 31, 2005
Estimated average burden hours per response. . . . . 0.5

1. Name and Address of Reporting Person*
Walker,Karen

(Last)          (First)          (Middle)

100 Sylvan Road
Suite100

(Street)

Woburn,  MA  01801

(City)          (State)          (Zip)

2. Issuer Name and Ticker or Trading Symbol
Boston Communications Group bcgi

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for (Month/Day/Year)
02/04/2003

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

__ Director        __ 10% Owner
X Officer (give title below)        __ Other (specify below)

Description        VP Fin Admin & CFO

7. Individual or Joint/Group Filing (Check Applicable Line)

X  Form filed by One Reporting Person
__ Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr.5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr.4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | A | D | DE | ED | Title | Amount or Number of Shares | | | | |

| Common Stock | $11.68 | 02/04/2003 | | A | 10,000 | | (1) | 2/4/2013 | Common Stock | 10,000 | $11.68 | 118,900 | D |

**Explanation of Responses:**

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant. Subject to accelerated vesting in whole or in part based on performance goals being met.

By:

/s/ Kan aw

Date: 2/5/03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

Leslie Apony

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Wednesday, February 05, 2003 6:59 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-001614) |

THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 05-Feb-2003 11:58   ACCEPTED DATE:      05-Feb-2003 11:59
FILING DATE:   05-Feb-2003 11:58
TEST FILING:   NO             CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-001614

FILE NUMBER(S):
    1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

    1. CIK:        0001012887
       COMPANY:    BOSTON COMMUNICATIONS GROUP INC
       FORM TYPE:  4
       FILE NUMBER(S):
          1. 000-28432

FILED BY:

    2. CIK:        0001198583
       FILER:      WALKER KAREN A

------------------------------ NOTICE ------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct. An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.

SEC Form 4

| FORM 4 | UNITED STATES SECURITIES AND EXCHANGE COMMISSION | OMB APPROVAL |
|---|---|---|
| [ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b). | Washington, D.C. 20549<br><br>STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP<br><br>Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940 | OMB Number: 3235-0287<br>Expires: January 31, 2005<br>Estimated average burden<br>hours per response.....0.5 |

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 4. Statement for (Month/Day/Year) | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|---|
| Walker,Karen | Boston Communications Group bcgi | 01/30/2003 | Director __ 10% Owner |
| (Last)    (First)    (Middle) | | | X Officer (give title below) __ Other (specify below) |
| 100 Sylvan Road Suite100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 5. If Amendment, Date of Original (Month/Day/Year) | Description    VP Fin Admin & CFO |
| (Street) | | | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| Woburn, MA  01801 | | | X  Form filed by One Reporting Person |
| (City)    (State)    (Zip) | | | __  Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4, and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | A/D | Price | | | |
| Common Stock | 01/30/2003 | | S | | 2000 | D | $12.95 | 16448 | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2 Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day) | 4. Transaction Code (Instr.8) | 5. Number of Derivative Securities Acquired (A) or Disposed Of | 6. Date Exercisable (DE) and Expiration Date (ED) (Month/Day/Year) | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction | 10. Ownership Form of Derivative Securities: Direct (D) | 11. Nature of Indirect Beneficial Ownership (Instr.4) |
|---|---|---|---|---|---|---|---|---|---|---|---|

file://C:\Documents%20and%20Settings\lapony\Local%20Settings\Temporary%20Internet%20Files\OLK8\trd4210.htm    1/31/2003

Explanation of Responses:

| | | (D) | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Code | V | A | D | DE | ED | Title | Amount or Number of Shares |
| Year) | | | (Instr. 3, 4 and 5) | | | | |

Pursuant to a 10b5-1 Plan

By: /s/ ~Raw-Claw~

Date: 1/31/03

** Signature of Reporting Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
Potential persons who are to respond to the collection of information contained in this form are not reuired to respond unless the form displays a currently valid OMB Number.

SEC 1474 (9-02)

Leslie Apony

| | |
|---|---|
| From: | EDGAR.POSTMASTER@sec.gov |
| Sent: | Friday, January 31, 2003 9:34 AM |
| To: | kwalker@bcgi.net; secnotices@sendd.com; lapony@bcgi.net |
| Subject: | ACCEPTED FORM TYPE 4 (0001181431-03-001327) |

```
THE FOLLOWING SUBMISSION HAS BEEN ACCEPTED BY THE U.S. SECURITIES AND EXCHANGE
COMMISSION.


COMPANY:      BOSTON COMMUNICATIONS GROUP INC
FORM TYPE:    4              NUMBER OF DOCUMENTS: 1
RECEIVED DATE: 31-Jan-2003 14:34   ACCEPTED DATE:      31-Jan-2003 14:34
FILING DATE:   31-Jan-2003 14:34
TEST FILING:   NO                CONFIRMING COPY:    NO

ACCESSION NUMBER: 0001181431-03-001327

FILE NUMBER(S):
  1. 000-28432

THE PASSWORD FOR LOGIN CIK 0001181431 WILL EXPIRE 20-Aug-2003 13:03.

PLEASE REFER TO THE ACCESSION NUMBER LISTED ABOVE FOR FUTURE INQUIRIES.

SUBJECT COMPANY(S):

  1. CIK:       0001012887
     COMPANY:   BOSTON COMMUNICATIONS GROUP INC
     FORM TYPE: 4
     FILE NUMBER(S):
        1. 000-28432

FILED BY:

  2. CIK:       0001198583
     FILER:     WALKER KAREN A

----------------------------- NOTICE -------------------------------

URGENT: Verify that all of your addresses on the EDGAR database are
correct.  An incorrect address in the EDGAR Accounting Contact Name
and Address information may result in your fee Account Activity
Statement being returned to the SEC as undeliverable. Please correct
outdated addresses via the EDGAR filing website.

The EDGAR system is available to receive and process filings from
8:00 a.m. to 10:00 p.m. Eastern Time on business days. Filer Support
staff members are available to respond to requests for assistance from
7:00 a.m. to 7:00 p.m. Eastern Time.

We strongly encourage you to visit the Filing Website at
https://www.edgarfiling.sec.gov. You can download our current version
of the EDGARLink/Windows software and templates, the Filer Manual,
receive on-line help, and access Frequently Asked Questions.
```

1

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number ................. 3235-0287
Expires ................. January 31, 2005
Estimated average burden hours per response ................. 0.5

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

1. Name and Address of Reporting Person*

Walker          Karen          A.
(Last)          (First)          (Middle)

c/o Boston Communications Group
100 Sylvan Road, Suite 100
(Street)

Woburn          MA          01801
(City)          (State)          (Zip)

2. Issuer Name and Ticker or Trading Symbol

BCGI
Boston Communications Group, Inc.

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for Month/Day/Year

1/13/03

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

____ Director          ____ 10% Owner
 X   Officer (give title below)          ____ Other (specify below)

VP Fin. Admin & CFO

7.
____ Individual or Joint/Group Filing (Check applicable line)
____ Form filed by One Reporting Person
 X   Form filed by More than One Reporting Person

## Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 1/13/03 | - | S* | - | 2,850 | D | $12.95 | 18,448 | D | |
| † Pursuant to a 10b5-1 plan | | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-99)

FORM 4 (continued)

**Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned**

*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

_____
**Signature of Reporting Person**    '/19/0
                                      Date

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note:* File three copies of this Form, one of which must be manually signed.
If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-...)



BY OVERNIGHT DELIVERY

January 14, 2003

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Leslie N Apony

Enclosure

cc:   Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, inc.

# FORM 4

*  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 10(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number............... 32.2028
Expires............... January 200z
Estimated average burden
hours per response...... 0.:

(Print or Type Responses)

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Walker      Karen      A. | BCGI Boston Communications Group, Inc. | X Director    10% Owner |
| (Last)     (First)     (Middle) | | X Officer (give title below)    Other (specify below) |
| c/o Boston Communications Group 100 Sylvan Road, Suite 100 | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | VP Fin. Admin & CFO |
| (Street) | 4. Statement for Month/Day/Year: 1/9/03 | 7. Individual or Joint/Group Filing (Check applicable line) |
| Woburn     MA     01801 | 5. If Amendment, Date of Original (Month/Day/Year) | X Form filed by One Reporting Person |
| (City)     (State)     (Zip) | | Form filed by More than One Reporting Person |

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 1/9/03 | - | S* | - | 4903 | D | 12.95 | 21,298 | D | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

* Pursuant to a 10b5-1 plan

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

SLC 1174 (c)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

_Ka-aw_ _____   1/10/03
**Signature of Reporting Person      Date

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
   _See_ 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed.
If space is insufficient, _see_ Instruction 6 for procedure.

SEC 1474 (3-...



BY OVERNIGHT DELIVERY

January 10, 2003

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

  Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of
Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston
Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank
you for your assistance with this matter.

       Very truly yours,

       Leslie N Apony

Enclosure

cc: Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

o  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See Instruction 1(b).*

[Print or Type Responses]

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: ...............
Expires: ............... January 31, 20..
Estimated average burden hours per response..........

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol BCGI Boston Communications Group, Inc. | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

Walker    Karen    A.
(Last)    (First)    (Middle)

c/o Boston Communications Group
100 Sylvan Road, Suite 100
(Street)

Woburn    MA    01801
(City)    (State)    (Zip)

| 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4. Statement for Month/Day/Year 1/6/03 |
|---|---|

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

Director ____    10% Owner ____
X  Officer (give title below) ____    Other (specify below) ____

VP Fin. Admin & CFO

7. Individual or Joint/Group Filing (Check applicable line)
X  Form filed by One Reporting Person
____ Form filed by More than One Reporting Person

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 1/6/03 | - | S* | - | 3,739 | D | 12.95 | 26,201 | D | |

* Pursuant to a 10b5-1 plan

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

SEC 1474

FORM 4 (continued)

**Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned**
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities Beneficially Owned at End of Month (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

*** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note:*  File three copies of this Form, one of which must be manually signed.
If space is insufficient, *see* Instruction 6 for procedure.

Karen A. Willie

By: _____

**Signature of Reporting Person
under Power of Attorney dated 5/21/02          1/7/03
                                               Date



BY OVERNIGHT DELIVERY

January 7, 2003

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

           Very truly yours,

           Leslie N Apony

Enclosure

cc:  Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

UNITED STATES SECURITIES A   EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: ......... 3235-02...
Expires: ............... January 3 2(0....
Estimated average burden
hours per response........... .0.

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) | | |
|---|---|---|---|---|
| Walker   Karen   A. | BCGI   Boston Communications Group, Inc. | Director | | 10% Owner |
| (Last)   (First)   (Middle) | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | X Officer (give title below) | | Other (specify below) |
| c/o Boston Communications Group 100 Sylvan Road, Suite 100 | 4. Statement for Month/Day/Year | VP Fin. Admin & CFO | | |
| (Street) | 12/31/02 | 7. Individual or Joint/Group Filing (Check applicable line) | | |
| Woburn   MA   01801 | 5. If Amendment, Date of Original (Month/Day/Year) | X Form filed by One Reporting Person | | |
| (City)   (State)   (Zip) | | Form filed by More than One Reporting Person | | |

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/31/02 | - | G* | - | 360 | D | - | 29,940 | D | |
| * Charitable Gift | | | | | | | | | | |

Reminder:  Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-1...

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

_____
**Signature of Reporting Person

1/3/08
Date

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
*See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:  File three copies of this Form, one of which must be manually signed.
      If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-)



BY OVERNIGHT DELIVERY

January 2, 2003

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000.  Thank you for your assistance with this matter.

        Very truly yours,

        Thomas H. Kelly, Jr.

Enclosure

cc:   Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

o   Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1b(b).

(Print or Type Responses)

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number.........3235-1287
Expires............January 31, 2005
Estimated average burden
hours per response......0.5

| 1. Name and Address of Reporting Person* | | | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) | |
|---|---|---|---|---|---|
| Walker | Karen | A. | BCGI Boston Communications Group, Inc. | X Director | 10% Owner |
| (Last) | (First) | (Middle) | 4. Statement for Month/Day/Year | X Officer (give title below) | Other (specify below) |
| c/o Boston Communications Group 100 Sylvan Road, Suite 100 | | | 11/8/02 | VP Fin. Admin & CFO | |
| (Street) | | | 5. If Amendment, Date of Original (Month/Day/Year) | 7. Individual or Joint/Group Filing (Check applicable line) | |
| Woburn | MA | 01801 | | X Form filed by One Reporting Person | |
| (City) | (State) | (Zip) | | Form filed by More than One Reporting Person | |

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 11/1/02 | - | S* | - | 12,000 | D | 14.00 | 30,300 | D | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

* Pursuant to a 10b 5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person. *see* Instruction 4(b)(v).

**Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1474 (3-99)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
*(e.g., puts, calls, warrants, options, convertible securities)*

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) Code | V | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) (A) | (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) Date Exercisable | Expiration Date | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) Title | Amount or Number of Shares | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stock Option (right to buy) | 14.00 | 11/08/02 | - | X | - | 0 | 12,000 | (1) | 6/17/06 | Common Stock | 12,000 | 0 | 108,900 | D | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

_____ 
**Signature of Reporting Person

11/2/0[?]
Date

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:  File three copies of this Form, one of which must be manually signed.
If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (1-99)



BY OVERNIGHT DELIVERY

November 8, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

     Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

     Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

     If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

     Very truly yours,

     Leslie N. Apony

Enclosure

cc:   Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

## FORM 4

o  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

OMB APPROVAL

OMB Number:.......... 3235-0287
Expires:............ January 31, 2005
Estimated average burden
hours per response............ 0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|

1. Name and Address of Reporting Person*

Walker          Karen          A.
(Last)          (First)          (Middle)

c/o Boston Communications Group
100 Sylvan Road, Suite 100
(Street)

Woburn          MA          01801
(City)          (State)          (Zip)

2. Issuer Name and Ticker or Trading Symbol
BCGI
Boston Communications Group, Inc.

3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for Month/Day/Year
11/1/02

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

____ Director          ____ 10% Owner
X  Officer (give title below)          ____ Other (specify below)

VP Fin. Admin & CFO

7. Individual or Joint/Group Filing (Check applicable line)

X  Form filed by One Reporting Person
____ Form filed by More than One Reporting Person

### Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 11/1/02 | - | S* | - | 5,700 | D | 12.82 | 30,300 | D | - |
| Common Stock | 11/1/02 | - | S* | - | 7,500 | D | 12.82 | 30,300 | D | - |
| | | | | | | | | | | |
| | | | | | | | | | | |

* Pursuant to a 10b 5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (13-99)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/ Day/ Year) | 3A. Deemed Execution Date, if any (Month/ Day/ Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 8.625 | 11/01/02 | - | X | - | 0 | 5,700 | (1) | 2/3/09 | Common Stock | 5,700 | 0 | 128,400 | D | |
| Stock Option (right to buy) | 6.00 | 11/01/02 | - | X | - | 0 | 7,500 | 2/28/01 | 4/18/10 | Common Stock | 7,500 | 0 | 120,900 | D | |

(1) Exercisable in five equal installments commencing on the anniversary of the date of grant.

Karen A. Walker

By: _[signature]_

*Signature of Reporting Person  8/29/02
under power of Attorney
(copy attached)

_[date handwritten]_ 11/4/02
Date

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:  File three copies of this Form, one of which must be manually signed.
If space is insufficient, see Instruction 6 for procedure.

Page 2

SEC 1474 (3-99)



BY OVERNIGHT DELIVERY

November 4, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

    Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

                Very truly yours,

                Leslie N. Apony

Enclosure

cc:   Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc

**FORM 4**

OMB AF... OVAI.

OMB Number: ......... 3235-028.
Expires: ............. January 31, 2005
Estimated average burden
hours per response: ...........

o  Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

(Print or Type Responses)

# UNITED STATES SECURITIES ✗ EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

1. Name and Address of Reporting Person*

Walker          Karen          A.
(Last)          (First)        (Middle)

c/o Boston Communications Group
100 Sylvan Road, Suite 100
(Street)

Woburn          MA          01801
(City)          (State)       (Zip)

2. Issuer Name and Ticker or Trading Symbol
BCGI
Boston Communications Group, Inc.

3. I.R.S. Identification Number of Reporting Person, if an entity
(voluntary)

4. Statement for Month/Day/Year
8/02

5. If Amendment, Date of Original (Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer (Check all applicable)

X  Officer (give title below)     _ Director     _ 10% Owner
_ Other (specify below)

VP Fin. Admin & CFO

7. Individual or Joint/Group Filing (Check applicable line)
☒ Form filed by One Reporting Person
_ Form filed by More than One Reporting Person

## Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 10/23/02 | - | S* | - | 1,900 | D | 12.00 | 30,300 | D | |
| Common Stock | 10/23/02 | - | S* | - | 2,500 | D | 12.00 | 30,300 | D | |
| Common Stock | 10/23/02 | - | S* | - | 1,837 | D | 12.00 | 28,463 | D | |
| Common Stock | 10/23/02 | - | S* | - | 1,500 | D | 12.00 | 26,963 | D | |
| | | | | | | | | | | |
| | | | | | | | | | | |

* Pursuant to a 10b 5-1 plan.

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 14/74 (3-00)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 8.625 | 10/23/02 | - | X | - | 0 | 1,900 | 2/28/00 | 2/3/09 | Common Stock | 1,900 | 0 | 136,600 | D | |
| Stock Option (right to buy) | 6.00 | 10/23/02 | - | X | - | 0 | 2,500 | 2/28/00 | 2/3/09 | Common Stock | 2,500 | 0 | 134,100 | D | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

_Ka Awa_    10/23/02
**Signature of Reporting Person    Date

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
 See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note:* File three copies of this Form, one of which must be manually signed.
 If space is insufficient, *see* Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-9...



BY OVERNIGHT DELIVERY

October 24, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Thomas H. Kelly

Enclosure

cc:  Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

| FORM 4 | |
|---|---|

o   Check this box if no longer
subject to Section 16. Form 4
or Form 5 obligations may
continue. *See* Instruction 1(b).

(Print or Type Responses)

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number:............ 3235-028 | |
| Expires:.............January 31, 200? | |
| Estimated average burden | |
| hours per response.............    0.? | |

| 1  Name and Address of Reporting Person* | | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|---|

| Walker | Karen | A. |
|---|---|---|
| (Last) | (First) | (Middle) |

c/o Boston Communications Group
100 Sylvan Road, Suite 100

(Street)

| Woburn | MA | 01801 |
|---|---|---|
| (City) | (State) | (Zip) |

**2. Issuer Name and Ticker or Trading Symbol**
BCGI
Boston Communications Group, Inc.

**3. I.R.S. Identification Number of Reporting Person, if an entity**
(voluntary)

**4. Statement for Month/Day/Year**
9/02

**5. If Amendment, Date of Original (Month/Day/Year)**

**6. Relationship of Reporting Person(s) to Issuer**
(Check all applicable)

| Director | 10% Owner |
|---|---|
| X  Officer (give title below) | Other (specify below) |

VP Fin. Admin & CFO

**7. Individual or Joint/Group Filing**
(Check applicable line)

X  Form filed by One Reporting Person

   Form filed by More than One Reporting Person

### Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (11/99)

FORM 4 (continued)

Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Securities: Beneficially Owned at End of Month (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 8.89 | 9/4/02 | | A | | 30,000 | | (1) | 9/4/12 | Common Stock | 30,000 | 8.89 | 138,500 | D | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Explanation of Responses:

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

/s/ [signature]
**Signature of Reporting Person

10/7/02
Date

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed.
If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-98)



BY OVERNIGHT DELIVERY

October 17, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

    Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Leslie N. Apony

Enclosure

cc:  Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc

**FORM 4**

o   Check this box if no longer
    subject to Section 16. Form 4
    or Form 5 obligations may
    continue. *See* Instruction 1(b).

(Print or Type Responses)

OMB APPROVAL

OMB Number:............3235-0287
Expires:............January 31, 2005
Estimated average burden
hours per response............0.5

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

1. Name and Address of Reporting Person*

Walker          Karen         A.
(Last)          (First)       (Middle)

c/o Boston Communications Group
100 Sylvan Road, Suite 100
(Street)

Woburn          MA            01801
(City)          (State)       (Zip)

2. Issuer Name and Ticker or Trading Symbol
BCGI
Boston Communications Group, Inc.

3. I.R.S. Identification
Number of Reporting
Person, if an entity
(voluntary)

4. Statement for
Month/Day/Year

9/02

5. If Amendment,
Date of Original
(Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

Director     10% Owner
X  Officer (give     Other (specify
   title below)         below)

VP Fin. Admin & CFO

7. Individual or Joint/Group Filing
(Check applicable line)

X  Form filed by One Reporting Person
   Form filed by More than One Reporting Person

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-94)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 8.89 | 9/4/02 | | A | | 30,000 | | (1) | 9/4/12 | Common Stock | 30,000 | 8.89 | 138,500 | D | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

Explanation of Responses:

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant.

_____    10/7/02
**Signature of Reporting Person    Date

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:  File three copies of this Form, one of which must be manually signed.
If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-99)



BY OVERNIGHT DELIVERY

October 17, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Leslie N. Apony

Enclosure

cc:   Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

# FORM 4

o   Check this box if no longer
subject to Section 16. Form 4
or Form 5 obligations may
continue. *See* Instruction 1(b).

OMB APPROVAL

OMB Number...........3235-0287
Expires............January 31, 2005
Estimated average burden
hours per response......0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

(Print or Type Responses)

1. Name and Address of Reporting Person*

Walker          Karen          A.
(Last)          (First)        (Middle)

c/o Boston Communications Group
100 Sylvan Road, Suite 100
(Street)

Woburn          MA          01801
(City)          (State)     (Zip)

2. Issuer Name and Ticker or Trading Symbol
BCGI
Boston Communications Group, Inc.

3. I.R.S. Identification
Number of Reporting
Person, if an entity
(voluntary)

4. Statement for
Month/Day/Year
8/02

5. If Amendment,
Date of Original
(Month/Day/Year)

6. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

____ Director          ____ 10% Owner
_X_ Officer (give       ____ Other (specify
title below)                below)

VP Fin. Admin & CFO

7. Individual or Joint/Group Filing
(Check applicable line)

_X_ Form filed by One Reporting Person

____ Form filed by More than One Reporting Person

## Table I – Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

SEC 1474 (3-98)

FORM 4 (continued)

## Table II – Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | 7.58 | 1/25/02 | | A | | 10,000 | | (1) | 1/25/12 | Common Stock | 10,000 | 7.58 | 106,000 | D | |
| Stock Option (right to buy) | 7.09 | 7/12/02 | | A | | 2,500 | | (2) | 7/12/02 | Common Stock | 2,500 | 7.09 | 108,500 | D | |

Explanation of Responses:

(1) Exercisable in three equal installments commencing on the anniversary of the date of grant. Subject to accelerated vesting in whole or in part based on performance goals being met.

(2) Exercisable in three equal installments commencing on the anniversary of the date of grant.

**Signature of Reporting Person          10/17/02
                                              Date

**Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

*Note:* File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Page 2
SEC 1474 (3-99)



BY OVERNIGHT DELIVERY

October 17, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

    Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

                     Very truly yours,

                     Leslie N. Apony

Enclosure

cc:   Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

OMB APPROVAL

OMB Number: 32.35-02.17
Expires: September 30, 19:0
Estimated average burden
hours per response... ..

**FORM 4**

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

(Print or Type Responses)

UNITED STATES SECURITY   AND EXCHANGE COMMISSION
Washing...n, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|

1. Name and Address of Reporting Person*

Walker        Karen
(Last)    (First)    (Middle)
Boston Communications Group
100 Sylvan Road Suite 100
(Street)
Woburn        MA        01801
(City)        (State)        (Zip)

2. Issuer Name and Ticker or Trading Symbol

Boston Communications Group, Inc. (BCGI)

3. I.R.S.Identification Number of Reporting Person, if an entity (voluntary)

4. Statement for Month/Year
12/01

5. If Amendment, Date of Original (Month/Year)

6. Relationship of Reporting Person(s) to Issuer
(Check all applicable)

____ Director        ____ 10% Owner
X   Officer (give        ____ Other (specify
title below)        below)
VP & CFO

7. ____ Individual or Joint/Group Filing (Check Applicable Line)
X   Form filed by One Reporting Person
____ Form filed by More than One Reporting Person

## Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/19/01 | G | | 450 | D | | 28,463 | D | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

SEC 147:: (7-9-)

(Over )

FORM 4

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

(Print or Type Responses)

UNITED STATES SECURITIE.  4D EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

OMB APPROVAL

OMB Number: 3235-0287
Expires: September 30, 1998
Estimated average burden hours per response... 0.5

| 1. Name and Address of Reporting Person* | | | 2. Issuer Name and Ticker or Trading Symbol |
|---|---|---|---|
| Walker    Karen.    (Middle) | | | Boston Communications Group, Inc./BCGI |
| (Last)    (First) | | | |

Boston Communications Group
100 Sylvan Road Suite 100
(Street)

| 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4. Statement for Month/Year |
|---|---|
| | 10/01 |

| 5. If Amendment, Date of Original (Month/Year) |
|---|

Woburn    MA    01801
(City)    (State)    (Zip)

| 6. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|
| . Director    10% Owner |
| X  Officer (give    Other (specify title below)    below) |
| VP & CFO |

| 7. Individual or Joint/Group Filing (Check Applicable Line) |
|---|
| X Form filed by One Reporting Person |
| Form filed by More than One Reporting Person |

Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

(Over)

SEC 1474 (7-97)



BY OVERNIGHT DELIVERY

January 8, 2002

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

    Re: Boston Communications Group, Inc. - Section 16 Reporting

Dear Sir/Madam:

    Enclosed for filing are three copies, one of which is manually signed, of a Statement of Changes in Beneficial Ownership on Form 4 for Karen Walker, an officer of Boston Communications Group, Inc.

    If there are any questions regarding this filing, please call me at (781) 904-5000. Thank you for your assistance with this matter.

Very truly yours,

Alan J. Bouffard

Enclosure

cc:  Karen Walker

100 Sylvan Road
Suite 100
Woburn, MA 01801
tel: 781-904-5000
fax: 781-904-5601
www.bcgi.net
Boston Communications Group, Inc.

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned
( e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | $13.00 | 8/25/00 | A | | 20,000 | | (1) | 8/25/10 | Common Stock | 20,000 | $13.00 | 81,000 | D | |
| Stock Option (right to buy) | $6.4375 | 4/6/01 | A | | 10,000 | | (2) | 4/6/11 | Common Stock | 10,000 | $6.4375 | 91,000 | D | |
| Stock Option (right to buy) | $7.75 | 10/10/01 | A | | 5,000 | | (1) | 10/10/11 | Common Stock | 5,000 | $7.75 | 96,000 | D | |

Explanation of Responses: (1) Exercisable in three equal installments commencing on the anniversary of the date of grant. (2) Exercisable on or after 2/28/02 if performance goals are met. Otherwise exercisable in three equal installments commencing on the anniversary of the date of grant.

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form required to ... and unless the form displays a currently valid OMB Number.

_Ra aw_
**Signature of Reporting Person

11/10/01
Date

# FORM 4

☐ Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue.
*See Instruction 1(b).*

(Print or Type Responses)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility
Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | September 30, 1998 |
| Estimated average burden hours per response...... | 0.5 |

| 1. Name and Address of Reporting Person* | 2. Issuer Name and Ticker or Trading Symbol | 6. Relationship of Reporting Person(s) to Issuer |
|---|---|---|
| Walker    Karen | Boston Communications Group, Inc. (BCGI) | (Check all applicable) |
| (Last)   (First)   (Middle) | 3. I.R.S. Identification Number of Reporting Person, if an entity (voluntary) | 4. Statement for Month/Year | __X__ Director  _____ 10% Owner |
| Boston Communications Group 100 Sylvan Road Suite 100 | | | _____ Officer (give title below)  _____ Other (specify below) |
| (Street) | | 12/01 | VP & CFO |
| Woburn    MA    01801 | 5. If Amendment, Date of Original (Month/Year) | 7. Individual or Joint/Group Filing (Check Applicable Line) |
| (City)   (State)   (Zip) | | __X__ Form filed by One Reporting Person |
| | | _____ Form filed by More than One Reporting Person |

Table I — Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at End of Month (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|
| | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/19/01 | G | | 450 | D | | 28,463 | D | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

(Over)

SEC 1474 (7-96)

FORM 4 (continued)

Table II — Derivative Securities Acquired, Disposed of, or Beneficially Owned

( e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned at End of Month (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option (right to buy) | $13.00 | 8/25/00 | A | | 20,000 | | (1) | 8/25/10 | Common Stock | 20,000 | $13.00 | 81,000 | D | |
| Stock Option (right to buy) | $6.4375 | 4/6/01 | A | | 10,000 | | (2) | 4/6/11 | Common Stock | 10,000 | $6.4375 | 91,000 | D | |
| Stock Option (right to buy) | $7.75 | 10/10/01 | A | | 5,000 | | (1) | 10/10/11 | Common Stock | 5,000 | $7.75 | 96,000 | D | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

Explanation of Responses: (1) Exercisable in three equal installments commencing on the anniversary of the date of grant.
(2) Exercisable on or after 2/28/02 if performance goals are met. Otherwise exercisable in three equal installments commencing on the anniversary of the date of grant.

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations.
See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

Potential per    who are to respond to the collection of information contained in this form is
required to    nd unless the form displays a currently valid OMB Number.

_Kacluc_    11/10/01
**Signature of Reporting Person    Date

**BOSTON
COMMUNICATIONS
GROUP**

BY OVERNIGHT DELIVERY

April 29, 1999

Securities and Exchange Commission
Filing Room
450 Fifth Street, N.W.
Judiciary Plaza
Washington, DC 20549

Re: <u>Boston Communications Group, Inc. - Section 16 Reporting</u>

Dear Sir/Madam:

Enclosed for filing are three copies, one of which is manually signed, of an Initial Statement of Beneficial Ownership of Securities on Form 3 for Karen Walker, an Executive Officer of Boston Communications Group, Inc.

If there are any questions regarding this filing, please call me at (617) 476-4603. Thank you for your assistance with this matter.

Very truly yours,

Alan J. Bouffard

Enclosure

cc: Karen Walker
    Michael D. Bain, Esq.

# FORM 3

OMB APPROVAL
OMB Number: 3235-0104
Expires: September 30, 1998
Estimated average burden
hours per response ..... 0.5

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(f) of the Investment Company Act of 1940

[Print or Type Responses]

**1. Name and Address of Reporting Person***

Walker     Karen
(Last)     (First)     (Middle)

Boston Communications Group
100 Sylvan Road
(Street)

Woburn     MA     01801
(City)     (State)     (Zip)

**2. Date of Event Requiring Statement (Month/Day/Year)**

4/22/99

**3. IRS or Social Security Number of Reporting Person (Voluntary)**

**4. Issuer Name and Ticker or Trading Symbol**

Boston Communications Group, Inc. (BCGI)

**5. Relationship of Reporting Person(s) to Issuer (Check all applicable)**

___ Director     ___ 10% Owner
_X_ Officer (give     ___ Other (specify
title below)     below)

V.P. Finan. Admin. & CFO

**6. If Amendment, Date of Original (Month/Day/Year)**

**7. Individual or Joint/Group Filing (Check Applicable Line)**
_X_ Form filed by One Reporting Person
___ Form filed by More than One Reporting Person

## Table I — Non-Derivative Securities Beneficially Owned

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| Common Stock | 27,076 | D | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 5(b)(v).

SEC 1473 (7-96)

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |
| Stock option (Right to buy) | (1) | 2/25/07 | Common Stock | 12,000 | $4.875 | D | |
| Stock option (Right to buy) | (1) | 4/29/07 | Common Stock | 10,000 | $4.875 | D | |
| Stock option (Right to buy) | (1) | 2/3/09 | Common Stock | 19,000 | $8.625 | D | |
| Stock option (Right to buy) | (2) | 2/3/09 | Common Stock | 10,000 | $8.625 | D | |

Explanation of Responses:

(1) Exercisable in five equal annual installments, commencing one year after the date of grant which was ten years prior to the expiration date.

(2) Exercisable on 2/3/07; or on 2/28/00 if performance goals for 1999 are met.

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations. See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, See Instruction 6 for procedure.

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

Karen Auer

*Signature of Reporting Person

Date 4/28/99

P.03/04   DEC-01-2005   16:08

# Exhibit 30

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGj1WyK3XnZv3dTINen
 TWSM7YrzLnXDmYQelowwg5sDW3P6oaM5D3cdezXMm7z1T1+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 PV8wDsuapHlrRpu9WfaXIH5yP6P7cTPCasY4woMWKckwX2cRtl9sa+euEUpUgA
 p+pm/FnUXUacA1Y3DKtqBg==

<SEC-DOCUMENT>0001012887-02-000012.txt : 20020424
<SEC-HEADER>0001012887-02-000012.hdr.sgml : 20020424
ACCESSION NUMBER:                       0001012887-02-000012
CONFORMED SUBMISSION TYPE:              DEF 14A
PUBLIC DOCUMENT COUNT:                  2
CONFORMED PERIOD OF REPORT:             20011231
FILED AS OF DATE:                       20020424

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:           BOSTON COMMUNICATIONS GROUP INC
                CENTRAL INDEX KEY:                0001012887
                STANDARD INDUSTRIAL CLASSIFICATION:  RADIO TELEPHONE COMMUNICATIONS [4812]
                IRS NUMBER:                       043026859
                STATE OF INCORPORATION:           MA
                FISCAL YEAR END:                  1231

        FILING VALUES:
                FORM TYPE:           DEF 14A
                SEC ACT:             1934 Act
                SEC FILE NUMBER:     000-28432
                FILM NUMBER:         02619850

        BUSINESS ADDRESS:
                STREET 1:            100 SYLVAN RD
                STREET 2:            STE 100
                CITY:                WOBURN
                STATE:               MA
                ZIP:                 01801-1830
                BUSINESS PHONE:      7819045000

        MAIL ADDRESS:
                STREET 1:            100 SYLVAN RD

```
</SEC-HEADER>
<DOCUMENT>
<TYPE>DEF 14A
<SEQUENCE>1
<FILENAME>proxy.htm
<DESCRIPTION>PROXY FOR BOSTON COMMUNICATIONS GROUP INC
<TEXT>
<HTML>
<HEAD>
<TITLE>
</TITLE>
</HEAD>
<BODY>
```

STREET 2:
CITY:        STE 100
STATE:       WOBURN
ZIP:         MA
             01801-1830

Notice of Annual Meeting of Shareholders
to be Held On Thursday, May 23, 2002

The Annual Meeting of Shareholders of Boston Communications Group, Inc. (the "Company") will be held on Thursday, May 23, 2002, at the Company, 100 Sylvan Road, Woburn, Massachusetts to consider and act upon the following proposals:

1.  To elect Paul J. Tobin, Brian E. Boyle and E.Y. Snowden, as Class III Directors, each to serve for a three-year term.

2.  To ratify the selection of Ernst and Young LLP by the Board of Directors as the Company's independent auditors for the current fiscal year.

3.  To transact such other business as may properly come before the meeting or any adjournment thereof.

The Board of Directors has no knowledge of any other business to be transacted at the meeting.

Shareholders of record at the close of business on April 16, 2002 will be entitled to notice of and to vote at the meeting or any adjournment thereof. The stock transfer books of the Company will remain open.

http://www.sec.gov/Archives/edgar/data/1012887/000101288702000012/000101288702-02-000012.txt

Woburn, Massachusetts
April 19, 2002

By Order of the Board of Directors,

Alan J. Bouffard,
Clerk

WHETHER OR NOT YOU EXPECT TO ATTEND THE MEETING, PLEASE COMPLETE, DATE AND SIGN
THE ENCLOSED PROXY CARD AND MAIL IT PROMPTLY IN THE ENCLOSED ENVELOPE IN ORDER
TO ENSURE REPRESENTATION OF YOUR SHARES AT THE ANNUAL MEETING. NO POSTAGE NEED
BE AFFIXED IF THE PROXY CARD IS MAILED IN THE UNITED STATES. IF THE ENVELOPE IS
LOST PLEASE RETURN THE PROXY CARD TO EQUISERVE P.O. BOX 43058, PROVIDENCE, RI
02940.

Boston Communications Group, Inc.
100 Sylvan Road
Woburn, Massachusetts 01801

Proxy Statement for the Annual Meeting of Shareholders
to be held on May 23, 2002

This Proxy Statement is furnished in connection with the solicitation
of proxies by the Board of Directors of Boston Communications Group, Inc. (the
"Company") for use at the Annual Meeting of Shareholders to be held on May 23,
2002 and at any adjournments of that meeting (the "Annual Meeting"). All shares
represented by validly executed proxies will be voted in accordance with the
shareholders' instructions set forth therein. If no choice is specified on a
signed proxy card, the shares represented by such proxy will be voted in favor
of the proposals set forth in the accompanying Notice of Meeting and described
herein. Any proxy may be revoked by a shareholder at any time before its
exercise by delivery of written revocation or a subsequently dated proxy to the
Clerk of the Company or by attending the Annual Meeting and voting in person. A
shareholder's attendance at the Annual Meeting will not be deemed, by itself, to
revoke a proxy previously signed and delivered by such shareholder unless the
shareholder gives affirmative notice at the Annual Meeting that the shareholder
intends to revoke such proxy and vote in person.

The Company's 2001 Annual Report to Shareholders is being mailed to shareholders concurrently with this Proxy Statement on or about April 19, 2002.

A copy of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2001, as filed with the Securities and Exchange Commission, except for exhibits, will be furnished, without charge to any shareholder upon written request to the Company, Boston Communications Group, Inc., 100 Sylvan Road, Woburn, Massachusetts 01801.

## Voting Securities and Votes Required

At the close of business on April 16, 2002, the record date for the determination of shareholders entitled to notice of and to vote at the Annual Meeting, there were outstanding and entitled to vote an aggregate of 17,235,071 shares of common stock, $.01 par value per share, of the Company (the "Common Stock"), constituting all of the voting stock of the Company. Holders of Common Stock are entitled to one vote per share.

The presence in person or representation by proxy of the holders of a majority of the number of shares of Common Stock issued, outstanding and entitled to vote at the Annual Meeting constitutes a quorum for the transaction of business at the Annual Meeting. Shares of Common Stock represented in person or by proxy (including shares that abstain or do not vote with respect to one or more of the proposals presented for shareholder approval) will be counted for purposes of determining whether a quorum is present.

If a quorum is present at the Annual Meeting, the election of the directors will be determined by a plurality of the votes cast, in person or by proxy at the Annual Meeting. The affirmative vote of the majority of the votes cast, in person or by proxy, at the Annual Meeting is required for the ratification of the selection of Ernst and Young LLP as the Company's independent auditors for the current fiscal year.

Shares that are withheld or that abstain from voting as to a particular proposal, and shares held in "street name" by brokers or nominees who indicate on their proxies that they do not have discretionary authority to vote such shares as to a particular proposal ("broker non-votes"), will not be counted as votes in favor of such proposal and will also not be counted as votes cast or shares voting on such proposal. Accordingly, shares withheld or abstaining and "broker non-votes" will have no effect on the voting on proposals, such as the ones presented for shareholder approval at this Annual Meeting, that requires the affirmative vote of a certain percentage of the shares voting on the proposal.

Security Ownership of Certain Beneficial Owners and Management

     The following table sets forth certain information as of February 28, 2002, with respect to the beneficial ownership of the Company's Common Stock by (i) each person known by the Company to beneficially own more than 5% of the outstanding shares of Common Stock, (ii) each director and each person nominated to become a director of the Company, (iii) each executive officer of the Company named in the Summary Compensation Table set forth under the caption "Executive Compensation" below and (iv) all current directors and executive officers of the Company as a group:

| Beneficial Owner | Number of Shares Beneficially Owned(1) | Percentage of Common Stock Outstanding(2) |
|---|---|---|
| Barclays Global Investors (3) 45 Fremont Street San Francisco, CA 94120 | 1,321,964 | 7.69% |
| FMR Corp. (4) 82 Devonshire Street Boston, MA 02109 | 1,151,000 | 6.69% |
| Dimensional Fund Advisors Inc. (5) 1299 Ocean Avenue, 11th Floor Santa Monica, CA 90401 | 1,077,200 | 6.26% |
| J.P. Morgan Chase and Co. (6) 270 Park Avenue New York, NY 10017 | 920,820 | 5.35% |
| Paul J. Tobin (7) | 627,165 | 3.64% |
| E.Y. Snowden (8) | 447,050 | 2.55% |
| Frederick von Mering (9) | 421,132 | 2.45% |
| Robert Sullivan (10) | 364,035 | 2.12% |
| Brian E. Boyle (11) | 357,305 | 2.04% |
| Jerrold D. Adams (12) | 97,075 | * |
| Karen Walker (13) | 81,701 | * |
| William Wessman (14) | 77,802 | * |

2

Gerald Segel (15)                                                                        48,000                    *

Paul R. Gudonis (16)                                                                     40,000                    *

Gerald S. McGowan (17)                                                                   39,000                    *

Rajendra Singh (18)                                                                      19,000                    *

All current directors and officers as a group (19)                                    2,619,265                15.23%
(12 persons)

*       Less than 1%

(1)     Each person has sole investment and voting power with respect to the
        shares indicated, except as otherwise noted. The number of shares of
        Common Stock beneficially owned is determined under the rules of the
        Securities and Exchange Commission and is not necessarily indicative of
        beneficial ownership for any other purpose. The inclusion herein of any
        shares of Common Stock deemed beneficially owned does not constitute an
        admission of beneficial ownership of such shares. Any reference in the
        footnotes below to stock options held by the person in question relates
        to stock options which are currently exercisable or exercisable within
        60 days after February 28, 2002.

(2)     The number of shares deemed outstanding with respect to a named person
        includes 17,195,821 shares outstanding as of February 28, 2002 plus any
        shares subject to options held by the person in question that are
        currently exercisable or exercisable within 60 days after February 28,
        2002.

(3)     Based solely upon a Schedule 13G filed on February 8, 2002.

(4)     Based solely upon a Schedule 13G filed on February 14, 2002.

(5)     Based solely upon a Schedule 13G filed on January 30, 2002.

(6)     Based solely upon a Schedule 13G filed on February 11, 2002.

(7)     Includes 33,334 shares issuable pursuant to stock options.
        Includes 306,831 shares held by the Paul J. Tobin 1988 Trust,
        and 287,000 shares held by the Margaret M. Tobin 1988 Trust.
        Mr. Tobin is the trustee of the Paul J. Tobin 1988 Trust.

Margaret M. Tobin, the spouse of Paul J. Tobin, is trustee of the
Margaret M. Tobin 1988 Trust.

(8)      Includes   411,134   shares   issuable   pursuant   to  stock  options.
         Of these,  180,000 are held in trust for the benefit of Mr.
         Snowden's children.

(9)      Includes 147,322 shares issuable pursuant to stock options.

(10)     Includes 16,668 shares issuable pursuant to stock options.

(11)     Includes 129,000 shares issuable pursuant to stock options. Also
         includes 170,250 shares owned by Sand Drift, Ltd. of which
         Mr. Boyle is a limited partner and 52,000 shares owned by the Brian
         E. Boyle Charitable Foundation. Mr. Boyle disclaims
         beneficial ownership of these shares, except to the extent of his
         direct pecuniary interest therein.

(12)     Includes 91,075 shares issuable pursuant to stock options.

(13)     Includes 51,401 shares issuable pursuant to stock options.

(14)     Includes 76,302 shares issuable pursuant to stock options.

(15)     Includes 38,000 shares issuable pursuant to stock options.

(16)     Includes 38,000 shares issuable pursuant to stock options.

(17)     Includes 2,000 shares issuable pursuant to stock options.

(18)     Includes 19,000 shares issuable pursuant to stock options.

(19)     Includes 1,053,236 issuable pursuant to stock options.

ELECTION OF DIRECTORS

The Company's Board of Directors is divided into three classes, with
members of each class holding office for staggered three-year terms. The Board
currently consists of three Class I Directors, whose terms expire at the 2003

William Wessman                    10,000      2.05%      6.4375      4/6/11      40,525      1
                                    5,000      1.02%        7.75     10/10/11     24,350

---------------------------------------------------------------------------------------------

(1)  All options vest in three equal annual installments over a three-
     year period commencing on the first anniversary of the date of grant.

(2)  The exercise price is equal to the fair market value of the Company's
     Common Stock on the date of grant.

(3)  Amounts represent hypothetical gains that could be achieved for the
     respective options if exercised at the end of the option term. These
     gains are based on assumed rates of stock appreciation of 5% and 10%
     compounded annually from the date the respective options were granted
     to their expiration date. The assumed rates of appreciation are
     mandated by the rules of the Securities and Exchange Commission and do
     not represent the Company's estimate or projection of future stock
     prices. This table does not take into account any appreciation or
     depreciation in the price of the Common Stock to date. Actual gain, if
     any, on stock option exercises will depend on future performance of the
     Common Stock and the date on which the options are exercised. Values
     shown are net of the option exercise price, but do not include
     deductions for tax or other expenses associated with the exercise.

(4)  No restricted stock or stock appreciation rights were granted in 2001.


Option Exercises and Holdings

     The following table sets forth certain information concerning each
exercise of a stock option during the year ended December 31, 2001 by each of
the Named Executive Officers, and the number and value of unexercised options
held by each of the Named Executive Officers on December 31, 2001.

AGGREGATED OPTION EXERCISES IN LAST FISCAL YEAR
AND FISCAL YEAR-END OPTION VALUES

Number of Securities Underlying     Value of Unexercised
Options at Fiscal Year End          In-the-Money Options at Fi
                                    Year End ($) (1)

| Name | Shares Acquired on Exercise | Value Realized | Exercisable | Unexercisable | Exercisable | Unexer |
|---|---|---|---|---|---|---|
| Edward H. Snowden | -- | -- | 330,000 | 105,000 | 1,425,660 | |
| Robert Sullivan | | | 13,334 | 28,666 | 53,500 | |
| Frederick E. von Mering | -- | -- | 143,988 | 30,666 | 785,162 | |
| Karen Walker | -- | -- | 44,267 | 51,733 | 203,710 | |
| William Wessman | | | 54,501 | 66,799 | 295,618 | |

(1)  The per share value of unexercised in-the-money options is calculated by subtracting the per share option exercise price from the last per share sale price of the Company's Common Stock on the Nasdaq National Market on December 31, 2001 ($11.35).

Employment Agreements with Named Executive Officers

On February 10, 1998, the Company entered into an employment letter agreement with E.Y. Snowden, pursuant to which Mr. Snowden was made the President and Chief Executive Officer and a Director of the Company. The agreement provides for an initial base salary of $250,000 plus an annual performance-based bonus of up to 40% of base salary. In addition, pursuant to the agreement, Mr. Snowden was granted a non-qualified stock option to purchase 400,000 shares of Common Stock at an exercise price of $7.0625 per share, vesting in five equal annual installments commencing on February 10, 1998. In the event of a change in control of the Company (as defined in the agreement),

100% of the options will vest on the date of such transaction. If Mr. Snowden's employment is terminated without cause, or if there is a change of control which results in his demotion, diminution in responsibilities, or removal from the Board, then the Company will pay, as severance, his base salary until such time as he is otherwise employed, up to a maximum of twelve months.

## REPORT OF THE COMPENSATION COMMITTEE

The Compensation Committee of the Board of Directors (the "Compensation Committee") is currently composed of four non-employee directors, Messrs. Gudonis, McGowan, Segel and Singh. The Compensation Committee is responsible for establishing and administering the policies which govern both annual compensation and performance-based equity ownership of the Company's employees, including its executive officers.

This report is submitted by the Compensation Committee and addresses the Company's policies for 2001 as they apply to the Company's executive officers.

## Policies and Philosophy

The Company's executive compensation program is structured and administered to achieve three broad goals in a manner consistent with shareholder interests. First, the Compensation Committee structures executive compensation programs and decisions regarding individual compensation in a manner that the Compensation Committee believes will enable the Company to attract and retain key executives. Second, the Compensation Committee establishes compensation programs that are designed to reward executives for the achievement of specified business objectives of the Company. Finally, the Compensation Committee designs the Company's executive compensation programs to provide executives with long-term equity ownership opportunities in the Company in an attempt to align executive and shareholder interests.

In evaluating both individual and corporate performance for purposes of determining salary and bonus levels and stock option grants, the Compensation Committee places significant emphasis on the extent to which strategic and business plan goals are met, including the progress and success of the Company with respect to matters such as achieving operating budgets, establishing strategic marketing, distribution and development alliances, product development

# Exhibit 30

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGj1NyK3XmZv3dTINen
 TWSM7vrzLaDbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 Pv8wD8uapH1rRpu9WfaxlH5yp6P7cTPCasY4woMSWKckwXz2ctRth9sa+eJEUPUgA
 p+pm/FmUXUac41Y33DkTgBg==

<SEC-DOCUMENT>0001012887-02-000012.txt : 20020424
<SEC-HEADER>0001012887-02-000012.hdr.sgml : 20020424
ACCESSION NUMBER:          0001012887-02-000012
CONFORMED SUBMISSION TYPE: DEF 14A
PUBLIC DOCUMENT COUNT:     2
CONFORMED PERIOD OF REPORT: 20011231
FILED AS OF DATE:          20020424

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:               BOSTON COMMUNICATIONS GROUP INC
                CENTRAL INDEX KEY:                    0001012887
                STANDARD INDUSTRIAL CLASSIFICATION:   RADIO TELEPHONE COMMUNICATIONS [4812]
                IRS NUMBER:                           043026859
                STATE OF INCORPORATION:               MA
                FISCAL YEAR END:                      1231

        FILING VALUES:
                FORM TYPE:           DEF 14A
                SEC ACT:             1934 Act
                SEC FILE NUMBER:     000-28432
                FILM NUMBER:         02619850

        BUSINESS ADDRESS:
                STREET 1:            100 SYLVAN RD
                STREET 2:            STE 100
                CITY:                WOBURN
                STATE:               MA
                ZIP:                 01801-1830
                BUSINESS PHONE:      7819045000

        MAIL ADDRESS:
                STREET 1:            100 SYLVAN RD
```

```
                    STREET 2:           STE 100
                    CITY:               WOBURN
                    STATE:              MA
                    ZIP:                01801-1830

</SEC-HEADER>
<DOCUMENT>
<TYPE>DEF 14A
<SEQUENCE>1
<FILENAME>proxy.htm
<DESCRIPTION>PROXY FOR BOSTON COMMUNICATIONS GROUP INC
<TEXT>

<HTML>
<HEAD>
<TITLE>
</TITLE>
</HEAD>
<BODY>
```

Notice of Annual Meeting of Shareholders
to be Held On Thursday, May 23, 2002

The Annual Meeting of Shareholders of Boston Communications Group, Inc. (the "Company") will be held on Thursday, May 23, 2002, at the Company, 100 Sylvan Road, Woburn, Massachusetts to consider and act upon the following proposals:

1.  To elect Paul J. Tobin, Brian E. Boyle and E.Y. Snowden, as Class III Directors, each to serve for a three-year term.

2.  To ratify the selection of Ernst and Young LLP by the Board of Directors as the Company's independent auditors for the current fiscal year.

3.  To transact such other business as may properly come before the meeting or any adjournment thereof.

The Board of Directors has no knowledge of any other business to be transacted at the meeting.

Shareholders of record at the close of business on April 16, 2002 will be entitled to notice of and to vote at the meeting or any adjournment thereof. The stock transfer books of the Company will remain open.

By Order of the Board of Directors,

Alan J. Bouffard,
Clerk

Woburn, Massachusetts
April 19, 2002

WHETHER OR NOT YOU EXPECT TO ATTEND THE MEETING, PLEASE COMPLETE, DATE AND SIGN THE ENCLOSED PROXY CARD AND MAIL IT PROMPTLY IN THE ENCLOSED ENVELOPE IN ORDER TO ENSURE REPRESENTATION OF YOUR SHARES AT THE ANNUAL MEETING. NO POSTAGE NEED BE AFFIXED IF THE PROXY CARD IS MAILED IN THE UNITED STATES. IF THE ENVELOPE IS LOST PLEASE RETURN THE PROXY CARD TO EQUISERVE P.O. BOX 43058, PROVIDENCE, RI 02940.

Boston Communications Group, Inc.
100 Sylvan Road
Woburn, Massachusetts 01801

Proxy Statement for the Annual Meeting of Shareholders
to be Held on May 23, 2002

This Proxy Statement is furnished in connection with the solicitation of proxies by the Board of Directors of Boston Communications Group, Inc. (the "Company") for use at the Annual Meeting of Shareholders to be held on May 23, 2002 and at any adjournments of that meeting (the "Annual Meeting"). All shares represented by validly executed proxies will be voted in accordance with the shareholders' instructions set forth therein. If no choice is specified on a signed proxy card, the shares represented by such proxy will be voted in favor of the proposals set forth in the accompanying Notice of Meeting and described herein. Any proxy may be revoked by a shareholder at any time before its exercise by delivery of written revocation or a subsequently dated proxy to the Clerk of the Company or by attending the Annual Meeting and voting in person. A shareholder's attendance at the Annual Meeting will not be deemed, by itself, to revoke a proxy previously signed and delivered by such shareholder unless the shareholder gives affirmative notice at the Annual Meeting that the shareholder intends to revoke such proxy and vote in person.

The Company's 2001 Annual Report to Shareholders is being mailed to shareholders concurrently with this Proxy Statement on or about April 19, 2002.

A copy of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2001, as filed with the Securities and Exchange Commission, except for exhibits, will be furnished, without charge to any shareholder upon written request to the Company, Boston Communications Group, Inc., 100 Sylvan Road, Woburn, Massachusetts 01801.

Voting Securities and Votes Required

At the close of business on April 16, 2002, the record date for the determination of shareholders entitled to notice of and to vote at the Annual Meeting, there were outstanding and entitled to vote an aggregate of 17,235,071 shares of common stock, $.01 par value per share, of the Company (the "Common Stock"), constituting all of the voting stock of the Company. Holders of Common Stock are entitled to one vote per share.

The presence in person or representation by proxy of the holders of a majority of the number of shares of Common Stock issued, outstanding and entitled to vote at the Annual Meeting constitutes a quorum for the transaction of business at the Annual Meeting. Shares of Common Stock represented in person or by proxy (including shares that abstain or do not vote with respect to one or more of the proposals presented for shareholder approval) will be counted for purposes of determining whether a quorum is present.

If a quorum is present at the Annual Meeting, the election of the directors will be determined by a plurality of the votes cast, in person or by proxy at the Annual Meeting. The affirmative vote of the majority of the votes cast, in person or by proxy, at the Annual Meeting is required for the ratification of the selection of Ernst and Young LLP as the Company's independent auditors for the current fiscal year.

Shares that are withheld or that abstain from voting as to a particular proposal, and shares held in "street name" by brokers or nominees who indicate on their proxies that they do not have discretionary authority to vote such shares as to a particular proposal ("broker non-votes"), will not be counted as votes in favor of such proposal and will also not be counted as votes cast or shares voting on such proposal. Accordingly, shares withheld or abstaining and "broker non-votes" will have no effect on the voting on proposals, such as the ones presented for shareholder approval at this Annual Meeting, that requires the affirmative vote of a certain percentage of the shares voting on the proposal.

2

Security Ownership of Certain Beneficial Owners and Management

    The following table sets forth certain information as of February 28, 2002, with respect to the beneficial ownership of the Company's Common Stock by (i) each person known by the Company to beneficially own more than 5% of the outstanding shares of Common Stock, (ii) each director and each person nominated to become a director of the Company, (iii) each executive officer of the Company named in the Summary Compensation Table set forth under the caption "Executive Compensation" below and (iv) all current directors and executive officers of the Company as a group:

| Beneficial Owner | Number of Shares Beneficially Owned(1) | Percentage of Common Stock Outstanding(2) |
|---|---|---|
| Barclays Global Investors (3)<br>45 Fremont Street<br>San Francisco, CA 94120 | 1,321,964 | 7.69% |
| FMR Corp. (4)<br>82 Devonshire Street<br>Boston, MA 02109 | 1,151,000 | 6.69% |
| Dimensional Fund Advisors Inc. (5)<br>1299 Ocean Avenue, 11th Floor<br>Santa Monica, CA 90401 | 1,077,200 | 6.26% |
| J.P. Morgan Chase and Co. (6)<br>270 Park Avenue<br>New York, NY 10017 | 920,820 | 5.35% |
| Paul J. Tobin (7) | 627,165 | 3.64% |
| E.Y. Snowden (8) | 447,050 | 2.55% |
| Frederick von Mering (9) | 421,132 | 2.45% |
| Robert Sullivan (10) | 364,035 | 2.12% |
| Brian E. Boyle (11) | 357,305 | 2.04% |
| Jerrold D. Adams (12) | 97,075 | * |
| Karen Walker (13) | 81,701 | * |
| William Wessman (14) | 77,802 | * |

| | | |
|---|---|---|
| Gerald Segel (15) | 48,000 | * |
| Paul R. Gudonis (16) | 40,000 | * |
| Gerald S. McGowan (17) | 39,000 | * |
| Rajendra Singh (18) | 19,000 | * |
| All current directors and officers as a group (19) (12 persons) | 2,619,265 | 15.23% |

*      Less than 1%

(1)    Each person has sole investment and voting power with respect to the shares indicated, except as otherwise noted. The number of shares of Common Stock beneficially owned is determined under the rules of the Securities and Exchange Commission and is not necessarily indicative of beneficial ownership for any other purpose. The inclusion herein of any shares of Common Stock deemed beneficially owned does not constitute an admission of beneficial ownership of such shares. Any reference in the footnotes below to stock options held by the person in question relates to stock options which are currently exercisable or exercisable within 60 days after February 28, 2002.

(2)    The number of shares deemed outstanding with respect to a named person includes 17,195,821 shares outstanding as of February 28, 2002 plus any shares subject to options held by the person in question that are currently exercisable or exercisable within 60 days after February 28, 2002.

(3)    Based solely upon a Schedule 13G filed on February 8, 2002.

(4)    Based solely upon a Schedule 13G filed on February 14, 2002.

(5)    Based solely upon a Schedule 13G filed on January 30, 2002.

(6)    Based solely upon a Schedule 13G filed on  February 11, 2002.

(7)    Includes  33,334  shares  issuable  pursuant to stock options. Includes 306,831 shares held by the Paul J. Tobin 1988 Trust, and 287,000  shares held by the Margaret M. Tobin 1988  Trust. Mr.  Tobin is the trustee of the Paul J. Tobin 1988 Trust.

Margaret M. Tobin, the spouse of Paul J. Tobin, is trustee of the Margaret M. Tobin 1988 Trust.

(8)     Includes 411,134 shares issuable pursuant to stock options. Of these, 180,000 are held in trust for the benefit of Mr. Snowden's children.

(9)     Includes 147,322 shares issuable pursuant to stock options.

(10)    Includes 16,668 shares issuable pursuant to stock options.

(11)    Includes 129,000 shares issuable pursuant to stock options. Also includes 170,250 shares owned by Sand Drift, Ltd. of which Mr. Boyle is a limited partner and 52,000 shares owned by the Brian E. Boyle Charitable Foundation. Mr. Boyle disclaims beneficial ownership of these shares, except to the extent of his direct pecuniary interest therein.

(12)    Includes 91,075 shares issuable pursuant to stock options.

(13)    Includes 51,401 shares issuable pursuant to stock options.

(14)    Includes 76,302 shares issuable pursuant to stock options.

(15)    Includes 38,000 shares issuable pursuant to stock options.

(16)    Includes 38,000 shares issuable pursuant to stock options.

(17)    Includes 2,000 shares issuable pursuant to stock options.

(18)    Includes 19,000 shares issuable pursuant to stock options.

(19)    Includes 1,053,236 issuable pursuant to stock options.

## ELECTION OF DIRECTORS

The Company's Board of Directors is divided into three classes, with members of each class holding office for staggered three-year terms. The Board currently consists of three Class I Directors, whose terms expire at the 2003

| William Wessman | 10,000 | 2.05% | 6.4375 | 4/6/11 | 40,525 |
| | 5,000 | 1.02% | 7.75 | 10/10/11 | 24,350 |

----------
----------
----------

(1)   All options vest in three equal annual installments over a three
      year period commencing on the first anniversary of the date of grant.

(2)   The exercise price is equal to the fair market value of the Company's
      Common Stock on the date of grant.

(3)   Amounts represent hypothetical gains that could be achieved for the
      respective options if exercised at the end of the option term. These
      gains are based on assumed rates of stock appreciation of 5% and 10%
      compounded annually from the date the respective options were granted
      to their expiration date. The assumed rates of appreciation are
      mandated by the rules of the Securities and Exchange Commission and do
      not represent the Company's estimate or projection of future stock
      prices. This table does not take into account any appreciation or
      depreciation in the price of the Common Stock to date. Actual gain, if
      any, on stock option exercises will depend on future performance of the
      Common Stock and the date on which the options are exercised. Values
      shown are net of the option exercise price, but do not include
      deductions for tax or other expenses associated with the exercise.

(4)   No restricted stock or stock appreciation rights were granted in 2001.


Option Exercises and Holdings

      The following table sets forth certain information concerning each
exercise of a stock option during the year ended December 31, 2001 by each of
the Named Executive Officers, and the number and value of unexercised options
held by each of the Named Executive Officers on December 31, 2001.


                    AGGREGATED OPTION EXERCISES IN LAST FISCAL YEAR
                         AND FISCAL YEAR-END OPTION VALUES


                        Number of Securities Underlying          Value of Unexercised
                                                              In-the-Money Options at Fi
                        Options at Fiscal Year End                Year End ($) (1)

| Name | Shares Acquired on Exercise | Value Realized | Exercisable | Unexercisable | Exercisable | Unexer |
| --- | --- | --- | --- | --- | --- | --- |
| Edward H. Snowden | -- | -- | 330,000 | 105,000 | 1,425,660 | |
| Robert Sullivan | | | 13,334 | 28,666 | 53,500 | |
| Frederick E. von Mering | -- | -- | 143,988 | 30,666 | 785,162 | |
| Karen Walker | -- | -- | 44,267 | 51,733 | 203,710 | |
| William Wessman | -- | -- | 54,501 | 66,799 | 295,618 | |

(1)    The per share value of unexercised in-the-money options is calculated
       by subtracting the per share option exercise price from the last per
       share sale price of the Company's Common Stock on the Nasdaq National
       Market on December 31, 2001 ($11.35).

Employment Agreements with Named Executive Officers

       On February 10, 1998, the Company entered into an employment letter
agreement with B.Y. Snowden, pursuant to which Mr. Snowden was made the
President and Chief Executive Officer and a Director of the Company. The
agreement provides for an initial base salary of $250,000 plus an annual
performance-based bonus of up to 40% of base salary. In addition, pursuant to
the agreement, Mr. Snowden was granted a non-qualified stock option to purchase
400,000 shares of Common Stock at an exercise price of $7.0625 per share,
vesting in five equal annual installments commencing on February 10, 1998. In
the event of a change in control of the Company (as defined in the agreement),

100% of the options will vest on the date of such transaction. If Mr. Snowden's employment is terminated without cause, or if there is a change of control which results in his demotion, diminution in responsibilities, or removal from the Board, then the Company will pay, as severance, his base salary until such time as he is otherwise employed, up to a maximum of twelve months.

REPORT OF THE COMPENSATION COMMITTEE

The Compensation Committee of the Board of Directors (the "Compensation Committee") is currently composed of four non-employee directors, Messrs. Gudonis, McGowan, Segel and Singh. The Compensation Committee is responsible for establishing and administering the policies which govern both annual compensation and performance-based equity ownership of the Company's employees, including its executive officers.

This report is submitted by the Compensation Committee and addresses the Company's policies for 2001 as they apply to the Company's executive officers.

Policies and Philosophy

The Company's executive compensation program is structured and administered to achieve three broad goals in a manner consistent with shareholder interests. First, the Compensation Committee structures executive compensation programs and decisions regarding individual compensation in a manner that the Compensation Committee believes will enable the Company to attract and retain key executives. Second, the Compensation Committee establishes compensation programs that are designed to reward executives for the achievement of specified business objectives of the Company. Finally, the Compensation Committee designs the Company's executive compensation programs to provide executives with long-term equity ownership opportunities in the Company in an attempt to align executive and shareholder interests.

In evaluating both individual and corporate performance for purposes of determining salary and bonus levels and stock option grants, the Compensation Committee places significant emphasis on the extent to which strategic and business plan goals are met, including the progress and success of the Company with respect to matters such as achieving operating budgets, establishing strategic marketing, distribution and development alliances, product development

statement and form of proxy related thereto, must be received by the Company at its principal office in Woburn, Massachusetts not later than December 20, 2003 for inclusion in the proxy statement for that meeting.

If a shareholder of the Company wishes to present a proposal before the 2003 Annual Meeting of Shareholders, other than one that will be included in the Company's proxy materials for such meeting and the Company has not received notice of such proposal prior to March 5, 2003, the proxies that the Company solicits for such meeting shall have discretionary authority to vote on such proposal, if the proposal is properly brought before such meeting. If a shareholder notifies the Company prior to March 5, 2003 of its intention to present such a proposal at the 2003 Annual Meeting of Shareholders, the proxies may still exercise discretionary voting authority under circumstances consistent with the proxy rules of the Securities and Exchange Commission.

By Order of the Board of Directors,

Alan J. Bouffard,
Clerk

April 19, 2002

THE BOARD OF DIRECTORS HOPES THAT SHAREHOLDERS WILL ATTEND THE MEETING. WHETHER OR NOT SHAREHOLDERS PLAN TO ATTEND, SHAREHOLDERS ARE URGED TO COMPLETE, DATE, SIGN AND RETURN THE ENCLOSED PROXY CARD IN THE ACCOMPANYING ENVELOPE. SHAREHOLDERS WHO ATTEND THE MEETING MAY VOTE THEIR SHARES PERSONALLY EVEN THOUGH THEY HAVE SENT IN THEIR PROXY CARDS.

SCHEDULE 14A INFORMATION

Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934
(Amendment No. ___)

Filed by the Registrant    |X|

Filed by a Party other than the Registrant    |_|

Check the appropriate box:

|_|   Preliminary Proxy Statement

|_|   Confidential, For Use of the Commission Only (as permitted by Rule 14a-6(e)(2))

|x|   Definitive Proxy Statement

|_|   Definitive Additional Materials

|_|   Soliciting Material Pursuant to 14a-11(c) or 14a-12

BOSTON COMMUNICATIONS GROUP, INC.

(Name of Registrant as Specified in Its Charter)

(Name of Person(s) Filing Proxy Statement if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

|x|   No fee required.

|_|   Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

1)   Title of each class of securities to which transaction applies:

2)   Aggregate number of securities to which transaction applies:

3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

4)   Proposed maximum aggregate value of transaction:

5)   Total fee paid:

|_|   Fee paid previously with preliminary materials.

|_|   Check box if any part of the fee is offset as provided by Exchange Act

Rule 0-11(a)(2) and identify the filing for which the offsetting fee
was paid previously. Identify the previous filing by registration
statement number, or the Form or Schedule and the date of its filing.

1)    Amount Previously Paid: ...............................................

2)    Form, Schedule or Registration Statement No.: .......................

3)    Filing Party: .......................................................

4)    Date Filed: .........................................................

</BODY>
</HTML>

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>GRAPHIC
<SEQUENCE>3
<FILENAME>picture.jpg
<DESCRIPTION>GRAPHIC
<TEXT>
begin 644 picture.jpg
M_|C_X``02D9)1@`!`0```0`!``#_``#_``#_``#_``#_``#_``#_``#_``#_``#_
M;'V\E``63``-__,__(('@U'@$@_'0]``|^``1#&&$|8_|*F@&|@@+#+H`$'Q:;#>
M#F`&`A-P^P_@',$R`H+._X@```````````````````````````````````````
M&&A41%$H^@_9_+?<o&o`<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
M'?<'<>__H&EF@//m2__`<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
M`#`!`$&z/H?_O'`!`$z<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
M#P<`'@/`<`''<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
MW_[L__=<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
M#P<`'@/`<`''<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<

# Exhibit 31

DEF 14A 1 ddef14a.htm NOTICE AND PROXY

# SCHEDULE 14A INFORMATION

### Proxy Statement Pursuant to Section 14(a)
### of the Securities Exchange Act of 1934
### (Amendment No.    )

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐    Preliminary Proxy Statement ☒    Definitive Proxy Statement ☐    Definitive Additional Materials ☐    Soliciting Material Pursuant to 14a-11(c) or 14a-12

☐    **Confidential, For Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

# BOSTON COMMUNICATIONS GROUP, INC.

### (Name of Registrant as Specified in Its Charter)

#### (Name of Person(s) Filing Proxy Statement if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒    No fee required.

☐    Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

1) Title of each class of securities to which transaction applies:

2) Aggregate number of securities to which transaction applies:

3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the

4) Proposed maximum aggregate value of transaction:

5) Total fee paid:

☐    Fee paid previously with preliminary materials.

☐    Check box if any part of the fee is offset as provided by Exchange Act Rule 0 11(a)(2) and identify the filing for which registration statement number, or the Form or Schedule and the date of its filing.

1) Amount Previously Paid:

2) Form, Schedule or Registration Statement No.:

3) Filing Party:

4) Date Filed:

# Notice of Annual Meeting of Shareholders
## to be Held On Wednesday, May 26, 2004

The Annual Meeting of Shareholders of Boston Communications Group, Inc. (the "Company") will be held on Wednesday, May 26, 2004, at the Company, 100 Sylvan Road, Woburn, Massachusetts at 9:00 a.m., local time, to consider and act upon the following matters:

1. To elect James A. Dwyer, Jr., Paul R. Gudonis and Frederick E. von Mering as Class II Directors, to serve for a three-year term.

2. To approve the adoption of the Company's 2004 Stock Incentive Plan.

3. To approve the adoption of the Company's 2004 Employee Stock Purchase Plan.

4. To ratify the selection of Ernst & Young LLP by the Board of Directors as the Company's independent auditors for the current fiscal year.

5. To transact such other business as may properly come before the meeting or any adjournment thereof.

The Board of Directors has no knowledge of any other business to be transacted at the meeting.

Shareholders of record at the close of business on April 14, 2004 will be entitled to notice of and to vote at the meeting or any adjournment thereof. The stock transfer books of the Company will remain open.

By Order of the Board of Directors,

Alan J. Bouffard,
*Clerk*

Woburn, Massachusetts
April 20, 2004

**YOUR VOTE IS IMPORTANT REGARDLESS OF THE NUMBER OF SHARES YOU OWN. WHETHER OR NOT YOU EXPECT TO ATTEND THE MEETING, PLEASE COMPLETE, DATE AND SIGN THE ENCLOSED PROXY AND MAIL IT PROMPTLY IN THE ENCLOSED ENVELOPE IN ORDER TO ENSURE REPRESENTATION OF YOUR SHARES. NO POSTAGE NEED BE AFFIXED IF THE PROXY IS MAILED IN THE UNITED STATES.**

# Boston Communications Group, Inc.
### 100 Sylvan Road
### Woburn, Massachusetts 01801

## Proxy Statement for the Annual Meeting of Shareholders
## to be Held on May 26, 2004

This Proxy Statement is furnished in connection with the solicitation of proxies by the Board of Directors of Boston Communications Group, Inc. (the "Company") for use at the Annual Meeting of Shareholders to be held on May 26, 2004 and at any adjournments of that meeting (the "Annual Meeting"). All proxies will be voted in accordance with the shareholders' instructions, and if no choice is specified, the proxies will be voted in favor of the matters set forth in the accompanying Notice of Meeting. Any proxy may be revoked by a shareholder at any time before its exercise by delivery of written revocation or a subsequently dated proxy to the Clerk of the Company or by voting in person at the Annual Meeting. Attendance at the Annual Meeting will not be deemed to revoke a proxy unless the shareholder gives affirmative notice at the Annual Meeting that the shareholder intends to revoke the proxy and vote in person.

The Company's 2003 Annual Report to Shareholders is being mailed to shareholders concurrently with this Proxy Statement on or about April 20, 2004.

A copy of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2003, as filed with the Securities and Exchange Commission, except for exhibits, will be furnished, without charge to any shareholder upon written request to the Company, Boston Communications Group, Inc., 100 Sylvan Road, Woburn, Massachusetts 01801.

## Voting Securities and Votes Required

At the close of business on April 14, 2004, the record date for the determination of shareholders entitled to notice of and to vote at the Annual Meeting, there were outstanding and entitled to vote an aggregate of 18,318,713 shares of common stock, $.01 par value per share, of the Company (the "Common Stock"), constituting all of the voting stock of the Company. Holders of Common Stock are entitled to one vote per share.

The presence or representation by proxy of the holders of a majority of the number of shares of Common Stock issued, outstanding and entitled to vote at the Annual Meeting constitutes a quorum for the transaction of business at the Annual Meeting. Shares of Common Stock represented in person or by proxy (including shares which abstain or do not vote with respect to one or more of the matters presented for shareholder approval) will be counted for purposes of determining whether a quorum is present.

The affirmative vote of the holders of a plurality of the shares of Common Stock present or represented and voting at the Annual Meeting is required for the election of directors. The affirmative vote of the holders of a majority of the shares of Common Stock present or represented and voting at the Annual Meeting is required for approval of (i) the adoption of the 2004 Stock Incentive Plan, (ii) the adoption of the 2004 Employee Stock Purchase Plan and (iii) the ratification of the selection of Ernst & Young LLP as the Company's independent auditors for the current fiscal year.

Shares that abstain from voting as to a particular matter, and shares held in "street name" by brokers or nominees who indicate on their proxies that they do not have discretionary authority to vote such shares as to a particular matter, will not be counted as votes in favor of such matter and will also not be counted as votes cast or shares voting on such matter. Accordingly, abstentions and "broker non-votes" will have no effect on the voting on matters, such as the ones presented for shareholder approval at this Annual Meeting, that require the affirmative vote of a certain percentage of the shares voting on the matter.

### Security Ownership of Certain Beneficial Owners and Management

The following table sets forth certain information as of February 29, 2004, with respect to the beneficial ownership of the Company's Common Stock by (i) each person known by the Company to beneficially own more than 5% of the outstanding shares of Common Stock, (ii) each director and each person nominated to become a director of the Company, (iii) each executive officer of the Company named in the Summary Compensation Table set forth under the caption "Executive Compensation" below and (iv) all current directors and executive officers of the Company as a group. On February 29, 2004 there were 18,274,273 shares of Common Stock outstanding.

| Beneficial Owner | Number of Shares Beneficially Owned (1) | Percentage of Common Stock Outstanding (2) |
|---|---|---|
| Barclays Global Investors (3)<br>45 Fremont Street<br>San Francisco, CA 94105 | 1,684,274 | 9.22% |
| Goldman Sachs Asset Management (4)<br>180 Maiden Lane<br>New York, NY 10005 | 1,025,440 | 5.61% |
| Paul J. Tobin (5) | 483,499 | 2.63% |
| E.Y. Snowden (6) | 327,163 | 1.76% |
| Frederick von Mering (7) | 213,798 | 1.16% |
| Brian E. Boyle (8) | 156,000 | * |
| William D. Wessman (9) | 96,668 | * |
| Karen A. Walker (10) | 47,345 | * |
| Jerrold D. Adams (11) | 30,500 | * |
| Paul R. Gudonis (12) | 52,000 | * |
| Gerald Segel (13) | 50,000 | * |
| Gerald S. McGowan (14) | 44,000 | * |
| Daniel E. Somers (15) | 19,000 | * |
| James A. Dwyer, Jr. | — | * |
| All current directors and executive officers as a group (16) (12 persons) | 1,770,509 | 9.13% |

---

\*     Less than 1%

(1)    Each person has sole investment and voting power with respect to the shares indicated, except as otherwise noted. The number of shares of Common Stock beneficially owned is determined under the rules of the Securities and Exchange Commission and is not necessarily indicative of beneficial ownership for any other purpose. The inclusion herein of any shares of Common Stock deemed beneficially owned does not constitute an admission of beneficial ownership of such shares.

(2)    The number of shares deemed outstanding with respect to a named person includes 18,274,273 shares outstanding as of February 29, 2004 plus any shares subject to options held by the person in question that are currently exercisable or exercisable within 60 days after February 29, 2004.

(3)    This information is based solely upon a Schedule 13G filed by Barclays Global Investors with the Securities and Exchange Commission on February 13, 2004.

(4)    This information is based solely upon a Form 13F dated December 31, 2003.

<div align="center">2</div>

(5) Includes 104,168 shares issuable pursuant to stock options. Includes 196,831 shares held by the Paul J. Tobin 1988 Trust, 174,000 shares held by the Margaret M. Tobin 1988 Trust, and 8,500 shares held by the Tobin Children's Trust. Mr. Tobin is the trustee of the Paul J. Tobin 1988 Trust. Mr. Tobin's wife, Margaret M. Tobin, is trustee of the Margaret M. Tobin 1988 Trust.

(6) Includes 313,568 shares issuable pursuant to stock options. Of these, 123,000 are held in trust for the benefit of Mr. Snowden's children.

(7) Includes 183,988 shares issuable pursuant to stock options.

(8) Includes 151,000 shares issuable pursuant to stock options. Also includes 5,000 shares owned by Boyle Family Revocable Trust of which Mr. Boyle is a trustee. Mr. Boyle disclaims beneficial ownership of these shares, except to the extent of his direct pecuniary interest therein.

(9) Includes 95,468 shares issuable pursuant to stock options.

(10) Includes 43,833 shares issuable pursuant to stock options.

(11) Includes 24,500 shares issuable pursuant to stock options.

(12) Includes 50,000 shares issuable pursuant to stock options.

(13) Consists of 50,000 shares issuable pursuant to stock options.

(14) Includes 34,000 shares issuable pursuant to stock options.

(15) Includes 18,000 shares issuable pursuant to stock options.

(16) Includes 1,120,026 shares issuable pursuant to stock options.

## ELECTION OF DIRECTORS

The Company's Board of Directors is divided into three classes, with members of each class holding office for staggered three-year terms. The Board currently consists of three Class I Directors, whose terms expire at the 2006 Annual Meeting of Shareholders, three Class II Directors, whose terms expire at the 2004 Annual Meeting of Shareholders, and three Class III Directors whose terms expire at the 2005 Annual Meeting of Shareholders (in all cases subject to the election of their successors and to their earlier death, resignation or removal).

The persons named in the enclosed proxy will vote to elect James A. Dwyer, Jr., Paul R. Gudonis and Frederick E. von Mering as Class II Directors to serve for a three-year term expiring at the 2007 Annual Meeting of Shareholders, unless authority to vote for the election of the nominees is withheld by marking the proxy to that effect. All nominations to the Board of Directors are made by the Nominating Committee. The Nominating Committee will consider for nomination to the Board of Directors candidates suggested by the shareholders, provided that such recommendations are delivered to the Company, with an appropriate biographical summary, no later than the deadline for submission of shareholder proposals. Each nominee has indicated his willingness to serve, if elected, but if any nominee should be unable to stand for election, proxies may be voted for a substitute nominee designated by the Nominating Committee.

Set forth below are the name, age and certain other information with respect to each director and nominee for director of the Company. There are no family relationships among any of the directors and executive officers of the Company.

The Board of Directors recommends a vote FOR the election of the nominees.

### Class I Directors

Gerald S. McGowan, 57, has served as a Director of the Company since November, 2001. Mr. McGowan is a founding principal of the Washington, D.C. law firm, Lukas, McGowan, Nace & Gutierrez where he practiced law for over 20 years. Mr. McGowan was instrumental in founding several telecommunications companies, including Dial Call, Integrated Northcoast and McLang Cellular. From 1996 to 1997 Mr. McGowan was a member of the Board of Directors of the Overseas Private Investment Corporation. From 1992 to 1994 Mr. McGowan was a member of the Board of Directors of the Cellular Telecommunications Industry Association. From January, 1998 until July, 2001 Mr. McGowan was the United States Ambassador to Portugal. Mr. McGowan received his B.S. and J.D. degrees from Georgetown University. Mr. McGowan is a Director of Portugal Telecom.

3

## Executive Compensation

The following table sets forth certain compensation information, for the fiscal years indicated, of the Company's Chief Executive Officer during the year ended December 31, 2003 and the four other most highly compensated executive officers in 2003 (collectively, the "Named Executive Officers"):

### SUMMARY COMPENSATION TABLE

| Name and Principal Position | Fiscal Year | Annual Compensation | | | Long Term Compensation | All Other Compensation ($) |
|---|---|---|---|---|---|---|
| | | Salary ($) | Bonus ($) (1) | Other Annual Compensation ($) (2) | Securities Underlying Options (3) | |
| Paul J. Tobin | 2003 | 200,042 | 169,028 | — | 20,000 | 128,555(4) |
| Chairman of the Board of Directors | 2002 | 180,000 | 20,000 | — | 22,500 | 14,386(5) |
| | 2001 | 163,661 | 5,000 | — | 25,000 | 2,455(6) |
| Edward H. Snowden | 2003 | 336,946 | 390,497 | — | 84,000 | 78,724(7) |
| President, Chief Executive Officer, | 2002 | 315,000 | 180,000 | — | 12,500 | 8,520(8) |
| Director | 2001 | 296,667 | 49,375 | — | 15,000 | 2,500(9) |
| Frederick E. von Mering | 2003 | 183,415 | 141,101 | — | 14,000 | 45,075(10) |
| Vice President, Corporate Development | 2002 | 176,319 | 60,000 | — | 12,000 | 8,077(11) |
| Director | 2001 | 167,208 | 24,687 | — | 14,000 | 2,519(12) |
| William D. Wessman | 2003 | 209,612 | 160,473 | — | 33,000 | 46,734(13) |
| Executive Vice President, Chief | 2002 | 200,545 | 60,000 | — | 42,500 | 6,521(14) |
| Technology Officer | 2001 | 188,867 | 24,687 | — | 15,000 | 2,374(15) |
| Karen A. Walker | 2003 | 209,655 | 160,495 | — | 31,000 | 15,136(16) |
| Vice President, Chief Financial Officer | 2002 | 183,366 | 60,000 | — | 42,500 | 4,430(17) |
| | 2001 | 172,689 | 24,687 | — | 15,000 | 2,550(18) |

(1) Bonuses earned in a fiscal year but which were paid in the subsequent fiscal year are reflected in the year in which they were earned.

(2) In accordance with the rules of the Securities and Exchange Commission, other compensation in the form of perquisites and other personal benefits has been omitted because such perquisites and other personal benefits constitute less than the lesser of $50,000 or ten percent of the total salary and bonus reported for the executive officer during such fiscal year.

(3) The Company did not make any restricted stock awards, grant any stock appreciation rights or make any long-term incentive plan payouts during 2003, 2002 or 2001.

(4) Includes $3,034 in insurance premiums paid by the Company, $3,255 in matching funds paid by the Company to the executive's 401(k) account, and $122,266 accrued pursuant to the Supplemental Executive Retirement Plan.

(5) Includes $2,955 in matching funds paid by the Company to the executive's 401(k) account, and $11,431 accrued pursuant to the Supplemental Executive Retirement Plan.

(6) Consists of $2,455 in matching funds paid by the Company to the executive's 401(k) account.

(7) Includes $1,813 in insurance premiums paid by the Company, $2,913 in matching funds paid by the Company to the executive's 401(k) account, and $73,998 accrued pursuant to the Supplemental Executive Retirement Plan.

(8) Includes $2,578 in matching funds paid by the Company to the executive's 401(k) account, and $5,942 accrued pursuant to the Supplemental Executive Retirement Plan.

(9) Consists of $2,500 in matching funds paid by the Company to the executive's 401(k) account.

(10) Includes $1,256 in insurance premiums paid by the Company, $3,047 in matching funds paid by the Company to the executive's 401(k) account, and $40,782 accrued pursuant to the Supplemental Executive Retirement Plan.

9

(11)  Includes $2,750 in matching funds paid by the Company to the executive's 401(k) account, and $5,327 accrued pursuant to the Supplemental Executive Retirement Plan.

(12)  Consists of $2,519 in matching funds paid by the Company to the executive's 401(k) account.

(13)  Includes $1,396 in insurance premiums paid by the Company, $2,157 in matching funds paid by the Company to the executive's 401(k) account, and $43,181 accrued pursuant to the Supplemental Executive Retirement Plan.

(14)  Includes $1,849 in matching funds paid by the Company to the executive's 401(k) account, and $4,672 accrued pursuant to the Supplemental Executive Retirement Plan.

(15)  Consists of $2,374 in matching funds paid by the Company to the executive's 401(k) account.

(16)  Includes $772 in insurance premiums paid by the Company, $3,005 in matching funds paid by the Company to the executive's 401(k) account, and $11,359 accrued pursuant to the Supplemental Executive Retirement Plan.

(17)  Includes $2,691 in matching funds paid by the Company to the executive's 401(k) account, and $1,739 accrued pursuant to the Supplemental Executive Retirement Plan.

(18)  Consists of $2,550 in matching funds paid by the Company to the executive's 401(k) account.

10

## Option Grants

The following table sets forth certain information concerning option grants during the fiscal year ended December 31, 2003 to the Named Executive Officers and the number and value of the unexercised options held by such persons on December 31, 2003.

### OPTION GRANTS IN LAST FISCAL YEAR
### INDIVIDUAL GRANTS

| Name | Number of Securities Underlying Options Granted (1) | % of Total Options Granted to Employees in Fiscal Year | Exercise Price $/ share (2) | Expiration Date | Potential Realizable Value at Assumed Annual Rates of Stock Price Appreciation for Option Term (3) | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | 5% ($) | 10% ($) |
| Paul J. Tobin | 20,000(4) | 3.38 | 11.68 | 2/4/13 | 146,910 | 372,298 |
| Edward H. Snowden | 20,000(4) | 3.38 | 11.68 | 2/4/13 | 146,910 | 372,298 |
| | 64,000(5) | 10.83 | 13.03 | 8/26/13 | 524,448 | 1,329,054 |
| Frederick E. von Mering | 10,000(4) | 1.69 | 11.68 | 2/4/13 | 73,455 | 186,149 |
| | 4,000(5) | .68 | 13.03 | 8/26/13 | 32,778 | 83,066 |
| William D. Wessman | 10,000(4) | 1.69 | 11.68 | 2/4/13 | 73,455 | 186,149 |
| | 23,000(5) | 3.89 | 13.03 | 8/26/13 | 188,473 | 477,629 |
| Karen A. Walker | 10,000(4) | 1.69 | 11.68 | 2/4/13 | 73,455 | 186,149 |
| | 21,000(5) | 3.55 | 13.03 | 8/26/13 | 172,084 | 436,096 |

(1) No restricted stock or stock appreciation rights were granted in 2003.

(2) The exercise price is equal to the fair market value of the Company's Common Stock on the date of grant.

(3) Amounts represent hypothetical gains that could be achieved for the respective options if exercised at the end of the option term. These gains are based on assumed rates of stock appreciation of 5% and 10% compounded annually from the date the respective options were granted to their expiration date. The assumed rates of appreciation are mandated by the rules of the Securities and Exchange Commission and do not represent the Company's estimate or projection of future stock prices. This table does not take into account any appreciation or depreciation in the price of the Common Stock to date. Actual gain, if any, on stock option exercises will depend on future performance of the Common Stock and the date on which the options are exercised. Values shown are net of the option exercise price, but do not include deductions for tax or other expenses associated with the exercise.

(4) The stock options vested on 2/28/2004.

(5) The stock options vest in three equal annual installments over a three-year period commencing on the first anniversary of the date of grant.

11

## Option Exercises and Holdings

The following table sets forth certain information concerning each exercise of stock options during the year ended December 31, 2003 by each of the Named Executive Officers, and the number and value of unexercised options held by each of the Named Executive Officers on December 31, 2003.

### AGGREGATED OPTION EXERCISES IN LAST FISCAL YEAR AND FISCAL YEAR END OPTION VALUES

| Name | Shares Acquired on Exercise | Value Realized ($) (1) | Number of Securities Underlying Options at Fiscal Year End | | Value of Unexercised In-the-Money Options at Fiscal Year End ($) (2) | |
|------|------|------|------|------|------|------|
| | | | Exercisable | Unexercisable | Exercisable | Unexercisable |
| Paul J. Tobin | — | — | 77,502 | 49,998 | 145,004 | 38,546 |
| Edward H. Snowden | 97,700(3) | 842,644 | 290,235 | 100,665 | 642,524 | 22,388 |
| Frederick E. von Mering | — | — | 170,655 | 29,999 | 537,107 | 21,143 |
| William D. Wessman | 45,000 | 418,317 | 82,135 | 69,665 | 223,059 | 30,388 |
| Karen A. Walker | 41,735 | 312,679 | 26,700 | 71,465 | 27,711 | 32,915 |

(1) Based on the closing sale price of Common Stock on the date of exercise less the option exercise price.

(2) The per share value of unexercised in the money options is calculated by subtracting the per share option exercise price from the last per share sale price of the Company's Common Stock on the NASDAQ National Market on December 31, 2003 ($9.29).

(3) Includes 57,000 shares held in trust for the benefit of Mr. Snowden's children.

## Employment Agreements with Named Executive Officers

On February 10, 1998, the Company entered into an employment letter agreement with E.Y. Snowden, pursuant to which Mr. Snowden was made the President and Chief Executive Officer and a Director of the Company. The agreement provides that Mr. Snowden will be paid an annual base salary and an annual performance-based bonus in amounts determined each year by the Compensation Committee of the Board of Directors The agreement also provides that if Mr. Snowden's employment is terminated without cause, or if there is a change of control which results in his demotion, diminution in responsibilities, or removal from the Board, then the Company will pay, as severance, his base salary until such time as he is otherwise employed, up to a maximum of twelve months.

12

**Securities Authorized for Issuance Under Equity Compensation Plans.** The following table provides information about the securities authorized for issuance under the Company's equity compensation plans as of December 31, 2003.

### Equity Compensation Plan Information

| Plan Category | Number of securities to be issued upon exercise of outstanding options, warrants and rights (a) | Weighted-average exercise price of outstanding options, warrants and rights | Number of securities remaining available for future issuance under equity compensation plans (excluding securities reflected in column (a)) |
|---|---|---|---|
| Equity compensation plans approved by security holders | 2,030,850(1) | $ 9.2379 | 303,174(2) |
| Equity compensation plans not approved by security holders(3) | 685,045 | $ 9.2811 | 202,378 |
| Total | 2,715,895(1) | $ 9.2488 | 505,552(2) |

(1) Includes 36,638 shares purchased by employees under the Company's 2001 Employee Stock Purchase Plan on February 27, 2004 at a price of $9.146 per share.

(2) Includes 52,902 shares available for future issuance under the Company's 2001 Employee Stock Purchase Plan, but excludes (1) 750,000 shares available for issuance under the Company's 2004 Stock Incentive Plan if Proposal No. 2 is approved at the Annual Meeting and (ii) 350,000 shares available for issuance under the Company's 2004 Employee Stock Purchase Plan if Proposal No. 3 is approved at the Annual Meeting. The remaining shares available may only be granted as stock options with an exercise price equal to the fair market value of the Company's stock on the date of grant.

(3) Historically, there have been four equity compensation plans that were approved by the Board of Directors of the Company but not by the security holders. The remaining shares available may only be granted as stock options with an exercise price equal to the fair market value of the Company's stock on the date of grant. After giving effect to shareholder approval of Proposal No. 2, there will be no shares available for future issuance under the remaining plans.

In February 1998 the Board of Directors granted a non-qualified stock option for the purchase of up to 400,000 shares of the Company's common stock to E.Y. Snowden in order to induce Mr. Snowden to join the Company as Chief Executive Officer. This option was issued at an exercise price of $7.0625 per share (the fair market value on the date of grant), and vested in five equal annual installments commencing on February 10, 1998. The option is for a term of ten years from the date of grant. As of December 31, 2003 271,500 of these shares remain unexercised.

In June 1999 the Board of Directors approved the grant of non-qualified stock options for the purchase of up to 110,000 shares of common stock (the "1999 Option Plan") in connection with the engagement of Jerrold D. Adams as Acting General Manager of the Company's Systems Division. Mr. Adams completed this engagement in March, 2000. Options have been issued at various times, each at the fair market value on the date of grant. These options were fully vested at the date of grant and are for a term of ten years from the date of grant. As of December 31, 2003 there were outstanding options for 11,000 shares at a weighted average exercise price of $12.43 per share. Upon approval of the 2004 Stock Incentive Plan, the 1999 Option Plan will be terminated, provided that all outstanding options under the 1999 Option Plan shall continue to be exercisable in accordance with their terms.

In February 2000 the Board of Directors approved a plan reserving 150,000 shares of common stock for issuance upon exercise of non-qualified options. An option for the purchase of these shares was originally granted to Andrew D. Price in order to induce Mr. Price to join the Company as Chief Operating

13

Officer. The option was issued at an exercise price of $7.313 per share (the fair market value on the date of grant), and vested in three equal annual installments commencing on February 1, 2001. The option was for a term of ten years from the date of grant. Upon the termination of Mr. Price's employment in November 2001, options for 50,000 shares had vested and were exercised, and the balance was cancelled. Options have been issued to other employees of the Company pursuant to the plan at the fair market value on the date of grant. These options generally vest in three equal annual installments commencing on the first anniversary of the date of grant. As of December 31, 2003 there were outstanding options for 69,998 shares at a weighted average exercise price of $9.32.

In April 2001 the Board of Directors approved a plan of non-qualified stock options, consisting of 500,000 shares (the "2001 Option Plan"). The plan is a broadly-based plan. Options granted under the plan are for a term of ten years from the date of grant. These options generally vest in three equal annual installments commencing on the first anniversary of the date of grant. Options are issued at the fair market value on the date of grant. As of December 31, 2003 there were outstanding options for 332,547 shares at a weighted average exercise price of $10.98. Upon approval of the 2004 Stock Incentive Plan, the 2001 Option Plan will be terminated, provided that all outstanding options under the 2001 Option Plan shall continue to be exercisable in accordance with their terms.

In the event of a merger, liquidation or acquisition of the Company, the Board of Directors shall provide that the outstanding options be assumed or that equivalent options be substituted for the outstanding options by the acquiring or succeeding corporation, or, if the acquiring or succeeding corporation does not agree to do so, that all of the unexercised options shall be exercisable in full prior to the merger, liquidation or acquisition or that the optionholders receive a cash payment equal to the difference between the acquisition price and the exercise price.

The shares reserved for issuance under all of the foregoing stock options have been registered with the SEC on Forms S-8.

14

## OTHER MATTERS

The Board of Directors does not know of any other matters which may come before the Annual Meeting. However, if any other matters are properly presented to the Annual Meeting, it is the intention of the persons named in the accompanying proxy to vote, or otherwise act, in accordance with their judgment on such matters.

All costs of solicitation of proxies will be borne by the Company. In addition to solicitations by mail, the Company's directors, officers and regular employees, without additional remuneration, may solicit proxies by telephone, telegraph and personal interviews. The Company has retained Georgeson Shareholder to assist with the solicitation of proxies for a fee of $4,500, plus reimbursement of out-of-pocket expenses. Brokers, custodians and fiduciaries will be requested to forward proxy soliciting material to the owners of shares held in their names, and the Company will reimburse them for out-of-pocket expenses incurred on behalf of the Company.

### Householding Annual Meeting Materials

Some banks, brokers and other nominee record holders are already "householding" proxy statements and annual reports. This means that only one copy of our proxy statement or annual report may have been sent to multiple shareholders in your household. We will promptly deliver a separate copy of either document to you if you call or write us at the following address or phone number: Boston Communications Group, Inc. 100 Sylvan Road, Woburn, Massachusetts 01801, 781-904-5219. If you want to receive separate copies of the annual report and proxy statement in the future, or if you are receiving multiple copies and would like to receive only one copy for your household, you should contact your bank, broker, or other nominee record holder, or you may contact us at the above address and phone number.

### Shareholder Proposals for 2005 Annual Meeting of Shareholders

Proposals of shareholders intended to be presented at the 2005 Annual Meeting of Shareholders must be received by the Company at its principal office in Woburn, Massachusetts not later than December 22, 2004 for inclusion in the proxy statement for that meeting.

If a shareholder of the Company wishes to present a proposal before the 2005 Annual Meeting of Shareholders and the Company has not received notice of such matter prior to December 22, 2004, the Company shall have discretionary authority to vote on such matter, if the Company includes a specific statement in the proxy statement or form of proxy, to the effect that it has not received such notice in a timely fashion.

<div style="text-align:center">

By Order of the Board of Directors,

Alan J. Bouffard,
*Clerk*

</div>

April 20, 2004

**THE BOARD OF DIRECTORS HOPES THAT SHAREHOLDERS WILL ATTEND THE MEETING. WHETHER OR NOT SHAREHOLDERS PLAN TO ATTEND, SHAREHOLDERS ARE URGED TO COMPLETE, DATE, SIGN AND RETURN THE ENCLOSED PROXY IN THE ACCOMPANYING ENVELOPE. SHAREHOLDERS WHO ATTEND THE MEETING MAY VOTE THEIR SHARES PERSONALLY EVEN THOUGH THEY HAVE SENT IN THEIR PROXIES.**

<div style="text-align:center">29</div>

# Exhibit 32

DEF 14A 1 ddef14a.htm DEFINITIVE PROXY STATEMENT

# SCHEDULE 14A INFORMATION

**Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934
(Amendment No. ___)**

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐  Preliminary Proxy Statement                    ☐  **Confidential, For Use of the Commission Only**
☒  Definitive Proxy Statement                          **(as permitted by Rule 14a-6(e)(2))**
☐  Definitive Additional Materials
☐  Soliciting Material Pursuant to 14a-11(c) or 14a-12

# BOSTON COMMUNICATIONS GROUP, INC.

**(Name of Registrant as Specified in Its Charter)**

**(Name of Person(s) Filing Proxy Statement if other than the Registrant)**

Payment of Filing Fee (Check the appropriate box):

☒  No fee required.

☐  Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

1)  Title of each class of securities to which transaction applies:

2)  Aggregate number of securities to which transaction applies:

3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

4)  Proposed maximum aggregate value of transaction:

5)  Total fee paid:

☐  Fee paid previously with preliminary materials.

☐  Check box if any part of the fee is offset as provided by Exchange Act Rule 0 11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

1)  Amount Previously Paid:

2)  Form, Schedule or Registration Statement No.:

3)  Filing Party:

4)   Date Filed:

### Notice of Annual Meeting of Shareholders
### to be Held On Wednesday, June 8, 2005

The Annual Meeting of Shareholders of Boston Communications Group, Inc. (the "Company") will be held on Wednesday, June 8, 2005, at the Company, 55 Middlesex Turnpike, Bedford, Massachusetts at 9:00 a.m., local time, to consider and act upon the following matters:

1.   To elect Paul J. Tobin, E.Y. Snowden and Brian E. Boyle as Class III Directors, to serve for a three-year term.

2.   To approve the adoption of the Company's 2005 Stock Incentive Plan.

3.   To ratify the selection of Ernst & Young LLP by the Board of Directors as the Company's registered public accounting firm for the current fiscal year.

4.   To transact such other business as may properly come before the meeting or any adjournment thereof.

The Board of Directors has no knowledge of any other business to be transacted at the meeting.

Shareholders of record at the close of business on April 15, 2005 will be entitled to notice of and to vote at the meeting or any adjournment thereof. The stock transfer books of the Company will remain open.

By Order of the Board of Directors,

Alan J. Bouffard,
*Secretary*

Bedford, Massachusetts
April 25, 2005

**YOUR VOTE IS IMPORTANT REGARDLESS OF THE NUMBER OF SHARES YOU OWN. WHETHER OR NOT YOU EXPECT TO ATTEND THE MEETING, PLEASE COMPLETE, DATE AND SIGN THE ENCLOSED PROXY AND MAIL IT PROMPTLY IN THE ENCLOSED ENVELOPE IN ORDER TO ENSURE REPRESENTATION OF YOUR SHARES. NO POSTAGE NEED BE AFFIXED IF THE PROXY IS MAILED IN THE UNITED STATES.**

# Boston Communications Group, Inc.
### 55 Middlesex Turnpike
### Bedford, Massachusetts 01730

## Proxy Statement for the Annual Meeting of Shareholders
## to be Held on June 8, 2005

This Proxy Statement is furnished in connection with the solicitation of proxies by the Board of Directors of Boston Communications Group, Inc. (the "Company") for use at the Annual Meeting of Shareholders to be held on June 8, 2005 and at any adjournments of that meeting (the "Annual Meeting"). All proxies will be voted in accordance with the shareholders' instructions, and if no choice is specified, the proxies will be voted in favor of the matters set forth in the accompanying Notice of Meeting. Any proxy may be revoked by a shareholder at any time before its exercise by delivery of written revocation or a subsequently dated proxy to the Secretary of the Company or by voting in person at the Annual Meeting. Attendance at the Annual Meeting will not be deemed to revoke a proxy unless the shareholder gives affirmative notice at the Annual Meeting that the shareholder intends to revoke the proxy and vote in person.

The Company's 2004 Annual Report to Shareholders is being mailed to shareholders concurrently with this Proxy Statement on or about April 25, 2005.

A copy of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2004, as filed with the Securities and Exchange Commission, except for exhibits, will be furnished, without charge to any shareholder upon written request to the Company, Boston Communications Group, Inc., 55 Middlesex Turnpike, Bedford, Massachusetts 01730.

## Voting Securities and Votes Required

At the close of business on April 15, 2005, the record date for the determination of shareholders entitled to notice of and to vote at the Annual Meeting, there were outstanding and entitled to vote an aggregate of 17,639,384 shares of common stock, $.01 par value per share, of the Company (the "Common Stock"), constituting all of the voting stock of the Company. Holders of Common Stock are entitled to one vote per share.

The presence or representation by proxy of the holders of a majority of the number of shares of Common Stock issued, outstanding and entitled to vote at the Annual Meeting constitutes a quorum for the transaction of business at the Annual Meeting. Shares of Common Stock represented in person or by proxy (including shares which abstain or do not vote with respect to one or more of the matters presented for shareholder approval) will be counted for purposes of determining whether a quorum is present.

The affirmative vote of the holders of a plurality of the shares of Common Stock present or represented and voting at the Annual Meeting is required for the election of directors. The affirmative vote of the holders of a majority of the shares of Common Stock present or represented and voting at the Annual Meeting is required for approval of (i) the adoption of the 2005 Stock Incentive Plan and (ii) the ratification of the selection of Ernst & Young LLP as the Company's registered public accounting firm for the current fiscal year.

Shares that abstain from voting as to a particular matter, and shares held in "street name" by brokers or nominees who indicate on their proxies that they do not have discretionary authority to vote such shares as to a particular matter, will not be counted as votes in favor of such matter and will also not be counted as votes cast or shares voting on such matter. Accordingly, abstentions and "broker non-votes" will have no effect on the voting on matters, such as the ones presented for shareholder approval at this Annual Meeting, that require the affirmative vote of a certain percentage of the shares voting on the matter.

### Security Ownership of Certain Beneficial Owners and Management

The following table sets forth certain information as of February 28, 2005, with respect to the beneficial ownership of the Company's Common Stock by (i) each person known by the Company to beneficially own more than 5% of the outstanding shares of Common Stock, (ii) each director and each person nominated to become a director of the Company, (iii) each executive officer of the Company named in the Summary Compensation Table set forth under the caption "Executive Compensation" below and (iv) all current directors and executive officers of the Company as a group. On February 28, 2005 there were 17,583,326 shares of Common Stock outstanding. Unless otherwise indicated, the address of each of the stockholders identified below is Boston Communications Group, Inc., 55 Middlesex Turnpike, Bedford, MA 01730.

| Beneficial Owner | Number of Shares Beneficially Owned (1) | Percentage of Common Stock Outstanding (2) |
|---|---|---|
| Barclays Global Investors (3)<br>45 Fremont Street<br>San Francisco, CA 94105 | 1,829,205 | 10.40% |
| Putnam Investment Management, Inc (4).<br>One Post Office Square<br>Boston, MA 02109-2137 | 1,490,798 | 8.48% |
| Artisan Partners (5)<br>875 Wisconsin Ave, Suite 800<br>Milwaukee, WI 53202-3197 | 1,341,600 | 7.63% |
| Greenlight Capital Management (6)<br>420 Lexington Avenue, Suite 1740<br>New York, NY 10170-0804 | 1,137,800 | 6.47% |
| Paul J. Tobin | 461,998(7) | 2.61% |
| E.Y. Snowden | 467,616(8) | 2.59% |
| Fritz E. von Mering | 267,511(9) | 1.50% |
| William D. Wessman | 180,167(10) | 1.01% |
| Brian E. Boyle | 172,000(11) | * |
| Karen A. Walker | 135,772(12) | * |
| James A. Dwyer, Jr. | 27,000(13) | * |
| Paul R. Gudonis | 68,000(14) | * |
| Gerald Segel | 66,000(15) | * |
| Gerald S. McGowan | 65,000(16) | * |
| Daniel E. Somers | 45,000(17) | * |
| All current directors and executive officers as a group (11 persons) | 1,956,064(18) | 10.22% |

\* Less than 1%

(1) Each person has sole investment and voting power with respect to the shares indicated, except as otherwise noted. The number of shares of Common Stock beneficially owned is determined under the rules of the Securities and Exchange Commission and is not necessarily indicative of beneficial ownership for any other purpose. The inclusion herein of any shares of Common Stock deemed beneficially owned does not constitute an admission of beneficial ownership of such shares.

2

(2)  The number of shares deemed outstanding with respect to a named person includes 17,583,326 shares outstanding as of February 28, 2005 plus any shares subject to options held by the person in question that are currently exercisable or exercisable within 60 days after February 28, 2005.

(3)  This information is based solely upon a Schedule 13G filed by Barclays Global Investors with the Securities and Exchange Commission on February 14, 2005.

(4)  This information is based solely upon a Schedule 13G filed by Putnam Investment Management, Inc. with the Securities and Exchange Commission on February 7, 2005.

(5)  This information is based solely upon a Schedule 13G filed by Artisan Partners with the Securities and Exchange Commission on January 26, 2005.

(6)  This information is based solely upon a Schedule 13G filed by Greenlight Capital Management with the Securities and Exchange Commission on February 14, 2005.

(7)  Includes 146,667 shares issuable pursuant to stock options. Includes 180,831 shares held by the Paul J. Tobin 1988 Trust, 124,000 shares held by the Margaret M. Tobin 1988 Trust, and 10,500 shares held by the Tobin Children's Trust. Mr. Tobin is the trustee of the Paul J. Tobin 1988 Trust. Mr. Tobin's wife, Margaret M. Tobin, is trustee of the Margaret M. Tobin 1988 Trust.

(8)  Includes 456,067 shares issuable pursuant to stock options. Of these, 123,000 are held in trust for the benefit of Mr. Snowden's children.

(9)  Includes 216,988 shares issuable pursuant to stock options.

(10)  Includes 178,967 shares issuable pursuant to stock options.

(11)  Includes 167,000 shares issuable pursuant to stock options. Also includes 5,000 shares owned by Boyle Family Revocable Trust of which Mr. Boyle is a trustee. Mr. Boyle disclaims beneficial ownership of these shares, except to the extent of his direct pecuniary interest therein.

(12)  Includes 129,332 shares issuable pursuant to stock options.

(13)  Consists of 27,000 shares issuable pursuant to stock options.

(14)  Includes 66,000 shares issuable pursuant to stock options.

(15)  Consists of 66,000 shares issuable pursuant to stock options.

(16)  Includes 55,000 shares issuable pursuant to stock options.

(17)  Consists of 44,000 shares issuable pursuant to stock options.

(18)  Includes 1,553,021 shares issuable pursuant to stock options.

## ELECTION OF DIRECTORS

The Company's Board of Directors is divided into three classes. One class is elected each year and members of each class hold office for three-year terms. The Board currently consists of three Class I Directors, whose terms expire at the 2006 Annual Meeting of Shareholders, three Class II Directors, whose terms expire at the 2007 Annual Meeting of Shareholders, and three Class III Directors whose terms expire at the 2005 Annual Meeting of Shareholders (in all cases subject to the election of their successors and to their earlier death, resignation or removal).

The persons named in the enclosed proxy will vote to elect Brian E. Boyle, Edward H. ("E.Y.") Snowden and Paul J. Tobin as Class III Directors to serve for a three-year term expiring at the 2008 Annual Meeting of Shareholders, unless authority to vote for the election of the nominees is withheld by marking the proxy to that effect. All nominations to the Board of Directors are made by the Nominating Committee. The Nominating Committee will consider for nomination to the Board of Directors candidates suggested by the shareholders, provided that such recommendations are delivered to the Company, with an appropriate biographical summary, no later than the deadline for submission of shareholder proposals. Each nominee has indicated his willingness to serve, if elected, but if any nominee should be unable to stand for election, proxies may be voted for a substitute nominee designated by the Nominating Committee.

Set forth below are the name, age and certain other information with respect to each director and nominee for director of the Company. There are no family relationships among any of the directors and executive officers of the Company.

3

## Executive Compensation

The following table sets forth certain compensation information, for the fiscal years indicated, of the Company's Chief Executive Officer during the year ended December 31, 2004 and the four other most highly compensated executive officers in 2004 (collectively, the "Named Executive Officers"):

### SUMMARY COMPENSATION TABLE

| Name and Principal Position | Fiscal Year | Annual Compensation | | | Long-Term Compensation | All Other Compensation ($) |
|---|---|---|---|---|---|---|
| | | Salary ($) | Bonus ($) (1) | Other Annual Compensation ($) (2) | Securities Underlying Options (3) | |
| Paul J. Tobin | 2004 | 205,025 | 93,127 | — | 20,000 | 105,602(4) |
| Chairman of the Board of Directors | 2003 | 200,042 | 169,028 | — | 20,000 | 128,555(5) |
| | 2002 | 180,000 | 20,000 | — | 22,500 | 14,386(6) |
| E.Y. Snowden | 2004 | 350,036 | 224,282 | — | 66,000 | 110,051(7) |
| President, Chief Executive Officer, | 2003 | 336,946 | 390,497 | — | 84,000 | 78,724(8) |
| Director | 2002 | 315,000 | 180,000 | — | 12,500 | 8,520(9) |
| Fritz E. von Mering | 2004 | 190,510 | 77,584 | — | 17,000 | 66,546(10) |
| Vice President, Corporate Development | 2003 | 183,415 | 141,101 | — | 14,000 | 45,075(11) |
| Director | 2002 | 176,319 | 60,000 | — | 12,000 | 8,077(12) |
| William D. Wessman | 2004 | 219,117 | 89,461 | — | 28,000 | 78,097(13) |
| Executive Vice President, Chief | 2003 | 209,612 | 160,473 | — | 33,000 | 46,734(14) |
| Technology Officer | 2002 | 200,545 | 60,000 | — | 42,500 | 6,521(15) |
| Karen A. Walker | 2004 | 219,139 | 95,512 | — | 32,000 | 32,824(16) |
| Vice President, Chief Financial Officer | 2003 | 209,655 | 160,495 | — | 31,000 | 15,136(17) |
| | 2002 | 183,366 | 60,000 | — | 42,500 | 4,430(18) |

(1) Bonuses earned in a fiscal year but which were paid in the subsequent fiscal year are reflected in the year in which they were earned.

(2) In accordance with the rules of the Securities and Exchange Commission, other compensation in the form of perquisites and other personal benefits has been omitted because such perquisites and other personal benefits constitute less than the lesser of $50,000 or ten percent of the total salary and bonus reported for the executive officer during such fiscal year.

(3) The Company did not make any restricted stock awards, grant any stock appreciation rights or make any long-term incentive plan payouts during 2004, 2003 or 2002.

(4) Includes $2,097 in insurance premiums paid by the Company, $2,902 in matching funds paid by the Company to the executive's 401(k) account, $5,223 in financial planning expenses paid by the Company and $95,379 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(5) Includes $3,034 in insurance premiums paid by the Company, $3,255 in matching funds paid by the Company to the executive's 401(k) account, and $122,266 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(6) Includes $2,955 in matching funds paid by the Company to the executive's 401(k) account and $11,431 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(7) Includes $3,204 in insurance premiums paid by the Company, $3,247 in matching funds paid by the Company to the executive's 401(k) account, $6,135 in financial planning expenses paid by the Company and $97,465 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(8) Includes $1,813 in insurance premiums paid by the Company, $2,913 in matching funds paid by the Company to the executive's 401(k) account, and $73,998 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

9

(9)   Includes $2,578 in matching funds paid by the Company to the executive's 401(k) account, and $5,942 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(10)  Includes $1,621 in insurance premiums paid by the Company, $2,859 in matching funds paid by the Company to the executive's 401(k) account, and $62,066 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(11)  Includes $1,256 in insurance premiums paid by the Company, $3,047 in matching funds paid by the Company to the executive's 401(k) account, and $40,782 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(12)  Includes $2,750 in matching funds paid by the Company to the executive's 401(k) account, and $5,327 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(13)  Includes $1,795 in insurance premiums paid by the Company, $2,430 in matching funds paid by the Company to the executive's 401(k) account, and $73,872 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(14)  Includes $1,396 in insurance premiums paid by the Company, $2,157 in matching funds paid by the Company to the executive's 401(k) account, and $43,181 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(15)  Includes $1,849 in matching funds paid by the Company to the executive's 401(k) account, and $4,672 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(16)  Includes $2,463 in insurance premiums paid by the Company, $1,935 in matching funds paid by the Company to the executive's 401(k) account, and $28,426 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(17)  Includes $772 in insurance premiums paid by the Company, $3,005 in matching funds paid by the Company to the executive's 401(k) account, and $11,359 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

(18)  Includes $2,691 in matching funds paid by the Company to the executive's 401(k) account, and $1,739 accrued (net of tax) pursuant to the Supplemental Executive Retirement Plan.

10

## Option Grants

The following table sets forth certain information concerning option grants during the fiscal year ended December 31, 2004 to the Named Executive Officers and the number and value of the unexercised options held by such persons on December 31, 2004.

### OPTION GRANTS IN LAST FISCAL YEAR
### INDIVIDUAL GRANTS

| Name | Number of Securities Underlying Options Granted (1) | % of Total Options Granted to Employees in Fiscal Year | Exercise Price $/ share (2) | Expiration Date | Potential Realizable Value at Assumed Annual Rates of Stock Price Appreciation for Option Term (3) | |
|---|---|---|---|---|---|---|
| | | | | | 5% ($) | 10% ($) |
| Paul J. Tobin | 10,000 | 1.59 | 12.16 | 1/23/14 | 68,655 | 181,349 |
| | 10,000 | 1.59 | 10.68 | 6/2/14 | 67,166 | 170,212 |
| E.Y. Snowden | 33,000 | 5.24 | 12.16 | 1/23/14 | 226,561 | 598,452 |
| | 33,000 | 5.24 | 10.68 | 6/2/14 | 221,648 | 561,699 |
| Fritz E. von Mering | 8,500 | 1.35 | 12.16 | 1/23/14 | 58,357 | 154,147 |
| | 8,500 | 1.35 | 10.68 | 6/2/14 | 57,091 | 144,680 |
| William D. Wessman | 14,000 | 2.23 | 12.16 | 1/23/14 | 96,117 | 253,889 |
| | 14,000 | 2.23 | 10.68 | 6/2/14 | 94,032 | 238,296 |
| Karen A. Walker | 16,000 | 2.54 | 12.16 | 1/23/14 | 109,848 | 290,159 |
| | 16,000 | 2.54 | 10.68 | 6/2/14 | 107,466 | 272,339 |

(1) No restricted stock or stock appreciation rights were granted in 2004. In March 2005, all of these options vested in full as a result of the Company's acceleration of the vesting of all stock options with an exercise price greater than $7.75.

(2) The exercise price is equal to the fair market value of the Company's Common Stock on the date of grant.

(3) Amounts represent hypothetical gains that could be achieved for the respective options if exercised at the end of the option term. These gains are based on assumed rates of stock appreciation of 5% and 10% compounded annually from the date the respective options were granted to their expiration date. The assumed rates of appreciation are mandated by the rules of the Securities and Exchange Commission and do not represent the Company's estimate or projection of future stock prices. This table does not take into account any appreciation or depreciation in the price of the Common Stock to date. Actual gain, if any, on stock option exercises will depend on future performance of the Common Stock and the date on which the options are exercised. Values shown are net of the option exercise price, but do not include deductions for tax or other expenses associated with the exercise.

11

## Option Exercises and Holdings

The following table sets forth certain information concerning each exercise of stock options during the year ended December 31, 2004 by each of the Named Executive Officers, and the number and value of unexercised options held by each of the Named Executive Officers on December 31, 2004.

### AGGREGATED OPTION EXERCISES IN LAST FISCAL YEAR AND FISCAL YEAR END OPTION VALUES

| Name | Shares Acquired on Exercise | Value Realized ($) | Number of Securities Underlying Options at Fiscal Year End | | Value of Unexercised In-the-Money Options at Fiscal Year End ($) (1) | |
|---|---|---|---|---|---|---|
| | | | Exercisable | Unexercisable | Exercisable | Unexercisable |
| Paul J. Tobin | — | — | 106,667 | 40,833 | 165,084 | 14,091 |
| E.Y. Snowden | — | — | 337,401 | 119,499 | 641,626 | 7,941 |
| Fritz E. von Mering | — | — | 187,322 | 30,332 | 541,836 | 7,582 |
| William D. Wessman | — | — | 105,634 | 64,166 | 226,791 | 11,441 |
| Karen A. Walker | — | — | 63,332 | 66,833 | 46,161 | 11,441 |

(1) The per share value of unexercised in the money options is calculated by subtracting the per share option exercise price from the last per share sale price of the Company's Common Stock on the NASDAQ National Market on December 31, 2004 ($9.24).

## Employment Agreements with Named Executive Officers

On February 10, 1998, the Company entered into an employment letter agreement with E.Y. Snowden, pursuant to which Mr. Snowden was made the President and Chief Executive Officer and a director of the Company. The agreement provides that Mr. Snowden will be paid an annual base salary and an annual performance-based bonus in amounts determined each year by the Compensation Committee of the Board of Directors. The agreement also provides that (i) if Mr. Snowden's employment is terminated without cause, as defined in the employment agreement, then the Company will pay, as severance, his base salary until such time as he is otherwise employed, up to a maximum of twelve months, and (ii) all of Mr. Snowden's unvested options shall vest upon a change in control of the Company. In addition, as a result of an April 2005 amendment to this employment agreement, in the event that, within the 24-month period following a change of control of the Company, Mr. Snowden's employment is terminated by the Company without cause or by Mr. Snowden for good reason, as defined in the agreement, as amended, then (i) the Company will pay, as severance, in exchange for a release of claims in favor of the Company, Mr. Snowden's base salary for thirty months, (ii) Mr. Snowden will receive benefit continuation for thirty months and payment of his prorated target bonus, and (iii) all of Mr. Snowden's unvested options shall vest upon such date of employment termination.

In April 2005, the Company entered into change of control agreements with Paul J. Tobin, Fritz E. von Mering, Karen A. Walker and William D. Wessman. Each agreement provides that if, within the 24-month period following a change of control of the Company, the employment of one of the aforementioned individuals is terminated by the Company without cause or by the individual for good reason, as such terms are defined in the change of control agreement, then, in exchange for a release of claims in favor of the Company, (i) the Company will pay, as severance, such individual's base salary for twenty-four months, (ii) such individual will receive benefit continuation for twenty-four months and payment of his or her prorated target bonus, and (iii) all of such individual's unvested options shall vest upon the date of employment termination.

12

### Option Exercises and Holdings

The following table sets forth certain information concerning each exercise of stock options during the year ended December 31, 2004 by each of the Named Executive Officers, and the number and value of unexercised options held by each of the Named Executive Officers on December 31, 2004.

### AGGREGATED OPTION EXERCISES IN LAST FISCAL YEAR AND FISCAL YEAR END OPTION VALUES

| Name | Shares Acquired on Exercise | Value Realized ($) | Number of Securities Underlying Options at Fiscal Year End | | Value of Unexercised In-the-Money Options at Fiscal Year End ($) (1) | |
|---|---|---|---|---|---|---|
| | | | Exercisable | Unexercisable | Exercisable | Unexercisable |
| Paul J. Tobin | — | — | 106,667 | 40,833 | 165,084 | 14,091 |
| E.Y. Snowden | — | — | 337,401 | 119,499 | 641,626 | 7,941 |
| Fritz E. von Mering | — | — | 187,322 | 30,332 | 541,836 | 7,582 |
| William D. Wessman | — | — | 105,634 | 64,166 | 226,791 | 11,441 |
| Karen A. Walker | — | — | 63,332 | 66,833 | 46,161 | 11,441 |

(1) The per share value of unexercised in the money options is calculated by subtracting the per share option exercise price from the last per share sale price of the Company's Common Stock on the NASDAQ National Market on December 31, 2004 ($9.24).

### Employment Agreements with Named Executive Officers

On February 10, 1998, the Company entered into an employment letter agreement with E.Y. Snowden, pursuant to which Mr. Snowden was made the President and Chief Executive Officer and a director of the Company. The agreement provides that Mr. Snowden will be paid an annual base salary and an annual performance-based bonus in amounts determined each year by the Compensation Committee of the Board of Directors. The agreement also provides that (i) if Mr. Snowden's employment is terminated without cause, as defined in the employment agreement, then the Company will pay, as severance, his base salary until such time as he is otherwise employed, up to a maximum of twelve months, and (ii) all of Mr. Snowden's unvested options shall vest upon a change in control of the Company. In addition, as a result of an April 2005 amendment to this employment agreement, in the event that, within the 24-month period following a change of control of the Company, Mr. Snowden's employment is terminated by the Company without cause or by Mr. Snowden for good reason, as defined in the agreement, as amended, then (i) the Company will pay, as severance, in exchange for a release of claims in favor of the Company, Mr. Snowden's base salary for thirty months, (ii) Mr. Snowden will receive benefit continuation for thirty months and payment of his prorated target bonus, and (iii) all of Mr. Snowden's unvested options shall vest upon such date of employment termination.

In April 2005, the Company entered into change of control agreements with Paul J. Tobin, Fritz E. von Mering, Karen A. Walker and William D. Wessman. Each agreement provides that if, within the 24-month period following a change of control of the Company, the employment of one of the aforementioned individuals is terminated by the Company without cause or by the individual for good reason, as such terms are defined in the change of control agreement, then, in exchange for a release of claims in favor of the Company, (i) the Company will pay, as severance, such individual's base salary for twenty-four months, (ii) such individual will receive benefit continuation for twenty-four months and payment of his or her prorated target bonus, and (iii) all of such individual's unvested options shall vest upon the date of employment termination.

12

## Securities Authorized for Issuance Under Equity Compensation Plans

The following table provides information about the securities authorized for issuance under the Company's equity compensation plans as of December 31, 2004.

### Equity Compensation Plan Information

| Plan Category | Number of securities to be issued upon exercise of outstanding options, warrants and rights (a) | Weighted-average exercise price of outstanding options, warrants and rights | Number of securities remaining available for future issuance under equity compensation plans (excluding securities reflected in column (a)) |
|---|---|---|---|
| Equity compensation plans approved by security holders | 2,498,900(1) | $ 9.49 | 770,890(2) |
| Equity compensation plans not approved by security holders (3) | 682,268 | $ 9.31 | 0 |
| Total | 3,181,528(1) | $ 9.45 | 770,890(2) |

(1) Includes 55,249 shares purchased by employees under the Company's 2004 Employee Stock Purchase Plan on February 28, 2005 at a price of $6.41 per share.

(2) Includes 302,102 shares available for future issuance under the Company's 2004 Employee Stock Purchase Plan, but excludes 1,931,212 shares available for issuance under the Company's 2005 Stock Incentive Plan if Proposal No. 2 is approved at the Annual Meeting.

(3) Historically, there have been four equity compensation plans that were approved by the Board of Directors of the Company but not by the security holders.

In February 1998 the Board of Directors granted a non-qualified stock option for the purchase of up to 400,000 shares of the Company's common stock to E.Y. Snowden in order to induce Mr. Snowden to join the Company as Chief Executive Officer. This option was issued at an exercise price of $7.0625 per share (the fair market value on the date of grant), and vested in five equal annual installments commencing on February 10, 1998. The option is for a term of ten years from the date of grant. As of December 31, 2004 271,500 of these shares remain unexercised.

In June 1999 the Board of Directors approved the grant of non-qualified stock options for the purchase of up to 110,000 shares of common stock (the "1999 Option Plan") in connection with the engagement of Jerrold D. Adams as Acting General Manager of the Company's Systems Division. Mr. Adams completed this engagement in March of 2000. Options have been issued at various times, each at the fair market value on the date of grant. These options were fully vested at the date of grant and are for a term of ten years from the date of grant. The 1999 Option Plan was terminated upon approval of the 2004 Stock Incentive Plan, except that all outstanding options continue to be exercisable in accordance with their terms. As of December 31, 2004 there were outstanding options for 16,000 shares at a weighted average exercise price of $12.34 per share.

In February 2000 the Board of Directors approved a plan reserving 150,000 shares of common stock for issuance upon exercise of non-qualified options. An option for the purchase of these shares was originally granted to Andrew D. Price in order to induce Mr. Price to join the Company as Chief Operating Officer. The option was issued at an exercise price of $7.313 per share (the fair market value on the date of grant), and vested in three equal annual installments commencing on February 1, 2001. The option was for a term of ten years from the date of grant. Upon the termination of Mr. Price's employment in November 2001, options for 50,000 shares had vested and were exercised, and the balance was cancelled. Options have been issued to other employees of the Company pursuant to the plan at the fair market value on the date of

13

grant. These options generally vest in three equal annual installments commencing on the first anniversary of the date of grant. As of December 31, 2004 there were outstanding options for 66,665 shares at a weighted average exercise price of $9.47.

In April 2001 the Board of Directors approved a plan of non-qualified stock options, consisting of 500,000 shares (the "2001 Option Plan"). Options granted under the plan are for a term of ten years from the date of grant. These options generally vest in three equal annual installments commencing on the first anniversary of the date of grant. Options are issued at the fair market value on the date of grant. The 2001 Stock Option Plan was terminated upon approval of the 2004 Stock Incentive Plan, except that all outstanding options continue to be exercisable in accordance with their terms. As of December 31, 2004 there were outstanding options for 328,463 shares at a weighted average exercise price of $10.98.

In the event of a merger, liquidation or acquisition of the Company, the Board of Directors shall provide that the outstanding options be assumed or that equivalent options be substituted for the outstanding options by the acquiring or succeeding corporation, or, if the acquiring or succeeding corporation does not agree to do so, that all of the unexercised options shall be exercisable in full prior to the merger, liquidation or acquisition or that the option holders receive a cash payment equal to the difference between the acquisition price and the exercise price.

The shares reserved for issuance under all of the foregoing stock options have been registered with the SEC on Forms S-8.

14

## OTHER MATTERS

The Board of Directors does not know of any other matters which may come before the Annual Meeting. However, if any other matters are properly presented to the Annual Meeting, it is the intention of the persons named in the accompanying proxy to vote, or otherwise act, in accordance with their judgment on such matters.

All costs of solicitation of proxies will be borne by the Company. In addition to solicitations by mail, the Company's directors, officers and regular employees, without additional remuneration, may solicit proxies by telephone, telegraph and personal interviews. The Company has retained Georgeson Shareholder to assist with the solicitation of proxies for a fee of $5,000, plus reimbursement of out-of-pocket expenses. Brokers, custodians and fiduciaries will be requested to forward proxy soliciting material to the owners of shares held in their names, and the Company will reimburse them for out-of-pocket expenses incurred on behalf of the Company.

### Householding Annual Meeting Materials

Some banks, brokers and other nominee record holders may be participating in the practice of "householding" proxy statements and annual reports. This means that only one copy of our proxy statement or annual report may have been sent to multiple shareholders in your household. We will promptly deliver a separate copy of either document to you if you call or write us at the following address or phone number: Boston Communications Group, Inc. 55 Middlesex Turnpike, Bedford, Massachusetts 01730, 781-904-5000. If you want to receive separate copies of the annual report and proxy statement in the future, or if you are receiving multiple copies and would like to receive only one copy for your household, you should contact your bank, broker, or other nominee record holder, or you may contact us at the above address and phone number.

### Shareholder Proposals for 2006 Annual Meeting of Shareholders

Proposals of shareholders intended to be presented at the 2006 Annual Meeting of Shareholders must be received by the Company at its principal office in Bedford, Massachusetts not later than December 22, 2005 for inclusion in the proxy statement for that meeting.

If a shareholder of the Company wishes to present a proposal before the 2006 Annual Meeting of Shareholders and the Company has not received notice of such matter prior to December 22, 2005, the Company shall have discretionary authority to vote on such matter, if the Company includes a specific statement in the proxy statement or form of proxy, to the effect that it has not received such notice in a timely fashion.

By Order of the Board of Directors,

Alan J. Bouffard,
*Secretary*

April 25, 2005

**THE BOARD OF DIRECTORS HOPES THAT SHAREHOLDERS WILL ATTEND THE MEETING. WHETHER OR NOT SHAREHOLDERS PLAN TO ATTEND, SHAREHOLDERS ARE URGED TO COMPLETE, DATE, SIGN AND RETURN THE ENCLOSED PROXY IN THE ACCOMPANYING ENVELOPE. SHAREHOLDERS WHO ATTEND THE MEETING MAY VOTE THEIR SHARES PERSONALLY EVEN THOUGH THEY HAVE SENT IN THEIR PROXIES.**

30

# Exhibit 33

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FREEDOM WIRELESS, INC., ) | |
|           Plaintiff ) | |
| ) | CIVIL ACTION NO. |
|     v. ) | 00-12234-EFH |
| ) | |
| BOSTON COMMUNICATIONS GROUP, ) | |
| INC., ET AL., ) | |
|           Defendants. ) | |
| ) | |

## O R D E R

April 8, 2003

HARRINGTON, S.D.J.

Plaintiff Freedom Wireless, Inc.'s Motion to Compel Defendants Airtouch

Communications, Inc., Bell Atlantic Mobile, Inc., and Cellco Partnership to Produce Advice

Contradicting or Casting Doubt on Darby & Darby's Unenforceability Opinion is granted.

Defendants are ordered to produce any communications between counsel and defendants relating

to the filing of the lawsuit involving Gerald Frugoli, as well as all other documents that

contradict or cast doubt upon the July 2001 Unenforceability Opinion of Darby & Darby,

regardless of the date on which they were written. The Court's Order dated March 4, 2002 is

amended to allow for production of subsequently rendered advice contradicting or casting doubt

upon the unenforceability opinion.

SO ORDERED.

EDWARD F. HARRINGTON
United States Senior District Judge

# Exhibit 34

212-988497

# STOCK TRADING PLAN

This Stock Trading Plan (the "Plan") is being adopted by E. Y. Snowden ("Client") to facilitate the Sale of shares of the common stock (the "Shares") of Boston Communications Group, Inc. ("Issuer").

In order to diversify his investment portfolio, Client desires to sell the Shares. To dispel any inference that Client is trading in the Shares on the basis of, while using, when in possession of, or when aware of material nonpublic information; or that the trades in the Shares evidence Client's knowledge of material nonpublic information, or information at variance with Issuer's statements to investors; Client has determined to instruct Credit Suisse First Boston Corporation ("CSFBC") to sell a pre-determined amount of Shares pursuant to the formula described in Exhibit A.

A.     Client hereby represents, warrants and acknowledges that he:

1.     As of the date of this Plan, is not aware of any material nonpublic information regarding Issuer and is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent CSFBC from acting upon the instructions set forth in this Plan;

2.     Is entering into this Plan in good faith and not as part of any scheme to evade the prohibitions of Rule 10b5-1 adopted under the Securities Exchange Act of 1934, as amended;

3.     Has not entered into, and will not enter into, any corresponding or hedging transaction or position with respect to the Shares;

4.     Confirms, if he is subject to Rule 144, that the sale of the Shares pursuant to the formula in Exhibit A will comply with Rule 144 under the Securities Act of 1933;

5.     Acknowledges that CSFBC may make a market in the Shares and will continue to engage in market-making activities while executing transactions on behalf of Client pursuant to the Plan;

6.     May not discuss with CSFBC the timing of the trading in the Shares on his/her behalf (other than to confirm these instructions and describe them if necessary); and

7.     May terminate this Plan at any time by notice in writing to CSFBC. If this Plan is terminated and Client thereafter establishes a new plan, Client will wait thirty (30) days before making any sales under such new plan.

B.     CSFBC will notify Client promptly of any transactions in order that Client may make timely filings of Forms 4 and 5. Any Form 144's filed on Client's behalf shall contain a notice in substantially the following form:

"The shares covered by this Form 144 are being sold pursuant to a Form 10b5-1 sales plan dated _____, 2001; and the representation herein

1

regarding the seller's knowledge of material nonpublic information speaks as of the adoption date of the plan."

C.    Sales under this Plan shall be terminated upon notice to CSFBC that Client is subject to a lockup agreement in connection with a public offering of the stock of the Issuer.

D.    CSFBC agrees to hold the terms of this agreement as confidential information and not to disclose such terms to any third party without Client's consent, except as may be otherwise required by law.

E.    This Plan shall be governed by and construed in accordance with the laws of the State of New York.

E.Y. Snowden

<u>EXHIBIT A</u>

## <u>Share Trading Formula</u>

Please exercise those stock options listed below and sell those Shares acquired upon such exercise in accordance with the following instructions:

1.  Starting in the month of December, 2001 exercise 2,200 of my vested options in Issuer and sell such underlying Shares at the market price on such date but in no event at less than $11.00 per Share.

2.  In each month after the exercise and sale as outlined above, exercise 2,200 of my vested options in Issuer and sell such underlying Shares at the market price on such date but in no event at less than $11.00 per Share.

3.  In the event the Issuer's common stock is trading at or above $13.00 per share, sell an additional 1,100 Shares at a price no less than $13.00 per Share each calendar month that Issuer's common stock trades at or above $13.00 per share.

4.  In the event the Issuer's common stock is trading at or above $15.00 per share, sell an additional 1,100 Shares at a price no less than $15.00 per Share each calendar month that Issuer's common stock trades at or above $15.00 per share.

5.  In the event the Issuer's common stock is trading at or above $17.00 per share, sell an additional 2,200 Shares at a price no less than $17.00 per Share each calendar month that Issuer's common stock trades at or above $17.00 per share.

6.  In the event the Issuer's common stock is trading at or above $20.00 per share, sell an additional 2,200 Shares at a price no less than $20.00 per Share each calendar month that Issuer's common stock trades at or above $20.00 per share.

7.  Any portion of the Shares not sold as stated above because of market conditions shall be carried forward until the first subsequent trading day or days on which it is determined that all or part of the unsold portion can be sold under the then prevailing market conditions and in accordance with the instructions above until all such carried forward Shares have been sold.

8.  This Plan terminates upon the earlier of (1) December 31, 2003 or (2) the sale of 52,800 Shares, whichever occurs first.

The Issuer acknowledges that its Insider Trading Policy allows for the use
of Rule 10b5-1 Trading Plans, has read the plan to be entered into by E. Y. Snowden
dated as of ‖12/01 and does not object to it.

BOSTON COMMUNICATIONS GROUP, INC.

_____
Signature

KAREN A. WALKER
Name

CFO
Title

11/12/01
Date

 UBS PaineWebber

# Rule 10b5-1 Trading Plan

The Mallory Trust ("Seller") adopts this Trading Plan dated December 16, 2002 (the "Trading Plan") with respect to the "Stock"(defined below) with UBS PaineWebber Inc. ("UBS PaineWebber") for the purpose of establishing a trading plan that complies with Rule 10b5-1(c)(1) under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

Seller and UBS PaineWebber agree as follows:

1.  *Specific Plan of Sale*. UBS PaineWebber, acting as agent, agrees to effect sales of Stock on behalf of Seller in accordance with the specific instructions set forth in Exhibit A (the "Sales Instructions"). The term "Stock" means the Class A common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") (symbol: BCGI), including Stock that Seller has the right to acquire under the outstanding stock options issued by Issuer listed on Exhibit D (the "Options"), and includes any class or series of common stock of Issuer into which the Stock is converted whether pursuant to a reclassification, reorganization, reincorporation or similar event.

2.  *Fees/Commissions*. Seller shall pay UBS PaineWebber $0.06 per share of Stock sold; with such amounts to be deducted by UBS PaineWebber from the proceeds of sales under this Trading Plan.

3.  *Seller's Representations and Warranties*.  Seller represents and warrants that:

    (a)   Seller is not aware of any material nonpublic information concerning Issuer or any securities of Issuer;

    (b)   Seller is entering into this Trading Plan in good faith and not as part of a plan or scheme to evade the prohibitions of Rule 10b5-1;

    (c)   Seller has informed Issuer of this Trading Plan and has furnished Issuer with a copy, and Seller has determined that this Trading Plan is consistent with Issuer's insider trading policy;

    (d)   Seller has disclosed to UBS PaineWebber any agreements that Seller is currently party to, or within the past 60 days, has been party to, with another broker, dealer or financial institution (each, a "Financial Institution") entered into for the purpose of establishing a trading plan that complies with Rule 10b5-1;

    (e)   Seller is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent UBS PaineWebber from conducting sales in accordance with this Trading Plan;

    (f)   the Stock to be sold under this Trading Plan is owned free and clear by Seller and is not subject to any liens, security interests or other encumbrances or limitations on dispositions, other than those imposed by Rule 144 or Rule 145, if applicable;

    (g)   Seller has had an opportunity to consult with Seller's own advisors as to the legal, tax, financial and other aspects of this Trading Plan, including this Trading Plan's compliance with Rule 10b5-1 and applicable state law. Seller has not received or

© UBS PaineWebber Inc. 2002. All rights reserved

# ❄ UBS PaineWebber

relied on any representations from UBS PaineWebber concerning this Trading Plan's compliance with Rule 10b5-1.

4.    *Agreements by Seller*.  Seller acknowledges and agrees to the following provisions:

(a)    *Brokerage Account*.  Seller shall open a sole-purpose UBS PaineWebber brokerage account prior to the execution of sales under this Trading Plan in the name of and for the benefit of Seller (the "Plan Account").

(b)    *Delivery of Stock*.  Seller shall deliver all shares of Stock to be sold pursuant to this Trading Plan into the Plan Account prior to the commencement of any sales under this Trading Plan.

(c)    *Hedging Transactions.*  While this Trading Plan is in effect, Seller shall comply with the prohibition set forth in Rule 10b5-1(c)(1)(i)(C) against entering into or altering a corresponding or hedging transaction or position with respect to the Stock.

(d)    *Notice to UBS PaineWebber*.  Seller shall notify UBS PaineWebber to terminate or suspend sales, as appropriate, as soon as practicable upon the occurrence of any of the events contemplated in paragraph 7(a) or (b) or paragraph 8(c).

(e)    *Communications*. Seller shall not, directly or indirectly, communicate any material nonpublic information relating to the Stock or Issuer to any employee of the UBS PaineWebber 10b5-1 Group or any UBS PaineWebber Financial Advisor.

(f)    *Compliance with Applicable Laws and Required Exchange Act Filings*.  Seller shall comply with all applicable laws, rules and regulations, and Seller shall make all filings required under Sections 13 and 16 of the Exchange Act in a timely manner.

(g)    *No Influence*.  Seller does not have, and shall not attempt to exercise, any influence over how, when or whether to effect sales of Stock pursuant to this Trading Plan.

(h)    *Stock Non-Marginable*.  The Stock is not marginable and may not be used by Seller as collateral for any purpose.

(i)    *Execution, Average Pricing and Pro Rata Allocation of Sales*.  UBS PaineWebber may sell Stock on any national securities exchange, in the over-the-counter market, on an automated trading system or otherwise.  UBS PaineWebber or one of its affiliates may make a market in the Stock and may act as principal in executing sales under the Trading Plan.  To the extent that UBSPW administers other trading plans relating to Issuer's securities, UBSPW may aggregate orders for Seller with orders under other sellers' trading plans for execution in a block and allocate an average price to each seller.  In the event of partial execution of block orders, UBS PaineWebber shall allocate the proceeds of all Stock actually sold on a particular day pursuant to all Rule 10b5-1 trading plans concerning Issuer's securities that UBS PaineWebber manages pro rata based on the ratio of (x) the number of shares to be sold pursuant to the order instructions of each

2

## ⚘ UBS PaineWebber

Trading Plan to (y) the total number of shares to be sold under all Trading Plans having the same type of order instructions.

(j)    *Exclusivity*. Until this Trading Plan has been terminated, Seller shall not enter into any agreement with, give any instructions to, or adopt a plan for trading with another Financial Institution with respect to purchase or sale of the Stock or the Options for the purpose of establishing a trading plan that complies with Rule 10b5-1.

(k)    *Acknowledgment of Relief from Obligation to Effect Sales*. UBS PaineWebber shall be relieved of its obligation to sell Stock as otherwise required by paragraph 1 above at any time when:

    (i)    UBS PaineWebber has determined that (A) it is prohibited from doing so by a legal, contractual or regulatory restriction applicable to it or its affiliates or to Seller or Seller's affiliates; or (B) a material adverse change in the financial markets, in the market activity in the Stock or in the internal systems of UBS PaineWebber or one of its affiliates, an outbreak or escalation of hostilities or other crisis or calamity has occurred (in each case, the effect of which is such as to make it, in the sole judgment of UBS PaineWebber, impracticable for UBS PaineWebber to sell Stock); or (C) a trading suspension with respect to the Stock by the Securities and Exchange Commission or the Principal U.S. Market (defined in Exhibit A) or a delisting of the Stock or a banking moratorium has occurred; if UBS PaineWebber cannot effect a sale for any of such reasons, UBS PaineWebber shall effect such sale as promptly as practical after the cessation or termination of such cause, subject to the restrictions set forth in paragraph 1 of Exhibit A;

    (ii)    This Trading Plan is suspended in accordance with paragraph 7 below;

    (iii)    This Trading Plan is terminated in accordance with paragraph 8 below;

5.    *Rule 144 and Rule 145*.  With respect to sales of Stock subject to Rule 144 or Rule 145, Seller and UBS PaineWebber agree to comply with the following provisions:

(a)    Agreements by Seller Regarding Rule 144 and Rule 145.

    (i)    Seller agrees not to take, and agrees to cause any person or entity with which Seller would be required to aggregate sales of Stock pursuant to Rule 144(a)(2) or (e) not to take, any action that would cause the sales hereunder not to meet all applicable requirements of Rule 144 or Rule 145.

    (ii)    Seller agrees to complete, execute and deliver to UBS PaineWebber Forms 144 for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request.  Seller hereby grants UBS PaineWebber a power of attorney to complete and file on behalf of Seller any required Forms 144.  The remarks section of each Form 144 filed shall include a statement to the effect that the shares covered by the Form 144 are being sold pursuant to a Rule 10b5-1 trading plan dated as of the date hereof, and the representation regarding the

**✦ UBS PaineWebber**

seller's knowledge of material nonpublic information speaks as of that plan adoption date.

    (iii)   Seller agrees to complete, execute and deliver to UBS PaineWebber Rule 144 Seller's Representation Letters (in the form attached as Exhibit C) for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request.

   (b)   <u>Agreements by UBS PaineWebber Regarding Rule 144 and Rule 145</u>.

    (i)   UBS PaineWebber agrees to conduct all sales pursuant to the Trading Plan in accordance with the manner of sale requirement of Rule 144. UBS PaineWebber shall not effect any sales that it knows would exceed the then-applicable volume limitation under Rule 144.

    (ii)   UBS PaineWebber agrees to file such Forms 144 furnished by Seller pursuant to paragraph 5(a)(ii) on behalf of Seller as required by applicable law. UBS PaineWebber shall make one Form 144 filing at the beginning of each three-month period, commencing upon the first Sale Day under the Trading Plan.

    (iii)   UBS PaineWebber agrees to submit such Rule 144 Seller's Representation Letters furnished by Seller pursuant to paragraph 5(a)(iii) on behalf of Seller as required by Issuer's transfer agent.

    (iv)   Seller shall make and shall be solely responsible for all filings required under Sections 13(d) and 16 of the Exchange Act in connection with sales of Stock pursuant to the Trading Plan, and Seller acknowledges that UBS PaineWebber shall not make any such filings and shall have no liability to Seller in connection with or related to any such filings.

6.    *Options*. Seller and UBS PaineWebber agree to the provisions regarding the exercise of Options contained in Exhibit D.

7.    *Suspension*. Sales under this Trading Plan shall be suspended as follows:

   (a)   Promptly after the date on which UBS PaineWebber receives notice from Seller or Issuer of legal, contractual or regulatory restrictions applicable to Seller or Seller's affiliates that would prevent UBS PaineWebber from selling Stock under this Trading Plan (such notice merely stating that there is a restriction applicable to Seller without specifying the reasons for the restriction), including a restriction based on Seller's awareness of material nonpublic information in connection with a tender offer for Issuer's securities (transactions on the basis of which Rule 14e-3 of the Exchange Act could be violated).

   (b)   In the event of a Qualifying Securities Offering, promptly after the date on which UBS PaineWebber receives notice from Issuer or Seller of the Suspension Date until UBS PaineWebber receives notice from Issuer or Seller of the Resumption Date; *provided, however*, that (i) Seller certifies that Seller has no control over the Suspension Date or the Resumption Date, and (ii) if Seller is unable to make such certification then this paragraph shall result in a termination of the Trading Plan, rather than suspension.

3S PaineWebber

"Qualifying Securities Offering" means any offering of securities of Issuer for cash in which the lead underwriter, lead manager, initial purchaser, placement agent or other entity performing a similar function (each, an "Underwriter") requires Seller to agree to restrict Seller's ability to effect Sales pursuant to this Trading Plan.

"Suspension Date" means the date on which a preliminary prospectus, offering memorandum, offering circular or other disclosure document (each, a "Preliminary Offering Document") is first used to market securities of Issuer by the Underwriter, or if a Preliminary Offering Document is not used, the date on which the underwriting agreement, purchase agreement, placement agent agreement or similar agreement (each, an "Underwriting Agreement") is entered into by the Underwriter and Issuer.

"Resumption Date" means the day immediately following the expiration of the time period during which Seller was restricted from effecting Sales pursuant to this Trading Plan in accordance with the Underwriting Agreement.

(c)     In the event that the UBS PaineWebber 10b5-1 Group becomes aware of material nonpublic information concerning Issuer or the Stock, UBS PaineWebber may be required by applicable law or, in its sole discretion, find it advisable, to suspend sales under this Trading Plan. In such case, UBS PaineWebber shall promptly notify Seller of the suspension of sales under this Trading Plan.

*Termination*. This Trading Plan will terminate on the earliest to occur of the following (the "Plan Sales Period"):

(a)     on December 31, 2003;

(b)     promptly after the date on which UBS PaineWebber receives notice from Seller of the termination of this Trading Plan, in which case, Seller agrees to notify the Issuer promptly of such termination;

(c)     upon the reasonable determination by UBS PaineWebber, or promptly after the reasonable determination by Seller and notice to UBS PaineWebber, that this Trading Plan does not comply with Rule 10b5-1;

(d)     promptly after the date UBS PaineWebber is notified of the death of Seller;

(e)     immediately in the event that Seller fails to deliver any Stock pursuant to paragraph 4(b) or fails to satisfy the delivery requirements with respect to Options set forth in Exhibit D; or

(f)     the date that the aggregate number of shares of Stock sold pursuant to this Trading Plan reaches 20,000 shares.

).     *Indemnification; Limitation of Liability*.

(a)     *Indemnification*.

(i)     Seller agrees to indemnify and hold harmless UBS PaineWebber and its directors, officers, employees and affiliates from and against all claims, losses, damages and liabilities (including, without limitation, any legal or

# ❊ UBS PaineWebber

other expenses reasonably incurred in connection with defending or investigating any such action or claim) (collectively, "Losses") arising out of or attributable to (A) UBS PaineWebber's actions taken or not taken in compliance with this Trading Plan, (B) any breach by Seller of this Trading Plan (including Seller's representations and warranties hereunder), or (C) any violation by Seller of applicable laws or regulations. This indemnification shall survive termination of this Trading Plan.

(ii)    UBS PaineWebber agrees to indemnify and hold harmless Seller from and against all Losses arising out of or attributable to the gross negligence or willful misconduct of UBS PaineWebber in connection with this Trading Plan.

(b)    *Limitation of Liability*.

(i)    Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller, and Seller shall not be liable to UBS PaineWebber, for: (A) special, indirect, punitive, exemplary or consequential damages, or incidental losses or damages of any kind, even if advised of the possibility of such losses or damages or if such losses or damages could have been reasonably foreseen; or (B) any failure to perform or to cease performance or any delay in performance that results from a cause or circumstance that is beyond its reasonable control, including, but not limited to, failure of electronic or mechanical equipment, strikes, failure of common carrier or utility systems, severe weather, market disruptions or other causes commonly known as "acts of God"

(ii)    Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller for (A) the exercise of discretionary authority or discretionary control under this Trading Plan, if any, or (B) any failure to effect a sale required by paragraph 1, except for failures to effect sales as a result of the gross negligence or willful misconduct of UBS PaineWebber.

10.    *Agreement to Arbitrate*.  Any dispute between Seller and UBS PaineWebber arising out of, relating to or in connection with this Trading Plan or any transaction relating to this Trading Plan shall be determined only by arbitration as provided in the UBS PaineWebber brokerage account agreement referred to in paragraph 4(a).

11.    *Notices*.

(a)    All notices to UBS PaineWebber under this Trading Plan shall be provided in writing to Sean Huss UBS PaineWebber by facsimile at fax number 212-821-5536.

(b)    All notices to Seller under this Trading Plan shall be given to Edward H. Snowden by telephone at telephone number 781-904-5010, by facsimile at fax number 781-904-5602 or by certified mail to the address below:

Boston Communications Group, Inc.
100 Sylvan Rd. Suite 100
Woburn, MA 01801

# ❈ UBS PaineWebber

(c)    Seller hereby instructs and authorizes UBS PaineWebber to send duplicate copies of all confirmations of trades made under this Trading Plan to the Issuer at the following address:

> Leslie Apony
> Boston Communictaions Group
> 100 Sylvan Rd Suite 100
> Woburn, MA 01801

(d)    UBS PaineWebber will provide notification of all sales of Stock and exercise of Options under this Trading Plan to Seller and to Issuer by e-mail at the below addresses by 6 p.m. (ET) on the date of execution on a best efforts basis, with a final report by 12 p.m. (ET) on the following business day. Seller and Issuer agree to notify UBS PaineWebber in writing of any changes to the contact information provided.

> esnowden@bcgi.net
> lapony@bcgi.net

12.    *Amendments and Modifications*. This Trading Plan and the Exhibits hereto may be amended by Seller only upon the written consent of UBS PaineWebber and receipt by UBS PaineWebber of the following documents, each dated as of the date of such amendment:

(a)    a certificate signed by Seller, certifying that the representations and warranties of Seller contained in this Trading Plan are true at and as of the date of such certificate as if made at and as of such date; and

(b)    an issuer certificate completed by Issuer substantially in the form of Exhibit B.

13.    *Inconsistency with Law*. If any provision of this Trading Plan is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation. All other provisions of this Trading Plan will continue and remain in full force and effect.

14.    *Governing Law*. This Trading Plan shall be governed by and construed in accordance with the internal laws of the State of New York.

15.    *Entire Agreement*. This Trading Plan, including Exhibits, and the brokerage account agreement referred to in paragraph 4(a) above, constitute the entire agreement between the parties with respect to this Trading Plan and supercede any prior agreements or understandings with regard to this Trading Plan.

16.    *Counterparts*. This Trading Plan may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

# ❊ UBS PaineWebber

NOTICE: THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN PARAGRAPH 10.

IN WITNESS WHEREOF, the undersigned have signed this Trading Plan as of the date first written above.

ELIZABETH M. SNOWDEN
*For The Mallory Trust*

*Elizabeth M Snowden*                                   12/12/02
Name:  Elizabeth M. Snowden                            Date:
Title:  Co-Trustee


JANE G. SNOWDEN
*For The Mallory Trust*

*Jane G. Snowden*                                        12/15/02
Name:  Jane G. Snowden                                 Date:
Title:  Co-Trustee


UBS PAINE WEBBER INCORPORATED



_____                    _____
Name:  Timothy Kelly                               Date:
Title:   Senior Vice President



_____                    _____
Name:  Larry Gore                                  Date:
Title:   Managing Director

8



## EXHIBIT A

**This Exhibit A may not be amended except in accordance with the Trading Plan.**

### SPECIFIC INSTRUCTIONS

1. UBS PaineWebber shall enter a sell order for the specified Sale Amount (as defined below) for the account of Seller on each specified Sale Day (as defined below) at the specified Sale Price (as defined below), subject to the following restrictions:

   > In no event shall UBS PaineWebber sell any shares of Stock pursuant to the Trading Plan prior to January 15, 2003.

2. The "Sale Day", "Sale Amount", and "Sale Price", are specified below:

   Each month, including January 2003, enter an order to sell 900 shares at a limit price of $11. In the event the Issuer's stock is trading at or above $13.00 during any calendar month, enter an order to sell an additional 400 shares. In the event the Issuer's stock is trading at or above $15.00 during any calendar month, enter an order to sell an additional 400 shares. In the event the Issuer's stock is trading at or above $17.00 during any calendar month, enter an order to sell an additional 800 shares. In the event the Issuer's stock is trading at or above $20.00 during any calendar month, enter an order to sell an additional 800 shares.

3. The limit order entered pursuant to this Trading Plan will be entered as a GTC order (good until cancelled), *provided, however,* that no GTC orders will last for more than 365 days, at which time any GTC order that has not been filled will be cancelled and reentered.

4. The Sale Amount and the Sale Price shall be adjusted automatically on a proportionate basis to take into account any stock split, reverse stock split or stock dividend with respect to the Stock or any change in capitalization with respect to Issuer that occurs while the Trading Plan is in effect.

5. A "Trading Day" is any day during the Plan Sales Period that the NASDAQ (the "Principal U.S. Market") is open for business and the Stock trades regular way on the Principal U.S. market; provided, however, that a "Trading Day" shall mean only that day's regular trading session of the Principal U.S. Market and shall not include any extended-hours or after-hours trading sessions that the Principal U.S. Market may allow.

EXHIBIT A (Cont'd.)

_Elizabeth M Snowden_          _12/12/02_
Name:  Elizabeth M. Snowden  for The Mallory Trust     Date:
Title:    Co-Trustee

_Jane G. Snowden_          _12/15/02_
Name:  Jane G. Snowden   For The Mallory Trust     Date:
Title:    Co-Trustee


UBS PaineWebber

## EXHIBIT B

## ISSUER CERTIFICATE

1. Boston Communictaions Group's Insider Trading Policy is consistent with and allows for the use of Rule 10b5-1 Trading Plans, and we have read the plan dated December 16, 2002 to be entered into by The Mallory Trust ("Seller") and do not object to it.

2. Issuer acknowledges that Seller has authorized UBS PaineWebber to serve as Seller's agent and attorney-in-fact to exercise certain Options to purchase the Stock from time to time pursuant to the Trading Plan. Issuer agrees to accept, acknowledge and effect the exercise of such Options by UBS PaineWebber and the delivery of the underlying Stock to UBS PaineWebber (free of any legend or statement restricting its transferability to a buyer) upon receipt of a completed Stock Option Exercise Form in the form attached to the Trading Plan as Exhibit E.

_____
Name: Alan J. Bouffard
Title:   Vice President & General Counsel

12/16/02
Date

 UBS PaineWebber

**EXHIBIT C**

**This Exhibit C may not be amended except in accordance with the Trading Plan**

**RULE 144 LETTER**

UBS PaineWebber Incorporated
Attn: Sean Huss
    299 Park Ave, 26th floor
New York, NY 10171

Boston Communictaions Group
General Counsel
100 Sylvan Rd Suite 100
Woburn, MA 1801

Ladies and Gentlemen:

In conjunction with my order to sell shares of common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") ("the Stock"), through you as broker or dealer for my account pursuant to the Rule 10b5-1 Trading Plan dated December 16, 2002 (the "Trading Plan"), under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), I advise you as follows:

1. During the next thirteen months following the date of this letter, I intend to sell Stock pursuant to Rule 10b5-1. I intend for UBS PaineWebber to adhere to the Trading Plan without alteration or modification during the above-stated period.

2. I am an affiliate of the Issuer.

3. The number of shares of Stock, which I have ordered you to sell as broker or dealer for my account, will conform to the Sales Instructions in Exhibit A of the Trading Plan.

4. I have verified that Issuer has been subject to the Securities and Exchange Commission (the "SEC") information reporting requirements pursuant to the Exchange Act for at least the preceding 90 days and has filed all required periodic reports during the 12 months preceding the first sale or during any shorter period that the SEC may require. As of the date of the Trading Plan, I did not know of any material nonpublic information concerning Issuer.

5. [Intentionally Omitted]

6. a) I have not solicited or arranged for the solicitation of any orders to buy in anticipation or in connection with my proposed sales.

   b) I have made no payments to any other person in connection with your execution of my order.

   c) I have not agreed to act in concert with any other person in connection with my proposed sales.

7. It is my bona fide intention to sell the Stock as expressly prescribed in the Trading Plan pursuant to the Plan.

8. I understand that the payment of the proceeds of the sales will be delayed until the shares of Stock are transferred and delivered free of restrictions to UBS PaineWebber.

# ⚜ UBS PaineWebber

9.  All capitalized terms used in this Rule 144 Letter shall have the meanings ascribed to them in the Trading Plan.

The undersigned agrees to notify UBS PaineWebber immediately if any of the above representations become inaccurate before the sales are completed.

Very truly yours,

*Elizabeth M Snowden*
Signature of Seller

Elizabeth M. Snowden *for The Mallory Trust*
Print Name

380 Inca Pkwy Boulder CO 80303
Seller's Address

12/12/02
Date:

*Jane Snowden*
Signature of Seller

Jane G. Snowden *for The Mallory Trust*
Print Name

15 Gregory St., Marblehead MA 01945
Seller's Address

12/05/02
Date:



## EXHIBIT D

### STOCK OPTION PROVISIONS

**This Exhibit D may not be amended except in accordance with the Trading Plan.**

1.  *Options To Be Exercised Under the Trading Plan.*

| Number of Options | Designation Number / Grant Date | Strike Price | Expiration Date |
|---|---|---|---|
| 20,000 | 380-98A/No 2-10-98 | $7,0620 | 2-10-2008 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

2.  *Seller's Representations and Warranties.*

    (a)    Seller represents and warrants that the Options listed above are held free and clear without liens, security interests or other encumbrances or limitations on exercise of the vested portion thereof, other than the requirement that Seller comply with the exercise provisions of such Options; and

    (b)    The shares of Stock acquired through exercise of the Options shall be held free and clear by Seller without liens, security interests or other encumbrances or limitations on disposition

3.  *Delivery.*

    (a)    Seller agrees to complete, execute and deliver to UBS PaineWebber Stock Option Exercise Notices, in the form attached hereto as Exhibit E, for the exercise of Options pursuant to the Trading Plan at such times and in such numbers as UBS PaineWebber shall request. Seller hereby authorizes UBS PaineWebber to deliver such Stock Option Exercise Notices to Issuer on Seller's behalf as necessary to effectuate such exercises and settle the sales of Stock underlying such Options under the Trading Plan. Seller agrees to make appropriate arrangements to ensure that Stock received upon the exercise of Options shall be delivered to the Plan Account promptly after Issuer's receipt of the applicable Stock Option Exercise Form.

## ⚜ UBS PaineWebber

(b)   UBS PaineWebber shall be relieved of its obligation to exercise Options and sell Stock as otherwise required at any time when Seller has failed to deliver Stock Options Exercise Notices or underlying shares.

4.    *Exercise*.

(a)   On each day that sales are to be made under the Trading Plan, UBS PaineWebber shall exercise a sufficient number of Options to effect such sales in the manner specified below:

Exercise first those Options with the lowest exercise price.

(b)   UBS PaineWebber shall, in connection with the exercise of Options, remit to Issuer the exercise price along with such amounts as may be necessary to satisfy withholding obligations.  These amounts shall be deducted from the proceeds of sale of the Stock, together with late fees, if applicable.

(c)   UBS PaineWebber shall in no event exercise any Option if, at the time of exercise, the exercise price of the Option (plus fees and commissions) is equal to or higher than the market price of the Stock.

 **UBS PaineWebber**

## EXHIBIT E
### EMPLOYEE STOCK OPTION EXERCISE NOTICE

#### I. *Instructions to Issuer*

A.  This constitutes notice under the stock option plan of Boston Communictaions Group ("Issuer") that I elect to exercise my option to purchase _____ shares of common stock (the "Stock") at an exercise price of $_____ per share.

B.  I hereby irrevocably authorize Issuer to (*check one*):

☐ (1) register the certificate(s) representing the Stock in the name of [    ] (Federal Tax ID #[      ]); and

(2) deliver the certificate(s) to UBS PaineWebber at
[          ], [          ], [          ] [          ]
(Attn: Transfer Department) for deposit into my Plan Account, Account #: _____.

*-OR-*

☐ deliver shares to UBS PaineWebber through the Depository Trust Company (DTC).

UBS PaineWebber DTC#: _____
Account #: _____

_____        _____
Name: Jane G. Snowden                Date:
For The Mallory Trust
Title: co-Trustee

#### II. *Issuer's Acknowledgment of Option Exercise*

A.  Boston Communictaions Group("Issuer") acknowledges receipt of a valid option exercise notice from The Mallory Trust ("Optionee") covering the exercise of _____ shares of Issuer's common stock.

B.  In consideration of UBS PaineWebber making a payment of $_____ to cover the cost of exercise (including taxes, if any) of the Optionee's option to purchase the shares from

A-1

# UBS PaineWebber

Issuer, Issuer agrees to promptly issue and deliver the shares registered in the name of UBS PaineWebber for the Optionee's account.

C. Funds should be delivered (*check one*):
    ☐ via check to:   _____ (company name)
    ☐ via wire to:   _____ (bank name)
      ABA #   _____ (nine digits)
      Account #   _____ (company name)

D. Issuer represents that the shares will be issued pursuant to an effective registration statement and that the shares will be free of any restrictive legend.

Name: Leslie Apony         Date:
Title:

**UBS PaineWebber**

# Rule 10b5-1 Trading Plan

The Bradford Irrevocable Trust ("Seller") adopts this Trading Plan dated December 16, 2002 (the "Trading Plan") with respect to the "Stock"(defined below) with UBS PaineWebber Inc. ("UBS PaineWebber") for the purpose of establishing a trading plan that complies with Rule 10b5-1(c)(1) under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

Seller and UBS PaineWebber agree as follows:

1. *Specific Plan of Sale*. UBS PaineWebber, acting as agent, agrees to effect sales of Stock on behalf of Seller in accordance with the specific instructions set forth in Exhibit A (the "Sales Instructions"). The term "Stock" means the Class A common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") (symbol: BCGI), including Stock that Seller has the right to acquire under the outstanding stock options issued by Issuer listed on Exhibit D (the "Options"), and includes any class or series of common stock of Issuer into which the Stock is converted whether pursuant to a reclassification, reorganization, reincorporation or similar event.

2. *Fees/Commissions*. Seller shall pay UBS PaineWebber $0.06 per share of Stock sold; with such amounts to be deducted by UBS PaineWebber from the proceeds of sales under this Trading Plan.

3. *Seller's Representations and Warranties*. Seller represents and warrants that:

    (a) Seller is not aware of any material nonpublic information concerning Issuer or any securities of Issuer;

    (b) Seller is entering into this Trading Plan in good faith and not as part of a plan or scheme to evade the prohibitions of Rule 10b5-1;

    (c) Seller has informed Issuer of this Trading Plan and has furnished Issuer with a copy, and Seller has determined that this Trading Plan is consistent with Issuer's insider trading policy;

    (d) Seller has disclosed to UBS PaineWebber any agreements that Seller is currently party to, or within the past 60 days, has been party to, with another broker, dealer or financial institution (each, a "Financial Institution") entered into for the purpose of establishing a trading plan that complies with Rule 10b5-1;

    (e) Seller is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent UBS PaineWebber from conducting sales in accordance with this Trading Plan;

    (f) the Stock to be sold under this Trading Plan is owned free and clear by Seller and is not subject to any liens, security interests or other encumbrances or limitations on dispositions, other than those imposed by Rule 144 or Rule 145, if applicable;

    (g) Seller has had an opportunity to consult with Seller's own advisors as to the legal, tax, financial and other aspects of this Trading Plan, including this Trading Plan's compliance with Rule 10b5-1 and applicable state law. Seller has not received or

© UBS PaineWebber Inc. 2002. All rights reserved

❋ UBS PaineWebber

relied on any representations from UBS PaineWebber concerning this Trading Plan's compliance with Rule 10b5-1.

4. *Agreements by Seller*. Seller acknowledges and agrees to the following provisions:

(a) *Brokerage Account*. Seller shall open a sole-purpose UBS PaineWebber brokerage account prior to the execution of sales under this Trading Plan in the name of and for the benefit of Seller (the "Plan Account").

(b) *Delivery of Stock*. Seller shall deliver all shares of Stock to be sold pursuant to this Trading Plan into the Plan Account prior to the commencement of any sales under this Trading Plan.

(c) *Hedging Transactions.* While this Trading Plan is in effect, Seller shall comply with the prohibition set forth in Rule 10b5-1(c)(1)(i)(C) against entering into or altering a corresponding or hedging transaction or position with respect to the Stock.

(d) *Notice to UBS PaineWebber*. Seller shall notify UBS PaineWebber to terminate or suspend sales, as appropriate, as soon as practicable upon the occurrence of any of the events contemplated in paragraph 7(a) or (b) or paragraph 8(c).

(e) *Communications*. Seller shall not, directly or indirectly, communicate any material nonpublic information relating to the Stock or Issuer to any employee of the UBS PaineWebber 10b5-1 Group or any UBS PaineWebber Financial Advisor.

(f) *Compliance with Applicable Laws and Required Exchange Act Filings*. Seller shall comply with all applicable laws, rules and regulations, and Seller shall make all filings required under Sections 13 and 16 of the Exchange Act in a timely manner.

(g) *No Influence*. Seller does not have, and shall not attempt to exercise, any influence over how, when or whether to effect sales of Stock pursuant to this Trading Plan.

(h) *Stock Non-Marginable*. The Stock is not marginable and may not be used by Seller as collateral for any purpose.

(i) *Execution, Average Pricing and Pro Rata Allocation of Sales*. UBS PaineWebber may sell Stock on any national securities exchange, in the over-the-counter market, on an automated trading system or otherwise. UBS PaineWebber or one of its affiliates may make a market in the Stock and may act as principal in executing sales under the Trading Plan. To the extent that UBSPW administers other trading plans relating to Issuer's securities, UBSPW may aggregate orders for Seller with orders under other sellers' trading plans for execution in a block and allocate an average price to each seller. In the event of partial execution of block orders, UBS PaineWebber shall allocate the proceeds of all Stock actually sold on a particular day pursuant to all Rule 10b5-1 trading plans concerning Issuer's securities that UBS PaineWebber manages pro rata based on the ratio of (x) the number of shares to be sold pursuant to the order instructions of each

2

UBS PaineWebber

Trading Plan to (y) the total number of shares to be sold under all Trading Plans having the same type of order instructions.

(j) *Exclusivity*. Until this Trading Plan has been terminated, Seller shall not enter into any agreement with, give any instructions to, or adopt a plan for trading with another Financial Institution with respect to purchase or sale of the Stock or the Options for the purpose of establishing a trading plan that complies with Rule 10b5-1.

(k) *Acknowledgment of Relief from Obligation to Effect Sales*. UBS PaineWebber shall be relieved of its obligation to sell Stock as otherwise required by paragraph 1 above at any time when:

    (i) UBS PaineWebber has determined that (A) it is prohibited from doing so by a legal, contractual or regulatory restriction applicable to it or its affiliates or to Seller or Seller's affiliates; or (B) a material adverse change in the financial markets, in the market activity in the Stock or in the internal systems of UBS PaineWebber or one of its affiliates, an outbreak or escalation of hostilities or other crisis or calamity has occurred (in each case, the effect of which is such as to make it, in the sole judgment of UBS PaineWebber, impracticable for UBS PaineWebber to sell Stock); or (C) a trading suspension with respect to the Stock by the Securities and Exchange Commission or the Principal U.S. Market (defined in Exhibit A) or a delisting of the Stock or a banking moratorium has occurred; if UBS PaineWebber cannot effect a sale for any of such reasons, UBS PaineWebber shall effect such sale as promptly as practical after the cessation or termination of such cause, subject to the restrictions set forth in paragraph 1 of Exhibit A;

    (ii) This Trading Plan is suspended in accordance with paragraph 7 below;

    (iii) This Trading Plan is terminated in accordance with paragraph 8 below;

5. *Rule 144 and Rule 145*. With respect to sales of Stock subject to Rule 144 or Rule 145, Seller and UBS PaineWebber agree to comply with the following provisions:

(a) *Agreements by Seller Regarding Rule 144 and Rule 145*.

    (i) Seller agrees not to take, and agrees to cause any person or entity with which Seller would be required to aggregate sales of Stock pursuant to Rule 144(a)(2) or (e) not to take, any action that would cause the sales hereunder not to meet all applicable requirements of Rule 144 or Rule 145.

    (ii) Seller agrees to complete, execute and deliver to UBS PaineWebber Forms 144 for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request. Seller hereby grants UBS PaineWebber a power of attorney to complete and file on behalf of Seller any required Forms 144. The remarks section of each Form 144 filed shall include a statement to the effect that the shares covered by the Form 144 are being sold pursuant to a Rule 10b5-1 trading plan dated as of the date hereof, and the representation regarding the

3

## UBS PaineWebber

seller's knowledge of material nonpublic information speaks as of that plan adoption date.

(iii) Seller agrees to complete, execute and deliver to UBS PaineWebber Rule 144 Seller's Representation Letters (in the form attached as Exhibit C) for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request.

(b) <u>Agreements by UBS PaineWebber Regarding Rule 144 and Rule 145</u>.

(i) UBS PaineWebber agrees to conduct all sales pursuant to the Trading Plan in accordance with the manner of sale requirement of Rule 144. UBS PaineWebber shall not effect any sales that it knows would exceed the then-applicable volume limitation under Rule 144.

(ii) UBS PaineWebber agrees to file such Forms 144 furnished by Seller pursuant to paragraph 5(a)(ii) on behalf of Seller as required by applicable law. UBS PaineWebber shall make one Form 144 filing at the beginning of each three-month period, commencing upon the first Sale Day under the Trading Plan.

(iii) UBS PaineWebber agrees to submit such Rule 144 Seller's Representation Letters furnished by Seller pursuant to paragraph 5(a)(iii) on behalf of Seller as required by Issuer's transfer agent.

(iv) Seller shall make and shall be solely responsible for all filings required under Sections 13(d) and 16 of the Exchange Act in connection with sales of Stock pursuant to the Trading Plan, and Seller acknowledges that UBS PaineWebber shall not make any such filings and shall have no liability to Seller in connection with or related to any such filings.

6. <u>Options</u>. Seller and UBS PaineWebber agree to the provisions regarding the exercise of Options contained in Exhibit D.

7. <u>Suspension</u>. Sales under this Trading Plan shall be suspended as follows:

(a) Promptly after the date on which UBS PaineWebber receives notice from Seller or Issuer of legal, contractual or regulatory restrictions applicable to Seller or Seller's affiliates that would prevent UBS PaineWebber from selling Stock under this Trading Plan (such notice merely stating that there is a restriction applicable to Seller without specifying the reasons for the restriction), including a restriction based on Seller's awareness of material nonpublic information in connection with a tender offer for Issuer's securities (transactions on the basis of which Rule 14e-3 of the Exchange Act could be violated).

(b) In the event of a Qualifying Securities Offering, promptly after the date on which UBS PaineWebber receives notice from Issuer or Seller of the Suspension Date until UBS PaineWebber receives notice from Issuer or Seller of the Resumption Date; *provided, however,* that (i) Seller certifies that Seller has no control over the Suspension Date or the Resumption Date, and (ii) if Seller is unable to make such certification then this paragraph shall result in a termination of the Trading Plan, rather than suspension.

4

UBS PaineWebber

"Qualifying Securities Offering" means any offering of securities of Issuer for cash in which the lead underwriter, lead manager, initial purchaser, placement agent or other entity performing a similar function (each, an "Underwriter") requires Seller to agree to restrict Seller's ability to effect Sales pursuant to this Trading Plan.

"Suspension Date" means the date on which a preliminary prospectus, offering memorandum, offering circular or other disclosure document (each, a "Preliminary Offering Document") is first used to market securities of Issuer by the Underwriter, or if a Preliminary Offering Document is not used, the date on which the underwriting agreement, purchase agreement, placement agent agreement or similar agreement (each, an "Underwriting Agreement") is entered into by the Underwriter and Issuer.

"Resumption Date" means the day immediately following the expiration of the time period during which Seller was restricted from effecting Sales pursuant to this Trading Plan in accordance with the Underwriting Agreement.

(c)    In the event that the UBS PaineWebber 10b5-1 Group becomes aware of material nonpublic information concerning Issuer or the Stock, UBS PaineWebber may be required by applicable law or, in its sole discretion, find it advisable, to suspend sales under this Trading Plan. In such case, UBS PaineWebber shall promptly notify Seller of the suspension of sales under this Trading Plan.

8.    *Termination*. This Trading Plan will terminate on the earliest to occur of the following (the "Plan Sales Period"):

(a)    on December 31, 2003;

(b)    promptly after the date on which UBS PaineWebber receives notice from Seller of the termination of this Trading Plan, in which case, Seller agrees to notify the Issuer promptly of such termination;

(c)    upon the reasonable determination by UBS PaineWebber, or promptly after the reasonable determination by Seller and notice to UBS PaineWebber, that this Trading Plan does not comply with Rule 10b5-1;

(d)    promptly after the date UBS PaineWebber is notified of the death of Seller;

(e)    immediately in the event that Seller fails to deliver any Stock pursuant to paragraph 4(b) or fails to satisfy the delivery requirements with respect to Options set forth in Exhibit D; or

(f)    the date that the aggregate number of shares of Stock sold pursuant to this Trading Plan reaches 20,000 shares.

9.    *Indemnification; Limitation of Liability*.

(a)    *Indemnification*.

(i)    Seller agrees to indemnify and hold harmless UBS PaineWebber and its directors, officers, employees and affiliates from and against all claims, losses, damages and liabilities (including, without limitation, any legal or

5

UBS PaineWebber

other expenses reasonably incurred in connection with defending or investigating any such action or claim) (collectively, "Losses") arising out of or attributable to (A) UBS PaineWebber's actions taken or not taken in compliance with this Trading Plan, (B) any breach by Seller of this Trading Plan (including Seller's representations and warranties hereunder), or (C) any violation by Seller of applicable laws or regulations. This indemnification shall survive termination of this Trading Plan.

(ii)  UBS PaineWebber agrees to indemnify and hold harmless Seller from and against all Losses arising out of or attributable to the gross negligence or willful misconduct of UBS PaineWebber in connection with this Trading Plan.

(b)  *Limitation of Liability.*

(i)  Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller, and Seller shall not be liable to UBS PaineWebber, for: (A) special, indirect, punitive, exemplary or consequential damages, or incidental losses or damages of any kind, even if advised of the possibility of such losses or damages or if such losses or damages could have been reasonably foreseen; or (B) any failure to perform or to cease performance or any delay in performance that results from a cause or circumstance that is beyond its reasonable control, including, but not limited to, failure of electronic or mechanical equipment, strikes, failure of common carrier or utility systems, severe weather, market disruptions or other causes commonly known as "acts of God"

(ii)  Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller for (A) the exercise of discretionary authority or discretionary control under this Trading Plan, if any, or (B) any failure to effect a sale required by paragraph 1, except for failures to effect sales as a result of the gross negligence or willful misconduct of UBS PaineWebber.

10.  *Agreement to Arbitrate.*  Any dispute between Seller and UBS PaineWebber arising out of, relating to or in connection with this Trading Plan or any transaction relating to this Trading Plan shall be determined only by arbitration as provided in the UBS PaineWebber brokerage account agreement referred to in paragraph 4(a).

11.  *Notices.*

(a)  All notices to UBS PaineWebber under this Trading Plan shall be provided in writing to Sean Huss UBS PaineWebber by facsimile at fax number 212-821-5536.

(b)  All notices to Seller under this Trading Plan shall be given to Edward H. Snowden by telephone at telephone number 781-904-5010, by facsimile at fax number 781-904-5602 or by certified mail to the address below:

> Boston Communications Group, Inc.
> 100 Sylvan Rd. Suite 100
> Woburn, MA 01801

6

**UBS PaineWebber**

(c)    Seller hereby instructs and authorizes UBS PaineWebber to send duplicate copies of all confirmations of trades made under this Trading Plan to the Issuer at the following address:

> Leslie Apony
> Boston Communictaions Group
> 100 Sylvan Rd Suite 100
> Woburn, MA 01801

(d)    UBS PaineWebber will provide notification of all sales of Stock and exercise of Options under this Trading Plan to Seller and to Issuer by e-mail at the below addresses by 6 p.m. (ET) on the date of execution on a best efforts basis, with a final report by 12 p.m. (ET) on the following business day. Seller and Issuer agree to notify UBS PaineWebber in writing of any changes to the contact information provided.

> esnowden@bcgi.net
> lapony@bcgi.net

12.    *Amendments and Modifications*.  This Trading Plan and the Exhibits hereto may be amended by Seller only upon the written consent of UBS PaineWebber and receipt by UBS PaineWebber of the following documents, each dated as of the date of such amendment:

(a)    a certificate signed by Seller, certifying that the representations and warranties of Seller contained in this Trading Plan are true at and as of the date of such certificate as if made at and as of such date; and

(b)    an issuer certificate completed by Issuer substantially in the form of Exhibit B.

13.    *Inconsistency with Law*.  If any provision of this Trading Plan is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation.  All other provisions of this Trading Plan will continue and remain in full force and effect.

14.    *Governing Law*.  This Trading Plan shall be governed by and construed in accordance with the internal laws of the State of New York.

15.    *Entire Agreement*.  This Trading Plan, including Exhibits, and the brokerage account agreement referred to in paragraph 4(a) above, constitute the entire agreement between the parties with respect to this Trading Plan and supercede any prior agreements or understandings with regard to this Trading Plan.

16.    *Counterparts*.  This Trading Plan may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

❖ UBS PaineWebber

NOTICE: THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN PARAGRAPH 10.

IN WITNESS WHEREOF, the undersigned have signed this Trading Plan as of the date first written above.

ELIZABETH M. SNOWDEN
For The Bradford Irrevocable Trust

_Elizabeth M Snowden_        12/12/02
Name:  Elizabeth M. Snowden        Date:
Title:  Trustee


UBS PAINE WEBBER INCORPORATED




_____        _____
Name:  Timothy Kelly        Date:
Title:  Senior Vice President




_____        _____
Name:  Larry Gore        Date:
Title:  Managing Director

8

## EXHIBIT A

This Exhibit A may not be amended except in accordance with the Trading Plan.

### SPECIFIC INSTRUCTIONS

1. UBS PaineWebber shall enter a sell order for the specified Sale Amount (as defined below) for the account of Seller on each specified Sale Day (as defined below) at the specified Sale Price (as defined below), subject to the following restrictions:

    In no event shall UBS PaineWebber sell any shares of Stock pursuant to the Trading Plan prior to January 15, 2003.

2. The "Sale Day", "Sale Amount", and "Sale Price", are specified below:

    Each month, including January 2003, enter an order to sell 900 shares at a limit price of $11. In the event the Issuer's stock is trading at or above $13.00 during any calendar month, enter an order to sell an additional 400 shares. In the event the Issuer's stock is trading at or above $15.00 during any calendar month, enter an order to sell an additional 400 shares. In the event the Issuer's stock is trading at or above $17.00 during any calendar month, enter an order to sell an additional 800 shares. In the event the Issuer's stock is trading at or above $20.00 during any calendar month, enter an order to sell an additional 800 shares.

3. The limit order entered pursuant to this Trading Plan will be entered as a GTC order (good until cancelled), *provided, however,* that no GTC orders will last for more than 365 days, at which time any GTC order that has not been filled will be cancelled and reentered.

4. The Sale Amount and the Sale Price shall be adjusted automatically on a proportionate basis to take into account any stock split, reverse stock split or stock dividend with respect to the Stock or any change in capitalization with respect to Issuer that occurs while the Trading Plan is in effect.

5. A "Trading Day" is any day during the Plan Sales Period that the NASDAQ (the "Principal U.S. Market") is open for business and the Stock trades regular way on the Principal U.S. market; provided, however, that a "Trading Day" shall mean only that day's regular trading session of the Principal U.S. Market and shall not include any extended-hours or after-hours trading sessions that the Principal U.S. Market may allow.

EXHIBIT A (Cont'd.)

_Elizabeth M Snowden_                    _12/12/02_
Name:  Elizabeth M. Snowden              Date:
Title:  Trustee  for The Bradford Irrevocable Trust

## EXHIBIT B

## ISSUER CERTIFICATE

1. Boston Communictaions Group's Insider Trading Policy is consistent with and allows for the use of Rule 10b5-1 Trading Plans, and we have read the plan dated December 16, 2002 to be entered into by The Bradford Irrevocable Trust ("Seller") and do not object to it.

2. Issuer acknowledges that Seller has authorized UBS PaineWebber to serve as Seller's agent and attorney-in-fact to exercise certain Options to purchase the Stock from time to time pursuant to the Trading Plan. Issuer agrees to accept, acknowledge and effect the exercise of such Options by UBS PaineWebber and the delivery of the underlying Stock to UBS PaineWebber (free of any legend or statement restricting its transferability to a buyer) upon receipt of a completed Stock Option Exercise Form in the form attached to the Trading Plan as Exhibit E.

_____          12/16/02
Name: Alan J. Bouffard                        ·Date
Title:   Vice President & General Counsel

 **UBS PaineWebber**

## EXHIBIT C

**This Exhibit C may not be amended except in accordance with the Trading Plan**

**RULE 144 LETTER**

UBS PaineWebber Incorporated
Attn: Sean Huss
    299 Park Ave, 26<sup>th</sup> floor
    New York, NY 10171

Boston Communictaions Group
General Counsel
100 Sylvan Rd Suite 100
Woburn, MA 1801

Ladies and Gentlemen:

In conjunction with my order to sell shares of common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") ("the Stock"), through you as broker or dealer for my account pursuant to the Rule 10b5-1 Trading Plan dated December 16, 2002 (the "Trading Plan"), under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), I advise you as follows:

1. During the next thirteen months following the date of this letter, I intend to sell Stock pursuant to Rule 10b5-1. I intend for UBS PaineWebber to adhere to the Trading Plan without alteration or modification during the above-stated period.

2. I am an affiliate of the Issuer.

3. The number of shares of Stock, which I have ordered you to sell as broker or dealer for my account, will conform to the Sales Instructions in Exhibit A of the Trading Plan.

4. I have verified that Issuer has been subject to the Securities and Exchange Commission (the "SEC") information reporting requirements pursuant to the Exchange Act for at least the preceding 90 days and has filed all required periodic reports during the 12 months preceding the first sale or during any shorter period that the SEC may require. As of the date of the Trading Plan, I did not know of any material nonpublic information concerning Issuer.

5. [Intentionally Omitted]

6. a) I have not solicited or arranged for the solicitation of any orders to buy in anticipation or in connection with my proposed sales.

   b) I have made no payments to any other person in connection with your execution of my order.

   c) I have not agreed to act in concert with any other person in connection with my proposed sales.

7. It is my bona fide intention to sell the Stock as expressly prescribed in the Trading Plan pursuant to the Plan.

8. I understand that the payment of the proceeds of the sales will be delayed until the shares of Stock are transferred and delivered free of restrictions to UBS PaineWebber.

A-1

**UBS PaineWebber**

9. All capitalized terms used in this Rule 144 Letter shall have the meanings ascribed to them in the Trading Plan.

The undersigned agrees to notify UBS PaineWebber immediately if any of the above representations become inaccurate before the sales are completed.

Very truly yours,

*Elizabeth M Snowden*
_____
Signature of Seller

Elizabeth M. Snowden *For The Bradford*
_____     *Irrevocable Trust*
Print Name

*380 Inca Pkwy Boulder CO 80303*
_____
Seller's Address

*12/12/02*
_____
Date:

**UBS** PaineWebber

**EXHIBIT D**

**STOCK OPTION PROVISIONS**

This Exhibit D may not be amended except in accordance with the Trading Plan.

1.    *Options To Be Exercised Under the Trading Plan.*

| Number of Options | Designation Number / Grant Date | Strike Price | Expiration Date |
|---|---|---|---|
| 20,000 | 320-42PYNG    2-10-98 | $ 7,0620 | 2-10-2008 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

2.    *Seller's Representations and Warranties.*

(a)    Seller represents and warrants that the Options listed above are held free and clear without liens, security interests or other encumbrances or limitations on exercise of the vested portion thereof, other than the requirement that Seller comply with the exercise provisions of such Options; and

(b)    The shares of Stock acquired through exercise of the Options shall be held free and clear by Seller without liens, security interests or other encumbrances or limitations on disposition

3.    *Delivery.*

(a)    Seller agrees to complete, execute and deliver to UBS PaineWebber Stock Option Exercise Notices, in the form attached hereto as Exhibit E, for the exercise of Options pursuant to the Trading Plan at such times and in such numbers as UBS PaineWebber shall request.  Seller hereby authorizes UBS PaineWebber to deliver such Stock Option Exercise Notices to Issuer on Seller's behalf as necessary to effectuate such exercises and settle the sales of Stock underlying such Options under the Trading Plan.  Seller agrees to make appropriate arrangements to ensure that Stock received upon the exercise of Options shall be delivered to the Plan Account promptly after Issuer's receipt of the applicable Stock Option Exercise Form.

**UBS PaineWebber**

    (b)    UBS PaineWebber shall be relieved of its obligation to exercise Options and sell Stock as otherwise required at any time when Seller has failed to deliver Stock Options Exercise Notices or underlying shares.

4.    *Exercise*.

    (a)    On each day that sales are to be made under the Trading Plan, UBS PaineWebber shall exercise a sufficient number of Options to effect such sales in the manner specified below:

        Exercise first those Options with the lowest exercise price.

    (b)    UBS PaineWebber shall, in connection with the exercise of Options, remit to Issuer the exercise price along with such amounts as may be necessary to satisfy withholding obligations. These amounts shall be deducted from the proceeds of sale of the Stock, together with late fees, if applicable.

    (c)    UBS PaineWebber shall in no event exercise any Option if, at the time of exercise, the exercise price of the Option (plus fees and commissions) is equal to or higher than the market price of the Stock.

**UBS PaineWebber**

# EXHIBIT E

## EMPLOYEE STOCK OPTION EXERCISE NOTICE

### I.  *Instructions to Issuer*

A.  This constitutes notice under the stock option plan of Boston Communictaions Group ("Issuer") that I elect to exercise my option to purchase _____ shares of common stock (the "Stock") at an exercise price of $_____ per share.

B.  I hereby irrevocably authorize Issuer to (*check one*):

☐  (1) register the certificate(s) representing the Stock in the name of [    ] (Federal Tax ID #[        ]); and

(2) deliver the certificate(s) to UBS PaineWebber at
[        ], [          ], [        ] [            ]
(Attn:  Transfer Department) for deposit into my Plan Account,
Account #: _____.

*-OR-*

☐  deliver shares to UBS PaineWebber through the Depository Trust Company (DTC).

UBS PaineWebber DTC#: _____
Account #: _____

_____          _____
Name:  Elizabeth M. Snowden                    Date:
For The Bradford Irrevocable Trust
Title:  Trustee

### II. *Issuer's Acknowledgment of Option Exercise*

A.  Boston Communictaions Group ("Issuer") acknowledges receipt of a valid option exercise notice from The Bradford Irrevocable Trust ("Optionee") covering the exercise of _____ shares of Issuer's common stock.

B.  In consideration of UBS PaineWebber making a payment of $_____ to cover the cost of exercise (including taxes, if any) of the Optionee's option to purchase the shares from

A-1

**UBS PaineWebber**

Issuer, Issuer agrees to promptly issue and deliver the shares registered in the name of UBS PaineWebber for the Optionee's account.

C. Funds should be delivered (*check one*):

☐ via check to: _____ (company name)
☐ via wire to: _____ (bank name)
   ABA # _____ (nine digits)
   Account # _____ (company name)

D. Issuer represents that the shares will be issued pursuant to an effective registration statement and that the shares will be free of any restrictive legend.

_____          _____
Name: Leslie Apony            Date:
Title:

# UBS PaineWebber

## Rule 10b5-1 Trading Plan

The Sophie Trust ("Seller") adopts this Trading Plan dated December 16, 2002 (the "Trading Plan") with respect to the "Stock"(defined below) with UBS PaineWebber Inc. ("UBS PaineWebber") for the purpose of establishing a trading plan that complies with Rule 10b5-1(c)(1) under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

Seller and UBS PaineWebber agree as follows:

1.  *Specific Plan of Sale.* UBS PaineWebber, acting as agent, agrees to effect sales of Stock on behalf of Seller in accordance with the specific instructions set forth in Exhibit A (the "Sales Instructions"). The term "Stock" means the Class A common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") (symbol: BCGI), including Stock that Seller has the right to acquire under the outstanding stock options issued by Issuer listed on Exhibit D (the "Options"), and includes any class or series of common stock of Issuer into which the Stock is converted whether pursuant to a reclassification, reorganization, reincorporation or similar event.

2.  *Fees/Commissions.* Seller shall pay UBS PaineWebber $0.06 per share of Stock sold; with such amounts to be deducted by UBS PaineWebber from the proceeds of sales under this Trading Plan.

3.  *Seller's Representations and Warranties.* Seller represents and warrants that:

    (a)     Seller is not aware of any material nonpublic information concerning Issuer or any securities of Issuer;

    (b)     Seller is entering into this Trading Plan in good faith and not as part of a plan or scheme to evade the prohibitions of Rule 10b5-1;

    (c)     Seller has informed Issuer of this Trading Plan and has furnished Issuer with a copy, and Seller has determined that this Trading Plan is consistent with Issuer's insider trading policy;

    (d)     Seller has disclosed to UBS PaineWebber any agreements that Seller is currently party to, or within the past 60 days, has been party to, with another broker, dealer or financial institution (each, a "Financial Institution") entered into for the purpose of establishing a trading plan that complies with Rule 10b5-1;

    (e)     Seller is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent UBS PaineWebber from conducting sales in accordance with this Trading Plan;

    (f)     the Stock to be sold under this Trading Plan is owned free and clear by Seller and is not subject to any liens, security interests or other encumbrances or limitations on dispositions, other than those imposed by Rule 144 or Rule 145, if applicable;

    (g)     Seller has had an opportunity to consult with Seller's own advisors as to the legal, tax, financial and other aspects of this Trading Plan, including this Trading Plan's compliance with Rule 10b5-1 and applicable state law. Seller has not received or

© UBS PaineWebber Inc. 2002. All rights reserved

# ⚘ UBS PaineWebber

relied on any representations from UBS PaineWebber concerning this Trading Plan's compliance with Rule 10b5-1.

4.  *Agreements by Seller.* Seller acknowledges and agrees to the following provisions:

(a)  *Brokerage Account.* Seller shall open a sole-purpose UBS PaineWebber brokerage account prior to the execution of sales under this Trading Plan in the name of and for the benefit of Seller (the "Plan Account").

(b)  *Delivery of Stock.* Seller shall deliver all shares of Stock to be sold pursuant to this Trading Plan into the Plan Account prior to the commencement of any sales under this Trading Plan.

(c)  *Hedging Transactions.* While this Trading Plan is in effect, Seller shall comply with the prohibition set forth in Rule 10b5-1(c)(1)(i)(C) against entering into or altering a corresponding or hedging transaction or position with respect to the Stock.

(d)  *Notice to UBS PaineWebber.* Seller shall notify UBS PaineWebber to terminate or suspend sales, as appropriate, as soon as practicable upon the occurrence of any of the events contemplated in paragraph 7(a) or (b) or paragraph 8(c).

(e)  *Communications.* Seller shall not, directly or indirectly, communicate any material nonpublic information relating to the Stock or Issuer to any employee of the UBS PaineWebber 10b5-1 Group or any UBS PaineWebber Financial Advisor.

(f)  *Compliance with Applicable Laws and Required Exchange Act Filings.* Seller shall comply with all applicable laws, rules and regulations, and Seller shall make all filings required under Sections 13 and 16 of the Exchange Act in a timely manner.

(g)  *No Influence.* Seller does not have, and shall not attempt to exercise, any influence over how, when or whether to effect sales of Stock pursuant to this Trading Plan.

(h)  *Stock Non-Marginable.* The Stock is not marginable and may not be used by Seller as collateral for any purpose.

(i)  *Execution, Average Pricing and Pro Rata Allocation of Sales.* UBS PaineWebber may sell Stock on any national securities exchange, in the over-the-counter market, on an automated trading system or otherwise. UBS PaineWebber or one of its affiliates may make a market in the Stock and may act as principal in executing sales under the Trading Plan. To the extent that UBSPW administers other trading plans relating to Issuer's securities, UBSPW may aggregate orders for Seller with orders under other sellers' trading plans for execution in a block and allocate an average price to each seller. In the event of partial execution of block orders, UBS PaineWebber shall allocate the proceeds of all Stock actually sold on a particular day pursuant to all Rule 10b5-1 trading plans concerning Issuer's securities that UBS PaineWebber manages pro rata based on the ratio of (x) the number of shares to be sold pursuant to the order instructions of each

**UBS PaineWebber**

Trading Plan to (y) the total number of shares to be sold under all Trading Plans having the same type of order instructions.

(j) *Exclusivity*. Until this Trading Plan has been terminated, Seller shall not enter into any agreement with, give any instructions to, or adopt a plan for trading with another Financial Institution with respect to purchase or sale of the Stock or the Options for the purpose of establishing a trading plan that complies with Rule 10b5-1.

(k) *Acknowledgment of Relief from Obligation to Effect Sales*. UBS PaineWebber shall be relieved of its obligation to sell Stock as otherwise required by paragraph 1 above at any time when:

(i) UBS PaineWebber has determined that (A) it is prohibited from doing so by a legal, contractual or regulatory restriction applicable to it or its affiliates or to Seller or Seller's affiliates; or (B) a material adverse change in the financial markets, in the market activity in the Stock or in the internal systems of UBS PaineWebber or one of its affiliates, an outbreak or escalation of hostilities or other crisis or calamity has occurred (in each case, the effect of which is such as to make it, in the sole judgment of UBS PaineWebber, impracticable for UBS PaineWebber to sell Stock); or (C) a trading suspension with respect to the Stock by the Securities and Exchange Commission or the Principal U.S. Market (defined in Exhibit A) or a delisting of the Stock or a banking moratorium has occurred; if UBS PaineWebber cannot effect a sale for any of such reasons, UBS PaineWebber shall effect such sale as promptly as practical after the cessation or termination of such cause, subject to the restrictions set forth in paragraph 1 of Exhibit A;

(ii) This Trading Plan is suspended in accordance with paragraph 7 below;

(iii) This Trading Plan is terminated in accordance with paragraph 8 below;

5. *Rule 144 and Rule 145*. With respect to sales of Stock subject to Rule 144 or Rule 145, Seller and UBS PaineWebber agree to comply with the following provisions:

(a) Agreements by Seller Regarding Rule 144 and Rule 145.

(i) Seller agrees not to take, and agrees to cause any person or entity with which Seller would be required to aggregate sales of Stock pursuant to Rule 144(a)(2) or (e) not to take, any action that would cause the sales hereunder not to meet all applicable requirements of Rule 144 or Rule 145.

(ii) Seller agrees to complete, execute and deliver to UBS PaineWebber Forms 144 for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request. Seller hereby grants UBS PaineWebber a power of attorney to complete and file on behalf of Seller any required Forms 144. The remarks section of each Form 144 filed shall include a statement to the effect that the shares covered by the Form 144 are being sold pursuant to a Rule 10b5-1 trading plan dated as of the date hereof, and the representation regarding the

3

# ❋ UBS PaineWebber

seller's knowledge of material nonpublic information speaks as of that plan adoption date.

> (iii)    Seller agrees to complete, execute and deliver to UBS PaineWebber Rule 144 Seller's Representation Letters (in the form attached as Exhibit C) for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request.

(b)    <u>Agreements by UBS PaineWebber Regarding Rule 144 and Rule 145.</u>

> (i)    UBS PaineWebber agrees to conduct all sales pursuant to the Trading Plan in accordance with the manner of sale requirement of Rule 144. UBS PaineWebber shall not effect any sales that it knows would exceed the then-applicable volume limitation under Rule 144.

> (ii)    UBS PaineWebber agrees to file such Forms 144 furnished by Seller pursuant to paragraph 5(a)(ii) on behalf of Seller as required by applicable law. UBS PaineWebber shall make one Form 144 filing at the beginning of each three-month period, commencing upon the first Sale Day under the Trading Plan.

> (iii)    UBS PaineWebber agrees to submit such Rule 144 Seller's Representation Letters furnished by Seller pursuant to paragraph 5(a)(iii) on behalf of Seller as required by Issuer's transfer agent.

> (iv)    Seller shall make and shall be solely responsible for all filings required under Sections 13(d) and 16 of the Exchange Act in connection with sales of Stock pursuant to the Trading Plan, and Seller acknowledges that UBS PaineWebber shall not make any such filings and shall have no liability to Seller in connection with or related to any such filings.

6.    *Options*. Seller and UBS PaineWebber agree to the provisions regarding the exercise of Options contained in Exhibit D.

7.    *Suspension*. Sales under this Trading Plan shall be suspended as follows:

(a)    Promptly after the date on which UBS PaineWebber receives notice from Seller or Issuer of legal, contractual or regulatory restrictions applicable to Seller or Seller's affiliates that would prevent UBS PaineWebber from selling Stock under this Trading Plan (such notice merely stating that there is a restriction applicable to Seller without specifying the reasons for the restriction), including a restriction based on Seller's awareness of material nonpublic information in connection with a tender offer for Issuer's securities (transactions on the basis of which Rule 14e-3 of the Exchange Act could be violated).

(b)    In the event of a Qualifying Securities Offering, promptly after the date on which UBS PaineWebber receives notice from Issuer or Seller of the Suspension Date until UBS PaineWebber receives notice from Issuer or Seller of the Resumption Date; *provided, however*, that (i) Seller certifies that Seller has no control over the Suspension Date or the Resumption Date, and (ii) if Seller is unable to make such certification then this paragraph shall result in a termination of the Trading Plan, rather than suspension.

❊ UBS PaineWebber

"Qualifying Securities Offering" means any offering of securities of Issuer for cash in which the lead underwriter, lead manager, initial purchaser, placement agent or other entity performing a similar function (each, an "Underwriter") requires Seller to agree to restrict Seller's ability to effect Sales pursuant to this Trading Plan.

"Suspension Date" means the date on which a preliminary prospectus, offering memorandum, offering circular or other disclosure document (each, a "Preliminary Offering Document") is first used to market securities of Issuer by the Underwriter, or if a Preliminary Offering Document is not used, the date on which the underwriting agreement, purchase agreement, placement agent agreement or similar agreement (each, an "Underwriting Agreement") is entered into by the Underwriter and Issuer.

"Resumption Date" means the day immediately following the expiration of the time period during which Seller was restricted from effecting Sales pursuant to this Trading Plan in accordance with the Underwriting Agreement.

(c)    In the event that the UBS PaineWebber 10b5-1 Group becomes aware of material nonpublic information concerning Issuer or the Stock, UBS PaineWebber may be required by applicable law or, in its sole discretion, find it advisable, to suspend sales under this Trading Plan. In such case, UBS PaineWebber shall promptly notify Seller of the suspension of sales under this Trading Plan.

8.    _Termination_. This Trading Plan will terminate on the earliest to occur of the following (the "Plan Sales Period"):

(a)    on December 31, 2003;

(b)    promptly after the date on which UBS PaineWebber receives notice from Seller of the termination of this Trading Plan, in which case, Seller agrees to notify the Issuer promptly of such termination;

(c)    upon the reasonable determination by UBS PaineWebber, or promptly after the reasonable determination by Seller and notice to UBS PaineWebber, that this Trading Plan does not comply with Rule 10b5-1;

(d)    promptly after the date UBS PaineWebber is notified of the death of Seller;

(e)    immediately in the event that Seller fails to deliver any Stock pursuant to paragraph 4(b) or fails to satisfy the delivery requirements with respect to Options set forth in Exhibit D; or

(f)    the date that the aggregate number of shares of Stock sold pursuant to this Trading Plan reaches 20,000 shares.

9.    _Indemnification; Limitation of Liability_.

(a)    _Indemnification_.

(i)    Seller agrees to indemnify and hold harmless UBS PaineWebber and its directors, officers, employees and affiliates from and against all claims, losses, damages and liabilities (including, without limitation, any legal or

5

UBS PaineWebber

other expenses reasonably incurred in connection with defending or investigating any such action or claim) (collectively, "Losses") arising out of or attributable to (A) UBS PaineWebber's actions taken or not taken in compliance with this Trading Plan, (B) any breach by Seller of this Trading Plan (including Seller's representations and warranties hereunder), or (C) any violation by Seller of applicable laws or regulations. This indemnification shall survive termination of this Trading Plan.

(ii)    UBS PaineWebber agrees to indemnify and hold harmless Seller from and against all Losses arising out of or attributable to the gross negligence or willful misconduct of UBS PaineWebber in connection with this Trading Plan.

(b)    _Limitation of Liability_.

(i)    Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller, and Seller shall not be liable to UBS PaineWebber, for: (A) special, indirect, punitive, exemplary or consequential damages, or incidental losses or damages of any kind, even if advised of the possibility of such losses or damages or if such losses or damages could have been reasonably foreseen; or (B) any failure to perform or to cease performance or any delay in performance that results from a cause or circumstance that is beyond its reasonable control, including, but not limited to, failure of electronic or mechanical equipment, strikes, failure of common carrier or utility systems, severe weather, market disruptions or other causes commonly known as "acts of God"

(ii)    Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller for (A) the exercise of discretionary authority or discretionary control under this Trading Plan, if any, or (B) any failure to effect a sale required by paragraph 1, except for failures to effect sales as a result of the gross negligence or willful misconduct of UBS PaineWebber.

_Agreement to Arbitrate_.  Any dispute between Seller and UBS PaineWebber arising out of, relating to or in connection with this Trading Plan or any transaction relating to this Trading Plan shall be determined only by arbitration as provided in the UBS PaineWebber brokerage account agreement referred to in paragraph 4(a).

_Notices_.

(a)    All notices to UBS PaineWebber under this Trading Plan shall be provided in writing to Sean Huss UBS PaineWebber by facsimile at fax number 212-821-5536.

(b)    All notices to Seller under this Trading Plan shall be given to Edward H. Snowden by telephone at telephone number 781-904-5010, by facsimile at fax number 781-904-5602 or by certified mail to the address below:

Boston Communications Group, Inc.
100 Sylvan Rd. Suite 100
Woburn, MA 01801

6

## ❀ UBS PaineWebber

(c)  Seller hereby instructs and authorizes UBS PaineWebber to send duplicate copies of all confirmations of trades made under this Trading Plan to the Issuer at the following address:

> Leslie Apony
> Boston Communictaions Group
> 100 Sylvan Rd Suite 100
> Woburn, MA 01801

(d)  UBS PaineWebber will provide notification of all sales of Stock and exercise of Options under this Trading Plan to Seller and to Issuer by e-mail at the below addresses by 6 p.m. (ET) on the date of execution on a best efforts basis, with a final report by 12 p.m. (ET) on the following business day.  Seller and Issuer agree to notify UBS PaineWebber in writing of any changes to the contact information provided.

> esnowden@bcgi.net
> lapony@bcgi.net

12.  *Amendments and Modifications*.  This Trading Plan and the Exhibits hereto may be amended by Seller only upon the written consent of UBS PaineWebber and receipt by UBS PaineWebber of the following documents, each dated as of the date of such amendment:

(a)  a certificate signed by Seller, certifying that the representations and warranties of Seller contained in this Trading Plan are true at and as of the date of such certificate as if made at and as of such date; and

(b)  an issuer certificate completed by Issuer substantially in the form of Exhibit B.

13.  *Inconsistency with Law*.  If any provision of this Trading Plan is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation.  All other provisions of this Trading Plan will continue and remain in full force and effect.

14.  *Governing Law*.  This Trading Plan shall be governed by and construed in accordance with the internal laws of the State of New York.

15.  *Entire Agreement*.  This Trading Plan, including Exhibits, and the brokerage account agreement referred to in paragraph 4(a) above, constitute the entire agreement between the parties with respect to this Trading Plan and supercede any prior agreements or understandings with regard to this Trading Plan.

16.  *Counterparts*.  This Trading Plan may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

**⁂ UBS PaineWebber**

NOTICE: THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN PARAGRAPH 10.

IN WITNESS WHEREOF, the undersigned have signed this Trading Plan as of the date first written above.

ELIZABETH M. SNOWDEN
For The Sophie Trust

_Elizabeth M Snowden_     12/12/02
Name: Elizabeth M. Snowden     Date:
Title: Co-Trustee

JANE G. SNOWDEN
For The Sophie, Trust

_Jane G. Snowden_     12/15/02
Name: Jane G. Snowden     Date:
Title: Co-Trustee

UBS PAINE WEBBER INCORPORATED

_____     _____
Name: Timothy Kelly     Date:
Title: Senior Vice President

_____     _____
Name: Larry Gore     Date:
Title: Managing Director

8

 UBS PaineWebber

## EXHIBIT A

**This Exhibit A may not be amended except in accordance with the Trading Plan.**

### SPECIFIC INSTRUCTIONS

1.  UBS PaineWebber shall enter a sell order for the specified Sale Amount (as defined below) for the account of Seller on each specified Sale Day (as defined below) at the specified Sale Price (as defined below), subject to the following restrictions:

    In no event shall UBS PaineWebber sell any shares of Stock pursuant to the Trading Plan prior to January 15, 2003.

2.  The "Sale Day", "Sale Amount", and "Sale Price", are specified below:

    Each month, including January 2003, enter an order to sell 900 shares at a limit price of $11. In the event the Issuer's stock is trading at or above $13.00 during any calendar month, enter an order to sell an additional 400 shares. In the event the Issuer's stock is trading at or above $15.00 during any calendar month, enter an order to sell an additional 400 shares. In the event the Issuer's stock is trading at or above $17.00 during any calendar month, enter an order to sell an additional 800 shares. In the event the Issuer's stock is trading at or above $20.00 during any calendar month, enter an order to sell an additional 800 shares.

3.  The limit order entered pursuant to this Trading Plan will be entered as a GTC order (good until cancelled), *provided, however,* that no GTC orders will last for more than 365 days, at which time any GTC order that has not been filled will be cancelled and reentered.

4.  The Sale Amount and the Sale Price shall be adjusted automatically on a proportionate basis to take into account any stock split, reverse stock split or stock dividend with respect to the Stock or any change in capitalization with respect to Issuer that occurs while the Trading Plan is in effect.

5.  A "Trading Day" is any day during the Plan Sales Period that the NASDAQ (the "Principal U.S. Market") is open for business and the Stock trades regular way on the Principal U.S. market; provided, however, that a "Trading Day" shall mean only that day's regular trading session of the Principal U.S. Market and shall not include any extended-hours or after-hours trading sessions that the Principal U.S. Market may allow.

EXHIBIT A (Cont'd.)

_Elizabeth M Snowden_
Name:  Elizabeth M. Snowden
Title:  Co-Trustee  for The Sophie Trust .

_12/12/02_
Date:

_Jane G Snowden_
Name:  Jane G. Snowden
Title:  Co-Trustee  For The Sophie Trust

_12/15/02_
Date:

**UBS** PaineWebber

## EXHIBIT B

### ISSUER CERTIFICATE

1. Boston Communictaions Group's Insider Trading Policy is consistent with and allows for the use of Rule 10b5-1 Trading Plans, and we have read the plan dated December 16, 2002 to be entered into by The Sophie Trust ("Seller") and do not object to it.

2. Issuer acknowledges that Seller has authorized UBS PaineWebber to serve as Seller's agent and attorney-in-fact to exercise certain Options to purchase the Stock from time to time pursuant to the Trading Plan. Issuer agrees to accept, acknowledge and effect the exercise of such Options by UBS PaineWebber and the delivery of the underlying Stock to UBS PaineWebber (free of any legend or statement restricting its transferability to a buyer) upon receipt of a completed Stock Option Exercise Form in the form attached to the Trading Plan as Exhibit E.

Name: Alan J. Bouffard
Title:  Vice President & General Counsel

12|16|02
Date

B-1

 **UBS PaineWebber**

## EXHIBIT C

**This Exhibit C may not be amended except in accordance with the Trading Plan**

### RULE 144 LETTER

UBS PaineWebber Incorporated
Attn: Sean Huss
    299 Park Ave, 26th floor
    New York, NY 10171

Boston Communictaions Group
General Counsel
100 Sylvan Rd Suite 100
Woburn, MA 1801

Ladies and Gentlemen:

In conjunction with my order to sell shares of common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") ("the Stock"), through you as broker or dealer for my account pursuant to the Rule 10b5-1 Trading Plan dated December 16, 2002 (the "Trading Plan"), under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), I advise you as follows:

1. During the next thirteen months following the date of this letter, I intend to sell Stock pursuant to Rule 10b5-1. I intend for UBS PaineWebber to adhere to the Trading Plan without alteration or modification during the above-stated period.

2. I am an affiliate of the Issuer.

3. The number of shares of Stock, which I have ordered you to sell as broker or dealer for my account, will conform to the Sales Instructions in Exhibit A of the Trading Plan.

4. I have verified that Issuer has been subject to the Securities and Exchange Commission (the "SEC") information reporting requirements pursuant to the Exchange Act for at least the preceding 90 days and has filed all required periodic reports during the 12 months preceding the first sale or during any shorter period that the SEC may require. As of the date of the Trading Plan, I did not know of any material nonpublic information concerning Issuer.

5. [Intentionally Omitted]

6. a) I have not solicited or arranged for the solicitation of any orders to buy in anticipation or in connection with my proposed sales.

    b) I have made no payments to any other person in connection with your execution of my order.

    c) I have not agreed to act in concert with any other person in connection with my proposed sales.

7. It is my bona fide intention to sell the Stock as expressly prescribed in the Trading Plan pursuant to the Plan.

8. I understand that the payment of the proceeds of the sales will be delayed until the shares of Stock are transferred and delivered free of restrictions to UBS PaineWebber.

# ❖ UBS PaineWebber

9. All capitalized terms used in this Rule 144 Letter shall have the meanings ascribed to them in the Trading Plan.

The undersigned agrees to notify UBS PaineWebber immediately if any of the above representations become inaccurate before the sales are completed.

Very truly yours,

_Elizabeth M Snowden_
Signature of Seller

Elizabeth M. Snowden *for The Sophie Trust*
Print Name

_380 Inca Pkwy Boulder CO 80303_    _12/12/02_
Seller's Address                        Date:

_Jane G. Snowden_
Signature of Seller

Jane G. Snowden *for The Sophie Trust*
Print Name

_15 Gregory St. Marblehead, MA 01945_    _12/15/02_
Seller's Address                            Date:

# UBS PaineWebber

## EXHIBIT D

## STOCK OPTION PROVISIONS

**This Exhibit D may not be amended except in accordance with the Trading Plan.**

1. *Options To Be Exercised Under the Trading Plan.*

| Number of Options | Designation Number / Grant Date | Strike Price | Expiration Date |
|---|---|---|---|
| 20,000 | 380-98A/NQ  2-10-98 | $7.0620 | 2-10-2008 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

2. *Seller's Representations and Warranties.*

   (a) Seller represents and warrants that the Options listed above are held free and clear without liens, security interests or other encumbrances or limitations on exercise of the vested portion thereof, other than the requirement that Seller comply with the exercise provisions of such Options; and

   (b) The shares of Stock acquired through exercise of the Options shall be held free and clear by Seller without liens, security interests or other encumbrances or limitations on disposition

3. *Delivery.*

   (a) Seller agrees to complete, execute and deliver to UBS PaineWebber Stock Option Exercise Notices, in the form attached hereto as Exhibit E, for the exercise of Options pursuant to the Trading Plan at such times and in such numbers as UBS PaineWebber shall request. Seller hereby authorizes UBS PaineWebber to deliver such Stock Option Exercise Notices to Issuer on Seller's behalf as necessary to effectuate such exercises and settle the sales of Stock underlying such Options under the Trading Plan. Seller agrees to make appropriate arrangements to ensure that Stock received upon the exercise of Options shall be delivered to the Plan Account promptly after Issuer's receipt of the applicable Stock Option Exercise Form.

# ✻ UBS PaineWebber

    (b)    UBS PaineWebber shall be relieved of its obligation to exercise Options and sell Stock as otherwise required at any time when Seller has failed to deliver Stock Options Exercise Notices or underlying shares.

4.    *Exercise.*

    (a)    On each day that sales are to be made under the Trading Plan, UBS PaineWebber shall exercise a sufficient number of Options to effect such sales in the manner specified below:

        Exercise first those Options with the lowest exercise price.

    (b)    UBS PaineWebber shall, in connection with the exercise of Options, remit to Issuer the exercise price along with such amounts as may be necessary to satisfy withholding obligations. These amounts shall be deducted from the proceeds of sale of the Stock, together with late fees, if applicable.

    (c)    UBS PaineWebber shall in no event exercise any Option if, at the time of exercise, the exercise price of the Option (plus fees and commissions) is equal to or higher than the market price of the Stock.

# ❈ UBS PaineWebber

## EXHIBIT E

## EMPLOYEE STOCK OPTION EXERCISE NOTICE

### I.  *Instructions to Issuer*

A.  This constitutes notice under the stock option plan of Boston Communictaions Group ("Issuer") that I elect to exercise my option to purchase _____ shares of common stock (the "Stock") at an exercise price of $_____ per share.

B.  I hereby irrevocably authorize Issuer to (*check one*):

☐ (1) register the certificate(s) representing the Stock in the name of [   ] (Federal Tax ID #[       ]); and

(2) deliver the certificate(s) to UBS PaineWebber at
[            ], [            ], [            ] [            ]
(Attn:  Transfer Department) for deposit into my Plan Account, Account #: _____.

*-OR-*

☐ deliver shares to UBS PaineWebber through the Depository Trust Company (DTC).

UBS PaineWebber DTC#: _____
Account #: _____

_____     _____
Name: Jane G. Snowden               Date:
For The Sophie Trust
Title:  co-Trustee

## II.  *Issuer's Acknowledgment of Option Exercise*

A.  Boston Communictaions Group("Issuer") acknowledges receipt of a valid option exercise notice from The Sophie Trust ("Optionee") covering the exercise of _____ shares of Issuer's common stock.

B.  In consideration of UBS PaineWebber making a payment of $_____ to cover the cost of exercise (including taxes, if any) of the Optionee's option to purchase the shares from

A-1

**❈ UBS PaineWebber**

Issuer, Issuer agrees to promptly issue and deliver the shares registered in the name of UBS PaineWebber for the Optionee's account.

C.  Funds should be delivered (*check one*):

    ☐  via check to:      _____    (company name)
    ☐  via wire to:       _____    (bank name)
        ABA #          _____    (nine digits)
        Account #    _____    (company name)

D.  Issuer represents that the shares will be issued pursuant to an effective registration statement and that the shares will be free of any restrictive legend.

_____      _____

Name: Leslie Apony          Date:
Title:

**❖ UBS PaineWebber**

# Rule 10b5-1 Trading Plan

Edward H. Snowden ("Seller") adopts this Trading Plan dated December 16, 2002 (the "Trading Plan") with respect to the "Stock"(defined below) with UBS PaineWebber Inc. ("UBS PaineWebber") for the purpose of establishing a trading plan that complies with Rule 10b5-1(c)(1) under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

Seller and UBS PaineWebber agree as follows:

1.  *Specific Plan of Sale*. UBS PaineWebber, acting as agent, agrees to effect sales of Stock on behalf of Seller in accordance with the specific instructions set forth in Exhibit A (the "Sales Instructions"). The term "Stock" means the Class A common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") (symbol: BCGI), including Stock that Seller has the right to acquire under the outstanding stock options issued by Issuer listed on Exhibit D (the "Options"), and includes any class or series of common stock of Issuer into which the Stock is converted whether pursuant to a reclassification, reorganization, reincorporation or similar event.

2.  *Fees/Commissions*. Seller shall pay UBS PaineWebber $0.06 per share of Stock sold; with such amounts to be deducted by UBS PaineWebber from the proceeds of sales under this Trading Plan.

3.  *Seller's Representations and Warranties*. Seller represents and warrants that:

    (a)  Seller is not aware of any material nonpublic information concerning Issuer or any securities of Issuer;

    (b)  Seller is entering into this Trading Plan in good faith and not as part of a plan or scheme to evade the prohibitions of Rule 10b5-1;

    (c)  Seller has informed Issuer of this Trading Plan and has furnished Issuer with a copy, and Seller has determined that this Trading Plan is consistent with Issuer's insider trading policy;

    (d)  Seller has disclosed to UBS PaineWebber any agreements that Seller is currently party to, or within the past 60 days, has been party to, with another broker, dealer or financial institution (each, a "Financial Institution") entered into for the purpose of establishing a trading plan that complies with Rule 10b5-1;

    (e)  Seller is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent UBS PaineWebber from conducting sales in accordance with this Trading Plan;

    (f)  the Stock to be sold under this Trading Plan is owned free and clear by Seller and is not subject to any liens, security interests or other encumbrances or limitations on dispositions, other than those imposed by Rule 144 or Rule 145, if applicable;

    (g)  Seller has had an opportunity to consult with Seller's own advisors as to the legal, tax, financial and other aspects of this Trading Plan, including this Trading Plan's compliance with Rule 10b5-1 and applicable state law. Seller has not received or

© UBS PaineWebber Inc. 2002. All rights reserved

## ✣ UBS PaineWebber

relied on any representations from UBS PaineWebber concerning this Trading Plan's compliance with Rule 10b5-1.

4.  *Agreements by Seller.*  Seller acknowledges and agrees to the following provisions:

(a)  *Brokerage Account.*  Seller shall open a sole-purpose UBS PaineWebber brokerage account prior to the execution of sales under this Trading Plan in the name of and for the benefit of Seller (the "Plan Account").

(b)  *Delivery of Stock.*  Seller shall deliver all shares of Stock to be sold pursuant to this Trading Plan into the Plan Account prior to the commencement of any sales under this Trading Plan.

(c)  *Hedging Transactions.*  While this Trading Plan is in effect, Seller shall comply with the prohibition set forth in Rule 10b5-1(c)(1)(i)(C) against entering into or altering a corresponding or hedging transaction or position with respect to the Stock.

(d)  *Notice to UBS PaineWebber.*  Seller shall notify UBS PaineWebber to terminate or suspend sales, as appropriate, as soon as practicable upon the occurrence of any of the events contemplated in paragraph 7(a) or (b) or paragraph 8(c).

(e)  *Communications.*  Seller shall not, directly or indirectly, communicate any material nonpublic information relating to the Stock or Issuer to any employee of the UBS PaineWebber 10b5-1 Group or any UBS PaineWebber Financial Advisor.

(f)  *Compliance with Applicable Laws and Required Exchange Act Filings.*  Seller shall comply with all applicable laws. rules and regulations, and Seller shall make all filings required under Sections 13 and 16 of the Exchange Act in a timely manner.

(g)  *No Influence.*  Seller does not have, and shall not attempt to exercise, any influence over how, when or whether to effect sales of Stock pursuant to this Trading Plan.

(h)  *Stock Non-Marginable.*  The Stock is not marginable and may not be used by Seller as collateral for any purpose.

(i)  *Execution, Average Pricing and Pro Rata Allocation of Sales.*  UBS PaineWebber may sell Stock on any national securities exchange, in the over-the-counter market, on an automated trading system or otherwise. UBS PaineWebber or one of its affiliates may make a market in the Stock and may act as principal in executing sales under the Trading Plan. To the extent that UBSPW administers other trading plans relating to Issuer's securities, UBSPW may aggregate orders for Seller with orders under other sellers' trading plans for execution in a block and allocate an average price to each seller. In the event of partial execution of block orders, UBS PaineWebber shall allocate the proceeds of all Stock actually sold on a particular day pursuant to all Rule 10b5-1 trading plans concerning Issuer's securities that UBS PaineWebber manages pro rata based on the ratio of (x) the number of shares to be sold pursuant to the order instructions of each

2

**⚜ UBS PaineWebber**

Trading Plan to (y) the total number of shares to be sold under all Trading Plans having the same type of order instructions.

(j)     *Exclusivity*. Until this Trading Plan has been terminated, Seller shall not enter into any agreement with, give any instructions to, or adopt a plan for trading with another Financial Institution with respect to purchase or sale of the Stock or the Options for the purpose of establishing a trading plan that complies with Rule 10b5-1.

(k)     *Acknowledgment of Relief from Obligation to Effect Sales*. UBS PaineWebber shall be relieved of its obligation to sell Stock as otherwise required by paragraph 1 above at any time when:

    (i)     UBS PaineWebber has determined that (A) it is prohibited from doing so by a legal, contractual or regulatory restriction applicable to it or its affiliates or to Seller or Seller's affiliates; or (B) a material adverse change in the financial markets, in the market activity in the Stock or in the internal systems of UBS PaineWebber or one of its affiliates, an outbreak or escalation of hostilities or other crisis or calamity has occurred (in each case, the effect of which is such as to make it, in the sole judgment of UBS PaineWebber, impracticable for UBS PaineWebber to sell Stock); or (C) a trading suspension with respect to the Stock by the Securities and Exchange Commission or the Principal U.S. Market (defined in Exhibit A) or a delisting of the Stock or a banking moratorium has occurred; if UBS PaineWebber cannot effect a sale for any of such reasons, UBS PaineWebber shall effect such sale as promptly as practical after the cessation or termination of such cause, subject to the restrictions set forth in paragraph 1 of Exhibit A;

    (ii)     This Trading Plan is suspended in accordance with paragraph 7 below;

    (iii)     This Trading Plan is terminated in accordance with paragraph 8 below;

5.     *Rule 144 and Rule 145*. With respect to sales of Stock subject to Rule 144 or Rule 145, Seller and UBS PaineWebber agree to comply with the following provisions:

(a)     Agreements by Seller Regarding Rule 144 and Rule 145.

    (i)     Seller agrees not to take, and agrees to cause any person or entity with which Seller would be required to aggregate sales of Stock pursuant to Rule 144(a)(2) or (e) not to take, any action that would cause the sales hereunder not to meet all applicable requirements of Rule 144 or Rule 145.

    (ii)     Seller agrees to complete, execute and deliver to UBS PaineWebber Forms 144 for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request. Seller hereby grants UBS PaineWebber a power of attorney to complete and file on behalf of Seller any required Forms 144. The remarks section of each Form 144 filed shall include a statement to the effect that the shares covered by the Form 144 are being sold pursuant to a Rule 10b5-1 trading plan dated as of the date hereof, and the representation regarding the

3

## UBS PaineWebber

seller's knowledge of material nonpublic information speaks as of that plan adoption date.

    (iii)    Seller agrees to complete, execute and deliver to UBS PaineWebber Rule 144 Seller's Representation Letters (in the form attached as Exhibit C) for sales to be effected under the Trading Plan at such times and in such numbers as UBS PaineWebber shall request.

    (b)    <u>Agreements by UBS PaineWebber Regarding Rule 144 and Rule 145</u>.

    (i)    UBS PaineWebber agrees to conduct all sales pursuant to the Trading Plan in accordance with the manner of sale requirement of Rule 144. UBS PaineWebber shall not effect any sales that it knows would exceed the then-applicable volume limitation under Rule 144.

    (ii)    UBS PaineWebber agrees to file such Forms 144 furnished by Seller pursuant to paragraph 5(a)(ii) on behalf of Seller as required by applicable law. UBS PaineWebber shall make one Form 144 filing at the beginning of each three-month period, commencing upon the first Sale Day under the Trading Plan.

    (iii)    UBS PaineWebber agrees to submit such Rule 144 Seller's Representation Letters furnished by Seller pursuant to paragraph 5(a)(iii) on behalf of Seller as required by Issuer's transfer agent.

    (iv)    Seller shall make and shall be solely responsible for all filings required under Sections 13(d) and 16 of the Exchange Act in connection with sales of Stock pursuant to the Trading Plan, and Seller acknowledges that UBS PaineWebber shall not make any such filings and shall have no liability to Seller in connection with or related to any such filings.

6.    *Options*. Seller and UBS PaineWebber agree to the provisions regarding the exercise of Options contained in Exhibit D.

7.    *Suspension*. Sales under this Trading Plan shall be suspended as follows:

    (a)    Promptly after the date on which UBS PaineWebber receives notice from Seller or Issuer of legal, contractual or regulatory restrictions applicable to Seller or Seller's affiliates that would prevent UBS PaineWebber from selling Stock under this Trading Plan (such notice merely stating that there is a restriction applicable to Seller without specifying the reasons for the restriction), including a restriction based on Seller's awareness of material nonpublic information in connection with a tender offer for Issuer's securities (transactions on the basis of which Rule 14e-3 of the Exchange Act could be violated).

    (b)    In the event of a Qualifying Securities Offering, promptly after the date on which UBS PaineWebber receives notice from Issuer or Seller of the Suspension Date until UBS PaineWebber receives notice from Issuer or Seller of the Resumption Date; *provided, however*, that (i) Seller certifies that Seller has no control over the Suspension Date or the Resumption Date, and (ii) if Seller is unable to make such certification then this paragraph shall result in a termination of the Trading Plan, rather than suspension.

# ❄ UBS PaineWebber

"Qualifying Securities Offering" means any offering of securities of Issuer for cash in which the lead underwriter, lead manager, initial purchaser, placement agent or other entity performing a similar function (each, an "Underwriter") requires Seller to agree to restrict Seller's ability to effect Sales pursuant to this Trading Plan.

"Suspension Date" means the date on which a preliminary prospectus, offering memorandum, offering circular or other disclosure document (each, a "Preliminary Offering Document") is first used to market securities of Issuer by the Underwriter, or if a Preliminary Offering Document is not used, the date on which the underwriting agreement, purchase agreement, placement agent agreement or similar agreement (each, an "Underwriting Agreement") is entered into by the Underwriter and Issuer.

"Resumption Date" means the day immediately following the expiration of the time period during which Seller was restricted from effecting Sales pursuant to this Trading Plan in accordance with the Underwriting Agreement.

(c)    In the event that the UBS PaineWebber 10b5-1 Group becomes aware of material nonpublic information concerning Issuer or the Stock, UBS PaineWebber may be required by applicable law or, in its sole discretion, find it advisable, to suspend sales under this Trading Plan. In such case, UBS PaineWebber shall promptly notify Seller of the suspension of sales under this Trading Plan.

8.    _Termination_. This Trading Plan will terminate on the earliest to occur of the following (the "Plan Sales Period"):

(a)    on December 31, 2003;

(b)    promptly after the date on which UBS PaineWebber receives notice from Seller of the termination of this Trading Plan, in which case, Seller agrees to notify the Issuer promptly of such termination;

(c)    upon the reasonable determination by UBS PaineWebber, or promptly after the reasonable determination by Seller and notice to UBS PaineWebber, that this Trading Plan does not comply with Rule 10b5-1;

(d)    promptly after the date UBS PaineWebber is notified of the death of Seller;

(e)    immediately in the event that Seller fails to deliver any Stock pursuant to paragraph 4(b) or fails to satisfy the delivery requirements with respect to Options set forth in Exhibit D; or

(f)    the date that the aggregate number of shares of Stock sold pursuant to this Trading Plan reaches 52,800 shares.

9.    _Indemnification; Limitation of Liability_.

(a)    _Indemnification_.

(i)    Seller agrees to indemnify and hold harmless UBS PaineWebber and its directors, officers, employees and affiliates from and against all claims, losses, damages and liabilities (including, without limitation, any legal or

BS PaineWebber

other expenses reasonably incurred in connection with defending or investigating any such action or claim) (collectively, "Losses") arising out of or attributable to (A) UBS PaineWebber's actions taken or not taken in compliance with this Trading Plan, (B) any breach by Seller of this Trading Plan (including Seller's representations and warranties hereunder), or (C) any violation by Seller of applicable laws or regulations. This indemnification shall survive termination of this Trading Plan.

(ii)    UBS PaineWebber agrees to indemnify and hold harmless Seller from and against all Losses arising out of or attributable to the gross negligence or willful misconduct of UBS PaineWebber in connection with this Trading Plan.

(b)    _Limitation of Liability_.

(i)    Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller, and Seller shall not be liable to UBS PaineWebber, for: (A) special, indirect, punitive, exemplary or consequential damages, or incidental losses or damages of any kind, even if advised of the possibility of such losses or damages or if such losses or damages could have been reasonably foreseen; or (B) any failure to perform or to cease performance or any delay in performance that results from a cause or circumstance that is beyond its reasonable control, including, but not limited to, failure of electronic or mechanical equipment, strikes, failure of common carrier or utility systems, severe weather, market disruptions or other causes commonly known as "acts of God"

(ii)    Notwithstanding any other provision hereof, UBS PaineWebber shall not be liable to Seller for (A) the exercise of discretionary authority or discretionary control under this Trading Plan, if any, or (B) any failure to effect a sale required by paragraph 1, except for failures to effect sales as a result of the gross negligence or willful misconduct of UBS PaineWebber.

10.    _Agreement to Arbitrate_.  Any dispute between Seller and UBS PaineWebber arising out of, relating to or in connection with this Trading Plan or any transaction relating to this Trading Plan shall be determined only by arbitration as provided in the UBS PaineWebber brokerage account agreement referred to in paragraph 4(a).

11.    _Notices_.

(a)    All notices to UBS PaineWebber under this Trading Plan shall be provided in writing to Sean Huss UBS PaineWebber by facsimile at fax number 212-821-5536.

(b)    All notices to Seller under this Trading Plan shall be given to Edward H. Snowden by telephone at telephone number 781-904-5010, by facsimile at fax number 781-904-5602 or by certified mail to the address below:

> Boston Communications Group, Inc.
> 100 Sylvan Rd. Suite 100
> Woburn, MA 01801

6

## UBS PaineWebber

(c)    Seller hereby instructs and authorizes UBS PaineWebber to send duplicate copies of all confirmations of trades made under this Trading Plan to the Issuer at the following address:

> Leslie Apony
> Boston Communictaions Group
> 100 Sylvan Rd Suite 100
> Woburn, MA 01801

(d)    UBS PaineWebber will provide notification of all sales of Stock and exercise of Options under this Trading Plan to Seller and to Issuer by e-mail at the below addresses by 6 p.m. (ET) on the date of execution on a best efforts basis, with a final report by 12 p.m. (ET) on the following business day. Seller and Issuer agree to notify UBS PaineWebber in writing of any changes to the contact information provided.

> esnowden@bcgi.net
> lapony@bcgi.net

12.    *Amendments and Modifications*. This Trading Plan and the Exhibits hereto may be amended by Seller only upon the written consent of UBS PaineWebber and receipt by UBS PaineWebber of the following documents, each dated as of the date of such amendment:

(a)    a certificate signed by Seller, certifying that the representations and warranties of Seller contained in this Trading Plan are true at and as of the date of such certificate as if made at and as of such date; and

(b)    an issuer certificate completed by Issuer substantially in the form of Exhibit B.

13.    *Inconsistency with Law*. If any provision of this Trading Plan is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation. All other provisions of this Trading Plan will continue and remain in full force and effect.

14.    *Governing Law*. This Trading Plan shall be governed by and construed in accordance with the internal laws of the State of New York.

15.    *Entire Agreement*. This Trading Plan, including Exhibits, and the brokerage account agreement referred to in paragraph 4(a) above, constitute the entire agreement between the parties with respect to this Trading Plan and supercede any prior agreements or understandings with regard to this Trading Plan.

16.    *Counterparts*. This Trading Plan may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

 UBS PaineWebber

NOTICE:  THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN PARAGRAPH 10.

IN WITNESS WHEREOF, the undersigned have signed this Trading Plan as of the date first written above.

EDWARD H. SNOWDEN

_____
Name: Edward H. Snowden
Title:   CEO & President

_____
12-16-02
Date:

UBS PAINEWEBBER INCORPORATED

_____
Name: Timothy Kelly
Title:   Senior Vice President

_____
Date

_____
Name: Larry Gore
Title:   Managing Director

_____
Date

8

**UBS PaineWebber**

## EXHIBIT A

This Exhibit A may not be amended except in accordance with the Trading Plan.

### SPECIFIC INSTRUCTIONS

1.  UBS PaineWebber shall enter a sell order for the specified Sale Amount (as defined below) for the account of Seller on each specified Sale Day (as defined below) at the specified Sale Price (as defined below), subject to the following restrictions:

    In no event shall UBS PaineWebber sell any shares of Stock pursuant to the Trading Plan prior to January 15, 2003.

2.  The "Sale Day", "Sale Amount", and "Sale Price", are specified below:

    Each month, including January 2003, enter an order to sell 2,200 shares at a limit price of $11. In the event the Issuer's stock is trading at or above $13.00 during any calendar month, enter an order to sell an additional 1,100 shares. In the event the Issuer's stock is trading at or above $15.00 during any calendar month, enter an order to sell an additional 1,100 shares. In the event the Issuer's stock is trading at or above $17.00 during any calendar month, enter an order to sell an additional 2,200 shares. In the event the Issuer's stock is trading at or above $20.00 during any calendar month, enter an order to sell an additional 2,200 shares.

3.  The limit order entered pursuant to this Trading Plan will be entered as a GTC order (good until cancelled), *provided, however,* that no GTC orders will last for more than 365 days, at which time any GTC order that has not been filled will be cancelled and reentered.

4.  The Sale Amount and the Sale Price shall be adjusted automatically on a proportionate basis to take into account any stock split, reverse stock split or stock dividend with respect to the Stock or any change in capitalization with respect to Issuer that occurs while the Trading Plan is in effect.

5.  A "Trading Day" is any day during the Plan Sales Period that the NASDAQ (the "Principal U.S. Market") is open for business and the Stock trades regular way on the Principal U.S. market; provided, however, that a "Trading Day" shall mean only that day's regular trading session of the Principal U.S. Market and shall not include any extended-hours or after-hours trading sessions that the Principal U.S. Market may allow.


Name: Edward H. Snowden            Date: 12-16-02
Title:   CEO & President

A-1

**❀ UBS PaineWebber**

## EXHIBIT B

### ISSUER CERTIFICATE

1. Boston Communictaions Group's Insider Trading Policy is consistent with and allows for the use of Rule 10b5-1 Trading Plans, and we have read the plan dated December 16, 2002 to be entered into by Edward H. Snowden ("Seller") and do not object to it.

2. Issuer acknowledges that Seller has authorized UBS PaineWebber to serve as Seller's agent and attorney-in-fact to exercise certain Options to purchase the Stock from time to time pursuant to the Trading Plan. Issuer agrees to accept, acknowledge and effect the exercise of such Options by UBS PaineWebber and the delivery of the underlying Stock to UBS PaineWebber (free of any legend or statement restricting its transferability to a buyer) upon receipt of a completed Stock Option Exercise Form in the form attached to the Trading Plan as Exhibit E.

_____
Name: Alan J. Bouffard
Title:  Vice President & General Counsel

12/16/02
Date

**�djk UBS PaineWebber**

## EXHIBIT C

**This Exhibit C may not be amended except in accordance with the Trading Plan**

### RULE 144 LETTER

UBS PaineWebber Incorporated           Boston Communictaions Group
Attn: Sean Huss                        General Counsel
    299 Park Ave, 26th floor          100 Sylvan Rd Suite 100
    New York, NY 10171                 Woburn, MA 1801

Ladies and Gentlemen:

In conjunction with my order to sell shares of common stock, par value $0.01 per share, of Boston Communictaions Group ("Issuer") ("the Stock"), through you as broker or dealer for my account pursuant to the Rule 10b5-1 Trading Plan dated December 16, 2002 (the "Trading Plan"), under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), I advise you as follows:

1.  During the next thirteen months following the date of this letter, I intend to sell Stock pursuant to Rule 10b5-1. I intend for UBS PaineWebber to adhere to the Trading Plan without alteration or modification during the above-stated period.

2.  I am an affiliate of the Issuer.

3.  The number of shares of Stock, which I have ordered you to sell as broker or dealer for my account, will conform to the Sales Instructions in Exhibit A of the Trading Plan.

4.  I have verified that Issuer has been subject to the Securities and Exchange Commission (the "SEC") information reporting requirements pursuant to the Exchange Act for at least the preceding 90 days and has filed all required periodic reports during the 12 months preceding the first sale or during any shorter period that the SEC may require. As of the date of the Trading Plan, I did not know of any material nonpublic information concerning Issuer.

5.  [Intentionally Omitted]

6.  a) I have not solicited or arranged for the solicitation of any orders to buy in anticipation or in connection with my proposed sales.

    b) I have made no payments to any other person in connection with your execution of my order.

    c) I have not agreed to act in concert with any other person in connection with my proposed sales.

7.  It is my bona fide intention to sell the Stock as expressly prescribed in the Trading Plan pursuant to the Plan.

8.  I understand that the payment of the proceeds of the sales will be delayed until the shares of Stock are transferred and delivered free of restrictions to UBS PaineWebber.

; PaineWebber

All capitalized terms used in this Rule 144 Letter shall have the meanings ascribed to them in
he Trading Plan.

undersigned agrees to notify UBS PaineWebber immediately if any of the above
esentations become inaccurate before the sales are completed.

, truly yours,

_____          Edward H. Snowden
ature of the Seller                Print Name

Sylvan Rd. Suite 100 Woburn, MA 1801          _12-16-02_
er's Address                       Date:



## EXHIBIT D

### STOCK OPTION PROVISIONS

**This Exhibit D may not be amended except in accordance with the Trading Plan.**

1.  *Options To Be Exercised Under the Trading Plan.*

| Number of Options | Designation Number / Grant Date | Strike Price | Expiration Date |
|---|---|---|---|
| 52,800 | 380-98A/NQ 2/10/98 | $7,0620 | 2/10/2008 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

2.  *Seller's Representations and Warranties.*

    (a)  Seller represents and warrants that the Options listed above are held free and clear without liens, security interests or other encumbrances or limitations on exercise of the vested portion thereof, other than the requirement that Seller comply with the exercise provisions of such Options; and

    (b)  The shares of Stock acquired through exercise of the Options shall be held free and clear by Seller without liens, security interests or other encumbrances or limitations on disposition

3.  *Delivery.*

    (a)  Seller agrees to complete, execute and deliver to UBS PaineWebber Stock Option Exercise Notices, in the form attached hereto as Exhibit E, for the exercise of Options pursuant to the Trading Plan at such times and in such numbers as UBS PaineWebber shall request. Seller hereby authorizes UBS PaineWebber to deliver such Stock Option Exercise Notices to Issuer on Seller's behalf as necessary to effectuate such exercises and settle the sales of Stock underlying such Options under the Trading Plan. Seller agrees to make appropriate arrangements to ensure that Stock received upon the exercise of Options shall be delivered to the Plan Account promptly after Issuer's receipt of the applicable Stock Option Exercise Form.

UBS PaineWebber

     (b)     UBS PaineWebber shall be relieved of its obligation to exercise Options and sell Stock as otherwise required at any time when Seller has failed to deliver Stock Options Exercise Notices or underlying shares.

4.     *Exercise*.

     (a)     On each day that sales are to be made under the Trading Plan, UBS PaineWebber shall exercise a sufficient number of Options to effect such sales in the manner specified below:

          Exercise first those Options with the lowest exercise price.

     (b)     UBS PaineWebber shall, in connection with the exercise of Options, remit to Issuer the exercise price along with such amounts as may be necessary to satisfy withholding obligations. These amounts shall be deducted from the proceeds of sale of the Stock, together with late fees, if applicable.

     (c)     UBS PaineWebber shall in no event exercise any Option if, at the time of exercise, the exercise price of the Option (plus fees and commissions) is equal to or higher than the market price of the Stock.

�֍ UBS PaineWebber

EXHIBIT E

EMPLOYEE STOCK OPTION EXERCISE NOTICE

I.  *Instructions to Issuer*

A. This constitutes notice under the stock option plan of Boston Communictaions Group ("Issuer") that I elect to exercise my option to purchase _____ shares of common stock (the "Stock") at an exercise price of $_____ per share.

B. I hereby irrevocably authorize Issuer to (*check one*):

☐ (1) register the certificate(s) representing the Stock in the name of [   ] (Federal Tax ID #[       ]); and

(2) deliver the certificate(s) to UBS PaineWebber at
[          ], [          ], [          ] [          ]
(Attn:  Transfer Department) for deposit into my Plan Account, Account #: _____.

*-OR-*

☐ deliver shares to UBS PaineWebber through the Depository Trust Company (DTC).

UBS PaineWebber DTC#: _____
Account #: _____

_____    _____
Name: Edward H. Snowden         Date:
Title:   CEO & President

II. *Issuer's Acknowledgment of Option Exercise*

A. Boston Communictaions Group ("Issuer") acknowledges receipt of a valid option exercise notice from Edward H. Snowden ("Optionee") covering the exercise of _____ shares of Issuer's common stock.

B. In consideration of UBS PaineWebber making a payment of $_____ to cover the cost of exercise (including taxes, if any) of the Optionee's option to purchase the shares from

A-1

**UBS PaineWebber**

Issuer, Issuer agrees to promptly issue and deliver the shares registered in the name of UBS PaineWebber for the Optionee's account.

C. Funds should be delivered (*check one*):

☐ via check to: _____ (company name)
☐ via wire to: _____ (bank name)
    ABA # _____ (nine digits)
    Account # _____ (company name)

D. Issuer represents that the shares will be issued pursuant to an effective registration statement and that the shares will be free of any restrictive legend.

_____    _____

Name: Leslie Apony    Date:
Title:



# STOCK TRADING PLAN

This Stock Trading Plan (the "Plan") is being adopted by Karen A. Walker ("Client") to facilitate the sale of shares of the common stock (the "Shares") of Boston Communications Group, Inc. ("Issuer").

In order to diversify her investment portfolio, Client desires to sell the Shares. To dispel any inference that Client is trading in the Shares on the basis of, while using, when in possession of, or when aware of material nonpublic information; or that the trades in the Shares evidence Client's knowledge of material nonpublic information, or information at variance with Issuer's statements to investors; Client has determined to instruct Credit Suisse First Boston Corporation ("CSFBC") to sell a pre-determined amount of Shares pursuant to the formula described in <u>Exhibit A</u>.

A.    Client hereby represents, warrants and acknowledges that she:

1.    As of the date of this Plan, is not aware of any material nonpublic information regarding Issuer and is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent CSFBC from acting upon the instructions set forth in this Plan;

2.    Is entering into this Plan in good faith and not as part of any scheme to evade the prohibitions of Rule 10b5-1 adopted under the Securities Exchange Act of 1934, as amended;

3.    Has not entered into, and will not enter into, any corresponding or hedging transaction or position with respect to the Shares;

4.    Confirms, if she is subject to Rule 144, that the sale of the Shares pursuant to the formula in <u>Exhibit A</u> will comply with Rule 144 under the Securities Act of 1933;

5.    Acknowledges that CSFBC may make a market in the Shares and will continue to engage in market-making activities while executing transactions on behalf of Client pursuant to the Plan;

6.    May not discuss with CSFBC the timing of the trading in the Shares on his/her behalf (other than to confirm these instructions and describe them if necessary); and

7.    May terminate this Plan at any time by notice in writing to CSFBC. If this Plan is terminated and Client thereafter establishes a new plan, Client will wait thirty (30) days before making any sales under such new plan.

B.    CSFBC will notify Client promptly of any transactions in order that Client may make timely filings of Forms 4 and 5. Any Form 144's filed on Client's behalf shall contain a notice in substantially the following form:

"The shares covered by this Form 144 are being sold pursuant to a Form 10b5-1 sales plan dated ___11/12/01___, 2001; and the representation herein regarding the seller's knowledge of material nonpublic information speaks as of the adoption date of the plan."

C.    Sales under this Plan shall be terminated upon notice to CSFBC that Client is subject to a lockup agreement in connection with a public offering of the stock of the Issuer.

D.    CSFBC agrees to hold the terms of this agreement as confidential information and not to disclose such terms to any third party without Client's consent, except as may be otherwise required by law.

E.    This Plan shall be governed by and construed in accordance with the laws of the State of New York.

_____

Karen Walker

2

### Share Trading Formula

Please exercise those stock options listed below and sell those Shares acquired upon such exercise in accordance with the following instructions:

Starting in the month of December, 2001:

| Shares to be sold under Plan | | Cost | Selling Parameters | Min. Price |
|---|---|---|---|---|
| ISO | 7,600 | $ 8.625 | Sell 1,900 over four months if price exceeds | 12 *sold* |
| NQ | 10,000 | $ 6.000 | Sell 2,500 each month if price exceeds | 12 *sold* |
| ISO | 12,000 | $ 4.875 | Sell 2,500 each month if price exceeds | 14 *sold* |
| ISO | 8,000 | $ 4.875 | Sell 4,000 each month if price exceeds | 15 |
| ESPP | 1,837 | $ 5.711 | Sell all if price exceeds | ✓12 *sold* |
| ABrown | 1,500 | $ 5.500 | Sell all if price exceeds | 12 *sold* |
| | 40,937 | | | |

Any portion of the Shares not sold as stated above because of market conditions shall be carried forward until the first subsequent trading day or days on which it is determined that all or part of the unsold portion can be sold under the then prevailing market conditions and in accordance with the instructions above until all such carried forward Shares have been sold.

This Plan terminates upon the earlier of (1) December 31, 2002 or (2) the sale of 40,937 Shares, whichever occurs first.

The Issuer acknowledges that its Insider Trading Policy allows for the use of Rule 10b5-1 Trading Plans, has read the plan to be entered into by Karen A. Walker dated as of __11/12/01__ and does not object to it.

BOSTON COMMUNICATIONS GROUP, INC.

_E. Y. Snowden_
Signature

E. Y. Snowden
Name

President & CEO
Title

November 12, 2001
Date

4

# STOCK TRADING PLAN

This Stock Trading Plan (the "Plan") is being adopted by Karen A. Walker ("Client") to facilitate the sale of shares of the common stock (the "Shares") of Boston Communications Group, Inc. ("Issuer").

In order to diversify her investment portfolio, Client desires to sell the Shares. To dispel any inference that Client is trading in the Shares on the basis of, while using, when in possession of, or when aware of material nonpublic information; or that the trades in the Shares evidence Client's knowledge of material nonpublic information, or information at variance with Issuer's statements to investors; Client has determined to instruct Credit Suisse First Boston Corporation ("CSFBC") to sell a pre-determined amount of Shares pursuant to the formula described in Exhibit A.

A.    Client hereby represents, warrants and acknowledges that she:

1.    As of the date of this Plan, is not aware of any material nonpublic information regarding Issuer and is not subject to any legal, regulatory or contractual restriction or undertaking that would prevent CSFBC from acting upon the instructions set forth in this Plan;

2.    Is entering into this Plan in good faith and not as part of any scheme to evade the prohibitions of Rule 10b5-1 adopted under the Securities Exchange Act of 1934, as amended;

3.    Has not entered into, and will not enter into, any corresponding or hedging transaction or position with respect to the Shares;

4.    Confirms, if she is subject to Rule 144, that the sale of the Shares pursuant to the formula in Exhibit A will comply with Rule 144 under the Securities Act of 1933;

5.    Acknowledges that CSFBC may make a market in the Shares and will continue to engage in market-making activities while executing transactions on behalf of Client pursuant to the Plan;

6.    May not discuss with CSFBC the timing of the trading in the Shares on his/her behalf (other than to confirm these instructions and describe them if necessary); and

7.    May terminate this Plan at any time by notice in writing to CSFBC. If this Plan is terminated and Client thereafter establishes a new plan, Client will wait thirty (30) days before making any sales under such new plan.

B.    CSFBC will notify Client promptly of any transactions in order that Client may make timely filings of Forms 4 and 5. Any Form 144's filed on Client's behalf shall contain a notice in substantially the following form:

"The shares covered by this Form 144 are being sold pursuant to a Form 10b5-1 sales plan dated _____, 2002; and the representation herein

1

Karen Walker

Share Trading Formula

Exhibit A

This 10b5-1 Selling Plan deals with Boston Communications Group (BCGI) shares.

Sell the following amount of shares at any time between January 1, 2003 and December 31, 2004.

1. Sell 23,739 shares at no less than $12.95 per share.

2. Sell 5,000 shares at no less than $13.95 per share.

3. Sell 8,334 shares at no less than $14.95 per share.

4. Sell 6,667 shares at no less than $15.95 per share.

5. Sell 6,400 shares at no less than $16.95 per share.

6. Sell 8,018 shares at no less than $17.95 per share.

7. Sell 5,316 shares at no less than $19.95 per share.

This plan terminates upon the earlier of (1.) December 31, 2004 or (2.) the sale of 63,474 shares.

In no event shall CSFB sell more than the maximum allowable amount of Shares pursuant to Rule 144 in any three month period during which this Plan is in effect.

| 1/6/03 | 3,739 | 5000 3\|13\|2003 | 6400 4\|17\|03 |
| 1/9/03 | 4,903 | 200 3\|19\|2003 | 8018 4\|17\|03 |
| 1/13/03 | 2850 | 4000 3\|20\|2003 | |
| | | 3334 3\|20\|2003 | |
| 1/30/03 | 2000 | 5000 3\|21\|2003 | |
| 2/6/03 | 10,247 | 1667 3\|21\|2003 | |
| | 23,739 | | |

I would like CSFB to sell my shares in the following order.

| | Total Shares | Price | Strike Price |
|---|---|---|---|
| 1. | 23,739 (Common Stock) | $12.95 | NA |
| 2. | 5,000 | $13.95 | $ 4.875 |
| 3. | 5,000 200 3\|19\|2003 | $14.95 | $ 4.875 |
| 4. | 3,334 | $14.95 | $ 6.438 |
| 5. | 5,000 | $15.95 | $ 8.625 |
| 6. | 1,667 only    used | $15.95 | $ 7.750 |
| 7. | 6,400 2,600    7,580   3800 | $16.95 | $ 8.625 |
| 8. | 8,018 | $17.95 | $13.00 |
| 9. | 5,316 | $19.95 | $13.00 |

3

The Issuer acknowledges that its Insider Trading Policy allows for the use of Rule 10b5-1 Trading Plans, has read the plan to be entered into by Karen A. Walker dated as of _Dec. 10 2002_ and does not object to it.

BOSTON COMMUNICATIONS GROUP, INC.

_Alan Bouffard_
Signature

_Alan J. Bouffard_
Name

_Vice President & General Counsel_
Title

_December 10, 2002_
Date

4