# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROSENBAUM CAPITAL LLC, On Behalf of Itself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. CIV. A. 05-11165-WGY |
| BOSTON COMMUNICATIONS GROUP, INC., KAREN A. WALKER and EDWARD H. SNOWDEN, | ) ) ) ) | |
| Defendants. | ) ) | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

Jeffrey B. Rudman (BBO #433380)
Andrea J. Robinson (BBO #556337)
Samuel J. Lieberman (*Admitted Pro Hac Vice*)
Clark W. Petschek (BBO #658881)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: February 10, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT........................................................................................................................ 3

I.    THE CHALLENGED CLASS PERIOD STATEMENTS ARE NOT ACTIONABLE .... 3

    A.    The General Statements of Subjective Belief at Issue are Immaterial as a Matter of Law. ................................................................................................ 3

    B.    The Challenged Statements Are Non-Actionable Under the PSLRA Safe Harbor and the Bespeaks Caution Doctrine. .......................................................... 6

II.    THE COMPLAINT FAILS TO PLEAD FALSITY OR A "STRONG INFERENCE" OF SCIENTER WITH THE PARTICULARITY REQUIRED ........................................ 9

    A.    The Freedom Litigation Verdict Cannot Establish Subjective Falsity or A Strong Inference of Scienter. ................................................................................. 9

    B.    Plaintiffs' Allegations of Subjective Falsity and Scienter Are Insufficient Because They Are Consistent with Legitimate Activity. ....................................... 12

    C.    The Individual Defendants' Actual Class Period BCGI Trading Undermines Any Inference of Scienter. ................................................................................... 14

III.    THE DISCLOSURE DUTY URGED BY PLAINTIFF HAS NO FOUNDATION IN LAW OR POLICY.......................................................................................................... 17

CONCLUSION………………………………………………………………………………..19

## TABLE OF AUTHORITIES

### Cases

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ..................................................................................... 18

*Ballan v. Wilfred Amer. Educ. Corp.*,
   720 F. Supp. 241 (E.D.N.Y. 1989) ........................................................................... 18

*Baron v. Smith*,
   285 F. Supp. 2d 96 (D. Mass. 2003), *aff'd* 380 F.39, 49 (1st Cir. 2004) ................... 4

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
   423 F.3d 1296 (Fed. Cir. 2005) ................................................................................. 13

*Brumbaugh v. Wave Sys. Corp.*,
   2006 U.S. Dist. LEXIS 725 .......................................................................................... 7

*Burstein v. Applied Extrusion Techs., Inc.*,
   150 F.R.D. 433 (D. Mass. 1993) ................................................................................ 18

*Carney v. Cambridge Tech. Partners, Inc.*,
   135 F. Supp. 2d 235 (D. Mass. 2001) ....................................................................... 14

*Condec Corp. v. Farley*,
   573 F. Supp. 1382 (D.C.N.Y. 1983) .......................................................................... 18

Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Megasystems, LLC,
   350 F.3d 1327 (Fed. Cir. 2003) ................................................................................... 9

*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1 (D. Mass. 2004) ............................................... 19

*Glaros v. Perse*, 628 F.2d 679, 681 (1st Cir. 1980) ...................................................... 15

*Glassman v. Computervision*,
   90 F.3d 617 (1st Cir. 1996) ...................................................................................... 12

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) .............................................................................. 11, 12

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) ................................................................................. 8, 15

*Gross v. Summa Four, Inc.*,
   93 F.3d 987 (1st Cir. 1996) .................................................................................... 9, 18

*Guera v. Teradyne, Inc.*,
   2004 WL 1467065 (D. Mass. Jan. 16, 2004) .............................................................. 4

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999) ..................................................................................... 7

*Helwig v. Vencor, Inc.,*
    251 F.3d. 540 (6th Cir. 2001)..................................................................... 8

*Hildebrand v. Steck Mfr. Corp., Inc.,*
    279 F.3d 1351 (Fed. Cir. 2002)................................................................. 13

*Ieradi v. Mylan Labs., Inc.,*
    230 F.3d 594 (3rd Cir. 2000)..................................................................... 17

*In re Amylin Pharm., Inc., Sec. Litig.,*
    2003 WL 21500525 (S.D. Cal. May 1, 2003) ...................................... 8, 11

*In re Boston Tech., Ins. Sec. Litig.,*
    8 F. Supp. 2d 43 (D. Mass. 1998) .............................................................. 6

*In re Bristol-Myers Squibb Sec. Litig.,*
    312 F. Supp. 2d 549 (S.D.N.Y. 2004)....................................................... 16

*In re Cabletron Systems, Inc.,*
    311 F.3d 11 (1st Cir. 2002) ................................................................... 4, 5

*In re Copper Mtn. Sec. Litig.,*
    311 F. Supp. 2d 857 (N.D. Cal. 2004) ....................................................... 7

*In re Credit Suisse First Boston Corp. (Agilent Techs., Inc.) Analyst Reports Sec. Litig.,*
    431 F.3d 36 (1st Cir. 2005) ..........................................................*passim*

*In re Credit Suisse First Boston Corp. (Agilent Techs., Inc.) Analyst Reports Sec. Litig.,*
    2005 WL 852455 (D. Mass., Mar. 31, 2005) .............................................. 4

*In re Gallileo Corp. S'holders Litig.,*
    127 F. Supp. 2d 251 (D. Mass. 2001) ...................................................... 14

*In re Humphrey Hospitality Trust, Inc. Sec. Litig.,*
    219 F. Supp. 2d 675 (D. Md. 2002) ......................................................... 17

*In re Indep. Energy Holdings PLC Sec. Litig.,*
    154 F. Supp. 2d 741 (S.D.N.Y. 2001) ........................................................ 8

*In re MobileMedia Sec. Litig.,*
    28 F. Supp. 2d 901 (D.N.J. 1998) .............................................................. 7

*In re Nortel Networks Corp. Sec. Litig.,*
    238 F. Supp. 2d 613 (S.D.N.Y. 2003)......................................................... 8

*In re Number Nine Visual Tech. Corp. Sec. Litig.,*
    51 F. Supp. 2d 1 (D. Mass. 2004) .............................................................. 7

*In re Party City Sec. Litig.,*
    147 F. Supp. 2d 282 (D.N.J. 2001) .......................................................... 15

*In re Prudential Ltd. P'ship Sec. Litig.*,
  930 F. Supp 68 (S.D.N.Y. 1996) ............................................................................ 8

*In re SeaChange International, Inc. Sec. Litig.*,
  2004 WL 240317 (D. Mass Feb. 6, 2004) ........................................ 9, 10, 11, 17

*In re Sepracor, Inc. Sec. Litig.*,
  308 F. Supp. 2d 20 (D. Mass. 2004) ...................................................................... 7

*In re Stone & Webster, Inc., Sec. Litig.*,
  414 F.3d 187 (1st Cir. 2005) .................................................................................. 6

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993) ...................................................................................... 15

*Intel Corp. v. VIA Tech., Inc.*,
  319 F.3d 1357 (Fed. Cir. 2003) ............................................................................. 13

*Knorr-Bremse System Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
  383 F.3d 1337 (Fed. Cir. 2004) ............................................................................. 10

*Lirette v. Shiva Corp.*,
  27 F. Supp. 2d 268 (D. Mass. 1998) ..................................................................... 15

*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1988) ..................................................................................... 16

*Meyer v. Biopure Corp.*,
  221 F. Supp. 2d 195 (D. Mass. 2002) ..................................................................... 8

*nCube Corp. v. SeaChange Intern., Inc.*,
  2006 WL 39053 (Fed. Cir. Jan. 9, 2006) .............................................................. 10

*Orton v. Parametric Tech. Corp.*,
  344 F.Supp.2d 290 (D. Mass. 2004) ....................................................................... 4

*P.R. Diamonds, Inc. v. Chandler*,
  2004 WL 422726 (6th Cir. Mar. 3, 2004) ............................................................. 17

*Roeder v. Alpha Industries, Inc.*,
  814 F.2d 22 (1st Cir. 1987) ................................................................................... 18

*Rosen v. Textron, Inc.*,
  321 F. Supp. 2d 308 (D.R.I. 2004) .......................................................................... 4

*Schuster v. Symmetricon, Inc.*,
  2000 WL 33115909 (N.D. Cal. Aug.1, 2000) ....................................................... 17

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) ........................................................................... 16, 17

*Teva Pharm. USA, Inc., v. Pfizer Inc.*,
405 F.3d 990 (Fed. Cir. 2005) ............................................................................ 13

*Underwater Devices, Inc. v. Morrison-Knudsen Co.*,
717 F.2d 1380 (Fed. Cir. 1983) ........................................................................... 10

*Vulcan Eng'g. Co. v. Fata Aluminum, Inc.*,
278 F.3d 1366 (Fed. Cir. 2002) ..................................................................... 10, 13

*Warner Communications, Inc. v. Murdoch*,
581 F. Supp. 1482 (D. Del. 1984) ....................................................................... 18

*Wietschner v. Monterey Pasta Co.*,
294 F. Supp. 2d 1102 (N.D. Cal. 2003) .............................................................. 16

## Statutes

15 U.S.C. § 78u-5(i)(1)(D) (2006) ......................................................................... 8

## Rules

Fed. R. Evid. 411 ..................................................................................................... 13

## Regulations

17 C.F.R. § 229.103 ............................................................................................ 3, 17

## PRELIMINARY STATEMENT

On December 2, 2005, defendants filed their opening brief in support of their motion to dismiss, arguing, among other things, that plaintiff had failed adequately to plead materiality, subjective falsity, and scienter. On January 13, 2006, plaintiff filed its opposition to the motion to dismiss.

In between December 2 and plaintiff's filing on January 13, on December 12, 2005, the United States Court of Appeals for the First Circuit entered its opinion in *In re Credit Suisse First Boston Corp. (Agilent Technologies, Inc.) Analyst Reports Securities Litigation*, 431 F.3d 36 (1st Cir. 2005). Plaintiff either never noticed this decision or decided not to address it. The decision, however, constitutes powerful and additional authority for the dismissal of this case.

In *Credit Suisse*, the Court stated that: (1) in a misstatement of opinion case, the inquiry into subjective falsity and scienter merge, 431 F.3d at 48; and (2) for each allegedly false opinion, the plaintiff must "plead provable facts strongly suggesting that the speaker did not believe that particular opinion to be true when uttered." *Id.* at 49. Applying these standards, the Court affirmed the lower court's dismissal on motion of all claims arising out of defendants' reiterated analyst recommendations of Agilent shares. *Id.* at 53-54. The Court so ruled despite the fact that plaintiff had brought to the trial court's attention specific, contemporaneous CSFB emails which could have been viewed as rightly tempering any reason to buy Agilent shares.

The Court said:

"[t]he bottom line, then, is that while plaintiffs' allegations regarding the obvious conflicts of interest and general state of corruption within CSFB's analysts ranks may be enough to turn the stomach of an ethically sensitive observer, they are insufficient, on their own, to support a fraud pleading with respect to the subjective falsity of the eight "buy" recommendations issued on Agilent stock … Such allegations are tantamount to pleading conclusory statements regarding motive and opportunity — and we have made it pellucid that such gauzy generalities, without more, are insufficient to plead scienter." *Id.* at 49-50.

This case is a stronger candidate for dismissal on motion than *Credit Suisse*. In *Credit Suisse*, the buy recommendations were not qualified. In this case, defendants' statements of optimism concerning the potential outcomes of the Freedom litigation were repeatedly qualified by stark cautionary language as to the consequences for BCGI if it did not prevail at trial.

Further, in this case, unlike *Credit Suisse*, plaintiff offers this Court no contemporaneous evidence to demonstrate subjective falsity, but rather a bald assertion that defendants were possessed by "a guilty conscience," the proof of that guilty conscience being entirely lawful business activity to mitigate the risk of patent infringement and the receipt of legal opinions of non-infringement. (Opp. 4-5.) Plaintiff insists these opinions were "blatantly superficial, conclusory, and poorly researched...." (*Id.* at 7.) Plaintiff does not pause ever to identify the errors in or the authors of these opinions, let alone explain how BCGI was supposed to know these opinions were shoddy (which they were not). Plaintiff's characterization of these opinions, and indeed of the state of defendants' conscience, constitutes exactly the "bald assertions, unsupportable conclusions, and opprobrious epithets" which the Court in *Credit Suisse* declared itself free to disregard. *See* 431 F.3d at 45.

The fragility of plaintiff's falsity and scienter allegations is confirmed by (1) the many patent cases plaintiff ignores providing that a finding of "willfulness" in a patent dispute does not equate to fraud; and (2) the individual defendants' increase of their BCGI holdings during the Class Period and the timing of their last stock sale, *nineteen months prior to* the Freedom litigation verdict. Plaintiff's Opposition offers nothing to the contrary.

Instead, in an eleventh-hour attempt to salvage its case, plaintiff now recasts its Complaint as one based on defendants' omissions in "*failing to disclose* their own infringing activities." (Opp. 13 (emphasis added).) Plaintiff's *post hoc* attempt to rewrite the Amended

Complaint cannot stave off dismissal, however. An "omissions" case does not relieve plaintiff's burden to demonstrate that the challenged statements were material and to plead with particularity that they were false and made with scienter.

Moreover, the duty of disclosure plaintiff seeks to impose cannot be supported by law or any sensible policy. Defendants made no guarantee they would prevail in the Freedom litigation, and any guarded optimism expressed about its outcome was consistent with their courtroom position, Judge Harrington's denial of Freedom's motion for summary judgment, and the well-understood vagaries attendant to any jury's decision. Under these circumstances, they had no duty to disclose every fact that could potentially support a negative outcome and predict their loss. Such disclosure would extend well beyond any duty recognized by courts or imposed by Item 103 of Regulation S-K. 17 C.F.R. § 229.103.

At the end of the day, this case reduces to one against defendants who expressed confidence in their non-infringement case, who warned of very adverse consequences if they lost, and, in fact, they did. The decision to take the case to trial may have been, in hindsight, a bad idea, and the outcome may reflect bad facts, bad luck, or a miscarriage of justice. It is not, however, the badge of securities fraud.

## ARGUMENT

### I.    THE CHALLENGED CLASS PERIOD STATEMENTS ARE NOT ACTIONABLE

#### A.    The General Statements of Subjective Belief at Issue are Immaterial as a Matter of Law.

The challenged statements broadly describing the Freedom litigation are the type of vague, generalized statements of subjective "confidence" and "belief" that courts in the First Circuit and elsewhere repeatedly have held are immaterial as a matter of law. (Opening Br. 9-10.) The defendants' extensive and repeated warnings that they "can give no assurance that we

will prevail at trial" and that "an unfavorable judgment in the Freedom Wireless suit . . . would result in substantial damages and could significantly restrict BCGI's ability to conduct business," confirm the challenged statements' immateriality. (*Id.* 11-12 & n.12.) Rather than address these points, plaintiff asserts that: (i) materiality ordinarily should not be decided on a motion to dismiss (Opp. 9); (ii) the challenged statements must be material because BCGI's stock price fell when the Freedom verdict was announced (*id.* 10 n.5); and (iii) defendants' statements of "confidence" in their case were actionable because allegedly omitted information was material (*id.* 10-11). As demonstrated below, each of those arguments fails.

*First*, courts in this Circuit and elsewhere have repeatedly concluded on motions to dismiss that general statements of subjective opinion and corporate optimism are immaterial. (Opening Br. 9-10 & n.10 (citing cases).) *In re Cabletron Systems, Inc.*, 311 F.3d 11, 34 (1st Cir. 2002) (cited in Opp. 9) does not inhibit a similar result here. The *Cabletron* court in fact resolved materiality on an appeal of a ruling granting motion to dismiss, 311 F.3d at 35-36 (finding some, but not all, challenged statements were immaterial), and courts in this Circuit have continued to deem statements immaterial on motions to dismiss post-*Cabletron*.[1]

*Second*, plaintiff's argument that materiality should not be resolved here is dependent upon its disregard of the extensive and detailed cautionary language that accompanied each of

---

[1] *See, e.g., In re Credit Suisse First Boston Corp. (Agilent Techs., Inc.) Analyst Reports Sec. Litig.*, No. Civ.A.02-12056-GAO, 2005 WL 852455, at *9 (D.Mass., Mar. 31, 2005), *aff'd* 431 F.3d 36 (1st Cir. 2005) (dismissing complaint because, *inter alia*, plaintiffs "have not adequately pled . . . that the 'Buy' ratings were material in the necessary sense -- that they 'significantly altered the 'total mix' of information' available to the market."); *Orton v. Parametric Tech. Corp.*, 344 F.Supp.2d 290, 301-02 (D. Mass. 2004) (Young, C.J.) (statement that defendants were "confident that our strategy and products position us for leadership in the product development space, despite flat year-over-year revenues," was "a classic example of non-actionable corporate puffery"); *Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308 (D.R.I. 2004) (statement that corporation "remains very confident regarding the long term prospects of [product] and expects to get clearance by the end of 2001" held immaterial "expression of corporate optimism"); *Guera v. Teradyne, Inc.*, No. Civ. A. 01-11787-NG, 2004 WL 1467065, at *8 (D. Mass. Jan. 16, 2004) (statements of "probabl[e] increase" in sales, shipments and demand were "non-actionable because such vague, optimistic statements do not rise to the level of material misrepresentations."); *Baron v. Smith*, 285 F. Supp. 2d 96, 100, 106 (D. Mass. 2003), *aff'd* 380 F.39, 49 (1st Cir. 2004) (statements that company "expects to be able to terminate unprofitable leases, reduce . . . operating expenses and make necessary improvements to the business" through bankruptcy proceeding "nothing more than a kind of self-directed corporate puffery.")

the challenged general statements of subjective belief.  Such language – which was repeated and

updated throughout the Class Period as shown in the chart entitled "Defendants' Allegedly

Fraudulent Class Period Statements" (the "Disclosure Chart")[2] – made clear that defendants were

not guaranteeing any favorable outcome to the Freedom litigation:

- "we can give no assurance that we will prevail" in patent litigation.  (*E.g.*, Petschek Decl., Ex. 7, Aug. 14, 2002 10-Q at 8; Ex. 10, Nov. 14, 2002 10-Q at 9);

- If the Company is found to infringe on the Freedom Wireless patent… the Company's business, financial condition and results of operations would be materially adversely affected. (*Id.*, Ex. 7 at 15; *accord* Ex. 10 at 9);

- "[a]mong the important factors that would cause actual results to differ materially from those described are … *an unfavorable judgment in the Freedom Wireless suit* which could result in substantial damages and could significantly restrict *bcgi's* ability to conduct business." (*id.* Ex. 13, Apr. 16, 2003 press release at 3 (emphasis added));

- "Our failure to prevail in the [Freedom litigation] would have any and all of the following significant adverse effects on our business, financial condition and results of operations:

  - Injunctive relief against us, which would significantly restrict our ability to conduct business;

  - An adverse judgment against us for significant monetary damages;

  - A settlement on unfavorable terms;

  - Obligations to other defendants to indemnify them for damages;

  - Obligations to customers for breach of a contractual warranty or non-infringement; or

  - A requirement to reengineer out prepaid processing methodology to avoid patent infringement, which would likely result in additional expense and delay."  (*E.g.*, *id.* Ex. 12, Mar. 27, 2003 10-K at 26-27.)[3]

The materiality of the challenged statements cannot properly be evaluated without taking into

account this context.

---

[2] The Disclosure Chart was submitted with the Opening Brief as Exhibit 1 to the December 2, 2005 Declaration of Clark Petschek in Support of Defendants' Motion to Dismiss (the "Petschek Decl.").

[3] Plaintiff is wrong insofar as it appears to be suggesting that the market's reaction to the Freedom verdict somehow demonstrates the materiality of defendants' prior statements about the case.  (Opp. 10 n.5.)  The verdict does not change the facts that defendants always cautioned they could not guarantee a favorable outcome and disclosed that an adverse verdict would have a materially adverse effect on BCGI's financial condition.  Moreover, the May 20, 2005 disclosure of the verdict offered no change to the challenged statement that, consistent with the pending appeal, defendants "continued to believe that they did not infringe Freedom's patents and that patents are invalid in light of prior art." (¶ 82.)

*Third*, plaintiff cannot circumvent the need to demonstrate the materiality of defendants' statements by falling back on the asserted materiality of what defendants allegedly failed to disclose. "A duty to disclose arises only where *both* the statement made is material, *and* the omitted fact is material." *In re Boston Tech., Ins. Sec. Litig.*, 8 F. Supp. 2d 43, 53 (D. Mass. 1998) (emphasis added)).

**B.    The Challenged Statements Are Non-Actionable Under the PSLRA Safe Harbor and the Bespeaks Caution Doctrine.**

The challenged statements are forward-looking and defendants' extensive warnings about the Freedom litigation meaningfully warned of the precise risk that occurred here, rendering those statements non-actionable under the PSLRA Safe Harbor and the bespeaks caution doctrine. (Opening Br. 12.)  Plaintiff argues, however, that (i) the challenged statements are not forward-looking because they incorporated "statements of current information" (Opp. 12-13); (ii) the cautionary language accompanying the challenged statements was too vague to offer any shield from liability (*id.* 13-14); and (iii) the Safe Harbor and bespeaks caution doctrine do not apply because the challenged statements were made with actual knowledge of their falsity (*id.* 15).  Plaintiff's arguments fail for three reasons.

*First*, plaintiff's argument that the challenged statements are not forward-looking is belied by its own characterization of the alleged fraud.  *See In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005) ("[T]o determine whether a statement falls within the Safe Harbor, a court must examine which aspects of the statement are alleged to be false.").  In particular, plaintiff describes the fraud as deriving from defendants' "statements about [their] *expectations* for the Freedom Litigation's outcome." (Opp. 11 (emphasis added); *id.* (alleging BCGI had "put its *expectation* of success in play" (emphasis added); *id.* 13 ("defendants misrepresented the *anticipated* outcome of the Freedom litigation" (emphasis added)); *see also*

Compl. ¶ 54 (challenging purported statement that defendants "*expected* to prevail in patent

case" (emphasis added).)  Because plaintiff's fraud claim focuses on the defendants'

expectations regarding the outcome of the Freedom litigation, the challenged statements should

be treated as forward-looking for purposes of the PSLRA.  *See, e.g., Baron*, 285 F. Supp. 2d at

105 ("[S]tatements about what Company's management 'expect[ed] to be able' to achieve in the

bankruptcy were clearly 'forward-looking statements.'").

    Notwithstanding its own characterization of its chief complaint, plaintiff nevertheless

asserts that the defendants' statements of "belief" and "confidence" in non-infringement are

"statements of current information" that cannot obtain Safe Harbor protection.  (Opp. 12-13.)

That is wrong.  Although those are partially present tense statements, they qualify as forward-

looking under the PSLRA Safe Harbor because their "truth or falsity [was] discernible only after

[they were] made," when the Freedom jury rendered its verdict regarding infringement (subject

to the outcome of the pending appeal).  *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999)

(statements "the challenges unique to this period *are* now behind us," and "[defendant] *is*

certainly very well positioned" are forward-looking under the PSLRA Safe Harbor (emphasis

added).); *accord In re Copper Mtn. Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004)

(defendants' statements that "business *was* 'strong,'" "that it *was* 'on track' to meet future

goals," and "that CLECs *were* a continuing source of revenue growth" forward-looking

(emphasis added).)[4]  That is because, in this context, such statements are "statement[s] of the

---

[4] In contrast with BCGI's non-infringement belief in this case, which would be determined by a future jury verdict, the cases plaintiff relies upon (Opp. 13) are distinguishable because they involved statements about facts known prior to or at the time the statements were made.  *See Brumbaugh v. Wave Sys. Corp.*, Civ. A. No. 04-3 0022-MAP, 2006 U.S. Dist. LEXIS 725, *19-*20 (false statements about effect of agreement with Intel not forward-looking because "the terms of the Intel agreement" were set before statement was made); *In re Sepracor, Inc. Sec. Litig.*, 308 F. Supp. 2d 20, 28 (D. Mass. 2004) (defendants' statements about "results of animal studies" not forward-looking because they "were a matter of fact . . . by the time the statements were made"); *In re Number Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 18 (D. Mass. 2004) ("challenged statement claims that Number Nine *was currently* offering a broad product line" (emphasis in original).); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 930 (D.N.J. 1998) (statement about effect of acquisition that already had been made).  The passage from *In re Nortel*

assumptions underlying" expressed expectations regarding the Freedom litigation that are

encompassed by the PSLRA Safe Harbor. 15 U.S.C. § 78u-5(i)(1)(D) (2006). Indeed, the

*Amylin* case plaintiff itself relies upon (Opp. 13) held that a similar statement of purportedly

current information phrased in the present tense was forward-looking under the PSLRA Safe

Harbor. *In re Amylin Pharm., Inc., Sec. Litig.*, No. 01CV1455 BTM (NLS), 2003 WL 21500525,

at *7 (S.D. Cal. May 1, 2003) ("We *have* completed clinical testing of [drug] that we believe *is*

sufficient to support [FDA] approval" (emphasis added).)

    *Second*, plaintiff's argument that the warnings here are "boilerplate" beyond the Safe

Harbor (Opp. 13-14) completely mischaracterizes defendants' detailed and extensive warnings

which were specifically tailored to the Freedom litigation as set forth *supra* at 5, and in the

Disclosure Chart. It is well established that such cautionary language, which "identifies the risks

at issue in the complaint" renders the challenged forward-looking statements non-actionable.

*See Meyer v. Biopure Corp.*, 221 F. Supp. 2d 195, 203 (D. Mass. 2002); *Number Nine*, 51 F.

Supp. 2d at 21-22 (Young, C.J.) (where cautionary language "clearly disclaims or discounts the

drawing of a particular inference, any claim that the statement was materially misleading because

it gave rise to that very inference may fail as a matter of law.").[5]

---

*Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613 (S.D.N.Y. 2003) plaintiff cites to argue that cautionary language cannot protect materially misleading statements applied only to that court's bespeaks caution doctrine analysis, *id.* at 628, not its application of the PSLRA Safe Harbor, *id.* at 629. The First Circuit has recognized that the PSLRA Safe Harbor provides for "two alternative inlets" for protection, *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 201 (1st Cir. 1999), *i.e.*, either "statements accompanied by meaningful cautionary language . . . ; *or*," statements made without "actual knowledge" of falsity. 15 U.S.C. § 78u-5(c)(1)(A)-(B) (emphasis added). In any event, as demonstrated in Section II *infra*, plaintiff has failed adequately to allege that defendants acted with scienter.

[5] None of the cases plaintiff cites suggests that that the extensive and specifically tailored warnings involved here are insufficiently meaningful to qualify for Safe Harbor protection. *See Helwig v. Vencor, Inc.*, 251 F.3d. 540, 559-62 (6th Cir. 2001) (cautionary "blanket statements concerning pending legislation offered investors no guidance about the consequences of health care reform" in Congressional Balanced Budget Act "nearing its final stages"); *Amylin*, 2002 U.S. Dist. LEXIS 19481, at *26-*27 (general warning that FDA could deem testing not sufficient to warn investors of fact that before statement was made, FDA had told defendants that testing was insufficient); *In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 755 (S.D.N.Y. 2001) (noting cautionary language is sufficient if it warns investors of the exact risk that occurs, then holding that Safe Harbor did not apply to a "representation of present fact"); *In re Prudential Ltd. P'ship Sec. Litig.*, 930 F. Supp 68, 72 (S.D.N.Y. 1996) (general warnings that residual values of aircraft could decline insufficient to meaningfully warn investors that experts warned defendants before statement was made that residual values would drop radically).

*Third*, as set forth below in Section II, *infra*, plaintiff has failed to plead with particularity

that the challenged statements were made with actual knowledge of falsity.

## II.    THE COMPLAINT FAILS TO PLEAD FALSITY OR A "STRONG INFERENCE" OF SCIENTER WITH THE PARTICULARITY REQUIRED

*Credit Suisse* establishes that in "subjective falsity" cases like this one – *i.e.*, where

plaintiff challenges statements of opinion by asserting "that the speaker did not actually hold the

opinion expressed" – "the falsity element, at a minimum, entails an inquiry into whether the

statement was subjectively false."[6]  431 F.3d at 47-48.  Accordingly, the "subjective aspect of

the falsity requirement and the scienter requirement essentially merge; the scienter analysis is

subsumed by the analysis of subjective falsity." *Id.*  Here, that merged analysis confirms that

plaintiff has failed to allege with the requisite particularity both falsity and facts supporting a

strong inference of scienter.

### A.    The Freedom Litigation Verdict Cannot Establish Subjective Falsity or A Strong Inference of Scienter.

The Freedom verdict does not support a strong inference of scienter because: (a) under

*Seachange* and a long line of patent cases, "willfulness" in the patent infringement context "does

not equate to fraud," *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v.

Megasystems, LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003); and (b) under *In re Seachange

International, Inc. Securities Litigation*, even the combination of such a verdict and an award of

attorneys' fees (absent here) is insufficient to render misleading statements that a defendant is

contesting a patent infringement litigation.  No. Civ. A. 02-12116-DPW, 2004 WL 240317, at *8

(D. Mass Feb. 6, 2004).

---

[6] Whether plaintiff characterizes its case as based on a fraudulent omission or misrepresentation, it still must plead with particularity that the challenged statement was false or misleading. *Id.* at 46 (representation); *Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir. 1996) (omission).

The standard for scienter requires actual knowledge or recklessness to a degree that it is functionally equivalent to knowledge, *Orton*, 344 F. Supp. 2d at 299, whereas willful infringement may be shown by meeting a considerably lower standard that "the infringer acted without a reasonable belief that its actions would avoid infringement," namely a breach of a duty to "exercise due care." *Vulcan Eng'g. Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002); *accord Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1385 (Fed. Cir. 1983), *quoted in Knorr-Bremse System Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir. 2004). That is the willful infringement standard applied in the *SeaChange* patent case, *nCube Corp. v. SeaChange Intern., Inc.*, Nos. 03-1341, 03-1366, --- F.3d ----, 2006 WL 39053, at * 5 (Fed. Cir. Jan. 9, 2006), and by Judge Harrington here, (Feb. 10, 2006 Supp. Decl. of Clark Petschek ("Supp. Decl."), Ex.1, Freedom Litig. Jury Instr. at 25-26).

In its Opposition Brief, plaintiff does not respond to defendants' argument that willfulness does not equate to fraud or acknowledge the numerous patent cases supporting that black letter principle. Rather, plaintiff's tack is to try to distinguish *SeaChange* by arguing that its own scienter allegations are sufficient because it has alleged more than the *SeaChange* plaintiffs by pleading particular facts reflecting falsity in addition to the Freedom verdict. (Opp. 18.) However, as set forth in Section II.B. *infra*, those allegations are hopelessly speculative. Moreover, plaintiff's distinction is one without a difference because its allegations are subsumed by the evidence presented in the Freedom litigation, which elicited no finding of bad faith warranting attorneys' fees. (*Compare* ¶¶ 44-48, *with* Supp. Decl. Ex. 2, Freedom Mem. in Opp. to BCGI's Mot. For J. as a Matter of Law at 5, 8, *and id.* Ex. 3, Freedom Reply Mem. in Support of Mot. for Enhanced Damages and Attys.' Fees at 11 & n.32.)

Unable to distinguish *SeaChange's* pleading from its own allegations of scienter, plaintiff tries to differentiate its allegations of falsity by asserting that here defendants affirmatively stated BCGI would prevail in litigation whereas the *SeaChange* defendants "remained entirely neutral in its public comments on the patent litigation." (Opp. 11.)  However, the *SeaChange* defendants were far from "entirely neutral."  They publicly stated they were "denying the claim of infringement," "oppos[ing] the allegations against" them "vigorously," 2004 WL 240317, at *7, and "contesting nCUBE's claim of patent infringement," *id.* at *8.  Further, as in *SeaChange*, the defendants here made clear they were not guaranteeing a favorable outcome by warning, throughout the Class Period, that they could "give no assurance that we will prevail" in patent litigation.  (*Compare* Petschek Decl. Ex. 7, Aug. 14, 2002 10-Q at 8, *with* 2004 WL 240317, at *8.)  Accordingly, *SeaChange* controls.  *See also Gompper v. VISX, Inc.*, 298 F.3d 893, 895-96 (9th Cir. 2002) (administrative ruling that "one of company's core patents was invalid" insufficient to plead falsity of "positive statements about . . . [company's] patent portfolio" because "it fails to demonstrate the link between awareness of the claim and knowledge that the patents were . . . invalid").

Plaintiff analogizes this case to *Amylin*, where the U.S. District Court for the Southern District of California concluded that statements were false under circumstances where "defendant state[d] that it believe[d] or expect[ed] that the FDA will approve its drug but ha[d] information tending to seriously undermine the accuracy of its statement."  2003 WL 21500525, at *8 n.3.  *Amylin* is inapposite.

In *Amylin*, the FDA had itself directly expressed concern to the defendants that their clinical data was not sufficient for approval before the defendants' public statements.  *Id.* at *8.  By contrast, the Freedom jury never indicated to the defendants that it was going to rule against

- 11 -

BCGI before defendants made any of the challenged statements. Indeed, the only pronouncement about the merits that BCGI received from the Freedom court before the jury verdict was the court's denials of both parties' motions for summary judgment, *i.e.* that patent infringement was a genuine issue of fact as to which reasonable minds could disagree. (*See* Freedom Litigation Docket Entry No. 1190, entered Aug. 10, 2004, Supp. Decl. Ex. 4.) That the jury ruled against BCGI merely reflects the vagaries of litigation.

### B.    Plaintiffs' Allegations of Subjective Falsity and Scienter Are Insufficient Because They Are Consistent with Legitimate Activity.

Notwithstanding the clear mandate of *Credit Suisse*, plaintiff draws speculative conclusions about innocuous events in an effort to prop up its assertions of falsity and scienter. (Opening Br. 13-14.) Plaintiff incorrectly argues that this Court should disregard legitimate reasons for defendants' alleged conduct because, on a motion to dismiss, all inferences should be drawn in its favor. (Opp. 8.)

Bald conclusions and inferences not logically drawn from well-pleaded facts should not be accepted as true on a motion to dismiss, however. *See Glassman v. Computervision*, 90 F.3d 617, 628 (1st Cir. 1996) ("[we] need not credit a complaint's 'bald assertions' or legal conclusions."). More important, as the First Circuit recognized in *Credit Suisse*, the motion to dismiss standard "does not require the court, in a PSLRA case, to turn a blind eye to the universe of possible conclusions stemming from a given fact or set of facts." 431 F.3d at 51; *accord Gompper*, 298 F.3d at 896 ("To . . . consider only inferences favorable to [plaintiffs'] position would eviscerate the PSLRA's strong inference requirement by allowing plaintiffs to plead in a vacuum."). Under the PSLRA, "scienter allegations do not pass the 'strong inference' test when, viewed in light of the complaint as a whole, there are legitimate explanations for the behavior that are equally convincing." *Credit Suisse*, 431 F.3d at 49.

Accordingly, the alleged similarities between BCGI's and Freedom's systems and BCGI's alleged drafting of a variation of Freedom's system (¶¶ 44, 46) do not support a strong inference of scienter because patent law actually encourages competitors to refine their technology by designing around existing patents. *See Teva Pharm. USA, Inc., v. Pfizer Inc.*, 405 F.3d 990, 994 (Fed. Cir. 2005); *Intel Corp. v. VIA Tech., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003). Moreover, the similarity between systems does not establish infringement because infringement depends instead upon a "comparison of the properly construed [patent] claims." *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301 (Fed. Cir. 2005).

Further, patent law encourages competitors to obtain advice of counsel as part of their affirmative duty to exercise due care to avoid infringement. *See Hildebrand v. Steck Mfr. Corp., Inc.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002); *Vulcan*, 278 F.3d at 1378-79. Conspicuously, plaintiff offers no detail whatsoever to support its bald allegation that the multiple legal opinions of non-infringement it concedes BCGI received were "superficial and conclusory" and obtained "as a shield against claims of willful infringement."[7] (¶¶ 48, 90.)

Similarly, plaintiff has offered no response to defendants' arguments that its remaining allegations are hopelessly deficient. The Court should not draw any negative inference from BCGI's agreement to obtain a license to Orbital Sciences' rights to technology used by Freedom Wireless (¶ 47) because that is an investment in Orbital's technology, and at most would represent an attempt by BCGI to insure itself against a patent infringement verdict, which reflects only prudence, and is not admissible to prove that a defendant acted wrongfully, *cf.* Fed. R. Evid. 411. *See Credit Suisse*, 431 F.3d at 51 (allegations insufficient where inference of fraud "is only one of a number of possibilities, several just as likely as the inference plaintiffs desire.").

---

[7] Plaintiff does not respond to defendants' point that BCGI did not receive the allegedly defective Darby & Darby opinion. (*See* Opening Br. 13 n.14.)

In addition, plaintiff has not set forth any particulars about BCGI's allegedly suspect involvement with a Bell Atlantic engineer. (¶ 45.) *See In re Chipcom Corp. Sec. Litig.*, No. 95-11114-DPW, Supp. Decl. Ex. 5, at slip op. 36 (D. Mass. Apr. 29, 1996) (allegations of meetings between key players on particular dates did not support inference of scienter where "plaintiff alleged no facts showing that a meeting took place wherein defendant received the requisite knowledge."); *In re Gallileo Corp. S'holders Litig.*, 127 F. Supp. 2d 251, 263 (D. Mass. 2001) ("regular contacts with" important player was insufficient to plead scienter absent allegations "identify[ing] the persons" involved, "when those contacts occurred, the nature of the information imparted . . . , or why the information . . . obtained" provided knowledge of fraud). Plaintiff's failure to point to any particularized facts, such as contemporaneous internal reports or memoranda, demonstrating defendants' knowledge of infringement is particularly glaring given its access to evidence offered over the course of the Freedom litigation. *See Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 251 (D. Mass. 2001) ("[S]uccessful plaintiffs "typically identify internal reports, memoranda or the like, and allege both the contents of those documents and defendants' possession of them at the relevant time.").

**C.    The Individual Defendants' Actual Class Period BCGI Trading Undermines Any Inference of Scienter.**

The Individual Defendants' actual BCGI Class Period trading, which is distorted in the Amended Complaint, undermines any inference of scienter (Opening Br. 16-20).  The Opposition offers nothing to resurrect plaintiff's pleading.

*First*, plaintiff acknowledges (albeit in a footnote) that the Amended Complaint double-counts the shares sold pursuant to option exercises and substantially overstates the proceeds from the Individual Defendants' trading by adding the costs of exercising options to – instead of subtracting that amount from – the proceeds from sales.  (Opp. 19 n.13; Opening Br. 17-18.)

However, no sooner does plaintiff admit the truth than it distorts it once again by asserting that the "Complaint pleads facts establishing that these insider sales were in fact unusual or suspicious in timing and amount." (Opp. 20.)

Even a brief glance at the Complaint reveals that it contains no allegation comparing Class Period sales to prior sales as necessary to plead insider sales are unusual in scope or timing. (Opening Br. 16-17 (citing *Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 283 (D. Mass. 1998) (plaintiff "bears burden of showing that sales by insiders were in fact unusual or suspicious in amount or timing").)[8] Accordingly, plaintiff's insider trading allegations are insufficient to support the requisite strong inference of scienter. (Opp. 19-20 & nn.13-14.)[9]

*Second*, plaintiff has simply failed to address defendants' arguments that any inference of scienter here is undermined by the fact that the Individual Defendants made their last sale of BCGI stock *nineteen months* before the Freedom litigation verdict, (Opening Br. 17 (citing *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) ("A broad temporal distance between stock sales and disclosure of bad news defeats any inference of scienter.")), and actually *increased* their BCGI holdings during the Class Period, (*id.* at 18-19 & n.17 (citing *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (increase in holdings is "wholly inconsistent with fraudulent intent")). Similarly, plaintiff has no reply to the argument that the Complaint falsely claims to present the Individual Defendants' "total" Class Period sales and option exercises. (Opening Br. 17.)

---

[8] Indeed, plaintiff's argument that the Individual Defendants' Class Period sales were unusual in timing because those were their first in two years should be rejected not only because that allegation does not appear in the Amended Complaint, *Glaros v. Perse*, 628 F.2d 679, 681 (1st Cir. 1980) (on a motion for "dismissal of a complaint, our focus is necessarily limited to the allegations contained in the complaint itself."), but also because it is false. The Individual Defendants each sold shares on January 3, 2002, within a year of the sales alleged in the Amended Complaint. (*See* Petschek Decl. Exs. 28-29 (Walker and Snowden Form 4's for Jan. 3, 2002).)

[9] Plaintiff's boilerplate allegations of motive based on their positions and control over BCGI are insufficient to support an inference of scienter. (Opening Br. 16 n.15.) Plaintiff's reliance on *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 269 (2d Cir. 1993) is misguided because it is based on a pre-PSLRA lower standard for pleading scienter. Post-PSLRA cases in this Circuit have made clear that such generalized allegations are insufficient. *See, e.g.*, *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 197 (1st Cir. 1999).

*Third*, plaintiff's argument that the Court should not recognize that the alleged sales were made pursuant to a 10b5-1 plan on a motion to dismiss because it is an affirmative defense (Opp. 20 n.15) ignores that plaintiff has made those trades, the 10b5-1 plans, and the Form-4's indicating those trades were made under such plans, integral to the Complaint. (¶ 93.) Accordingly, the Court can consider those documents and plans on a motion to dismiss. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) ("In deciding a motion to dismiss a securities action, a court may properly consider the relevant entirety of a document integral to. . . the complaint. . . ."). Notably, plaintiff does not, because it cannot, dispute that all of the sales identified in the Complaint were made pursuant to a valid 10b5-1 plan. *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003) (granting motion to dismiss where defendants' sale of "shares under individual SEC Rule 10b5-1 trading plans" supported "an inference that the sales were pre-scheduled and not suspicious").[10]

*Fourth*, plaintiff misstates the law when it argues that "what an insider may have bought is a non-issue," (Opp. 20 n.15), and that the Court should therefore disregard the Individual Defendants' purchases of BCGI stock in increasing amounts, as the Freedom litigation verdict drew nearer. Courts in this Circuit and elsewhere have held to the contrary. *See Maldonado v. Dominguez*, 137 F.3d 1, 11 n.9 (1st Cir. 1988) (fact that defendants "invested and lost one and a half million dollars *of their own money* in [their company] undermines any inference of scienter."); *In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675-686 (D. Md. 2002) (purchase of stock undermines inference of scienter); *Schuster v. Symmetricon, Inc.*, No. C 9420024 RMW, 2000 WL 33115909, at *7 (N.D. Cal. Aug.1, 2000) (same).[11]

---

[10] Plaintiff's argument that defendants had motive to defraud because they were operating in "bet-the-company" mode makes no sense. By litigating the Freedom action, defendants only made it more likely that their alleged acts of deception would be revealed in public.

[11] *P.R. Diamonds, Inc. v. Chandler*, No. 02-3921, 2004 WL 422726 (6th Cir. Mar. 3, 2004) does not support plaintiff's argument that Class Period purchases are irrelevant to scienter. Rather, *P.R. Diamonds* merely held that a

## III.   THE DISCLOSURE DUTY URGED BY PLAINTIFF HAS NO FOUNDATION IN LAW OR POLICY

Lastly, plaintiff's complaint should be rejected because the duty of disclosure it seeks to impose has no basis in law or sound policy.   Plaintiff asks the Court to hold that defendants had a duty to disclose there was a "significant likelihood of an adverse ruling in the Freedom Litigation" and whatever facts supported that alleged likelihood merely because defendants stated they believed they did not infringe the patents and had valid defenses.   (Opp. 14.)   No such duty lies here, as is evident from Judge Woodlock's decision in *SeaChange*.[12]

In *SeaChange*, plaintiff asserted that the defendant had an "obligation to disclose the fact that it was likely to lose the [patent] litigation because [the defendant] knew at the time of [its Public] Offering that it was infringing on . . . [the] patent."   2004 WL 240317, at *10.   Judge Woodlock disagreed, noting that plaintiff's position extended well beyond what is required by Item 103 of Regulation S-K, 17 C.F.R. § 229.103.   In so holding, the court observed that "the SEC has deliberately chosen not to impose the type of duty of disclosure that plaintiffs contend defendants' [sic] breached.   The disclosure required by Item 103 is meant to put potential investors on notice of pending litigation, not to force companies to predict a particular outcome in the litigation."   *Id.* at *10.   Indeed, "[e]ven if" the "probability that [defendant] would lose the

---

defendant's purchases did not negate an inference of scienter where the plaintiff demonstrated those purchases were made as a condition precedent to obtaining a bank agreement benefiting defendants.   2004 WL 422726, at *14.

[12]   Plaintiff's omissions theory relates in part to a pre-Class Period statement – that defendants were "anticipat[ing] a favorable summary judgment."   (¶56.)   Even putting aside the obvious point that a pre-Class Period statement is not actionable, *see Shaw*, 82 F.3d at 1217, and that this one was accompanied by meaningful cautionary language specifically warning of the risk of an "unfavorable judgment in the Freedom Wireless suit," (Supp. Ex. 6, Apr. 17, 2002 Press Release; Supp. Decl. Ex. 7, Tr. of Apr. 17, 2002 Conf. Call, at 2, (incorporating cautionary language from Apr. 17, 2002 Press Release), it is apparent that the challenged statement was not material because BCGI's stock price actually *increased*, from $8.10 to $8.69 during the week after defendants disclosed the denial of BCGI's summary judgment motion, (*see* Supp. Decl. Ex. 8, Chart of BCGI Stock Prices).   *See In re Cytyc Corp. Sec. Litig.*, Civ. A. No. 02-12399 (NNG), Supp. Decl. Ex. 9, slip op. at 29 n.35 (D. Mass. Mar. 1, 2005); *accord Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3rd Cir. 2000) (same).

litigation was high, given its willful infringement," that "only goes to the question of materiality," but could not overcome the absence of any duty to disclose. *Id.* at *10 n.5.[13]

Further, the disclosure obligation plaintiff seeks exceeds the common law obligation that where parties genuinely dispute an issue in litigation, the law requires only that "the dispute[] and the possible outcomes be disclosed." *Condec Corp. v. Farley*, 573 F. Supp. 1382, 1386 (S.D.N.Y. 1983) (quoting *Avnet, Inc. v. Scope Indus.*, 499 F. Supp. 1121, 1125-26 (S.D.N.Y. 1980); *accord Warner Communications, Inc. v. Murdoch*, 581 F. Supp. 1482, 1502 (D. Del. 1984) (same).[14]

Indeed, the disclosure obligation plaintiff seeks also would pose significant practical problems. For example, it would require litigants to guess the outcome of disputed proceedings, and, much more problematic, would require litigants to guess the facts a jury might rely upon in rendering a verdict. Because the well-understood vagaries of litigation make it impossible to do that with reliable accuracy, this "would make a silly, unworkable rule" that "would serve only to support vexatious litigation and abusive discovery." *Ballan v. Wilfred Amer. Educ. Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989). Further, such a disclosure obligation "may actually render the [public statements] false," where, as here, a litigant genuinely disputes an issue but fears he

---

[13] Plaintiff relies primarily on *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22 (1st Cir. 1987), *Gross v. Summa Four, Inc.*, 93 F.3d 987 (1st Cir. 1996), and *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990), for its argument that an aggressive duty of disclosure should be imposed here. (Opp. 11.) Notably, however, in each of those cases the First Circuit held that the defendants' statements did not give rise to a duty to disclose omitted information. *Gross*, 93 F.3d at 994-95; *Backman*, 910 F.2d at 16-17; *Roeder*, 814 F.2d at 27-28.

[14] Plaintiff cites *Burstein v. Applied Extrusion Techs., Inc.*, 150 F.R.D. 433 (D. Mass. 1993) to argue that defendants had a duty to disclose the "substantial likelihood" of losing the Freedom litigation. However, *Burstein* is inapposite. In *Burstein*, the court held that the defendant's affirmative statement that "management did not believe [a trade secret] lawsuit would have a material, adverse effect on the operation of the company" triggered a duty to disclose because the significant allegations in the action demonstrated that the defendant's "potential liability was clear." *Id.* at 46. By contrast, here defendants specifically disclosed that the Freedom litigation could have a significant, material effect on BCGI's ability to conduct business, and rather than guaranteeing a favorable result, cautioned that they "could give no assurance that we will prevail" in litigation. (*See* Opening Br. 4-5, 11.)

might lose a case, because "it would be misleading . . . to file a statement . . . which [a litigant] does not, in truth, believe."[15] *Avnet,* 499 F. Supp. at 1126.

<div align="center">

## CONCLUSION
</div>

For the foregoing reasons, the Court should dismiss plaintiffs' Complaint in its entirety.


Dated: February 10, 2006

<div style="margin-left: 40%;">

Respectfully Submitted,

    /s/ Clark W. Petschek
Jeffrey B. Rudman (BBO #433380)
Andrea J. Robinson (BBO #556337)
Samuel J. Lieberman (Admitted *Pro Hac Vice*)
Clark W. Petschek (BBO #658881)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for defendants Boston Communications
Group, Inc., Karen A. Walker, and Edward H. Snowden*

</div>

---

[15] Plaintiff's suggestion that it should be allowed to replead (Opp. 6 n.2) should be rejected. The Complaint's allegations are deficient as a matter of law and amendment would be futile, as plaintiff has not proposed any amendment to cure the deficiencies in the Complaint. Nor is there any reason to believe plaintiff could do so, as its allegations remain deficient despite having access to the evidence and pleadings from the Freedom litigation. *See Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 8 (D. Mass. 2004) (dismissing complaint where amendment would be futile).