```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                    )
ROSENBAUM CAPITAL LLC,              )
on behalf of itself and             )
all others similarly situated,      )
                                    )
            Plaintiffs,             )
                                    )
       v.                           )   CIVIL ACTION
                                    )   NO. 05-11165-WGY
BOSTON COMMUNICATIONS               )
GROUP, INC., KAREN A. WALKER        )
and EDWARD Y. SNOWDEN,              )
                                    )
            Defendants.             )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                          August 20, 2006


I.   INTRODUCTION

   In this action, the plaintiff Rosenbaum Capital LLC ("Rosenbaum") accuses the defendants Boston Communications Group, Inc. ("Boston Communications") and two of its directors (collectively, the "defendants") of making knowingly false statements regarding certain litigation in which the defendants were involved. Rosenbaum alleges that these statements were in violation of (1) Section 10(b) of the Securities Exchange Act of 1934; (2) Rule 10b-5 promulgated thereunder; and (3) Section 20(b) of the Securities Exchange Act. The defendants have moved

for dismissal under Rule 12(b)(5) of the Federal Rules of Civil Procedure.

**II.  ALLEGATIONS OF THE COMPLAINT**

In the early 1990s, Douglas Fougnies ("Fougnies"), a cellular telephone marketer, and Dan Harned ("Harned"), an engineer, conceived and developed a system which enabled wireless telephone users to prepay for service.  Am. Compl. [Doc. No. 19] ¶ 28.  Fougnies and Harned (collectively, the "inventors") were granted two patents in connection with their invention, id. ¶ 34, and assigned their individual rights to the patents to Freedom Wireless, Inc. ("Freedom Wireless"), id. ¶ 35.

Freedom Wireless expanded quickly and soon began to licence the patents to other companies.  Id. ¶ 39-40.  By 1996, however, Freedom Wireless could not obtain the necessary "private connections" from wireless providers id. ¶ 41, because such wireless providers, e.g., Verizon Wireless, Inc. and Boston Communications, had begun selling services of their own that competed with those of Freedom Wireless.  Id. ¶ 42.  The competing services allowed cellular phone companies to sell their prepaid minutes directly to customers, instead of Freedom Wireless -- effectively cutting out the "middleman" position Freedom Wireless once enjoyed.  Id.

Boston Communications' prepaid system (the "c2c system") performed the same function, in the same manner, and with the same results as that of Freedom Wireless. Id. ¶ 44. As soon as the inventors were awarded their first patent, they sent Boston Communications a letter (the "notice letter") notifying Boston Communications that it was infringing and stating that, if Boston Communications wanted to continue using the technology, it would have to obtain a licence from Freedom Wireless. Id. ¶ 46.

After receiving the notice letter, Boston Communications hired experts to draft a new c2c system with additional, unnecessary components in order to make the new system appear different from that of Freedom Wireless. Id. Moreover, Boston Communications attempted (unsuccessfully) to gain the rights to the Freedom Wireless patents by entering into a $750,000 licensing agreement with Orbital Sciences, which had employed Harned when he had co-invented the patented technology. Id. ¶ 47 Furthermore, Boston Communications obtained opinion letters from law firms which would bolster a defense against willful infringement claims. Id. ¶ 48. Boston Communications knew, however, that these letters were "neither thorough nor based on a review and analysis of Freedom's actual patent, defendants' systems, the prosecution history, the applicable law, or other relevant factors. Instead these legal opinion letters were superficial and conclusory." Id.

On May 20, 2005, after a lengthy jury trial, Boston Communications was found liable for the willful infringement of Freedom Wireless's patents. Id. ¶ 50. The jury awarded $128,000,000 in damages. Id. ¶ 51. Judge Harrington did not award attorneys' fees because, in "the [c]ourt's judgment[,] . . . the jury verdict constitute[d] a fair, reasonable and just compensation for such willful infringement of said patents." See Decl. of Clark W. Petschek ("Clark Decl.") [Doc. No. 24], Ex. 6; Order re Mot. for Att'ys Fees and Enhanced Damages [Doc. No. 1931], Oct. 13, 2005, Freedom Wireless, Inc. v. Boston Communications Group, Inc., No. 00-12234 (D. Mass. filed Oct. 30, 2000).

In the instant action, Rosenbaum alleges that several statements made by Boston Communications during the course of the Freedom Wireless litigation are actionable as fraud.[1] These statements (or versions of them) were made repeatedly during the class period in various conference calls with analysts or in SEC filings:

---

[1] Rosenbaum alleges several statements prior to the class period -- June 6, 2002, to May 20, 2005. Am. Compl. ¶¶ 1, 54-56. As such, these statements are not actionable. See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1217 n.31 (1st Cir. 1996) ("We limit our analysis of the [] plaintiffs' claims of affirmative misrepresentation to the statements allegedly made by defendants within the Class Period." (citing In re Clearly Canadian Secs. Litig., 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) (striking from the complaint alleged statements outside the class period))).

4

- "[Boston Communications] does not believe that it infringes these patents and believes that it has meritorious defenses to the action." Id. ¶¶ 59, 61, 63, 66, 73; See id. ¶¶ 58, 76.

- "[Boston Communications] do[es] not believe that we infringe these patents and believe[s] that the patents are invalid in light of prior art and other reasons." Id. ¶¶ 69, 71, 74, 75, 77, 79, 80 See id. ¶¶ 60, 62, 64, 65, 67, 68, 70, 72, 78.

Rosenbaum alleges that, at the time of these statements, Boston Communications itself did not believe them -- i.e., Boston Communications knew that it was infringing Freedom Wireless's valid patents. See Am. Compl. ¶¶ 89-91. In light of the rest of Boston Communications' actions at the time, claims Rosenbaum, its statements were fraudulently inaccurate and incomplete -- and materially so. See id. Rosenbaum has pleaded sufficiently to survive the defendants' motion to dismiss.

**III. LEGAL STANDARDS**

The elements of a securities fraud claim are: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005). On a motion to dismiss, of course, a court must accept as true all well-pleaded allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor. Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

Though Rule 8 of the Federal Rules of Civil Procedure provides only that a "short and plain statement of the claim" need be pleaded, Rule 9(b) requires that the circumstances supporting "all averments of fraud . . . be stated with particularity," Fed. R. Civ. P. 9(b).  Congruent with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b), the First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999). Under this standard, "a securities fraud complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'"  In re Cabletron Sys., Inc., 311 F.3d 11, 27 (1st Cir. 2002) (quoting 15 U.S.C. § 78u-4(b)(1)).

As for scienter, the plaintiff must plead "a mental state embracing [an] intent to deceive, manipulate, or defraud."  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).  The PSLRA requires a plaintiff to allege facts which "giv[e] rise to a strong inference that the defendant acted" with scienter.  15 U.S.C. § 78u-4(b)(2) (emphasis added).

6

**IV.  DISCUSSION**

Boston Communications attacks the sufficiency of Rosenbaum's allegations on two main grounds: (1) Rosenbaum's allegations of scienter are insufficient; and (2) the statements at issue are not material or incomplete, but rather are mere corporate puffery (at worst) or are protected, in any event, as forward-looking. Def. Mem. In Support of Mot. to Dismiss ("Def. Mem.") [Doc. No. 23] at 9, 14.  Both parties cite In re Seachange Int'l, Inc., No. Civ.A. 02-12116-DPW, 2004 WL 240317 (D. Mass. Feb. 6, 2004) (Woodlock, J.), as counseling an outcome in their favor.  Def. Mem. at 15-16; Pl. Opp'n to Def. Mot. to Dismiss ("Pl. Opp'n") [Doc. No. 26] at 17-18.

As here, In re SeaChange involved claims that the defendant SeaChange International, Inc. ("SeaChange") had made materially false and misleading statements about the potential outcome of pending patent infringement litigation.  2004 WL 240317 at *7. The allegedly false statement in SeaChange read as follows:

> We responded on January 26, 2001, denying the
> claim of infringement . . . .
> We cannot be certain of the outcome of the
> foregoing litigation, but do plan to oppose the
> allegations against us and assert our claims against
> the other parties vigorously.  [W]e are unable to
> estimate the impact to our business, financial
> condition and results of operations or cash flows.

Id.  After ruling that the requisite scienter could be inferred from the jury having found willful infringement and the trial judge's grant of attorneys' fees, id. at *7-8, Judge Woodlock

7

turned to whether the statement was "complete and accurate", given that SeaChange knew that it was infringing:

> The information provided in the Prospectus was accurate, even considering knowledge of the patent infringing conduct. While the information may have been, in some predictive sense, incomplete, I find that, given the well understood vagaries of litigation, it was not so incomplete as to mislead investors.

Id. at *9. Judge Woodlock noted that, when disclosing material information, a company owes a duty to "keep the information from being materially misleading" by providing a complete and accurate picture of that information. Id. at *8. SeaChange, however, had not made any representations suggesting it would win and thus was not inaccurate.

> The Prospectus stated that SeaChange was contesting [the plaintiff's] claim of patent infringement, that it was not certain what the outcome of the litigation would be, and that it could not "estimate the impact" of the litigation. It contained no statements suggesting that SeaChange would prevail in the litigation or implying that the impact of the litigation would be positive.

Id.. Judge Woodlock accordingly allowed SeaChange's motion to dismiss. Id. at *16.

The present case is both similar to and distinguishable from In re SeaChange -- and in each respect the analysis is not beneficial to Boston Communications.

8

**A.   Scienter**

As in SeaChange, this Court is presented with a prior jury verdict finding of willful infringement. Judge Woodlock had used such a verdict to infer fraudulent intent.[2] Id. at *8. Although in the instant case there was no additional award of attorneys' fees in the previous litigation -- unlike in SeaChange -- the absence of such an award was not the result of a ruling that minimized or disturbed the jury's finding of willfulness.

Furthermore, Rosenbaum alleges other facts which sufficiently support an inference of fraudulent intent. "[I]f a plaintiff adequately pleads that a statement of opinion was subjectively false when made, the complaint will, ex proprio vigure, satisfy the pleading requirements of the PSLRA relative to scienter." In re Credit Suisse First Boston Corp., 431 F.3d 36, 48 (1st Cir. 2005). To plead scienter sufficiently, there must be allegations that "the defendant's conduct evinced either a conscious intent to commit the alleged fraud or a high degree of recklessness in connection with the fraud." Id. at 48 n.5. Among other conduct, Rosenbaum alleges that Boston Communications

---

[2]A finding of willful infringement, by itself, is not sufficient to be res judicata on the issue of fraudulent intent. See In re SeaChange, 2004 WL 240317, at *8 ("Willfulness in the context of patent infringement is not equivalent to actual knowledge."); see also Ferguson Beauregard/Logic Controls v. Mega Sys., Inc., 350 F.3d 1327, 1343 (Fed. Cir. 2003) (ruling that willful infringement "does not equate to fraud" and is therefore not subject to the more stringent 9(b) pleading requirements).

"hired experts to draft a variation of its c2c system, with additional <u>unnecessary</u> components, merely so that it would <u>appear</u> to be different from Freedom[ Wireless's] now patented system." Am. Compl. ¶ 46 (emphasis added). In addition, Rosenbaum alleges that Boston Communications sought "legal opinions [which] were neither thorough nor based on a review and analysis of Freedom [Wireless's] actual patent, defendants' systems, the prosecution history, the applicable law, or other relevant factors . . . for use as a shield against claims of willful infringement." <u>Id.</u> ¶ 48. These allegations, in conjunction with the jury verdict finding of willful infringement, are sufficient to raise a "strong inference" that Boston Communications' statements were knowingly false when made and, thus, exhibit fraudulent intent. <u>See</u> <u>In re Credit Suisse</u>, 431 F.3d at 49 ("[T]he plaintiff must, for each allegedly false opinion, plead provable facts strongly suggesting that the speaker did not believe that particular opinion to be true when uttered.").

    **B.   Materiality**

Regarding the statements themselves, unlike in <u>SeaChange</u>, Boston Communications made substantive declarations regarding its beliefs about the merits of the Freedom Wireless litigation. Specifically, Boston Communications affirmatively claimed that it did not infringe the patents and that it had meritorious

10

defenses, namely that the patents were invalid based on prior art.  Cf. SeaChange, 2004 WL 240317, at *8 ("[Neutral representations in the prospectus] <u>contained no statements suggesting that SeaChange would prevail</u> in the litigation or implying that the impact of the litigation on the company would be positive." (emphasis added)).

"When a corporation does make a disclosure -- whether it be voluntary or required -- there is a duty to make it complete and accurate."  Roeder v. Alpha Indus., Inc., 814 F.2d 22, 26 (1st Cir. 1987).  In addition, a company's statements, once made, must not be "so incomplete as to mislead."  Backman v. Polaroid Corp., 910 F.2d 10, 16 (1st Cir. 1990).  Assuming, as alleged, that Boston Communications' statements of belief were knowingly false when made, they are inaccurate by definition.  Moreover, not disclosing the steps Boston Communications allegedly took in order to hide its willful infringement renders the statements misleadingly incomplete.  Cf. In re Amylin Pharms., Inc. Secs. Litig., No. 01CV1455 BTM (NLS), 2003 WL 21500525, at *8 n.3 (S.D. Cal. May 1, 2003) ("If a defendant states that it believes or expects that the FDA will approve its drug but has information tending to seriously undermine the accuracy of its statement, the statement is actionable.").

Even if all of this is so, argues Boston Communications, the statements are not material, amounting merely to corporate

11

puffery or, in the alternative, are forward-looking statements protected by law. Def. Mem. at 9-12. The Court does not agree. A misrepresentation or omission is material when a reasonable investor would have viewed it as "having significantly altered the total mix of information made available." Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). Generally, "disputes over the materiality of allegedly false or misleading statements must be reserved for the trier of fact"; statements constituting "corporate puffery", however, are immaterial as matter of law. Shaw, 82 F.3d at 1217, 1218-19.

> [C]ourts have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace -- loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available.

Id. at 1217.

The statements allegedly made by Boston Communications were not vague. Nor were they unclear. Moreover, they were quite specific. Boston Communications' statements indicated the company's (allegedly false) belief (1) that it did not infringe on the Freedom Wireless patents; (2) that it had a meritorious defense; and (3) that the Freedom Wireless patents were invalid. A company's own assessment regarding the outcome of litigation in which it is involved would certainly "alter the total mix of

information" for a reasonable investor and is not merely a "rosy affirmation".

These statements, moreover, were not tempered by warnings sufficient as matter of law to dissuade investors from giving credence to them. The only such warning relevant to the outcome of the Freedom Wireless litigation was a generic one: "From time to time, as a normal incidence of the nature of [Boston Communications'] business, various claims, charges and litigation are asserted or commenced against us arising from, or related to, contractual matters, patents, trademarks, personal injury, and personnel and employment disputes. As to such claims and litigation, we can give no assurance that we will prevail." See, e.g., Clark Decl., Ex. 1; Def. Allegedly Fraudulent Class Period Statements at 2. Other warnings related only to the potential consequences of Boston Communications losing the Freedom Wireless litigation. See id. at 1 ("[Boston Communications] has an obligation to indemnify the other defendants for the damages they may incur with respect to any infringement.); id. at 2 ("There can be no assurances that [Boston Communications'] expenses to defend the Freedom Wireless suit will not exceed the Company's estimate. If [Boston Communications] is found to infringe on the Freedom Wireless patent . . . [Boston Communications'] business, financial condition and results of operations would be materially adversely affected."). Warnings such as these are insufficient

13

to render immaterial Boston Communications' otherwise material statements regarding the outcome of the Freedom Wireless litigation or to paint them as puffery as matter of law.

For the same reason, Boston Communications' statements are actionable despite the safe-harbor provisions of the PSLRA for forward-looking statements[3] or the "bespeaks caution" doctrine. Both require that such statements be "be accompanied by meaningful cautionary statements".  See 15 U.S.C. § 78u-5(c)(1)(A)(i) (setting out the PSLRA's standards); Shaw, 82 F.3d at 1213 (describing the "bespeaks caution" doctrine).  "Vague or boilerplate disclaimers are insufficient to invoke safe harbor protection."  In re Sepracor, Inc. Secs. Litig., 308 F. Supp. 2d 20, 34 (D. Mass. 2004) (Lasker, J.) (internal quotation marks omitted).  As discussed above, the warnings issued by Boston Communications are insufficient to offer safe harbor to its otherwise material statements.

---

[3] As a matter of strict grammar, Boston Communications' statements speak to <u>present</u> belief.  The Court does not resolve whether such statements might nevertheless qualify as forward-looking under the law.  If any statements can so qualify, however, one would imagine that present statements of belief regarding the probability of future events, such as these, would meet the test.

**V.   CONCLUSION**

Accordingly, the defendants' Motion to Dismiss [Doc. No. 22] is DENIED.


SO ORDERED.

                                     /s/ William G. Young
                                     _____
                                     WILLIAM G. YOUNG
                                     DISTRICT JUDGE